**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1999 Harrison Street, Suite 670
Oakland, California 94612
Telephone:  (415) 445-4003
Facsimile:  (415) 445-4020

Javier Bleichmar
jbleichmar@bfalaw.com
Joseph Fonti
jfonti@bfalaw.com
Wilson Meeks
wmeeks@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers' Pension Plan Board
and [Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| AMRAM GALMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH,<br><br>Defendants. | Case No. 2:16-cv-08259-TJH (ASx)<br><br>CLASS ACTION<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ONTARIO TEACHERS' PENSION PLAN BOARD'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**<br><br>DATE:  February 6, 2017<br>TIME:   UNDER SUBMISSION<br>JUDGE: Hon. Terry J. Hatter Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANTHONY LEONE, Individually and on behalf of all others similarly situated,

Plaintiff,

vs.

TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN,

Defendants.

Case No. 2:16-cv-9545 DSF (AFMx)

CLASS ACTION

# <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ................................................................... 4

III. ARGUMENT ........................................................................................... 7

    A.   The Related Cases Should Be Consolidated ....................................... 7

    B.   Ontario Teachers' Should be Appointed Lead Plaintiff ...................... 8

        1.   PSLRA Standard For the Appointment of Lead Plaintiff .......... 8

        2.   Ontario Teachers' Satisfied the PSLRA's Procedural
             Requirements ....................................................................... 9

        3.   Ontario Teachers' Has a Very Significant Financial
             Interest in the Prosecution of This Litigation ..................... 10

        4.   Ontario Teachers' Satisfies Rule 23 Typicality and
             Adequacy Requirements ...................................................... 11

    C.   The Court Should Approve Ontario Teachers' Selection of
       Lead Counsel ................................................................................ 15

IV.  CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Bodri v. Gopro, Inc.*, 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal.
Apr. 28, 2016) ................................................................................. 10

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289
(N.D. Cal. Aug. 22, 2008) ................................................................ 2

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .............................. 11

*Harr v. Ampio Pharms. Inc.*, CV 15-03474 (C.D. Cal. Dec. 10, 2015),
ECF No. 46 ....................................................................................... 12

*Hufnagle v. Rino Int'l Corp.*, CV 10–8695–VBF (VBKx), 2011 WL 710676
(C.D. Cal. Feb. 16, 2011) ................................................................. 13

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ............................................. passim

*In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005)....................... 10, 11

*In re Herbalife Ltd. Sec. Litig.*, CV 14-2850 (C.D. Cal. July 30, 2014),
ECF No. 43 ....................................................................................... 12

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999) ................... 7

*Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159
(C.D. Cal. 2015) ......................................................................... 7, 11, 12

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ................................ 3

*Mulligan v. Impax Labs., Inc.*, No. C–13–1037 EMC, 2013 WL 3354420
(N.D. Cal. July 2, 2013) ..................................................................... 7

*Nicolow v. Hewlett Packard Co.*, No. 12-cv-05980-CRB, 2013 WL 792642
(N.D. Cal. Mar. 4, 2013) ................................................................... 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................. 12

*Tanne v. Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005)................................... 12

*Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049 (N.D. Cal. 2010) ................... 7

## STATUTES

15 U.S.C. § 78u-4 ............................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................ 2, 12

Fed. R. Civ. P. 42 ................................................................................. 1, 6

H.R. Conf. Rep. No. 104-369 (1995) ................................................... 2, 13

S. Rep. No. 104-98 (1995) ................................................................... 2, 13

The Ontario Teachers' Pension Plan Board ("Ontario Teachers'") respectfully submits this Memorandum of Points and Authorities in support of its Motion, consistent with Federal Rule of Civil Procedure 42, and pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) consolidating all related actions; (2) appointing Ontario Teachers' as Lead Plaintiff on behalf of a class of persons who purchased or acquired (the "Class") Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company") American Depository Shares ("ADSs") between February 10, 2014, and November 3, 2016, inclusive (the "Class Period"); and (3) approving Ontario Teachers' selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class.

