ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
DANIELLE S. MYERS (259916)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| AMRAM GALMI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TEVA PHARMACEUTICALS INDUSTRIES LIMITED, et al., <br><br> Defendants. | Case No. 2:16-cv-08259-TJH-AS <br><br> <u>CLASS ACTION</u> <br><br> TIAA'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS <br><br> DATE: February 6, 2017 <br> TIME: UNDER SUBMISSION <br> CTRM: 9B <br> JUDGE: Hon. Terry J. Hatter Jr. |

1225908_1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 2

    A.  The Teva Investor Group Cannot Trigger the PSLRA Presumption ........................................................................................ 2

        1.  Mr. Kleinerman Is Individually Subject to Unique Defenses ................................................................................... 12

    B.  Ontario Teachers Is Ineligible for the PSLRA Presumption .............. 15

    C.  The Remaining Candidates Claim Smaller Losses than TIAA and Their Motions Should Be Denied .................................................. 15

    D.  TIAA Is the Presumptive Lead Plaintiff and Its Motion Should Be Granted ............................................................................................ 16

III. CONCLUSION .................................................................................................. 17

1225908_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Apple v. LJ Int'l, Inc.*,
  2008 U.S. Dist. LEXIS 12618 (C.D. Cal. Feb. 8, 2008) ................................ 3, 12

*Applestein v. Medivation, Inc.*,
  2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17, 2010) ................................ 14

*Arciaga v. Barrett Bus. Servs.*,
  2015 U.S. Dist. LEXIS 22879 (W.D. Wash. Feb. 25, 2015) .................... 5, 7, 11

*Bang v. Acura Pharms., Inc.*,
  2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ...................................... 14

*Bell v. Ascendant Solutions, Inc.*,
  2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17, 2002) ............................. 11, 12

*Bodri v. GoPro, Inc.*,
  2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ............................... 3, 4

*Boyd v. Novastar Fin., Inc.*,
  2007 U.S. Dist. LEXIS 49528 (W.D. Mo July 9, 2007) ............................. 11, 12

*Buettgen v. Harless*,
  263 F.R.D. 378 (N.D. Tex. 2009) .......................................................................... 6

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Serv.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ........................................................................ 12

*Crihfield v. CytRx Corp.*,
  2016 U.S. Dist. LEXIS 181615 (C.D. Cal. Oct. 26, 2016) ........................*passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).........................*passim*

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ......................................................................... 4

*Ford v. Natural Health Trends Corp.*,
  No. CV 16-00255 TJH (C.D. Cal. Mar. 29, 2016)................................................ 3

1225908_1

**Page**

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) ............................................................9

*George v. China Auto. Sys., Inc.*,
2013 U.S. Dist. LEXIS 93698 (S.D.N.Y. July 3, 2013) ...................................15

*Ho v. NQ Mobile, Inc.*,
2014 U.S. Dist. LEXIS 51623 (S.D.N.Y. Apr. 9, 2014) ....................................9

*In re BankAmerica Corp. Sec. Litig.*,
350 F.3d 747 (8th Cir. 2003) ............................................................................10

*In re Carreker Corp. Sec. Litig.*,
2003 U.S. Dist. LEXIS 25988 (N.D. Tex. Aug. 14, 2003) ................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................2, 16, 17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................5, 6

*In re Century Bus. Servs., Sec. Litig.*,
202 F.R.D. 532 (N.D. Ohio 2001) ....................................................................16

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ........................................................................4

*In re CTI Biopharma Corp. Sec. Litig.*,
2016 U.S. Dist. LEXIS 119301 (W.D. Wash. Sept. 2, 2016) .............................4

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ....................................................................7, 17

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002) ....................................................................3, 9

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) .....................................................................5, 7

**Page**

*In re Netflix, Inc., Sec. Litig*.,
   2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) .................................. 4

*In re Network Assocs. Sec. Litig*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999).................................................... 4, 7, 8, 13

*In re Opnext, Inc. Sec. Litig*.,
   2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008)...................................... 15

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618, 614 (S.D.N.Y. 2015).......................................... 2, 5, 7, 10

*In re Proxima Corp. Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21443 (S.D. Cal. May 4, 1994) .................................. 13

*In re Reliant Sec. Litig*,
   2002 U.S. Dist. LEXIS 27777 (S.D. Tex. Aug. 27, 2002)................................ 11

*In re Safeguard Scientifics*,
   216 F.R.D. 577 (E.D. Pa. 2003) ........................................................................ 15

*In re Spectrum Pharms., Inc*.,
   2014 U.S. Dist. LEXIS 38322 (D. Nev. Mar. 20, 2014)..................................... 5

*In re Tarragon Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007).................................... 8

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund*
   *v. FXCM Inc*.,
   2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015) ........................... 5, 8

*Karam v. Corinthian Colls., Inc.*,
   2011 U.S. Dist. LEXIS 157041 (C.D. Cal. Mar. 30, 2011) ................................ 4

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
   2016 U.S. Dist. LEXIS 68952 (D.N.J. May 26, 2016) ............................... 5, 7, 10

*Markette v. Xoma Corp.*,
   2016 U.S. Dist. LEXIS 63701 (C.D. Cal. May 13, 2016)............................. 3, 7, 8

- iv -

**Page**

*Miller v. Ventro Corp.*,
   2001 U.S. Dist. LEXIS 26027 (N.D. Cal. Nov. 28, 2001)................................11

*Nicolow v. Hewlett Packard Co.*,
   2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ............................6, 12

*Perrin v. Sw. Water Co.*,
   2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) ................................4

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011)......................................................................5, 9

*Robb v. FitBit Inc.*,
   2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) .................................3

