JENNIFER PAFITI
**POMERANTZ LLP**
468 NORTH CAMDEN DRIVE
BEVERLY HILLS, CA 90210
TELEPHONE: (818) 532-6499

STEVEN J. TOLL (*pro hac vice forthcoming*)
DANIEL S SOMMERS (*pro hac vice forthcoming*)
JULIE G. REISER (*pro hac vice forthcoming*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 NEW YORK AVE, N.W., SUITE 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600

CAROL V. GILDEN (*pro hac vice forthcoming*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 S. LASALLE STREET, STE 1705
CHICAGO, IL 60603
TELEPHONE: (312) 357-0370

*Proposed Co-Lead Counsel for Movant*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRAM GALMI, Individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH<br><br>　　　　Defendants. | Case:　2:16-cv-08259-TJH-AS<br><br>DATE:　　　　February 6, 2017<br>TIME:　　　　UNDER SUBMISSION<br>CTRM:　　　　9B<br>JUDGE:　　　Hon. Terry J. Hatter |

*(Additional caption on next page)*

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER
SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE
COMPETING MOTIONS**

| | |
|---|---|
| ANTHONY LEONE, Individually and on behalf of all others similarly situated, | ) ) ) Case No. 2:16-cv-09545-DSF-AFM |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN | ) ) ) ) ) |
| Defendants. | ) ) ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- ii -

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 4

   A. The Motions to Consolidate the Related Actions Should Be Granted ........... 4

   B. The Teva Investor Group is the Presumptive Lead Plaintiff ......................... 5

   C. The Teva Investor Group has the Largest Financial Interest in This
      Litigation .................................................................................................... 6

   D. The Teva Investor Group Otherwise Satisfies the Typicality and Adequacy
      Requirements of Rule 23 ............................................................................ 8

   E. The Presumption in Favor of the Teva Investor Group's Adequacy Cannot
      Be Rebutted ................................................................................................ 9

   F. The Competing Motions Should Be Denied ............................................... 12

      1.     A Single Member of the Teva Investor Group – Mr. Kleinerman --
          Has the Largest Loss of Any Individual Movant ................................ 12

      2.     The TIAA Group's Reported Losses are Significantly Overstated
          Because Five of the TIAA Group's Funds' Losses Were Not Caused
          By the Alleged Fraud ........................................................................ 15

V.     CONCLUSION ........................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re: A-Power Energy Generation Systems Ltd Sec. Litig.*,
  MDL 11-2302-GW(CWx), Dkt. No. 14 (C.D. Cal. Jan. 9, 2012) ................ 3, 11

*Andrade v. Am. Apparel, Inc.*,
  No. 10-06352 MMM 2011 U.S. Dist. LEXIS 79795 (C.D. Cal.
  Mar. 15, 2011) ..................................................... 8

*In re Ariad Pharm., Inc. Sec. Litig.*,
  98 F.Supp.3d 147 (D. Mass. 2015).................................... 10

*Bodri v. GoPro, Inc.*,
  No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal.
  Apr. 28, 2016)..................................................... 11

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
  No. 2:12-cv-00042-BLW, 2012 U.S. Dist. LEXIS 97187 (D. Idaho
  July 12, 2012) ..................................................... 9

*Bruce v. Suntech Power Holdings Co., Ltd.*,
  No. 12-4061, 2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13,
  2012).............................................................. 14

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002).................................... *passim*

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................... 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 NGG RER, 2007 WL 680779 (E.D.N.Y. Mar. 2,
  2007)........................................................... 16, 17

*Cook v. Atossa Genetics, Inc.*,
  No. C13-1836-RSM, 2014 U.S. Dist. LEXIS 19218 (W.D. Wash.
  Feb. 14, 2014)................................................. 6, 9, 11

{00226501;1 }

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE TEVA INVESTOR
GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- ii -

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  No. C 03–2522 MHP, 2006 WL 1180267 (N.D. Cal. May 3, 2006) ................ 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................... 15, 16, 17

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22,
  2008) ................................................................. 7, 10, 15

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ......................................... 7, 9, 10

*Foster v. Maxwell Techs., Inc.*,
  No. 13-cv-0580, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct.
  24, 2013) ..................................................................... 17

*Frias v. Dendreon Corp.*,
  835 F. Supp. 2d 1067 (W.D. Wash. 2011) ........................................ 6

*Grayson v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 65036 (C.D. Cal.
  May 7, 2014) .................................................................. 1

*Griggs v. Vital Therapies, Inc.*,
  No. 15-CV-2700 JLS (NLS), 2016 U.S. Dist. LEXIS 122689 (N.D.
  Cal. May 2, 2016) ............................................................ 11

*Hodges v. Immersion Corp.*,
  2009 U.S. Dist. LEXIS 122565, No. C-09-4073 MMC (N.D. Cal.
  Dec. 21, 2009) ................................................................ 8

*In re Host America Corp. Sec. Litig.*,
  236 F.R.D. 102 (D. Conn. 2006) ............................................... 10

*In re Inso Corp.*,
  No. 99-cv-10193-WGY, ECF No. 17 (D. Mass. Apr. 28, 1999) ..................... 10

*Johnson v. Pozen Inc.*,
  No. 1:07-CV-599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ..................... 10

*Knox v. Yingli Green Energy Holding Co.*,
    No. 2:15-cv-04003-ODW, 2015 U.S. Dist. LEXIS 137069 (C.D.
    Cal. Oct. 6, 2015) ............................................................................. 6

