1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  DARREN J. ROBBINS (168593)
   DANIELLE S. MYERS (259916)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  darrenr@rgrdlaw.com
   dmyers@rgrdlaw.com
6
   [Proposed] Lead Counsel for Plaintiff
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         SOUTHERN DIVISION

11

12 AMRAM GALMI, Individually and on   )  Case No. 2:16-cv-08259-TJH-AS
   Behalf of All Others Similarly Situated, )
13                                     )  CLASS ACTION
                         Plaintiff,    )
14                                     )  REPLY MEMORANDUM OF LAW
         vs.                           )  IN FURTHER SUPPORT OF TIAA'S
15                                     )  MOTION FOR APPOINTMENT AS
   TEVA PHARMACEUTICALS               )  LEAD PLAINTIFF AND APPROVAL
16 INDUSTRIES LIMITED, et al.,        )  OF LEAD COUNSEL
                                       )
17                       Defendants.   )  DATE:     February 6, 2017
   _____)  TIME:     UNDER SUBMISSION
18                                        CTRM:     9B
                                          JUDGE:    Hon. Terry J. Hatter Jr.
19

20

21

22

23

24

25

26

27

28

1228681_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   TIAA IS THE "MOST ADEQUATE PLAINTIFF" ...................................... 3

    A.    The Teva Investor Group's Meritless Opposition to TIAA's Motion Was Untimely and Should Not Be Considered ........................ 4

    B.    Ontario Teachers' Disingenuous Opposition to TIAA's Motion Conflicts with the PSLRA and the Ninth Circuit's Decision in *Cavanaugh* ............................................................. 5

III.  CONCLUSION ................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Blitz v. AgFeed Indus.*,
   2012 U.S. Dist. LEXIS 49849 (M.D. Tenn. Apr. 10, 2012) ................................ 8

*Bodri v. GoPro, Inc.*,
   2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) .................... 6, 7, 8, 12

*Ciraulu v. American Realty Capital Properties Inc.*,
   No. 1:14-cv-08659 (S.D.N.Y.) .......................................................... 16

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................*passim*

*Dutton v. Harris Stratex Networks, Inc.*,
   2009 U.S. Dist. LEXIS 48455 (D. Del. June 5, 2009) ...................................... 17

*Ellenburg v. JA Solar Holdings Co.*,
   262 F.R.D. 262 (S.D.N.Y. 2009)........................................................... 9

*Freudenberg v. E*Trade Fin. Corp.*,
   2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 17, 2008) .................................. 9

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015).......................................................... 2, 10

*In re American Realty Capital Properties Inc.*,
   No. 1:15-mc-00040 (S.D.N.Y.) .......................................................... 16

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006)......................................................... 11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ......................................................*passim*

*In re CMED Sec. Litig.*,
   2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012)................................... 10

*In re Computer Sciences Corp. Sec. Litig.*,
   No. 1:11-cv-00610 (E.D. Va.) .......................................................... 14

**Page**

*In re CTI BioPharma Corp. Sec. Litig.*,
  2016 U.S. Dist. LEXIS 119301 (W.D. Wash. Sept. 2, 2016) .............................5

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ....................................................................9, 10

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999).............................................................5, 12

*In re Nortel Networks Corp. Sec. Litig.*,
  No. 1:04-cv-02115 (S.D.N.Y.) ...............................................................................15

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
  No. 3:15-cv-07658 (D.N.J.).....................................................................................16

*In re Washington Mut., Inc. Sec. Litig.*,
  No. 1:08-md-01919 (W.D. Wash.)..........................................................................15

*In re Watchguard Sec. Litig.*,
  2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005).................11, 12, 13

*Juliar v. SunOpta, Inc.*,
  2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009)....................................10

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  2016 U.S. Dist. LEXIS 156921 (N.D. Ill. Nov. 10, 2016)..............................2, 10

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ..........................................................................11

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...................................................................................................2

*Nicolow v. Hewlett Packard Co.*,
  2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) .....................1, 6, 8, 12

*Pace v. Quintanilla*,
  2014 U.S. Dist. LEXIS 116925 (C.D. Cal. Aug. 19, 2014) ................................6

1228681_1

**Page**

*Pio v. GM Co.*,
   2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ..................5, 12, 13

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009)........................................................................ 13

*Quan v. Advanced Battery Techs.*,
   2011 U.S. Dist. LEXIS 102723 (S.D.N.Y. Sept. 9, 2011) ................................. 17

*Richardson v. TVIA, Inc.*,
   2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ................................. 13

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011)....................................................................... 5, 8

*Robb v. Fitbit Inc.*,
   2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ............................... 6, 8

*Sakhrani v. Brightpoint, Inc.*,
   78 F. Supp. 2d 845 (S.D. Ind. 1999) ................................................................... 5

*Smilovits v. First Solar, Inc.*,
   2012 U.S. Dist. LEXIS 102032 (D. Ariz. July 23, 2012) ................................ 3, 5

*Weinstein v. McClendon*,
   No. 5:12-cv-00465 (W.D. Okla.) ....................................................................... 14

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 25, 2006)....................................... 9

*Zhamukhanov v. AcelRx Pharm., Inc.*,
   2015 U.S. Dist. LEXIS 22180 (N.D. Cal. Feb. 24, 2015)................................... 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(i)........................................................................................ 11, 14
   §78u-4(a)(3)(B)(iii) ............................................................................................. 5
   §78u-4(a)(3)(B)(iii)(II) ........................................................................................ 3

1

2                                                                          **Page**

3

Federal Rules of Civil Procedure
    Rule 6(a)(1)(C) ...........................................................................................4
    Rule 6(a)(5).................................................................................................4
    Rule 6(a)(6)(A) ...........................................................................................4
    Rule 23.................................................................................................3, 17
    Rule 23(a) ..................................................................................................3

Local Rules
    Rule 7-9 .....................................................................................................4
    Rule 7-12 ...................................................................................................4

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N.
    679 ............................................................................................................1

- v -

## I.    INTRODUCTION

The primary opposition to TIAA's motion is that TIAA's $42.5 million loss – the largest individual loss suffered by any movant – is "overstated."  *See* Dkt. No. 33 at §III; Dkt. No. 35 at §II.F.2.  Not so.

