**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1999 Harrison Street, Suite 670
Oakland, California 94612
Telephone:  (415) 445-4003
Facsimile:   (415) 445-4020

Javier Bleichmar (*pro hac* motion forthcoming)
jbleichmar@bfalaw.com
Joseph Fonti (*pro hac* motion forthcoming)
jfonti@bfalaw.com
Wilson Meeks (*pro hac* motion forthcoming)
wmeeks@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers' Pension Plan Board*
*and [Proposed] Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AMRAM GALMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH,<br><br>Defendants. | Case No. 2:16-cv-08259-TJH (ASx)<br><br><u>CLASS ACTION</u><br>ONTARIO TEACHERS' PENSION PLAN BOARD'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOVANTS AND IN FURTHER SUPPORT OF ITS MOTION FOR LEAD PLAINTIFF<br><br>DATE:  February 6, 2017<br>TIME:   UNDER SUBMISSION<br>JUDGE: Hon. Terry J. Hatter Jr. |

| | |
|---|---|
| ANTHONY LEONE, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN,<br><br>    Defendants. | Case No. 2:16-cv-9545 TJH (ASx)<br><br>CLASS ACTION |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      ONTARIO TEACHERS' HAS THE LARGEST LOSS OF ANY
        ADEQUATE AND TYPICAL MOVANT, AND ITS MOTION
        SHOULD BE GRANTED ........................................................................... 1

II.     THE TEVA INVESTOR GROUP TOGETHER, AND KLEINERMAN
        INDIVIDUALLY, ARE NOT ADEQUATE LEAD PLAINTIFFS ............ 3

III.    TIAA HAS A SMALLER FINANCIAL INTEREST THAN ONTARIO
        TEACHERS' ....................................................................................... 11

IV.     ONTARIO TEACHERS' HAS THE LARGEST LOSS OF ANY
        ADEQUATE AND TYPICAL MOVANT ................................................ 14

V.      CONCLUSION ................................................................................... 14

1

**TABLE OF AUTHORITIES**

2

**CASES**

3  *Bodri v. Gopro, Inc*., No. 16-cv-00232, 2016 WL 1718217 (N.D. Cal. Apr.

4      28, 2016)....................................................................................... 4

5  *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co*., No. 12-cv-00042,

6      2012 WL 2872787 (D. Idaho July 12, 2012) ....................................... 7

7  *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061, 2012 WL

8      5927985 (N.D. Cal. Nov. 13, 2012) ................................................... 10

9  *Cook v. Atossa Genetics, Inc*., No. C13-1836, 2014 WL 585870

10      (W.D. Wash. Feb. 14, 2014) ............................................................. 8

11  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005)........ 2, 11, 13

12  *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289

13      (N.D. Cal. Aug. 22, 2008) ............................................................... 5, 7

14  *Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004)................................... 7

15  *Frias v. Dendreon Corp*., 835 F. Supp. 2d 1067 (W.D. Wash 2011).......... 4, 6, 7, 8

16  *Hall v. Medicis Pharm. Corp*., No. CV-08-1821, 2009 WL 648626 (D. Ariz.

17      Mar. 11, 2009)............................................................................... 12

18  *In re A-Power Energy Generation Systems Ltd. Sec. Litig*., MDL 11-2302

19      (C.D. Cal. Jan. 9, 2012) ECF No. 14 ................................................. 8

20  *In re Ariad Pharm., Inc. Sec. Litig*., No. 13-cv-12626 (D. Mass. Jan. 8-9,

21      2014), ECF Nos. 36, 28.................................................................... 8

22  *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ..................................... 12

23  *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ........................... 3, 10

24  *In re Century Bus. Servs. Sec. Litig*., 202 F.R.D. 532 (N.D. Ohio 2001)............. 13

25  *In re Host America Corp. Sec. Litig*., 236 F.R.D. 102 (D. Conn. 2006)............... 8

26  *In re MGM Mirage Sec. Litig*., No. 09-cv-01558, 2010 WL 4316754

27      (D. Nev. Oct. 25, 2010)................................................................... 7

28

ii

*In re Netflix, Inc. Sec. Litig.*, No. 12-0225, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ................................................................................................ 5

*In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758, 2016 WL 2986235 (S.D.N.Y. May 13, 2016) ................................................................ 4

*Johnson v. Pozen Inc.*, No. 1:07-CV-599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ........................................................................................... 8

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......... 6

*Kinney v. Capstone Turbine Corp.*, No. CV 15-8914, 2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ............................................................................. 4, 10

*Markette v. XOMA Corp.*, No. 15-CV-03425, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ....................................................................................... 9

*Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479, 2011 WL 759553 (D. Idaho Feb. 24, 2011) ................................................................. 11

*Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ............................................................................ 8

*Schueneman v. Arena Pharms., Inc.*, No. 10-CV-1959, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................................................................ 11

*Takara Trust v. Molex Inc.*, 229 F.R.D. 577 (N.D. Ill. 2005) ............................... 8

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) .................................................................................. 11

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ................................................................................................ 9

*Woburn Ret. Sys. v. Omnivision Techs., Inc.* (N.D. Cal. Feb. 21, 2012) No. 11-cv-05235, ECF No. 100 ....................................................................... 7

**STATUTES**

15 U.S.C. § 78 ............................................................................................ 15

iii

The Ontario Teachers' Pension Plan Board ("Ontario Teachers'") respectfully submits this reply memorandum of points and authorities in opposition to the competing movants and in further support of its motion for (1) consolidation,[1] (2) appointment as Lead Plaintiff, and (3) appointment of Lead Counsel.[2]

## I. ONTARIO TEACHERS' HAS THE LARGEST LOSS OF ANY ADEQUATE AND TYPICAL MOVANT, AND ITS MOTION SHOULD BE GRANTED

If there is any consensus among the five competing lead plaintiff movants, or at least lack of dispute, it is that Ontario Teachers' suffered a loss of approximately $23.2 million, that it is a single entity rather than a group that has aggregated losses, and that its bona fides are beyond reproach.  No movant has raised any issues with Ontario Teachers' loss calculation, its adequacy and typicality to represent the Class, its past experience and success in prosecuting securities class actions, or its choice of counsel.  Ontario Teachers' is indisputably unblemished.

That stands in stark contrast to the Teva Investor Group and TIAA – the only two other movants still in the running.  Not only did Ontario Teachers' opposition brief  establish that their motions are fatally flawed, but the Teva Investor Group and TIAA respectively make many of the same arguments made by Ontario Teachers' against each other.

As TIAA and Ontario Teachers' both point out,[3] the Teva Investor Group has been cobbled together by its lawyers to amass a large loss; the type of group courts routinely reject.  Its three members, two pension funds (Oregon and Chicago) and

---

[1] All movants have agreed that consolidation is appropriate.

[2] All capitalized but undefined terms have the same meaning as set forth in Ontario Teachers' Memorandum of Points and Authorities In Opposition To The Competing Movants And In Further Support of Its Motion For Lead Plaintiff ("OTPP Opp.") (ECF No. 33).

[3] *See* OTPP Opp. at 7-13; TIAA's Memorandum Of Law In Opposition To Competing Lead Plaintiff Motions ("TIAA Opp.") (ECF No. 31) at 2-12.

an individual (Kleinerman), have no pre-existing relationship, were brought together by counsel, and have not articulated any credible or concrete plan to collaborate, resolve internal disputes, or minimize the duplication and inefficiencies that naturally arise in an inchoate group of three plaintiffs and two law firms. This directly contravenes the fundamental purpose of the PSLRA of eradicating lawyer-driven litigation.

Moreover, Kleinerman is inadequate and atypical. He is an obscure individual who has only revealed that he is a businessman who lives in the Netherlands. He thus fails to present any evidence to establish that he can be entrusted with the fiduciary duties of a lead plaintiff. Ontario Teachers' and TIAA both raise these critical concerns. (OTPP Opp. at 12-13; TIAA Opp. at 12-13). Furthermore, Kleinerman's own counsel has argued in another pending securities class action that Kleinerman is inadequate because of his apparent connection to an insider trading scheme. Again, either his counsel is correct and Kleinerman is inadequate, or his counsel is incorrect but Kleinerman is just as inadequate because of his poor choice of counsel. (*See* OTPP Opp. at 4-7). Accordingly, the Teva Investor Group's motion should be rejected.

TIAA's motion is also defective. While TIAA claims it suffered a loss of $42.5 million across nine separate entities, TIAA's financial interest is materially overstated. Indeed, TIAA improperly included in its loss calculation three major errors that, when corrected, lower its true financial interest to $7.6 million. As Ontario Teachers' and the Teva Investor Group both demonstrate in their oppositions, the most egregious error is the inclusion of five TIAA entities that did not even own Teva securities when the fraud was disclosed – the entities were in-and-out.[4] According to the U.S. Supreme Court's *Dura* decision, losses that result

---

[4] OTPP Opp. at 14-19; Memorandum of Points and Authorities In Further Support of the Teva Investor Group's Motion for Consolidation, Appointment as Lead

1   from in-and-out transactions are not cognizable.  When this one error alone is
2   corrected, TIAA's loss is $22.6 million, which is less than the $23.2 million loss
3   suffered by Ontario Teachers'.  (OTPP Opp. at 16-18).  The Teva Investor Group
4   concurs that TIAA's loss is less than Ontario Teachers'.  (TIG Opp. at 3, 18).

