JENNIFER PAFITI
**POMERANTZ LLP**
468 NORTH CAMDEN DRIVE
BEVERLY HILLS, CA 90210
TELEPHONE: (818) 532-6499

STEVEN J. TOLL (*pro hac vice forthcoming*)
DANIEL S SOMMERS (*pro hac vice forthcoming*)
JULIE G. REISER (*pro hac vice forthcoming*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 NEW YORK AVE, N.W., SUITE 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600

CAROL V. GILDEN (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 S. LASALLE STREET, STE 1705
CHICAGO, IL 60603
TELEPHONE: (312) 357-0370

*Proposed Co-Lead Counsel for Movant*
[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMRAM GALMI, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH<br><br>    Defendants. | Case:  2:16-cv-08259-TJH-AS<br><br>DATE:        February 6, 2017<br>TIME:        UNDER SUBMISSION<br>CTRM:      9B<br>JUDGE:     Hon. Terry J. Hatter |

*(Additional caption on next page)*

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

i

2208805.1

1

2   ANTHONY LEONE, Individually and   )   Case No. 2:16-cv-09545-DSF-AFM
    on behalf of all others similarly   )
3   situated,   )
                )
4          Plaintiff,   )
                )
5          v.   )
                )
6   TEVA PHARMACEUTICAL   )
    INDUSTRIES LIMITED, EREZ   )
7   VIGODMAN, EYAL DESHEH, and   )
    KOBI ALTMAN   )
8                )
    Defendants.   )
9   _____   )

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- ii -

2208805.1

1
2

TABLE OF CONTENTS

3

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

    A.   The Teva Investor Group Is a Proper Group that Has Shown It Is Capable of Fairly and Adequately Protecting the Interests of the Class, and Its Losses May Be Aggregated ....................................................... 3

        1.   The Teva Investor Group Is Small, Cohesive, and Has More Than Sufficiently Explained Its Formation .............................. 3

        2.   The Teva Investor Group Will Make Group Decisions Effectively in a Consensus-Driven Manner .......................... 10

        3.   The Teva Investor Group Will Exercise Ultimate Control Over the Lawyers and the Litigation ................................. 13

    B.   The Teva Investor Group's Selection of Two Law Firms is Reasonable and Routinely Approved by Courts ................................ 14

    C.   Mr. Kleinerman Is an Adequate Representative and Is Not Subject to Unique Defenses ................................................................................ 17

        1.   Stale and Demonstrably False Allegations of Insider Trading Concerning Irrelevant Individuals Do Not Subject Mr. Kleinerman to Unique Defenses ............................................ 20

        2.   Traders with Trading Patterns Like Mr. Kleinerman's Are Adequate Lead Plaintiffs ...................................................... 22

    D.   The TIAA Group's Losses Are At Least $20 Million *Lower* Than It Claims, and Are Lower than Both Mr. Kleinerman's Losses and Ontario's, and Thus, It Cannot Be the Presumptive Lead Plaintiff .... 24

V.    CONCLUSION ................................................................................................ 25

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

i

2208805.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re: A-Power Energy Generation Systems Ltd. Securities Litigation*,
No. 11-ml-02302, ECF No. 14 (C.D. Cal. Jan. 9, 2012) (attached
as exhibit to ECF No. 35 at ECF No. 35-1) ...................................................... 14

*Andrade v. Am. Apparel, Inc.*,
No. 10-cv-6352, 2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15,
2011) ........................................................................................................................ 19

*In re Baan Co. Sec. Litig.*,
186 F.R.D. 214 (D.D.C. 1999) .............................................................................. 4

*Bang v. Acura Pharm., Inc.*,
No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ............................ 7,14

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................ 14

*Beale v. EdgeMark Fin. Corp.*,
164 F.R.D. 649 (N.D. Ill. 1995) .......................................................................... 19

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13,
2012) ................................................................................................................... 3, 14

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ....................................................................... 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................*passim*

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................. 4, 14

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- ii -

2208805.1

*City of Ann Arbor Employees' Retirement Sys. v. Accuray Inc.*,
    No. 09-3362-CW, 2009 U.S. Dist. LEXIS 105466 (N.D. Cal. Oct.
    26, 2009) ................................................................................................. 9

*Cook v. Atossa Genetics, Inc.*,
    No. C13-1836, 2014 U.S. Dist. LEXIS 19218 (W.D. Wash. Feb.
    14, 2014) ............................................................................................... 15

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C07-06140, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal Aug 22,
    2008) ....................................................................................... 10, 23, 24

*In re Genworth Financial, Inc. Securities Litigation*,
    3:14-cv-00682, Dkt. No. 21 (E.D. Va. Oct. 6, 2014) ....................... 15

*Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009) .................................................. 3, 11

*Hodges v. Immersion Corp.*,
    No. 09-cv-4073, 2009 U.S. Dist. LEXIS 122565 (N.D. Cal. Dec.
    21, 2009) ............................................................................................... 23

*Malasky v. IAC/Interactivecorp*,
    No. 04 CIV. 7447 (RJH), 2004 WL 2980085 (S.D.N.Y. Dec. 21,
    2004) ....................................................................................................... 8

*Markette v. Xoma Corp.*,
    No. 15-cv-3425, 2016 U.S. Dist. LEXIS 63701 (C.D. Cal May 13,
    2016) .................................................................................................. 9, 10

*Miller v. Ventro Corp.*,
    No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ............. 12, 17

*Mohanty v. Bigband Networks, Inc.*,
    No. 07-cv-5101, 2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 13,
    2008) ..................................................................................................... 18

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
    No. 15-cv-2938, 2015 U.S. Dist. LEXIS 138654 (N.D. Cal. Oct. 8,
    2015) .............................................................................................. 15, 16

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- iii -

2208805.1

*Prefontaine v. Research in Motion Ltd.*,
    No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. Jan. 5,
    2012) .................................................................................................... 23

*Rieckborn v. Velti PLC*,
    No. 13-cv-3889, 2013 U.S. Dist. LEXIS 171206 (N.D. Cal. Dec. 3,
    2013) .................................................................................................... 23

*Robb v. FitBit Inc.*,
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ....... 2, 9, 12, 14, 15, 16

*Roofers' Pension Fund v. Papa & Perrigo, Inc.*,
    16-cv-2805 (D.N.J. May 18, 2016) ........................................................ 20, 21

*Schonfield v. Dendreon Corp.*,
    No. 07-cv-800, 2007 U.S. Dist. LEXIS 76816 (W.D. Wash. Oct. 4,
    2007) .................................................................................................... 19

*Serafimov v. Netopia, Inc.*,
    No. 04-cv-3364, 2004 U.S. Dist. LEXIS 25184 (N.D. Cal. Dec. 3,
    2004) .................................................................................................... 23

*Shriver v. Impac Mortg. Holdings, Inc*.
    No.: SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607
    (C.D. Cal. May 2006) ............................................................................ 17

*Smilovits v. First Solar, Inc*.,
    No. 12-cv-555 (PHX), 2012 U.S. Dist. LEXIS 102032 (D. Ariz.
    July 23, 2012) ...................................................................................... 19

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ........................................................... 18

*In re UTStarcom Secs. Litig.*,
    No. C. 04-4908 (JW), 2010 U.S. Dist. LEXIS 48122 (N.D. Cal.
    May 12, 2010) ...................................................................................... 23

*Van Duppen v. Mylan N.V.*,
    No. 16-cv-7926-JPO, (S.D.N.Y. Jan. 9, 2017) ..................................... 4, 21

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- iv -

2208805.1

*In re Versata, Inc., Sec. Litig.*,
  No. C 01-1439, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)......................14

