1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (*pro hac vice*)
jbleichmar@bfalaw.com
Joseph Fonti (*pro hac vice*)
jfonti@bfalaw.com
Wilson Meeks (*pro hac vice*)
wmeeks@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers' Pension Plan Board*
*and [Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| AMRAM GALMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH,<br><br>Defendants. | Case No. 2:16-cv-08259-TJH (ASx)<br><br>CLASS ACTION<br>**UPDATE OF NEW FACTS AND SUPPLEMENTAL ARGUMENT IN FURTHER SUPPORT OF ONTARIO TEACHERS' PENSION PLAN BOARD'S OPPOSITION TO THE COMPETING MOVANTS AND IN FURTHER SUPPORT OF ITS MOTION FOR LEAD PLAINTIFF**<br><br>DATE:  February 6, 2017<br>TIME:   UNDER SUBMISSION<br>JUDGE: Hon. Terry J. Hatter Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANTHONY LEONE, Individually and on behalf of all others similarly situated,

Plaintiff,

vs.

TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN,

Defendants.

Case No. 2:16-cv-9545 TJH (ASx)

CLASS ACTION

# TABLE OF AUTHORITIES

## CASES

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289
(N.D. Cal. Aug. 22, 2008) ...................................................................................6

*In re Netflix, Inc. Sec. Litig.*, No. 12-0225, 2012 WL 1496171
(N.D. Cal. Apr. 27, 2012) ............................................................................... 4, 6

*In re Network Assoc., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........4

*In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618 (S.D.N.Y. 2015) .........................7

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ................................... 4, 5

*Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002)...................... 4, 5, 6

*Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995)...................................5

*Lou v. Ma Labs., Inc.*, No. C 12-05409, 2014 WL 68605
(N.D. Cal. Jan. 8, 2014)................................................................................... 5, 6

*Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479, 2011 WL 759553
(D. Idaho Feb. 24, 2011) .......................................................................................7

## STATUTES

15 U.S.C. § 78u-4................................................................................................ 4, 8

## TREATISES

1 MCLAUGHLIN ON CLASS ACTIONS § 4:39 (10th ed.)...........................................6

1   The Ontario Teachers' Pension Plan Board ("Ontario Teachers'")
2   respectfully submits this supplemental brief to update the Court on new information
3   that further supports Ontario Teachers' opposition to the Teva Investor Group's
4   motion for appointment as Lead Plaintiff in this action.[1]

**NEW FACTS AND SUPPLEMENTAL ARGUMENT**

6       On March 1, 2017, the State of Oregon, represented by the state's Attorney
7   General's office (the "Oregon AG"), joined thirty-nine other states in a lawsuit filed
8   in the Federal District Court of Connecticut alleging federal and state antitrust
9   violations against Teva and several of its competitors in the generic drug industry
10  (the "State AGs' Action").[2]  The antitrust lawsuit in which the Oregon AG has now
11  joined as a plaintiff is based on the same course of conduct that resulted in the
12  alleged antitrust violations that underlie this securities case on behalf of Teva
13  shareholders.

14      The Oregon AG has a critical role in this securities action, too.  The Oregon
15  AG's office is "authorized to make legal decisions on behalf of Oregon Public
16  Employees Retirement System ('OPERS')," which is one of the three members of
17  the Teva Investor Group.  (*See* ECF No. 17-2 at ¶ 1).  Indeed, the Oregon AG's
18  office signed the certification required in securities class actions and the declaration
19  in support of the Teva Investor Group's motion for Lead Plaintiff.  (*Id.* at 3; and
20  ECF No. 17-8 at 11, respectively).  No individual at OPERS has signed any of the
21  papers submitted in this case.  Effectively, the Oregon AG has stepped into the shoes

---

[1]  Unless otherwise noted, all ECF references are to the *Galmi* docket, 2:16-cv-08259-TJH (ASx).  All terms not otherwise defined have the same definitions as those set forth in Ontario Teachers' Opposition to the Motions for Lead Plaintiff by the Teva Investor Group and TIAA.  (ECF No. 33).

[2]  Am. Compl., *Connecticut v. Aurobindo Pharma USA, Inc*., No. 3:16-cv-02056 (D. Conn. Mar. 1, 2017), ECF No. 168 (the "States' Amended Complaint," attached as Exhibit A to the Declaration of Joseph Fonti (the "Fonti Decl."), filed concurrently herewith).

of OPERS to run this action.  The reason for this appears to be that OPERS does not have a general counsel and the Oregon AG seems to fill this void.[3]

The Court is thus presented with the unusual circumstance in which the Oregon AG is acting as both, (i) the representative of the State and people of Oregon in the State AGs' Action alleging antitrust violations, and (ii) the surrogate for a proposed lead plaintiff for a class of Teva shareholders.  The Oregon AG is doing so in parallel cases, against the same defendant, based on the same facts.

If the Teva Investor Group were to be appointed Lead Plaintiff, the Oregon AG's uncommon dual role in these two cases could lead Defendants to raise a plethora of practical issues, and lead to otherwise unnecessary motion practice that would interfere with the prosecution of the securities class action.

