JENNIFER PAFITI
**POMERANTZ LLP**
468 NORTH CAMDEN DRIVE
BEVERLY HILLS, CA 90210
TELEPHONE: (818) 532-6499

STEVEN J. TOLL (*pro hac vice forthcoming*)
DANIEL S SOMMERS (*pro hac vice forthcoming*)
JULIE G. REISER (*pro hac vice forthcoming*)
TIMES WANG (*pro hac vice forthcoming*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 NEW YORK AVE, N.W., SUITE 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600

CAROL V. GILDEN (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 S. LASALLE STREET, STE 1705
CHICAGO, IL 60603
TELEPHONE: (312) 357-0370

*Proposed Co-Lead Counsel for Movant*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRAM GALMI, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, and EYAL DESHEH <br><br> Defendants. | Case:   2:16-cv-08259-TJH-AS <br> DATE:    February 6, 2017 <br> TIME:    UNDER SUBMISSION <br> CTRM:   9B <br> JUDGE:   Hon. Terry J. Hatter |

*(Additional caption on next page)*

**THE TEVA INVESTOR GROUP'S RESPONSE TO THE ONTARIO TEACHERS' PENSION PLAN BOARD'S SUPPLEMENTAL SUBMISSION**

| | |
|---|---|
| ANTHONY LEONE, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN<br><br>    Defendants. | Case No. 2:16-cv-09545-DSF-AFM |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................2

   A. The PSLRA Requires Proof and Evidence to Rebut the Presumption
      in Favor of the Teva Investor Group;
      Ontario Offers Only Speculation ..........................................................................2

   B. Ontario Offers No Proof that the Oregon Attorney General Will
      Violate Court Orders in the Antitrust Action .......................................................3

   C. Ontario Provides No Evidence that the Oregon Attorney General Has
      or Will Violate the PSLRA Discovery Stay .........................................................5

   D. The Notion that Oregon PERS Is Compromised as a Fiduciary to the
      Investor Class Here Because of the Oregon Attorney General's
      Participation in the Antitrust Action is Wholly Without Legal or
      Factual Basis .........................................................................................................6

V.   CONCLUSION ......................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armour v. Network Assocs., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................2

*Cook v. Atossa Genetics, Inc.*,
    No. C13-1836RSM, 2014 WL 585870 (W.D. Wash. Feb. 14, 2014) .................3

*Krim v. pcOrder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002) ........................................................................6

*Kuper v. Quantum Chem. Corp.*,
    145 F.R.D. 80 (S.D. Ohio 1992) ...........................................................................7

*Kurczi v. Eli Lilly & Co.*,
    160 F.R.D. 667 (N.D. Ohio 1995) ........................................................................6

*Lou v. Ma Labs., Inc.*,
    No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014) ......................6

*In re Netflix, Inc. Sec. Litig.*,
    No. 12-0225, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ...............................2

*In re Outerwall Inc. Stockholder Litig.*,
    No. C16-1275JLR, 2017 WL 881382 (W.D. Wash. Mar. 6, 2017) ....................3

*Ruderman ex rel. Schwartz v. Washington Nat'l Ins. Co.*,
    263 F.R.D. 670 (S.D. Fla. 2010) ..........................................................................7

*Smilovits v. First Solar, Inc.*,
    No. CV12-0555 PHX DGC, 2012 WL 3002513 (D. Ariz. July 23,
    2012) ......................................................................................................................2

*Waldman v. Wachovia Corp.*,
    No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) .................5

*Wallace v. Powell*,
  No. 3:09-CV-0291, 2013 WL 2042369 (M.D. Pa. May 14, 2013) .................. 6, 7

**STATUTES AND RULES**

Federal Rule of Civil Procedure 23 ........................................................................... 2

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................... 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................ 2

## I. INTRODUCTION

The Teva Investor Group[1] respectfully submits this response to the Ontario Teachers' Pension Plan Board's ("Ontario") "Update of New Facts and Supplemental Argument" which, despite promising facts, furnishes only speculation in an effort to sustain Ontario's bid for lead plaintiff.

Ontario bases its submission on the theory that by joining the antitrust action pending in the District of Connecticut against Teva and other defendants ("Antitrust Action"), the Oregon Attorney General, who is statutory counsel for Oregon PERS here, has rendered the Teva Investor Group unable to faithfully represent defrauded Teva investors in this litigation.

The problem with this theory is that Ontario has not submitted a shred of evidence in support of its claims, despite the clear requirement in the PSLRA that such contentions be supported by proof. Instead, Ontario offers hypotheticals, built on speculation and conjecture, none of which come close to satisfying Ontario's burden.

