## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| AMRAM GALMI, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD. et al.<br><br>     Defendants. | No. 3:17-cv-00558 (SRU)<br><br>AUGUST 3, 2017<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT
## FOR VIOLATION OF THE SECURITIES ACT OF 1933

Pursuant to the Court's scheduling order entered July 27, 2017 (ECF No. 126) (the "Scheduling Order") Court-appointed Lead Plaintiff Ontario Teachers' Pension Plan Board ("Lead Plaintiff," or "Ontario Teachers'"), by and through its undersigned attorneys, files this complaint (the "Securities Act Complaint") against defendants Teva Pharmaceutical Industries Limited ("Teva" or the "Company"), Erez Vigodman, Eyal Desheh (the "Previously-Named Defendants") and the below-named additional defendants ("Additional Defendants," and together with the Previously-Named Defendants, the "Defendants") under Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act").[1]

---

[1] There is currently on file in this action a Class Action Complaint (ECF No. 1) alleging violations of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Pursuant to the Scheduling Order, Lead Plaintiff is now filing this complaint alleging violations of the Securities Act, and will file a Consolidated Class Action Complaint on or before September 11, 2017. The Defendants need not answer or otherwise respond to this Securities Act Complaint. Pursuant to the Scheduling Order they shall only be required to respond to the Consolidated Class Action Complaint.

Lead Plaintiff alleges the following based upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia*, its independent investigation conducted by and through its attorneys, including but not limited to a review and analysis of: (i) Teva's public filings with the Securities and Exchange Commission ("SEC"); (ii) transcripts of Teva's senior management's conference calls with investors and analysts; (iii) wire and press releases published by and/or regarding Teva; (iv) analysts' reports and advisories concerning Teva; and (v) other public information regarding Teva.  Lead Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action seeking remedies under the Securities Act, brought on behalf of a class consisting of all persons (subject to certain exclusions) who purchased or otherwise acquired Teva securities in domestic transactions, pursuant to and/or traceable to one or more of the securities offerings detailed herein, and were damaged thereby.

2.      Lead Plaintiff Ontario Teachers' asserts claims against Defendants under Sections 11, 12, and 15 of the Securities Act, on behalf of themselves and on behalf of all other persons similarly situated except Defendants and their affiliates (the "Class") who purchased or otherwise acquired registered securities of Teva and/or its subsidiaries, in particular its wholly-owned finance-related subsidiary Teva Pharmaceutical Finance Netherlands III B.V. ("Teva Finance Netherlands III"), in domestic transactions pursuant and/or traceable to offerings of certain securities, namely: (i) the secondary public offering on or about December 3, 2015 and January 6, 2016 of American Depositary Shares ("ADS" and the "Secondary ADS Offering"); (ii) the public offering on or about December 3, 2015 and January 6, 2016 of 7.00% Mandatory Convertible

Preferred Shares (the "Preferred Shares" and the "Preferred Share Offering"); and (iii) the public offering on or about July 21, 2016 of (a) U.S.-dollar-denominated 1.400% Senior Notes due July 20, 2018 ("2018 Notes"); (b) U.S.-dollar-denominated 1.700% Senior Notes due July 19, 2019 ("2019 Notes"); (c) U.S.-dollar-denominated 2.200% Senior Notes due July 21, 2021 ("2021 Notes"), (d) U.S.-dollar-denominated 2.800% Senior Notes due July 21, 2023 ("2023 Notes"), (e) U.S.-dollar-denominated 3.150% Senior Notes due October 1, 2026 ("2026 Notes"), and (f) U.S.-dollar-denominated 4.100% Senior Notes due October 1, 2046 ("2046 Notes") (collectively, referred to herein as the "July 2016 Notes" and the "July 2016 Notes Offering").

3.      The Secondary ADS Offering and the Preferred Share Offering are collectively referred to herein as the "ADS/Preferred Offerings"; the July 2016 Notes Offering together with the ADS/Preferred Offerings are referred to herein as the "Offerings."  The Offerings were made pursuant to registration statements, prospectuses, and related amendments and supplements (referred to herein as the "ADS/Preferred Offering Materials," the "July 2016 Notes Offering Materials," and sometimes collectively as the "Offering Materials").

4.      The Offering Materials contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading, in violation of the Securities Act.  The claims asserted in this Securities Act Complaint are strict liability, negligence, and non-fraud-based claims.

5.      Lead Plaintiff alleges that damage occurred with respect to purchases or other acquisitions, pursuant and/or traceable to the ADS/Preferred Offerings or the July 2016 Notes Offering, of Teva securities in domestic transactions made during the time period between November 30, 2015 and November 3, 2016, inclusive ("the Class Period").

6.      The Defendants are (i) Teva, (ii) Teva Finance Netherlands III, (iii) certain of Teva's executives, (iv) members of the Boards of Directors of Teva and Teva Finance Netherlands III, (v) the underwriters for the Offerings, and (vi) Teva's auditor, Kesselman & Kesselman, an independent registered public accounting firm in Israel and a member of PricewaterhouseCoopers International Limited (referred to herein as "PWC/Kesselman").

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15(a) of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o(a).

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

9.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and pursuant to 28 U.S.C. § 1391(b).  Certain of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially untrue and misleading information, occurred in this District.

10.     In connection with the acts and conduct alleged in this Securities Act Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

**A.      The Lead Plaintiff**

11.     Ontario Teachers', the Court-appointed Lead Plaintiff, is the largest single-profession pension plan in Canada, representing roughly 318,000 active and retired teachers in the

Province of Ontario.  During the Class Period, as set forth in the accompanying Certification, Ontario Teachers' purchased Teva ADS and Preferred Shares pursuant and/or traceable to the ADS/Preferred Offerings, and suffered damages as a result of the violations of the federal securities laws alleged herein.

**B.     The Defendants**

**i.     The Company**

12.     Defendant Teva develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines.  The Company is incorporated in Israel and its principal executive offices are located at 5 Basel Street, P.O. Box 3190, Petach Tikva 4951033, Israel.  Teva's U.S. wholly-owned subsidiary Teva Pharmaceuticals USA, Inc. has its principal offices at 1090 Horsham Road, North Wales, Pennsylvania, 19454 ("Teva USA").

13.     The Company engages in interstate commerce within this District.  Teva ADS are listed and traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TEVA." The Preferred Shares and the July 2016 Notes trade in the United States.

14.     Defendant Teva Finance Netherlands III is a shell company that is a wholly-owned finance related subsidiary of Teva organized under the laws of the Netherlands as a Dutch private limited liability company which Teva caused to issue the July 2016 Notes.  Its business address is Piet Heinkade 107, Amsterdam P7 109 GM.  As of the July 2016 Notes Offering, it had no assets or operations other than in connection with the offerings on that date (including the July 2016 Notes Offering).

15.     Teva Finance Netherlands III does not have any independent operations and does not purport to engage in any activities other than issuing securities and investing the proceeds in

Teva or its affiliates.  Teva has irrevocably and unconditionally guaranteed the debt of Teva Finance Netherlands III issued pursuant to the July 2016 Notes Offering.

16.     As stated in the July 2016 Notes Offering Materials, Teva intended for the net proceeds of the July 2016 Notes Offering to be used to finance Teva's acquisition of Actavis Generics from Allergan plc, to pay related fees and expenses, and/or for general corporate purposes.  At the time of the July 2016 Notes Offering, the July 2016 Notes were subject to a special mandatory redemption provision that provided for accelerated redemption at 101% of their aggregate principal amount in the event that Teva's acquisition of Actavis Generics was not consummated.

### ii.     The Officer Defendants

17.     Defendant Erez Vigodman ("Vigodman") was: (a) Teva's President and Chief Executive Officer ("CEO") from February 11, 2014 through February 6, 2017; and (b) a Director of Teva from June 22, 2009 through February 6, 2017.   Vigodman signed the Registration Statements associated with the Offerings.  Vigodman signed – under the Company's consolidated balance sheet, and in relation to the certifications issued pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") – Annual Reports that were incorporated by reference into one or more of the various Offering Materials, namely Teva's Annual Report on Form 20-F for the year ended December 31, 2014 (the "2014 20-F"), and Teva's Annual Report on Form 20-F for the year ended December 31, 2015 (the "2015 20-F").  Vigodman also signed under the Company's consolidated balance sheet in the Form 6-K filed by Teva with the SEC on May 9, 2016, reporting the Company's financial and operating results for the quarter ended March 31, 2016 ("the Q1 2016 6-K"), which was incorporated by reference into the 2016 Notes Offering Materials.

