# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, Individually and as Lead Plaintiff on behalf of all others similarly situated; and | : : : : | NO. 3:17-CV-00558 (SRU) |
| ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and as Named Plaintiff on behalf of all similarly-situated bond purchasers, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| TEVA PHARMACEUTICAL INDUSTRIES LTD.; EREZ VIGODMAN; EYAL DESHEH; YAACOV ALTMAN; ALLAN OBERMAN; SIGURDUR OLAFSSON; YITZHAK PETERBURG; DIPANKAR BHATTACHARJEE; DEBORAH GRIFFIN; TEVA PHARMACEUTICAL FINANCE NETHERLANDS III B.V; ROGER ABRAVANEL; SOL J. BARER; ARIE S. BELLDEGRUN; ROSEMARY A. CRANE; AMIR ELSTEIN; JEAN-MICHEL HALFON; GERALD M. LIEBERMAN; GALIA MAOR; JOSEPH NITZANI; ORY SHNEUR SLONIM; GABRIELLE GREENE SULZBERGER; ROBERT KOREMANS; GIANFRANCO NAZZI; JOHN NASON; DAVID VRHOVEC; BARCLAYS CAPITAL INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; BNP PARIBAS SECURITIES CORP.; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE SECURITIES (USA) LLC; HSBC SECURITIES (USA) INC.; MIZUHO SECURITIES USA LLC; MORGAN STANLEY & CO. LLC; RBC CAPITAL MARKETS, LLC; SMBC NIKKO SECURITIES AMERICA, INC.; BANK OF CHINA LIMITED LONDON BRANCH; BBVA SECURITIES INC.; COMMERZ MARKETS LLC; LLOYDS SECURITIES INC.; MUFG SECURITIES AMERICAS INC.; PNC CAPITAL MARKETS LLC; SCOTIA CAPITAL (USA) INC.; TD SECURITIES (USA) LLC; KESSELMAN & KESSELMAN d/b/a PWC ISRAEL, | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : : | DECEMBER 1, 2017 |

## UNDERWRITER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

      A.    Multiple Investigations Of High Generic Drug Prices Are Announced In 2014........................................................................................................... 3

      B.    Plaintiffs File Securities Class Action Complaints .................................... 6

ARGUMENT ....................................................................................................... 8

   I.    PLAINTIFFS HAD SUFFICIENT INFORMATION TO FILE THE FIRST AMENDED COMPLAINT WELL BEFORE AUGUST 2, 2016......................... 8

      A.    The Court Should Apply An Inquiry Notice Standard ............................... 9

      B.    Plaintiffs' Claims Are Untimely Under An Inquiry Notice Standard....... 11

      C.    Alternatively, Plaintiffs' Claims Are Untimely Even If The Court Declines To Resolve Whether *Merck* Rule Applies To The Securities Act ............ 12

   II.   A PLAINTIFF WITH STANDING TO ASSERT CLAIMS IN RESPECT OF THE SENIOR NOTES DID NOT FILE A COMPLAINT UNTIL MORE THAN ONE YEAR AFTER PLAINTIFFS' OWN IDENTIFIED CORRECTIVE DISCLOSURE ........................................................................................ 14

CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010)..................................................................15

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011)..........................................................................................13

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994)..................................................................................15

*In re Crazy Eddie Sec. Litig.*,
    747 F. Supp. 850 (E.D.N.Y. 1990) ...............................................................................16

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)......................................................................................................16

*DiMuro v. Clinique Labs., LLC*,
    572 F. App'x 27 (2d Cir. 2014) ...............................................................................17, 18

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993).....................................................................................9, 11, 13

*In re Elscint Ltd. Sec. Litig.*,
    674 F. Supp. 374 (D. Mass. 1987) ................................................................................15

*F.H.F.A. v. Nomura Holdings Am. Inc.*,
    873 F.3d 85 (2d Cir. 2017)..............................................................................................9

*Fitzgerald v. Citigroup, Inc.*,
    No. 03 Civ. 4305(DAB), 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007)....................13

*Freidus v. Barclays Bank PLC*,
    734 F.3d 132 (2d Cir. 2013)..........................................................................................12

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    793 F. Supp. 2d 637 (S.D.N.Y. 2011)...........................................................................10

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994)............................................................................................11

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..........................................................................................10

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010).................................................................................8

*Kruse v. Wells Fargo Home Mortg., Inc.*,
   No. 02-CV-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3, 2006)............................15, 16

*LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*,
   318 F.3d 148 (2d Cir. 2003).................................................................8, 9

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)...................................................................12

*Lewis v. Casey*,
   518 U.S. 343 (1996)...........................................................................16

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*,
   902 F. Supp. 2d 329 (S.D.N.Y. 2012), *aff'd, IBEW Local Union No. 58
   Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC,* 783 F.3d
   383 (2d Cir. 2015).............................................................................10

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd,* 616 F. App'x. 442 (2d. Cir. 2015)...............14

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   616 F. App'x. 442 (2d. Cir. 2015) ...........................................................14

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
   722 F. Supp. 2d 1157 (C.D. Cal. 2010) .......................................................15

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
   483 F. Supp. 2d 407 (D.N.J. 2007) ...........................................................13

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010)...................................................................... *passim*

