## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, Individually and as Lead Plaintiff on behalf of all others similarly situated; and ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and as Named Plaintiff on behalf of all similarly-situated bond purchasers,<br><br>      Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD., *et al.*,<br><br>      Defendants. | Civ. A. No. 3:17-cv-00558 (SRU)<br>CONSOLIDATED with<br>Civ. A. No. 3:17-cv-00559 (SRU)<br><br><br><br><br><br><br><br>DECEMBER 1, 2017 |

## MEMORANDUM OF LAW IN SUPPORT OF THE TEVA
## SECURITIES ACT-ONLY DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND TO SECURITIES OFFERING ............................................................... 3

ARGUMENT ....................................................................................................................... 5

I.     PLAINTIFFS FAIL TO STATE A CLAIM
UNDER SECTIONS 11 AND 12 OF THE SECURITIES ACT ................................ 5

    A.    Plaintiffs' Sections 11 And 12 Claims Are Time-Barred ..................................... 5

    B.    Plaintiffs' Sections 11 And 12 Claims
"Sound In Fraud" And Should Be Dismissed Under Rule 9(b)............................. 5

    C.    Plaintiffs Fail Sufficiently To
Identify Any Actionable Statement Or Omission Of Material Fact ..................... 8

        1.    Plaintiffs Fail Sufficiently To
Allege Any Actionable Misrepresentation................................................. 8

        2.    Plaintiffs Fail Sufficiently To Identify An Actionable Omission
In Contravention Of An Affirmative Legal Disclosure Obligation ......... 10

        3.    Plaintiffs Fail Sufficiently To Allege
An Omission Of Information That Is Necessary
To Prevent Existing Disclosures From Being Misleading...................... 12

    D.    Plaintiffs Fail Adequately To Plead Any Underlying Antitrust Violation .......... 13

    E.    Plaintiffs Fail To Plead Specific Facts
Showing That Defendants Violated GAAP ....................................................... 14

II.    PLAINTIFFS FAIL TO STATE A CLAIM
UNDER SECTION 15 OF THE SECURITIES ACT .................................................. 15

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017) ...........................................................................9

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y 2006)..........................................................................7, 8, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................14

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014).............................................................................................5, 11

*In re Coty Inc. Sec. Litig.*,
   No. 14-cv-00919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)............................................9

*In re Gentiva Sec. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................................................................8

*Hutchison v. Deutsche Bank Sec. Inc.*,
   647 F.3d 479 (2d Cir. 2011)..................................................................................................15

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007)....................................................................................9

*Johnson v. NYFIX, Inc.*,
   399 F. Supp. 2d 105 (D. Conn. 2005)....................................................................................7

*Johnson v. Sequans Commc'ns S.A.*,
   No. 11-cv-06341, 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ..............................................9

*In re Lions Gate Entm't Corp. Sec. Litig.*,
   165 F. Supp. 3d 1, 12-13 (S.D.N.Y. 2016) ..........................................................................12

*Malin v. XL Capital, Ltd.*,
   312 F. App'x. 400 (2d Cir. 2009) .........................................................................................15

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013)..................................................................................................14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   289 F. Supp. 2d 429 (S.D.N.Y. 2003)...................................................................................10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010).............................................................................. *passim*

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................9

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................................5, 6

*In re Ultrafem Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)....................................................................7

## INTRODUCTION

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendants Teva Pharmaceutical Finance Netherlands III B.V. ("Teva Finance"), Deborah Griffin, Roger Abravanel, Sol J. Barer, Arie S. Belldegrun, Rosemary A. Crane, Amir Elstein, Jean-Michel Halfon, Gerald M. Lieberman, Galia Maor, Joseph Nitzani, Ory Schneur Slonim, Gabrielle Greene Sulzburger, Dr. Robert Koremans, Gianfranco Nazzi, John Nason, and David Vrhovec (with Teva Finance, the "Teva Securities Act-Only Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Consolidated Class Action Complaint (the "Complaint") in its entirety, with prejudice.[1]