## I.   PRELIMINARY STATEMENT

The two above-captioned securities class actions against Teva and certain of its corporate officers assert claims based on alleged false statements about a multi-year price fixing scheme of generic drugs.  Ontario Teachers' respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers or acquirers of Teva ADSs during the alleged Class Period.[1]

---

[1] The above-captioned cases are related cases as they involve nearly identical facts, claims and legal issues.  Neither the plaintiffs who filed these actions, nor the named defendants have yet filed a notice of related cases pursuant to Local Rule 83-1.3. As the cases have not yet been related and assigned to a single judge, Ontario Teachers', a member of the Class, filed its Lead Plaintiff Motion under the PSLRA and supporting papers on both dockets.  Because the first above-captioned case to be filed was *Galmi v. Teva Pharm., Indus. Ltd.*, 2:16-cv-08259 (C.D. Cal.), which was filed on November 6, 2016, before the Hon. Terry J. Hatter Jr., Ontario Teachers' has moved the Court for a hearing before Judge Hatter, and has filed identical documents on the dockets of both cases.  The second-filed complaint, *Leone v. Teva Pharm., Indus. Ltd.*, 2:16-cv-9545 (C.D. Cal.), was filed on December 27, 2016.  The *Leone* action asserts a class period of February 10, 2014 through November 3, 2016, inclusive.  The *Galmi* action alleges a class period of

Ontario Teachers' is an institutional investor with approximately $171 billion CAD in assets, 316,000 members consisting of working and retired teachers, and a long history of advocacy for shareholder rights.  As set forth below, Ontario Teachers' satisfies all of the prerequisites for lead plaintiff appointment set out in the PSLRA and *In re Cavanaugh*, 306 F.3d 726, 729-731 (9th Cir. 2002), and is therefore the most adequate plaintiff before the Court.

Ontario Teachers' has a substantial economic interest in directing the litigation to recover on behalf of the Class and its beneficiaries—an interest believed to be greater than that of any competing movant for Lead Plaintiff.  It suffered losses of $23,236,126 USD, as calculated under the last-in-first-out ("LIFO") loss calculation methodology widely accepted by courts, and an identical $23,236,126 USD as calculated under the first-in-first-out ("FIFO") loss calculation methodology.

As the institutional investor with the greatest financial interest in this litigation, Ontario Teachers' also easily satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Accordingly, under the PSLRA and *Cavanaugh*, a statutory presumption attaches to Ontario Teachers' as the "most adequate plaintiff" to serve as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Indeed, Ontario Teachers' is more than a merely "adequate" Lead Plaintiff. It is precisely the type of large institutional investor the PSLRA intended to encourage to participate in securities class actions.  *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), reprinted in 1995 U.S.C.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), reprinted in 1995 U.S.C.A.N. 679, 685.  In a large, complex case like this

---

February 10, 2015 through November 3, 2016, inclusive.  For purposes of appointing a Lead Plaintiff, it is generally appropriate that the longest class period governs.  *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289 at *2 (N.D. Cal. Aug. 22, 2008).

one, the Court should appoint as Lead Plaintiff an investor with significant resources, litigation experience, and sophistication so that it can effectively manage the vigorous and efficient prosecution of the case for the benefit of the Class.

Ontario Teachers' has served as court-appointed Lead Plaintiff in several securities class actions, recovering billions of dollars for investors.  It is therefore familiar with, and well-suited to fulfill, the requirements of a lead plaintiff.  Ontario Teachers' was certified by the court as class representative in each of the securities class actions in which it was appointed lead plaintiff, and it played an active role in each litigation and settlement, including by giving deposition testimony and providing document discovery.

Ontario Teachers' also easily meets the typicality requirements under Rule 23.  Like the other members of the putative Class, Ontario Teachers' seeks recovery of losses incurred as a result of declines in the price of Teva ADSs purchased or acquired in the United States.  *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 269-70, 130 S. Ct. 2869, 2886 (2010) (holding that Section 10(b) applies to securities registered on a U.S. stock exchange, irrespective of the nationality of the shareholder).  Ontario Teachers' is particularly well situated to prosecute the securities fraud claims because it purchased a significant number of Teva's ADSs in both the open market, as well as in a secondary offering, which purchases are subject to claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").  Thus, Ontario Teachers' is typical of Class members who may have Securities Act claims for their purchases in the offering, as well as those Class members with claims under Sections 10(b) and 20(a) of the Exchange Act for open market purchases.