*Roofers' Pension Fund v. Papa*,
   No. 2:16-cv-02805 (D.N.J. Aug. 1, 2016)...................................................12, 13

*Schriver v. Impac Mortg. Holdings, Inc.*,
   2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006)...................................11

*Shaffer v. Digital Generation, Inc.*,
   No. 3:13-CV-1684-N (N.D. Tex. Sept. 19, 2013) ............................................14

*Sinai Roth v. Knight Trading Grp., Inc.*,
   228 F. Supp. 2d 524 (D.N.J. 2002)..................................................................6, 9

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008).....................5, 7, 12, 14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................9

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) .............................................................................13

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978).........................................................................13

1225908_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

*Wenderhold v. Cylink Corp.*,
    188 F.R.D. 577 (N.D. Cal. 1999) ........................................................5

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*,
    2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012)....................................3

*Xianglin Shi v. SINA Corp.*,
    2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) ....................................13

*Yanek v. Staar Surgical Co.*,
    2004 U.S. Dist. LEXIS 30953 (C.D. Cal. Dec. 15, 2004) ....................................4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)(iii) ..........................................................18
    §78u-4(a)(3)(B)(iii)(I) .....................................................1, 5, 16
    §78u-4(a)(3)(B)(iii)(II) ...................................................15, 17

Federal Rules of Civil Procedure
    Rule 23..............................................................1, 2, 17

## I.     INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[1]  TIAA respectfully submits that it is the only candidate that satisfies these requirements.[2]

Indeed, none of the competing movants claims to have suffered a larger *individual* loss than TIAA did:

| *Movant* | *Losses Asserted in Motion*[3] |
|---|---|
| **TIAA** | **($42.5 million)** |
| Teva Investor Group | |
|     Dan Kleinerman | ($30.4 million) |
|     Oregon PERS | ($9.8 million) |
|     Chicago Teachers | ($7.5 million) |
| | Aggregated Loss: ($47.8 million) |
| Ontario Teachers' Pension Plan | ($23.2 million) |
| Robert Brosnan | ($2.3 million) |
| Wayne County Employees' Ret. Sys. | ($575,670) |
| City of Roseville Employees' Ret. Sys. | ($126,196) |
| Waterford Township Police and Fire Ret. Sys. | ($99,600) |
| | Aggregated Loss: ($814,014) |

---

[1]     All of the movants agree the two cases should be consolidated.  All of the movants also timely filed their motions by the statutory deadline.

[2]     TIAA collectively refers to TIAA-CREF Funds (including the TIAA-CREF International Equity Index Fund, TIAA-CREF Large-Cap Growth Fund, TIAA-CREF Enhanced International Equity Index Fund and TIAA-CREF Growth & Income Fund), TIAA-CREF Life Funds (including the TIAA-CREF Life Growth Equity Fund and TIAA-CREF Life Growth & Income Fund), and College Retirement Equities Fund (including the CREF Stock Account, CREF Global Equities Account and CREF Growth Account).  *See* Dkt. No. 21 at 1 n.1.

[3]     *See* Dkt. No. 9 at 6; Dkt. No. 14-1 at 2; Dkt. No. 16 at 2, 9; Dkt. Nos. 17-5 – 17-7; Dkt. No. 22 at 6; Dkt. No. 25 at 2, 10.  All emphasis is added and all citations are omitted unless otherwise indicated.

1    And, while the three Teva Investor Group members assert a larger **aggregate** loss,

2    before the Court can consider their losses collectively, the members must first

3    demonstrate that the group was not "'created in an effort to have its members

4    designated as lead plaintiffs and, more important, its counsel designated as class

5    counsel.'" *Crihfield v. CytRx Corp.*, 2016 U.S. Dist. LEXIS 181615, at *11-*12 (C.D.

6    Cal. Oct. 26, 2016).  The Teva Investor Group has not done so.  *See infra* §II.A.

7    Consequently, the artificial collection of institutions and an individual by two different

8    law firms is ineligible for the PSLRA's presumption and its motion should be denied.

9        By contrast, TIAA is the paradigmatic lead plaintiff: "a single entity represented

10   by a single law firm."[4]  Its motion should be granted.

11   **II.   ARGUMENT**

12       "The 'most capable' plaintiff – and hence the lead plaintiff – is the one who has

13   the greatest financial stake in the outcome of the case, so long as he meets the

14   requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  To

15   identify the presumptively most adequate plaintiff, "the district court must compare

16   the financial stakes of the various plaintiffs and determine which one has the most to

17   gain from the lawsuit." *Id.* at 730.  "Once it determines which plaintiff has the biggest

18   stake, the court must appoint that plaintiff as lead, unless it finds that he does not

19   satisfy the typicality or adequacy requirements." *Id.* at 732.

20       TIAA is the only movant that meets the PSLRA's requirements here.

21   **A.   The Teva Investor Group Cannot Trigger the PSLRA Presumption**

22       A threshold question must be answered before the Court can identify the

23   presumptive lead plaintiff pursuant to the PSLRA's sequential process: "whether a

24   group can satisfy the 'largest financial interest' requirement by aggregating losses."

25   *Cavanaugh*, 306 F.3d at 731 n.8 (reserving this question).  This issue is paramount

26

27

28   [4]     *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 614 (S.D.N.Y. 2015).