*Kops v. NVE Corp.*,
    2006 U.S. Dist. LEXIS 49713 (D.Minn. July 17, 2006) .................................... 16

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6,
    1997) ................................................................................................ 6

*Leone v. Teva Pharmaceutical Industries Ltd., et al.*,
    2:16-cv-9545-9528-DSF (S.D.N.Y.) .............................................. 4, 16

*Marjanian v. Allied Nev. Gold Corp.*,
    3:14-cv-0175, 2015 U.S. Dist. LEXIS 2782 (D. Nev. Jan. 8, 2015) ................. 17

*McCracken v. Edwards Lifesciences Corp.*,
    No. 13-cv-1463, 2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8,
    2014) ................................................................................................ 4

*In re MGM Mirage Sec. Litig.*,
    No. 2:09-cv-01558-GMN-LRL, 2010 U.S. Dist. LEXIS 120061
    (D. Nev. Oct. 25, 2010) ................................................................... 9

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15,
    2011) .............................................................................................. 15

*Perrin v. Southwest Water Co.*,
    2:08-cv-87844-FMC, 2009 U.S. Dist. LEXIS 134154 (C.D. Cal.
    Feb. 12, 2009) ................................................................................. 9

*Richardson v. TVIA, Inc.*,
    No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal.
    Apr. 16, 2007) ................................................................................. 6

*Ruland v. InfoSonics Corp., No. 06CV1231 BTMWMC*,
    2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ....................................... 1

*Sabbagh v. Cell Therapeutics, Inc.*,
    No. C10-414MJP, 2010 U.S. Dist. LEXIS 93614 (W.D. Wash.
    Aug. 20, 2010) .......................................................................................... 9, 13

*Schueneman v. Arena Pharm., Inc.*,
    No. 10cv1959 ................................................................................................. 4

*Shenwick v. Twitter, Inc.*,
    No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714 (N.D. Cal.
    Dec. 22, 2016) ............................................................................................. 11

*Smilovits v. First Solar, Inc., et al.*,
    No. 12-0555, 2012 U.S. Dist. LEXIS 102032 (D. Ariz. July 23,
    2012) ......................................................................................................... 12, 13

*Takara Trust v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) .................................................................. 10

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) .................................................................... 6

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*,
    No. 5:11-cv-05235-RMW, 2012 U.S. Dist. LEXIS 21590 (N.D.
    Cal. Feb. 21, 2012) ........................................................................................ 9

*Zhamukhanov v. AcelRx Pharms., Inc.*,
    No. 14-cv-04416-LHK, 2015 U.S. Dist. LEXIS 22180 (C.D. Cal.
    Feb. 24, 2015) ................................................................................................ 6

STATUTES

15 U.S.C. § 78u-4 .................................................................................................*passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 23.................................................................................................. 3, 5, 7, 8

Oregon Public Employees Retirement System ("Oregon PERS"), the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers") and Dan Kleinerman ("Kleinerman" together with Oregon PERS and Chicago Teachers, the "Teva Investor Group" or "Movant"), respectfully submit this memorandum of law in further support of its motion for consolidation, appointment as Lead Plaintiff and approval of its selection of Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") and Pomerantz LLP as Lead Counsel and in opposition to the competing motions.[1]

## I.   INTRODUCTION

On January 5, 2016, five motions[2] were filed in the above-captioned actions seeking appointment as Lead Plaintiff. The movants and their computed losses in

---

[1] Central District of California Local Rule 7-9 set the deadline for filing of movants' oppositions as no later than twenty-one days before the date designated for the motion's hearing, or January 16, 2017, which because of the holiday weekend, moved the deadline to Friday, January 13, 2017. Counsel, however, erroneously calendared the opposition deadline (we had calendared it for being due on Tuesday, January 17, 2017) and, immediately upon realizing this error, have filed this opposition brief at approximately 9:15 a.m. PST on January 14, 2015. Counsel have not seen the opposition briefs filed by the competing movants and thus have not changed this memorandum to account for any of the competing movants' arguments. Counsel respectfully submit that because there is no prejudice to the competing movants, and Replies are still to be filed, the Teva Investor Group's opposition should be accepted. *Grayson v. Allstate Ins. Co.,* 2014 U.S. Dist. LEXIS 65036 (C.D. Cal. May 7, 2014) (opposition brief filed 4 days late caused "no prejudice" and was therefore accepted). We apologize to the Court and the other movants for this error.

[2] The four other motions were filed by: (1) the Ontario Teachers' Pension Plan Board ("Ontario Teachers"); (2) Robert Brosnan ("Brosnan"); (3) the Wayne County Employees' Retirement System, the City of Roseville Employees' Retirement System, and the Waterford Township Police and Fire Retirement System ("Municipal Retirement Funds"); and (4) the movant collectively referred to as TIAA, which is in reality a Group composed of nine different funds and accounts: (i) TIAA-CREF International Equity Index Fund; (ii) TIAA-CREF

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE TEVA INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 1 -