First, Ontario Teachers and the Teva Investor Group tellingly "urge[] the court to turn away from estimated losses and focus instead" on a new test that neither movant made any reference to "in [their] opening motion seeking appointment as lead plaintiff, shifting [their] argument only ***after*** [TIAA] came forward with larger" estimated losses.  *Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *19-*20 (N.D. Cal. Mar. 4, 2013) (rejecting movant's new financial interest test raised for the first time in opposition to presumptive plaintiff's motion).[1]  The Court should not permit the movants to disingenuously attempt to redefine the financial interest test solely in opposition to TIAA's motion.

Second, the new metric Ontario Teachers and the Teva Investor Group now advocate for the first time in their opposition briefs is plainly not an "accounting method[]," nor is it "rational and consistently applied" as the Ninth Circuit requires. *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).

Third, the new method selectively advanced against only TIAA to artificially reduce its loss below the competing movants' losses is contrary to the legislative intent that the appointment of a "lead plaintiff should rest on considerations other than a speedy filing of the complaint." S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690.  The initial 20-page complaint in this case was hastily filed just 3 days after the Class Period ended by a Teva shareholder that owned 400 Teva shares for a mere 3 days.  *See* Dkt. No. 1.  Neither TIAA nor the putative class should be prejudiced at this early stage by the fact that the plaintiff failed to file a thoroughly researched complaint, particularly considering that Congress passed the PSLRA

---

[1]    All emphasis is added and all citations are omitted unless otherwise noted.  All defined terms in TIAA's Motion and Opposition are incorporated herein.

expressly to encourage sophisticated institutions to seek appointment as lead plaintiff and ensure that a properly appointed lead plaintiff would frame a case in the best interest of the entire putative class.

Fourth, the competing movants' contention undermines every movants' interests, as well as the vast majority of the class of Teva shareholders harmed by defendants' alleged wrongdoing. Indeed, the competing movants ask the Court, at this preliminary stage, to foreclose the lead plaintiff's ability to not only allege all of the additional disclosures beyond those identified in the hastily filed 20-page complaint but also utilize the leakage theory of damages.[2] *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'"). The competing movants cannot (and do not) seriously contend that it is in the class's best interests to have the theory of a case conclusively established by the allegations in a 20-page barebones complaint. Stated differently, the competing movants' argument puts the proverbial cart miles before the horse.

There is no dispute that, as asserted in each movant's motion, TIAA suffered the single greatest net loss of all the movants. No putative class member has attempted to suggest TIAA is anything but typical and adequate. And no putative class member has proffered proof that TIAA is subject to any unique defenses. As such, the presumption that TIAA is the most adequate plaintiff has not been rebutted. TIAA's motion should be granted.

---

[2]   TIAA's counsel here successfully proved the leakage theory at trial in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.* which enabled the class to secure the largest post-trial settlement ever obtained in a securities class action ($1.5 billion). *See generally Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 416 (7th Cir. 2015) (describing "'leakage' model" of loss causation which jury adopted at trial which "model calculates every difference, both positive and negative, between the stock's predicted returns . . . and the stock's actual returns during the disclosure period" and the "total sum of these residual returns is assumed to be the effect of the disclosures" and the "amount the stock is overpriced on any given day is the sum of all subsequent residual returns") (emphasis omitted).

## II.     TIAA IS THE "MOST ADEQUATE PLAINTIFF"

As the Ninth Circuit articulated, "the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the 'presumptively most adequate plaintiff' – and hence the presumptive lead plaintiff – the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Cavanaugh*, 306 F.3d at 729-30.  In doing so, "the court may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4.

Once the movant with the largest "losses" is identified, the Court "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730 (emphasis in original).  "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.*

At the final stage of the process, the other movants have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.*  Importantly, however, the "statute makes clear that more than arguments are required to rebut the presumption – it may be rebutted 'only upon proof by a member of the purported plaintiff class' that the presumptive plaintiff will not adequately and fairly protect the interests of the class." *Smilovits v. First Solar, Inc.*, 2012 U.S. Dist. LEXIS 102032, at *5 (D. Ariz. July 23, 2012) (emphasis omitted) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).  No proof has been offered by any member of the purported plaintiff class.

As such, TIAA is the most adequate plaintiff and its motion should be granted.

### A.  The Teva Investor Group's Meritless Opposition to TIAA's Motion Was Untimely and Should Not Be Considered

All movants, including the Teva Investor Group, noticed the lead plaintiff motion hearing for February 6, 2017.  Under Local Rule 7-9, oppositions were due "not later than twenty-one (21) days before" February 6th, which was Monday, January 16th, Martin Luther King, Jr. Day, a federal holiday.  *See* L.R. 7-9; Fed. R. Civ. P. 6(a)(6)(A).  If, as here, the "last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  And when, as here, the Local Rule requires briefs to be filed a certain number of days "before an event," *i.e.*, the hearing date, the "next day" is "determined by continuing to count . . . backward."  Fed. R. Civ. P. 6(a)(5).  Thus, oppositions were due "not later than" Friday, January 13th.