5       For all the reasons set forth above and in Ontario Teachers' papers, it has the
6   largest financial interest in the relief sought by the class of any adequate and typical
7   movant, and its motion should be granted.

## II.   THE TEVA INVESTOR GROUP TOGETHER, AND KLEINERMAN INDIVIDUALLY, ARE NOT ADEQUATE LEAD PLAINTIFFS

10      The Teva Investor Group's opposition attempts to justify the group's
11  adequacy by unsuccessfully pretending that it is not a group created and controlled
12  by its counsel.  (*See* TIG Opp. at 5-11).  But if "a court were to determine that the
13  movant 'group' with the largest losses had been created by the efforts of lawyers
14  hoping to ensure their eventual appointment as lead counsel, it could well conclude,
15  based on this history, that the members of that 'group' could not be counted on to
16  monitor counsel in a sufficient manner."  *In re Cendant Corp. Litig.*, 264 F.3d. 201,
17  267 (3d Cir. 2001).

18      As a result, courts are in substantial agreement that, to be presumed the most
19  adequate lead plaintiff, a group must affirmatively establish that: (1) it is something
20  other than an artificial, lawyer driven vehicle (often requiring evidence of a pre-
21  existing relationship among its members); (2) it is not dominated by counsel, and
22  can oversee and make decisions independently; and (3) its members are individually
23  adequate, and have established concrete procedures to make decisions and run the
24  case in a manner that will benefit the class.  *In re Petrobras Sec. Litig.*, 104
25  F. Supp. 3d 618, 621-622 (S.D.N.Y. 2015) (requiring groups to affirmatively

27  Plaintiff and Approval of Lead Counsel and In Opposition to the Competing
28  Motions ("TIG Opp.") (ECF No. 35) at 15-18.

3

"demonstrate" their legitimacy).[5]

Courts have therefore consistently rejected groups made up of disjointed members that aggregate losses simply to prevail at the lead plaintiff stage, especially when there are, as in this case here, other indicia of lawyer-driven litigation. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1073-74 (W.D. Wash 2011) (the "majority position looks askance at the appointment of a group of unrelated persons as lead plaintiff") (collecting cases; citations omitted).

**The Teva Investor Group Is Not Cohesive.**  Recognizing its vulnerability, the Teva Investor Group claims that it is "cohesive and capable of overseeing counsel." (TIG Opp. at 9).  But these boilerplate and unsubstantiated assertions are not sufficient to carry the burden to establish the adequacy of the group.  S*ee Frias*, 835 F. Supp. 2d at 1074-1075 (rejecting lead plaintiff movant's assertions of cohesiveness because "[t]hese types of generalities ['small cohesive group'] have

---

[5] *See also, e.g., In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758, 2016 WL 2986235, at *2-3 (S.D.N.Y. May 13, 2016), ("Ultimately, to enjoy the PSLRA's rebuttal presumption, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs.")(collecting cases); *Bodri v. Gopro, Inc*., No. 16-cv-00232, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 8, 2016); *Kinney v. Capstone Turbine Corp.*, CV 15-8914, 2016 WL 5341948, at *3-4 (C.D. Cal. Feb. 29, 2016).
  Contrary to this line of cases, the Teva Investor Group argues that it has proffered evidence sufficient to "demonstrate[] that it … satisfies the requirements of Rule 23," and that therefore the question of whether the group is proper should be determined only by weighing rebuttal evidence to the statutory presumption that it is the most adequate plaintiff.  (TIG Opp. at 8-11).  But the vast majority of cases have evaluated the bona fides of a group either before determining the greatest financial interest (which is logical because it bears on the propriety of the aggregation of group member losses) or as part of the affirmative evidence of adequacy required by the PSLRA.  *See Bodri*, 2016 WL 1718217, at *2-4 (assessing group under rubric of whether they are sufficiently adequate to warrant presumption); *Petrobras*, 104 F. Supp. 3d at 621-24.

little or no substance and do not further the position of this otherwise unrelated group of individuals as an adequate class representative").[6]  These unsubstantiated assertions are especially misplaced given the particular circumstances here, which as set forth below, strongly suggest that the Teva Investor Group is an artificial, lawyer-driven group.