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ..........7, 8, 14

*Woburn Ret. Sys. V. Omnivision Techs., Inc.*,
  2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012)...................................2

*In re Zynga, Inc. Secs. Litig.*,
  No. 12-cv-4007, 2013 U.S. Dist. LEXIS 9314 (N.D. Cal. Jan. 22,
  2013)............................................................................................................23

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ........................*passim*

**OTHER AUTHORITIES**

Model Rules of Professional Conduct Rule 1.7 ......................................21

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- v -

2208805.1

## I.   INTRODUCTION

Following two rounds of briefing,[1] a single, paramount fact is undisputed by any competing movant: the Teva Investor Group has the largest aggregate loss at over $47 million, an amount that is nearly twice as large as any other movant.[2] Additionally, after removing the transactions that the TIAA Group engaged in before the truth was revealed, and which cannot legally be included as losses, Mr. Kleinerman has the largest **single** loss of approximately $30 million, compared to

---

[1] Three competing movants remain: (1) the Teva Investor Group, composed of the Oregon Public Employees Retirement System ("Oregon"), the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers"); and Dan Kleinerman (2) the Ontario Teachers' Pension Plan ("Ontario"); and (3) TIAA, which is a group composed of nine different funds and accounts: (i) TIAA-CREF International Equity Index Fund; (ii) TIAA-CREF Large-Cap Growth Fund; (iii) TIAA-CREF Enhanced International Equity Index Fund; (iv) TIAA CREF Growth & Income Fund; (v) the TIAA-CREF Life Growth Equity Fund; (vi) TIAA-CREF Life Growth & Income Fund; (vii) CREF Stock Account; (viii) CREF Global Equities Account; and (ix) CREF Growth Account.

The Wayne County Employees' Retirement System, the City of Roseville Employees' Retirement System, and the Waterford Township Police and Fire Retirement System have withdrawn their motion. *See* ECF No. 30. Their conclusory opinion that the TIAA Group has the greatest financial interest, lacks any evidentiary support and should be afforded neither legal significance, nor should it be given any weight. It is also tainted because those funds regularly retain Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to represent them in securities fraud cases and obviously are trying to help Robbins Geller here by professing support for its clients (the TIAA Group) in this case. *See, e.g.*, *Wayne Cty. Employees' Ret. Sys. v. Dimon*, 629 F. App'x 14, 15 (2d Cir. 2015) (Wayne County represented by Robbins Geller); *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 400 (S.D.N.Y. 2011) (City of Roseville represented by Robbins Geller); *City of Roseville Employees' Ret. Sys. v. Textron, Inc.*, 810 F. Supp. 2d 434, 436 (D.R.I. 2011) (same); *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 SLT RER, 2013 WL 1345086, at *1 (E.D.N.Y. Mar. 29, 2013) (Waterford represented by Robbins Geller).

Finally, movant Robert Brosnan has filed a notice of non-opposition to the competing motions. *See* ECF No. 45.

[2] As explained in § II.D. below, the TIAA Group's losses are not $42 million, but are actually at most around $20 million.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 1 -

2208805.1

the next largest movant, Ontario, at approximately $23 million.[3]

Thus, the Teva Investor Group's losses are **twice** the size of the next largest movants.[4] In light of that dramatic disparity, the only remaining inquiry under the PSLRA and the Ninth Circuit's decision in *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) is whether the Teva Investor Group's claims are typical of other ADR investors and whether the Teva Investor Group is adequate to represent their interests. Mr. Kleinerman, the individual with the greatest financial losses of all investors, aligned himself with two public pension funds. Oregon's and Chicago's losses, while not as large as Mr. Kleinerman's, are very substantial and provide them with a significant interest in and incentive to aggressively prosecute this action. Thus, the Teva Investor Group fully satisfies all of the PSLRA's requirements for appointment having demonstrated a financial loss that is twice as large as any other movant; being comprised of a sophisticated individual investor and institutional investors that reflect the composition of the class; and, bringing to the litigation experienced leadership in securities fraud class actions that will inure to the benefit of the class.

Unless the remaining movants offer compelling evidence—or, in the words of the PSLRA, "proof"—that the Teva Investor Group has failed to demonstrate its

---

[3] Moreover, it cannot be disputed that Mr. Kleinerman has a larger loss than any of the nine funds that make up the TIAA Group.

[4] The TIAA Group argues that the Teva Investor Group's losses should not be aggregated for the purposes of allocating the presumption in the first instance. As discussed below, these arguments should be rejected. But even the TIAA Group admits that one situation where courts, particularly California district courts, almost invariably "allow[] previously unaffiliated investors to aggregate losses" is where "one group member individually asserted the largest loss." ECF No. 31 at 3 n. 5 (citing *Robb v. FitBit Inc.*, No. 16-CV-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *10 (N.D. Cal. May 10, 2016) and *Woburn Ret. Sys. V. Omnivision Techs., Inc.*, 2012 U.S. Dist. LEXIS 21590, at *13 (N.D. Cal. Feb. 21, 2012)). In this case, the TIAA Group simply cannot claim the largest individual loss (for the reasons discussed herein). Thus, even under the TIAA Group's reasoning, the presumption attaches to the Teva Investor Group in the first instance.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 2 -

2208805.1

adequacy and typicality to represent the class, the law compels that the Teva Investor Group be appointed lead plaintiff. Faced with this reality, and with nothing left to lose, the TIAA Group and Ontario resort to a hodgepodge of speculative and ultimately baseless arguments against Mr. Kleinerman individually, as well as the Teva Investor Group as a whole, in order to obscure the simple step-by-step approach mandated by the PSLRA and in *In re Cavanaugh*. The law, however, requires proof, not argument built upon speculation and innuendo, in order to overcome the clear standard imposed by *In re Cavanaugh*. Accordingly, the TIAA Group's and Ontario's motions should be denied, and the Teva Investor Group's motion should be granted.

## II.   ARGUMENT

### A.   The Teva Investor Group Is a Proper Group that Has Shown It Is Capable of Fairly and Adequately Protecting the Interests of the Class, and Its Losses May Be Aggregated

#### 1.   The Teva Investor Group Is Small, Cohesive, and Has More Than Sufficiently Explained Its Formation

All remaining movants agree that the Teva Investor Group has the largest computed loss. In adherence to the PSLRA, courts throughout the country, including California district courts, routinely appoint small and cohesive groups of investors. This is so even if the investors are previously unaffiliated provided that such groups proffer evidence that they will fairly and adequately protect the interests of the class, including by exercising control over the litigation so that the litigation does not become "lawyer-driven." *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (appointing group of three individuals over a competing individual because the group submitted evidence of a "protocol for managing the litigation" and because the "small number of members" of the group "provides additional assurance that the Group itself, and not its attorneys,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 3 -

2208805.1

will control the litigation"); *Bruce v. Suntech Power Holdings Co. Ltd.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) (appointing group where "made up of just three individuals," which "is a small and cohesive group, in accordance with the PSLRA's goal of having an engaged lead plaintiff").[5]

The Teva Investor Group has made this precise showing here. Not only is it composed of only three investors—at the low end of the range proposed by the SEC—the Group's members have also submitted a Joint Declaration, *see* ECF No. 17-8 ("Joint Declaration" or "Joint Decl.") explaining how the Teva Investor Group came together, and its plans for controlling the litigation. Each member also now submits a supplemental declaration responding to certain points raised by the competing movants. *See* Exhibits A-C to the concurrently filed Reply Declaration of Jennifer Pafiti, dated January 23, 2017 ("Reply Pafiti Declaration"). Moreover, the Teva Investor Group consists of engaged and sophisticated institutions which have been active in securities litigation before, and a savvy businessman investor

---

[5] Indeed, the Securities and Exchange Commission ("SEC") has opined that it believes that "three to five persons [is] a number that will facilitate joint decision making and also help to assure that each group member has a sufficiently large stake in the litigation," and that such groups are "capable of effectively managing the litigation and supervising counsel." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) (attaching SEC Amicus Curiae memorandum).