As an initial matter, the District Court in Connecticut entered a protective order which mandates that confidential material obtained in discovery "shall not be used or disclosed for any purpose other than the litigation of [the State AGs' Action]."[4]  Thus, under the protective order, the Oregon AG is prohibited from using any documents from the State AGs' Action in this securities case, or from sharing those documents with the other members of the Teva Investor Group or their proposed lead counsel.  Defendants may therefore object to the fact that the Oregon AG has already reviewed confidential and non-public documents in the antitrust suit against Teva.  Indeed, the States' Amended Complaint, signed by the Oregon AG, is riddled with redactions of excerpts from confidential documents obtained as part of the investigation into the antitrust violations.[5]

The antitrust investigation was initiated in 2014 by the Attorney General of

---

[3] *See* OREGON DEPARTMENT OF JUSTICE, http://www.doj.state.or.us/divisions/pages/general_counsel_index.aspx. (last visited Mar. 20, 2017) (explaining the Oregon AG performs a role similar to that of general counsel to OPERS).

[4] Fonti Decl. Ex. B (Standing Protective Order, *Aurobindo Pharma*, ECF No. 6) at ¶ 5.

[5] *See, e.g.*, Fonti Decl. Ex. A at ¶¶ 56, 58-59, 108, 110-112, 117-119, 121-123.

Connecticut, who issued subpoenas to many of the participants in the generic drug space, including Teva.[6]   To recruit additional Attorneys General to join, the Connecticut Attorney General shared this discovery – including confidential evidence – with the additional thirty-nine Attorneys General who have now joined the complaint.[7]   Defendants might argue that the confidential information learned by the Oregon AG in the antitrust action cannot be used in, or as a basis for, the securities litigation, and that because the Oregon AG already reviewed that material the bell cannot be unrung.

Defendants may also object because the Oregon AG will have the power to continue to investigate and obtain documents and information outside of the discovery process in this litigation.   The States' Amended Complaint asserts:

> In July 2014, the State of Connecticut initiated a *non-public* investigation into suspicious price increases for certain generic pharmaceuticals.  The information developed through that investigation, *which is still ongoing*, uncovered evidence of a broad, well-coordinated and long-running series of schemes to fix the prices and allocate markets for a number of generic pharmaceuticals in the United States.  (Fonti Decl. Ex. A at ¶ 1 (emphasis supplied)).

Even putting aside the investigation, the Oregon AG will have access to the documents and information produced in discovery in the State AGs' Action while the amended securities complaint is drafted against Teva, and before the inevitable motion to dismiss is decided.   This is inconsistent with both the protective order in the State AGs' Action and the PSLRA's discovery stay provision.   *See* 15 U.S.C. § 78u-4(b)(3)(B).

Defendants are likely to raise the above objections, which present difficult, distracting and costly problems for the Class and for this Court to resolve.   Courts

---

[6] *See* Fonti Decl. Ex. C (Katie Thomas, *20 States Accuse Generic Drug Companies of Price Fixing*, N.Y. TIMES (Dec. 15, 2016)).

[7] *See* Fonti Decl. Ex. D (Mark Pazniokas, *How a Small-State AG's Office Plays in the Big Leagues*, CT MIRROR (Jan. 27, 2017)).

routinely reject movants subject to unique defenses in order to spare the class unnecessary expense and distraction. *See In re Netflix, Inc. Sec. Litig.*, No. 12-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (rejecting lead plaintiff movant subject to unique defenses "to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole").

Separately, the Oregon AG's dual roles in this securities case and the State AGs' Action provide grounds for additional objections from class members or defendants at the class certification stage, settlement, or trial. Specifically, although the Oregon AG is not proposed class counsel in the securities action, it would have a fiduciary obligation to the Class.[8] Thus, the Oregon AG's dual roles raise similar concerns as those noted by courts when disqualifying class counsel who seek to represent different parties, against the same defendants, on the same facts, in a different case. Conflicts, or the appearance of conflicts, render counsel inadequate under adequacy requirement of Federal Rule of Civil Procedure 23(a)(4).[9] *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587, 589-90 (W.D. Tex. 2002) (*citing Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)).

"Courts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding, even if there is partial overlap among the plaintiffs or class

---

[8] "The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and actively to work with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy." *In re Network Assoc., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999).

[9] To be clear, Ontario Teachers' does not itself have these concerns with respect to the Oregon AG. The problem is that Defendants and class-member objectors will likely raise these issues. This will, at a minimum, create an unnecessary and wasteful sideshow for the class. At worst, it could disqualify the Teva Investor Group at class certification, far into the litigation, or disrupt settlement or trial.

members in the cases."[10]  This is because "[c]lass counsel must act with unwavering and complete loyalty to the class members they represent," such that "the 'responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.'"  *Krim*, 210 F.R.D. at 589 (*quoting Kayes*, 51 F.3d at 1465).  Arguably, the Oregon AG would have a similar duty to both Oregon and its citizens in the antitrust suit, and to the securities investor class in this case.