To make matters worse, Ontario *itself* admits that it does not believe there would be any merit to the issues it raises. *See* Ontario Supp. at 4 n.9 ("To be clear, Ontario Teachers does not itself have these concerns with respect to the Oregon AG."). Nevertheless, Ontario filed this brief on the dubious pretext of protecting the class.

---

[1] Three applicants for lead plaintiff remain: (1) the Teva Investor Group, composed of the Oregon Public Employees Retirement System ("Oregon PERS"), the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers"), and Dan Kleinerman (2) Ontario; and (3) TIAA, which is a group composed of nine different funds and accounts: (i) TIAA-CREF International Equity Index Fund; (ii) TIAA-CREF Large-Cap Growth Fund; (iii) TIAA-CREF Enhanced International Equity Index Fund; (iv) TIAA CREF Growth & Income Fund; (v) the TIAA-CREF Life Growth Equity Fund; (vi) TIAA-CREF Life Growth & Income Fund; (vii) CREF Stock Account; (viii) CREF Global Equities Account; and (ix) CREF Growth Account.

## II. ARGUMENT

### A. The PSLRA Requires Proof and Evidence to Rebut the Presumption in Favor of the Teva Investor Group; Ontario Offers Only Speculation

Ontario's submission comes in the guise of an attempt to rebut the statutory presumption granted by the PSLRA that the Teva Investor Group, which includes Oregon PERS, should be appointed to lead this class action by virtue of possessing the largest financial interest in the case.

Ontario's rebuttal attempt is premised on the theory that, by joining the Antitrust Action, the Oregon Attorney General has created "unique defenses" and supposed shortcomings under the adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, disqualifying the Teva Investor Group in *this* action.

The PSLRA provides that the largest financial presumption can be rebutted only under strictly drawn-conditions. The most important such requirement is that *all* rebuttal attempts rely on evidence: the challenger, here Ontario, *must* provide "proof," in the words of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), that the presumptive lead plaintiff cannot serve. Speculation and conjecture do not satisfy this burden. *Smilovits v. First Solar, Inc.*, No. CV12-0555 PHX DGC, 2012 WL 3002513, at *5 (D. Ariz. July 23, 2012) ("Speculation does not satisfy an objector's burden in overcoming the presumption established by the PSLRA."); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions such as those offered by the Bakers Pension Funds are therefore insufficient to rebut the lead plaintiff presumption in this case.").

Further, it is not enough for a challenger to raise the specter of a problem that may arise. Rather, the challenger must come forth with evidence that the issues it identifies are so serious, and so helpful to the defendants' cause, that defendants will not just raise them, but will be able to make them "play a significant role at trial" (as stated in the main case cited by Ontario). *In re Netflix, Inc. Sec. Litig.*,

No. 12-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012). *See also In re Outerwall Inc. Stockholder Litig.*, No. C16-1275JLR, 2017 WL 881382, at *8 (W.D. Wash. Mar. 6, 2017) ("A speculative defense is insufficient to rebut the presumption.") (internal quotation marks omitted) (citing *Cook v. Atossa Genetics, Inc.*, No. C13-1836RSM, 2014 WL 585870, at *5 (W.D. Wash. Feb. 14, 2014)).

Here, Ontario raises three "problems" or "concerns" flowing from the Oregon Attorney General's participation in the Antitrust Action: (1) protective orders in that action might be violated by the Oregon Attorney General in this action; (2) the Oregon Attorney General might violate the PSLRA's discovery stay; and (3) the Oregon Attorney General might cause Oregon PERS to sell out the investor class here in favor of the Antitrust Action.

Given the PSLRA's "proof" requirement, one would expect Ontario to offer *some* factual bases for leveling such incendiary charges; perhaps an example of the Oregon Attorney General committing similar violations in the past, or some indication she is likely to do so in the future. But a search of Ontario's submission comes up empty. There are no factual or evidentiary bases for these contentions whatsoever.

As a result, Ontario's submission should be disregarded for failing to even come close to rebutting the presumption that the Teva Investor Group should be appointed lead plaintiff.

**B.  Ontario Offers No Proof that the Oregon Attorney General Will Violate Court Orders in the Antitrust Action**

The first "concern" to which Ontario draws the Court's attention relates to a "Standing Protective Order" entered in the Antitrust Action shortly after it was filed. That order requires that documents produced confidentially in that action not be used for any purpose outside that litigation.

Ontario raises various "objections" that it thinks Defendants "may" or

1  "might" lodge regarding that order, all premised on the Oregon Attorney General
2  violating the order in connection with its participation in *this* action. *See* Ontario
3  Supp. at 2-3.[2]

4  Having recently joined the Antitrust Action, however, the Oregon Attorney
5  General is currently in the midst of negotiating a protective order that will replace
6  the order referenced by Ontario. *See* Supplemental Declaration of Brian de Haan
7  dated March 24, 2017, submitted herewith ("Supp. de Haan Decl."), ¶ 6. As such,
8  the terms of the order that will ultimately govern the Antitrust Action have not yet
9  even been decided.