18.     Defendant Eyal Desheh ("Desheh") was: (a) Teva's Chief Financial Officer ("CFO") from July 2008 through June 30, 2017 (except during the period of October 30, 2013 through February 11, 2014); (b) Teva's Group Executive Vice President from 2012 through June 30, 2017, and (c) Teva's interim CEO from October 30, 2013 through February 11, 2014. Desheh signed the Registration Statements associated with the Offerings.  Desheh signed, on the Company's behalf, the 2014 20-F, the 2015 20-F, and the four Forms 6-K reporting the Company's first-, second-, and third- quarterly financial and operating results for quarters ending March 31, 2015 through March 31, 2016 (including the Q1 2016 6-K), all of which were incorporated by reference into one or more of the Offering Materials; Desheh signed the 2014 20-F and the 2015 20-F under the Company's consolidated balance sheet, and in relation to the certifications issued pursuant to SOX.  Desheh's also signed under the Company's consolidated balance sheet in the Q1 2016 6-K, which was incorporated by reference into the 2016 Notes Offering Materials.

19.     Deborah Griffin ("Griffin") is Teva's Senior Vice President and Chief Accounting Officer ("CAO") (Principal Accounting Officer).  In that capacity, and as the Authorized U.S. Representative of Teva, Griffin signed the Registration Statements associated with the ADS/Preferred Offerings.  Griffin signed the July 2016 Notes Offering in her capacity as Teva's Senior Vice President and CAO (Principal Accounting Officer), as the Authorized U.S. Representative of Teva, and as the Authorized U.S. Representative of Teva Finance Netherlands III.

20.     Herein, Defendants Vigodman, Desheh, and Griffin together are sometimes referred to as the "Officer Defendants."

### iii.    The Teva Director Defendants

21.     Defendant Roger Abravanel ("Abravanel") has been a Director of Teva since January 2007; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

22.     Defendant Sol J. Barer ("Barer") has been the Chairman of Teva's Board of Directors since February 6, 2017; he has been a Director of Teva since January 2015, he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

23.     Defendant Arie S. Belldegrun ("Belldegrun") was a Director of Teva from February 2013 through January 27, 2017; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

24.     Defendant Rosemary A. Crane ("Crane") has been a Director of Teva since September 2015; she was a Director of Teva at the time of the Offerings, and she signed the Registration Statements associated therewith.

25.     Defendant Amir Elstein ("Elstein") has been a Director of Teva since 1995; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

26.     Defendant Jean-Michel Halfon ("Halfon") has been a Director of Teva since 2014; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

27.     Defendant Gerald M. Lieberman ("Lieberman") has been a Director of Teva since September 2015; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

28.     Defendant Galia Maor ("Maor") has been a Director of Teva since September 2012; she was a Director of Teva at the time of the Offerings, and she signed the Registration Statements associated therewith.

29.     Defendant Joseph Nitzani ("Nitzani") has been a Director of Teva since September 2008; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

30.     Defendant Yitzhak Peterburg ("Peterburg") has served as Teva's Interim President and CEO since February 6, 2017; before that date, he was a Director of Teva from June 2009 until February 6, 2017, and Chairman of Teva's Board of Directors from January 2015 until February 6, 2017; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

31.     Defendant Ory Schneur Slonim ("Slonim") has been a Director of Teva since 1998; he was a Director of Teva at the time of the Offerings, and he signed the Registration Statements associated therewith.

32.     Defendant Gabrielle Greene Sulzburger ("Sulzberger") has been a Director of Teva since September 2015; she was a Director of Teva at the time of the Offerings, and she signed the Registration Statements associated therewith.

33.     Herein, Defendants Vigodman, Abravanel, Barer, Belldegrun, Crane, Elstein, Halfon, Lieberman, Maor, Nitzani, Peterburg, Slonim, and Sulzberger are sometimes referred to collectively as the "Teva Director Defendants."

### iv.     The Teva Finance Netherlands III Director Defendants

34.     Defendant Dr. Robert Koremans ("Koremans") signed the Registration Statement associated with the July 2016 Notes Offering in his capacity as a Managing Director of Teva

Finance Netherlands III.  Dr. Koremans became Teva's President and CEO, Global Specialty Medicines in 2013.  From 2012 to 2013, Dr. Koremans served as President and CEO of Teva Pharmaceuticals Europe.

35.     Defendant Dipankar Bhattacharjee ("Bhattacharjee") has served since December 2016 as the President and CEO of Teva's Global Generics Medicines Group; at the time of the July 2016 Notes Offering he served as Teva's President and CEO, Generics Europe.  Bhattacharjee signed the Registration Statement associated with the July 2016 Notes Offering in his capacity as a Managing Director of Teva Finance Netherlands III.

36.     Defendant Gianfranco Nazzi ("Nazzi") has served since March 2017 as Teva's President & CEO, Growth Markets; at the time of the July 2016 Notes Offering, he served as Teva's Senior Vice President, Specialty Medicines Europe.  Nazzi signed the Registration Statement associated with the July 2016 Notes Offering in his capacity as a Managing Director of Teva Finance Netherlands III.

37.     Defendant John Nason ("Nason") has served since March 2015, including at the time of the July 2016 Notes Offering, as Teva's Senior Vice President, TGO Technical Operations Europe.  Nason signed the Registration Statement associated with the July 2016 Notes Offering in his capacity as a Managing Director of Teva Finance Netherlands III.

38.     Defendant David Vrhovec ("Vrhovec") has served since May 2016, including at the time of the July 2016 Notes Offering, as Teva's CFO Europe.  Vrhovec signed the Registration Statement associated with the July 2016 Notes Offering in his capacity as a Managing Director of Teva Finance Netherlands III.

39.     Herein, Defendants Koremans, Bhattacharjee, Nazzi, Nason, and Vrhovec are sometimes referred to collectively as the "Teva Finance Netherlands III Director Defendants."

### v.   The Underwriter Defendants

40.     Defendant Barclays Capital Inc. ("Barclays") is an SEC-registered securities broker-dealer, with investment banking and capital markets businesses in the United States; it is a Connecticut company with offices at 745 7th Avenue, New York, New York, 10019.  Barclays acted as an underwriter for all of the Offerings

41.     Defendant Merrill Lynch, Pierce, Fenner and Smith Inc., a wholly-owned indirect subsidiary of Bank of America Corp. ("BofA Merrill Lynch"), offers trading and brokerage services, debt and securities underwriting, debt and equity research, and advice on public offerings, leveraged buyouts and mergers and acquisitions; it maintains offices at One Bryant Park, New York, New York, 10036.  BofA Merrill Lynch acted as an underwriter for all of the Offerings.

42.     Defendant BNP Paribas Securities Corp. ("BNP Paribas") operates as a brokerage firm, buying and selling securities such as stocks, bonds, and other investment products; it maintains offices at 787 7th Avenue, New York, New York, 10019.  BNP Paribas acted as an underwriter for all of the Offerings.

43.     Defendant Citigroup Global Markets, Inc. ("Citigroup") is a large financial services institution that provides commercial and investment banking services, commercial loans, and underwriting services; it maintains offices at 388 Greenwich Street, New York, New York, 10013. Citigroup acted as an underwriter for all of the Offerings.

44.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") operates as an investment banking firm, offering services including strategic planning, consolidation, reorganization, merger and acquisition advice, capital raising, and valuation; it maintains offices at Eleven Madison Avenue, New York, New York, 10010-3629.  Credit Suisse acted as an underwriter for all of the Offerings.

45.     Defendant HSBC Securities (USA) Inc. ("HSBC") is an SEC-registered broker-dealer which engages, among other endeavors, in underwriting, dealing, and brokering a full range of debt and equity securities; it maintains offices at 452 Fifth Avenue, New York, New York, 10018, along with a mailing address at 1 West 39th Street, 12th Floor, New York, New York, 10018.  HSBC acted as an underwriter for all of the Offerings.