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653(PAC), 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ............................15

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)..............................................................16, 17

*NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*,
   No. 10 Civ. 440(LAK)(HBP), 2013 WL 620257 (S.D.N.Y. Feb. 15, 2013),
   *subsequently aff'd, NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79
   (2d Cir. 2015), *cert. denied*, 136 S. Ct. 821 (2016) .......................................10

*Palmer v. Stassinos*,
   236 F.R.D. 460 (N.D. Cal. 2006)..............................................................15

iii

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    245 F. Supp. 3d 870 (S.D. Tex. 2017) ................................................................................17

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)................................................................................15

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of
    N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014).........................................................................................16, 17

*Rudman v. CHC Grp. Ltd.*,
    217 F. Supp. 3d 718 (S.D.N.Y. 2016)................................................................................13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008).........................................................................................9, 14

*Steginsky v. Xcelera, Inc.*,
    No. 3:12-cv-188 (SRU), 2015 WL 1036985 (D. Conn. Mar. 10, 2015), *aff'd*,
    658 F. App'x 5 (2d Cir. 2016) ...........................................................................................18

*Wachovia Bank & Tr. Co., N.A. v. Nat'l Student Mktg. Corp.*,
    650 F.2d 342 (D.C. Cir. 1981) ...........................................................................................11

*Walters v. Edgar*,
    163 F.3d 430 (7th Cir. 1998) .............................................................................................15

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010)..........................10, 15

*Yi Xiang v. Inovalon Holdings, Inc.*,
    No. 16-CV-4923 (VM), 2017 WL 3208042 (S.D.N.Y. July 28, 2017)...................................9

*In re Zyprexa Prods. Liab. Litig.*,
    549 F. Supp. 2d 496 (E.D.N.Y. 2008) ...............................................................................11

**Statutes**

15 U.S.C. § 77k..................................................................................................................15

15 U.S.C. § 77l...................................................................................................................15

15 U.S.C. § 77m.............................................................................................................8, 10

28 U.S.C. § 1658 ...............................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 15...............................................................................................................8

The Underwriter Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Class Action Complaint, dated September 11, 2017 (Dkt. No. 141) ("Third Amended Consolidated Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The Underwriter Defendants join and incorporate by reference the Memorandum of Law in Support of Defendants Teva, Vigodman, Desheh, Altman, Oberman, Olafsson, Peterburg, and Bhattacharjee's Motion to Dismiss ("Teva Defts. MTD") and the Memorandum of Law in Support of Teva Outside Directors' Motion to Dismiss ("Teva Dir. Defts. MTD") to the extent applicable to the claims against the Underwriter Defendants.  These arguments apply with equal force to Plaintiffs' claims against the Underwriter Defendants, which are asserted only under Sections 11 and 12(a)(2) of the Securities Act of 1933 ("Securities Act"), and are based exclusively on Teva's offerings of:  (1) American Depositary Shares on December 3, 2015 (the "ADS"), (2) 7.00% Mandatory Convertible Preferred Shares on December 3, 2015 (the "Convertible Preferreds"), and (3) six distinct senior notes issuances in July 2016 (the "Senior Notes," together with the ADS and the Convertible Preferreds, the "Offerings").

The Teva Defendants' motions to dismiss explain thoroughly why Plaintiffs have failed to state a claim under the Securities Act.  The basic theory of this case is that Teva's relevant securities offering documents were misleading because they failed to disclose that Teva was engaged in a purported price-fixing conspiracy in violation of antitrust laws.  This case fails most fundamentally because there are no well pleaded facts supporting Plaintiffs' theory.  As

---

[1] Barclays Capital Inc., Merrill Lynch, Pierce, Fenner and Smith Incorporated, BNP Paribas Securities Corp., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., Mizuho Securities USA LLC (f/k/a Mizuho Securities USA Inc.), Morgan Stanley & Co. LLC, RBC Capital Markets, LLC, SMBC Nikko Securities America, Inc., BBVA Securities Inc., Commerz Markets LLC, Lloyds Securities Inc., MUFG Securities Americas Inc., PNC Capital Markets LLC, Scotia Capital (USA) Inc., and TD Securities (USA) LLC.

explained in the Teva Defendants' motions, it is well settled that the mere fact of an investigation and/or alleged parallel pricing activities are simply not a proper basis for this Court to conclude that the misconduct Plaintiffs allege existed and should have been disclosed.  Moreover, and equally important, Plaintiffs have not plausibly alleged *facts* sufficient to establish that the alleged omitted information rendered any affirmative statement in offering documents misleading.  For these and several other reasons explained in the Teva Defendants' motions to dismiss, the Third Amended Consolidated Complaint fails to state a claim against any of the Defendants.

Nevertheless, even assuming *arguendo* that Plaintiffs have adequately pleaded Teva's participation in a price-fixing conspiracy and that its non-disclosure rendered the offering documents misleading, the very information upon which Plaintiffs rely conclusively demonstrates that all claims against the Underwriter Defendants are time-barred under the Securities Act's one-year statute of limitations.