## PRELIMINARY STATEMENT

This brief is filed to emphasize the fundamental reasons that compel dismissal of all claims asserted against the Teva Securities Act-Only Defendants in this action. To avoid repetition, the Court is respectfully referred to the Preliminary Statement and Background sections set forth in the Memorandum of Law in Support of Defendants Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company"), Erez Vigodman, Eyal Desheh, Yaacov "Kobi" Altman, Allan Oberman, Sigurdur Olafsson, Yitzhak Peterburg, and Dipankar Bhattacharjee's (the "Teva Management Defendants") Motion to Dismiss (the "Teva Principal Brief"). Also incorporated herein are the arguments in that brief that lend further support to the Teva Securities Act-Only Defendants' Motion to Dismiss. Additional background facts and arguments specific

---

[1] Plaintiffs have asserted claims against Teva Pharmaceutical Industries Ltd., Teva Finance, and twenty-three current and former officers and directors of Teva, among others. Plaintiffs asserted claims under the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), and Israeli securities law against eight of those defendants, who have filed a separate brief in support of their motion to dismiss. Plaintiffs asserted claims only under the Securities Act against seventeen Teva-related defendants, and this brief is filed on their behalf.

to the Securities Act claims are set forth below.

Plaintiffs have asserted claims against the Teva Securities Act-Only Defendants solely under §§ 11, 12, and 15 of the Securities Act.  These claims are based on offering materials filed in connection with two Teva securities offerings whose net proceeds were used to partially finance Teva's acquisition of Allergan Generics (known as "Actavis").  Compl. ¶¶ 931-34, 943, 955.  In particular, these claims are based on alleged misstatements and omissions in Teva's quarterly and annual financial reports (Forms 6-K and 20-F), which were incorporated by reference in those offering materials.  *See* Compl. ¶¶ 956-1001.

Plaintiffs' Securities Act claims are copied-and-pasted nearly verbatim from their Exchange Act claims.  Plaintiffs' Securities Act claims are based on the same allegations of fraud as their Exchange Act claims—that certain statements were false or misleading in that Teva failed to disclose its alleged collusion "with competitors to allocate customers and market share, rig bids, fix, inflate, and maintain prices, and manipulate the market for generic drugs in the United States."  Compl. ¶ 956.  With only one immaterial exception, every statement challenged in Plaintiffs' Securities Act claims is already the subject of Plaintiffs' Exchange Act claims.  This is because Plaintiffs' Securities Act claims challenge only statements in Teva's quarterly and annual financial reports (Forms 6-K and 20-F)—the same reports that underlie Plaintiffs' Exchange Act claims—which were incorporated by reference into the offering materials.  *See* Compl. ¶¶ 956-1001.  Just as with their Exchange Act claims, Plaintiffs challenge these statements using the same laundry list of accusations that Plaintiffs want this Court to apply to every challenged statement.  *See* Compl. ¶¶ 537, 579, 638, 712, 725, 956.

Given these pleading defects, it should come as no surprise that Plaintiffs' Securities Act claims are subject to dismissal on several grounds.  First, for the reasons set forth in the

Underwriter Defendants' memorandum of law in support of their motion to dismiss, Plaintiffs' Securities Act claims are time-barred.  Second, because Plaintiffs' Securities Act claims sound in fraud, those claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, which Plaintiffs fail to meet, and they should be dismissed for that reason as well. Third, Plaintiffs' §§ 11 and 12(a)(2) claims also fail for several of the same reasons as their § 10(b) claims: (1) Plaintiffs have failed sufficiently to identify any false misrepresentation or actionable omission; and (2) Plaintiffs have failed adequately to plead that Defendants engaged in the alleged antitrust violations that serve as the predicate for Plaintiffs' Securities Act claims.