Because Ontario Teachers' is the presumptive "most adequate plaintiff" under the PSLRA, the Court should appoint Ontario Teachers' as Lead Plaintiff unless the presumption is rebutted through "proof" that Ontario Teachers' "will not fairly and adequately protect the interests of the class" or "is subject to unique

defenses" making it "incapable of adequately representing the class." *See In re Cavanaugh*, 306 F.3d at 730 (quoting the PSLRA). Ontario Teachers' believes that such a showing cannot plausibly be made.

Ontario Teachers' selection of BFA as Lead Counsel should also be approved. BFA is a nationally-recognized securities class action firm, with offices in California and New York that has recovered hundreds of millions of dollars in damages for injured shareholders. BFA attorneys have the expertise, resources, and track record necessary to handle a litigation of this scale.

## II.  FACTUAL BACKGROUND

Teva is one of the largest manufacturers of generic pharmaceuticals in the U.S. This case involves alleged false statements by Teva and its executives to conceal from investors a multi-year price fixing scheme among Teva and certain of its competitors regarding generic drugs.

During the last five years, over twenty percent of established generic drugs in the U.S. have undergone sudden, unexplained, and "extraordinary price increases" of more than one-hundred percent, according to a study commissioned by the U.S. Congress and published this past August by the U.S. Government Accountability Office (the "GAO").[2] Some of these increases exceeded one thousand percent. Because the price increases of these drugs defy the typical economics of downward prices in the generic pharmaceuticals market (generics prices ordinarily go down significantly because of market competition), the most plausible explanation is that the competitors agreed to fix the prices of these products. Teva manufactures many of the products identified by the GAO as having exhibited an "extraordinary price increase."

---

[2] *See* U.S. Gov't Accountability Office, GAO-16-706, GENERIC DRUGS UNDER MEDICARE: PART D GENERIC DRUG PRICES DECLINED OVERALL, BUT SOME HAD EXTRAORDINARY PRICE INCREASES 11-12, 16 (Aug. 2016) (the "GAO Report").

Consistent with the findings in the GAO report, the Antitrust Division of the United States Department of Justice (the "DOJ") and the Attorney Generals' offices of numerous states, led by Connecticut, have for over two years been investigating whether generic drug manufacturers like Teva violated antitrust laws by conspiring to fix prices. The DOJ issued subpoenas to many of Teva's competitors at various points starting in November 2014.

On August 4, 2016, Teva announced in a Form 6-K with the Securities and Exchange Commission ("SEC"), that on June 21, 2015,[3] the Company had received a subpoena from the DOJ requesting documents and information relating to the marketing and pricing, and communications with competitors concerning, certain of Teva's generic products. That same day, Teva further announced that on July 12, 2016, it had received an additional subpoena from the Connecticut Attorney General seeking documents and other information relating to potential antitrust law violations. The price of Teva's ADSs fell from its closing price on August 4, 2016 of $55.45, to close at $54.21 per ADS on August 5.

Then, on November 3, 2016, *Bloomberg* reported, in an article titled "U.S. Charges in Generic-Drug Probe to be Filed by Year-End," that the first criminal indictments stemming from the DOJ's investigation into the generics industry might issue by the end of 2016. *Bloomberg* specifically named Teva as a potential target and reported that "[c]harges could extend to high-level executives." In response to this article, the price of Teva's ADSs dropped approximately 10%, from $43.33 to $39.20 per share, and the Company lost nearly $4.0 billion in market capitalization.

The Class Period begins on February 10, 2014, with Teva's filing of its Form 20-F with the SEC. Each complaint alleges false statements that relate to Teva's sales practices concerning generic drugs, the financial statements relating to the

---

[3] The Form 6-K stated that Teva received the subpoena from the DOJ on June 21, 2015. In Subsequent SEC filings Teva has asserted that the subpoena was issued by the DOJ on June 21, 2016.

revenue produced by Teva's generics drug sales, and statements regarding the adequacy of Teva's internal controls over financial reporting and disclosure, all made false by the existence of the underlying price fixing scheme. The Class Period ends on November 3, 2016, with the publication of the *Bloomberg* article and related drop in the price of Teva's ADSs.

Since the filing of the first complaint on November 6, 2016, there have occurred significant corroborating events. On November 8, 2016, only five days after the *Bloomberg* article was published, Teva unexpectedly announced that its Chief Legal Officer, who was intimately involved in developing Teva's U.S. generics operations, would be replaced. On December 5, 2016, Teva's President and the CEO of its Global Generic Medicines Group, who is in his forties, "officially retired" from the Company. The press has reported that these departures raise further questions around the propriety of Teva's generic drug pricing practices.