- 2 -

1225908_1

because **none** of the Teva Investor Group members individually suffered the greatest loss **without** aggregation:

| Movant | Losses Asserted in Motion |
|---|---|
| **TIAA** | **($42.5 million)** |
| Dan Kleinerman | ($30.4 million) |
| Oregon PERS | ($9.8 million) |
| Chicago Teachers | ($7.5 million) |
| | Aggregated Loss: ($47.8 million) |

Importantly, California district courts "'have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *13 (rejecting group's aggregated loss and denying group's motion) (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451-52 (C.D. Cal. 2002)); *Markette v. Xoma Corp.*, 2016 U.S. Dist. LEXIS 63701, at *23 (C.D. Cal. May 13, 2016) (same); *Bodri v. GoPro, Inc.*, 2016 U.S. Dist. LEXIS 57559, at *13 (N.D. Cal. Apr. 28, 2016) (same); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *22 (N.D. Cal. Aug. 22, 2008) (same); *Apple v. LJ Int'l, Inc.*, 2008 U.S. Dist. LEXIS 12618, at *9, *14-*15 (C.D. Cal. Feb. 8, 2008) (denying motion by group because it "consists of an unrelated group of persons whose only connection is the 'happenstance of having bought the same securities' and whose aggregation seems to be motivated by the sole purpose of aggregating their claims to attain presumptive lead plaintiff status").[5]

---

[5]     To be clear, some California district courts, including this Court, have allowed previously unaffiliated investors to aggregate losses to claim the largest financial interest in three limited scenarios, none of which are present here: (1) at least one group member individually asserted the largest loss; (2) the group's motion was unopposed; or (3) only groups filed motions. *See, e.g., Robb v. FitBit Inc.*, 2016 U.S. Dist. LEXIS 62457, at *10 (N.D. Cal. May 10, 2016) (group's losses were properly aggregated because one member "has the largest loss suffered by any individual member or movant"); *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, 2012 U.S. Dist. LEXIS 21590, at *13 (N.D. Cal. Feb. 21, 2012) (same); *see also Ford v. Natural Health Trends Corp.*, No. CV 16-00255 TJH (AFM), Amended Order (C.D. Cal. Mar. 29, 2016) (Hatter, Jr., J.) (granting only two movants' **unopposed** stipulation to be

- 3 -

1   In doing so, courts sensibly recognize that to "'allow lawyers to designate

2   unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and

3   encourage lawyers to direct the litigation,'" which would "'undercut[] the primary

4   purpose of the PSLRA: to eliminate lawyer-driven litigation.'"  *Crihfield*, 2016 U.S.

5   Dist. LEXIS 181615, at *11; *Bodri*, 2016 U.S. Dist. LEXIS 57559, at *14 (same);

6   *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *25 (same); *In re Network Assocs. Sec.

7   *Litig*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("'Congress hoped that the lead

8   plaintiff would seek the lawyers, rather than having the lawyers seek the lead

9   plaintiff.'").  Thus, to avoid subverting the PSLRA's goal, the Court should not permit

10  the three Teva Investor Group members and their two sets of counsel to construct a

11  group by aggregating their losses to claim the largest loss, particularly considering

12  that no group member individually suffered the largest loss.  *See Crihfield*, 2016 U.S.

13  Dist. LEXIS 181615, at *13 (declining to aggregate group members' losses and

14  appointing movant with largest individual loss); *In re Netflix, Inc., Sec. Litig.*, 2012

15  U.S. Dist. LEXIS 59465, at *16-*19 (N.D. Cal. Apr. 27, 2012) (declining to aggregate

16

17

18  appointed lead plaintiff); *Yanek v. Staar Surgical Co.*, 2004 U.S. Dist. LEXIS 30953, at *3 (C.D. Cal. Dec. 15, 2004) (granting "***unopposed*** motion" filed by a group of

19  investors) (emphasis in original); *see also Karam v. Corinthian Colls., Inc.*, 2011 U.S. Dist. LEXIS 157041 (C.D. Cal. Mar. 30, 2011) (only movants were groups of

20  investors); *Perrin v. Sw. Water Co.*, 2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) (same); *Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) (same).  As such,

21  the Teva Investor Group's reliance on these authorities is inapposite, particularly because TIAA has the single largest loss of any entity before the Court.  *See* Dkt. No.

22  16 at 9-10 (citing cases).  In fact, one case the Teva Investor Group relies on, *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 590 n.5 (C.D. Cal. 2009), is not

23  only a class certification decision, it expressly rejects the Teva Investor Group's proposition that two distinct pension funds and an unaffiliated individual can

24  automatically aggregate their losses: "The lead plaintiff in this case is a group constituted of these New York entities" which "had relationships prior to litigation

25  and are a self-constituted group, not one artificially created by the Court."  *Id.*; *see also In re CTI Biopharma Corp. Sec. Litig.*, 2016 U.S. Dist. LEXIS 119301, at *7

26  (W.D. Wash. Sept. 2, 2016) ("it is clear that the two DAFNA entities have a relationship that predates this litigation and have not been 'assembled as a makeshift

27  by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action'"); *Eichenholtz*, 2008 U.S. Dist. LEXIS

28  64633 (rejecting groups' motions and appointing single institution as lead plaintiff).

- 4 -

1  group members' losses, particularly since another movant "has the largest loss of any

2  individual movant").[6]

3          To be sure, the PSLRA expressly contemplates that the lead plaintiff can be a

4  "person or group of persons." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  And, while the

5  PSLRA does not prohibit groups of previously unaffiliated entities from seeking joint

6  appointment as lead plaintiff, it is equally apparent that "[u]ncritical or blanket

7  acceptance" of "[a]ggregation solely for the purpose of creating a group that would

8  have the 'largest financial interest in the relief sought by the class'" "would permit

9  lawyers to designate unrelated plaintiffs as a group which would allow and encourage

10 lawyers to direct the litigation."  *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586

11 (N.D. Cal. 1999).[7]  Thus, when unrelated entities like the Teva Investor Group attempt

12 to claim the largest collective financial interest by aggregating losses, it is the group's

13 burden to show that it is a cohesive group that will operate efficiently and that the