Teva ADRs, as well as other relevant metrics routinely considered by courts within the Ninth Circuit and elsewhere uniformly demonstrate that the Teva Investor Group has the largest financial interest in this action and is the presumptive lead plaintiff. These metrics – which are often referred to as the *Lax/Olsten* factors,[3] are as follows:

| Movant | Total ADRs | Net ADRs | Total Net Expenditure | LIFO Computed Losses |
|---|---|---|---|---|
| **Teva Investor Group** | **8,721,133** | **2,647,631** | **$147,955,640.73** | **$47,843,638.24** |
| TIAA Group of 9 Funds | 6,326,686 | 1,750,084 | $108,577,676.19 | $42,525,806.72 |
| Ontario Teachers | 1,401,900 | 990,000 | $57,682,095.35 | $23,236,125.89 |
| Brosnan | 111,575 | 111,575 | $6,503,456.01 | $2,303,773.01 |
| Municipal Retirement Funds | 51,848 | 37,313 | $2,191,995.38 | $801,466.99 |

Accordingly, it is immediately clear that the Teva Investor Group has the largest financial interest in this litigation by *all* the measures courts traditionally rely on in evaluate a lead plaintiff candidate's financial interest. The Teva Investor Group has more than *$5 million more* in computed losses than the TIAA Group, the next largest movant; it also net expended nearly *$40 million more*; purchased nearly *1 million more* net American Depositary Receipts ("ADRs"); and more than *2 million more* total ADRs than the TIAA Group. Moreover, as explained further below, the TIAA Group's asserted losses are inflated by nearly $20 million because it includes so-called "in and out" traders for which Supreme Court precedent expressly bars any recovery. Thus, those alleged "losses" are not losses and should be excluded from the total asserted by the TIAA Group. After

---

Large-Cap Growth Fund; (iii) TIAA-CREF Enhanced International Equity Index Fund; (iv) TIAA CREF Growth & Income Fund; (v) the TIAA-CREF Life Growth Equity Fund; (vi) TIAA-CREF Life Growth & Income Fund; (vii) CREF Stock Account; (viii) CREF Global Equities Account; and (ix) CREF Growth Account.

[3] S*ee Ruland v. InfoSonics Corp., No. 06CV1231 BTMWMC*, 2006 WL 3746716, at *4 (S.D. Cal. Oct. 23, 2006) (setting forth the four *Lax/Olsten* factors).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 2 -

subtracting the nearly $20 million of "losses" that the TIAA Group incurred *before the fraud was even revealed, and that could not possibly have been caused by the fraud alleged in the operative complaints*, the conclusion that the Teva Investor Group has the largest financial interest becomes all the more inevitable. Indeed, the TIAA Group's losses actually are less than those claimed by Ontario.

Importantly, under the Ninth Circuit's decision in *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002), *no other candidate may even be considered* unless and until another movant has proven, through evidence, that the Teva Investor Group is inadequate. *See id.* ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest…"). Because there is no such evidence or proof, the Teva Investor Group should be appointed lead plaintiff.

Indeed, the Teva Investor Group is precisely the type of small, cohesive group of sophisticated investors envisioned by the PSLRA, and routinely selected by courts around the country to serve as lead plaintiff. Indeed, it is smaller than the group of "five businessmen" that the Ninth Circuit deemed the presumptively most adequate lead plaintiff in *Cavanaugh itself. See id.* at 739 ("The district should proceed based on the presumption that the Cavanaugh group is the most adequate plaintiff and has made a prima facie showing of satisfying the requirements of Rule 23."); *see also In re: A-Power Energy Generation Systems Ltd. Securities Litigation*, No. 11-ml-02302, ECF No. 14 (C.D. Cal. Jan. 9, 2012) (appointing group of five individuals comprising the A-Power Investor Group over objection of a movant whose individual loss was greater than any of the five individuals in the group, but less than the group's total collective loss) (decision attached hereto as Exhibit 1).

Oregon PERS, Chicago Teachers and Mr. Kleinerman are all highly sophisticated and experienced investors. They are decidedly ***not*** small, retail investors with limited ability to control the litigation. Indeed, before seeking

appointment as lead plaintiff, Oregon PERS, Chicago Teachers and Mr. Kleinerman first held a conference call to ensure it made sense to seek joint appointment. Satisfied that they would be able to carry out their lead plaintiff duties as a group, they decided to file the motion under consideration, and submitted a joint declaration attesting to their plans for leading the litigation. *See* Pafiti Decl., Ex. H (Dkt. No. 17-8).

Accordingly, the Teva Investor Group's motion to be appointed Lead Plaintiff should be granted, and the competing motions should be denied.

## II.   ARGUMENT

### A.   The Motions to Consolidate the Related Actions Should Be Granted

The Teva Investor Group, Mr. Brosnan, Ontario Teachers and the TIAA Group of funds have all moved for consolidation of the Related Actions, *Galmi v. Teva Pharmaceutical Industries Ltd.,* et al., 2:16-cv-8259-TJH (C.D. Cal.) and *Leone v. Teva Pharmaceutical Industries Ltd., et al.*, 2:16-cv-9545-9528-DSF (S.D.N.Y.). These actions present identical factual and legal issues and allege the same violations of the federal securities laws against the same defendants based on the same underlying facts and circumstances. *McCracken v. Edwards Lifesciences Corp.*, No. 13-cv-1463, 2014 U.S. Dist. LEXIS 2147, at *7 (C.D. Cal. Jan. 8, 2014) (granting consolidation where "[b]oth actions allege the same violations of the Exchange Act against the same defendants based on the same series of statements made by [the Company] and its representatives."). *See also Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *8-9 (S.D. Cal. Aug. 8, 2011) ("Class action shareholder suits in particular are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned.")

Because four of the five lead plaintiff movants have similarly moved for consolidation of the Related Actions, and because the Related Actions contain the same factual and legal issues, the Related Actions should be consolidated.