Given the clarity of these rules, it is not surprising that three movants timely filed their oppositions on January 13th.  *See* Dkt. Nos. 30, 31, 33.[3]  The Teva Investor Group, however, filed its opposition to TIAA's motion after the deadline expired, on Saturday, January 14, 2017.  *See* Dkt. No. 35.  Consequently, the Teva Investor Group's opposition was late and the Court should "decline to consider" it.  L.R. 7-12.[4]

Even if the Court is inclined to consider the Teva Investor Group's untimely opposition, the primary argument presented in opposition to TIAA's motion was also raised by Ontario Teachers.  *Compare* Dkt. No. 33 at §III *with* Dkt. No. 35 at §II.F.2.[5]

---

[3]  Well over a week after the opposition deadline, on January 23, 2017, Mr. Brosnan filed a "response" to the competing motions, seemingly throwing his (late) support behind the Teva Investor Group.  Dkt. No. 45.  Because Mr. Brosnan's conclusory response was filed in violation of the local rules, it should also be disregarded.

[4]  The Teva Investor Group's inability to coordinate the timely filing of its opposition by its two law firms is further indicia of the group's unwieldy structure and inability to oversee its multiple counsel.  *See* Dkt. No. 31 at 2-15; Dkt. No. 33 at 1-14.

[5]  Ironically, the Teva Investor Group – a menagerie of Oregon and Chicago pension funds and an individual from the Netherlands – contends that TIAA "failed to make a proper showing as to why [it] should be treated as a single investor."  Dkt. No. 35 at 13.  Yet, unlike the Teva Investor Group which is a random assemblage of two unrelated entities and an individual aggregated by its two law firms solely to attain the largest financial interest, TIAA is one of the largest institutional investors in the U.S.

- 4 -

And, as discussed below, the premise of Ontario Teachers' opposition is fundamentally flawed. *See infra* §II.B. As such, the presumption in favor of appointing TIAA as lead plaintiff has not been rebutted by either Ontario Teachers or the Teva Investor Group.

### B. Ontario Teachers' Disingenuous Opposition to TIAA's Motion Conflicts with the PSLRA and the Ninth Circuit's Decision in *Cavanaugh*

It has become increasingly common for movants with smaller losses to jettison the conventional loss metric used in their motion in favor of "devis[ing] [their] own methodology" in an opposition brief that "tak[es] into consideration particular nuances of the parties' transactions in th[e] case." *Pio v. GM Co.*, 2014 U.S. Dist. LEXIS 151205, at *22 (E.D. Mich. Oct. 24, 2014). In this way, "the test is changed and adjusted" after the motions are filed "depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved." *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011). This mid-game maneuvering is precisely what Ontario Teachers and Teva Investor Group attempt to do here.

---

and its motion is exactly what Congress envisioned when it provided that either a "person or group of persons" could be appointed lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii). TIAA is a full-service financial services company that employs more than 10,000 employees in more than 100 offices nationwide. TIAA currently manages nearly $1 trillion in assets for the benefit of almost 4 million individuals and is one of the largest retirement systems in the world based on assets under management. *See* Dkt. No. 31 at 16. And unlike the lawyer-driven Teva Investor Group, TIAA submitted a ***single*** Certification evidencing its Teva ADR transactions. *See* Dkt. No. 23-2; *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) (recognizing that a "group of mutual funds managed by a single organization," like TIAA here, could qualify as a "group" under the PSLRA because, unlike a "mass of unrelated investors," *i.e.,* the Teva Investor Group, the mutual funds would have an "internal coherency and would be capable of acting as a unified decisionmaker"). Notably, the very authority cited by the Teva Investor Group, *Smilovits*, 2012 U.S. Dist. LEXIS 102032, at *13, ***rejected*** a virtually identical argument. *Id.*; *see also In re CTI BioPharma Corp. Sec. Litig.*, 2016 U.S. Dist. LEXIS 119301, at *7 (W.D. Wash. Sept. 2, 2016) ("it is clear that the two DAFNA entities have a relationship that predates this litigation and have not been 'assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action'"); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 847 (S.D. Ind. 1999) (noting appointment of a "group" consisting of "mutual funds under common management" would be "entirely appropriate").

Notably, every movant, including Ontario Teachers and the Teva Investor Group, articulated their financial interest in terms of net *loss* in their motions:

| Movant | FIFO Loss Asserted in Motion[6] | LIFO Loss[7] |
|---|---|---|
| **TIAA** | **($42.5 million)** | **($37.4 million)** |
| Teva Investor Group | | |
| Dan Kleinerman | ($30.4 million) | ($30.4 million) |
| Oregon PERS | ($9.8 million) | ($9.8 million) |
| Chicago Teachers | ($7.5 million) | ($7.5 million) |
| | Aggregate: ($47.8 million) | Aggregate: ($47.8 million) |
| Ontario Teachers | ($23.2 million) | ($23.2 million) |

And, as the table above clearly demonstrates, ***TIAA suffered the greatest net loss on either a FIFO or LIFO basis***.

The fact that every movant represented their financial interest in terms of loss makes sense as the "weight of authority puts the most emphasis on the competing movants' estimated *losses*." *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *19; *Cavanaugh*, 306 F.3d at 729-30 ("the district court must consider the *losses* allegedly suffered").[8] In fact, Ontario Teachers unequivocally advocated in its motion that the "[t]wo widely accepted measures of financial stake at the lead plaintiff stage are

---

[6]   *See* Dkt. No. 16 at 2 ("suffered *losses* of approximately [$47.8 million]"); Dkt. No. 22 at 6 ("suffered approximately $42.5 million in *losses*"); Dkt. No. 25 at 2, 10 ("suffered *losses* of [$23.2 million]").