Specifically, the members of the Teva Investor Group do not, nor can they, claim that they had any pre-existing relationship prior to this case.  This alone disqualifies the group as a lawyer-driven entity.  *See In re Netflix, Inc. Sec. Litig.*, No. 12-0225, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012) ("[T]he courts of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel.").  When we add to the calculus the Teva Investor Group's indefensible and inexplicable choice of a conflicted counsel that is currently arguing in another case that Kleinerman is inadequate, the only reasonable conclusion is that the lawyers, not the plaintiffs, are driving the group.  (OTPP Opp. at 4-7).[7]

The inference of lawyer-driven litigation is further underscored by the Teva Investor Group's inability to articulate any cogent reason why a group consisting of an individual and two pension funds, drastically different in geography and kind, have banded together.  *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) (rejecting group that had "no rationale for th[e] grouping other than to manufacture the greatest financial interest in order

---

[6] *See also* TIAA Opp. at 7-9 (collecting cases for the same proposition).

[7] The evidence that the Teva Investor Group is lawyer-driven is not isolated to the instant action.  In *Mylan*, Kleinerman, after making his own motion and again represented by Cohen Milstein, joined a group of four entities represented by Pomerantz just one day after the lead plaintiff motions were filed in this case.  *See* OTPP Opp. at 11 n.8.  This new *Mylan* group did not even attempt to justify the creation of a five person group with two sets of lawyers, but its formation removed all opposition to the appointment of Pomerantz and Cohen Milstein as lead counsel for the *Mylan* class.  *See id.*

to be appointed lead plaintiff"). It is difficult to imagine a scenario more "reflective" of a "lawyer-driven artificial grouping" and a lack of "inclination to take a firm hand in their dealings with counsel," *Petrobras*, 104 F. Supp. 3d at 622, than the scenario presented by the Teva Investor Group here.

Nonetheless, the Teva Investor Group argues that it is proper and can manage the litigation because its members held a single conference call of uncertain length, made on an unspecified date, during which they discussed such generalities as "their obligations as lead plaintiff." (TIG Opp. at 10-11). Courts have rejected this single-conference-call gimmick as insufficient to establish the bona fides of a group. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (rejecting as inadequate a group with "no pre-litigation relationship, having been introduced to each other 'through our counsel,'" when "[t]heir only involvement in the litigation thus far appears to have been a *single conference call*.") (emphasis supplied).

Further, the "processes for managing the litigation cohesively and efficiently" purportedly discussed on the call (TIG Opp. at 11) are deficient and unworkable. The members of the Teva Investor Group contend that they "fully expect[] to reach unanimous decisions regarding litigation matters" and "agree to utilize consensus decision making." TIG Decl. at 6. Courts flatly reject such proposals which are devoid of substance, and lack any mechanism to resolve "potential ensuing deadlock." *Frias,* 835 F. Supp. 2d at 1075; *accord Petrobras*, 104 F. Supp. 3d at 623 (rejecting group of state retirement funds that had "no agreement in place regarding the resolution of disputes amongst themselves").

The Teva Investor Group, however, also argues "that by pooling their significant experience and resources they will be able to maximize the Class's potential recovery in this Action." (TIG Opp. at 11). This, again, is the type of generalization rejected by courts. *Frias*, 835 F. Supp. 2d at 1075. It also (i) leaves unexplained how "pooling" could possibly help the Class, and (ii) does not address

concerns well-recognized by courts that the banding together of unaffiliated plaintiffs "creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *Petrobras*, 104 F. Supp. 3d at 621-22. The group is similarly silent on why appointing two law firms as co-counsel will not lead to yet further inefficiencies. (OTPP Opp. at 11; TIAA Opp. at 10-11). The Teva Investor Group fails even to set forth "the division of authority and responsibility between the two law firms." *Petrobras*, 104 F. Supp. 3d at 623.

Finally, the cases to which the Teva Investor Group string-cites in purported support of its group do not provide the authority it seeks. (TIG Opp. at 9-10 n. 6-7). For example, in *Eichenholtz* (cited at TIG Opp. n.7), the court applied a searching evaluation of groups and rejected those that failed to explain the formation of their group and "how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation." 2008 WL 3925289, at *9.[8] In nearly all of the other cases the Teva Investor Group cites, the court scrutinized the relevant group carefully in a manner consistent with the PSLRA and the case law discussed above.[9] In other cases, the groups were not opposed, or their adequacy was not

---

[8] *See also Frias*, 835 F. Supp. 2d at 1074 (rejecting group that was the product of "lawyer-driven litigation").