Further, in the only Court of Appeals case to thoroughly analyze the issue of lead plaintiff groups through the lens of the history and purpose of the PSLRA, the Third Circuit concluded that unrelated groups are clearly permissible, so long as such groups would "fairly and adequately protect the interests of the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Fair and adequate representation, and *not* "relatedness," "is the test . . . with which courts should be concerned." *Id.* To be sure, the Third Circuit recognized that factors such as the reasons for the group's formation and the size of the group could inform the inquiry into the group's ability to fairly and adequately represent the interests of the class. *Id.* The ultimate touchstone, however, remained fair and adequate representation, and the Third Circuit categorically disagreed with district courts that had held that the lack of a pre-litigation relationship "invariably precludes" such representation. *Id.* at 266.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 4 -

2208805.1

who was recently appointed as a lead plaintiff with other institutional investors in the Mylan securities class action. *Van Duppen v. Mylan N.V.*, No. 16-cv-7926-JPO, ECF No. 26, Order Consolidating Related Actions, Appointing Co-Lead Plaintiffs And Approving Co-Lead Counsel (S.D.N.Y. Jan. 9, 2017). The members of the Teva Investor Group are appropriately exacting of their counsel and directing counsels' efforts on behalf of the class.

As to its formation, the Teva Investor Group members explained that "[a]fter conferring with [the other group members]," Oregon (represented by Assistant Attorney General Brian de Haan), Chicago Teachers (represented by Executive Director Charles A. Burbridge), and Mr. Kleinerman each "decided to join together" to "ensure this action is led by sophisticated investors with experience overseeing counsel in complex litigation," "to gain the advantages of joint decision-making," including the advantage of "combin[ing each group member's] knowledge, experience, sophistication[,] and resources." Joint Decl., ¶¶ 5-6.

Oregon's decision to join the group was also based on its conviction that it has "an important responsibility for institutional investors whose assets are affected by fraud in the public markets" by leading what it determines to be meritorious" securities litigation. Supplemental Declaration of Brian de Haan in Support of the Teva Investor Group's Motion for Appointment as Lead Plaintiff, dated January 23, 2017, ¶ 1 ("Supplemental de Haan Declaration" or "Supp. de Haan Decl."), attached as Exhibit A to the Reply Pafiti Declaration. Having made that determination in this case, Oregon then independently "interviewed multiple law firms . . . and considered various partnership opportunities before deciding to join the Teva Investor Group." *Id.*, ¶ 2. This decision was based on Oregon's independent assessment, following a group conference call, that Mr. Kleinerman and Chicago Teachers were "suitable partner[s]" in the litigation, because of the

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 5 -

2208805.1

large size of their respective losses, and Chicago Teachers' "substantial experience litigating securities fraud actions." *Id.*, ¶¶ 4-5. Oregon was mindful of the fact that "given the size of Mr. Kleinerman's losses, other lead plaintiff movants would attempt to challenge whether he is a typical Teva investor," *id.*, ¶ 3, but after speaking with him came to believe that he was "more than adequate to advance the interests of other investors" in this action. *Id.*

    As for Chicago Teachers, its decision to join the group was made pursuant to Chicago Teachers' Securities Litigation Policy. Supplemental Declaration of Charles A. Burbridge in Support of the Teva Investor Group's Motion for Appointment as Lead Plaintiff, dated January 23, 2017, ¶ 1 ("Supplemental Burbridge Declaration" or "Supp. Burbridge Decl."), attached as Exhibit B to the Reply Pafiti Declaration. Specifically, Chicago Teachers "had discussions with multiple law firms . . . and considered various partnership opportunities . . . before deciding to join the group now known as the Teva Investor Group." *Id.*, ¶ 2. Chicago Teachers based its decision on its understanding, gleaned from "experience in other securities litigation cases, that other movants would challenge the Teva Investor Group both as a group and as to its individual members," and also that "given the size of Mr. Kleinerman's losses, other movants might also attempt to challenge whether he is a typical Teva investor." *Id.* After "participat[ing] in a Teva Investor Group conference call that included Mr. Kleinerman as well as representatives on behalf of the Oregon Public Employees Retirement System," Chicago Teachers "felt comfortable proceeding with Mr. Kleinerman and Oregon as co-lead plaintiffs in this matter." *Id.*, ¶ 3. Chicago Teachers' decision was ultimately grounded in its conviction that "[i]n light of the magnitude of losses incurred by Mr. Kleinerman, as well as Oregon, along with Oregon's experience litigating actions, . . . joining together would create a group

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 6 -

2208805.1

with a very substantial financial interest in the case, and provide ample diversity and litigation experience with PSLRA cases." *Id.*, ¶ 4. "Chicago Teachers also concluded that each member of the Teva Investor Group was more than adequate to advance the interests of other investors who purchased Teva ADRs that are the subject of this action." *Id.*

As for Mr. Kleinerman, his motivations for joining the Teva Investor Group were based on: (1) his recognition that his fellow group members "also had significant purchases of Teva ADRs," such that Mr. Kleinerman became "comfortable that they had every reason to be fully committed to the effective and efficient prosecution of this action"; (2) his fellow group members' "strong reputations and significant professional resources and experience in prosecuting securities litigation in the United States," which "gave [him] comfort that association with Oregon and Chicago [Teachers] was appropriate and in the best interests of Teva investors"; and (3) his conviction that "the diversity of the Teva Investor Group . . . would give the class the benefit of the perspectives a group of investors that would be reflective of the class itself," composed as it is of "both individuals and institutions," and of "United States and non-United-States-based investors—especially in a case pending in the United States that involves a company that is based in Israel, the country where [he] was born and spent many years defending and working in." Supplemental Declaration of Dan Kleinerman in Support of the Teva Investor Group's Motion for Appointment as Lead Plaintiff, dated January 20, 2017, ¶¶ 5 ("Supplemental Kleinerman Declaration" or "Supp. Kleinerman Decl."), attached as Exhibit C to the Reply Pafiti Declaration.

Courts throughout the country have readily endorsed similar rationales appointing small, cohesive groups. *See, e.g.*, *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7 (E.D. Pa. Apr.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 7 -

2208805.1

10, 2014) (crediting group's explanation that its formation was rooted in the fact that its members were "like-minded investors [who] determined, after conferring with each other, to seek joint appointment"); *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *5 (N.D. Ill. Jan. 11, 2011) (crediting group's explanation that it joined together "to take advantage of each individual investor's background and investment experience"); *Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447 (RJH), 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (noting that group members "will not only pool financial resources, knowledge and experiences, but may also reap the 'benefits of joint decision-making' when pressed with difficult choices that may arise in such large litigation matters.").

Moreover, neither Ontario nor the TIAA Group offer any evidence—or even *argument*, for that matter—that the Teva Investor Group's explanation for its formation was falsely made. And, despite strenuously decrying the Teva Investor Group as a "lawyer-driven" affront to the PSLRA, neither Ontario nor the TIAA Group meaningfully argue, much less offer affirmative evidence, that contrary to their sworn rationales, the true reason that Oregon, Chicago Teachers, and Mr. Kleinerman joined together was that their lawyers forced them to in order to gain control of the case. Of course, there is no such evidence because that is not what happened. As the district court in *West Palm Beach* cogently concluded under similar circumstances, "[t]he Court has no reason to doubt the veracity of [the group's explanations in] this declaration." 2014 WL 1395059, at *8. Thus, just as the court in *W. Palm Beach* "reject[ed] the contention that the Institutional Investor Group was lawyer-created and conclude[d] that ultimately, the individual members of the group decided to join together to litigate this action," *id.*, so too should the court conclude here.