Even if no conflict exists, "the case law deems the *appearance* of conflict problematic."  *Id.* at 590 (emphasis in original).  For this reason, courts focus on the concern that it is difficult for class counsel to reconcile competing duties in parallel cases, against the same defendants, on the same facts.   The appearance is inescapable that counsel could influence, in ways large or small, *even inadvertently*, one case for the benefit of the other.  *See Lou v. Ma Labs., Inc*., No. C 12-05409, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014) ("When there are different plaintiffs in different actions proceeding at the same time with the same claims, same counsel, and same defendants, the risk of counsel compromising one class for another is intensified.").   In fact, counsel could, whether deliberately or not, coordinate the cases strategically to benefit one over the other.  *Kurczi v. Eli Lilly & Co*., 160 F.R.D. 667, 679 (N.D. Ohio 1995) ("Every decision to hasten or delay the litigation on behalf of one set of plaintiffs could alternately harm or benefit the other set of plaintiffs.  Furthermore, to the extent that the currently-named plaintiffs in *Kurczi* [a]re also plaintiffs in [another case], the absent class members are at great risk of being sold out.").

As a result of these concerns, courts at the class certification stage have disqualified class counsel attempting to represent separate classes, in parallel litigation, against the same defendants, on the same facts.  *See Ma Labs.*, 2014 WL

---

[10]  Adequacy of representation—Adequacy of class counsel—Representation of potentially competing clients, 1 MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs § 4:39 (10th ed.).

68605 at *2 (holding that counsel who represented two different FLSA classes against same defendants to be conflicted and thus inadequate at class certification stage); *Krim*, 210 F.R.D. at 589-91 (denying class certification, in part because counsel was conflicted by its numerous litigations against same defendants). Defendants could raise similar concerns as a defense against the Teva Investor Group at class certification here.

At the Lead Plaintiff stage, the risk presented by these defenses, which are unique to OPERS, underscores the fact that the Teva Investor Group should not be appointed Lead Plaintiff. "There is no requirement at [the lead plaintiff] stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. The point of [the PSLRA'S adequacy] requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Netflix*, 2012 WL 1496171, at *5 (citations omitted); *see also Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140, 2008 WL 3925289, at *10-11 (N.D. Cal. Aug. 22, 2008) (refusing to appoint group that included day trader whose presence might have subjected class to additional defenses).

Finally, the risk that Defendants or objectors could raise such issues is potentially exacerbated here because the Oregon AG's financial interest in the antitrust action may be substantially greater than in the securities case. OPERS (the proposed Lead Plaintiff) suffered a loss in the securities action of approximately $9.9 million. (ECF No. 17-5). In contrast, the U.S. market for generic drugs is $75 billion per year. The antitrust action pleads federal and Oregon state law claims over the course of at least two years against Teva and multiple other participants in the generic drug market. Fonti Decl. Ex. A at ¶¶ 147-53, 286-88. Accordingly, the potential antitrust damages for the State and people of Oregon could potentially be multiples of the securities damages for OPERS, and subject to trebling.

In sum, the practical issues and potential defenses against OPERS discussed above implicate litigation difficulties that will materially distract from the vigorous prosecution of the merits of this case, and potentially impose unique conflicts-based defenses that the class should not be forced to bear.  This counsels strongly against finding that the Teva Investor Group has met its burden and established that it is adequate and typical to represent the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B).[11]

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[11] Although these arguments derive from the dual role of the Oregon AG and not the other members of the Teva Investor Group, each member of the group must independently be adequate.  If they are not, the group fails as a whole.  *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n. 4 (S.D.N.Y. 2015) (declining to consider for lead plaintiff a single investor from a disqualified group with the largest loss because "it at no time sought to serve as individual lead plaintiff."); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479, 2011 WL 759553, at *8 (D. Idaho Feb. 24, 2011) (rejecting request to appoint an individual investor from a rejected group).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, and for those set forth in Ontario Teachers' prior submissions (ECF Nos. 33 and 48), the Court should deny the Teva Investor Group's motion for appointment as Lead Plaintiff.

///

///

///

Dated: March 20, 2017                    Respectfully submitted,

**NELSON & FRANKEL LLP**

*/s/ Gretchen Nelson*

Gretchen Nelson (Bar No. 112566)
gnelson@nflawfirm.com
707 Wilshire Blvd., Suite 3600
Los Angeles, California 90017
Telephone:  (213) 622-6469
Facsimile:  (213) 622-6019

*Local Counsel for Ontario Teachers'*
*Pension Plan Board*


Javier Bleichmar (*pro hac vice*)
jbleichmar@bfalaw.com
Joseph Fonti (*pro hac vice*)
jfonti@bfalaw.com
Wilson Meeks (*pro hac vice*)
wmeeks@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Ontario Teachers'*
*Pension Plan Board, and*
*[Proposed] Lead Counsel for the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the registered participants.  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 20, 2017.

*/s/ Gretchen Nelson*

Gretchen Nelson (Bar No. 112566)
**NELSON & FRANKEL LLP**
gnelson@nflawfirm.com
707 Wilshire Blvd., Suite 3600
Los Angeles, California 90017
Telephone:  (213) 622-6469
Facsimile:  (213) 622-6019