10 But even putting that aside, the more fundamental problem with Ontario's
11 argument is that it has submitted no evidence that the Oregon Attorney General has
12 any intention of violating a protective order. Absent such evidence, the
13 "objections" dreamt up by Ontario are rank speculation, and should be rejected as
14 such.

15 Moreover, to avoid any possible doubt, the Oregon Attorney General's
16 office, on behalf of Oregon PERS, has now submitted a declaration stating that no
17 protective order in the Antitrust Action has been or will be violated. Supp. de Haan
18 Decl., ¶ 6.

19 Put simply, there is zero evidence that anything even resembling a violation
20 of a protective order in the Antitrust Action has occurred or will occur. As such, on
21 the record before the Court, there is simply no possibility that any issue remotely
22 related to a protective order will "play a significant role at [the] trial" of this action.

---

[2] Ontario also says that the Defendants will complain about the Oregon Attorney General's ability to "obtain documents and information outside the discovery process in this litigation" because of the Oregon Attorney General's investigative powers, further requiring Oregon's disqualification. Ontario Supp. at 3. Once again, Oregon and the Teva Investor Group are at a loss as to how this could possibly be disqualifying.

### C. Ontario Provides No Evidence that the Oregon Attorney General Has or Will Violate the PSLRA Discovery Stay

The second point raised by Ontario relates to the PSLRA's discovery stay provision. *See* Ontario Supp. at 3. Once again, Ontario presents no evidence suggesting the Oregon Attorney General has violated or intends to violate that stay. Nor has Ontario provided any evidence that the Oregon Attorney General's participation in the Antitrust Action will implicate the PSLRA stay in a way that is harmful to the investor class here. In fact, nothing of the sort will occur.

The default rule under the PSLRA is that, in a private securities class action, formal discovery is stayed while a motion to dismiss is pending, subject to certain exceptions. 15 U.S.C. § 78u-4(b)(3)(B). The purpose of the rule is not to deny plaintiffs information or to make it as difficult as possible to plead a securities fraud case. Indeed, plaintiffs are free to, and do, conduct rigorous investigations, using a mix of public and private sources, including by issuing Freedom of Information Act requests, hiring subject-matter experts, employing private investigators, and contacting former employees.

Rather, the purpose of the rule is to reduce the economic burden that formal discovery can entail, by delaying the right of securities fraud plaintiffs to access compulsory discovery tools, such as subpoena power and discovery requests. *See, e.g.*, *Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) ("[T]he purpose of the PLSRA discovery stay [is] to reduce the burden of discovery prior to a securities fraud claim surviving a motion to dismiss.")

Accordingly, the stay will be in place by operation of law, and plaintiffs and their counsel will not be able to obtain discovery for any purpose, including for the purposes of filing an amended complaint, absent court permission. Indeed, Ontario does not and cannot explain how the discovery stay possibly could be violated. No

THE TEVA INVESTOR GROUP'S RESPONSE TO THE ONTARIO TEACHERS' PENSION PLAN BOARD'S SUPPLEMENTAL SUBMISSION

- 5 -

member of the Teva Investor Group will or could engage in any formal discovery in this case "during the pendency of any motion to dismiss" without having obtained an order from this Court pursuant to the PSLRA. 15 U.S.C. § 78u-4(b)(3)(B). To the extent that counsel for the Teva Investor Group properly and lawfully obtains materials without the use of formal discovery mechanisms in this case, then the PSLRA stay is simply not implicated. In short, the "concerns" raised by Ontario are without merit and there is no evidence that they will "play a significant role at trial."

### D. The Notion that Oregon PERS Is Compromised as a Fiduciary to the Investor Class Here Because of the Oregon Attorney General's Participation in the Antitrust Action is Wholly Without Legal or Factual Basis

Ontario's final contention is that Oregon PERS is at risk of selling out the investor class here to benefit the Antitrust Action. Once again, this contention is built not on facts or evidence, but on speculation.

As an initial matter, Ontario concedes, as it must, that the Oregon Attorney General "is not proposed class counsel" here. Ontario Supp. at 4. This alone should end the inquiry; the cases cited by Ontario address the *same counsel* attempting to lead a class action while also litigating a separate, related case. *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 588 (W.D. Tex. 2002) (same counsel in separate actions); *Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA, 2014 WL 68605, at *1 (N.D. Cal. Jan. 8, 2014) (same); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (same). Because proposed class counsel here are the law firms of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Pomerantz LLP ("Pomerantz"), and because neither is counsel in the Antitrust Action, none of Ontario's cited cases are relevant.