46.     Defendant Mizuho Securities USA LLC, the entity at the time of the Offerings known as Mizuho Securities USA Inc., ("Mizuho") operates as an investment management company, offering services involving asset management, equities, fixed income, foreign exchange, treasury, fund administration, research, and financial planning; it maintains offices at 320 Park Avenue, 12th Floor, New York, New York, 10022.  Mizuho acted as an underwriter for all of the Offerings.

47.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") operates as an investment management company, offering services involving wealth management, asset allocation, capital markets, investment banking, research, and trading; it maintains offices at 1585 Broadway, New York, New York, 10036.  Morgan Stanley acted as an underwriter for all of the Offerings.

48.     Defendant RBC Capital Markets, LLC ("RBC") is an SEC-registered broker-dealer and investment adviser, which engages, among other endeavors, in full-service brokerage, investment banking, and asset management services to retail and institutional clients; it maintains offices at Three World Financial Center, 200 Vesey Street, New York, New York, 10281.  RBC acted as an underwriter for all of the Offerings.

49.     Defendant SMBC Nikko Securities America, Inc. ("SMBC Nikko") is an SEC-registered broker-dealer, which engages, among other endeavors, in securities trading,

underwriting services of debt and equity securities, and services to assist in the sale of securities underwritten by other entities; it maintains offices at 277 Park Avenue, Fifth Floor, New York, New York, 10172.  SMBC Nikko acted as an underwriter for all of the Offerings.

50.     Defendant Bank of China Limited London Branch ("Bank of China") provides banking and financial services; it maintains offices at 90 Cannon Street, London, EC4N 6HA, United Kingdom.  Bank of China acted as an underwriter for the July 2016 Notes Offering.

51.     Defendant BBVA Securities Inc. ("BBVA") is an SEC-registered broker-dealer, the institutional business of which consists of investment banking (including securities originations, loan syndications, project finance, and merger and acquisition advisory services), financing transactions, and institutional sales of fixed income securities; it maintains offices at 1345 Avenue of the Americas, 44th Floor, New York, New York, 10105-0302, and a mailing address at 15 South 20th Street, 6th Floor, Birmingham, Alabama, 35233.  BBVA acted as an underwriter for the July 2016 Notes Offering.

52.     Defendant Commerz Markets LLC ("Commerz") is a registered broker and dealer under the Securities Exchange Act of 1934, which engages, among other endeavors, in investment banking services in connection with corporate transactions; it maintains offices at 225 Liberty Street, New York, New York, 10281.  Commerz acted as an underwriter for the July 2016 Notes Offering.

53.     Defendant Lloyds Securities Inc. ("Lloyds") engages in business activities including investment banking and institutional sales with respect to debt securities and loans; it maintains offices at 1095 Avenue of the Americas, New York, New York, 10036.  Lloyds acted as an underwriter for the July 2016 Notes Offering.

54.     Defendant MUFG Securities Americas Inc. ("MUFG") engages, in its capacity as a securities broker-dealer, in capital markets origination transactions, private placements, collateralized financing, securities borrowing and lending transactions, and debt transactions; it maintains offices at 1221 Avenue of the Americas, 6th Floor, New York, New York, 10020-1001. MUFG acted as an underwriter for the July 2016 Notes Offering.

55.     Defendant PNC Capital Markets LLC ("PNC") is a registered securities broker and dealer pursuant to the Securities Exchange Act of 1934 which underwrites, deals, and trades in corporate government and private debt and asset-backed securities, in addition to acting as an agent for its corporate affiliates in certain securities transactions; it maintains offices at 300 5th Avenue, Fifth Floor, Pittsburgh, Pennsylvania, 15222.  PNC acted as an underwriter for the July 2016 Notes Offering.

56.     Defendant Scotia Capital (USA) Inc. ("Scotia") is an SEC-registered broker and dealer in securities under the Securities Exchange Act of 1934, which engages, among other endeavors, in corporate debt and equity underwriting; it maintains offices at 165 Broadway, 25th Floor, New York, New York, 10006.  Scotia acted as an underwriter for the July 2016 Notes Offering.

57.     Defendant TD Securities (USA) LLC ("TD") is an SEC-registered broker-dealer in securities under the Securities Exchange Act of 1934, which engages, among other endeavors, in corporate debt and equity underwriting; it maintains offices at 31 West 52nd Street, New York, New York, 10019-6101.  TD acted as an underwriter for the July 2016 Notes Offering.

58.     Herein, Defendants Barclays, BofA Merrill Lynch, BNP Paribas, Citigroup, Credit Suisse, HSBC, Mizuho, Morgan Stanley, RBC, SMBC Nikko, Bank of China, BBVA, Commerz,

Lloyds, MUFG, PNC, Scotia, and TD – all of which underwrote the 2016 Note Offering – are sometimes referred to collectively as the "Underwriter Defendants."

59.     Herein, by virtue of the fact that they underwrote the ADS/Preferred Offerings in addition to the 2016 Note Offering, the subset of Underwriter Defendants consisting of Defendants Barclays, BofA Merrill Lynch, BNP Paribas, Citigroup, Credit Suisse, HSBC, Mizuho, Morgan Stanley, RBC, and SMBC Nikko are sometimes referred to collectively as the "ADS/Preferred Underwriter Defendants."

### vi.    PWC/Kesselman

60.     Defendant Kesselman & Kesselman, an independent registered public accounting firm in Israel and a member firm of PricewaterhouseCoopers International Limited, served as Teva's independent auditor during the relevant time periods and issued audit reports on Teva's financial statements and internal controls over financial reporting for the 2014 20-F and the 2015 20-F (the "Audit Reports"), which were incorporated by reference into the Offering Materials, with the consent of PWC/Kesselman.  PWC/Kesselman currently does business under the name "PwC Israel."  PWC/Kesselman's main office is located at Trade Tower, 25 Hamered Street, Tel-Aviv, Israel, 6812508.

### SUBSTANTIVE ALLEGATIONS

61.     This action arises because the Offering Materials associated with the Offerings misleadingly did not disclose, and/or otherwise made untrue and misleading material statements to the Class concerning, Teva's role in a conspiracy to inflate the market price of certain generic drug products.

62.     Lead Plaintiff brings claims under Section 11 and 12 of the Securities Act for the materially untrue and misleading statements contained in or omissions from the Offering Materials Teva filed in connection with the Offerings.

63.     Lead Plaintiff also brings claims under Section 15 of the Securities Act against Teva (as a control person of Teva Finance Netherlands III), the Officer Defendants, the Teva Director Defendants, and the Teva Finance Netherlands III Director Defendants.

64.     Lead Plaintiff expressly disclaims any allegations of scienter in these non-fraud claims.  Any challenged statements of opinion or belief made in connection with the Offerings are alleged to have been materially misstated statements of opinion or belief when made.

**A.     The Secondary ADS Offering**

65.     The Company issued a public secondary offering of ADS on or about December 3, 2015.  On or about January 6, 2016, the Company announced that Barclays, Citigroup, BofA Merrill Lynch, and Morgan Stanley, as representatives of the several underwriters of the Secondary ADS Offering, and pursuant to certain underwriting agreements, exercised their options to purchase additional ADS.

66.     The ADS issued pursuant to the Secondary ADS Offering are associated with, and were issued pursuant to registration statement(s) and prospectus(es) filed with the SEC.

67.     The ADS/Preferred Underwriter Defendants underwrote the Secondary ADS Offering and were "underwriters," as defined in Section 2(11) of the Securities Act, of the Secondary ADS Offering.

68.     The Registration Statement(s) associated with the Secondary ADS Offering was signed by the Officer Defendants, and all of the Teva Director Defendants.

69.     The Registration Statement(s) and Prospectus(es) associated with the Secondary ADS Offering incorporated by reference a series of documents, specified within the Offering Materials, including but not limited to the following SEC filings: (1) the 2014 20-F; (2) the Form 6-K filed by Teva with the SEC on April 30, 2015, reporting the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 6-K"); (3) the Form 6-K filed by Teva with the SEC on July 30, 2015, reporting the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 6-K"); and (4) the Form 6-K filed by Teva with the SEC on October 29, 2015, reporting the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 6-K"), all of which contained untrue statements of material fact and/or omitted to state material facts required therein or necessary to make the statements therein not misleading, as detailed in Section D below.