The Underwriter Defendants were not added to this case until August 2, 2017, when Plaintiffs filed the Class Action Complaint for Violation of the Securities Act of 1933 (Dkt. No. 129) (the "First Amended Complaint").  The articles and sources relied upon by Plaintiffs in the Third Amended Consolidated Complaint were available well over a year before they sued the Underwriter Defendants and would have permitted Plaintiffs to plead the same (deficient) claims they are now attempting to bring.  These reports made clear that members of the generic drug industry, including Teva, had been under scrutiny since 2014 for their pricing of certain generic drugs, and that potential collusion was a theory being considered as an explanation for the prices of those drugs.  Even the historical drug prices—analyzed by counsel in a failing attempt to suggest there is something more to the Third Amended Consolidated Complaint's allegations

than rhetorical ruminations on stale press reports—are updated on a weekly basis and were therefore available to counsel over a year ago.

Indeed, Plaintiffs recently admitted that the Third Amended Consolidated Complaint does not contain anything "genuinely surprising" and "is fully consistent with the initial complaint filed against Teva [over] a year ago on November 6, 2016." (Dkt.162, at 5.) And yet, Plaintiffs did not file any complaint against the Underwriter Defendants until August 2, 2017. Accordingly, all of Plaintiffs' claims against the Underwriter Defendants are time-barred.

In addition, because no Plaintiff who alleges a purchase of any Senior Notes filed any claim until *September 5, 2017*, when Plaintiffs filed the Amended Class Action Complaint for Violation of the Securities Act of 1933 (Dkt. No. 138) ("Second Amended Complaint"), Plaintiffs' claims with respect to the Senior Notes are even more clearly time-barred, because September 5, 2017 was more than one year after an announcement *Plaintiffs themselves* characterize as corrective of the alleged misrepresentations, *i.e.*, the disclosure of the receipt by Teva of subpoenas from government investigators.

## STATEMENT OF FACTS

The Underwriter Defendants incorporate by reference the facts set forth in the "Background To Securities Offering" sections of the Teva Defendants' and Outside Director Defendants' motions to dismiss and state only the facts most relevant to this separate motion.

### A.    Multiple Investigations Of High Generic Drug Prices Are Announced In 2014

Plaintiffs' alleged version of events begins in January 2014, when the CEO of the National Community Pharmacists Association sent a public letter to Congress asserting that, "[o]ver the last six months, . . . many of our members across the U.S. [] have seen huge upswings in generic drug prices." ¶ 80. Nine months later, the Third Amended Consolidated Complaint alleges, Congress commenced an investigation and sent a letter to manufacturers, including

Teva, requesting information about the companies' pricing.[2]  ¶¶ 82, 84.  One month later, a congressional subcommittee held its first hearing.  ¶ 85.  Although Teva did not participate in the hearing, its alleged price increases were discussed.  (Lewis Aff., Ex. A.)[3]  As this investigation continued, members of Congress publicly requested the U.S. Government Accountability Office ("GAO") perform an audit of the pricing of seventeen generic drugs, all of which Teva manufactures.  ¶ 86.

Around the same time the congressional inquiry began, the Connecticut Attorney General ("Connecticut AG") and the United States Department of Justice ("DOJ") also began to investigate rising prices of a drug called digoxin that is manufactured by, among others, Teva. ¶ 96.  In connection with this investigation, the Connecticut AG served subpoenas on Impax Laboratories, Inc. and Lannett Company, Inc.  ¶ 96.  Later in 2014, the DOJ allegedly convened a grand jury that issued subpoenas to these same manufacturers.  ¶ 98.

The existence of these subpoenas and speculation that they related to possible collusion by competitors were widely reported at the time, including at least as early as October 2014.  At that time, the New York Times reported:  "[t]his summer . . . the Connecticut attorney general issued a subpoena to Lannett . . . to assess whether it was engaging in 'fixing, maintaining or controlling prices of digoxin' in violation of antitrust law."  (Lewis Aff., Ex. B.)  It was also well-known to the public that these investigations might expand to include the other manufacturers of digoxin and other drugs.  In November 2014, the Wall Street Journal reported

---

[2] The Congressional investigation was widely reported.  For example, on the very day it was announced, the Wall Street Journal reported that "two members of Congress have launched an investigation and asked 14 generic drug makers to provid[e] data about what lawmakers called the 'escalating prices they have been charging' for generic medicines."  Ed Silverman, *Lawmakers Probe 'Staggering' Price Hikes for Generic Drugs,* Wall St. J.: Pharmalot (Oct. 2, 2014) (Lewis Aff., Ex. D.)  The U.S. Official News also reported "an investigation into soaring generic drug prices[,]" and specifically noted Teva was among the firms under investigation.  *Congress Investigating Why Generic Drug Prices Are Skyrocketing,* U.S. Official News (Oct. 4, 2014) (Lewis Aff., Ex. E.)