## BACKGROUND TO SECURITIES OFFERING

On July 27, 2015, Teva announced in a Form 6-K that it had entered into a definitive agreement with Allergan Plc ("Allergan") to acquire its worldwide generic pharmaceuticals business, Actavis, for $40.5 billion in cash and equity.  Compl. ¶ 333.  Allergan would receive $6.75 billion in American Depositary Shares ("ADS") and the remaining $33.75 billion in cash. *Id.* ¶ 334.  The Actavis deal closed on August 2, 2016.  *Id.* ¶ 382.  Teva funded the cash payment to Allergen through a loan from its loan facility, borrowing under its syndicated revolving credit, and two offerings.  *Id.* ¶ 383.

On November 30, 2015, Teva filed a Form 6-K announcing that it was commencing a public offering of approximately $3.375 billion in ADS and approximately $3.375 billion in preferred shares (the "ADS/Preferred Offering"). *Id.* ¶ 935.  The ADS/Preferred Offering was made pursuant to a prospectus and related prospectus supplements constituting part of Teva's shelf registration statement filed on November 30, 2015; a registration statement for the ADS filed on November 30, 2015; a preliminary prospectus filed on November 30, 2015; and final prospectuses, a free writing prospectus, and a pricing term sheet filed on December 3, 2015 (the "ADS/Preferred Offering Materials").  *Id.* ¶¶ 935-38.  These materials expressly incorporated by

- 3 -

reference many public disclosures Teva had made during the preceding year, including the 2014 Form 20-F and numerous Form 6-K reports.  *Id.* ¶ 960.  The ADS/Preferred Offering closed on December 8, 2015, with Teva raising $3.375 billion through the offering of ADS and $3.375 billion through the offering of Preferred Shares.  *Id.* ¶ 939.  Teva's net proceeds were approximately $3.29 billion from the ADS Offering and $3.29 billion from the Preferred Offering.  *Id.*

On or about July 13, 2016, Teva announced the acceleration of a planned debt offering (the "Notes Offering").  *Id.* ¶ 945-46.  The Notes Offering was made pursuant to an amendment to Teva's shelf registration statement filed on July 13, 2016; a preliminary prospectus supplement filed on July 15, 2016; a final Notes Prospectus filed on July 19, 2016; and two free writing prospectuses filed on July 19, 2016 (the "Notes Offering Materials" and, together with the ADS/Preferred Offering Materials, the "Offering Materials").  *Id.* ¶¶ 948-52.  The Notes Offering closed on July 21, 2016, with Teva raising $15 billion through the offering of a series of Senior Notes.  *Id.* ¶ 953.  Teva's net proceeds were approximately $14.9 billion from the Notes Offering.  *Id.*

The Offering Materials incorporated by reference prior disclosures, including Teva's 2015 Form 20-F and numerous Form 6-K reports.  *Id.* ¶ 983.  Plaintiffs' Securities Act claims are based on statements in these Forms 20-F and 6-K (incorporated by reference into the Offering Materials), and with only one immaterial exception (discussed below),[2] every statement challenged by Plaintiffs in their Securities Act claims is already the subject of Plaintiffs' Exchange Act claims.  *See* Compl. ¶¶ 956-1001.

---

[2] *See infra* 12 n.7.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 11 AND 12 OF THE SECURITIES ACT.

#### A.   Plaintiffs' Sections 11 And 12 Claims Are Time-Barred.

For the reasons set forth in the Underwriter Defendants' memorandum of law in support of their motion to dismiss, which are incorporated herein by reference, Plaintiffs' Securities Act claims are time-barred.  They are subject to dismissal for that reason alone.  Even if those claims were not time-barred—and they are—they are also legally defective for the several additional reasons below, each of which is independently dispositive of Plaintiffs' Securities Act claims.