Then, on December 14, 2016, the DOJ publicized the first indictments relating to generic drugs, reporting that it had charged the CEO and President of Heritage Pharmaceuticals, Inc. ("Heritage"), a privately-held generic drug manufacturer based in New Jersey, with conspiring to "fix prices," and "allocate customers" in connection with generic drugs, including glyburide, which is also manufactured by Teva.

The next day, December 15, 2016, the Attorneys General of twenty states, again led by Connecticut, filed a civil action complaint in U.S. District Court in Connecticut against six generic drug manufacturers, including Teva (the "States' Complaint").[4] In an interview, the Attorney General of Connecticut described the scheme as "massive," "quite widespread," and "very explicit price fixing," evidenced "in text messages, in emails, in conversations" and the testimony of

---

[4] *Connecticut v. Aurobindo Pharma USA, Inc.* (D. Conn. Dec. 15, 2016), redacted Complaint available at http://www.ct.gov/ag/lib/ag/press_releases/2016/20161215 _gdms_complain.pdf (the "States' Complaint").

"cooperating witnesses."   According to the States' Complaint, the President of Heritage "had a direct relationship with" a Teva employee, "and was able to successfully communicate with her and reach an agreement to raise prices on Glyburide, among other drugs."  States' Complaint ¶106.

## III.   ARGUMENT

### A.   The Related Cases Should Be Consolidated

Under the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed … and any party has sought to consolidate those actions" courts shall not appoint a Lead Plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).  There are two cases pending in this Court—the above-captioned cases—that bring claims on behalf of investors who purchased or acquired Teva ADSs and allege nearly identical facts.

Under Federal Rule of Civil Procedure 42(a) the Court may consolidate actions that involve "common questions of law and fact."  Courts have consistently consolidated securities class actions involving the same parties, securities, and general allegations, concluding that consolidation will expedite the proceedings, reduce duplication, avoid inconsistent outcomes, and minimize the cost and expense for both the class and defendants.[5]  Here, the above-captioned complaints bring virtually identical claims against Teva and its officers on behalf of purchasers or acquirers of Teva ADSs who relied on Defendants' materially false and misleading statements or omissions.  The actions should therefore be consolidated.

---

[5] *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) (consolidating private securities class actions and stating that "[c]onsolidation of private securities fraud class actions arising from the same alleged misconduct is generally appropriate") (*citing In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010); *Mulligan v. Impax Labs., Inc.*, No. C–13–1037 EMC, 2013 WL 3354420, at *3 (N.D. Cal. July 2, 2013)).

**B.     Ontario Teachers' Should be Appointed Lead Plaintiff**

Ontario Teachers' meets all the prerequisites for appointment as Lead Plaintiff in this securities class action and should be appointed Lead Plaintiff.

**1.     PSLRA Standard For the Appointment of Lead Plaintiff**

The PSLRA provides a clear procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth the procedure for selecting lead plaintiff); *In re Cavanaugh*, 306 F.3d at 729 (same).  The statute first specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

The statute then directs that, after class members have moved for appointment as Lead Plaintiff, the court "[n]ot later than 90 days after … notice is published … shall consider any motion made by a purported class member … and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (...the 'most adequate plaintiff')."  15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, "the court shall adopt a presumption that the most adequate plaintiff" is the "person or group of persons" who (i) filed a motion for

lead plaintiff, (ii) "has the largest financial interest in the relief sought by the class", and (iii) otherwise satisfies the class representative's requirements pursuant to Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii).   The statutorily presumptive "most adequate plaintiff" should then be appointed Lead Plaintiff by the Court, unless the presumption is rebutted "upon proof" that the movant with the largest financial interest either (a) "will not fairly and adequately protect the interests of the class," or (b) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See In re Cavanaugh*, 306 F.3d at 729–30 (*citing* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

As the statutorily presumptive "most adequate plaintiff," Ontario Teachers' should be appointed Lead Plaintiff.  The presumption attaches to Ontario Teachers' because it filed a timely motion for appointment as lead plaintiff, has (it believes) the largest financial interest in the relief the Class seeks, and it easily satisfies the typicality and adequacy requirements of the PSLRA.