14 group's appointment as lead plaintiff will provide some benefit to the class that would

15

16 [6]     *See*, *e.g.*, *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, 2016 U.S. Dist.
LEXIS 68952, at *19-*20 (D.N.J. May 26, 2016) (holding that group "cannot
17 aggregate their losses to serve as lead plaintiff" and appointing investor with largest
individual loss as lead plaintiff); *Petrobras*, 104 F. Supp. 3d at 622 (same); *Int'l*
18 *Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 U.S.
Dist. LEXIS 153202, at *8-*9 (S.D.N.Y. Nov. 12, 2015) (same); *Arciaga v. Barrett*
19 *Bus. Servs.*, 2015 U.S. Dist. LEXIS 22879, at *10 (W.D. Wash. Feb. 25, 2015)
(same); *In re Spectrum Pharms., Inc.*, 2014 U.S. Dist. LEXIS 38322, at *10 (D. Nev.
20 Mar. 20, 2014) (same); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y.
2012) (same); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
21 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (same).

22 [7]     *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If, for
example, a court were to determine that the movant 'group' with the largest losses had
23 been created by the efforts of lawyers hoping to ensure their eventual appointment as
lead counsel, it could well conclude, based on this history, that the members of that
24 'group' could not be counted on to monitor counsel in a sufficient manner.");
*Petrobras*, 104 F. Supp. 3d at 621-22 ("Allowing unrelated plaintiffs to band together
25 in order to manufacture a larger financial interest . . . ensures that the lawyers, who are
invariably the matchmakers behind such marriages of convenience, are the true drivers
26 of the litigation" and "creates problems of coordination, risks duplication of effort,
and reduces the incentive of any individual group member to carry out its lead
27 plaintiff duties to the fullest extent."); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S.
Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008) ("[W]hen unrelated investors are
28 cobbled together, the clear implication is that counsel, rather than the parties, are
steering the litigation.").

1   not be achieved by the appointment of a single lead plaintiff.  *See Nicolow v. Hewlett*

2   *Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *23-*24 (N.D. Cal. Mar. 4, 2013)

3   (declining to appoint group of institutions as lead plaintiff because "the Court doubts

4   its own ability to make a useful judgment as to the 'cohesiveness' of groups . . . with

5   no prelitigation relationship, and the Court is similarly skeptical that it can make an

6   informed prediction of the proposed group's ability to better supervise its lawyers than

7   the single member with the largest financial interest").[8]

8       Here, the Teva Investor Group has fallen "far short of convincing the Court the

9   group is anything but an effort to engage in 'lawyer-driven litigation.'"  *Crihfield*,

10  2016 U.S. Dist. LEXIS 181615, at *11.  Indeed, there are obvious "indication[s] that

11  the [group was] artificially created by [its] lawyers."  *Cendant*, 264 F.3d at 268.

12      First, the Teva Investor Group – a moniker arbitrarily selected by the lawyers –

13  candidly acknowledges their union was forged solely to "seek[] appointment as Lead

14  Plaintiff."  Dkt. No. 17-8 at ¶¶1-3.  Indeed, the Joint Declaration – signed the same

15  date motions were filed – contains no "'credible explanation for the group's

16  creation,'" apart from seeking appointment as lead plaintiff.  *Crihfield*, 2016 U.S.

17  Dist. LEXIS 181615, at *12 (finding joint declaration insufficient and declining to

18  appoint group); *Markette*, 2016 U.S. Dist. LEXIS 63701, at *28-*29 (same);

19  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28 (finding "no rationale for this

20  grouping other than to manufacture the greatest financial interest in order to be

21  appointed lead plaintiff").[9]

---

[8]     *See also Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009)
(recognizing that "Court must 'consider whether an appointment of previously
unrelated persons best serves the interest of the class and whether a sufficient
governance structure is in place to assure that those individuals will actually manage
the litigation'"); *Sinai Roth v. Knight Trading Grp., Inc.*, 228 F. Supp. 2d 524, 531
(D.N.J. 2002) (declining to appoint group because they "have not demonstrated the
necessity nor efficacy to the Class' benefit for such designation as joint Lead Plaintiff
and co-Lead Counsel").

[9]     *See also Lifestyle Invs.*, 2016 U.S. Dist. LEXIS 68952, at *17-*18 (group
inadequate because joint declaration confirmed that "decision for the underlying funds
to join together" "serves only the purpose of acting as lead plaintiff"); *Arciaga*, 2015
U.S. Dist. LEXIS 22879, at *10 (same); *Petrobras*, 104 F. Supp. 3d at 621 ("many

1      Second, the Joint Declaration does not explain how a representative from an

2   Oregon pension fund, an individual residing in the Netherlands and a representative of

3   a Chicago pension fund "came to know of each others' existence, strengthening the

4   inference that each was recruited by counsel." *Crihfield*, 2016 U.S. Dist. LEXIS

5   181615, at *13 (finding such an omission to be "[p]erhaps the most troubling aspect of

6   the Joint Declaration"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *26 (finding

7   group members "have not shown how and when they were joined together");

8   *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 ("when unrelated investors are

9   cobbled together, the clear implication is that counsel, rather than the parties, are

10   steering the litigation"); *Network Assocs.*, 76 F. Supp. 2d at 1025-26 (acknowledging

11   SEC's concern about "'previously unaffiliated'" groups' ability to control litigation

12   and that the "'problem is made worse if the [group] members have been recruited by

13   counsel'").