## B.     The Teva Investor Group is the Presumptive Lead Plaintiff

Section 21D of the PSLRA, 15 U.S.C. § 78u-4, establishes a "simple three-step" sequence for identifying the most adequate lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); 15 U.S.C. § 78u-4(a)(1). First, notice of the pendency of the action, the claims made, and the purported class period must be published "in a widely circulated national business-oriented publication or wire service," and must state that "any member of the purported class may move the court to serve as lead plaintiff." *Cavanaugh*, 306 F.3d at 729; 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the Court "must consider the losses allegedly suffered" by the competing movants for lead plaintiff appointment and select as the "presumptively most adequate plaintiff" the movant with "the largest financial interest in the relief sought by the class" and who "otherwise satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure." *Cavanaugh*, 306 F.3d at 729-30; 15 U.S.C. § 78u-4(a)(3)(B). Third, the Court must consider whether any evidence exists sufficient "to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the Teva Investor Group is clearly the presumptive lead plaintiff in this Action. First, there is no dispute that the PSLRA's publication requirement has been satisfied.[4] Second, the Teva Investor Group is a small and coordinated group

---

[4]  All of the competing movants noted the satisfaction of the publication requirement in their initial memoranda of law in support of their respective

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL IN OPPOSITION TO THE COMPETING MOTIONS

- 5 -

and has the largest financial interest in the litigation. Third, no evidence exists to rebut the presumption in favor of the Teva Investor Group's adequacy and the typicality of its claims.

### C.    The Teva Investor Group has the Largest Financial Interest in This Litigation

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or ***group*** of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added).[5] While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts around the country recognize that the amount of financial loss is the most significant factor to be considered. *See*, *e.g.*, *Zhamukhanov v. AcelRx Pharms., Inc.*, No. 14-cv-04416-LHK, 2015 U.S. Dist. LEXIS 22180, at *9 (C.D. Cal. Feb. 24, 2015) ("District courts have equated financial interest with actual economic losses"); *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *13-*14 (N.D. Cal. Apr. 16, 2007) ("the approximate losses suffered [is] most determinative in identifying the plaintiff with the largest financial loss"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding the amount of the financial loss "the most significant" factor). In addition to the amount of the amount of the financial loss, courts consider other metrics including the number of shares purchased during a class period, the

---

motions. *See* Dkt. No. 14-1 at 3; Dkt. No. 16 at 7; Dkt. No. 22 at 6; Dkt. No. 25 at 9; Dkt. No. 9 at 3.

[5] As discussed more fully herein, "there is no question that a group of investors can serve as lead plaintiff" and that its members' losses are "properly aggregated . . . to demonstrate the largest financial interest." *Cook v. Atossa Genetics, Inc*., No. C13-1836-RSM, 2014 U.S. Dist. LEXIS 19218, at *15 (W.D. Wash. Feb. 14, 2014), quoting *Frias v. Dendreon Corp*., 835 F. Supp. 2d 1067, 1072 (W.D. Wash. 2011) (internal quotations omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL IN OPPOSITION TO THE COMPETING MOTIONS

- 6 -

1  number of net shares purchased during a class period, and the total net funds

2  expended during a class period in connection with the purchases. *See Lax v. First*

3  *Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at

4  *17 (N.D. Ill. Aug. 6, 1997); *see also Knox v. Yingli Green Energy Holding Co.*,

5  No. 2:15-cv-04003-ODW (MRWx), 2015 U.S. Dist. LEXIS 137069, at *8 (C.D.

6  Cal. Oct. 6, 2015) (applying *Lax* factors).

7        In this case, the Court's analysis is simple and straight-forward because the

8  Teva Investor Group possesses the largest financial interest in the litigation under

9  every metric relied upon by courts. As detailed *supra* at p. 2, even accepting

10  without questioning each of the competing loss submissions, the Teva Investor

11  Group's computed ADR losses of $47,843,638.24 are larger than those of any

12  competing movant, and are roughly $5.3 million (or 12 percent) larger than the

13  losses alleged by the TIAA Group of funds, the movant with the second-largest

14  losses. The Teva Investor Group therefore possesses a greater financial interest in

15  the Action than the financial interest of any other movant.

16        The same result applies when each of the other metrics are analyzed. In

17  particular, the Teva Investor Group retained more Teva ADRs at the end of the

18  Class Period than did any competing movant – 2,647,631, nearly one million more

19  than the TIAA Group of funds collectively purports to have retained. The Teva

20  Investor Group also purchased the greatest number of ADRs during the Class

21  Period– 2.4 million ADRs more than the next largest movant, the TIAA Group of

22  funds – and, by far, has the largest amount of net funds expended - $39 million

23  more than the TIAA Group of funds. As the movant with the largest financial

24  interest in all four metrics at the end of the Class Period, the Teva Investor Group

25  has the greatest financial interest in the litigation under any methodology.