[7]   While TIAA did not estimate its net LIFO loss in its motion, a few other movants did.  *See, e.g.*, Dkt. No. 25 at 10 (contending that "'[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a last in, first out ("LIFO") methodology'") (citing cases).  The LIFO losses are displayed to enable the Court to conduct an apples-to-apples comparison based upon the only two accounting methods – FIFO and LIFO – used by the movants in their motions.

[8]   *See also Bodri v. GoPro, Inc.*, 2016 U.S. Dist. LEXIS 57559, at *11 (N.D. Cal. Apr. 28, 2016) ("Each of the parties here focuses exclusively on their estimated *losses* in their opening motions for appointment as lead plaintiff."); *Robb v. Fitbit Inc.*, 2016 U.S. Dist. LEXIS 62457, at *9 (N.D. Cal. May 10, 2016) (comparing the "financial *loss* suffered" by the movants); *Pace v. Quintanilla*, 2014 U.S. Dist. LEXIS 116925, at *5 (C.D. Cal. Aug. 19, 2014) (finding that "the approximate losses suffered" to be "determinative").

*trading losses* calculated using LIFO . . . and FIFO." Dkt. No. 25 at 10 (stating that these accounting methods are the "preferred calculation[s]"). The movants' uniform use of "loss" also complies with *Cavanaugh* because loss is plainly an "accounting method" and it was "rational[ly] and consistently applied" by each movant in its motion. 306 F.3d at 730 n.4.

And, while each movant primarily emphasized the net loss suffered in its motion, some movants also highlighted a few additional objective accounting methods, including funds expended, net funds expended or shares purchased, each of which is also rational and consistently applied:

| Movant[9] | Funds Expended | Net Funds Expended | ADRs purchased |
|---|---|---|---|
| **TIAA** | **$347 million** | **$88.6 million** | **6.3 million** |
| Teva Investor Group | | | |
|     Dan Kleinerman | $340 million | $87 million | 6.1 million |
|     Oregon PERS | $93.9 million | $37 million | 1.7 million |
|     Chicago Teachers | $45.4 million | $23.8 million | 816,071 |
| | Aggregate: $479.3 million | Aggregate: $147.8 million | Aggregate: 8.7 million |
| Ontario Teachers | $80.9 million | $57.6 million | $1.4 million |

These accounting methods – loss, funds expended, net funds expended and ADRs purchased – are the exclusive factors the movants identified in their motions as evidencing their financial interest. ***TIAA also has the greatest interest under any of these accounting methods***.

"Only ***after*** the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the [Ontario Teachers and Teva Investor Group switch gears to] argue that the more appropriate measure of greatest financial stake was the ['recoverable loss'] methodology." *Bodri*, 2016 U.S. Dist. LEXIS 57559, at *12 (noting that movants

---

[9]   *See* Dkt. No. 16 at 2, 9; Dkt. Nos. 17-5-17-7; Dkt. No. 22 at 6; Dkt. No. 25 at 2, 10.

1  focused "exclusively" on "loss" in their motions); Dkt. No. 33 at 14-23; Dkt. No. 35 at

2  15-19.  "***This fact alone counsels in favor of adopting the [original] methodology***, as

3  opposed to the [recoverable loss] methodology."  *Id*.[10]

4        Moreover, the new metric advanced by Ontario Teachers and the Teva Investor

5  Group against TIAA is neither an "accounting method" nor is it being "rational[ly]

6  and consistently applied" as the Ninth Circuit requires.  *Cavanaugh*, 306 F.3d at 730

7  n.4.  Contrary to the competing movants' assertions, "*Dura*" is not an accounting

8  method; it is a Supreme Court decision articulating the loss causation pleading

9  standard applicable to §10(b) claims. *Compare* Dkt. No. 33 at 14; Dkt. No. 35 at 15-

10  19 *with Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).  Indeed, *Dura* "was not a

11  case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does

12  not discuss FIFO or LIFO losses."  *Blitz v. AgFeed Indus.*, 2012 U.S. Dist. LEXIS

13  49849, at *12 (M.D. Tenn. Apr. 10, 2012).  Consequently, the competing movants'

14  efforts to recast a pleading standard as an accounting method – for the first time in an

15  opposition, no less – is disingenuous and does not comport with *Cavanaugh*'s clear

16  mandate.  306 F.3d at 730 n.4; *see also Blitz*, 2012 U.S. Dist. LEXIS 49849, at *24

17  (finding movant "has the largest financial interest . . . simply on the basis of the losses

18  stated in their initial Motions" and that "[w]hile some parties opposing AIG have

19  attempted to raise doubts as to this fact, discussing *Dura* losses . . . , none of the

20

21

_____

22  [10]   *See also Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *19-*20 (rejecting new metric

23  advanced in opposition brief because "[t]ellingly, VRS itself made no reference to net
   shares purchased or a retained shares calculation in its opening motion seeking

24  appointment as lead plaintiff, shifting its argument only after PGGM came forward
   with larger LIFO losses"); *Robb*, 2016 U.S. Dist. LEXIS 62457, at *15 n.8 (stating
   that court was "not persuaded" by one movant's "alternative loss calculations" based

25  on *Dura* that were raised in "its opposition and reply briefs" in part because "the
   movants disagree as to whether this calculation method is valid"); *Richman*, 274

26  F.R.D. at 477 (noting that movant's "argument has evolved during the briefing
   process" and that "[i]nitially, it argued that it should be selected as the lead plaintiff

27  because it had the largest loss" but "[w]hen the Pension Fund showed that it had the
   largest loss, the Institutional Investors shifted gears and attacked the composition of

28  the Pension Fund loss").