[9] *See Ferrari v. Gisch*, 225 F.R.D. 599, 608 (C.D. Cal. 2004) ("key question is whether the proposed plaintiff group can effectively manage the litigation and direct lead counsel"); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, No. 12-cv-00042, 2012 WL 2872787, at *7 (D. Idaho July 12, 2012) (court approved group only after analysis of "evidence and argument that supports the conclusion that they are a proper, cohesive group" that could fulfill "its tasks as lead plaintiff"); Order Consolidating Related Cases, Appointing [Group] as Lead Plaintiff and Approving Selection of Lead Counsel, *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 11-cv-05235 (N.D. Cal. Feb. 21, 2012), ECF No. 100 at 7 (approving group after "careful scrutiny" of "whether the proposed plaintiff group can effectively manage the litigation and direct lead counsel."); *In re MGM Mirage Sec. Litig.*, No. 09-cv-01558, 2010 WL 4316754, at *4 (D. Nev. Oct. 25, 2010) (appointing group

challenged.[10]  And while some courts have appointed groups that do not have prior affiliation, those courts "have usually done so [with] little discussion."  *Frias*, 835 F. Supp. 2d at 1073 (*quoting* Moore's Federal Practice § 23.191[3][b][vi] (2011)). Those cases are also distinguishable given Pomerantz' current arguments against Kleinerman's adequacy.

**Kleinerman Is Woefully Inadequate.**  Both Ontario Teachers' and TIAA have independently argued that Kleinerman is inadequate to serve as lead plaintiff in this action because Kleinerman failed to provide sufficient information about himself.  (OTPP Opp. at 12-13 (*citing* cases in which courts reject candidate who submit inadequate information to evaluate adequacy); TIAA Opp. at 12-13).  The

---

after analysis of whether the group had a process "to develop litigation strategy and make critical decisions"); *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010) (appointing group when its members' "declarations address every concern raised by courts who have questioned the ability of previously-unrelated group members to cohesively, proactively represent their class"); *Cook v. Atossa Genetics, Inc.*, No. C13-1836, 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014) (appointing group that submitted declaration that provided detailed background on each member's adequacy and agreed upon a plan to make decisions, including by electing a group "spokesperson and … liaison with counsel and the court"); Ruling on Motions for Consolidation and Appointment of Lead Plaintiff, *In re A-Power Energy Generation Systems Ltd. Sec. Litig.*, MDL 11-2302 (C.D. Cal. Jan. 9, 2012), ECF No. 14, at 9  (approving group with "a plan for how it is going to take an active role in the litigation and the necessary decision making processes going forward"); *In re Host America Corp. Sec. Litig.*, 236 F.R.D. 102, 109 (D. Conn. 2006) (court selected only group "to advance a plan for class coordination, coordination with counsel, and efficient handling of litigation issues").

[10] *See, e.g.*, *Johnson v. Pozen Inc.*, No. 1:07-CV-599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) (appointment of group consented to by other movants); Letter from Glen Devalerio to Court, and Order Consolidating Related Actions, *In re Ariad Pharm., Inc. Sec. Litig.*, No. 13-cv-12626 (D. Mass. Jan. 8-9, 2014), ECF Nos. 36, 38 (court appointed unopposed group); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580-81 (N.D. Ill. 2005) (adequacy of group not challenged on grounds relevant to the facts in this case).

Court has no information explaining who Kleinerman is, his experience, background, profession or education.  All that is known is that he is a businessman in the Netherlands, which utterly fails to establish that Kleinerman is up to the task of managing and controlling a large and complicated securities class action in the U.S.  Kleinerman's submissions do not even answer whether he had title to the Teva securities, and thus has standing to pursue the losses that he claims.[11]  This is a critical question that must be decided before any evaluation of financial interest at the lead plaintiff stage.  *Markette v. XOMA Corp.*, No. 15-CV-03425, 2016 WL 2902286, at *3 (N.D. Cal. May 13, 2016) (analyzing standing to pursue the claims of others as a "threshold" predicate question to consideration of financial interest).[12]

Additionally fatal and disqualifying is Kleinerman's incomprehensible choice of Pomerantz as his co-counsel, as Ontario Teachers' explained in its opposition brief.  (*See* OTPP Opp. at 4-7).  Pomerantz recently attacked Kleinerman in another securities class action at the lead plaintiff stage where the motion is still pending as "unfit to serve as lead plaintiff."  (*Id.* at 4-5).  As a result, regardless of whether the underlying reasons that Pomerantz claims Kleinerman is unfit are true, Defendants will surely argue at class certification and trial that Kleinerman's own counsel in this case asserts that he is inadequate to lead the class.  Courts regularly reject lead plaintiff movants subject to unique defenses that will become a significant focus in the litigation, a distraction at trial, and wholly unnecessary for the Class to have to defend.  (*See id.* at 5-6).