Instead, the TIAA Group incorrectly asserts that courts have "uniformly"

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 8 -

2208805.1

rejected groups[6] unless one of three circumstances concocted by the TIAA Group's counsel exist.[7] *See* TIAA's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions, ECF No. 31 ("TIAA Opp.") at 3 n.5. Contrary to the TIAA Group's argument, in *City of Ann Arbor Emples. Ret. Sys. v. Accuray Inc.,* the Northern District of California appointed a group consisting of an individual investor and a pension fund as lead plaintiff over the opposition of a competing individual movant where the groups' losses "dwarf[ed]" those of the competition. 2009 U.S. Dist. LEXIS 105466, at *7-8 (N.D. Cal. Oct. 26, 2009). Although the TIAA Group goes so far as to suggest that the Teva Investor Group seeks to "subvert[] the PSLRA's goal," TIAA Opp. at 4, the TIAA Group does not, and cannot cite a single case where any court has held that groups may be appointed lead only in the limited scenarios they describe. In fact, even the cases cited by the TIAA Group have stated that "there is no basis in the PSLRA for barring the aggregation of unrelated investors' claims as a matter of law." *Markette v. Xoma Corp.*, No. 15-cv-3425-HSG, 2016 U.S. Dist. LEXIS 63701, at *26 (C.D. Cal May 13, 2016). *See also Cavanaugh*, 306 F.3d at 731 ("Congress enacts statutes, not purposes[.]").[8]

---

[6] In fact, the conduct of the TIAA Group's counsel belies this argument. In the past five years alone, Robbins Geller has moved to appoint groups of apparently unrelated investors as lead plaintiff in at least 38 cases, including at least 9 times in the Ninth Circuit. The court appointed the group represented by Robbins Geller in at least 19 of those cases. *See* Appendix A, attached hereto.

[7] Even if the TIAA Group was correct—which it is not—and groups were only appointed where the largest individual movant was a member of that group, the Teva Investor Group would still prevail here because, with more than $30 million in computed losses, Mr. Kleinerman, as a member of the Teva Investor Group, has the largest financial interest of any individual movant. *See Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *10. In fact, if this were the consideration, the true losses of the TIAA Group funds, which are at least $20 million **less** than the financial interest they claim, such that their losses are **at most** under $22 million, would not even come close to Mr. Kleinerman's. TIAA Opp, at n.5.

[8] The TIAA Group bases its arguments on cases that are wholly inapplicable to the present case. In *Crihfield v. CytRx Corp.,* a group of six unrelated investors,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 9 -

2208805.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In sum, the Court should disregard the TIAA Group's and Ontario's disparaging characterization that the Teva Investor Group's sworn reasons for coming together constitute "generalized and empty explanations," *see* Ontario Teachers'' Pension Plan Board's Memorandum of Points and Authorities in Opposition to the Competing Movants and in Further Support of Its Motion for Lead Plaintiff, ECF No. 33 ("Ontario Opp.") at 9, in the face of the specific, sworn statements of the Teva Investor Group to the contrary.

### 2. The Teva Investor Group Will Make Group Decisions Effectively in a Consensus-Driven Manner

The Teva Investor Group also explains how it will make decisions as a group, including emergency decisions. For instance, the Group agreed to "regularly discuss case filings with counsel through joint conference calls," Joint Decl., ¶ 13, and "to utilize consensus decision making," with "each member . . . fully expect[ing] to reach unanimous decisions." *Id.*, ¶ 13. The Group also "has agreed to use our best efforts to participate in all emergency meetings upon 24-hours' notice," and if certain members are unavailable, a limited exception to the

represented by Robbins Geller, was found inadequate where the joint declaration they submitted consisted of only four paragraphs of substantive information about the group and failed to demonstrate any incentive or ability to work together to control the litigation. No. 16-cv-5519 SJO(SKx), 2016 U.S. Dist. LEXIS 181615, at *11 (C.D. Cal Oct. 26, 2016). In *Xoma Corp.*, again, the court found an unrelated group of four investors inadequate when their joint declaration failed to explain "their level of sophistication, the structure of decision-making in their group, or whether the investors are the true movants as opposed to their counsel." 2016 U.S. Dist. LEXIS 63701, at *23. Similarly in *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *27 (N.D. Cal Aug 22, 2008) the court took issue with an inadequate declaration that failed to explain how the group would work together because it failed to say anything more than its members were "sophisticated institutional investors" with "ample resources" and "committed to working closely with class counsel." *Id.* All of the concerns set forth in the cases the TIAA Group cites are addressed in the Joint Declaration, the Supplemental de Haan Declaration, the Supplemental Burbridge Declaration, and the Supplemental Kleinerman Declaration.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 10 -

2208805.1

unanimous decision requirement will be made in "that the members available shall make any decisions on behalf of the Class that require immediate attention." *Id.*, ¶ 14. Once again, although the TIAA Group and Ontario casually dismiss these affirmations—made under oath, and only after thoughtful discussion—as lacking "specifics," *see* TIAA Opp. at 9, and as "platitudes," *see* Ontario Opp. at 10, they offer no *evidence* that the Teva Investor Group's sworn plans are unfeasible, much less untrue. Indeed as set forth in their supplemental declarations, a consensus mechanism has worked well in other complex securities fraud actions where the funds have served as lead plaintiffs. *See, e.g.*, Supp. de Haan Decl., ¶ 6 (noting that Oregon achieved significant success in two large mortgage-backed securities class actions using a "consensus-based approach" to group decision-making, without needing to resort to "a particular voting mechanism."); Supp. Burbridge Decl., ¶ 6 (noting that Chicago Teachers has used "a consensus-based approach" in other securities cases rather than "a particular voting mechanism," and "ha[s] found . . . that this means of decision making inures to the benefit of the class and allows for more fulsome conversations about the relative strengths and weaknesses of major litigation strategies."). And, once again, courts regularly approve groups on the strength of precisely such plans for informed, consensus-driven decision-making.

In *Akeena Solar, Inc.*, for example, the court appointed a group in part on the strength of a joint declaration that "lays out an agreed upon protocol for managing the litigation." 263 F.R.D. at 533. That protocol, in turn, included the group's affirmation that it would "regularly communicate with lead counsel," "to have regular telephonic conferences," including "on 24-hours notice as necessary," and that "all decisions will be by consensus." *See Hodges v. Akeena Solar, Inc.*, No. 09-cv-02147, ECF No. 7-5, ¶ 4 (N.D. Cal. July 17, 2009). Similarly, in *In re*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 11 -

2208805.1

1  *Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (citation

2  omitted), the court appointed a group in part on the strength of counsel's

3  explanation that "the clients themselves have agreed that they will have periodic

4  conference calls" and that they would "make decisions through consensus and

5  agreement as opposed to voting." And, in *Miller v. Ventro Corp.*, No. C 01-1287

6  SBA, 2001 U.S. Dist. LEXIS 26027, at *45 (N.D. Cal. Nov. 28, 2001), after

7  appointing two unrelated investors as co-lead plaintiffs, the court actually **ordered**

8  that they "make decisions by consensus."[9]

9        The Teva Investor Group's detailed and sensible description of how it will

10  make decisions further supports its adequacy. And here again the TIAA Group and

11  Ontario produce not a shred of proof to the contrary. Accordingly, their broadside

12  attack on the Group's adequacy completely misses the mark.[10]

13

14

15  _____

16  [9] *See also Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *16-17 (crediting group's
declaration that "provided information . . . regarding the education, occupations,
and investing experience of the group's members," that "indicated that . . . [t]he

17  members of Fitbit Investor Group are sophisticated individuals with between four
and 25 years of experience investing in the securities markets . . .[who] have

18  discussed the requirements and responsibilities of the lead plaintiff role with each
other and with counsel," "have a plan for decision-making," and, "[i]mportantly,

19  [have] each suffered substantial losses stemming from investments in Fitbit
securities, making their claims typical of those of the class at large.")