Furthermore, conflicts between two classes or sets of plaintiffs tend to arise "'when both actions pursue a common pool of assets that might be insufficient to

support the total amount sought.'" *Wallace v. Powell*, No. 3:09-CV-0291, 2013 WL 2042369, at *9 (M.D. Pa. May 14, 2013) (citing *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) and quoting *Ruderman ex rel. Schwartz v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 685 (S.D. Fla. 2010)). Ontario has not offered any evidence at all that anything resembling such a limitation exists here. And, given that the Antitrust Action names six large pharmaceutical companies as defendants, while this action names only Teva, and given that Teva has recently reported revenues and has a market capitalization in the tens of billions of dollars,[3] Ontario could not possibly have offered such evidence. *See, e.g.*, *Wallace v. Powell*, No. 3:09-CV-0291, 2013 WL 2042369, at *9 (M.D. Pa. May 14, 2013) (finding no conflict where there was no allegation that "proposed class members and individual plaintiffs seek recovery from a single pool of assets").

Moreover, even if the Antitrust Action and this action involved the same class counsel (they do not), and even if there was evidence of insufficient assets (there is not), there still would be no conflict-of-interest argument. That is because Cohen Milstein, Pomerantz, Mr. Kleinerman, and Chicago Teachers, who do not have any financial interest in the Antitrust Action, are also fiduciaries to the investor class here. *See, e.g.*, 1 McLaughlin on Class Actions § 4:39 (13th ed.) ("Where multiple, separate counsel jointly represent the class, however, absent an actual conflict the simultaneous representation of individuals or another class by a member of the counsel group against the same defendants is not disqualifying."); *Wallace v. Powell*, No. 3:09-CV-0291, 2013 WL 2042369, at *9 (M.D. Pa. May

---

[3] *See, e.g.*, https://www.bloomberg.com/quote/TEVA:US (market capitalization over $33 billion USD as of March 23, 2017); http://www.tevapharm.com/news/teva_reports_full_year_and_fourth_quarter_2016_financial_results_02_17.aspx (reporting fiscal year 2016 revenue of $21.9 billion USD).

14, 2013) ("Presumably, the other class counsel would not allow their colleague to put the interests of his individual cases before the interests of the class.").

For there to be a plausible conflict of interest under these circumstances, the Court would have to be persuaded that there is a risk that Cohen Milstein, Pomerantz, Mr. Kleinerman, *and* Chicago Teachers will each be so faithless, and inept, that they would stand idly by, in breach of their own fiduciary duties, while the Oregon Attorney General conspires to sell out the investor class for the benefit of the Antitrust Action. Ontario has not and cannot offer evidence that this could possibly be true.

Finally, the Oregon Attorney General's office has submitted a declaration, on behalf of Oregon PERS, attesting that there is no reason it cannot prosecute this action on behalf of an investor class with the same zeal and vigor as any similarly situated investor. Supp. de Haan Decl., ¶¶ 10-11.

Accordingly, on the record before the Court, there is no evidence that even an appearance of a "conflict" exists, much less that it could "play a significant role at trial."

## V. CONCLUSION

For the foregoing reasons, Ontario's supplemental submission and the contentions therein are baseless. The Teva Investor Group should be appointed to serve as Lead Plaintiff for the Class, and its selection of Cohen Milstein and Pomerantz as Co-Lead Counsel should be approved.

DATED: March 27, 2017         **POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499

Jeremy Lieberman (*admitted pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (*pro hac vice forthcoming*)
Daniel S. Sommers (*pro hac vice forthcoming*)
Julie G. Reiser (*pro hac vice forthcoming*)
Times Wang (*pro hac vice forthcoming*)
1100 New York Ave, N.W.
Suite 500 East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Carol V. Gilden (*admitted pro hac vice*)
190 S. Lasalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Kenneth M. Rehns (*pro hac vice forthcoming*)
krehns@cohenmilstein.com
88 Pine St., 14th Flr.
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Counsel for the Teva Investor Group and Proposed Co-Counsel for the Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 468 North Camden Drive, Beverly Hills, CA 90210.

On March 27, 2017, I caused to be served the following documents:

**THE TEVA INVESTOR GROUP'S RESPONSE TO THE ONTARIO TEACHERS' PENSION PLAN BOARD'S SUPPLEMENTAL SUBMISSION**

By posting the documents to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the attached Service List.

And on any non-ECF registered parties:

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **March 27, 2017**, at **Beverly Hills, California**.

*/s/ Jennifer Pafiti*
Jennifer Pafiti