**B.      The Preferred Shares Offering**

70.     The Company issued a public offering of the Preferred Shares on or about December 3, 2015.   On or about January 6, 2016, the Company announced that Barclays, Citigroup, BofA Merrill Lynch, and Morgan Stanley, as representatives of the several underwriters of the Preferred Shares Offering, and pursuant to certain underwriting agreements, exercised their options to purchase additional Preferred Shares.

71.     The Preferred Shares are associated with, and were issued pursuant to registration statement(s) and prospectus(es) filed with the SEC.

72.     The ADS/Preferred Underwriter Defendants underwrote the Preferred Shares Offering and were "underwriters," as defined in Section 2(11) of the Securities Act, of the Preferred Shares Offering.

73.     The Registration Statement(s) associated with the Preferred Shares Offering was signed by the Officer Defendants, and all of the Teva Director Defendants.

74.     The Registration Statement(s) and Prospectus(es) associated with the Preferred Share Offering incorporated by reference a series of documents, specified within the Offering Materials, including but not limited to the following SEC filings: (1) the 2014 20-F; (2) the Q1 2015 6-K; (3) the Q2 2015 6-K; and (4) the Q3 2015 6-K, all of which contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading, as detailed in Section D below.

### C.     The July 2016 Notes Offering

75.     On July 21, 2016, Teva consummated, through its special purpose finance subsidiary Teva Finance Netherlands III, the July 2016 Notes Offering, which included the public offering of $1.5 billion in aggregate principal of 1.4% 2018 Notes, $2 billion in aggregate principal of 1.7% 2019 Notes, $3 billion in aggregate principal of 2.2% 2021 Notes, $3 billion in aggregate principal of 2.8% 2023 Notes, $3.5 billion in aggregate principal of 3.15% 2026 Notes, and $2 billion in aggregate principal of 4.1% 2046 Notes.

76.     The July 2016 Notes are associated with, and were issued pursuant to Registration Statement(s) and Prospectus(es) filed with the SEC.

77.     The Underwriter Defendants underwrote the July 2016 Notes Offering and were "underwriters," as defined in Section 2(11) of the Securities Act, of the July 2016 Notes Offering.

78.     The Registration Statement(s) associated with the July 2016 Notes Offering was signed by the Officer Defendants, the Teva Director Defendants, and the Teva Finance Netherlands III Director Defendants.

79.     The Registration Statement(s) and Prospectus(es) associated with the July 2016 Notes Offering incorporated by reference a series of documents, specified within the Offering Materials, including but not limited to the following SEC filings, (1) the 2015 20-F; and (2) the Q1 2016 6-K, both of which contained untrue statements of material fact and/or omitted to state material facts required therein or necessary to make the statements therein not misleading, as detailed in Section D below.

**D.     Certain Untrue and Misleading Earlier Statements Incorporated By Reference in the Offering Materials**

80.     Below are certain of the statements incorporated by reference in the Registration Statement(s) and Prospectus(es) filed in connection with the Offerings that were untrue or misleading.

81.     On February 9, 2015, the Company filed the 2014 20-F with the SEC, which provided the Company's year-end financial results and stated that the Company's internal controls over financial reporting were effective as of December 31, 2014.  The 2014 20-F was signed by Defendant Desheh and both Defendants Vigodman and Desheh signed Teva's consolidated balance sheet included in the 2014 20-F.  For the quarter ended December 31, 2014, Teva reported net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion, compared to net income of $380 million, or $0.45 per diluted share, on revenue of $5.43 billion for the same period in the prior year.  For the year ended December 31, 2014, Teva reported net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion, compared to net income of $1.27 billion, or $1.49 per diluted share, on revenue of $20.31 billion for 2013.

82.     The 2014 20-F discussed Teva's business strategy, stating in relevant part:

Strategy

In 2014, we began a process of re-defining and re-focusing our business strategy to better leverage our strengths and differentiate

ourselves in the pharmaceutical market. We seek to capitalize on our advantages—including the largest generic medicines business in the world, a focused specialty business, a unique OTC business and our integrated R&D and API capabilities—to provide patients with integrated, outcome-focused solutions. Underlying our strategy is our heightened focus on profitable and sustainable business.

The key elements of our strategy consist of the following:

• Solidifying our foundation and driving organic growth. We are solidifying the core foundations of our generics and specialty businesses to create additional value from our existing operations. In 2014, we implemented organizational and leadership changes, such as the creation of the Global Generics Medicines group, designed to achieve global integration and improve focus and effectiveness. We seek to drive organic growth in our generics business by emphasizing markets where we have or are pursuing leadership positions, and by shifting our generic pipeline and portfolio to include a larger proportion of complex products, with high barriers to entry.

• Focusing on key growth markets. While we currently operate in numerous markets throughout the world, in 2015 we intend to concentrate our efforts on a smaller number of large growth markets where we believe we can establish or expand leadership positions. We are exploring both organic and inorganic initiatives to achieve leadership in these markets.

• Maintaining Copaxone® and other key specialty products. We have enhanced our multiple sclerosis ("MS") franchise through the introduction of our three-times-a-week Copaxone® 40 mg/mL product in the United States, and will launch Copaxone® 40 mg/mL in Europe and other countries in 2015. For many of our other specialty products, we are expanding into new markets, improving the products and taking further steps to protect the franchise while creating value for patients and payors.

• Solidifying leadership positions in our core therapeutic areas. We plan to focus on our core therapeutic areas of CNS (including MS, neurodegenerative diseases and pain) and respiratory (including asthma and chronic obstructive pulmonary disease), establishing leadership positions in such areas. In so doing, we will leverage our focused R&D efforts, new product submissions and strong execution of product launches. In addition, in women's health and oncology, where we have a significant commercial presence, we strive to maintain the existing franchises and may consider business development opportunities to maximize sustainable profitability.

• Pursuing strategic business development initiatives.  We continue to pursue business development initiatives across all our activities.  As part of these initiatives, we will continue to evaluate opportunities for joint ventures, collaborations and other commercially-oriented activities.

• Executing on our cost reduction program.  We are focused on the continued execution of our sustainable efficiency program, which includes improvements in the operational efficiency of our production plants, in our global procurement activities, and others.

83.    The 2014 20-F discussed Teva's strategy in the United States in further detail, and touted its leading market position for generic medicines, stating in relevant part:

United States

We are the leading generic drug company in the United States.  We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products.   We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups.  Our growth strategy focuses on a carefully selected portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

**In the United States, we are subject to intense competition** in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures.  **We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio.  We believe we have a focused and competitive pricing strategy.**[2]

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization.  Our portfolio selection, breadth of products offerings and our global network capabilities, have

---

[2] All emphasis herein has been added.

provided mutual strategic advantages to our customers.  We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences.  We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

84.     The 2014 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

85.     On April 30, 2015, Teva filed the Q1 2015 6-K with the SEC.  For the quarter, Teva reported net income of $446 million, or $0.52 per diluted share, on revenue of $4.98 billion, compared to net income of $744 million, or $0.87 per diluted share, on revenue of $5 billion for the same period in the prior year.

86.     The Q1 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

### *United States Generic Medicine Revenues*

In the first quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 488 million, representing 13.7% of total U.S. generic prescriptions.  We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our cost-effective production.

87.     On July 30, 2015, Teva filed the Q2 2015 6-K with the SEC.  For the quarter, Teva reported net income of $539 million, or $0.63 per diluted share, on revenue of $4.97 billion,

compared to net income of $748 million, or $0.87 per diluted share, on revenue of $5.05 billion for the same period in the prior year.

88.     The Q2 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

> **United States Generic Medicine Revenues**
>
> In the second quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 483 million, representing 13.5% of total U.S. generic prescriptions.  We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

89.     On October 29, 2015, Teva filed the Q3 2015 6-K with the SEC.  For the quarter, Teva reported net income of $103 million, or $0.12 per diluted share, on revenue of $4.82 billion, compared to net income of $876 million, or $1.02 per diluted share, on revenue of $5.06 billion for the same period in the prior year.