[3] Attached citations to "Lewis Aff." refer to the Affirmation of Daniel C. Lewis in Support of the Underwriter Defendants' Motion to Dismiss the Consolidated Class Action Complaint, dated December 1, 2017.

that the "probe into the recent price hikes for some generic drugs appears to be widening." (Lewis Aff., Ex. C.)  An article in the publication Law 360 similarly reported that the subpoenas Lannett and Impax received from the DOJ regarding digoxin "signal[ed] a much broader federal investigation into potential Sherman Act violations in the generic pharmaceutical industry." Mark Rosman, *DOJ's Investigation Into Generic Pharma Pricing is Unusual*, Law360 (Nov. 12, 2014) (Lewis Aff., Ex. F).[4]

As these widely reported investigations of possible collusion developed, reports and industry analysts continued to describe them as targeting the entire generic pharmaceutical industry.  An April 2015 report noted that "last month, generic pharmaceutical companies in the United States received a signal that the Department of Justice's (DOJ) Antitrust Division may be widening the scope of its federal investigation . . . .  Notably, based on information available to date, the three grand jury subpoenas are aimed at obtaining documents generally related to communications and correspondence with competitors, and none of the subpoenas focus on any particular generic drug or time period."  Daniel N. Anziska & Bryan B. Lavine, *The DOJ's Generic Drug Antitrust Investigation May Be Just Beginning*, Troutman Sanders LLP (April 20, 2015) (Lewis Aff., Ex. G); *see also id.* ("Considering that the grand jury subpoenas are not focused on any particular drug or time period, the DOJ may be signaling an intent to vastly expand the reach of its investigation into numerous generic drugs and drug makers.").

---

[4] *See also* Richard Connolly, *Is the Antitrust Division Starting a Broad Investigation of Price Fixing in the Generic Pharmaceuticals Market?*, CartelCapers (Nov. 18, 2014) (Lewis Aff., Ex. H); Tracy Staton, *Generics makers, execs face potential criminal charges in U.S. pricing probe*, FiercePharma (Nov. 17, 2014) (Lewis Aff., Ex. I) ("So far, only two companies have disclosed subpoenas, but other companies may join them."); *Public Outcry Over Generic Price Hikes Spurs Criminal Investigations,* Patterson Belknap Antitrust Update (Nov. 17, 2014) (Lewis Aff., Ex. J) ("But will the criminal probe end with Impax and Lannett?  Maybe not.  In early October, U.S. Senator Bernie Sanders (I-Vt.) and U.S. Representative Elijah E. Cummings (D. Md.) wrote letters to fourteen generic drug manufacturers [including Teva] announcing they were investigating the 'staggering increases for generic drugs.'"); Ed Silverman, *Justice Department Probes Generic Companies After Price Hike Reports*, Wall St. J.: Pharmalot (Nov. 10, 2014) (Lewis Aff., Ex. C.); Michael Volkov, *Criminal Global Cartel Focus on Generic Pharmaceuticals*, Volkov Law (Nov. 25, 2014) (Lewis Aff., Ex. K) ("Given the breadth of such a potential cartel investigation, the Justice Department's inquiry of the generic pharmaceutical industry could be significant.").

As the Complaint also alleges, in the summer of 2015, the Policy and Regulatory Report reported that the DOJ investigation was expanding to trade associations of which Teva was a part.  ¶¶ 127-29.  Along with that report came news that even more generic drug manufacturers were receiving subpoenas as part of the ongoing DOJ investigation.  *See* Eric Palmer, *Actavis gets subpoena as DOJ probe of generic pricing moves up food chain*, FiercePharma (Aug. 7, 2015) (Lewis Aff., Ex. L) ("The fact that Actavis is also the fourth largest generics drugmaker to be drawn in, suggests investigators are moving up the food chain.").  Ultimately, Teva received a subpoena from the DOJ on June 21, 2016, and from the Connecticut AG on July 12, 2016, both of which were reported as part of Teva's regular reporting cycle on August 4, 2016.  Then, on December 15, 2016, Teva was named as a defendant in a civil lawsuit filed by the Connecticut AG and other Attorneys General.  ¶ 1007.

### B.    Plaintiffs File Securities Class Action Complaints

The first complaint in this litigation was filed on November 6, 2016, after the press reported that the DOJ was considering criminal charges against Teva and other companies (Dkt. No. 1) (the "Initial Complaint").  The Underwriter Defendants were not named in any complaint, however, until August 2, 2017.  (Dkt. No. 129.) .  The First Amended Complaint was filed by Ontario Teachers' Pension Plan Board ("Ontario Teachers") on August 2, 2017.  (*Id.*)  Although it included claims based on the ADS, Convertible Preferreds, and Senior Notes, neither the complaint nor the accompanying PSLRA certification alleged that Ontario Teachers purchased any Senior Notes.  *Id.*, Ontario Teachers' Certification.  Purporting to solve this problem, Plaintiffs filed the Second Amended Complaint on September 5, 2017, adding Anchorage Police & Fire Retirement System ("Anchorage") as a named plaintiff.  (Dkt. No. 138.)  Anchorage alleges it purchased only one of the six different series of Senior Notes.  *Id.*, Anchorage Certification.

The Third Amended Consolidated Complaint was then filed on September 11, 2017. (Dkt. No. 141.)  The Third Amended Consolidated Complaint alleges the offering materials for the Offerings were misleading because they failed to disclose that Teva supposedly was colluding with its competitors and therefore not operating in a competitive market or engaging in a lawful or sustainable business strategy.  ¶ 956.  The Third Amended Consolidated Complaint further alleges that the financial statements and certifications regarding internal controls were misleading because they did not disclose this conduct.  *Id*.  Finally, the Third Amended Consolidated Complaint alleges that the offering documents did not disclose that revenues were inflated by the alleged collusive conduct and that the pressure from the various (disclosed since 2014) investigations allegedly was making it more difficult to engage in the supposed collusive conduct.  ¶ 957.  These claims are based entirely on allegations drawn from the publicly announced investigations and a purported pricing analysis by Plaintiffs' counsel.  (Dkt. No. 141, at 10-11.)  There are no confidential witnesses or other allegations supporting Plaintiffs' contention that Teva engaged in collusive conduct.