#### B.   Plaintiffs' Sections 11 And 12 Claims "Sound In Fraud" And Should Be Dismissed Under Rule 9(b).

Plaintiffs Section 11 and Section 12 claims sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard, which Plaintiffs fail to meet.  Although fraud is not a necessary element of Section 11 or Section 12(a)(2) claims, the heightened pleading standard of Rule 9(b) nevertheless applies where, as here, such claims sound in fraud.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud."); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("In assessing § 11 claims, we conduct a preliminary inquiry into whether plaintiffs' allegations are premised on fraud, or merely on negligence, to determine the appropriate pleading standard."); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) ("Where the claims are 'premised on allegations of fraud,' the allegations must satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.").  And where claims sound in fraud but fail to satisfy Rule 9(b)'s strict pleading standard, they are appropriately dismissed.  *See Rombach*, 355 F.3d at 175.

The heightened pleading requirement for fraud allegations serves an important purpose: it helps "to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Id.* at 171. Fraud allegations pose the same reputational consequences whether or not a plaintiff's cause of action requires proof of fraud, and hence raise similar strike-suit concerns. *See id.* ("Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case.") (citation omitted). Thus, if (1) "the wording and imputations of the complaint are classically associated with fraud," or (2) "[t]he same course of conduct" is alleged in support of both the § 10(b) claim and the §§ 11 or 12(a)(2) claims, all the claims are subject to Rule 9(b). *Id.* at 171-72. Both conditions are met in this case.

First, the Plaintiffs' Securities Act allegations are worded and framed to accuse Defendants of fraud explicitly and implicitly—and in even more inflammatory terms than the language that supported heightened pleading in *Rombach*. *See Rombach*, 355 F.3d at 172 (finding words such as "inaccurate," "misleading," "untrue," and "false" to be language "classically associated with fraud"). Plaintiffs here claim that Teva and Defendants Vigodman, Desheh, and Peterburg "categorically, and **fraudulently**, stated that: 'In the United States, we are subject to intense competition. . . .'" and "repeatedly and **falsely** asserted, with ever increasing force and **fraudulent conviction**, that Teva was profiting from competition on the merits." Compl. ¶¶ 13-14 (emphasis added).[3] They further claim that Teva's value "had been a **fraud**" and the result of "**deception**." *Id.* ¶ 23 (emphasis added). Moreover, the Complaint's Securities Act allegations echo the inflammatory accusation that Teva committed "**fraud** . . . on an almost

---

[3] The Securities Act claims expressly incorporate by reference the allegations in Sections I-IV (¶¶ 1-60) of the Complaint. *See* Compl. ¶¶ 1013, 1024, 1035, 1044, 1055, 1066.

unimaginable scale." *Id.* ¶ 9 (emphasis added).  Plaintiffs further accuse Defendants, repeatedly, of "concealing" the truth and "not disclos[ing] known trends." *Id.* ¶¶ 19, 21, 956-57, 1002, 1011.

Second, apart from this language, Plaintiffs' Securities Act claims are based on the very same alleged course of conduct and the very same statements as the Exchange Act claims.  To be sure, the Complaint tries to obscure the similarity by separating out its Securities Act and Exchange Act allegations to make them seem distinct.  But it is apparent that virtually all of the allegations in the Complaint's Securities Act section were copied-and-pasted from the Exchange Act section.[4]  "Because the sole allegations supporting the falsity element of the Section 11 and Section 12(a)(2) claims are all inextricably intertwined with the allegations underlying plaintiffs' fraud claims against [Defendants], these claims undisputedly sound in fraud."  *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y 2006) (citation omitted).

Given Plaintiffs' overt accusations of fraud and the unjustified reputational harm that those accusations inflict on Defendants, the Complaint's boilerplate disclaimers lack any legal import.[5]  When, as in this case, there is no substantive distinction between a plaintiff's §§ 11 or 12 claims and its § 10(b) claims, such boilerplate efforts to lighten the pleading requirements are ineffective.  *See, e.g.*, *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 121-22 (D. Conn. 2005) ("[C]ourts need not accept assertions in a complaint that a section 11 claim is not premised on fraud."); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) ("[P]laintiffs' boilerplate disclaimer is not enough to make out a claim for negligence, and, therefore, Rule 9(b)

---

[4] *Compare* Compl. ¶¶ 962-71, *with id.* ¶¶ 571-76, 736, 740-42; *id.* ¶¶ 972-74, *with id.* ¶¶ 586-88; *id.* ¶¶ 975-77, *with id.* ¶¶ 596-98; *id.* ¶¶ 978-80, *with id.* ¶¶ 607-09; *id.* ¶¶ 985-94, *with id.* ¶¶ 624-29, 736, 738, 740-42; *and id.* ¶¶ 995-97, *with id.* ¶¶ 646-48.