## 2.   Ontario Teachers' Satisfied
## the PSLRA's Procedural Requirements

Ontario Teachers' filed this motion to serve as lead plaintiff in a timely manner.  The plaintiff who filed the first complaint in this action caused notice regarding the pending nature of this case to be published on PR Newswire, a widely-circulated, national news wire service on November 6, 2016.  *See* Notice, Weaver Decl. Ex. D.[6]  This was the earliest notice of action filed relating to the allegations.  As permitted by the PSLRA, Ontario Teachers' has filed its motion for appointment as Lead Plaintiff within the required sixty days after publication of that notice.

---

[6] References to "Weaver Decl." herein are to the Declaration of Lesley E. Weaver in Support of Ontario Teachers' Pension Plan Board's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, filed simultaneously with this Memorandum of Law.

### 3.   Ontario Teachers' Has a Very Significant Financial Interest in the Prosecution of This Litigation

Ontario Teachers' believes that it has the largest financial interest of all movants for Lead Plaintiff in this action.  The Ninth Circuit in *In re Cavanaugh* held that in determining the largest financial interest of lead plaintiff applicants, "the court may select accounting methods that are both rational and consistently applied" in order to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  306 F.3d at 730 & n. 4.  Two widely accepted measures of financial stake at the lead plaintiff stage are trading losses calculated using LIFO (shares acquired most recently are assumed to be sold first) and FIFO (shares acquired first are assumed to be sold first).  The majority of courts in the Ninth Circuit accept LIFO as the preferred calculation.[7]

As calculated under both the LIFO and the FIFO methods, Ontario Teachers' suffered identical substantial losses of approximately $23,236,126 USD.  Weaver Decl. Ex. A (Loss Chart).  Ontario Teachers' financial interest in the litigation is further evidenced by the fact that it spent $57,682,095 USD on a net basis purchasing a total of 1,401,900 shares of Teva ADSs during the Class Period at inflated prices.  Ontario Teachers' is not aware of any other movant with a larger financial interest in this action.

---

[7] While "[t]he Ninth Circuit has declined to endorse a particular method" to determine which party has the greatest financial stake, "[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a last in, first out ("LIFO") methodology." *Bodri v. Gopro, Inc.*, 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) (*quoting Nicolow v. Hewlett Packard Co.*, No. 12-cv-05980-CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013)); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO ... ignores sales occurring during the class period and hence may exaggerate losses.").

### 4.   Ontario Teachers' Satisfies Rule 23
### Typicality and Adequacy Requirements

Ontario Teachers' also "satisfies the requirements of Rule 23" as directed by the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  The Court's analysis of these requirements "need not be as complete as would a similar determination for the purpose of class certification.  At the lead plaintiff stage of the litigation, 'the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (holding that the proposed lead plaintiff satisfied the PSLRA requirements of adequacy and typicality through a prima face showing) (*quoting In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).  It is readily apparent that Ontario Teachers' meets the criteria of typicality and adequacy.

### i.   Ontario Teachers' Claims are
### Typical of the Class

"The test of [Rule 23] typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Knox v. Yingli*, 136 F. Supp. 3d at 1165 (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  A plaintiff's "claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The claims of Ontario Teachers' satisfy Rule 23(a)(3)'s typicality requirement because like all other Class members, Ontario Teachers' (1) purchased or acquired Teva ADSs during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged thereby. *See Tanne v. Autobytel, Inc*., 226 F.R.D.

659, 667 (C.D. Cal. 2005) (holding that the typicality requirement was met when the proposed Lead Plaintiff "submitted a sworn certification indicating that he [traded the Company's] securities and suffered losses during the class period").[8]

Ontario Teachers' is not subject to any unique defenses.  Indeed, Ontario Teachers' is particularly well suited to serve as Lead Plaintiff because it can bring claims against Teva based on its own trading under both Sections 11 and 15 of the Securities Act and under Sections 10(b) and 20(a) of the Exchange Act.  The Securities Act claims derive from Ontario Teachers' purchase of ADSs in a secondary offering by Teva on December 3, 2015, while the Exchange Act claims derive from its Class Period purchases of ADSs on the open market.