14      Third, a review of the Joint Declaration's (somewhat) substantive paragraphs

15   confirms that the Teva Investor Group did not (or could not) articulate why two

16   "sophisticated . . . institutional investors" and an "experienced businessman and

17   investor" needed to file a joint motion or why the class would benefit from such an

18   arrangement, apart from "gain[ing] the advantages of joint decision-making," which

19   are not articulated.  Dkt. No. 17-8 at ¶¶1-4, 6.[10]  In fact, most paragraphs contain

20   generalities about "shared belief[s]," "shared interests" and "common goal[s]" that

21   could be said of any class member.  *See, e.g., id.* at ¶¶4-5, 8.  For example, every class

22

23   courts, including this one, are skeptical of such [group] arrangements when they are
     the product of an artificial grouping designed merely to qualify as lead plaintiff")

24   (citing numerous cases); *Gentiva*, 281 F.R.D. at 119 (noting that "the reasons offered
     for the combination are not particularly compelling"); *Tsirekidze*, 2008 U.S. Dist.

25   LEXIS 118562, at *18 (rejecting group because "[t]here is simply no evidence that
     this 'group' has a meaningful connection"); *In re Enron Corp., Sec. Litig.*, 206 F.R.D.

26   427, 455 (S.D. Tex. 2002) (finding that there was "no clear or persuasive reason why
     [group members] have joined together").

27   [10]    Three of the Joint Declaration's paragraphs contain basic biographical
     information about the group members and three paragraphs repeat language already

28   contained in their Certifications.  *See* Dkt. No. 17-8 at ¶¶1-3, 7, 9, 18.

member shares the goal "regarding the role of investors obtaining accountability for securities fraud or other misconduct." Dkt. No. 17-8 at ¶5. And, every movant shares the "common interests in representing the interests of Teva ADS investors and maximizing the recovery for the benefit of the proposed Class." *Id.* Indeed, "[w]hile one might assume that each group member shares a common purpose or goal in obtaining a recovery in the lawsuit, the same may be said of any class member who does not opt out of the class." *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 91418, at *3-*4 (S.D.N.Y. Dec. 6, 2007); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *27-*28 (finding group's declaration "has little or no substance"). Even the group's more substantive, non-belief-type statements, like they "all plan on consulting with one another and counsel regarding the prosecution of this lawsuit" lack specifics. *Compare* Dkt. No. 17-8 at ¶11 *with Markette*, 2016 U.S. Dist. LEXIS 63701, at *22 (finding group's statements, like "their collective commitment to take an 'active role' in the case and to 'communicate regularly with counsel and each other regarding major litigation events,'" to be inadequate generalities).[11] Consequently, none of the

---

[11]      *See also Int'l Union*, 2015 U.S. Dist. LEXIS 153202, at *10-*11 (finding statement that group would "'confer via phone and/or email as necessary'" to be "conclusory assurances" that "are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation"); *Ho v. NQ Mobile, Inc.*, 2014 U.S. Dist. LEXIS 51623, at *20-*21 (S.D.N.Y. Apr. 9, 2014) (finding group's statement that members have "'implemented communication protocols to enable [them] to confer via phone and/or email' is insufficient to show that the [g]roup would be able to effectively manage litigation"); *In re Carreker Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25988, at *10 (N.D. Tex. Aug. 14, 2003) (finding "non-specific statements" that group has "'implemented procedures,' have a 'regular schedule' and will make decisions . . . on majority vote" insufficient where members "live in various cities across the United States" and "have had a joint telephone conference only once"); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074-75 (W.D. Wash. 2011) (finding that declaration's "myriad conclusory statements and generalizations," such as group "'intend[s] to work closely together'" and will "'communicat[e], individually or as a group, with each other and with counsel,'" "have little or no substance and do not further the position of this otherwise unrelated group"); *Pipefitters Local No. 636 Defined Benefit Plan*, 275 F.R.D. at 191-92 (finding that "although [group] submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008)

Joint Declaration's overgeneralizations suffice to explain how a group structure would benefit the class in this case.

Furthermore, the group's failure to provide any specifics about how it will function is particularly problematic in a case such as this when the group consists of an unlikely conglomeration of very diverse parties including a collection of Oregon pension funds, an Illinois-based pension fund and an Israeli citizen currently residing in the Netherlands. *Compare Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at \*28 (finding group's statements that it would "exercise joint decision-making" and "one vote per constituent entity" to be "conclusory" and lacking "substance") *with* Dkt. No. 17-8 at ¶¶1-3, 13 (stating only that the group will "reach unanimous decisions" and "utilize consensus decision making").[12]

Notably "absent from the joint declaration is any description of how each of the declarants themselves," that is, the Assistant Attorney General in the Oregon Department of Justice's Financial Fraud and Consumer Protection Section and the Executive Director of Chicago Teachers, "would be authorized to act on behalf of their respective entities." *Lifestyle Invs.*, 2016 U.S. Dist. LEXIS 68952, at \*18-\*19; *see* Dkt. No. 17-8 at ¶¶1-2.[13] "Presumably, these principals cannot act with unfettered

---

(rejecting the group's "conclusory assertion" that it would be able to effectively manage the litigation); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at \*28 (finding that group's "conclusory declaration has little or no substance"); *Gemstar*, 209 F.R.D. at 451 (declining to consider a group of institutions that "provide[d] little detail concerning the procedures they have implemented to 'provide for efficient prosecution of the action'"); *Sinai Roth*, 228 F. Supp. 2d at 531 (declining to appoint group because "the reasons advanced by [the group] to proceed together as Lead Plaintiff are not compelling" and they "have not demonstrated the necessity nor efficacy to the Class' benefit for such designation as joint Lead Plaintiff and co-Lead Counsel").

[12]    It is not unheard of for "fractured positions" to emerge in a once-harmonious union, or for there to be a "lack of a singular voice to advocate a position for the group." *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 750 (8th Cir. 2003) (three members of a seven member lead plaintiff group objected to settlement reached by class counsel, forcing district court to determine whether it had the authority, over the objections of several lead plaintiffs, to approve settlement).