26

27

28

### D.   The Teva Investor Group Otherwise Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to possessing the greatest financial interest, the Teva Investor Group otherwise satisfies the adequacy and typicality requirements of Rule 23. At the lead plaintiff appointment stage, the Rule 23 inquiry is less searching than at the class certification stage, and requires only a *prima facie* showing based on "the information [the movant] has provided in his pleadings and declarations". *Cavanaugh*, 306 F.3d at 730; *see also Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004); *Schriver v. Impac Mortg. Holdings, Inc.*, SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *15-*16 (C.D. Cal. May 1, 2006). As set forth in greater detail in its initial Memorandum of Points and Authorities in support of the instant motion (the "Opening Brief") (Dkt. No. 16), the Teva Investor Group's claims are based upon the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members." (Opening Brief at 20.) Likewise, the Teva Investor Group's certifications pursuant to the federal securities laws (Dkt. Nos. 17-2 - 17-4), its Joint Declaration detailing its members' motivation and intention to oversee this litigation (Dkt. No. 17-8), and its selection of experienced and capable counsel in Cohen Milstein and Pomerantz, demonstrate that the Teva Investor Group does not have interests antagonistic to the proposed class and will adequately represent the interests of the proposed class. (Opening Brief at 20.) Accordingly, the Teva Investor Group has made a *prima facie* showing that it well satisfies the adequacy and typicality requirements of Rule 23.

Because the Teva Investor Group has the largest financial interest in the litigation and otherwise satisfies the adequacy and typicality requirements of Rule 23, it is the "presumptively most adequate plaintiff" of the Class. *Cavanaugh*, 306 F.3d at 729-30; 15 U.S.C. § 78u-4(a)(3)(B).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 8 -

### E.   The Presumption in Favor of the Teva Investor Group's Adequacy Cannot Be Rebutted

Having demonstrated that it has the greatest financial interest in the litigation and Having demonstrated that it has the greatest financial interest in the litigation and otherwise satisfies the requirements of Rule 23, the presumption in favor of the Teva Investor Group's adequacy can **only** be rebutted upon **proof** that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut the PLSRA's presumption of adequacy. *See, e.g., Andrade v. Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx) 2011 U.S. Dist. LEXIS 79795, at *34-*35 (C.D. Cal. Mar. 15, 2011); *Hodges v. Immersion Corp.*, 2009 U.S. Dist. LEXIS 122565, No. C-09-4073 MMC, at *10-*12 (N.D. Cal. Dec. 21, 2009) (evidence-based arguments require to rebut the PLSRA's presumption of adequacy); *In re Cendant Corp. Litig.*, 264 F.3d 201, 269-70 (3d Cir. 2001) (mere "[a]llegations of impropriety" are not proof within meaning of the PSLRA).

The PSLRA expressly allows groups to serve as lead plaintiff. Courts throughout the country, particularly those in the Ninth Circuit, routinely recognize the propriety of appointing such groups, particularly when they have shown that they are cohesive and capable of overseeing counsel and the litigation. Thus, although challenges to the adequacy of the Teva Investor Group's typicality and/or adequacy are likely, those challenges are specious and can be readily rejected. *See, e.g. Cook v. Atossa Genetics, Inc.*, No. C13-1836-RSM, 2014 U.S. Dist. LEXIS 19218, at *15 (W.D. Wash. Feb. 14, 2014) (finding that "plaintiffs need not have a pre-existing relationship to properly aggregate loss" and appointing group of three individual investors).[6]

---

[6] *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 U.S. Dist. LEXIS 93614, at *14, *18 (W.D. Wash. Aug. 20, 2010) (aggregating losses of lead plaintiff group despite its members "lack of a pre-existing relationship" where

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL IN OPPOSITION TO THE COMPETING MOTIONS

- 9 -

1    As the court held in *Ferrari v. Gisch*, 225 F.R.D. 599, 608 (C.D. Cal. 2004),

2    "[s]ince the statute expressly authorizes the appointment of a "group" of persons to

3    serve as Lead Plaintiffs, the key question is whether the proposed plaintiff group

4    can effectively manage the litigation and direct lead counsel."[7] Here, the Teva

5    Investor Group includes two prominent public pension funds, the group is limited

6    to three, and the group is cohesive. Prior to seeking appointment as Lead Plaintiff,

7    the members of the Teva Investor Group participated in a telephonic conference in

8    which they discussed, *inter alia*: their obligations as lead plaintiff; their intent to

9    supervise their lawyers actively and direct the course of the litigation; their shared

10   group submitted "sworn declarations detail[ing] their investments . . . and
     demonstrating their willingness to represent the class"); *In re MGM Mirage Sec.
11   Litig.*, No. 2:09-cv-01558-GMN-LRL, 2010 U.S. Dist. LEXIS 120061, at *13-14
12   (D. Nev. Oct. 25, 2010) (appointing group of three institutional investors); *Woburn
     Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-cv-05235-RMW, 2012 U.S. Dist.
13   LEXIS 21590 (N.D. Cal. Feb. 21, 2012) (appointing group of three institutional
14   investors); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, No. 2:12-cv-
     00042-BLW, 2012 U.S. Dist. LEXIS 97187 (D. Idaho July 12, 2012) (appointing
15   group of two institutional investors); *Perrin v. Southwest Water Co.*, 2:08-cv-
16   87844-FMC, 2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) (appointing
     group of four individuals as lead plaintiff).
17
18   [7] *See also Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *25 ("A pre-existing
19   relationship between entities that comprise a group is not required if the resulting
     group is small and cohesive enough such that it can adequately control and oversee
20   the litigation."); *In re Ariad Pharm., Inc. Sec. Litig.*, 98 F.Supp.3d 147 (D. Mass.
21   2015) (appointing lead plaintiff group of three institutional investors and 2
     individual investors); *In re Host America Corp. Sec. Litig.*, 236 F.R.D. 102, 106
22   (D. Conn. 2006) (appointing Lead Plaintiff group comprised of one institutional
23   investor and two individual investors and finding that such a group provides
     "diversity of representation reflective of the makeup of the class as a whole"); *In re
24   Inso Corp.*, No. 99-cv-10193-WGY, ECF No. 17 (D. Mass. Apr. 28, 1999)
25   (appointing four institutional investors and one individual investor); *Johnson v.
     Pozen Inc.*, No. 1:07-CV-599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008)
26   (appointing institutional investor and individual investor as Lead Plaintiff)
27   (collecting cases); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 578 (N.D. Ill. 2005)
28   (appointing institutional investor and two individual investors).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR
GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 10 -