- 8 -

opposing parties has successfully shown that their losses are greater than the losses of AIG").

"'[I]n any event, selling shares during the class period does not disqualify a class member from being appointed lead plaintiff.'"  *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 116-17 (E.D.N.Y. 2012).[11]  This is particularly so considering there are several obvious instances in which news concerning defendants' alleged wrongdoing was publicly revealed to the market and negatively impacted the price of Teva ADRs, inflicting harm on all putative class members, including TIAA:

| *Date* | *Event* | *ADR price decline:* |
|---|---|---|
| September 9, 2015 | Israel antitrust authority investigates allegations of price fixing at one of Teva's drug distribution subsidiaries (*BMI Research*) | -1.5% |
| September 25, 2015 | Secretary Clinton's Drug-Pricing Plan announced and includes ban on pay-for-delay anticompetitive practices (*FDA Week*) | -2.6% |
| November 4-5, 9, 2015 | Ohio, Arkansas, Idaho, South Dakota, Pennsylvania, Missouri, Nebraska and Connecticut AGs announce settlements with Cephalon, company Teva acquired, regarding anticompetitive drug overcharging (*US Official News*; *Boston Business Journal*) | -4% (total) |
| November 30, 2015 | Teva files Form 6-K with SEC regarding allegations of the Company's practice of over-charging for share of Medicaid drug reimbursement costs | -1% |

---

[11]   *See also Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) ("selling shares during the class period does not disqualify a class member from being appointed lead plaintiff"); *Freudenberg v. E*Trade Fin. Corp.*, 2008 U.S. Dist. LEXIS 62767, at *20-*21 (S.D.N.Y. July 17, 2008) ("Nor does the sale by KSG of their E*Trade securities by August 20, 2007, prior to the end of the alleged class periods in the current complaints, render them inadequate or atypical under the PSLRA, absent a showing that such divestiture creates divergent interests."); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 U.S. Dist. LEXIS 3028, at *15 (S.D.N.Y. Jan. 25, 2006) ("despite the fact that all the Operating Engineers Trust's shares were sold before the class period ended, one would not necessarily have to conclude that the Trust's losses are unattributable to the alleged fraudulent inflation").

| _Date_ | _Event_ | _ADR price decline:_ |
|---|---|---|
| February 11, 2016 | Teva reports full year 2015 and fourth quarter financial results, revealing that generic medicine revenues – which comprised 46% of total revenue in in the fourth quarter – decreased 9% compared to the prior year and that gross profit from the generic medicines segment also decreased 7% (_Business Wire_) | -5% |
| March 31, 2016 | Susquehanna Financial Group issues report on FTC push to bar anticompetitive pay-for-delay, mentioning Teva in report | -1.6% |

This leakage of the "relevant truth" further confirms that TIAA can, and should be afforded the opportunity to, allege loss causation for the benefit of the putative class. _Dura_, 544 U.S. at 342; _Glickenhaus & Co_., 787 F.3d at 416; _Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc._, 2016 U.S. Dist. LEXIS 156921, at *8 (N.D. Ill. Nov. 10, 2016) (finding that Robbins Geller's "decision to pursue damages under the Leakage Model was innovative, as no appellate court had ever accepted the use of a leakage-based damages quantification at trial, and the decision to use this model drastically increased the potential damages"). Yet, the competing movants would have the Court hold, as a matter of fact and law, that TIAA should not be allowed to do so here simply because the competing movants would prefer to artificially reduce TIAA's losses so they can shortsightedly claim the PSLRA's presumption for themselves. Such a holding would make little sense.

Indeed, where, as here, "there are several plausible and legitimate partial disclosures prior" to the disclosures alleged in a barebones initial complaint hastily filed by an investor with a nominal interest in the relief sought by the class, "[a]t this early stage in the proceedings, it is inappropriate for the Court to adjudicate whether the truth regarding [defendants'] alleged fraud had fully been disclosed to and reflected by the market by a specified date." _Gentiva_, 281 F.R.D. at 114-17. Consequently, the Court should reject Ontario Teachers' and Teva Investor Group's "contention that [TIAA] improperly included regular trading losses from earlier stock

- 10 -

1  sales that are not recoverable under the federal securities laws." *Id*. at 114 (declining

2  to exclude a movant's losses incurred before alleged disclosures).[12]

3      In *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-*15

4  (W.D. Wash. July 13, 2005), a competing lead plaintiff movant likewise urged the

5  court to abandon the market losses that every movant advocated in their motions in

6  favor of another metric that purportedly took *Dura* into account.  In analyzing and

7  rejecting the competing movant's attempt to reframe the financial interest inquiry, the

8  court recognized that a "host of market influences can operate to inflate or deflate the

9  fraud premium during the class period" and the "ups and downs in the fraud premium

10  may be difficult to ascertain even after discovery, much less at the outset of the

11  litigation." *Id.* at *14.  The court also realized that any such assessment would be

12  particularly difficult because the "PSLRA contemplates a quick selection of a lead

13  plaintiff near the outset of a case, without opportunity for discovery on likely damages

14  or losses." *Id.* at *14-*15 (citing 15 U.S.C. §78u-4(a)(3)(B)(i) (requiring lead plaintiff

15  determination be made within 90 days of publication of early notice to putative class

16  members)).  The *Watchguard* court also dismissed the challenger's "citation to the

17  discussion of securities class action damages in *Dura*" as "inapposite" because while

18  the "Supreme Court recognized, as does this court, that numerous factors may affect

_____

19  [12]   *See also In re CMED Sec. Litig.*, 2012 U.S. Dist. LEXIS 47785, at *15 n.8

20  (S.D.N.Y. Apr. 2, 2012) (declining to "consider the '*Dura* LIFO losses'" set forth by a
competing movant because "[t]he Court is not aware of any case" that used that

21  method to "calculate[] losses for purposes of appointing a lead plaintiff where the
pleadings allege partial corrective disclosures"); *Juliar v. SunOpta, Inc.*, 2009 U.S.