[11] *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (legal entity which has title to the shares is the only party with standing).  *See also* TIAA Opp. at 13.

[12] It is possible that Kleinerman may supplement the information provided about himself in the reply.  But that would be too little too late.  Kleinerman already has shown that he does not understand that being a fiduciary is coextensive with a degree of transparency and forthrightness that cannot only arise when he is forced to do so by adversarial motion practice.

Moreover, Kleinerman's inexplicable selection of counsel is unassailable proof that he is inadequate and does not control his counsel. *Cendant*, 264 F.3d at 265 ("[O]ne of a lead plaintiff's most important functions is to 'select and retain' lead counsel"). Only Pomerantz stands to benefit if it is appointed lead counsel in *Perrigo* based on the position that Kleinerman is inadequate and/or appointed in this case based on the diametrically opposite view that Kleinerman is adequate. This Court should not countenance this gamesmanship and disregard for the interests of the Class, and should deny the Teva Investor Group's motion.

**<u>Kleinerman's Individual Loss Is Irrelevant.</u>** In light of Kleinerman's patent inadequacy and atypicality, the Court should reject the Teva Investor Group's argument that the group should be appointed lead plaintiff on the basis that Kleinerman has the largest individual loss. (TIG Opp. at 12-15). Kleinerman clearly is individually unqualified. Moreover, Kleinerman's individual loss is irrelevant. The Teva Investor Group *qua* group is still inadequate because it is lawyer-driven regardless of the size of Kleinerman's loss.[13] Moreover, Kleinerman

---

[13] *Capstone Turbine,* 2016 WL 5341948, at n. 3 (rejecting group's "alternative argument" that it should be appointed because one member's "individual financial losses are greater than the losses of [the competing movant]," holding that "under the plain text of the statute, the Court can only consider the individual that has filed the complaint or made the motion," *i.e.*, the investor group as a whole (and not its individual members). In *Bruce v. Suntech Power Holdings Co.*, the case cited by the Teva Investor Group to support the claim that Kleinerman's individual loss somehow matters (Opp. at 15), unlike here, the group had not "aggregated plaintiffs in order to overcome the largest stake requirement." No. CV 12-04061, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012)).

To the extent *Suntech* implied that the happenstance that one member of the group had the largest individual loss somehow supported the inference that the group was not aggregated to create the largest financial loss, that reasoning has no application here. In this case, as in all PSLRA cases, plaintiffs move for lead plaintiff without knowledge of the losses suffered by other applicants. Thus, *ex ante* groups are cobbled together to increase the likelihood that, when all movants have revealed

opted to band together with Oregon and Chicago to aggregate losses.   Neither the Teva Investor Group nor any of its individual members have moved in the alternative to have Kleinerman evaluated as an individual.   In no event should a court "pluck" individual members of groups to serve as lead plaintiff if a group is found infirm.   *See Tsirekidze v. Syntax-Brillian Corp*., No. CV-07-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008).[14]

## III.   TIAA HAS A SMALLER FINANCIAL INTEREST THAN ONTARIO TEACHERS'

**"In And Out" Transactions Inflate TIAA's Losses**.   TIAA argues that it has "suffered the single largest loss of any movant before the Court" (TIAA Opp. at 16), but, as Ontario Teachers' and the Teva Investor Group have each independently demonstrated, this is not true.   To compute its financial interest TIAA cannot aggregate losses from the five entities that completely sold out all of their Teva holdings before the first corrective disclosure (*i.e.*, in-and-out) because any such losses were not caused by the fraud under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46, 125 S. Ct. 1627, 1633 (2005).   (*See* OTPP Opp. at 14-19; TIG Opp. at 15-19).   "[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed."   *Schueneman v. Arena Pharms., Inc.*, No. 10-CV-1959, 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011); *see also* OTPP Opp. at 14-18 (citing

---

their losses by filing motion papers before the court, they will have the largest loss in aggregate.  That is precisely what the Teva Investor Group appears to have done.
[14] *See also Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479, 2011 WL 759553, at *8 (D. Idaho Feb. 24, 2011) (rejecting request to appoint an individual investor from a rejected group when the group "waited to raise its alternative request for individual consideration of its two members for lead plaintiff appointment in its reply memorandum"); *Petrobras*, 104 F. Supp. 3d at fn. 4 (declining to consider investor with largest loss for Lead Plaintiff because "it at no time sought to serve as individual lead plaintiff.").