20  [10] The TIAA Group's insinuation that because Oregon and Chicago Teachers have
governing bodies, decision-making will be unduly burdened, *see* TIAA Opp. at 9-

21  10, is preposterous and, indeed ironic because the TIAA Group **is itself governed
by several multimember boards**. More to the point, were there any truth

22  whatsoever in the TIAA Group's argument, institutional retirement funds—
virtually all of which are governed by multimember boards—would never be able

23  to effectively serve as lead plaintiffs. The wealth of successful securities class
actions led by such funds categorically disproves that notion. See Joint Decl., ¶¶ 1-

24  2. In all events, the funds' supplemental declarations demonstrate that there are
clear, well-established mechanisms for making major litigation decisions, such as

25  settlement approval, that pose no great burden to group decision-making. *See, e.g.*,
Supp. de Haan Decl., ¶¶ 1a.-1g. (explaining decision-making structure is

26  authorized by statute); Supp. Burbridge Decl., ¶¶ 1a.-e. (describing Chicago
Teachers' Securities Litigation Policy, the scope of Mr. Burbridge's authority on

27  behalf of Chicago Teachers, and well-established procedures for obtaining board

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 12 -

2208805.1

### 3.   The Teva Investor Group Will Exercise Ultimate Control Over the Lawyers and the Litigation

To further guard against the concern that the litigation will become "lawyer-driven," the Teva Investor Group has also made clear that it takes seriously its duty to supervise counsel, including by holding meetings "without counsel present" if necessary. Joint Decl., ¶ 11. And, more generally, each member is a demonstrably sophisticated investor with substantial transactions in Teva ADRs, *id*., ¶¶ 1-3; *see also* Supp. Kleinerman Decl., ¶ 5, and two are respected U.S. institutions that have previously recovered hundreds of millions of dollars for defrauded investors in securities class actions. Joint Decl, ¶¶ 1-2. In light of these facts, it is simply not credible to conclude that the Teva Investor Group or its members will be controlled by their lawyers. Instead, the only logical and reasonable conclusion that can be drawn is that the Group and its members will effectively employ their sophistication to exercise ultimate control over the litigation, including by approving all major litigation decisions, such as settlement.

The TIAA Group and Ontario either ignore, dismiss, or mischaracterize all of the foregoing evidence, and insist—with no evidence of their own—that the Teva Investor Group has essentially been strong-armed into forming a group for

approval when necessary, including by having the board ratify Mr. Burbridge's decisions).

As for Ontario's argument that the Teva Investor Group's use of three different PSLRA 90-day average prices shows its "lack of cohesiveness and inability to coordinate," just the opposite is true. The "90-day loss price" in the Group's loss charts are **intentionally different** to best give effect to the PSLRA's statutory cap on damages. *See* 15 U.S.C. § 78u-4(e)(2) (setting cap on damages based on post-class-period stock price movement). Specifically, the Teva Investor Group's 90-day price is a weighted average of the 90-day average trading price (for shares that have never been sold) and, where there were sales, the **higher** of: (1) the sale price, and (2) the average trading price on the sale date. This weighted average obviously will be different depending on the timing Group member's post-class-period sales. That the Teva Investor Group was able to apply a consistent, complex, conservative, and statutorily mandated methodology for limiting damages across three different sets of trading data **highlights** its adequacy and cohesiveness, not the other way around.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 13 -

2208805.1

the sole purpose of ensuring that their counsel gain control of the case, and will have no ability to effectively supervise counsel or the litigation. That conclusion, however, is simply not reasonable or credible in light of the facts and evidence, all of which point to the inescapable conclusion that the Teva Investor Group will "fairly and adequately protect the interests of the class," which is the ultimate test of the Group's appropriateness. *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). As a result, neither the TIAA Group nor Ontario has successfully rebutted the presumption against the Teva Investor Group, and thus the Teva Investor Group should be appointed lead plaintiff.[11]

### B.    The Teva Investor Group's Selection of Two Law Firms is Reasonable and Routinely Approved by Courts

Although the competing movants submit that the Teva Investor Group's selection of two firms as Co-Lead Counsel for the class somehow inherently

---

[11] This conclusion is particularly compelling given that the Teva Investor Group has the largest **individual** loss once the TIAA Group's legally unrecoverable losses are deducted. For instance, in *Fitbit*, the court appointed a group where one member "claim[ed] the largest loss of any individual," such that "this is not a case in which lawyers aggregated plaintiffs in order to overcome the largest stake requirement." 2016 U.S. Dist. LEXIS 62457, at *16 (modifications and citations omitted). Similarly, in *Bruce v. Suntech Power Holdings Co.*, the court appointed a group after noting that one of its members met the "largest stake requirement . . . on his own," similarly compelling the conclusion that "[t]his is not a case. . . in which lawyers aggregated plaintiffs in order to overcome [that] requirement." No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012). And, in *Akeena Solar, Inc.*, 263 F.R.D. at 533, the court appointed a group where one member had "the greatest financial stake of any movant").

Furthermore, even if the Teva Investor Group **did not** have the largest individual loss, its appointment would still be appropriate, as courts routinely appoint the largest group even where a competing movant has the largest un-aggregated loss. *See, e.g.*, *In re: A-Power Energy Generation Systems Ltd. Securities Litigation*, No. 11-ml-02302, ECF No. 14 (C.D. Cal. Jan. 9, 2012) (attached as exhibit to ECF No. 35 at ECF No. 35-1) (appointing group over movant with largest individual loss); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269-70 (S.D.N.Y. 2009) (same); *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *1, *3 (N.D. Ill. Jan. 11, 2011) (same); *In re Versata, Inc., Sec. Litig.*, No. C 01-1439, 2001 U.S. Dist. LEXIS 24270, at *26 (N.D. Cal. Aug. 17, 2001) (same); *W. Palm Beach*, 2014 WL 1395059, at *7 (same).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 14 -

2208805.1

1    "undermine[s]" the group's ability to function, *see* TIAA Opp. at 11, Ontario Opp,

2    at 11, they have proffered no evidence to support their argument. In fact, courts

3    routinely accept lead plaintiffs' requests for approval of the selection of co-lead

4    counsel in large, complex securities fraud class action cases. *Cavanaugh*, 306 F.3d

5    at 732 ("the district court has no authority to select for the class what it considers

6    to be the best possible lawyer or the lawyer offering the best possible fee schedule.

7    Indeed, the district court does not select class counsel at all."); *Fitbit,* 2016 U.S.

8    Dist. LEXIS 62457, at *22-23 (appointing two firms co-lead counsel and noting

9    that "courts often approve co-lead counsel where that is the representation structure

10   the lead plaintiff has chosen"); *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-

11   cv-2938, 2015 U.S. Dist. LEXIS 138654, at *7-8 (N.D. Cal. Oct. 8, 2015)

12   (approving plaintiffs' selection of co-lead counsel and Robbins Geller as liaison

13   counsel); *Atossa Genetics*, No. C13-1836-RSM, 2014 U.S. Dist. LEXIS 19218, at

14   *2 (appointing firms as co-lead counsel on behalf of a group of three movants);

15   *Accuray Inc.,*2009 U.S. Dist. LEXIS 105466, at *10 (appointing Robbins Geller's

16   predecessor as co-lead counsel);[12] *Versata,* 2001 U.S. Dist. LEXIS 24270, at *27

17   (appointing co-lead counsel).