90.     The Q3 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

> **United States Generic Medicine Revenues**
>
> In the third quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 481 million total prescriptions, representing 13.4% of total U.S. generic prescriptions.  We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

91.     On February 11, 2016, the Company filed the 2015 20-F with the SEC, which provided the Company's year-end financial results and stated that the Company's internal controls over financial reporting were effective as of December 31, 2015.  The 2015 20-F was signed by Defendant Desheh and both Defendants Vigodman and Desheh signed Teva's consolidated balance sheet included in the 2015 20-F.  For the quarter ended December 31, 2015, Teva reported net income of $500 million, or $0.55 per diluted share, on revenue of $4.88 billion, compared to net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion for the same period in the prior year.  For the year ended December 31, 2015, Teva reported net income of $1.59 billion, or $1.82 per diluted share, on revenue of $19.65 billion, compared to net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion for 2014.

92.     The 2015 20-F discussed Teva's business strategy, stating in relevant part:

Strategy

In 2014, we began a process of re-defining and re-focusing our business strategy to better leverage our strengths and differentiate ourselves in the pharmaceutical market. We seek to capitalize on our advantages—including the largest generic medicines business in the world, a focused specialty business, a unique OTC business and our robust R&D and API capabilities—to provide patients with integrated, outcome-focused solutions. Underlying our strategy is our heightened focus on profitable and sustainable business.

The key elements of our strategy consist of the following:

• Solidifying our foundation and driving organic growth. We have solidified, and continue to strengthen, the core foundations of our generics and specialty businesses to create additional value from our existing operations. We implemented organizational and leadership changes, such as the creation of the Global Generics Medicines group, designed to achieve global integration and improve focus and effectiveness. We continue to drive organic growth and improve profitability in our generics business.

• Transforming our generics business. Upon consummation of our acquisition of Actavis Generics, the Actavis Generics portfolio and pipeline, combined with our strong existing generics portfolio, will

further enhance our goals of delivering the highest quality generic medicines at competitive prices. The combined generic business will have a commercial presence across 100 markets, including a top three leadership position in over 40 markets.

• Focusing on key growth markets. While we currently operate in numerous markets throughout the world, we intend to concentrate our efforts on a smaller number of growth markets where we believe we can establish or expand leadership positions. We are exploring both organic and inorganic initiatives to achieve leadership in these markets, including, for example, our pending acquisition of Rimsa, a leading pharmaceutical company in Mexico.

• Maintaining Copaxone® and other key specialty products. We enhanced our multiple sclerosis ("MS") franchise through the introduction of our three-times-a-week Copaxone® 40 mg/mL product in the United States, Europe and other countries in 2015. We also enhanced our oncology portfolio with the FDA's approval in December 2015 of Bendeka™ (bendamustine hydrochloride), which complements our Treanda® franchise. For many of our other specialty products, we are expanding into new markets, improving the products and taking further steps to protect the franchise while creating value for patients and payors.

• Solidifying leadership positions in our core therapeutic areas. Our focus is on our core therapeutic areas of CNS (including MS, neurodegenerative diseases, movement disorders and pain care) and respiratory (including asthma and chronic obstructive pulmonary disease), where we seek to establish leadership positions. In the past year, we have taken significant steps, both internally and by pursuing business development initiatives, to significantly solidify our position in our core therapeutic areas, specifically with the acquisitions of Labrys and Auspex.

• Pursuing strategic business development initiatives. We continue to pursue business development initiatives across all our activities. As part of these initiatives, we will continue to evaluate opportunities for joint ventures, collaborations and other activities that support our strategy.

93.   The 2015 20-F discussed Teva's strategy in the United States in further detail, and

touted its leading market position for generic medicines, stating in relevant part:

United States

We are the leading generic drug company in the United States.  We market approximately 370 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectable and inhaled products.  We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs.  Price competition from additional generic versions of the same product typically results in margin pressures.  *We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.*

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

In most other markets in which we operate, we use an integrated and comprehensive marketing model, offering a range of generic, specialty and OTC products.

26

94.     The 2015 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

95.     Pursuant to the consent of PWC/Kesselman, the Offering Materials incorporated by reference the Audit Reports issued by PWC/Kesselman, which were included by consent in the 2014 20-F and 2015 20-F.  The Audit Reports were "clean" audit reports.  The Audit Reports each stated in substance the following:

> In our opinion, the accompanying consolidated balance sheets and the related consolidated statements of income, of comprehensive income, of changes in equity and of cash flows present fairly, in all material respects, the financial position of Teva Pharmaceutical Industries Limited and its subsidiaries at December 31, 2015 and 2014, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2015 in conformity with accounting principles generally accepted in the United States of America. Also in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2015, based on criteria established in Internal Control—Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). The Company's management and Board of Directors are responsible for these financial statements, for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting, included in ''Report of Teva Management on Internal Control Over Financial Reporting'' appearing under Item 15(b). Our responsibility is to express opinions on these financial statements and on the Company's internal control over financial reporting based on our integrated audits. We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement and whether effective internal control over financial reporting was maintained in all material respects. Our audits of the financial statements included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing

the accounting principles used and significant estimates made by management and Board of Directors and evaluating the overall financial statement presentation. Our audit of internal control over financial reporting included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. Our audits also included performing such other procedures as we considered necessary in the circumstances. We believe that our audits provide a reasonable basis for our opinions.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

96.     On May 9, 2016, Teva filed the Q1 2016 6-K with the SEC.  For the quarter, Teva reported net income of $636 million, or $0.62 per diluted share, on revenue of $4.81 billion, compared to net income of $446 million, or $0.52 per diluted share, on revenue of $4.98 billion for the same period in the prior year.

97.     The Q1 2016 6-K touted Teva's U.S. generic medicines revenues, stating in pertinent part:

### United States Generic Medicines Revenues

In the first quarter of 2016, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 463 million total prescriptions, representing 12.7% of total U.S. generic prescriptions.  We seek to continue our U.S.

28

market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our costeffective production, including through our pending acquisition of Actavis Generics.

**E.     The Statements in Teva's SEC Filings Were Materially Untrue or Misleading**

98.     The untrue or misleading statements and omissions incorporated by reference into the Offering Documents, including, but not limited to, those referenced above and otherwise referenced herein, were untrue or misleading because Defendants did not disclose, or otherwise misled investors concerning Teva's role in a scheme to fix the price of generic drugs.  The Class was damaged thereby.

99.     On August 4, 2016, the Company filed a Form 6-K with the SEC which was signed by Defendant Desheh.   The Form 6-K discussed government investigations relating to Teva's pricing and marketing, disclosing that the company's subsidiary, Teva USA, received two subpoenas, stating in relevant part:

> On June 21, 201[6], Teva USA received a subpoena from the Antitrust Division of the United States Department of Justice seeking documents and other information relating to the marketing and pricing of certain of Teva USA's generic products and communications with competitors about such products.  On July 12, 2016, Teva USA received a subpoena from the Connecticut Attorney General seeking documents and other information relating to potential state antitrust law violations.  Teva is cooperating fully with these requests.[3]

---

[3] Teva's August 4, 2016 Form 6-K incorrectly identified the date Teva received the DOJ subpoena as June 21, 2015. Teva later corrected this in a Form 6-K filed on November 15, 2016 to identify the date Teva received the subpoena as June 21, 2016.

100.   On August 5, 2016, the prices of Teva's ADS, Preferred Shares, and July 2016 Notes all declined.

101.   On November 3, 2016, *Bloomberg* published the article "U.S. Charges in Generic-Drug Probe to Be Filed by Year End" which discussed the U.S. Department of Justice's two year investigation of suspected price collusion among several pharmaceutical companies, including Teva, which would likely result in prosecutors filing criminal charges by the end of the year, stating in part:

> U.S. prosecutors are bearing down on generic pharmaceutical companies in a sweeping criminal investigation into suspected price collusion, a fresh challenge for an industry that's already reeling from public outrage over the spiraling costs of some medicines.
>
> The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter.  The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.
>
> Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic.  Among the drugmakers to have received subpoenas are industry giants Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, Lannett Co., Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.
>
> * * *
>
> Although it isn't illegal for companies to raise prices at the same time, it's against the law for competitors to agree to set prices or coordinate on discounts, production quotas or fees that affect prices. The federal government can prosecute companies for collusion and seek penalties and potentially send executives to jail.
>
> Charges could extend to high-level executives, according to the people.  The antitrust division, which has an immunity program to

motivate wrongdoers to confess and inform on others, has stepped up its commitment to holding individuals responsible.