Even though it has been publicly known that Teva was "implicated" in a "sweeping" investigation into potential price-fixing since 2014—indeed, Plaintiffs allege as much—the Third Amended Consolidated Complaint alleges that Teva's alleged involvement was not revealed until Teva disclosed its receipt of formal subpoenas from the DOJ and Connecticut AG on August 4, 2016.  ¶¶ 1002-03, 1007.  The Third Amended Consolidated Complaint also alleges that Teva's alleged involvement was revealed further when the DOJ's charges against two executives of a different pharmaceutical company, Heritage Pharmaceuticals, Inc., were announced in December 2016 and when those executives pleaded guilty in January 2017. ¶ 1006.  Although there is nothing in the charging documents that specifically identifies Teva,

.

Plaintiffs ask the Court to infer that Teva must have been implicated because Teva "was the dominant market participant for at least one of th[e] drugs" that was a basis for the charges of the two third-party executives.  (*Id.*)

## ARGUMENT

"No action shall be maintained" under the Securities Act "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  The relevant date for evaluating the timeliness of the claims against the Underwriter Defendants is when they were first named in a complaint by a plaintiff that plausibly alleges standing to assert claims against them.[5]  *See LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003) (date amended complaint is filed is relevant date for assessing timeliness of claims against new defendant added to consolidated amended securities class action complaint).  With respect to the ADS and Convertible Preferreds, that date is August 2, 2017, when Ontario Teachers filed the First Amended Complaint, naming underwriters.  For the senior offerings, however, that date is not until September 5, 2017, when Anchorage, the first plaintiff to allege a Senior Notes purchase, was added as a plaintiff, *see infra* at 14-18.

## I.  PLAINTIFFS HAD SUFFICIENT INFORMATION TO FILE THE FIRST AMENDED COMPLAINT WELL BEFORE AUGUST 2, 2016

Before the Supreme Court's decision in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), courts in this Circuit consistently held that the one-year statute of limitations applicable to Securities Act claims, which is set forth in Section 13 of the Securities Act, is triggered by

---

[5] Plaintiffs cannot argue that the addition of the Underwriter Defendants relates back to the Initial Complaint because the three requirements of Federal Rule 15(c)(1) are not satisfied.  *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 545-46 (2010).  Specifically, Plaintiffs cannot meet the second and third requirements of the rule: Plaintiffs' failure to name the Underwriter Defendants in the Initial Complaint was not the result of a mistake and the Underwriter Defendants had no knowledge, actual or constructive, of the claims Plaintiffs only now attempt to assert. Fed. R. Civ. P. 15(c)(1)(B) and (C).

"inquiry notice." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 (2d Cir. 1993).  Under this standard, the one-year period begins to run when public information, sometimes referred to as "storm warnings," would lead a reasonable investor to investigate potential claims.  *Id.*; *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 434 (2d Cir. 2008).  If a plaintiff fails to demonstrate it undertook such an investigation, knowledge will be imputed to it and the one-year period will be deemed to begin as of the date of the storm warnings.  *Staehr*, 547 F.3d at 426 (citing *LC Capital Partners*, 318 F.3d at 154).

In *Merck*, the Supreme Court held that the statute of limitations applicable to claims under Section 10(b) of the Exchange Act is subject to a "discovery rule."  559 U.S. at 647. District courts in this Circuit have split on whether the discovery rule it announced also applies to Section 13 of the Securities Act, and the Second Circuit has not yet opined on the applicable standard.[6]  *See Yi Xiang v. Inovalon Holdings, Inc.*, No. 16-CV-4923 (VM), 2017 WL 3208042, at *3-5 (S.D.N.Y. July 28, 2017) (discussing conflicting authority).

The Underwriter Defendants respectfully submit that the Court should join with those courts that have concluded that inquiry notice remains the standard for Securities Act claims, and further hold that Plaintiffs' claims are time-barred because they were on inquiry notice of their claims against the Underwriter Defendants as a result of the numerous articles and public records tying Teva to the generic drug pricing investigations as early as 2014 and 2015.

### A.    The Court Should Apply An Inquiry Notice Standard

There are good reasons why this Court should apply an inquiry rule to the Securities Act claims, rather than the discovery rule that applies to claims under the Exchange Act.  *First*, as the

---

[6] In *F.H.F.A. v. Nomura Holdings Am. Inc.*, the Second Circuit did not decide whether *Merck* applies to claims under the Securities Act, but instead assumed *arguendo* it applied because the parties to the appeal did not argue otherwise.  873 F.3d 85, 119 n.37 (2d Cir. 2017).  As discussed herein, *Merck* should not be applied to claims under the Securities Act, *see* Section I.A., but the outcome in this case does not depend on that conclusion, *see* Section I.C.