[5] Compl. ¶ 2 ("Lead Plaintiff and Anchorage assert strict liability, negligence, and claims which do not sound in fraud under Sections 11 and 12(a)(2) of the Securities Act of 1933."); *id.* ¶¶ 1014, 1025, 1036, 1045, 1056, 1067 ("This claim does not sound in fraud").

applies to the Section 11, Section 12(2) and Section 15 claims against the Individual Defendants."); *see also In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 392-93 (E.D.N.Y. 2013) (holding that claims that sounded in fraud should be dismissed even where plaintiff included a blanket disclaimer that the plaintiffs do not allege fraud for purposes of their Securities Act claims); *In re Axis*, 456 F. Supp. 2d at 598 (collecting cases).

For the reasons set forth in the Teva Principal Brief, Plaintiffs have failed to plead fraud with sufficient particularity under Rule 9(b).  *See* Teva Principal Brief at Part I.A.  Because those same standards apply here given the fraud-based nature of Plaintiffs' claims, the failure is equally dispositive of Plaintiffs' Securities Act claims.

     **C.**    **Plaintiffs Fail Sufficiently To Identify Any Actionable Statement Or Omission Of Material Fact.**

Under any pleading standard, Plaintiffs' claims under §§ 11 and 12(a)(2) of the Securities Act must also be dismissed because the Complaint fails to allege a single actionable misrepresentation or omission of material fact.  Sections 11 and 12(a)(2) create "three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading."  *In re Morgan Stanley*, 592 F.3d at 360 (citing 15 U.S.C. §§ 77k(a), 77*l*(a)(2)). Plaintiffs fail sufficiently to allege liability under any of these three potential bases.

     **1.**    **Plaintiffs Fail Sufficiently To Allege Any Actionable Misrepresentation.**

The Complaint fails sufficiently to identify a single actionable misrepresentation in (or referenced by) the Offering Materials sufficient to state a claim under §§ 11 and 12(a)(2). Plaintiffs' allegations generally fall within two categories—(1) accurate statements of historical fact that are not challenged as false; and (2) accurate Sarbanes-Oxley ("SOX") Certifications—

neither of which is actionable.

It is well settled that accurate statements of historical fact are not actionable under §§ 11 and 12(a)(2) of the Securities Act.  *See, e.g.*, *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017) ("To put it simply, a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data") (citation and internal quotation marks omitted); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 594 (S.D.N.Y. 2007) ("[S]tatements [that] merely cite historical facts . . . are not actionable under the securities laws"); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006) ("Defendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy."). In fact, "disclosure of accurate historical data does not become misleading even if [the company might predict] less favorable results . . . in the future." *In re Coty Inc. Sec. Litig.*, No. 14-cv-00919, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (quoting *In re Duane Reade*, No. 02-cv-06478, 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003)); *Johnson v. Sequans Commc'ns S.A.*, No. 11-cv-06341, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013) (same).

Plaintiffs seek to base claims on many factual statements of earnings and growth incorporated by reference into the Offering Materials.  *See* Compl. ¶¶ 962, 963, 972, 973, 975, 976, 978, 979, 985, 986, 995, 996.  These same accurate statements of historical fact are also the subject of Plaintiffs' Exchange Act claims.  But the law for both sorts of claims is clear:  absent an allegation that a company's financial metrics are actually false, "'a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data.'" *Altayyar*, 242 F. Supp. 3d at 180 (quoting *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 39 (2d Cir. 2012)).  Teva did not restate its financial results from the

Class Period, and Plaintiffs do not allege that Teva's reported financial results were actually incorrect. As the Teva Principal Brief explains, Plaintiffs also cannot base a claim on accurately reported financial results by alleging that those financial results were generated as a consequence of alleged wrongdoing. *See* Teva Principal Brief at Part I.B.1.a. Allegations based on these accurate reports are not actionable under the Securities Act.