### ii.      Ontario Teachers' Will Fairly and Adequately Represent the Interests of the Class

The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class."  Rule 23(a)(4).  "[Rule 23(a)'s] adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."  *Knox v. Yingli*, 136 F. Supp. 3d at 1165 (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

No antagonism or conflict exists between the interests of Ontario Teachers'

---

[8] *See also, e.g.,* Order at 3, *Harr v. Ampio Pharms. Inc.*, CV 15-03474 (C.D. Cal. filed Dec. 10, 2015), ECF No. 46.  (Hatter, J.) ("In determining whether the [lead plaintiff movant] has satisfied the requirements of [Rule 23] ... a prima facie showing that the [movants] satisfy the Rule 23 requirements is sufficient."); Order at 3, *In re Herbalife Ltd. Sec. Litig.*, CV 14-2850 (C.D. Cal. filed July 30, 2014), ECF No. 43. (Fischer, J.) ("Here, both the [lead plaintiff movant] and the other class members purchased Herbalife securities during the Class Period at prices alleged to be artificially inflated due to Herbalife's false and misleading statements, and allegedly suffered damages when corrective disclosures removed that inflation.  The typicality test is therefore met…").

and those of the absent Class members; rather, the interests of Ontario Teachers' and the Class members are squarely aligned.  Ontario Teachers' has submitted a detailed declaration explaining its commitment to "ensure that this action against Teva and all culpable parties will be vigorously litigated … in the best interest of the class," Jang Decl. ¶12,[9] and in a manner "focused on recovering the substantial losses that it and the putative Class incurred as a result of defendants' violations of the federal securities laws," *id.* ¶7.

Indeed, Ontario Teachers' is exactly the type of large and sophisticated institutional investor that Congress encouraged to act as lead plaintiff in private securities class actions through the enactment of the PSLRA.  The Ninth Circuit has recognized that the PSLRA was framed to "'encourage institutional investors to take a more active role,' which would 'ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.'" *Cavanaugh*, 306 F.3d at 737 (*quoting* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995)).[10]

Ontario Teachers' was established in 1990, and is the largest single-profession pension plan in Canada and one of Canada's largest institutional

---

[9] References to "Jang Decl." herein are to the Declaration of In Ha Jang, Director & Associate General Counsel, Investments, of Ontario Teachers' Pension Plan Board, in Support of Ontario Teachers' Pension Plan Board's Motion For Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel, filed as Exhibit C to the Weaver Decl.

[10] *See also*, *Hufnagle v. Rino Int'l Corp.*, CV 10–8695–VBF (VBKx), 2011 WL 710676, at *1 (C.D. Cal. Feb. 16, 2011) (noting the PSLRA's "preference for such institutional investors to serve as lead plaintiffs"); S. Rep. No. 104-98, at 10, reprinted in 1995 U.S.C.C.A.N. at 690 and H.R. Rep. No. 104-369, at 34, reprinted in 1995 U.S.C.C.A.N. at 733 ("the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]"); H.R. Rep. No. 104-369, at 34, reprinted in 1995 U.S.C.C.A.N. at 733 ("[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

investors.  Jang Decl. ¶3.  Ontario Teachers' oversees and manages the retirement income needs of 316,000 working and retired teachers in elementary and secondary schools in Ontario, and had approximately $171 billion CAD in assets under management as of December 31, 2015.  *Id.*

Ontario Teachers' has substantial experience as court-appointed Lead Plaintiff in overseeing the prosecution of complex securities class actions, and has served as court-appointed Class Representative in each case in which it was appointed Lead Plaintiff.  *Id.* ¶5-6.  Most recently, Ontario Teachers' recovered $97.5 million for the class in *In re Computer Sciences Corp. Sec. Litig.*, 11-cv-00610 (E.D. Va. Sept. 20, 2013), subsequent to its appointment as Class Representative pursuant to the Class Certification process.  Jang Decl. ¶5.  Earlier, Ontario Teachers' served: as Co-Lead Plaintiff in *In re Nortel Networks Corp. Sec. Litig.*, No. 05-md-1659 (S.D.N.Y. Dec. 26, 2006), in which it secured a $1.07 billion settlement that included extensive corporate governance reforms; as Co-Lead Plaintiff in *In re Williams Cos., Inc. Sec. Litig.*, No. 02-cv-72 (N.D. Okla. Feb. 12, 2007), which resulted in a recovery of $311 million for the class; and as Lead Plaintiff in *In re Biovail Corp. Sec. Litig.*, No. 03-cv-8917 (S.D.N.Y. Aug. 8, 2008), which resulted in a recovery of $138 million for the Class.  Jang Decl. ¶5.