[13]    The Oregon Public Employees Retirement System "is made up of the Pension and Retirement Fund," the "Common School Fund" and the "Higher Education Fund." Dkt. No. 17-8 at ¶1. Further, "Oregon PERS' investments are managed by the Oregon State Treasury under the direction of the Oregon Investment Council." *Id.*

discretion," so "appointing the [Teva Investor Group] as lead plaintiff would require not only the 'group' of the [Teva Investor Group] as a whole to agree on decisions, but also for each of the governing bodies of the entities comprising the [Teva Investor Group] to individually agree to those decisions as well." *Lifestyle Invs.*, 2016 U.S. Dist. LEXIS 68952, at *18-*19. Consequently, the Teva Investor Group has "failed to show that it would act with the cohesion necessary to prosecute the case effectively" because of "their apparent lack of advance planning regarding how the litigation would be managed among the three plaintiffs and two law firms." *Petrobras*, 104 F. Supp. 3d at 623.

Finally, the group's attempt to demonstrate adequacy and its ability to make unanimous decisions is undermined by the fact that the Teva Investor Group "'does not explain why it must be represented by two firms, either of which appears independently capable of prosecuting this action.'" *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *12; *Arciaga*, 2015 U.S. Dist. LEXIS 22879, at *10 (finding that group's request for "appointment of two law firms to be co-lead counsel . . . raises the concern that the group is less likely to be in control of the litigation"); Dkt. No. 17-8 at ¶16. Indeed, "[a]lthough appointment of multiple law firms as lead counsel in certain circumstances may be beneficial to the litigation of a class action, appointment of co-counsel more commonly will create needless complications, administratively and otherwise, substantial multiplicity of effort, and materially increased litigation costs and expenses." *In re Reliant Sec. Litig*, 2002 U.S. Dist. LEXIS 27777, at *10-*16 (S.D. Tex. Aug. 27, 2002) (declining to appoint multiple law firms because "more than one lead law firm . . . is not necessary for the effective representation of the proposed class"); *Boyd v. Novastar Fin., Inc.*, 2007 U.S. Dist. LEXIS 49528, at *20

---

Oregon PERS also appears to have 5 board members. *See* http://www.oregon.gov /pers/Pages/section/board_information/board_members. aspx (last visited Jan. 11, 2017). As such, there appear to be several layers of additional oversight and decision-making at Oregon PERS beyond the Assistant Attorney General. Chicago Teachers is governed by a 12-member board of trustees. *See* http://www.ctpf.org/general_info /generalindex.htm (last visited Jan. 11, 2017).

1   (W.D. Mo July 9, 2007) (recognizing that "the presence of multiple law firms can

2   have a deleterious effect[]" because "it can result in redundancies and inefficiencies").

3       Here, the group's Joint Declaration sheds no light on why two law firms were

4   selected, stating only that they "believe the proposed Class will benefit from having

5   the resources of two large and respected firms to prosecute a large and complex class

6   action such as this."  Dkt. No. 17-8 at ¶16.  Missing from that statement is any

7   demonstration regarding "what specifically about this case requires the need for co-

8   lead counsel, any agreement between the firms on division of labor and resources, and

9   any history of the proposed firms working together in similar litigation." *Miller v.*

10  *Ventro Corp.*, 2001 U.S. Dist. LEXIS 26027, at *49 (N.D. Cal. Nov. 28, 2001);

11  *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *27 (C.D.

12  Cal. May 2, 2006) (questioning why group "needs to retain two law firms to represent

13  it, either of which would appear to be sufficient in itself"); *Bell v. Ascendant*

14  *Solutions, Inc.*, 2002 U.S. Dist. LEXIS 6850, at *20 (N.D. Tex. Apr. 17, 2002)

15  (questioning group's need for multiple firms to manage case given lack of explanation

16  about "why this action is particularly complex or beyond the capabilities of each of

17  the proposed lead firms individually").  As such, the Court should be "skeptical of the

18  need to appoint [two] law firms as lead counsel in this case." *Bell*, 2002 U.S. Dist.

19  LEXIS 6850, at *20; *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *12 (questioning

20  group's failure to "explain why it must be represented by two firms"); *Boyd*, 2007

21  U.S. Dist. LEXIS 49528, at *20 (noting that "no justification has been offered" for the

22  selection of multiple firms).

23      In sum, the Teva Investor Group did not suffer the largest loss without their

24  counsel's artificial aggregation of the members' individual losses and the group failed

25  to justify its existence such that the Court could "make a useful judgment as to the

26  'cohesiveness'" of the group given that it lacks a "prelitigation relationship" and was

27  unable to agree on a single law firm as its counsel. *Nicolow*, 2013 U.S. Dist. LEXIS

28  29876, at *23-*24; *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Serv.*, 269 F.R.D.

- 11 -

291, 294 (S.D.N.Y. 2010) (denying motion by group of institutions because court saw "no reason that joint lead plaintiffs would serve that interest any greater than the appointment of a single, experienced, institutional investor").  When, as here, the "'proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied.'" *Apple*, 2008 U.S. Dist. LEXIS 12618, at *10.

### 1.    Mr. Kleinerman Is Individually Subject to Unique Defenses

"Typicality is not satisfied when a proposed lead plaintiff is subject to a unique defense, which could become the focus of the litigation." *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *17.  Beyond the group issues discussed above, Mr. Kleinerman is individually subject to various unique defenses that further render him unsuitable for appointment as lead plaintiff.[14]

As a preliminary matter, little is known about Mr. Kleinerman other than he "currently reside[s] in the Netherlands."  Dkt. No. 17-8 at ¶3.  It is highly peculiar that there is virtually no public information for an individual who claims to have an investment in Teva approaching the size of TIAA's – one of the world's largest retirement providers with almost $1 trillion in assets under management – and exceeding that of his fellow group members, both large public pension funds, combined.