objectives; and processes for managing the litigation cohesively and efficiently while utilizing consensus decision-making. (Dkt. No. 17-8.) As they attested in the Joint Declaration executed after their telephonic conference, the members of the Teva Investor Group believe that by pooling their significant experience and resources they will be able to maximize the Class's potential recovery in this Action. (*Id.*) As indicated by their joint declaration, members of the Teva Group have demonstrated their commitment to the litigation and procedures by which they will manage the litigation and direct lead counsel. Nothing more onerous is required to treat the Teva Investor Group as a Lead Plaintiff movants whose losses are properly considered in the aggregate.

Significantly and in contrast to the applications presented here, groups of investors are appointed even where a competing individual movant alleges a larger loss than any single member of a purportedly unrelated group. *Atossa Genetics*, 2014 U.S. Dist. LEXIS 19218, at *9, *18-*19 (granting lead plaintiff motion of group of three unrelated investors and denying motion of competing individual investor alleging larger losses than any individual member of lead plaintiff group); *In re: A-Power Energy Generation Systems Ltd Sec. Litig.*, MDL 11-2302-GW(CWx), Dkt. No. 14, at *4, *6, *14 (C.D. Cal. Jan. 9, 2012) (granting lead plaintiff motion of group of five investors alleging collective losses of $876,257 and denying competing motion by individual investor who by itself alleged losses of $785,444.35).

For these reasons, the Teva Investor Group is precisely the type of Lead Plaintiff group that Courts in this Judicial District, the Ninth Circuit, and throughout the country routinely appoint as Lead Plaintiff and any attack on it is legally baseless and should be rejected.

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 11 -

### F.     The Competing Motions Should Be Denied

Under the PSLRA's sequential process for determining lead plaintiff, only if the Court "determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement" may it consider "whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *Cavanaugh*, 306 F.3d at 731; *see also Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *5 (N.D. Cal. Dec. 22, 2016); *Griggs v. Vital Therapies, Inc.*, No. 15-CV-2700 JLS (NLS), 2016 U.S. Dist. LEXIS 122689, at *5 (N.D. Cal. May 2, 2016); *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at *9 (N.D. Cal. Apr. 28, 2016). Thus, the PSLRA does not permit the Court to consider the application of any competing movant with a smaller financial interest unless and until a competing movant has adduced ***proof*** of the Teva Investor Group's atypicality and inadequacy sufficient to rebut the presumption in the group's favor. The Teva Investor Group respectfully submits that no such proof exists.

### 1.     A Single Member of the Teva Investor Group – Mr. Kleinerman -- Has the Largest Loss of Any Individual Movant

We anticipate, however, that the movant that claims the second largest loss, the TIAA Group, in recognition of the indisputable fact that its losses are vastly inferior to those of the Teva Investor Group, will argue that it, and not the Teva Investor Group has the largest financial interest because it purportedly has the largest *single* loss. But this argument is fatally flawed because the TIAA Group is not a single investor. Instead, it is a collection of nine affiliated investment funds and the Court should reject any attempt by the TIAA Group to evade this reality. *See Smilovits v. First Solar, Inc., et al.,* No. 12-0555, 2012 U.S. Dist. LEXIS 102032 (D. Ariz. July 23, 2012) (treating as group for lead plaintiff appointment two coordinated funds that were jointly administered by the same executives who

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 12 -

provided executive, support, risk management, accounting, strategic advice and management of legal advisors to both funds).

The TIAA Group has failed to make a proper showing as to why these separate funds – which have separate names and presumably hold different investments and have different account numbers and investment strategies -- should be treated as a single investor. In fact, the TIAA Group has made no effort to explain how its funds are related, how the group is organized or what person or group of persons hold decision-making authority for each of the TIAA funds. The TIAA Group's own website explains that TIAA operates under the control of two separate boards of trustees that "help keep [TIAA] accountable;" a TIAA board and a CREF board.[8] Its website states only that the "TIAA Board of Trustees helps assure the proper management of our organization, while the CREF Board of Trustees oversees our SEC-registered investment company." The website further explains that the 14 TIAA trustees are elected annually by the TIAA Board of Overseers whereas the 10 CREF trustees, of which none overlap with the TIAA trustees, are elected directly by CREF participants. *Id*.

The TIAA Group's motion and its exhibits fail to disclose what funds are controlled by which board (3 of the funds are CREF Funds and the remaining 6 are TIAA-CREF funds), and how these boards would work together to oversee and pursue this litigation. *See Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 U.S. Dist. LEXIS 93614 (W.D. Wash. Aug. 2, 2010) (appointing group of three lead plaintiff movants that submitted joint declaration detailing how the group would function and communicate). As a result, even if the TIAA Group did have the largest financial interest, which it does not, they have made no attempt to show that it would be an adequate lead plaintiff as a group and it provides no

---

[8]  *See* https://www.tiaa.org/public/about-tiaa/corporate-governance-leadership (last visited January 11, 2017).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 13 -

reason why each member of the group should not be analyzed and considered separately.