22  Dist. LEXIS 58118, at *7-*9 (S.D.N.Y. Jan. 30, 2009) (refusing to exclude a movant's
purported losses incurred before the first corrective disclosure alleged in the complaint

23  when the movant presented sufficient evidence to infer "that there was substantial
leakage of . . . misconduct prior to" the complaint's first disclosure); *Makor Issues &*

24  *Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 596 (N.D. Ill. 2009) (finding at class
certification stage that "the Court has insufficient evidence to conclude, as a matter of

25  law, that a portion of putative class members cannot prove loss causation" where
plaintiffs alleged a leakage theory of partial disclosures over several months); *In re*

26  *BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) (explaining that
where "there are multiple disclosures, in-and-out traders may well be able to show a

27  loss" and that "the inflationary effect of a misrepresentation might well diminish over
time, even without a corrective disclosure," thus allowing in-and-out traders to prove

28  loss causation).

- 11 -

the price of a security," **the "Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue**." *Id.* at n.6; *Cavanaugh*, 306 F.3d at 730 n.4 ("accounting method" must be "rational").  Thus, "[u]nder th[e]se conditions, early speculation about fraud premium fluctuations is inappropriate." *Id.* at *15.[13]

Similarly, in *Pio*, a competing movant abandoned its claim of net loss once the motions were filed and the competing movant realized it did not suffer the largest loss under the consistent accounting method the movants used in their motions.  In opposing the motion filed by the investor with the largest net loss, the competing movant – like Ontario Teachers and the Teva Investor Group urge here – advocated several methods that varied from "brief to brief," including "'recoverable loss' calculations."  2014 U.S. Dist. LEXIS 151205 at *11-*20.  After thoroughly discussing the multiple financial interest permutations advocated by the movants, the court lamented the "considerable time" expended trying to make "sense of the 'recoverable loss' calculations submitted" which "appears to be common among movants seeking lead plaintiff appointment under the PSLRA." *Id.* at *18; *Network Assocs.*, 76 F. Supp. 2d at 1028 (noting that movants' submissions were "confusing and laced with errors and unspoken assumptions" requiring the court to "reverse engineer the numbers" and demanding "accounting gymnastics").  In rejecting such machinations, the *Pio* court emphasized that net loss "is intended to be only an **approximation** of the losses suffered during the class period by the prospective lead plaintiffs" and the "district court's calculations for purposes of choosing a lead plaintiff are not a final decision on loss calculations or loss causation."  2014 U.S. Dist. LEXIS 151205, at *18-*20 (noting that "[a]t this early stage of the litigation, the

---

[13]  Numerous courts reject methods like recoverable loss that improperly attempt to take a fraud premium into account where, as here, "'gradual disclosures are involved, because those methods assume a constant "fraud premium" throughout the class period.'" *Bodri*, 2016 U.S. Dist. LEXIS 57559, at *12; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *20 n.5 (same) (citing cases).

court should not be wading through complex or fact-dependent arguments relative to the parties' calculations . . . or analyzing and resolving which attacks to credit by a party . . . on the loss calculations of the opposing party") (emphasis in original).

And in *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009), the court reached the same conclusion as the *Watchguard* and *Pio* courts did, recognizing that where "all movants are sophisticated institutional investors that have suffered losses that would be described as large under any standard, there is no particular reason to favor one method of computation over another." *Id.* at 623. This is so because "the purpose of the lead plaintiff provisions of the PSLRA is to discourage lawyer-driven lawsuits filed on behalf of parties with only nominal interests in the matter, and to favor suits by institutional investors that have suffered large losses." *Id.* "Where all movants are institutional investors that have suffered large losses rather than professional plaintiffs, judicial resources are not well-spent on finely-calibrated inquiries into which plaintiff has the largest financial interest." *Id.* As such, the court was convinced that "the best way to calculate financial interests in this case is to use each movant's estimation of the 'loss' it suffered." *Id.* at 624; *see also Zhamukhanov v. AcelRx Pharm., Inc.,* 2015 U.S. Dist. LEXIS 22180, at *9 (N.D. Cal. Feb. 24, 2015) ("equat[ing] financial interest with actual economic losses suffered"); *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *14-*15 (N.D. Cal. Apr. 16, 2007) (finding movant that "suffered the greater financial loss, is qualified to serve as the lead plaintiff").

There "are a multitude of factors that might be relevant if the Court were attempting to calculate an exact loss suffered by the movants as a result of Defendants' alleged fraud." *Pio*, 2014 U.S. Dist. LEXIS 151205, at *22. Yet, "[i]f courts were expected to resolve such issues, the determination of who to appoint lead plaintiff easily would develop into satellite litigation between competing movants, requiring significant judicial resources and derailing the class action lawsuit itself." *Id.* That is not what Congress intended in mandating that the lead plaintiff

- 13 -

determination be made expeditiously. *Id.* at \*20 (recognizing that the "narrow window Congress provided district courts to resolve competing motions for lead plaintiff appointment is not the time for conducting a precise calculation of each movant's actual damages, which in a securities fraud case generally 'is a highly technical task that usually involves a battle of experts'"); 15 U.S.C. §78u-4(a)(3)(B)(i) (requiring lead plaintiff determination to be made quickly).