additional cases); TIG Opp. at 15-16 (same).[15]

Ontario Teachers' and the Teva Investor Group agree that TIAA's financial interest must exclude the five fully in-and-out entities, and thus must be reduced to $22,560,089. (OTPP Opp. at 18; TIG Opp. at 18). The Teva Investor Group further agrees that, as a result, Ontario Teachers' loss of $23,236,126 – which is unchallenged – is larger than that of TIAA: "Indeed, the TIAA Group's losses actually are less than those claimed by Ontario." (TIG Opp. at 3).[16]

**TIAA's Financial Interest Does Not Exceed $7.6 Million**. The difference between the financial interest TIAA claimed in support of its motion before the Court, and that which is proximately caused by the fraud and therefore recoverable, is even greater, based on the second and third errors that Ontario Teachers' identified in its opposition. (OTPP. Opp. at 19-23).

TIAA incorrectly claims an additional $2.3 million loss toward its financial interest from purchases made after the last corrective disclosure. (OTPP Opp. at 19-21). Losses from TIAA's post-final disclosure purchases are not supported by the allegations, and thus are not relevant to the Court's lead plaintiff determination. (*See* TIAA Opp. at 15 (arguing that reference to claims unsupported by the allegations in the complaints on file are "not relevant to the Court's lead plaintiff

---

[15] Ontario Teachers', the Teva Investor Group, and TIAA are all in unanimous agreement that the lead plaintiff movants must base their financial interest on allegations as pled in the filed complaints. (*See* TIG Opp. at 17 n.9 (citing cases for the proposition that a movant cannot base proximate cause on disclosures outside the complaint); OTPP Opp. at 16-17 n.14 (same); TIAA Opp. at 15 (arguing that the fact that Ontario Teachers' purchased on the offering is not relevant because it was not alleged in the complaint)). Thus, TIAA cannot come forward now with another purported disclosure date that might theoretically capture these trading losses. In any event, Ontario Teachers' is not aware that any such disclosure exists.

[16] Even a difference in losses of "only a few hundred dollars" is, "however minute," sufficient to determine the investor with the largest financial interest. *Hall v. Medicis Pharm. Corp.*, No. CV-08-1821, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) (*citing In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)).

determination") (*citing In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (rejecting movant that sought to alter a class period to manufacture the largest loss, reasoning that movants "cannot simply define the class they seek to represent"))).  Once these losses of $2.3 million arising from post-final disclosure purchases are also excluded, TIAA's financial interest is further reduced to $20.3 million.  (OTPP. Opp. at 21).

Lastly, TIAA's financial interest ultimately is a mere $7.6 million when all of TIAA's trading losses that were not proximately caused by the fraud are backed-out based on a *Dura* loss calculation (*i.e.,* all losses from purchases after the final disclosure and sales before the first disclosure).  (*See* OTPP Opp. at 21-23).

**TIAA's Artificial Aggregation of Losses**.  There is a significant discrepancy between TIAA's loss submitted to the Court of $42.5 million and the reality of its true financial interest under the PSLRA and *Dura*.  TIAA's claimed financial interest number appears to be the result of an attempt to amass losses from nine distinct entities for the sole purpose of securing lead plaintiff.  Indeed, it is self-evident that the five entities that are entirely in-and-out (*i.e.*, the first error) improperly inflated TIAA's alleged financial interest by almost $20 million.  Two of the entities sold out of their Teva positions entirely in October 2015, ten months before the first alleged disclosure date.  (*See* Annotated TIAA loss calculation, Ex. E to 2d Weaver Decl., ECF No. 34-5 at 71-72).  It is black-letter law, and a basic principle of proximate cause, that losses not caused by the fraud are not cognizable.[17]  This suggests that at least the five in-and-out entities were simply added to bulk up TIAA's claimed financial interest.

---

[17] *Dura*, 544 U.S. at 343-44, 125 S. Ct. at 1632-33 (quoting *Pasley v. Freeman*, 3 T.R. 51, 65, 100 Eng. Rep. 450, 457 (1789) (if "no injury is occasioned by the lie, it is not actionable: but if it be attended with a damage, it then becomes the subject of an action")).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   ONTARIO TEACHERS' HAS THE LARGEST LOSS OF ANY ADEQUATE AND TYPICAL MOVANT

In light of the Teva Investor Group's inadequacy and atypicality, and TIAA's incorrect financial interest calculation, Ontario Teachers' has the largest financial interest in the relief sought of any adequate and typical movant.  Ontario Teachers' has years of experience litigating securities class actions and a record of involvement in shareholder governance as fiduciaries.  (Jang Decl., ECF No. 26-3 at ¶¶ 3, 5-6, 8).  To that end, Ontario Teachers' has attested that "the selection of Lead Counsel is a critically important matter, and that Lead Counsel shall act only pursuant to the Lead Plaintiff's instructions."  (*Id.* at ¶ 10).  This is in stark contrast to the conflicts and contradictions stemming from the poorly conceived aggregation of counsel and clients that comprise the Teva Investor Group.