18

19

---

20   [12] In fact, the TIAA Group's counsel, Robbins Geller, has sought appointment as
21   co-lead counsel (or to represent lead plaintiffs as part of a multiple-firm structure),
     in no fewer than 26 cases in the past 5 years, including at least 6 times in the Ninth
22   Circuit. The court appointed Robbins Geller as one of several firms to represent
     lead plaintiffs, including as co-lead counsel, in no fewer than 14 of those cases. *See*
23   Appendix A, attached hereto. Similarly, Bleichmar Fonti & Auld LLP
     ("Bleichmar"), Ontario's counsel, which was only formed in August 2014 under
24   the       name      Bleichmar     Fonti     Tountas     &     Auld     LLP,     *see*
     http://www.bfalaw.com/Firm_Announces_New_Name, has already served as co-
25   lead counsel in at least two securities class actions. *In re Genworth Financial, Inc.*
     *Securities Litigation*, 3:14-cv-00682, ECF Nos. 21, 25 (E.D. Va. Oct. 6, 2014)
26   (appointing Bleichmar as co-lead counsel representing a group of two unrelated
     institutional investors as co-lead plaintiffs); *Deangelis v. Corzine et al*, 1:11-cv-
27   07866, ECF Nos. 755, 761 (S.D.N.Y Nov 3, 2011) (substituting Bleichmar as co-
     lead counsel).

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 15 -

2208805.1

In *Fitbit*, an individual pension fund made the exact same argument against a group of five individual investors. In explicitly rejecting the argument, the court stated, "Local 282 argues that Fitbit Investor Group needs to explain why it seeks to involve multiple firms. The PSLRA imposes no such requirement, and courts often approve co-lead counsel where that is the representation structure the lead plaintiff has chosen." *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *22-23. Similarly, in *Solazyme*, where the TIAA Group's counsel Robbins Geller was appointed as liaison counsel in addition to the two other firms selected as co-lead counsel, the court noted a concern raised by the defendants about "the appointment of three law firms," but ultimately deemed such appointment appropriate, while entrusting to the firms the responsibility of ensuring that their co-representation would "result[] in the efficient representation of the putative class." 2015 U.S. Dist. LEXIS 138654, at *7-8.

The Teva Investor Group has submitted a Joint Declaration that explains that "after careful consideration" they have selected Cohen Milstein and Pomerantz to serve as Co-Lead Counsel. Joint Decl., ¶ 16; *see also* Supp. de Haan Decl., ¶ 5 (approving of co-lead counsel because "the two firms have worked together cooperatively and successfully in the past," because "both firms have significant experience in litigating cases against Israeli-based issuers," and because "Pomerantz represents a number of large Israeli institutional investors."); Supp. Burbridge Decl., ¶ 5 (approving of co-lead counsel "after learning that the two firms have worked together cooperatively and successfully in the last" and based on its "understand[ing]" that both firms have significant experience in litigating cases against Israel-based issuers, and that Pomerantz represents a number of large Israeli institutional investors."). They are all familiar with the extensive securities litigation experience of the two firms and that the Class will benefit from the shared resources of two large firms. *Id*. This evidence is unrebutted and cannot be

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 16 -

2208805.1

overcome by the TIAA Group's and Ontario's conclusory speculation and argument that is irreconcilable with *Cavanaugh* and, indeed, their own counsels' own actions in multiple other cases.[13]

Accordingly, the Teva Investor Group's selection of two highly experienced and successful law firms to represent them is eminently reasonable.

## C. Mr. Kleinerman Is an Adequate Representative and Is Not Subject to Unique Defenses

Separate from their spurious attacks on the cohesiveness of the Teva Investor Group, Ontario and the TIAA Group next turn their sights on Mr. Kleinerman individually, raising several entirely speculative, false and irrelevant accusations against his adequacy and the typicality of his claims. The TIAA Group and Ontario put forth no proof to support any of their accusations yet nevertheless ask this Court to rebut the presumption favor of Mr. Kleinerman's adequacy. *See Cavanaugh*, 306 F.3d at 732 n.10 ("[O]nce the presumption is triggered . . . the

---

[13] The TIAA Group's reliance on *Crihfield*, 2016 U.S. Dist. LEXIS 181615 and *Arciaga*, 2015 U.S. Dist. LEXIS 22879, is entirely misplaced. In each of those cases, the court took issue with lead plaintiffs' joint declaration that included only three paragraphs of substantive information or described its rules of engagement as "confidential" in finding the presumption of adequacy rebutted. However, both cases made clear that "the decision of lead counsel belongs to the lead plaintiff." *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *16; *Arciaga*, No. C14-5884 BHS, 2015 U.S. Dist. LEXIS 22879, at *11 (W.D. Wash. Feb. 25, 2015) (absent evidence, there is "no reason to disturb the [lead plaintiff's] selection."). *Shriver v. Impac Mortg. Holdings, Inc.*, No.: SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *27 (C.D. Cal. May 2, 2006) (rejecting group created by counsel combining competing movants into one after lead plaintiff motions were filed in order to claim the largest loss) which the TIAA Group and Ontario also rely on is equally inapplicable here. Moreover, the TIAA Group's reliance on *Ventro Corp.*, 2001 U.S. Dist. LEXIS 16027, at *49 is puzzlingly inapplicable. In *Ventro*, the court appointed two competing movants as co-lead plaintiffs and deferred judgment on the appointment of lead counsel so that the co-lead plaintiffs could select counsel. Although the Court expressed reservations about appointing co-lead counsel, the court accepted the co-lead plaintiffs' selection of two firms to serve as co-lead counsel, including Robbins Geller's predecessor firm, Lerach, Coughlin Stoia Geller Rudman & Robbins LLP. *Miller v. Ventro Corp.*, No. 01-cv-1287, ECF No. 52, Order Appointing Co-Counsel for Co-Lead Plaintiffs (C.D. Cal Mar. 26, 2002). Thus, the TIAA Group's own case law only further supports the Teva Investor Group's position.

---

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 17 -

2208805.1

question is whether anyone can **prove** that the presumptive lead plaintiff will not do a fair and adequate job.") (internal quotations omitted) (emphasis added).

Without any legal support, the TIAA Group and Ontario claim that the Court needs to know more about Mr. Kleinerman to permit him to be a lead plaintiff. TIAA Opp., at 12, Ontario Opp. at 12. *See Mohanty v. Bigband Networks, Inc.*, No. 07-cv-5101, 2008 U.S. Dist. LEXIS 32764, at *26-27 (N.D. Cal. Feb. 13, 2008) (rejecting a similar argument as "sophomoric" and made out of "apparent desperation."). The Teva Investor Group's opening motion makes clear that Mr. Kleinerman is an experienced and knowledgeable investor and businessman who currently resides in the Netherlands and he has certified, among other things, that he has purchased the securities that are the subject of this litigation and that he is ready and willing to serve as a fiduciary for the class. *See* Pafiti Decl. Ex. D, ECF No. 17-4. Nothing more is necessary. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (appointment of lead plaintiff that certified that he purchased securities and suffered losses during the class period and declared that he is willing to accept the responsibilities of serving as a representative party on behalf of the class, and where no *proof* was offered to support the arguments rebutting his presumption.)

In addition, for the avoidance of any doubt, Mr. Kleinerman now submits the Supplemental Kleinerman Declaration, which further explains that Mr. Kleinerman is forty-eight years old, was born in Israel, and served honorably in the Israeli Air Force. Supp. Kleinerman Decl., ¶ 1. During his time in Israel, Mr. Kleinerman was a portfolio manager, licensed by the Israeli Securities and Exchange Commission. *Id*. Following his time as a portfolio manager, Mr. Kleinerman began investing on his own behalf and is engaged in a number of important businesses. *Id*. This is

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 18 -

2208805.1

more than is necessary to allay any possible concerns about Mr. Kleinerman's background.