* * *

Generic drug companies are also contending with a civil price-fixing investigation by Connecticut Attorney General George Jepsen. Jepsen is seeking to lead a group of states to probe the industry, which could result in cases seeking damages, according to people familiar with the matter. A spokesman for the Connecticut Attorney General's office declined to comment.

The first subpoenas in the generics investigation were issued by Connecticut in July 2014, while the Justice Department followed in November, according to regulatory filings by the companies. The investigations initially focused on mid-sized U.S. companies and have since extended to the biggest manufacturers and U.S. subsidiaries of overseas companies.

102.     On November 3, 2016, the prices of Teva's ADS, Preferred Shares and July 2016 Notes all declined.

### F.     Defendants' Failure to Exercise Reasonable Care or to Conduct a Reasonable Investigation In Connection With the Offerings

103.     As an issuer of the Offerings the Company is strictly liable for the untrue and misleading statements and omission of material facts in the Offering Materials, as described herein. Teva Finance Netherlands III is strictly liable as an issuer of the July 2016 Notes.

104.     None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were, in all material respects, accurate and complete and not misstated.

105.     Any challenged statements of opinion or belief made by any of the Defendants in connection with the Offerings are alleged to have been materially misstated statements of opinion or belief when made and at the time of the Offerings.

## <u>LEAD PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

106.    Lead Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class (defined above), consisting of all persons (subject to certain exclusions) who purchased or otherwise acquired Teva securities in domestic transactions, and were damaged thereby: (1) pursuant and/or traceable to the Secondary ADS Offering; (2) pursuant and/or traceable to the Preferred Shares Offering; and/or (3) pursuant to and/or traceable to the July 2016 Notes Offering.  Excluded from the Class are: Defendants and their families, legal representatives, heirs, agents, successors or assigns; the officers and directors of the Company and their families, legal representatives, heirs, agents, successors or assigns; Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; and any entity in which Defendants have or have had a controlling interest.

107.    The members of the Class are so numerous that joinder of all members is impracticable.  Teva ADS, Teva Preferred Shares, and the July 2016 Notes were registered with the SEC, listed on a national exchange, and/or actively traded domestically.  While the exact number of Class members is unknown to Lead Plaintiff at this time and can be ascertained only through appropriate discovery, Lead Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent, or by other means, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

108.    Lead Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the Securities Act.

109.     Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Lead Plaintiff has no interests antagonistic to or in conflict with those of the Class.

110.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members are:

- whether Defendants violated the Securities Act, as alleged herein;

- whether the Offering Materials contained untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading;

- whether the Defendants can sustain their burden of establishing an affirmative defense under the applicable provisions of the Securities Act;

- whether, with respect to claims under Section 15 of the Securities Act, the Defendants named in those claims were controlling persons; and

- whether and to what extent the members of the Class have sustained damages and, if so, the proper measure of damages.

111.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to individually seek redress for the harm done to them.   There will be no difficulty in the management of this action as a class action.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

112.   "Safe Harbor" warnings or other cautionary language accompanying Defendants' forward-looking statements in and/or incorporated into the Offering Materials were ineffective and inapplicable and cannot shield the statements at issue from liability.

113.   Defendants are also liable for any materially untrue or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was untrue or misleading and the statement was made by or authorized and/or approved by an executive officer of the Company who knew that the statement was untrue.

## COUNT ONE
### For Violations of Section 11 of the Securities Act,
### On Behalf of Purchasers and Acquirers of Teva ADS and/or Preferred Shares,
### Asserted Against the Company, the Officer Defendants, the Teva Director Defendants,
### the ADS/Preferred Underwriter Defendants, and PWC/Kesselman

114.   Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

115.   This Count is asserted against the Company, the Officer Defendants, the Teva Director Defendants, the ADS/Preferred Underwriter Defendants, and PWC/Kesselman for violations of Section 11 of the Securities Act (15 U.S.C. § 77k), on behalf of all Class members who purchased or otherwise acquired Teva ADS or Preferred Shares pursuant and/or traceable to the ADS/Preferred Offerings.

116.   The Secondary ADS Offering Materials and Preferred Shares Offering Materials contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

117.     As the issuer of the ADS, and as the issuer of the Preferred Shares, the Company is strictly liable for the untrue statements and misleading omissions of material fact in the ADS/Preferred Offering Materials, as described herein.

118.     None of the other Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the ADS/Preferred Offering Materials were true or the belief that there was no omission of material fact necessary to make the statements made therein not misleading.

119.     The Defendants named in this Count, issued, caused to be issued, and participated in the issuance of materially untrue and misleading statements to the investing public that were contained in the ADS/Preferred Offering Materials, and that misrepresented and/or failed to disclose, inter alia, the facts set forth above.

120.     Lead Plaintiff and the applicable members of the Class suffered substantial damages in connection with the purchase or acquisition of Teva ADS and/or Preferred Shares pursuant and/or traceable to the ADS/Preferred Offerings.

121.     Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this Claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

122.     When they purchased or acquired ADS and/or Preferred Shares pursuant and/or traceable to the ADS/Preferred Shares Offerings, Class members did not know, nor in the exercise of reasonable care could they have known, that the ADS/Preferred Offering Materials contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or

incorporated by reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

123.   By reason of the foregoing, the Defendants named in this Count are liable to the Lead Plaintiff, and to other Class members who purchased or acquired ADS and/or Preferred Shares pursuant and/or traceable to the ADS/Preferred Shares Offerings, for violations of Section 11 of the Securities Act.

**COUNT TWO**
**For Violations of Section 12(a)(2) of the Securities Act,**
**On Behalf of Purchasers or Acquirers of Teva ADS and/or Preferred Shares,**
**Asserted Against the Company and the ADS/Preferred Underwriter Defendants**

124.   Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

125.   This Count is asserted against the Company and the ADS/Preferred Underwriter Defendants for violations of Section 12(a)(2) of the Securities Act (15 U.S.C. § 77l(a)(2)), on behalf of Lead Plaintiff and other members of the Class who purchased or otherwise acquired Teva ADS and/or Preferred Shares, from the Company or the ADS/Preferred Underwriter Defendants, issued in the Secondary ADS and Preferred Share Offerings.

126.   The Company and the ADS/Preferred Underwriter Defendants are sellers, offerors, and/or solicitors of sales of ADS and/or Preferred Shares within the meaning of the Securities Act.

127.   As alleged herein, the ADS/Preferred Offering Materials contained and/or incorporated by reference untrue statements of material fact, and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.

128.    The ADS/Preferred Underwriter Defendants owed to Lead Plaintiff and the Class the duty to exercise reasonable care with respect to the statements contained or incorporated by reference in the ADS/Preferred Offering Materials to ensure that the statements contained or incorporated by reference therein were true and that there was no omission to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.

129.    The ADS/Preferred Underwriter Defendants did not exercise reasonable care with respect to the statements contained or incorporated by reference in the ADS/Preferred Offering Materials and did not possess reasonable grounds for believing that the ADS/Preferred Offering Materials, or the documents incorporated by reference therein, did not contain an untrue statement of material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.  Had the Defendants exercised reasonable care, they should have known of the material untrue statements and omissions alleged herein.

130.    Lead Plaintiff and other members of the Class purchased or acquired ADS and/or Preferred Shares pursuant to the ADS/Preferred Offerings, and were damaged thereby.

131.    When they purchased or acquired the ADS and/or Preferred Shares pursuant to the ADS/Preferred Offerings, Lead Plaintiff and the Class did not know, nor in the exercise of reasonable care could they have known, of the untrue statements of material fact and/or omissions of material fact in the ADS/Preferred Offering Materials.

132.    Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have elapsed between the time that the securities upon

which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

133.     By reason of the foregoing, the Company and the ADS/Preferred Underwriter Defendants are liable, under Section 12(a)(2) of the Securities Act, to Lead Plaintiff and to other Class members who purchased or acquired ADS and/or Preferred Shares pursuant and/or traceable to the ADS/Preferred Offerings.  Lead Plaintiff and these other Class members are entitled, upon tender, to recover the consideration paid, with interest thereon less the amount of any income received thereon, and/or to recover damages for securities no longer owned, for ADS and/or Preferred Shares purchased or acquired pursuant and/or traceable to the ADS/Preferred Offerings.