Second Circuit has observed, the decision in *Merck* was limited to "the context of" Section 10(b) of the Exchange Act, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149-50 (2d Cir. 2012), and to the specific language of that statute of limitations, which refers only to "the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1).  This differs from the language of Section 13, which hinges either on "the discovery of the untrue statement or the omission" or the time "after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  Other courts have found this to be significant and a reason why Section 13 should remain subject to an inquiry notice rule.  *See, e.g.*, *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 648 (S.D.N.Y. 2011) (concluding result in *Merck* was "based on the precise language of that statute"); *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, No. 10 Civ. 440(LAK)(HBP), 2013 WL 620257, at *7 (S.D.N.Y. Feb. 15, 2013) (same), *subsequently aff'd*, *NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 821 (2016); *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 345 n. 11 (S.D.N.Y. 2012) (same), *aff'd*, *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015).

*Second*, as Justice Scalia explained in his concurring opinion in *Merck*, there is a "good reason" to treat the Exchange Act and Securities Act statutes of limitations differently.  599 U.S. at 657 (Scalia, J., concurring).  Namely, the factual allegations required to state a Section 10(b) claim, which sounds in fraud and requires scienter, are harder to "discover" than are the factual allegations required to state Section 11 or 12(a)(2) claims, which generally require only the identification of a material misrepresentation or omission.  *Id.*; *see, e.g., In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2010 WL 4117477, at *7 n.8 (N.D.

Cal. Oct. 19, 2010) ("The Court in *Merck* was applying the statute of limitations for fraud claims. Such claims include an element of scienter not required for [Section 11 and 12(a)(2) claims]".).

*Finally*, given the broad scope of the Securities Act, its strict liability standards, and the severe consequences of a violation, the Second Circuit generally recognizes that the more generous statute of limitations applicable to Section 10(b) claims does not apply to Section 11 and 12(a)(2) claims, lest courts "skew the legislative balance of interests . . . to the lower threshold of liability applicable to" Securities Act claims. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994); *see also Wachovia Bank & Tr. Co., N.A. v. Nat'l Student Mktg. Corp.*, 650 F.2d 342, 356 (D.C. Cir. 1981) (Section 13 properly viewed as "short and strict").

### B.    Plaintiffs' Claims Are Untimely Under An Inquiry Notice Standard

Plaintiffs' claim is that the offering documents were misleading because they failed to disclose that Teva was colluding with its competitors to fix prices for generic drugs.  ¶ 956. These allegations are based on (i) announced investigations and news reports that began in 2014 and explored rising generic drug prices, and (ii) Plaintiffs' purported pricing analysis of various generic drugs that Teva manufactures.  *See, e.g.*, ¶¶ 80-100, 134-250.

As discussed above, the prominent news articles, numerous industry analyses, and well-publicized public hearings before Congress in 2014 and 2015 constitute "storm warnings" that put reasonable investors on inquiry notice of potential claims significantly before August 2016. *Dodds*, 12 F.3d at 349.  While "[e]ven a single news article can provide sufficiently strong omens to place a plaintiff on notice of the need for investigation," in the instant matter, Plaintiffs had repeated reports that discussed in great detail Teva's potential for being swept into the investigations.  *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 534 (E.D.N.Y. 2008).

.

In particular, reports on the investigations that have been published since 2014, including those relied on in the Third Amended Consolidated Complaint, described investigators as focused on potential collusion by generic drug manufacturers and reported that Teva was or was likely to be a subject. *See supra* at 3-6. In addition, the pricing information used to complete Plaintiffs' so-called pricing analysis was available and updated on a weekly basis. *See* Medicaid.gov, *National Average Drug Acquisition Cost ("NADAC")*, https://www.medicaid.gov/medicaid/prescription-drugs/pharmacy-pricing/index.html ("NADAC data is updated on a weekly basis."). Because there were omens in the form of repeated reports discussing in great detail Teva's potential for being swept into the investigations more than one year before Plaintiffs' complaint, their claims are untimely. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) ("[Courts] can readily resolve the [statute of limitations] issue on a motion to dismiss, and have done so in a vast number of cases.") (internal quotation omitted).

**C.    Alternatively, Plaintiffs' Claims Are Untimely Even If The Court Declines To Resolve Whether *Merck* Rule Applies To The Securities Act**

Alternatively, the Court does not need to resolve whether an inquiry notice or *Merck* standard applies in order to dismiss Plaintiffs' claims as untimely. As discussed in the Teva Defendants' motion to dismiss, the "constellation of facts" relied on in the Third Amended Complaint is not enough to state a claim under the Securities Act. *See Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138-39 (2d Cir. 2013) (declining to decide whether *Merck* applies to claims brought under Securities Act and instead looking to "constellation of facts" forming basis of

12

plaintiffs' claims).[7] Even if the Court were to conclude otherwise, that same "constellation of facts" was available to Plaintiffs well before August 2016 as discussed above.