Plaintiffs also allege that Teva's SOX Certifications of Teva's annual reports on Form 20-F (and incorporated by reference into the Offering Materials) contained material misstatements because they failed to disclose that Teva was, *inter alia*, engaged in alleged price fixing, was not operating in a competitive market, and was reporting financial results that were the result of anticompetitive conduct. Compl. ¶¶ 968-71, 991-94. Plaintiffs' SOX allegations are wholly repetitive of their SOX allegations in their Exchange Act claims. *Compare id.* ¶¶ 968-71, 991-94, *with id.* ¶¶ 736-44. As set forth in the Teva Principal Brief, none of those allegations are sufficient to state a claim, as a matter of law. *See* Teva Principal Brief at Part I.B.1.d.

### 2. Plaintiffs Fail Sufficiently To Identify An Actionable Omission In Contravention Of An Affirmative Legal Disclosure Obligation.

Because silence ordinarily is not misleading, "[t]o state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendant had a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 434 (S.D.N.Y. 2003) (collecting cases). Here, Plaintiffs' omission claims allege a failure to disclose that Teva "was colluding with competitors to allocate customers and market share, rig bids, fix, inflate, and maintain prices, and manipulate the market for generic drugs in the United States." Compl. ¶ 956. Even assuming Plaintiffs could adequately plead the underlying anticompetitive conduct—and they cannot, *see* Teva Principal Brief at Part I.B.2—Plaintiffs fail

- 10 -

sufficiently to identify an "affirmative legal disclosure obligation" that required such disclosure. *In re Morgan Stanley*, 592 F.3d at 360.

As detailed in the Teva Principal Brief, there is no freestanding duty to disclose alleged wrongdoing where, as here, there has been no adjudication or admission of that same wrongdoing. *See* Teva Principal Brief at Part I.B.2.a.  This principle applies fully to Securities Act claims as well as Exchange Act claims. *See City of Pontiac*, 752 F.3d at 184.  In *City of Pontiac*, the Second Circuit affirmed the dismissal of §§ 11 and 12(a)(2) claims, emphasizing: "As we have explained, '[d]isclosure is not a rite of confession,' and companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" *Id.* (citation omitted).  Plaintiffs also fail sufficiently to identify any statutory or regulatory duty that required the disclosure of the alleged antitrust violations in the Offering Materials.  *See* Compl. ¶¶ 956-58. [6]  The Teva Securities Act-Only Defendants respectfully refer the Court to the Teva Principal Brief for its discussion of Plaintiffs' failure to allege a freestanding duty that required Defendants to disclose the alleged antitrust violations.  *See* Teva Principal Brief at Part I.B.2.

Finally, Plaintiffs allege that Defendants had a duty to disclose the receipt of two governmental subpoenas in Teva's July 13, 2016 Form 6-K that was incorporated by reference into the Notes Offering Materials.  Compl. ¶ 999.  There is no general duty, however, to disclose a governmental investigation, and Plaintiffs fail to identify a statutory or regulatory duty that

---

[6] Plaintiffs' Complaint includes the mistaken allegation that "the Forms 20-F was misleading and in violation of applicable SEC regulations, namely Item 5 of SEC Form F-3, because it did not disclose known trends . . . ."  Compl. ¶ 957.  To the extent Plaintiffs intended to allege a violation of that Item 5 of Form 20-F and Item 303 of Reg S-K, as they do in their Exchange Act claims, that allegation does not state a claim, as a matter of law, as discussed in the Teva Principal Brief.  *See* Teva Principal Brief at Part I.B.2.c.  To the extent Plaintiffs intended to allege a violation of Item 5 of Form F-3, that provision addresses "Material Changes," not known trends, and Plaintiffs have failed to plead that its allegations regarding an allegedly collusive price fixing scheme somehow constitute a "material change" within the meaning of federal securities law.  *See* SEC Form F-3, Item 5.