In each of these cases, Ontario Teachers' played a proactive role, closely overseeing litigation strategy with counsel, sitting for depositions, producing discovery materials, participating in settlement negotiations, and approving all important litigation documents.  *Id.* ¶6.  The participation of Ontario Teachers' in prosecuting securities fraud cases reflects its commitment to redressing instances of wrongdoing in the securities markets.  Ontario Teachers' has worked with its peers not only to achieve significant and meaningful results for class members in securities fraud litigations, but also in the general area of improving corporate governance through, among other things, advocating for greater enforcement of securities regulations.  *Id.* ¶8.  Ontario Teachers' motion for Lead Plaintiff in this

case is a reflection of these firmly held principles. *See id.* ¶¶7, 9-12.

To this end, Ontario Teachers' has retained counsel highly experienced in prosecuting securities class actions and has timely submitted its choice of BFA to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Ontario Teachers' has worked for over twelve years with the founding partners of BFA in securities fraud class action litigation in the U.S. and other matters, including most recently when those attorneys acted as lead trial counsel for Ontario Teachers' in *In re Computer Sciences Corp. Sec. Litig.*, while those attorneys were partners at a prior firm. Jang Decl. ¶11.

## C. The Court Should Approve Ontario Teachers' Selection of Lead Counsel

Under the PLSRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Ninth Circuit has held that "the choice [of counsel] belongs to the lead plaintiff," and that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Cavanaugh*, 306 F.3d at 734 n. 14.

Ontario Teachers' choice of counsel, BFA, is among the foremost securities class action law firms in the country. BFA's partners have served as lead and co-lead counsel on behalf of dozens of institutional investors, and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. The firm's recent matters include the recovery for the class of $120 million in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121 (S.D.N.Y. Nov. 4, 2015); a $219 million settlement in *In re Genworth Financial Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va. Sept. 26, 2016), the largest securities class action recovery ever achieved in the Eastern District of Virginia; and $234 million in settlements in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y. July 15, 2016). *See* Weaver Decl., Ex. E (BFA Resume).

Attorneys at BFA have extensive experience litigating securities actions in the Federal Courts of the Ninth Circuit, including, for instance, *New Mexico State Investment Council v. Ernst & Young*, 641 F.3d 1089 (9th Cir. 2011), *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), *In re Broadcom Corp. Class Action Litig.*, 06-cv-05036 (C.D. Cal. Dec. 3, 2012), *In re Commtouch Software Ltd. Sec. Litig.*, 01-00719 WHA, 2003 WL 22227884 (N.D. Cal. Sept. 24, 2002), and *In re NorthPoint Commc'n Grp. Inc. Sec. Litig.*, 184 F. Supp. 2d 991 (N.D. Cal. 2001). Just recently, on December 22, 2016, BFA was appointed by the Federal District Court for the Northern District of California as local counsel for the court-appointed lead plaintiff in the securities fraud class action *Shenwick v. Twitter, Inc.*, 16-cv-05314 (N.D. Cal. 2016). Thus, the Court can be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

**IV.  CONCLUSION**

For the foregoing reasons, Ontario Teachers' respectfully requests that the Court: (1) consolidate all related actions; (2) appoint Ontario Teachers' as Lead Plaintiff; and (3) approve Ontario Teachers' selection of BFA as Lead Counsel.

///
///
///
///
///
///
///
///
///
///
///
///

Dated: January 5, 2017

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Lesley E. Weaver*

Lesley E. Weaver (Bar No. 191305)

lweaver@bfalaw.com
1999 Harrison Street, Suite 670
Oakland, California 94612
Telephone:  (415) 445-4003
Facsimile:  (415) 445-4020

Javier Bleichmar
jbleichmar@bfalaw.com
Joseph Fonti
jfonti@bfalaw.com
Wilson Meeks
wmeeks@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers'*
*Pension Plan Board, and*
*[Proposed] Lead Counsel for the Class*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the registered participants. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 5, 2017.

*/s/ Lesley E. Weaver*

Lesley E. Weaver (Bar No. 191305)
**BLEICHMAR FONTI & AULD LLP**
1999 Harrison Street, Suite 670
Oakland, California 94612
Telephone:  (415) 445-4003
Facsimile:  (415) 445-4020
lweaver@bfalaw.com