According to LinkedIn, Mr. Kleinerman is an independent investment management professional affiliated with Fortuna Holdings BV.  *See* Declaration of Danielle S. Myers in Support of Memorandum of Law in Opposition to Competing Lead Plaintiff Motions ("Myers Opp. Decl."), Ex. 1.  Other internet sources indicate

---

[14]    Mr. Kleinerman's membership in the Teva Investor Group is notable considering his recent vigorous opposition to a similar group of unrelated entities in *Roofers' Pension Fund v. Papa*, No. 2:16-cv-02805, Dkt. No. 18 at 6 (D.N.J. Aug. 1, 2016) (characterizing group as "a lawyer-created group manufactured for purposes of this litigation").  Mr. Kleinerman also emphasized his adequacy was evidenced by his selection of a single law firm, rather than multiple law firms.  *Id.* at 29 (contending that his single law firm "will enhance the efficiency with which this action is litigated").

that Mr. Kleinerman is affiliated with Touareg Consulting Ltd., an Israeli investment firm.  *See* Myers Opp. Decl., Exs. 2-3.[15]  If Mr. Kleinerman's Teva investment was not made directly in his name solely for his benefit, he would be subject to a disabling standing challenge because he would not have suffered an injury in fact.  *See W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108, 111 (2d Cir. 2008) (holding that plaintiff did not meet Article III's injury-in-fact requirement where the plaintiff, an investment advisor, had authority to make investment decisions and to litigate on its investor clients' behalf but the clients had never transferred ownership of stock to the plaintiff).

Defendants will like challenge Mr. Kleinerman's typicality based on the fact that he engaged in nearly 1,300 transactions in Teva ADRs during the Class Period, and on at least 89 occasions he bought and sold shares on the same day to exploit incremental price fluctuations of as little as 3 cents.  *See, e.g.,* Dkt. No. 28 at page 5 of 40 (buying/selling 2,000 shares on 7/17/14 for 3 cent difference; buying/selling 4,372 shares on 8/13/14 for 10 cent difference).  Thus, as compared to other putative class members (like TIAA), a trader like Mr. Kleinerman "would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, **not** upon daily market volatility."  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36.  And while the "record before the court may be insufficient to establish that [Mr. Kleinerman] was a day-trader *qua* day-trader," it "is sufficient, however, to

---

[15]     Several years ago, in February 2009, it was reported that individuals affiliated with Mr. Kleinerman were being investigated for insider trading and had been arrested.  *See* Myers Opp. Decl., Ex. 3.  The insider trading was allegedly conducted via several Touareg accounts, which Mr. Kleinerman owns.  *Id.*; *see generally Xianglin Shi v. SINA Corp.,* 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) (disqualifying group whose member with the largest loss pled guilty to providing false information to a financial institution); *Network Assocs.,* 76 F. Supp. 2d at 1029 (disqualifying entity that was "under investigation for criminal fraud violations" in which an executive had been arrested for various offenses); *In re Proxima Corp. Sec. Litig.,* 1994 U.S. Dist. LEXIS 21443, at *48-*50 (S.D. Cal. May 4, 1994) (disqualifying class representative that admitted to fraud); *Weisman v. Darneille,* 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (court declined to appoint individual convicted of insider trading as class representative in securities fraud action).

raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by [Teva]."  *Applestein v. Medivation, Inc.*, 2010 U.S. Dist. LEXIS 98255, at *10 (N.D. Cal. Sept. 17, 2010); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36 (same); *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *18 ("While a day trader is not ipso facto disqualified from the lead plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class.").[16]

Indeed, as the SEC concluded, traders that employ strategies like Mr. Kleinerman did here do not invest; rather, they "rapidly buy and sell stocks throughout the day in the hope that their stocks will continue climbing or falling in value for the seconds to minutes they own the stock."  *See* http://www.sec.gov /answers/daytrading.htm (last visited Jan. 12, 2017).  As a high volume and position trader throughout the Class Period that did not report his holdings to the SEC, Mr. Kleinerman is subject to obvious unique defenses.  *See George v. China Auto. Sys., Inc.*, 2013 U.S. Dist. LEXIS 93698, at *19 (S.D.N.Y. July 3, 2013) (denying class certification in part because plaintiffs "subject themselves to unique inquiries regarding their trading patterns and why they made investment decisions, whether the fraud was in fact irrelevant to their purchasing and sale decisions," which "inquiries will also require considerable time and resources and indeed threaten to become the focus of the litigation").

---

[16]     *See also Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, slip op. at 6-7 (N.D. Tex. Sept. 19, 2013) (denying motion by investor who engaged in pattern of "buying and selling [company] stock on the same day" because such activity "raises serious concerns about his typicality and his susceptibility to unique defenses") (Myers Opp. Decl., Ex. 4); *Bang v. Acura Pharms., Inc.*, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11, 2011) ("high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions"); *In re Opnext, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 60678, at *10 (D.N.J. Aug. 6, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses"); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (noting that day traders often focus on technical price movements rather than price).

- 14 -

Because each of these issues further subject both the Teva Investor Group and Mr. Kleinerman to unique defenses, their motion should be denied.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (lead plaintiff cannot be "subject to unique defenses").