Indeed, when this reality is taken into account, an apples-to-apples comparison shows that Mr. Kleinerman alone has far higher losses than any of the nine individual investment funds that actually comprise the TIAA Group:

| Individual/Fund | Computed Losses / (Gains) |
|---|---|
| **Dan Kleinerman** | **$30,401,950.19** |
| CREF Growth Account | $12,314,348.03 |
| CREF Stock Account | $11,268,920.85 |
| CREF Global Equities Account | $10,495,123.03 |
| TIAA-CREF Large-Cap Growth Fund | $6,651,760.48 |
| TIAA-CREF International Equity Index Fund | $920,785.14 |
| TIAA-CREF Growth & Income Fund | $824,145.53 |
| TIAA-CREF Life Growth Equity Fund | $149,586.00 |
| TIAA-CREF Life Growth & Income Fund | $25,877.76 |
| TIAA-CREF Enhanced International Equity Index Fund | $(124,740.10) |

As for Ontario Teachers, Brosnan, and the Municipal Retirement Funds, Mr. Kleinerman's Teva ADR losses dwarfs each of theirs by at least $7 million (in the case of Ontario Teachers), and as much as $29 million (in the case of Municipal Retirement Funds):

| Individual/Fund | Computed Losses / (Gains) |
|---|---|
| **Dan Kleinerman** | **$30,401,950.19** |
| Ontario Teachers | $23,236,125.89 |
| Brosnan | $2,303,773.01 |
| Municipal Retirement Funds | $801,466.99 |

Thus, the Teva Investor Group has not only the largest aggregate loss, but the largest *individual* loss as well. *See Bruce v. Suntech Power Holdings Co., Ltd.*, No. 12-4061, 2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012)(appointing as lead plaintiff group with largest aggregate loss that included individual with single largest loss). This further supports granting the Teva Investor Group's application.

### 2. The TIAA Group's Reported Losses are Significantly Overstated Because Five of the TIAA Group's Funds' Losses Were Not Caused By the Alleged Fraud

Separate and additionally, the TIAA Group's claimed $42 million figure is inflated by the fact that it includes approximately *$20 million of "losses" that could not possibly have been caused by the alleged fraud*. Specifically, *five of the nine funds* within the TIAA Group's group held no Teva ADRs *as of August 4, 2016*, the date when the alleged fraud was first revealed. *See* ECF No. 1, ¶ 22 (alleging that the truth about Teva's fraud began to emerge on August 4, 2016, when Teva filed a Form 6-K revealing government investigations into Teva's pricing and marketing).

Following the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), courts in the Ninth Circuit, and throughout the country, have repeatedly emphasized that money lost *before* the fraud was allegedly revealed may *not* be included in calculating financial interest, because under *Dura*, such "losses" have nothing to do with the alleged fraud, and are not

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 15 -

legally recoverable. *See, e.g.*, *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03–2522 MHP, 2006 WL 1180267, at *8–*9 (N.D. Cal. May 3, 2006) ("[S]ince corrective disclosure is alleged to have occurred only from July 2001 onwards, under *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) ("[T]he court finds no reason to include losses in its calculations that would later be considered uncompensable."). *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) ("As shown by the discussion of *Dura* and its progeny above, looking exclusively to the number of shares purchased during the class period that are also retained at the end of the class period is likely the most accurate reflection of a plaintiff's potential damages."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007), adhered to on reconsideration, No. 06CV1825NGGRER, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ("It is clear that courts cannot include non-recoverable losses in a calculation of each litigant's financial interest. . . . And under *Dura*, failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation."); *Kops v. NVE Corp.*, 2006 U.S. Dist. LEXIS 49713 (D.Minn. July 17, 2006) (refusing to credit a movant's in-and-out losses, and rejecting assertion that a partial disclosure occurred before some of those sales, where such an assertion was not in any of the filed complaints).

Here, *five* of the TIAA Group funds, (1) CREF Growth Account, (2) TIAA-CREF Large-Cap Growth Fund, (3) TIAA-CREF Growth & Income Fund, (4) TIAA-CREF Life Growth Equity Fund, and (5) TIAA-CREF Life Growth & Income Fund, *completely sold out of their positions no later than July 2016, and some as early as October 2015*, and *never re-opened a position. See* ECF No. 23-2

at 4, 11, 13 (last sales occurring well before the August 4, 2016 corrective disclosure).[9] In other words, they were pure "in-and-out" traders, who could not possibly have been harmed by the alleged fraud. As such, their "losses" should not be included when evaluating the TIAA Group's financial interest, and should instead be deemed to be zero, as follows:

---

[9]Both the *Galmi* Complaint and the *Leone* Complaint allege that the truth was revealed in two partial corrective disclosures. First, on August 4, 2016, Teva filed a Form 6-K disclosing that it was the subject of government investigations into its pricing and marketing practices and that the Company's U.S. subsidiary had received two subpoenas in connection with those investigations. *See Galmi* Action, Dkt. No. 1, at ¶ 22; *Leone* Action, Dkt. No. 1, at ¶ 41. Then, on November 3, 2016, an article published on *Bloomberg* disclosed that the U.S. Department of Justice had been conducting a two year investigation into price collusion by Teva and its competitors stating that criminal charges were "imminent." *See Galmi* Action, Dkt. No. 1, at ¶ 24; *Leone* Action, Dkt. No. 1, at ¶ 44. To the extent that TIAA or any other movant attempts to claim these losses by asserting that some event not pled in the complaint was a corrective disclosure, that attempt must be rejected. The Court is limited to considering the allegations in the pending complaints at this stage of the litigation. *Marjanian v. Allied Nev. Gold Corp.*, 3:14-cv-0175, 2015 U.S. Dist. LEXIS 2782 (D. Nev. Jan. 8, 2015)(rejecting movant's argument that losses were attributable to a purported partial disclosure that was not alleged in the operative complaint as a corrective disclosure); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-0580, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) (rejecting movant's argument that losses were the result of a partial corrective disclosure that was not alleged in the initial complaints); *Comverse*, 2007 U.S. Dist. LEXIS 14878, at *18 ("*Dura*. . . require[s] a court to make pre-discovery loss causation determinations regarding asserted claims . . . that are based on the facts alleged in the complaint.").

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 17 -

| Individual/Fund[10] | ADRs Retained As Of August 4, 2016 | ADRs Retained As Of November 3, 2016 | Computed Losses | Computed Losses for Eligible Individuals / Funds |
|---|---|---|---|---|
| CREF Growth Account | 0 | 0 | $12,314,348.03 | $0 |
| CREF Stock Account | 380,427 | 927,780 | $11,268,920.85 | $11,268,920.85 |
| CREF Global Equities Account | 451,943 | 179,687 | $10,495,123.03 | $10,495,123.03 |
| TIAA-CREF Large-Cap Growth Fund | 0 | 0 | $6,651,760.48 | $0 |
| TIAA-CREF International Equity Index Fund | N/A | 568,714 | $920,785.14 | $920,785.14 |
| TIAA-CREF Growth & Income Fund | 0 | 0 | $824,145.53 | $0 |
| TIAA-CREF Life Growth Equity Fund | 0 | 0 | $149,586.00 | $0 |
| TIAA-CREF Life Growth & Income Fund | 0 | 0 | $25,877.76 | $0 |
| TIAA-CREF Enhanced International Equity Index Fund | N/A | 73,903 | $(124,740.10) | $(124,740.10) |
| **TOTAL** | | | **$42,525,806.72** | **$22,560,089** |

By contrast, the Teva Investor Group are not in-and-out traders. Through both of the corrective disclosures, the Teva Investor Group owned millions of Teva ADRs:

| Individual/Fund | ADRs Retained As Of August 4, 2016 | ADRs Retained As of November 3, 2016 | Computed Losses | Computed Losses for Eligible Individuals / Funds |
|---|---|---|---|---|
| Oregon PERS | 858,041 | 721,377 | $9,888,467.09 | $9,888,467.09 |
| Chicago Teachers | 473,968 | 431,664 | $7,553,220.96 | $7,553,220.96 |

---

[10] The TIAA-CREF International Equity Index Fund and the TIAA-CREF Enhanced International Equity Index Fund first opened a position following the August 4, 2016 alleged corrective disclosure.

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

- 18 -

| Mr. Kleinerman | 1,821,753 | 1,494,590 | $30,401,950.19 | $30,401,950.19 |
|---|---|---|---|---|
| **TOTAL** | | | **$47,843,638.24** | **$47,843,638.24** |

The TIAA Group of funds' true financial interest, which must be based on funds that were actually affected by the alleged fraud, is thus approximately *$20 million lower* than it claims. Importantly, even when the TIAA Group's eligible losses are *aggregated*, they amount to only approximately $22 million, which is $8 million less than Mr. Kleinerman's *un-aggregated* loss of approximately $30 million.

Put simply, based on the calculations above, the conclusion that the Teva Investor Group has the largest financial interest cannot reasonably be disputed. And even when viewed by comparing the largest single member of the competing groups can it be disputed that Mr. Kleinerman has the largest financial interest on an individual-to-individual group member basis.

## V.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court grant its motion consolidating the Related Actions, appointing the Teva Investor Group to serve as Lead Plaintiff for the Class, approving its selection of Cohen Milstein and Pomerantz as Co-Lead Counsel and denying the competing motions.

DATED: January 14, 2017        **POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499

Jeremy Lieberman (*pro hac vice forthcoming*)
J. Alexander Hood II (*pro hac vice forthcoming*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (*pro hac vice forthcoming*)
Daniel S. Sommers (*pro hac vice forthcoming*)
Julie G. Reiser (*pro hac vice forthcoming*)
1100 New York Ave, N.W.
Suite 500 East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Carol V. Gilden (*pro hac vice forthcoming*)
190 S. Lasalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Kenneth M. Rehns (*pro hac vice forthcoming*)
krehns@cohenmilstein.com
88 Pine St., 14th Flr.
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Counsel for the Teva Investor Group and*
*Proposed Co-Counsel for the Class*

1
2

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

3
4

I, the undersigned, say:

5
6

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 468 North Camden Drive, Beverly Hills, CA 90210.

7

On January 14, 2017, I caused to be served the following documents:

8
9
10

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE TEVA INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS**

11
12
13

By posting the documents to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the attached Service List.

13
14

And on any non-ECF registered parties:

15
16
17
18

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

19
20

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **January 14, 2017**, **Beverly Hills, California**.

21
22

*/s/ Jennifer Pafiti*
Jennifer Pafiti

23
24
25
26
27
28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE TEVA INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 1 -