As a practical matter, Ontario Teachers is well aware that a comprehensive complaint filed after the court appoints a lead plaintiff almost invariably substantially enhances the allegations in an initial complaint hastily filed by a nominal shareholder immediately after defendants' wrongdoing has been revealed to the market:

|  | *Initial Complaint* | *Ontario Teachers' Amended Complaint* |
|---|---|---|
| *Weinstein v. McClendon*, No. 5:12-cv-00465 (W.D. Okla.), Dkt. Nos. 1, 71 | <ul><li>23 pages</li><li>2 defendants</li><li>04/30/09-04/17/12 class period</li><li>one loss causation disclosure alleged (04/18/12)</li></ul> | <ul><li>84 pages</li><li>7 defendants</li><li>04/30/09-*05/11/12* class period[14]</li><li>five loss causation disclosures alleged (04/18/12, 04/26/12, 05/02/12, 05/10/12, 05/11/12)</li></ul> |
| *In re Computer Sciences Corp. Sec. Litig.*, No. 1:11-cv-00610 (E.D. Va.), Dkt. Nos. 1, 48 | <ul><li>34 pages</li><li>3 defendants</li><li>08/11/10-05/25/11 class period</li><li>three loss causation disclosures (02/09/11, 05/02/11, 05/25/11)</li></ul> | <ul><li>123 pages</li><li>4 defendants</li><li>08/05/08-*08/09/11* class period</li><li>four loss causation disclosures (02/09/11, 05/02/11, 05/25/11, 08/10/11)</li></ul> |

---

[14]   Moreover, because the end of a class period is often extended by a lead plaintiff to incorporate subsequent developments that occur between the filing of the initial complaint and lead plaintiff appointment – as Ontario Teachers has done in virtually every case it has been a lead plaintiff in – the unsupported argument that TIAA's November 3 purchases "must" be excluded from its loss estimate similarly lacks merit. Dkt. No. 33 at 19-21 (citing no authorities in support of this novel argument). This is particularly so considering the fact that Teva's ADRs currently trade at approximately $33.00 per ADR, well below the $39.20 closing price on November 3, as additional news has entered the market.

- 14 -

|  | _Initial Complaint_ | _Ontario Teachers' Amended Complaint_ |
|---|---|---|
| _In re Washington Mut., Inc. Sec. Litig._, No. 1:08-md-01919 (W.D. Wash.), Dkt. Nos. 1, 67 | • 52 pages<br>• 4 defendants<br>• §10(b) claims<br>• 07/19/06-10/31/07 class period<br>• two loss causation disclosures (10/17/07, 11/01/07) | • 388 pages<br>• 38 defendants<br>• §10(b) _and §11 claims_<br>• _10/19/05-07/23/08_ class period<br>• twenty loss causation disclosures (10/17/07, 10/31/07, 11/02/07, 11/07/07, 11/21/07, 12/10/07, 12/21/07, 01/17/08, 03/03/08, 03/06/08, 03/07/08, 03/17/08, 03/27/08, 04/04/08, 04/08/08, 04/11/08, 06/09/08, 06/24/08, 07/14/08, 07/23/08) |
| _In re Nortel Networks Corp. Sec. Litig._, No. 1:04-cv-02115 (S.D.N.Y.), Dkt. Nos. 1, 77 | • 21 pages<br>• 4 defendants<br>• 01/07/04-03/15/04 class period<br>• two loss causation disclosures (03/10/04, 03/15/04) | • 83 pages<br>• 9 defendants<br>• _04/24/03-04/27_/04 class period<br>• six loss causation disclosures (03/10/04, 03/15/04, 04/05/04, 04/14/04, 04/15/04, 04/28/04) |

Further confirming that the lead plaintiff stage is an entirely premature (and inappropriate) stage to conclusively predetermine loss causation and damages, Ontario Teachers even attached an expert report to its _Washington Mutual_ amended complaint regarding loss causation stating that "[a] quantification of loss causation will require substantial factual and expert analysis with the benefit of discovery." _See Washington Mutual_, No. 08-md-1919, Dkt. No. 67-2 at 34 of 76 (W.D. Wash.) (noting that expert was retained to "evaluat[e] whether the Complaint provides a sufficient link between allegations of fraud and information associated with declines in price and thus establishes a coherent theory of loss causation"). Ontario Teachers' own amended complaints in cases in which it has served as lead plaintiff conclusively demonstrate that class periods, defendants, claims, and loss disclosure dates materially – and routinely – vary between the initial and amended complaints. TIAA's experience as

- 15 -

lead plaintiff in two other securities class action cases is in accord, confirming it can (and will) allege a comprehensive fraud here:

|  | *Initial Complaint* | *TIAA's Amended Complaint* |
|---|---|---|
| *Ciraulu v. American Realty Capital Properties Inc.*, No. 1:14-cv-08659, Dkt. No. 1; *In re American Realty Capital Properties Inc.*, No. 1:15-mc-00040 (S.D.N.Y.), Dkt. No. 30 | • 21 pages<br>• 3 defendants<br>• 05/08/14-10/28/14 class period<br>• §10(b) claims | • 177 pages<br>• 50 defendants<br>• *09/07/11-10/29/14* class period<br>• §10(b) *and §11 claims* |
| *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.), Dkt. Nos. 1, 80 | • 41 pages<br>• 4 defendants<br>• 02/23/15-10/20/15 class period<br>• five loss causation disclosures alleged (09/28/15, 10/05/15, 10/15/15, 10/19/15, 10/21/15) | • 282 pages<br>• 16 defendants<br>• *01/04/13-03/15/16* class period<br>• 22 loss causation disclosures alleged (09/28/15, 09/29/15, 10/05/15, 10/15/15, 10/19/15, 10/22/15, 10/26/15, 10/29/15, 10/30/15, 11/04/15, 11/05/15, 11/10/15, 11/11/15, 11/12/15, 11/16/15, 11/17/15, 12/17/15, 02/19/16, 02/22/16, 02/29/16, 03/15/16, 06/07/16) |

Accordingly, there is absolutely no reason – and neither Ontario Teachers nor Teva Investor Group has offered any – why TIAA and the putative class should not be afforded the same opportunity here to allege a comprehensive case on behalf of the putative class.