And unlike TIAA, Ontario Teachers' has submitted an undisputed calculation of its financial interest.[18]  The competing movants do not, nor can they, dispute any of it.  Ontario Teachers' has been fully transparent with the Court and the Class.  Accordingly, Ontario Teachers' is unquestionably the kind of committed institutional investor the Court should entrust with appointment as Lead Plaintiff in a complex securities litigation like this one.

## V.   CONCLUSION

For the foregoing reasons, Ontario Teachers' respectfully requests that the Court: (1) consolidate all related actions; (2) appoint Ontario Teachers' as Lead

---

[18] TIAA takes issue with Ontario Teachers' point in its opening papers that it purchased shares in Teva's December 3, 2015 secondary offering and can assert claims associated with that offering.  (TIAA Opp. at 15).  TIAA argues that those claims were not pled in the filed complaints and, therefore, are not relevant here. *Id.*  While it is correct that those claims have not been pled, the point is that the appointed lead plaintiff will be able to add them to the amended complaint to be filed (Kleinerman excepted, as he appears not to have made purchases on the secondary offering, see OTPP Opp. at 25 n.17).  To be clear, TIAA is not disputing Ontario Teachers' loss calculation.

1 Plaintiff; and (3) approve Ontario Teachers' selection of BFA as Lead Counsel.[19]

2

3 Dated: January 23, 2017                Respectfully submitted,

4                                        **BLEICHMAR FONTI & AULD LLP**

5                                        */s/ Lesley E. Weaver*
                                        _____
6                                        Lesley E. Weaver (Bar No. 191305)

7                                        lweaver@bfalaw.com
8                                        1999 Harrison Street, Suite 670
                                        Oakland, California 94612
9                                        Telephone:  (415) 445-4003
                                        Facsimile:   (415) 445-4020
10

11                                        Javier Bleichmar (*pro hac* motion forthcoming)
12                                        jbleichmar@bfalaw.com
                                        Joseph Fonti (*pro hac* motion forthcoming)
13                                        jfonti@bfalaw.com
                                        Wilson Meeks (*pro hac* motion forthcoming)
14                                        wmeeks@bfalaw.com
15                                        7 Times Square, 27th Floor
16

17  _____
18  [19] On January 17, 2016, Defendants filed a motion to transfer this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  ECF No. 37.  Ontario
19  Teachers' respectfully submits that the Court should first rule on the Lead Plaintiff motions and then allow the appointed Lead Plaintiff to address Defendants' transfer
20  motion.  Currently, the putative Class lacks an authorized leader to make these critical strategic and legal decisions – the plaintiffs on the two actions captioned-
21  above did not move for lead plaintiff.  In enacting the PSLRA, Congress called for prompt determination of the Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i) ("Not
22  later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made … and shall appoint a[] lead
23  plaintiff….").  Here, the referenced notice was published on November 6, 2016.
24  Moreover, given that all of the related cases against Teva are in the Central District of California and the Lead Plaintiff movants have briefed their motions under Ninth
25  Circuit law, transferring the case before deciding the Lead Plaintiff motions would
26  be inefficient, wasteful, and cause undue delay.  Ontario Teachers' will file a more detailed response to Defendants' transfer motion further explaining these points at
27  the appropriate time.
28

New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers'*
*Pension Plan Board, and*
*[Proposed] Lead Counsel for the Class*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on January 23, 2017, I authorized the electronic filing of

3  the foregoing with the Clerk of the Court using the CM/ECF system which will send

4  electronic notification of such filing to the registered participants. I certify under

5  penalty of perjury under the laws of the United States of America that the foregoing

6  is true and correct.  Executed on January 23, 2017.

7

8                                         */s/ Lesley E. Weaver*
                                         _____

9                                         Lesley E. Weaver (Bar No. 191305)

10                                        **BLEICHMAR FONTI & AULD LLP**
                                         1999 Harrison Street, Suite 670

11                                        Oakland, California 94612
                                         Telephone:  (415) 445-4003

12                                        Facsimile:  (415) 445-4020
                                         lweaver@bfalaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28