The TIAA Group and Ontario further engage in rank speculation about Mr. Kleinerman. Without even a shred of factual basis, they argue that Mr. Kleinerman has not provided "information about the legal entity (if any) that he used to conduct the purchase of Teva securities at issue here." Ontario Opp., at 13; TIAA Opp., at 13. [14] Again, there is no proof in the TIAA Group's or Ontario's oppositions to support a conclusion that Mr. Kleinerman did not purchase the Teva ADRs at issue in his own name. And now, the Supplemental Kleinerman Declaration explicitly debunks this unfounded aspersion as well. All of Mr. Kleinerman's transactions in Teva ADRs were made for his own accounts and on his own behalf. Supp. Kleinerman Decl., ¶ 2. None of Mr. Kleinerman's

---

[14]  In a demonstration of utter desperation, Ontario concocts a baseless and completely speculative allegation—and, indeed one that is completely false— that because the three cases in which Mr. Kleinerman has sought appointment as lead plaintiff all involve companies that manufacture generic pharmaceuticals, it is "fair to inquire whether Kleinerman has connections to the industry" such that that Mr. Kleinerman "may" be subject to unique defenses. Courts in this Circuit have regularly rejected this type of speculative argument. *Schonfield v. Dendreon Corp.*, No. 07-cv-800 MJP, 2007 U.S. Dist. LEXIS 76816, at *13 (W.D. Wash. Oct. 4, 2007) (that movant has "investment experience in the biotechnology industry is insufficient to raise serious questions about Plaintiff McGuire's typicality or adequacy."). In *Smilovits v. First Solar, Inc.*, No. 12-cv-0555 PHX DGC, 2012 U.S. Dist. LEXIS 102032, at *15 (D. Ariz. July 23, 2012), competing movants made similarly speculative arguments of insider knowledge against a presumptive lead plaintiff (that was represented by the TIAA Group's own counsel). In rejecting such arguments, the court explained that movants had "provided no evidence that [the presumptive lead] had inside information, or any other form of non-public information." *See also Andrade v. Am. Apparel, Inc.*, No. 10-cv-6352, 2011 U.S. Dist. LEXIS 79795, at *29 (C.D. Cal. Mar. 15, 2011) ("Speculation regarding access to non-public information, in the absence of any allegations or evidence of such information does not impact on the [presumptive lead plaintiff's fitness].") (*quoting Beale v. EdgeMark Fin. Corp.*, 164 F.R.D. 649, 656 (N.D. Ill. 1995)). While Mr. Kleinerman should not even have to respond to such reckless assertions, he has made clear in his supplemental declaration that this allegation is absolutely false. Supp. Kleinerman Decl., ¶ 4.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 19 -

2208805.1

transactions were made by, through or at the direction of any other individual or entity. *Id*. Mr. Kleinerman is the sole owner of each Teva ADR he purchased. *Id*.

### 1. Stale and Demonstrably False Allegations of Insider Trading Concerning Irrelevant Individuals Do Not Subject Mr. Kleinerman to Unique Defenses

The TIAA Group and Ontario also argue that Mr. Kleinerman is an inadequate lead plaintiff, claiming he was implicated in insider trading allegations in February 2009. Ontario Opp., at 4; TIAA Opp. at 13, n.15. This argument is based on a single article from *eight* years ago that appeared in an Israeli publication. The article asserted that two individuals, allegedly loosely affiliated with Mr. Kleinerman, were being investigated for insider trading and had been arrested. Even a cursory review of the article on which this argument is centered, however, shows that it provides absolutely no basis to support competing movants' attacks on Mr. Kleinerman's adequacy. The article's hearsay assertions were never proven and have never been asserted in any legal forum. In fact, **prosecutors dropped the investigation completely without ever finding any wrongdoing** on the part of anyone mentioned in the article, including Mr. Kleinerman. *See* Exhibit D to Reply Pafiti Declaration (article in Israeli publication *Haaretz* dated October 25, 2012, indicating that "[p]rosecution gives up on insider-trading case"). Now, the TIAA Group and Ontario have recklessly rehashed these false allegations without any further evidence or proof of their own to support them. The debunked and unfounded assertions of insider trading put forth by the TIAA Group and Ontario are not "proof" and do not satisfy the PSLRA's requirements for defeating adequacy or typicality. In any event, Mr. Kleinerman has put these utter falsehoods to rest in his Supplemental Declaration, stating that he "ha[s] never been accused of, charged with, or indicted for—much less convicted of—any of these activities

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 20 -

2208805.1

by any Israeli regulatory or law enforcement agency (or the regulatory or law enforcement agencies of any other nation.)." Supp. Kleinerman Decl., ¶ 4.

Doubling down, Ontario further asserts that they supposedly raise an additional ethical conflict because the same baseless arguments were previously been raised by Mr. Kleinerman's proposed selection for co-lead counsel, Pomerantz LLP, in an unrelated case, *Roofers' Pension Fund v. Papa & Perrigo, Inc.*, 16-cv-2805 (D.N.J.). *See* Ontario Opp. at 6-7. But the fact that Pomerantz, while zealously representing its own client in an unrelated action, made similar arguments is irrelevant here. Ontario's argument seeks to manufacture an ethical conflict for counsel that has argued differing views in unrelated litigations. But Ontario cannot, and does not, cite a single case supporting this argument. Attorneys regularly take contradictory positions on behalf of clients in different actions that are intended to further the interests of their client in that particular litigation.[15] For instance, in *City of Pontiac General Employees Ret. Sys. v. Genworth Fin. Inc.*, et al., No. 14-682, ECF No. 14 (E.D. Va. Oct. 20, 2014), counsel for Ontario sought the appointment of a group of unrelated investors as lead plaintiffs while seeking its own appointment as lead counsel. Yet, here, they argue against that same position.

In any event, Pomerantz's and its clients' additional due diligence as part of their duties in *Perrigo* yielded no further support for the accusations that Ontario

---

[15] Comment 24 to the Model Rules of Professional Conduct Rule 1.7 further support the fact that there is no conflict of interest or ethical violation where counsel takes inconsistent legal positions in different actions: "Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest."

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 21 -

2208805.1

and the TIAA Group recycle here.[16] Through their continued interactions and cooperation with Mr. Kleinerman in *Mylan*, in which Mr. Kleinerman has now been appointed as co-lead plaintiff together with large Israeli institutional investors represented by Pomerantz, Pomerantz believes Mr. Kleinerman to be an adequate and typical lead plaintiff. *See* Supp. Kleinerman Decl., ¶ 6.

## 2. Traders with Trading Patterns Like Mr. Kleinerman's Are Adequate Lead Plaintiffs

The TIAA Group also argues that Mr. Kleinerman's trading activity would subject him to unique typicality challenges as a "day-trader" who "exploit[ed] incremental price fluctuations," TIAA Opp. at 13. As an initial matter, the TIAA Group's argument fails for the simple reason that Mr. Kleinerman does not meet the definition of a day trader. As the TIAA Group explains, a day trader is defined by the SEC as someone who "rapidly buy[s] and sell[s] stocks throughout the day in the hope that their stocks will continue climbing or falling in value for the seconds to minutes they own the stock." *Id.* at 14. The TIAA Group has offered no evidence whatsoever that meets this definition, or that Mr. Kleinerman systematically bought and sold shares to "exploit incremental price fluctuations." *Id.* at 13. In place of proof, all the TIAA Group can muster are the facts that Mr. Kleinerman, a sophisticated and experienced investor, engaged in 1,300 transactions over 33 months, and that some of those transactions included purchases and sales on the same day. TIAA Opp. at 13. These facts simply do not raise any inference of "day trading" and do not in any way call into question Mr.