**COUNT THREE**
**For Violation of Section 15 of the Securities Act**
**On Behalf of Purchasers and Acquirers of Teva ADS and/or Preferred Shares,**
**Asserted Against the Officer Defendants and the Teva Director Defendants**

134.     Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

135.     This Count is brought under Section 15 of the Securities Act (15 U.S.C. § 77o), against the Officer Defendants and the Teva Director Defendants on behalf of Lead Plaintiff and members of the Class who purchased or acquired Teva ADS and/or Preferred Shares, pursuant and/or traceable to the ADS/Preferred Offerings.

136.     The Company violated Section 11 of the Securities Act by issuing the ADS/Preferred Offering Materials, which contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

137.    At all relevant times, the Officer Defendants and the Teva Director Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act. Each of the Officer Defendants and Teva Director Defendants served as an executive officer and/or director of Teva prior to and at the time of the ADS/Preferred Offerings.

138.    The Officer Defendants and the Teva Director Defendants at all relevant times participated in the operation and management of Teva, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  As officers and directors of a public company, the Officer Defendants and the Teva Director Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations.  Because of their positions of control and authority as officers or directors of Teva, the Officer Defendants and the Teva Director Defendants each had the power to control, and did control, directly or indirectly, the decision-making of the Company, including the contents of its financial statements and the contents of the ADS/Preferred Offering Materials, which contained materially untrue information and failed to disclose material facts.

139.    The Officer Defendants and the Teva Director Defendants did not exercise reasonable care with respect to the statements contained or incorporated by reference in the ADS/Preferred Offering Materials and did not possess reasonable grounds for believing that the ADS/Preferred Offering Materials did not contain an untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

140.    Lead Plaintiff and/or other members of the Class purchased or acquired Teva ADS pursuant and/or traceable to the ADS/Preferred Offerings, and were damaged thereby.

141.    When they purchased or acquired ADS and/or Preferred Shares pursuant and/or traceable to the ADS/Preferred Offerings, Lead Plaintiff and the Class did not know, nor in the exercise of reasonable care could they have known, of the untrue statements of material fact and/or omissions of material fact in the ADS/Preferred Offering Materials.

142.    Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this Claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

143.    By reason of the aforementioned conduct, each of the Officer Defendants and the Teva Director Defendants is liable, jointly and severally, to Lead Plaintiff and members of the Class under Section 15 of the Securities Act.

**COUNT FOUR**
**For Violations of Section 11 of the Securities Act,**
**On Behalf of Purchasers and Acquirers of July 2016 Notes,**
**Asserted Against All Defendants**

144.    Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

145.    This Count is asserted against all Defendants for violations of Section 11 of the Securities Act (15 U.S.C. § 77k), on behalf of all Class members who purchased or acquired July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering.

146.    The July 2016 Notes Offering Materials contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

147.    As the issuer of the July 2016 Notes, the Company and Teva Finance Netherlands III are strictly liable for the untrue statements and misleading omissions of material fact described herein.

148.    None of the other Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the July 2016 Notes Offering Materials were true or the belief that there was no omission of material fact necessary to make the statements made therein not misleading.

149.    The Defendants issued, caused to be issued, and participated in the issuance of materially untrue and misleading statements to the investing public that were contained in the July 2016 Notes Offering Materials, and that misrepresented and/or failed to disclose, inter alia, the facts set forth above.

150.    Members of the Class suffered substantial damages in connection with the purchase or acquisition of July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering.

151.    Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this Claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

152.    When they purchased or acquired the July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering, Class members did not know, nor in the exercise of reasonable care could they have known, that the July 2016 Notes Offering Materials contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or incorporated by

reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

153.    By reason of the foregoing, Defendants are liable to Class members who purchased or acquired the July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering, for violations of Section 11 of the Securities Act.

**COUNT FIVE**
**For Violations of Section 12(a)(2) of the Securities Act,**
**On Behalf of Purchasers and Acquirers of July 2016 Notes,**
**Asserted Against the Company, Teva Finance Netherlands III,**
**and the Underwriter Defendants**

154.    Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

155.    This Count is asserted against the Company, Teva Finance Netherlands III, and the Underwriter Defendants for violations of Section 12(a)(2) of the Securities Act (15 U.S.C. § 77l(a)(2)), on behalf of members of the Class who purchased or otherwise acquired July 2016 Notes, from the Company, Teva Finance Netherlands III, or the Underwriter Defendants, pursuant to the July 2016 Notes Offering.

156.    The Company, Teva Finance Netherlands III, and the Underwriter Defendants are sellers, offerors, and/or solicitors of sales of the Preferred Shares within the meaning of the Securities Act.

157.    As alleged herein, the July 2016 Notes Offering Materials contained untrue statements of material fact, and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

158.    The Underwriter Defendants owed to the Class the duty to exercise reasonable care with respect to the statements contained in the July 2016 Notes Offering Materials to ensure that

the statements contained or incorporated by reference therein were true and that there was no omission to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.

159.    The Underwriter Defendants did not exercise reasonable care with respect to the statements contained or incorporated by reference in the July 2016 Notes Offering Materials and did not possess reasonable grounds for believing that the July 2016 Notes Offering Materials, or the documents incorporated by reference therein, did not contain an untrue statement of material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.   Had the Defendants exercised reasonable care, they should have known of the material untrue statements and omissions alleged herein.

160.    Members of the Class purchased July 2016 Notes in the July 2016 Notes Offering, and were damaged thereby.

161.    When they purchased or acquired July 2016 Notes pursuant to the July 2016 Notes Offering, members of the Class did not know, nor in the exercise of reasonable care could they have known, of the untrue statements of material fact and/or omissions of material fact in the July 2016 Notes Offering Materials.

162.    Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this Claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

163.    By reason of the foregoing, the Company, Teva Finance Netherlands III, and the Underwriter Defendants are liable, under Section 12(a)(2) of the Securities Act to the members of the Class who purchased or acquired July 2016 Notes pursuant to the July 2016 Notes Offering. These Class members are entitled, upon tender, to recover the consideration paid, with interest thereon less the amount of any income received thereon, and/or to recover damages for securities no longer owned, for July 2016 Notes purchased or acquired pursuant and/or traceable to the July 2016 Notes Offering.

**COUNT SIX**
**For Violation of Section 15 of the Securities Act**
**On Behalf of Purchasers and Acquirers of the July 2016 Notes, Asserted Against**
**the Company, the Officer Defendants, the Teva Director Defendants, and**
**the Teva Finance Netherlands III Director Defendants**

164.    Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

165.    This Count is brought under Section 15 of the Securities Act (15 U.S.C. § 77o), against Teva (as control person of Teva Finance Netherlands III), the Officer Defendants, the Teva Director Defendants, and the Teva Finance Netherlands III Director Defendants, on behalf of Lead Plaintiff and members of the Class who purchased July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering.

166.    The Company violated Section 11 of the Securities Act by issuing the July 2016 Notes Offering Materials which contained and/or incorporated by reference untrue statements of material fact and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts required to be stated therein or necessary to make the statements therein not misleading.

167.    At all relevant times, the Defendants named in this Count were controlling persons, within the meaning of Section 15 of the Securities Act, of Teva and/or Teva Finance

Netherlands III.  Each of the Defendants named in this Count who are individuals served as an executive officer and/or director of Teva, or of Teva Finance Netherlands III, prior to and at the time of July 2016 Notes Offering.  At the time of the July 2016 Notes Offering, Teva was the whole owner, parent, and controller of Teva Finance Netherlands III, which itself had no operations.

168.   The Defendants named in this Count at all relevant times participated in the operation and management of Teva and/or Teva Finance Netherlands III and conducted and participated in, directly and indirectly, the conduct of those entities business affairs.  As officers and/or directors of a public company or the wholly-owned subsidiary of a public company, the individual Defendants named in this Count had a duty to disseminate accurate and truthful information with respect to the condition and results of operations of Teva and/or Teva Finance Netherlands III.  Because of their positions of control and authority as officers or directors of Teva and/or Teva Finance Netherlands III, the individual Defendants named in this Count each had the power to control, and did control, directly or indirectly, the decision-making of Teva and/or Teva Finance Netherlands III, including the contents of their respective financial statements and the contents of the July 2016 Notes Offering Materials, which contained materially untrue or misleading information.