Plaintiffs may argue that the news reports one year before August 2017 were not enough because Teva had not yet disclosed receipt of subpoenas from the DOJ or Connecticut AG, press reports claiming that the DOJ was considering filing charges against Teva, and/or because the DOJ had not yet charged the two Heritage executives. *See* ¶¶ 818-21, 833-37. As discussed in the Teva Defendants' motions to dismiss, the mere receipt of subpoenas is not a basis for a securities claim. Teva Defs. MTD § I.B.2.b; Teva Dir. Defs. MTD § I.C.2. But even if one were to assume (incorrectly) that it were a basis for a securities claim, Teva's receipt of subpoenas merely confirmed what industry analysts and the media had been reporting for over a year. *See supra*, at 3-6. Likewise, the press reports in November 2016 claiming that the DOJ was considering filing charges against Teva—which it still has not done—was not new information. Indeed, as Plaintiffs acknowledge, the market had been speculating that the generic drug investigation would be similar to the auto industry investigation that resulted in billions of dollars in fines and jail time for many executives since as early as 2015 and that it was therefore inevitable that Teva would receive a subpoena. ¶ 109.

---

[7] That the Offerings did not occur until December 2015 and then July 2016 is irrelevant. Courts within this Circuit and others have repeatedly found that the statute of limitations under the Securities Act accrues on the date of a security's purchase where investors were on notice of the alleged misstatements at the time of the offering or beforehand. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 176 (2d Cir. 2011) (explaining that the securities fraud statute of limitations accrues "after the plaintiff actually purchases . . . the relevant security" when facts about alleged misrepresentations came to light before the purchase); *Dodds*, 12 F.3d at 352 (finding that an investor's claims regarding the risky nature of certain securities were time-barred due to "constructive notice of facts sufficient to create a duty to inquire further into that matter" prior to her purchase); *Fitzgerald v. Citigroup, Inc.*, No. 03 Civ. 4305(DAB), 2007 WL 582965, at 7 (S.D.N.Y. Feb. 23, 2007) (determining that a prospectus "disclosure should have led a reasonable investor to inquire further about the differing commission rates between the classes . . . [and] [t]hus [the plaintiff was on notice of the allegedly fraudulent commission structure] from the time of receipt of the Prospectus"); *Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 725 (S.D.N.Y. 2016) (finding that information regarding a revenue decrease made available to the public meant "Plaintiffs could have alleged the fact in a complaint at the time of the IPO or shortly thereafter"); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 483 F. Supp. 2d 407, 419-25 (D.N.J. 2007) (pre-offering news coverage regarding FDA Warning Letter "reinforce[d] the Court's conclusion that a reasonable investor of ordinary intelligence would have recognized . . . warnings of troubles at Merck bearing on his or her investments").

13

.

Nor did the two charging documents and plea agreements by Heritage executives reveal anything new.  ¶ 833.  Recognizing that none of these documents references Teva, Plaintiffs ask the Court to infer that the charged executives must have colluded with Teva because they pleaded guilty to collusion with respect to Doxycycline Hyclate and Glyburide, two drugs that Teva also manufactures.  ¶ 104.  Leaving aside that those guilty pleas do not mention, let alone implicate, Teva or any of the Individual Defendants, *see* Teva Defts. MTD § I.B.3.b.1, the market was already aware in 2014 that the government was investigating Doxycycline Hyclate because it was one of the drugs Congress had publicly asked the GAO to audit.  (Lewis Aff., Ex. M.)  And, although Glyburide was not also mentioned in these earlier disclosures, "the statute of limitations for Securities Act claims is not somehow tolled until the appearance of disclosures that perfectly match the allegations that a plaintiff chooses to include in its complaint."  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 302 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442, 447 (2d Cir. 2015) ("[W]e have never permitted the statute of limitations to be tolled until a company's disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint."); *see also Staehr*, 547 F.3d at 427 (applying "totality-of-the-circumstances" analysis to determine when statute of limitations begins to run and observing that disclosures do not need to "detail every aspect of the alleged fraudulent scheme").

## II.   A PLAINTIFF WITH STANDING TO ASSERT CLAIMS IN RESPECT OF THE SENIOR NOTES DID NOT FILE A COMPLAINT UNTIL MORE THAN ONE YEAR AFTER PLAINTIFFS' OWN IDENTIFIED CORRECTIVE DISCLOSURE

Even if the Court were to conclude that Plaintiffs did not have essentially all of the facts that they have now before August 2, 2016, the Court still should find claims asserted on behalf of purchasers of Senior Notes are time-barred.  No plaintiff with standing to assert those claims did so until Anchorage was added as a plaintiff on September 5, 2017.  That was more than one year

after Teva's August 4, 2016 disclosure that it had received subpoenas from the DOJ and

Connecticut AG, which the Third Amended Consolidated Complaint itself alleges was corrective

of the alleged misrepresentations.   ¶¶ 818-21.

Ontario Teachers plainly lacked standing to sue in respect of the Senior Notes because it

does not allege that it purchased them.  (Dkt. No. 129 at 50.)  Indeed, Section 11(a) creates a

cause of action only for "any person acquiring such security," 15 U.S.C. § 77k(a), and Section

12(a) limits liability of a seller only "to the person purchasing such security from him . . ."  15

U.S.C. § 77l(a)(2)(b).  Because Ontario Teachers did not purchase any Senior Notes and

therefore lacked standing to sue based on those securities, "the filing of [their] class action

complaint d[id] not toll the statute of limitations for other members of the purported class."  *In re

Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994); *see also N.J. Carpenters

Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653(PAC), 2010 WL 6508190, at *2

(S.D.N.Y. Dec. 15, 2010) (tolling rules "should not apply where the plaintiff that brought the

dismissed claim was found by the court to lack standing.  In short, where a Plaintiff lacks

standing—there is no case.") (internal citations omitted); *Pub. Emps.' Ret. Sys. of Miss. v.

Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) (same); *Kruse v. Wells Fargo

Home Mortg., Inc.*, No. 02-CV-3089 (ILG), 2006 WL 1212512, at *4-7 (E.D.N.Y. May 3, 2006)

(same).[8]

The relevant date for the statute of limitations with respect to the Senior Notes is

therefore September 5, 2017, when Anchorage was added as a plaintiff.  Any other conclusion

---

[8] *See, e.g.*, *Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998) (Posner, J.); *Palmer v. Stassinos*, 236 F.R.D. 460, 464-66 (N.D. Cal. 2006); *In re Elscint Ltd. Sec. Litig.*, 674 F. Supp. 374, 377-79 (D. Mass. 1987); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166-67 (C.D. Cal. 2010); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2010 WL 4117477, at *7-8 (N.D. Cal. Oct. 19, 2010); *Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates*, 748 F. Supp. 2d 1246, 1252-54 (W.D. Wash. 2010).

would "condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule." *Kruse*, 2006 WL 1212512, at *6 (internal citation omitted); *see In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) ("There appears to be no good reason to encourage bringing of a suit merely to extend the period in which to find a class representative.").  Because this was more than one year after Plaintiffs had information sufficient to make the same claims that they have asserted in the Third Amended Consolidated Complaint (*e.g.*, the disclosures of investigations into possible pricing collusion and the incremental disclosure of the subpoenas from the DOJ and Connecticut AG) the claims in respect of the Senior Notes are untimely.

Plaintiffs may argue that the claims are timely because Ontario Teachers' had "class standing" to bring claims on behalf of the Senior Notes purchasers as part of its class action lawsuit, even though it did not actually purchase Senior Notes.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA*").  But that would misread *NECA* and exceed the bounds of Supreme Court precedent regarding standing.  The Supreme Court has made clear that standing is claim-specific, *i.e.*, a plaintiff "must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006).  That is true in both individual and class actions; "[t]hat a suit may be a class action … adds nothing to the question of standing."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation omitted).

Moreover, the Second Circuit itself has construed *NECA* narrowly, noting that the case involved a unique "confluence" of factors.  *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) ("*BNY Mellon*").  In

16

.

*NECA*, the named-plaintiff fund attempted to assert on behalf of a class claims based on securities issued in seventeen different offerings after having purchased securities in only two of those offerings.  693 F.3d at 162.  The offering documents, however, involved "nearly identical [alleged] misrepresentations" found in, among other things, a common shelf registration statement, and the claims were asserted against the same group of affiliated defendants.  *Id.*  As the Second Circuit observed in *BNY Mellon*, "the absent class members' claims were similar to those of the named plaintiff *in all essential respects*."  775 F.3d at 161 (emphasis added).  Even then, the plaintiff in *NECA* was not permitted to assert claims on behalf of purchasers in ten of the offerings that could turn on "different proof" than was necessary to establish liability for the two offerings in which the plaintiff actually participated.  *NECA*, 693 F.3d at 163-64; *see also BNY Mellon*, 775 F.3d at 163 (class standing is inappropriate when the claims at issue involve differences in proof even where the named plaintiffs "could augment the evidence that they would otherwise rely upon to prove their own claims").

Unlike the offerings in *NECA*, the ADS and Convertible Preferreds do not share a common shelf registration statement with the Senior Notes (Lewis Aff. Ex. N), the alleged misrepresentations were made almost seven months apart, and there are different groups of underwriters for the two offerings.  A district court facing similar circumstances rejected an argument for class standing because the Securities Act claims involved "a rotating cast of underwriters" and "each statement was made at a different time."  *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 929 (S.D. Tex. 2017).  In doing so, the court reasoned that "the 'class standing' claims are not asserted against the same defendants as the claims for which the plaintiffs have individual standing, and will require different evidence to prove," including with respect to possible due-diligence defenses.  *Id.* at 932; *see also DiMuro v. Clinique Labs.,*

*LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (class standing inappropriate where "unique evidence" would be required to prove claims regarding multiple products that each had "different ingredients" and about which "different advertising claims," alleged to be false, were made); *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188 (SRU), 2015 WL 1036985, at *12 (D. Conn. Mar. 10, 2015) (no class standing where named plaintiff's claims "could turn on different proof" than claims for broader class), *aff'd*, 658 F. App'x 5 (2d Cir. 2016).

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in the Teva Defendants' and the Outside Directors' motions to dismiss to the extent applicable to the claims against the Underwriter Defendants, the Third Amended Consolidated Complaint should be dismissed with prejudice in its entirety as to the Underwriter Defendants.

Dated:   December 1, 2017

Respectfully submitted,

By:  */s/ Daniel C. Lewis*
Adam S. Hakki (phv09223)
Daniel C. Lewis (phv09222)
SHERMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212-848-4000
Fax: 212-848-7179
Email: adam.hakki@shearman.com
Email: daniel.lewis@shearman.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone: 860-275-0100
Fax: 860-275-0343
Email: jmueller@daypitney.com

*Counsel for the Underwriter Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 1, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)