required disclosure of the subpoenas.  *See, e.g.*, *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12-13 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose."); *see also* Teva Principal Brief at Part I.B.2.b.[7]

In sum, Plaintiffs have failed sufficiently to allege an actionable "affirmative legal disclosure obligation" sufficient to maintain Plaintiffs' Securities Act claims, and thus they should be dismissed.  *In re Morgan Stanley*, 592 F.3d at 360.

> **3.      Plaintiffs Fail Sufficiently To Allege**
> **An Omission Of Information That Is Necessary**
> **To Prevent Existing Disclosures From Being Misleading.**

Having failed to identify an affirmative duty to disclose the allegedly omitted information, Plaintiffs' omission claims can survive only if Plaintiffs allege that the Offering Materials contained "an omission of information that is necessary to prevent existing disclosures from being misleading."  *In re Morgan Stanley*, 592 F.3d at 360.  Plaintiffs fail to do so.

To support their Securities Act claims, Plaintiffs generally assert only one category of statement that was rendered misleadingly incomplete as a result of Teva's alleged failure to disclose violations of antitrust law:   risk factor warnings that Teva provided to investors regarding the "intense competition" to which it was subject in the U.S. generic drug market.  *See* Compl. ¶¶ 965, 967, 990.  The identical statements are alleged to be misleadingly incomplete in Plaintiffs' Exchange Act claims.  *See* Compl. ¶¶ 574, 576, 629.  Moreover, Plaintiffs challenge

---

[7] Plaintiffs' attack on a statement in Teva's July 13, 2016 Form 6-K also cannot support a claim. In that SEC filing, Teva stated that, on June 25, 2015, Actavis Generics, the entity Teva was in the process of acquiring, received a subpoena from the DOJ "seeking information relating to the marketing and pricing of certain of the Business' generic products and communications with competitors about such products."   Compl. ¶¶ 998-99.   Plaintiffs seek to allege that this statement concerning subpoenas received by Actavis in 2015 was misleading because it did not also disclose two subpoenas received by Teva in 2016.  Of course, nothing in the Form 6 that concerned Actavis was rendered misleading by the omission of information concerning Teva, nor did it give rise to any duty to disclose by Teva.

these statements based on the same laundry list of alleged reasons asserted in the Exchange Act Claims.  *See* Compl. ¶¶ 537, 579, 638, 712, 726, 956.  As a result, Plaintiffs' Securities Act claims asserting that Defendants had a duty to disclose the alleged antitrust violations are wholly encompassed within Plaintiffs' Exchange Act claims and are subject to dismissal for the reasons identified in the Teva Principal Brief.

Courts in the Second Circuit apply the same analysis to allegations of misleadingly incomplete disclosures under the Securities Act as under the Exchange Act.  *See In re Morgan Stanley*, 592 F.3d at 366 (dismissing claims under §§ 11 and 12(a)(2) of the Securities Act for, *inter alia*, failing to identify misleadingly incomplete disclosures and citing *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992), on which the Teva Principal Brief relies for this point). Just as with §10(b) claims under the Exchange Act based on misleadingly incomplete statements, "[w]hen analyzing offering materials for compliance with the securities laws, we review the documents holistically and in their entirety."  *In re Morgan Stanley*, 592 F.3d at 365-66 (citation omitted); *see also* Teva Principal Brief at Part I.B.2.d.  Taken together and in context, the risk factor warnings that Teva provided to investors regarding competition generally in the generic drug market were true and not actionable.  For the same reasons identified in the Teva Principal Brief, Plaintiffs fail sufficiently to allege a duty to disclose based on an omission of information necessary to prevent existing disclosures from being misleading.  *See* Teva Principal Brief at Part I.B.2.d.; *see also In re Morgan Stanley*, 592 F.3d at 360.  These pleading deficiencies, alone, are fatal to Plaintiffs' Securities Act claims.