### B.      Ontario Teachers Is Ineligible for the PSLRA Presumption

Ontario Teachers claims to have suffered approximately half the loss TIAA suffered on its investment in Teva ADRs during the Class Period:

| *Movant* | *Losses Asserted in Motion* |
|---|---|
| **TIAA** | **($42.5 million)** |
| Ontario Teachers' Pension Plan | ($23.2 million) |

*See* Dkt. No. 22 at 6; Dkt. No. 25 at 2, 10.  Consequently, the Ontario Teachers cannot trigger the PSLRA's most adequate plaintiff presumption.  *Cavanaugh*, 306 F.3d at 730.

Moreover, while Ontario Teachers mentions a few times that it purchased shares in Teva's December 3, 2015 secondary offering (Dkt. No. 25 at 3, 12), neither Complaint even mentions, let alone alleges any claims associated with, that offering. *See Galmi* Complaint; *Leone* Complaint.  As such, shares purchased in the December 2015 secondary offering are not part of the "relief sought by the class" defined in either Complaint.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Even assuming the offering was mentioned in either Complaint, TIAA also purchased Teva ADRs in that same offering.  *See* Dkt. No. 23-2, 23-3.  Consequently, this fact is not relevant to the Court's lead plaintiff determination.  *See In re Century Bus. Servs., Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (movants "cannot simply define the class they seek to represent").

Because Ontario Teachers suffered a smaller loss than TIAA, its motion should be denied.

### C.      The Remaining Candidates Claim Smaller Losses than TIAA and Their Motions Should Be Denied

The other movants all claim substantially smaller losses than TIAA:

- 15 -

| *Movant* | *Losses Asserted in Motion* |
|---|---|
| **TIAA** | **($42.5 million)** |
| Robert Brosnan | ($2.3 million) |
| Wayne County ERS | ($575,670) |
| City of Roseville ERS | ($126,196) |
| Waterford Township Police and Fire Ret. Sys. | ($99,600) |
| | Aggregated Loss: ($814,014)[17] |

*See* Dkt. No. 9 at 6; Dkt. No. 14-1 at 2; Dkt. No. 16 at 2, 9; Dkt. Nos. 17-5-17-7; Dkt. No. 22 at 6; Dkt. No. 25 at 2, 10. Thus, pursuant to the PSLRA's sequential process, the Court may only consider their motions "if and only if [TIAA is] found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732. Because TIAA is "both willing to serve and satisfies the requirements of Rule 23," however, the other motions should be denied. *Cavanaugh*, 306 F.3d at 730.

### D.   TIAA Is the Presumptive Lead Plaintiff and Its Motion Should Be Granted

TIAA was founded in 1918 by the Carnegie Foundation for the Advancement of Teaching and is the principal retirement system for the nation's education and research communities. TIAA currently manages nearly $1 trillion in assets for the benefit of almost four million individuals and is one of the largest retirement systems in the world based on assets under management. TIAA also offers traditional annuities, as well as variable annuities that invest, among other things, in real estate and in mutual funds that invest in equities and fixed income investments.

Unlike the other movants, TIAA is the quintessential lead plaintiff: "a single, organized coordinated organization represented by a competent and resourceful law firm." *Enron*, 206 F.R.D. at 458. TIAA suffered the single largest loss of any movant before the Court and is eminently qualified to serve as lead plaintiff in this case.

---

[17]   Even if it had a larger loss, the group of Michigan pension funds could not be appointed because it suffers from the same grouping issues as the Teva Investor Group. *See supra* §II.A.

- 16 -

1225908_1

1    To rebut the presumption in favor of TIAA's appointment here, the PSLRA

2    requires the other movants to submit "proof" that TIAA "will not fairly and

3    adequately protect the interests of the class," or "is subject to unique defenses."  15

4    U.S.C. §78u-4(a)(3)(B)(iii)(II).  None exists.

5    Ultimately, because no movant can rebut the presumption in favor of TIAA's

6    appointment as lead plaintiff, its motion should be granted.  The other motions should

7    be denied.

8    **III.    CONCLUSION**

9    The competing lead plaintiff candidates either artificially aggregated their

10   losses solely in an attempt to be designated lead plaintiff or suffered significantly

11   smaller losses than TIAA.  Consequently, their motions should be denied.

12   By contrast, the Court should find that TIAA is entitled to the "most adequate

13   plaintiff" presumption based on its largest individual loss, qualifications and selection

14   of a highly qualified law firm to serve as lead counsel.  *See* 15 U.S.C. §78u-

15   4(a)(3)(B)(iii).  Its motion should be granted.

16   DATED:  January 13, 2017              Respectfully submitted,

17                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
18                                          DARREN J. ROBBINS
                                            DANIELLE S. MYERS
19

20                                                s/ Danielle S. Myers
21                                            DANIELLE S. MYERS

22                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
23                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
24
                                            [Proposed] Lead Counsel for Plaintiff
25

26

27

28

1225908_1

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on January 13, 2017, I authorized the electronic filing of

3 the foregoing with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the attached Electronic

5 Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6 document or paper via the United States Postal Service to the non-CM/ECF

7 participants indicated on the attached Manual Notice List.

8      I certify under penalty of perjury under the laws of the United States of America

9 that the foregoing is true and correct.  Executed on January 13, 2017.

10                                           s/ Danielle S. Myers
                                           DANIELLE S. MYERS

11

12                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
13                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
14                                           619/231-7423 (fax)

15                                           E-mail:      dmyers@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

1225908_1

## Mailing Information for a Case 2:16-cv-08259-TJH-AS Amram Galmi v. Teva Pharmaceutical Industries Limited et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Richard D McCune , Jr**
  rdm@mccunewright.com,ams@mccunewright.com,ama@mccunewright.com,led@mccunewright.com,ece@mccunewright.com,mmv@mccunewright.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Lesley E Weaver**
  lweaver@bfalaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)