Finally, and perhaps most importantly, no movant contends TIAA cannot allege loss causation in an as-yet-to-be-filed consolidated complaint as *Dura* requires; it plainly can (and will).  Indeed, the movants' *Dura* argument is undermined by the fact that TIAA purchased more Teva ADRs (over 6.3 million) than any other movant and retained more Teva ADRs at the end of the Class Period (over 1.4 million) than any movant except Mr. Kleinerman, who moved as part of a lawyer-driven collection of

- 16 -

1    unaffiliated entities and is subject to serious conflicts and unique defenses that

2    preclude his appointment.  *See* Dkt. No. 31 at 12-15; Dkt. No. 33 at 1-7, 12-14

3    (opposing Mr. Kleinerman's and the group's motion).[15]  The fact that TIAA not only

4    suffered the greatest loss but also purchased and retained more net shares at the end of

5    the Class Period confirms that TIAA can easily demonstrate loss causation.  *See Quan*

6    *v. Advanced Battery Techs.*, 2011 U.S. Dist. LEXIS 102723, at *7 (S.D.N.Y. Sept. 9,

7    2011) (finding *Dura* "simply not applicable" where movant "retained more than

8    double the number of shares as Pehlke at the close of the Class Period; the fact that he

9    made a certain number of sales during the Class Period can not and does not alter the

10   fact that he suffered the greatest amount of loss following the Class Period close").[16]

11        Ultimately, there is no proof of any defense against TIAA that would disqualify

12   it from serving as lead plaintiff.  Just like other members of the class (including both

13   Ontario Teachers and Teva Investor Group), TIAA purchased Teva ADRs during the

14   Class Period and seeks to recover for losses caused by defendants' misrepresentations.

15   Simply stated, the presumption that TIAA is the most adequate plaintiff has not been

16   rebutted.

17   **III.    CONCLUSION**

18        In light of TIAA's status as the single movant with the greatest loss – the metric

19   used by all movants in their motions – the Court should conclude that TIAA has the

20   largest financial interest in the litigation.  Because TIAA otherwise satisfies the Rule

21

22   [15]  *Compare* Dkt. No. 23-3 *with* Dkt. Nos. 17-5-17-7 (Oregon purchased 1.7 million
     ADRs and held 721,377 net ADRs, Chicago Teachers purchased 816,071 ADRs and
23   held 431,664 net ADRs and Mr. Kleinerman purchased 6.1 million ADRs and held 1.4
     million net ADRs); Dkt. No. 26-1 (Ontario Teachers purchased 1.4 million ADRs and
24   held 990,000 net ADRs); Dkt. No. 10-3 (Mr. Brosnan purchased 111,575 ADRs); Dkt.
     No. 14-4 (Wayne County purchased 37,778 ADRs, Roseville purchased 8,104 ADRs
25   and Waterford purchased 5,966 ADRs).

26   [16]  *Dutton v. Harris Stratex Networks, Inc.*, 2009 U.S. Dist. LEXIS 48455, at *8-*9
     (D. Del. June 5, 2009) (rejecting *Dura* argument and finding that "at this stage the
27   Court is unable to conclude that the Rudman Investors Group – which acquired more
     than ten times as many Harris Stratex shares as the DTRFA during the class period –
28   will be unable to prove further losses").

- 17 -

1  23 requirements and no movant has even attempted to suggest otherwise, TIAA is the

2  presumptive lead plaintiff.  Its motion should be granted.

3  DATED:  January 23, 2017                    Respectfully submitted,

4                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
5                                              DARREN J. ROBBINS
                                               DANIELLE S. MYERS
6

7                                                      s/ Danielle S. Myers
8                                                   DANIELLE S. MYERS

9                                              655 West Broadway, Suite 1900
                                               San Diego, CA  92101
10                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
11
                                               [Proposed] Lead Counsel for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on January 23, 2017, I authorized the electronic filing of

3

the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses denoted on the attached Electronic

5

Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6

document or paper via the United States Postal Service to the non-CM/ECF

7

participants indicated on the attached Manual Notice List.

8

I certify under penalty of perjury under the laws of the United States of America

9

that the foregoing is true and correct.  Executed on January 23, 2017.

10

s/ Danielle S. Myers

DANIELLE S. MYERS

11

12

ROBBINS GELLER RUDMAN
& DOWD LLP

13

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058

14

619/231-7423 (fax)

15

E-mail:     dmyers@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

1228681_1

## Mailing Information for a Case 2:16-cv-08259-TJH-AS Amram Galmi v. Teva Pharmaceutical Industries Limited et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter M Adams**
  padams@cooley.com,daland@cooley.com

- **Koji F Fukumura**
  kfukumura@cooley.com,chourani@cooley.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com

- **Richard D McCune , Jr**
  rdm@mccunewright.com,ams@mccunewright.com,ama@mccunewright.com,led@mccunewright.com,ece@mccunewright.com,mmv@mccunewright.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **Lesley E Weaver**
  lweaver@bfalaw.com

- **Blake M Zollar**
  bzollar@cooley.com,kjones@cooley.com,gwilliams@cooley.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)