---

[16] The lack of *any* evidence to support these unfounded allegations against Mr. Kleinerman further underscore the baselessness of Ontario's attack on Oregon and Chicago Teachers' due diligence of Mr. Kleinerman in advance of their decision to join with him to seek lead plaintiff here. Oregon and Chicago Teachers are both large sophisticated institutional investors that are both very familiar with the responsibilities of a lead plaintiff under the PSLRA and have fought for substantial recoveries on behalf of investor classes before. *See* Joint Decl., ¶¶ 1-2.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 22 -

2208805.1

Kleinerman's adequacy. Indeed, the **TIAA Group itself** engaged in hundreds of transactions over the proposed class period, including purchases and sales on the same day. *See* Decl. of Danielle S. Myers in Support of TIAA's motion, Ex. C, ECF No. 23-3 (purchases and sales by CREF Growth Account and CREF Global Equities Account on February 11, 2016 and by TIAA-CREF Enhanced International Equity Index Fund on November 3, 2016). In any event, the Supplemental Kleinerman Declaration also makes clear that Mr. Kleinerman relied on the publicly available information when deciding to purchase Teva ADRs, putting to rest any suggestion that Mr. Kleinerman faces any kind of unique reliance defense. Supp. Kleinerman Decl., ¶ 2.[17]

Indeed, absent **actual** evidence that a plaintiff did not rely on market price, "a plaintiff's status as a purported 'day trader' is not enough in and of itself to rebut the presumption of adequacy." *Schueneman v. Arena Pharms.*, Inc., No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *22 (S.D. Cal. Aug. 8, 2011); *Hodges v. Immersion Corp.*, No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565, *11 (N.D. Cal. Dec. 21, 2009) (rejecting contention proposed Lead Plaintiff's trading could be characterized as day trading, because challenger offered no evidence to support that contention); *Rieckborn v. Velti PLC*, No. 13-cv-3889-WHO, 2013 U.S. Dist. LEXIS 171206, at *16 (N.D. Cal. Dec. 3, 2013) (rejecting

---

[17] Even if Mr. Kleinerman were a day trader, many courts have held that day traders "suffer as do other traders" and thus have the same incentives to prove defendants' liability other class members. *In re Zynga, Inc. Secs. Litig.*, No. 12-cv-4007, 2013 U.S. Dist. LEXIS 9314, at *6 (N.D. Cal. Jan. 22, 2013) (*citing Serafimov v. Netopia, Inc.*, No. C-04-03364 RMW, 2004 U.S. Dist. LEXIS 25184, at *17-19 (N.D. Cal. Dec. 3, 2004) (holding that the majority of cases, including the Ninth Circuit, have held that day traders may serve as class representatives). *See also Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238, at *13 (S.D.N.Y. Jan. 5, 2012) ("day . . . traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.").

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 23 -

2208805.1

day-trading arguments against presumptive lead plaintiff that were not supported by any proof).[18] Accordingly, Mr. Kleinerman is an adequate lead plaintiff and his claims are typical of the proposed class.

> **D.   The TIAA Group's Losses Are At Least $20 Million *Lower* Than It Claims, and Are Lower than Both Mr. Kleinerman's Losses and Ontario's, and Thus, It Cannot Be the Presumptive Lead Plaintiff**

As both the Teva Investor Group and Ontario have now conclusively demonstrated, the TIAA Group has impermissibly inflated its financial interest by including over **$20 million in so-called "losses"** that have nothing to do with the fraud as alleged in this case. The TIAA Group accomplishes this by first including $19,956,718 in so-called "losses" in five funds that were **incurred before the alleged fraud was ever revealed**. The Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo* was clear: if "the purchaser sells the shares . . . before the relevant truth begins to leak out, the **misrepresentation will not have led to any loss**." 544 U.S. 336, 342 (2005) (emphasis added). That is precisely what these five TIAA Group funds did here, and the alleged fraud therefore did not "le[ad] to any loss" for these investors.

---

[18] The TIAA Group's argument that Mr. Kleinerman is a day trader relies primarily on *Eichenholtz v. Verifone Holdings, Inc.*, C07-06140MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008), which held a group plaintiff to be an inappropriate lead plaintiff where the group plaintiff relied upon daily market volatility, not upon defendant company's financial statements. But, the Northern District of California has retreated from the *Eichenholtz* decision, more recently holding that "whether [movant] is a day trader is inconsequential to his request to be appointed lead plaintiff." *Zynga*, 2013 U.S. Dist. LEXIS 9314, at *6. *In re UTStarcom Secs. Litig.*, No. C 04-4908 JW, 2010 U.S. Dist. LEXIS 48122, at *25 (N.D. Cal. May 12, 2010) (further distinguishing *Eichenholtz* because *inter alia* movant in that case submitted a declaration that he focused on publicly available information in deciding to purchase defendant's stock), which the court held was sufficient to show him to be typical, notwithstanding whether he could be labeled a day trader). As mentioned above, Mr. Kleinerman has submitted a declaration that confirms he relied on the publicly available information in transacting in the Teva ADRs at issue here.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 24 -

2208805.1

To make matters even worse, the TIAA Group includes more than $2 million in "losses" that were incurred as a result of purchases after the alleged fraud had been fully disclosed. *See* ECF No. 33 at 27-28 (approximately $2.3 million in "losses" associated with stock that was purchased after the *Bloomberg* article disclosing the Department of Justice's criminal indictments was published at 2:10 p.m. EST). "Losses" associated with purchases an investor makes after the fraud had already been revealed also cannot be recovered in this action—reliance and causation are essential elements of securities fraud, and one cannot "rely" on fraud that has been publicly disclosed, nor can such a fraud be the cause of one's losses.

Put simply, the TIAA Group has grossly inflated its loss numbers by approximately $22 million dollars. As a result, the TIAA Group is not even close to being in the lead in terms of financial interest in this case.

## V.    CONCLUSION

For the foregoing reasons and those set forth in the Teva Investor Group's earlier briefing, Movant respectfully requests that this Court consolidate the Related Actions, appoint the Teva Investor Group to serve as Lead Plaintiff for the Class, and approve its selection of Cohen Milstein and Pomerantz as Co-Lead Counsel.

DATED: January 23, 2017          **POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499

---

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

2208805.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeremy Lieberman (*pro hac vice forthcoming*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (*pro hac vice forthcoming*)
Daniel S. Sommers (*pro hac vice forthcoming*)
Julie G. Reiser (*pro hac vice forthcoming*)
1100 New York Ave, N.W.
Suite 500 East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Carol V. Gilden (*admitted pro hac vice*)
190 S. Lasalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Kenneth M. Rehns (*pro hac vice forthcoming*)
krehns@cohenmilstein.com
88 Pine St., 14th Flr.
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Counsel for the Teva Investor Group and Proposed Co-Counsel for the Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 26 -

2208805.1

1
2

## PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07

3
4

I, the undersigned, say:

5
6

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 468 North Camden Drive, Beverly Hills, CA 90210.

7

On January 23, 2017, I caused to be served the following documents:

8
9
10

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

11
12

By posting the documents to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the attached Service List.

13

And on any non-ECF registered parties:

14
15
16
17

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

18
19

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **January 23, 2017**, at **Beverly Hills, California**.

20
21

_____/s/ Jennifer Pafiti_____
Jennifer Pafiti

22
23
24
25
26
27
28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE TEVA INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

- 1 -

2208805.1