169.   The Defendants named in this Count did not exercise reasonable care with respect to the statements contained or incorporated by reference in the July 2016 Notes Offering Materials and did not possess reasonable grounds for believing that the July 2016 Notes Offering Materials did not contain an untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

170.    Members of the Class purchased or acquired the July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering, and were damaged thereby.

171.    When they purchased or acquired July 2016 Notes pursuant and/or traceable to the July 2016 Notes Offering, members of the Class did not know, nor in the exercise of reasonable care could they have known, of the untrue statements of material fact and/or omissions of material fact in the July 2016 Notes Offering Materials.

172.    Less than one year has elapsed between the time members of the Class discovered or reasonably could have discovered the facts upon which this Count is based and the time this Claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this Securities Act Complaint was filed.

173.    By reason of the aforementioned conduct, each of the Defendants named in this Count is liable, jointly and severally, to the Class under Section 15 of the Securities Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Lead Plaintiff prays for relief and judgment as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Lead Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Lead Plaintiff and the Class by reason of the acts and transactions alleged herein or otherwise provide to Lead Plaintiff and the Class the relief required by the Securities Act;

C.   Awarding Lead Plaintiff and other members of the Class prejudgment and post-judgment interest, as well as their reasonable costs and expenses incurred in this action,

including attorneys' fees and expert fees; and

D.  Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Lead Plaintiff hereby demands a trial by jury.

DATED: AUGUST 3, 2017                    RESPECTFULLY SUBMITTED,

 /s/  *Marc J. Kurzman*
Marc J. Kurzman (ct01545)
Christopher J. Rooney (ct04027)
John L. Cordani, Jr. (ct28833)
Liam S. Burke (ct27739)
**CARMODY TORRANCE
SANDAK & HENNESSEY LLP**
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608
crooney@carmodylaw.com
mkurzman@carmodylaw.com
jcordani@carmodylaw.com
lburke@carmodylaw.com

*Local Counsel for Lead Plaintiff
Ontario Teachers' Pension Plan Board*


**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (admitted *pro hac vice*)
Joseph Fonti (admitted *pro hac vice*)
Wilson Meeks (admitted *pro hac vice*)
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
jfonti@bfalaw.com
wmeeks@bfalaw.com

*Counsel for Lead Plaintiff
Ontario Teachers' Pension Plan Board,
and Lead Counsel for the Class*

## CERTIFICATION

I, Sharon Chilcott, Director & Associate General Counsel, Employment Law & Litigation of Ontario Teachers' Pension Plan Board ("Ontario Teachers'"), hereby certify as follows:

1.     I am fully authorized to enter into and execute this Certification on behalf of Ontario Teachers'.  The securities subject to this litigation are or were held in title of and owned by Ontario Teachers'.

2.     I have reviewed the Class Action Complaint For Violation of the Securities Act of 1933, as provided for in the Court's Order entered July 27, 2017 (ECF No, 126), and have authorized its filing.

3.     Ontario Teachers' did not purchase or sell securities of Teva at the direction of counsel in order to participate in any private action under the federal securities laws.

4.     Ontario Teachers' is willing to serve as lead plaintiff in this matter, including by providing testimony at deposition and trial, if necessary.

5.     Ontario Teachers' transactions in the secondary offering of Teva American Depositary Shares and the offering of Teva's preferred shares during the Class Period are reflected in Exhibit A, attached hereto.

6.     Ontario Teachers' has not sought to serve as lead plaintiff in a class action under the federal securities laws in the last three years, other than in this instant action.

7.     Beyond its *pro rata* share of any recovery, Ontario Teachers' will not accept payment for serving as lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses including lost wages as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this ⎯3rd⎯ day of August 2017.

Sharon Chilcott
Director & Associate General Counsel,
Employment Law & Litigation
*Ontario Teachers' Pension Plan Board*

**EXHIBIT A**

TRANSACTIONS IN

<u>TEVA PHARMACEUTICAL INDUSTRIES LIMITED</u>

<u>FOR THE CLASS PERIOD OF NOVEMBER 30, 2015 THROUGH NOVEMBER 3, 2016</u>

**Teva Pharmaceutical Industries Ltd. American Depository Receipts**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 12/03/2015 | 145,000.00 | 62.50 | ($9,062,500.00) |
| Purchase | 12/03/2015 | 55,000.00 | 62.50 | ($3,437,500.00) |
| Sale | 12/17/2015 | -57,500.00 | 64.96 | $3,735,200.00 |
| Purchase | 12/23/2015 | 28,800.00 | 65.90 | ($1,897,920.00) |
| Purchase | 01/19/2016 | 15,000.00 | 61.88 | ($928,269.00) |
| Purchase | 01/19/2016 | 15,000.00 | 62.15 | ($932,313.00) |
| Purchase | 01/20/2016 | 15,000.00 | 61.00 | ($914,974.50) |
| Purchase | 01/20/2016 | 2,600.00 | 59.99 | ($155,969.58) |
| Purchase | 02/08/2016 | 12,361.00 | 56.24 | ($695,233.32) |
| Purchase | 02/11/2016 | 20,000.00 | 53.96 | ($1,079,126.00) |
| Purchase | 02/11/2016 | 15,039.00 | 55.21 | ($830,276.12) |
| Purchase | 04/01/2016 | 25,000.00 | 53.18 | ($1,329,615.00) |
| Sale | 04/05/2016 | -29,375.00 | 54.66 | $1,605,637.50 |
| Purchase | 04/12/2016 | 150,000.00 | 54.90 | ($8,234,265.00) |
| Purchase | 04/13/2016 | 127,056.00 | 54.67 | ($6,945,884.70) |
| Purchase | 04/13/2016 | 18,044.00 | 54.75 | ($987,909.00) |
| Purchase | 04/13/2016 | 4,900.00 | 54.75 | ($268,275.00) |
| Purchase | 05/02/2016 | 20,000.00 | 53.85 | ($1,077,038.00) |
| Purchase | 05/02/2016 | 8,000.00 | 53.40 | ($427,198.40) |
| Purchase | 05/06/2016 | 100,000.00 | 51.03 | ($5,103,430.00) |
| Purchase | 05/06/2016 | 17,000.00 | 51.49 | ($875,392.90) |
| Purchase | 05/06/2016 | 10,000.00 | 50.18 | ($501,803.00) |
| Sale | 06/06/2016 | -3,025.00 | 54.50 | $164,862.50 |
| Sale | 07/08/2016 | -24,000.00 | 50.60 | $1,214,400.00 |
| Purchase | 08/04/2016 | 24,000.00 | 53.80 | ($1,291,200.00) |
| Purchase | 08/09/2016 | 24,000.00 | 53.72 | ($1,289,280.00) |
| Purchase | 08/16/2016 | 36,000.00 | 53.73 | ($1,934,280.00) |
| Purchase | 08/16/2016 | 1,100.00 | 53.80 | ($59,179.45) |
| Purchase | 09/29/2016 | 25,000.00 | 46.47 | ($1,161,867.50) |

**Teva Pharmaceutical Industries Ltd. (7% Mandatory Convertible Preferred Shares)**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 12/17/2015 | 5,000.00 | 1005.00 | ($5,025,000.00) |
| Sale | 12/23/2015 | -2,500.00 | 1024.46 | $2,561,137.50 |
| Purchase | 04/05/2016 | 2,500.00 | 891.00 | ($2,227,500.00) |
| Purchase | 07/08/2016 | 2,000.00 | 844.00 | ($1,688,000.00) |
| Sale | 08/04/2016 | -2,000.00 | 888.76 | $1,777,520.00 |
| Sale | 08/09/2016 | -2,000.00 | 889.00 | $1,778,000.00 |
| Sale | 08/16/2016 | -3,000.00 | 894.11 | $2,682,330.00 |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2017, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to all parties by operation of the court's electronic filing

system or by mail to anyone unable to accept electronic filing. Parties may access this filing

through the court's CM/ECF system.

/s/  *Marc J. Kurzman*
Marc J. Kurzman (ct01545)
CARMODY TORRANCE
SANDAK & HENNESSEY LLP
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608
mkurzman@carmodylaw.com