   **D.     Plaintiffs Fail Adequately
            To Plead Any Underlying Antitrust Violation.**

Even if Plaintiffs' claims were not legally defective for the foregoing reasons alone—and they are—they also fail for an additional reason.  Like Plaintiffs' Exchange Act claims,

Plaintiffs' Securities Act claims are premised on the conclusory allegation that Teva participated in and concealed that it was "colluding with competitors to allocate customers and market share, rig bids, fix, inflate, and maintain prices, and manipulate the market for generic drugs in the United States." Compl. ¶ 956. But a plaintiff alleging illegal price-fixing must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This requires a plaintiff to "allege enough facts to support the inference that a conspiracy actually existed," either through direct evidence of an agreement or circumstantial evidence. *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).

For the reasons stated in the Teva Principal Brief, Plaintiffs have failed to plead with specificity that any unlawful anticompetitive conduct actually occurred. *See* Teva Principal Brief at Part I.B.3. Accordingly, their Securities Act claims fail as well, *see In re Axis*, 456 F. Supp. 2d at 597 (dismissing claims under §§ 11 and 12(a)(2) for failing sufficiently to allege "either an underlying anticompetitive scheme to drive other insurers from the market, or the existence of material misstatements or omissions relating to such an alleged scheme"), and they should be dismissed.

**E.      Plaintiffs Fail To Plead Specific Facts
          <u>Showing That Defendants Violated GAAP.</u>**

In a similar vein, Plaintiffs allege that Teva's financial reporting was false and misleading in that it failed to comply with GAAP; Defendants allegedly "failed to properly recognize and record revenue that was subject to the anticompetitive and collusive conduct." Compl. ¶ 521; *see also id.* ¶ 956. These GAAP allegations are wholly repetitive of Plaintiffs' GAAP allegations in their Exchange Act claims and this Court is respectfully referred to the discussion of Plaintiffs' failure to allege an actionable GAAP violation in the Teva Principal Brief. *See* Teva Principal

Brief at Part I.B.1.d.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM
UNDER SECTION 15 OF THE SECURITIES ACT.

To plead "control person" liability under § 15, "a plaintiff must show a 'primary violation' of § 11 and control of the primary violator by defendants." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (citation omitted).  As discussed above, Plaintiffs have failed sufficiently to allege required elements of their Section 11 and 12 claims, and therefor they have failed to state a claim under § 15.  *Id.*  As a result, their § 15 claims should be dismissed.

### CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed, with prejudice.[8]

---

[8] *See Malin v. XL Capital, Ltd.*, 312 F. App'x. 400, 402-03 (2d Cir. 2009) (affirming denial of leave to replead putative securities class action).

- 15 -

Respectfully submitted,

*/s/ Jordan D. Hershman*

Jordan D. Hershman (*pro hac vice*)
Jason D. Frank (*pro hac vice*)
Emily E. Renshaw (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Tel (617) 951-8455
Fax (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com

– and –

Michael D. Blanchard (ct25891)
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT  06103
Tel: 860.240.2945
Fax: 860.240.2800
michael.blanchard@morganlewis.com

*Counsel for Defendants Teva*
*Pharmaceutical Finance Netherlands III*
*B.V., Deborah Griffin, Roger Abravanel,*
*Sol. J. Barer, Arie S. Belldegrun, Rosemary*
*A. Crane, Amir Elstein, Jean-Michel*
*Halfon, Gerald M. Lieberman, Galia Maor,*
*Joseph Nitzani, Ory Schneur Slonim,*
*Gabrielle Greene Sulzburger, Dr. Robert*
*Koremans, Gianfranco Nazzi, John Nason,*
*and David Vrhovec*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2017, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jordan D. Hershman*

Jordan D. Hershman (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Tel (617) 951-8455
Fax (617) 951-8736
jordan.hershman@morganlewis.com