## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, Individually and as Lead Plaintiff on behalf of all others similarly situated; and ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and as Named Plaintiff on behalf of all similarly-situated bond purchasers,<br><br>  Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD., *et al.*,<br><br>  Defendants. | Civ. A. No. 3:17-cv-00558 (SRU)<br>CONSOLIDATED with<br>Civ. A. No. 3:17-cv-00559 (SRU)<br><br><br><br><br><br><br>September 14, 2018 |

## MEMORANDUM OF LAW IN SUPPORT OF TEVA
## PHARMACEUTICAL FINANCE NETHERLANDS III B.V.'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................. 3

I.    MULTIPLE INVESTIGATIONS OF HIGH
      GENERIC DRUG PRICES WERE ANNOUNCED IN 2014. ........................... 3

II.   TEVA ANNOUNCED SECURITIES
      OFFERINGS ON NOVEMBER 30, 2015 AND JULY 13, 2016. ..................... 6

III.  PLAINTIFFS FIRST ALLEGE SECURITIES ACT CLAIMS
      AND ADD TEVA FINANCE AS A DEFENDANT ON AUGUST 2, 2017. ...... 7

ARGUMENT ................................................................................................................... 8

I.    PLAINTIFFS' SECTION 11 AND 12 CLAIMS ARE TIME-BARRED. ......... 8

      A.    Plaintiffs Had Sufficient Information To File Their Securities Claims Over
            A Year Before They Filed Their Securities Act Claims on August 2, 2017. ........ 9

            1.    The Court Should Apply An Inquiry Notice Standard. ........................... 10

            2.    Plaintiffs' Claims Are Untimely
                  Under An Inquiry Notice Standard. ........................................................ 12

            3.    Plaintiffs' Claims Are Untimely
                  Under A "Constellation Of Facts" Analysis. .......................................... 13

      B.    No Plaintiff With Standing To Assert Claims
            Based On The Senior Notes Filed A Timely Complaint. ................................... 14

II.   PLAINTIFFS' SECTIONS 11 AND 12 CLAIMS "SOUND
      IN FRAUD" AND SHOULD BE DISMISSED UNDER RULE 9(B). ......................... 15

III.  PLAINTIFFS FAIL SUFFICIENTLY TO IDENTIFY ANY
      ACTIONABLE STATEMENT OR OMISSION OF MATERIAL FACT. .................... 18

      A.    Plaintiffs Fail Sufficiently To
            Allege Any Actionable Misrepresentation............................................................ 19

      B.    Plaintiffs Fail To Identify An Actionable Omission In
            Contravention Of An Affirmative Legal Disclosure Obligation. ....................... 20

      C.    Plaintiffs Fail Sufficiently To Allege
            An Omission Of Information That Is Necessary
            To Prevent Existing Disclosures From Being Misleading................................... 22

      D.    Plaintiffs Fail Adequately To Plead A Strategy Of
            Systematic Price Increases Or Underlying Antitrust Violation. .......................... 23

CONCLUSION............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017),
   *aff'd*, 731 F. App'x 35 (2d Cir. 2018)..............................................................19, 20

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y 2006).......................................................17, 18, 23

*City of Pontiac General Emps' Ret. Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011).................................................................................14

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)...........................................................................16, 21

*In re Coty Inc. Sec. Litig.*,
   No. 14-cv-00919, *2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)...........................19

*In re Crazy Eddie Sec. Litig.*,
   747 F. Supp. 850 (E.D.N.Y. 1990) ......................................................................15

*Dodds v. Cigna Sec., Inc.*,
   12 F.3d 346 (2d Cir. 1993)........................................................................9, 12, 14

*F.H.F.A. v. Nomura Holdings Am. Inc.*,
   873 F.3d 85 (2d Cir. 2017)..................................................................................10

*Fitzgerald v. Citigroup, Inc.*,
   No. 03-cv-4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007) ...............................14

*Freidus v. Barclays Bank PLC*,
   734 F.3d 132 (2d Cir. 2013).................................................................................13

*Garber v. Legg Mason, Inc.*,
   347 F. App'x 665 (2d Cir. 2009) ............................................................................3

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)...................................................................................3

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007)....................................................................19

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   793 F. Supp. 2d 637 (S.D.N.Y. 2011)....................................................................11

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994).......................................................................................12

*Johnson v. NYFIX, Inc.*,
    399 F. Supp. 2d 105 (D. Conn. 2005)......................................................................18

*Johnson v. Sequans Commc'ns S.A.*,
    No. 11-cv-06341, 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013).............................19

*Kavowras v. N.Y. Times Co.*,
    328 F.3d 50 (2d Cir. 2003).........................................................................................3

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012).....................................................................................10

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991).......................................................................................3

*Kruse v. Wells Fargo Home Mortg., Inc.*,
    No. 02-cv-3089, 2006 WL 1212512 (E.D.N.Y. May 3, 2006)................................15

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07-cv-0976, 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2011) ............................18

*LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*,
    318 F.3d 148 (2d Cir. 2003)....................................................................................3, 9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005).....................................................................................13

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*,
    902 F. Supp. 2d 329 (S.D.N.Y. 2012), *aff'd sub nom., IBEW Local Union No.*
    *58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783
    F.3d 383 (2d Cir. 2015)...........................................................................................11

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016)..........................................................................21

*Malin v. XL Capital, Ltd.*,
    312 F. App'x. 400 (2d Cir. 2009) ............................................................................24

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)........................................................................................ *passim*

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    289 F. Supp. 2d 429 (S.D.N.Y. 2003)......................................................................20

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)....................................................................... *passim*

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08-cv-5653, 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ...............................14

*NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*,
  No. 10-cv-0440, 2013 WL 620257 (S.D.N.Y. Feb. 15, 2013), *aff'd sub nom.*
  *NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79 (2d Cir. 2015), *cert.*
  *denied*, 136 S. Ct. 821 (2016) ......................................................................11

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................19

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)....................................................................16, 17

*Rudman v. CHC Grp. Ltd.*,
  217 F. Supp. 3d 718 (S.D.N.Y. 2016)....................................................................14

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
  No. 09-cv-01376, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ...........................11

*Yi Xiang v. Inovalon Holdings, Inc.*,
  No. 16-cv-4923, 2017 WL 3208042 (S.D.N.Y. July 28, 2017)...............................10

*In re Zyprexa Prods. Liab. Litig.*,
  549 F. Supp. 2d 496 (E.D.N.Y. 2008) ..................................................................13

**Statutes**

15 U.S.C. § 77...............................................................................................11, 14

28 U.S.C. § 1658(b)(1) ...................................................................................10

## INTRODUCTION

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendant Teva Pharmaceutical Finance Netherlands III B.V. ("Teva Finance") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Consolidated Class Action Complaint (the "2018 Complaint" or "C") in its entirety, with prejudice.[1]

## PRELIMINARY STATEMENT

This brief is filed to emphasize the fundamental reasons that compel dismissal of all claims asserted against Teva Finance in this action.   To avoid repetition, Teva Finance respectfully refers the Court to the Preliminary Statement and Background sections set forth in the Principal Teva Brief.   Also incorporated herein are the arguments in that brief that lend further support to the Teva Finance's Motion to Dismiss.   Additional background facts and arguments specific to the Securities Act claims are set forth below.

Plaintiffs have asserted claims against Teva Finance solely under Sections 11 and 12 of the Securities Act.   These claims are based on offering materials filed in connection with two Teva securities offerings, which incorporate by reference Teva's quarterly and annual reports (Forms 6-K and 20-F).   C ¶¶ 378-88.   Plaintiffs' Securities Act claims are based on the same allegations of fraud as their Exchange Act claims against other Defendants.   That is, they allege that Teva's SEC filings were false or misleading because Teva failed to disclose that it was engaged in an undisclosed "strategy to systematically raise generic drug prices across a large swath of Teva's generic drug portfolio," which Plaintiffs dub the "Price-Hike Strategy."   *See* C ¶ 1.   Plaintiffs do not identify any particular statements that are the subject of their Securities Act

---

[1] Plaintiffs have asserted claims against Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company"), Teva Finance, and six current and former officers and directors of Teva under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").   Separate motions to dismiss and accompanying memoranda are being filed on behalf of: (1) Defendants Teva, Erez Vigodman, Eyal Desheh, Sigurdur Olafsson, and Deborah Griffin (the "Principal Teva Brief"); and (2) Defendants Allan Oberman and Maureen Cavanaugh, who are not even alleged to have made statements on which any claim is based.

claims beyond incorporating by reference all statements in certain Forms 6-K and 20-F already subject to Plaintiffs' Exchange Act claims, and stating that they are allegedly false or misleading for the reasons they assert to support their Exchange Act claims.  *See* C ¶¶ 390, 393-94.

At its core, Plaintiffs' newly-conceived "Price Hike Strategy" is merely a watered-down version of Plaintiff's failed antitrust price-fixing allegations, which this Court previously dismissed.  *See* Consolidated Class Action Complaint (Sept. 11, 2017), ECF. No. 141 (the "2017 Complaint") ¶¶ 78-240.   Rather than allege that Teva's pricing decisions were the result of collusion that violated the antitrust laws and was never disclosed, Plaintiffs now allege that Teva's pricing decisions were never disclosed, and they de-emphasize their antitrust allegations (which are now far scantier in the 2018 Complaint than the price-fixing allegations that this Court found to be "extremely thin"[2] in the 2017 Complaint).  *See* C ¶ 309.

Given that Plaintiffs' 2018 Complaint does not substantially depart from its last pleading effort, it should come as no surprise that Plaintiffs' Securities Act claims are subject to dismissal on several grounds.   First, Plaintiffs' Securities Act claims are time-barred by the one-year statute of limitations that applies to such claims.   Second, because Plaintiffs' Securities Act claims sound in fraud, those claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, which Plaintiffs fail to meet, and they should be dismissed for that reason as well.   Third, Plaintiffs' Sections 11 and 12(a)(2) claims also fail for several of the same reasons as their Section 10(b) claims: (1) Plaintiffs have failed sufficiently to identify any actionable misrepresentation or omission; and (2) Plaintiffs have failed adequately to plead that Defendants engaged in the alleged Price-Hike Strategy that serves as the predicate for Plaintiffs' Securities Act claims.

---

[2] "[M]y reading of the complaint was everything was hinging on price-fixing, which I thought was extremely thin." ECF No. 218 (Apr. 3, 2018 Oral Arg. Tr.) at 51.

## BACKGROUND

I.    **MULTIPLE INVESTIGATIONS OF HIGH
       GENERIC DRUG PRICES WERE ANNOUNCED IN 2014.**[3]

Plaintiffs' allegations regarding Teva's supposedly undisclosed "Price Hike Strategy" begin in January 2014, when the CEO of the National Community Pharmacists Association sent a public letter to Congress asserting that, "[o]ver the last six months, . . . many of our members across the U.S. [] have seen **huge upswings in generic drug prices**."  C ¶ 45 (emphasis added). Nine months later, in October 2014, Congress commenced an investigation and sent a letter to manufacturers, including Teva, requesting information about the companies' pricing.[4]  C ¶¶ 62, 66, 276.  On October 2, 2014, U.S. Official News reported on this "investigation into **soaring generic drug prices**[,]" and specifically noted **Teva was among the firms under investigation**. *Congress Investigating Why Generic Drug Prices Are Skyrocketing*, U.S. Official News (Oct. 4, 2014) (TF App. E).  This information was public several years before this suit was filed.

One month later, a congressional subcommittee held its first hearing. C ¶¶ 66, 276. Although Teva did not participate in the public hearing, Teva's price increases were specifically discussed.  TF App. A.  As this investigation continued, members of Congress publicly requested

---

[3] Teva Finance submits herewith an Appendix ("TF App.") of documents that this Court may properly consider on this motion to dismiss.  *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (noting that it is proper to take judicial notice of "the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents"); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.") (citation omitted); *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (public filings *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003) (press coverage and prior litigation); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

[4] The Congressional investigation was widely reported. On the very day it was announced, the Wall Street Journal reported that "two members of Congress have launched an investigation and asked 14 generic drug makers to provid[e] data about what the lawmakers called the 'escalating prices they have been charging' for generic medicines."  Ed Silverman, *Lawmakers Probe 'Staggering' Price Hikes for Generic Drugs*, Wall St. J. Pharmalot (Oct. 2, 2014) (TF App. D).

the U.S. Government Accountability Office ("GAO") perform an audit of the pricing of numerous generic drugs that Teva manufactures.  C ¶ 278.

Around the same time the congressional inquiry began, the Connecticut Attorney General ("Connecticut AG") and the United States Department of Justice ("DOJ") also began to investigate rising drug prices.  *Id.* ¶¶ 58, 69.  In connection with this investigation, the Connecticut AG served subpoenas on Impax Laboratories, Inc. and Lannett Company, Inc., which were both publicly disclosed.  *Id.* ¶ 58.  Later in 2014, the DOJ allegedly convened a grand jury that issued subpoenas to these same manufacturers.  *Id.* ¶ 69.

The existence of these subpoenas and speculation that they related to possible collusion by competitors were widely reported at the time, including at least as early as October 2014.  At that time, the New York Times reported: "This summer . . . the Connecticut attorney general issued a subpoena to Lannett . . . to assess whether it was engaging in 'fixing, maintaining or controlling prices of digoxin' in violation of antitrust law." TF App. B.  It was also well-known to the public that these investigations might expand to include other manufacturers and other drugs.  In November 2014, the Wall Street Journal reported that the "probe into the recent **price hikes** for some generic drugs appears to be widening." TF App. C (emphasis added).  An article in the publication Law360 similarly reported that the subpoenas Lannett and Impax received from the DOJ "signal[ed] a **much broader** federal investigation into potential Sherman Act violations in the **generic pharmaceutical industry**."  Mark Rosman, *DOJ's Investigation Into Generic Pharma Pricing is Unusual*, Law360 (Nov. 12, 2014) (TF App. F).[5]

---

[5] *See also* Richard Connolly, *Is the Antitrust Division Starting a Broad Investigation of Price Fixing in the Generic Pharmaceuticals Market?*, CartelCapers (Nov. 18, 2014) (TF App. H); Tracy Staton, *Generics makers, execs face potential criminal charges in U.S. pricing probe*, FiercePharma (Nov. 17, 2014) (TF App. I) ("So far, only two companies have disclosed subpoenas, but other companies may join them."); *Public Outcry Over Generic Price Hikes Spurs Criminal Investigations*, Patterson Belknap Antitrust Update (Nov. 17, 2014) (TF App. J) ("But will the criminal probe end with Impax and Lannett? Maybe not. In early October, U.S. Senator Bernie Sanders (I-Vt.) and U.S. Representative Elijah E. Cummings (D. Md.) wrote letters to fourteen generic drug manufacturers [including

As these widely reported investigations of possible collusion developed, reports and industry analysts continued to describe them as targeting the entire generic pharmaceutical industry.  An April 2015 report noted as follows:

> [L]ast month, generic pharmaceutical companies in the United States received a signal that the Department of Justice's (DOJ) Antitrust Division may be widening the scope of its federal investigation . . . . Notably, based on information available to date, the three grand jury subpoenas are aimed at obtaining documents generally related to communications and correspondence with competitors, and none of the subpoenas focus on any particular generic drug or time period.

Daniel N. Anziska & Bryan B. Lavine, *The DOJ's Generic Drug Antirust Investigation May Be Just Beginning*, Troutman Sanders LLP (April 20, 2015) (TF App. G); *see also id.* ("Considering that the grand jury subpoenas are not focused on any particular drug or time period, the DOJ may be signaling an intent to vastly expand the reach of its investigation into numerous generic drugs and drug makers.").

During the summer of 2015 news outlets reported that even more generic drug manufacturers were receiving subpoenas as part of the ongoing DOJ investigation.  *See* Eric Palmer, *Actavis gets subpoena as DOJ probe of generic pricing moves up food chain*, FiercePharma (Aug. 7, 2015) (TF App. L) ("The fact that Actavis is also the fourth largest generics drugmaker to be drawn in, suggests investigators are moving up the food chain.").  One month earlier, Teva had announced its agreement to acquire Actavis, C ¶ 87, which made clear that Teva would inherit the Actavis issues.  Ultimately, Teva received a subpoena from the DOJ on June 21, 2016, and from the Connecticut AG on July 12, 2016, both of which Teva disclosed in its next quarterly report filed with the SEC on August 4, 2016.

---

Teva] announcing they were investigating the 'staggering increases for generic drugs.'"); Ed Silverman, *Justice Department Probes Generic Companies After Price Hike Reports*, Wall St. J.: Pharmalot (Nov. 10, 2014) (TF App. C); Michael Volkov, *Criminal Global Cartel Focus on Generic Pharmaceuticals*, Volkov Law (Nov. 25, 2014) (TF App. K) ("Given the breadth of such a potential cartel investigation, the Justice Department's inquiry of the generic pharmaceutical industry could be significant.").

## II.   TEVA ANNOUNCED SECURITIES OFFERINGS ON NOVEMBER 30, 2015 AND JULY 13, 2016.

On November 30, 2015, Teva filed a Form 6-K announcing that it was commencing a public offering of approximately $3.375 billion in American Depositary Shares ("ADS") and approximately $3.375 billion in preferred shares (the "ADS/Preferred Offering"). C ¶ 378. The ADS/Preferred Offering was made pursuant to a prospectus and related prospectus supplements constituting part of Teva's shelf registration statement filed on November 30, 2015; a registration statement for the ADS filed on November 30, 2015; a preliminary prospectus filed on November 30, 2015; and final prospectuses, a free writing prospectus, and a pricing term sheet filed on December 2, 2015 (the "ADS/Preferred Offering Materials"). *Id.* ¶¶ 378-80. These materials expressly incorporated by reference many public disclosures Teva had made during the preceding year, including the 2014 Form 20-F and numerous Form 6-K reports. *Id.* ¶ 387. The ADS/Preferred Offering closed on December 8, 2015, with Teva raising $3.375 billion through the offering of ADS and $3.375 billion through the offering of Preferred Shares. *Id.* ¶ 381; 2017 Complaint ¶ 939. Teva's net proceeds were approximately $3.29 billion from the ADS Offering and $3.29 billion from the Preferred Offering. C ¶ 381.

On or about July 13, 2016, Teva announced the acceleration of a planned debt offering (the "Notes Offering"). *Id.* ¶ 11. The Notes Offering was made pursuant to an amendment to Teva's shelf registration statement filed on July 13, 2016; a preliminary prospectus supplement filed on July 15, 2016; a final Notes Prospectus filed on July 19, 2016; and two free writing prospectuses filed on July 19, 2016 (the "Notes Offering Materials" and, together with the ADS/Preferred Offering Materials, the "Offering Materials"). *Id.* ¶¶ 383-85. The Notes Offering closed on July 21, 2016, with Teva raising $15 billion through the offering of a series of Senior Notes. *Id.* ¶ 386. Teva's net proceeds were approximately $14.9 billion from the Notes

Offering.  *Id.*

The Offering Materials incorporated by reference prior disclosures, including Teva's 2015 Form 20-F and numerous Form 6-K reports.  *Id.* ¶ 387.  Plaintiffs' Securities Act claims are based on statements in these Forms 20-F and 6-K, and every statement challenged by Plaintiffs in their Securities Act claims is already the subject of Plaintiffs' Exchange Act claims.  *See* C ¶¶ 390-96.

## III.    PLAINTIFFS FIRST ALLEGE SECURITIES ACT CLAIMS AND ADD TEVA FINANCE AS A DEFENDANT ON AUGUST 2, 2017.

Filed on November 6, 2016, the first complaint in this action did not include any claims for violations of the Securities Act or any plaintiff who alleged purchased securities pursuant to the Offerings.  ECF No. 1 (the "Initial Complaint").  The Securities Act claims were not alleged in any complaint until Ontario Teachers' Pension Plan Board ("Ontario Teachers") filed the First Amended Complaint (the "FAC") on August 2, 2017, at which time it also added Teva Finance as a defendant.  ECF No. 129.  Although the FAC included Securities Act claims against Teva Finance and others [*i.e.*, Teva, Teva executives, board members and underwriters] based on the ADS, Convertible Preferreds, and Senior Notes, neither the complaint nor the accompanying PSLRA certification alleged that Ontario Teachers purchased any Senior Notes.  *Id.* Ontario Teachers' Certification.  Purporting to solve this problem, Plaintiffs filed the Second Amended Complaint on September 5, 2017 (ECF No. 138), adding as a plaintiff Anchorage Police & Fire Retirement System ("Anchorage"), which allegedly purchased only one of the six different series of Senior Notes. *Id.* at Anchorage Certification.  Plaintiffs filed what they call the Consolidated Class Action Complaint, defined herein as the 2017 Complaint, on September 11, 2017.  ECF No. 141.  This Court dismissed the 2017 Complaint, without prejudice, on April 3, 2018.  ECF No. 214.

Plaintiffs filed the 2018 Complaint on June 22, 2018.  ECF No. 226.  As noted above, the 2018 Complaint alleges that the offering materials were misleading because they failed to disclose that Teva's revenues were driven by Teva's Price-Hike Strategy (which is not alleged to have been illegal).  C ¶¶ 1-2.  These claims were based entirely on allegations drawn from the publicly announced investigations and a purported pricing analysis by Plaintiffs' counsel.  C ¶ 15.

Even though public allegations regarding "huge upswings in generic drug prices" were first made in early 2014 (*supra* 3), Teva's involvement in a "sweeping" investigation into potential price-fixing was publicly known in 2014, and Actavis's receipt of a subpoena was publicly known in August 2015 (a month after the market learned of Teva's agreement to acquire Actavis), Plaintiffs contend that they were not made aware of facts triggering the running of the statute of limitations on their Securities Act claims until August 4, 2016, when Teva disclosed its receipt of formal subpoenas from the DOJ and Connecticut AG.  C ¶ 313.

## ARGUMENT

### I.   PLAINTIFFS' SECTION 11 AND 12 CLAIMS ARE TIME-BARRED.

Plaintiffs did not bring any Securities Act claims against Teva Finance (or any other defendant) until August 2, 2017, when they filed the First Amended Complaint.  ECF No. 129. The information and events relied upon by Plaintiffs in the FAC as well as the 2018 Complaint were publicly known and available well over a year earlier and would have permitted Plaintiffs to plead the same (deficient) claims they are now attempting to bring.  Publicly available facts and information dating back to early 2014, including information referenced by Plaintiffs, made clear that members of the generic drug industry, including Teva, had been under scrutiny in connection with the rising prices of certain generic drugs.  The historical drug prices—which counsel purports to have analyzed to support its newly-conceived Price-Hike Strategy

allegations—are publicly available drug prices, updated on a weekly basis. C at Appendix A.[6] Therefore, Plaintiffs were available to bring the same ill-conceived claims  well over a year before they first asserted their Securities Act claims against Teva Finance and others on August 2, 2017.  Accordingly, all of Plaintiffs' Securities Act claims against Teva Finance are time-barred.

In addition, because no Plaintiff who allegedly purchased any Senior Notes filed any claim until *September 5, 2017*, when Plaintiffs filed the Second Amended Complaint (ECF No. 138), Plaintiffs' claims with respect to the Senior Notes are even more clearly time-barred. September 5, 2017 was more than one year after an announcement *Plaintiffs themselves* characterize as corrective of the alleged misrepresentation, *i.e.* the disclosure of the receipt by Teva of subpoenas from government investigators on August 4, 2016.

### A. Plaintiffs Had Sufficient Information To File Their Securities Claims Over A Year Before They Filed Their Securities Act Claims on August 2, 2017.

Before the Supreme Court's decision in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), courts in this Circuit consistently held that the one-year statute of limitations applicable to Securities Act claims, which is set forth in Section 13 of the Securities Act, is triggered by "inquiry notice."  *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349-50 (2d Cir. 1993).  Under this standard, the one-year period begins to run when public information, sometimes referred to as "storm warnings," would lead a reasonable investor to investigate potential claims. *Id.; see also LC Capital*, 318 F.3d at 154 (2d Cir. 2003).  If a plaintiff fails to demonstrate it undertook such an investigation, knowledge will be imputed to it and the one-year period will be deemed to begin as of the date of the storm warnings. *Id.*  at 154.

---

[6] *See also* C at vi (Glossary definition of NADAC); 2017 Complaint ¶¶ 57-59.

In *Merck*, the Supreme Court held that the statute of limitations applicable to claims under Section 10(b) of the Exchange Act is subject to a "discovery rule."  559 U.S. at 647. District courts in this Circuit have split on whether that discovery rule also applies to Section 13 of the Securities Act, and the Second Circuit has not yet opined on the applicable standard.[7]  *See Yi Xiang v. Inovalon Holdings, Inc.*, No. 16-cv-4923, 2017 WL 3208042, at *3-5 (S.D.N.Y. July 28, 2017) (discussing conflicting authority).

Plaintiffs' claims are time-barred because they were on inquiry notice of their claims against Teva Finance as a result of the numerous articles and public records tying Teva to investigations regarding the increase in generic drug pricing beginning in early 2014.  This argument carries even more weight as a consequence of Plaintiffs' decision to ground their Securities Act claims in the 2018 Complaint principally upon Teva having an allegedly undisclosed, albeit not actionable, Price Hike Strategy, rather than upon the contention that Teva was engaged in allegedly undisclosed price-fixing, which was the focus of Plaintiffs' 2017 Complaint.

### 1.  The Court Should Apply An Inquiry Notice Standard.

There are good reasons why this Court should apply an inquiry notice rule to the Securities Act claims, rather than the discovery rule that applies to claims under the Exchange Act.  *First*, as the Second Circuit has observed, the decision in *Merck* was limited to "the context of" Section 10(b) of the Exchange Act, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149-50 (2d Cir. 2012), and to the specific language of that statute of limitations, which refers only to "the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b)(1).  This differs from the

---

[7] In *F.H.F.A. v. Nomura Holdings Am. Inc.*, the Second Circuit did not decide whether *Merck* applies to claims under the Securities Act, but instead assumed arguendo it applied because the parties to the appeal did not argue otherwise. 873 F.3d 85, 119 n.37 (2d Cir. 2017).  As discussed herein, *Merck* should not be applied to claims under the Securities Act, but the outcome in this case does not depend on that conclusion.

language of Section 13, which hinges either on "the discovery of the untrue statement or the omission" or the time "after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Other courts have found this to be significant and a reason why Section 13 should remain subject to an inquiry notice rule. *See, e.g., In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 648 (S.D.N.Y. 2011) (concluding result in *Merck* was "based on the precise language of that statute"); *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, No. 10-cv-0440, 2013 WL 620257, at *7 (S.D.N.Y. Feb. 15, 2013) (same), *aff'd sub nom. NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 821 (2016) (finding "compelling" the argument that "*Merck* does not extend to actions brought under the Securities Act" and holding that, even if *Merck* were applicable, plaintiffs' claims would fail); *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 345 n. 11 (S.D.N.Y. 2012) (noting that inquiry notice standard still applicable to Securities Act claims post-*Merck*), *aff'd sub nom., IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015).

*Second*, as Justice Scalia explained in his concurring opinion in *Merck*, there is a "good reason" to treat the Exchange Act and Securities Act statutes of limitations differently. 599 U.S. at 657 (Scalia, J., concurring). Namely, the factual allegations required to state a Section 10(b) claim, which has a scienter requirement, are harder to "discover" than are the factual allegations required to state Section 11 or 12(a)(2) claims, which generally require only the identification of a material misrepresentation or omission. *Id.*; *see, e.g., In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-cv-01376, 2010 WL 4117477, at *7 n.8 (N.D. Cal. Oct. 19, 2010)

("The Court in *Merck* was applying the statute of limitations for fraud claims. Such claims include an element of scienter not required for [Section 11 and 12(a)(2) claims].").[8]

*Finally*, given the broad scope of the Securities Act, its strict liability standards, and the severe consequences of a violation, the Second Circuit generally recognizes that the more generous statute of limitations applicable to Section 10(b) claims does not apply to Section 11 and 12(a)(2) claims, lest courts "skew the legislative balance of interests . . . to the lower threshold of liability applicable to" Securities Act claims. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994).

### 2. Plaintiffs' Claims Are Untimely Under An Inquiry Notice Standard.

Plaintiffs' claim is that the offering documents were misleading because they failed to disclose that Teva Finance allegedly engaged in a Price-Hike Strategy.  ¶¶ 387-88. These allegations are based on: (i) announced investigations and news reports that began in early 2014 and explored rising generic drug prices, and (ii) Plaintiffs' purported pricing analysis of various generic drugs that Teva manufactures, which prices were publicly available at the time they were being charged, and which is what triggered government inquiry into a rise in generic drug prices as to certain drugs. *See, e.g.*, ¶¶ 9, 42, 45, 58, 62, 63, 66, 69, 70, 79, 95, 114, 183, 256, 276, 277, 278, 287-89, 294 & Appendices A, B.

As discussed above, the prominent news articles, numerous industry analyses, and well-publicized public hearings before Congress in 2014 and 2015 constitute "storm warnings" that put reasonable investors on inquiry notice, before August 2016, of claims relating to Teva allegedly having a strategy to raise prices on certain generic drugs it sold, *i.e.*, the exact claim that Plaintiffs now bring. *Dodds*, 12 F.3d at 349-50.  While "[e]ven a single news article can

---

[8] For the reasons discussed below, Plaintiffs' Securities Act claims here sound in fraud and thus must meet higher pleading standards than those that otherwise apply to Securities Act claims.

provide sufficiently strong omens to place a plaintiff on notice of the need for investigation," *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 534 (E.D.N.Y. 2008), Plaintiffs here had repeated reports that discussed in great detail investigations relating to increases in the prices of certain generic drugs and included mention of Teva.

In particular, reports on the investigations that have been published since 2014, including those relied on in the 2018 Complaint, described investigators as focused on price hikes by generic drug companies like Teva; potential price collusion by generic drug manufacturers; and Teva's likely involvement in such investigations. *See supra* at 3-5.  In addition, the pricing information apparently used to complete Plaintiffs' so-called pricing analysis was available and updated on a weekly basis.  *See* C at vi (defining NADAC); Medicaid.gov, *National Average Drug Acquisition Cost ("NADAC")*, https://www.medicaid.gov/medicaid/ prescription-drugs/pharmacy-pricing/index.html ("NADAC data is updated on a weekly basis.").  In short, the very facts on which Plaintiffs base their Securities Act claims were publicly available and were matters of well-publicized focus several years before they asserted those claims.  Accordingly, those claims are untimely.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) ("[Courts] can readily resolve the [statute of limitations] issue on a motion to dismiss, and have done so in a vast number of cases.") (internal quotation omitted).

### 3.   Plaintiffs' Claims Are Untimely Under A "Constellation Of Facts" Analysis.

Alternatively, the Court does not need to resolve whether an inquiry notice or *Merck* standard applies in order to dismiss Plaintiffs' claims as untimely.  The "constellation of facts" relied on in the 2018 Complaint also dictates dismissal on time limitation grounds.  *See Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138-39 & n.2 (2d Cir. 2013) (declining to decide whether *Merck* applies to claims brought under Securities Act and instead looking to "constellation of

facts" forming basis of plaintiffs' claims).[9]  That "constellation of facts" was available to Plaintiffs well before Plaintiffs filed their Securities Act claims on August 2, 2017.  For all of these reasons, Plaintiffs Securities Act claims are time-barred.

**B.      No Plaintiff With Standing To Assert Claims Based On The Senior Notes Filed A Timely Complaint.**

This Court should find claims asserted on behalf of purchasers of Senior Notes time-barred for a separate and independent reason.  No plaintiff with standing to assert those claims did so until Anchorage was added as a plaintiff on September 5, 2017.  That was more than one year after Teva's August 4, 2016 disclosure that it had received subpoenas from the DOJ and Connecticut AG, which the 2018 Complaint alleges was corrective of the alleged misrepresentations.  C ¶¶ 313-15.

Ontario Teachers plainly lacked standing to sue in respect of the Senior Notes because it does not allege that it purchased them.  2017 Complaint at 50.  Indeed, Section 11(a) creates a cause of action only for "any person acquiring such security," 15 U.S.C. § 77k(a), and Section 12(a) limits liability of a seller only "to the person purchasing such security from him . . ." 15 U.S.C. § 77l(a)(2)(b).  Because Ontario Teachers did not purchase any Senior Notes and therefore lacked standing to sue based on those securities, the filing of its class action complaint did not toll the statute of limitations for other members of the purported class.  *N.J. Carpenters*

---

[9] That the Offerings did not occur until December 2015 and then July 2016 does not render irrelevant the information previously available to Plaintiffs. Courts within this Circuit and others have repeatedly found that the statute of limitations under the Securities Act accrues on the date of a security's purchase where investors were on notice of the alleged misstatements at the time of the offering or beforehand.  *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 176 (2d Cir. 2011) (explaining that the securities fraud statute of limitations accrues "after the plaintiff actually purchases . . . the relevant security" when facts about alleged misrepresentations came to light before the purchase); *Dodds*, 12 F.3d at 352 (finding that an investor's claims regarding the risky nature of certain securities were time-barred due to "constructive notice of facts sufficient to create a duty to inquire further into that matter" prior to her purchase); *Fitzgerald v. Citigroup, Inc.*, No. 03-cv-4305, 2007 WL 582965, at *7 (S.D.N.Y. Feb. 23, 2007) (determining that a prospectus "disclosure should have led a reasonable investor to inquire further about the differing commission rates between the classes" and thus the plaintiff was on notice of the allegedly fraudulent commission structure "from the time of receipt of the Prospectus"); *Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 725 (S.D.N.Y. 2016) (finding that information regarding a revenue decrease made available to the public meant "Plaintiffs could have alleged the fact in a complaint at the time of the IPO or shortly thereafter").

*Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08-cv-5653, 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) (tolling rules "should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing. In short, where a Plaintiff lacks standing—there is no case") (internal citations omitted); *Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-cv-3089, 2006 WL 1212512, at *4-7 (E.D.N.Y. May 3, 2006) (same).

The relevant filing date for assessing whether plaintiffs filed prior to the running of the statute of limitations with respect to the Senior Notes is therefore September 5, 2017, when Anchorage was added as a plaintiff. Any other conclusion would "condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule." *Kruse*, 2006 WL 1212512, at *6 (internal citation omitted); *see In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) ("There appears to be no good reason to encourage bringing of a suit merely to extend the period in which to find a class representative."). Because Anchorage was added as a Plaintiff more than one year after Plaintiffs had information sufficient to make the same claims that they asserted in the 2018 Complaint (*e.g.*, the disclosures of investigations into possible pricing collusion and the disclosure of the subpoenas from the DOJ and Connecticut AG) the claims relating to the Senior Notes are untimely.

Even if Plaintiffs' Securities Act claims were not time-barred – and they are – they are also legally defective for the several additional reasons below, each of which is independently dispositive of Plaintiffs' Securities Act claims.

## II. PLAINTIFFS' SECTIONS 11 AND 12 CLAIMS <u>"SOUND IN FRAUD" AND SHOULD BE DISMISSED UNDER RULE 9(b).</u>

Plaintiffs Section 11 and Section 12 claims sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard, which Plaintiffs fail to meet. Although fraud is not a

necessary element of Section 11 or Section 12(a)(2) claims, the heightened pleading standard of Rule 9(b) nevertheless applies where, as here, such claims sound in fraud. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud."); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("In assessing § 11 claims, we conduct a preliminary inquiry into whether plaintiffs' allegations are premised on fraud, or merely on negligence, to determine the appropriate pleading standard.") (quotation omitted); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) ("Where the claims are 'premised on allegations of fraud,' the allegations must satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.") (citation omitted).   Where claims sound in fraud but fail to satisfy Rule 9(b)'s strict pleading standard, they are appropriately dismissed. *See Rombach*, 355 F.3d at 175.

The heightened pleading requirement for fraud allegations serves an important purpose: it helps "to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Id.* at 171.  Fraud allegations pose the same reputational consequences whether or not a plaintiff's cause of action requires proof of fraud, and hence raise similar strike-suit concerns. *See id.* ("Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case.") (citation omitted).   Thus, if (1) "the wording and imputations of the complaint are classically associated with fraud," or (2) "[t]he same course of conduct" is alleged in support of both the Section 10(b) claim and the Section 11 or Section 12(a)(2) claims, all the claims are subject to Rule 9(b). *Id.* at 171-72.  Both conditions

are met in this case.

First, the Plaintiffs' Securities Act allegations are worded and framed to accuse Defendants of fraud explicitly and implicitly – and in even more inflammatory terms than the language that supported heightened pleading in *Rombach*. *See id.* at 172 (finding words such as "inaccurate," "misleading," "untrue," and "false" to be language "classically associated with fraud"). Plaintiffs here claim that Teva Finance made "false and misleading statements." C ¶ 171, 394. They further claim that Teva's ADS was "[f]ueled by profits from the [Price-Hike] **fraud**" and that Teva's Offering Materials "contained **untrue** statements and omissions." *Id.* ¶ 249, 397 (emphasis added). In addition, Plaintiffs accuse Defendants, repeatedly, of "concealing" the alleged Price-Hike Strategy, Inflated Profits, and the associated risks involved as well as "fail[ing] to disclose [] known trend[s]." *Id.* ¶¶ 3, 99, 105, 161, 249, 311, 312, 393.

Second, apart from this language, Plaintiffs' Securities Act claims are based on the very same alleged course of conduct and the very same statements as the Exchange Act claims. To be sure, the Complaint tries to obscure the similarity by separating out its Securities Act and Exchange Act allegations to make them seem distinct. But it is apparent that virtually all of the allegations in the Complaint's Securities Act section were copied-and-pasted from the Exchange Act section.[10] "Because the sole allegations supporting the falsity element of the Section 11 and Section 12(a)(2) claims are all inextricably intertwined with the allegations underlying plaintiffs' fraud claims against [Defendants], these claims undisputedly sound in fraud." *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y 2006) (citation omitted).

Given Plaintiffs' overt accusations of fraud and the unjustified reputational harm that those accusations inflict on Defendants, the Complaint's boilerplate disclaimers lack any legal

---

[10] *Compare* C ¶¶ 387, 390 *with id.* ¶¶ 189, 192, 195, 197; *id.* ¶ 388, *with id.* ¶¶ 208, 216; *id.* ¶ 393, *with id.* ¶¶ 160-61; *id.* ¶ 394, *with id.* ¶ 171; *id.* ¶ 395, *with id.* ¶ 208; *and id.* ¶ 396, *with id.* ¶¶ 288-301, 309.

import.[11]  Courts hold that where, as is the case here, there is no substantive distinction between a plaintiff's Section 11 or Section 12 claims and its Section 10(b) claims, such boilerplate efforts to lighten the pleading requirements are ineffective.  *See, e.g.*, *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 121-22 (D. Conn. 2005) ("[C]ourts need not accept assertions in a complaint that a section 11 claim is not premised on fraud."); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-cv-0976, 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2011) ("It is well established that in this context a boilerplate disclaimer is not enough to make out a claim for negligence.") (citation omitted); *In re Axis*, 456 F. Supp. 2d at 598 (collecting cases).

For the reasons set forth in the Teva Principal Brief, Plaintiffs have failed to plead fraud with sufficient particularity under Rule 9(b).  *See* Teva Principal Brief at Part I.A.  Because those same standards apply here given the fraud-based nature of Plaintiffs' claims, the failure is equally dispositive of Plaintiffs' Securities Act claims.

## III.   PLAINTIFFS FAIL SUFFICIENTLY TO IDENTIFY ANY ACTIONABLE STATEMENT OR OMISSION OF MATERIAL FACT.

Under any pleading standard, Plaintiffs' claims under Sections 11 and 12(a)(2) of the Securities Act must also be dismissed because the Complaint fails to allege a single actionable misrepresentation or omission of material fact.  Sections 11 and 12(a)(2) create "three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading."  *Morgan Stanley*, 592 F.3d at 360 (citing 15 U.S.C. §§ 77k(a), 77*l*(a)(2)).  Plaintiffs

---

[11] C  ¶ 367 ("[Lead Plaintiff] and Anchorage [] assert strict liability and negligence claims based on Sections 11,12(a)(2), and 15 of the Securities Act of 1933 . . . . Plaintiffs expressly disclaim any allegations of fraud or intentional misconduct in connection with these non-fraud claims[.]"); *id.* ¶¶ 397 ("This Count does not sound in fraud"), 406, 415 ("Plaintiffs . . . expressly exclude from this Count any allegations of fraud"), 416 ("Plaintiffs . . . expressly disclaim any allegation of fraud").

fail sufficiently to allege liability under any of these three potential bases.

A.    **Plaintiffs Fail Sufficiently To
      Allege Any Actionable Misrepresentation.**

The Complaint fails sufficiently to identify a single actionable misrepresentation in (or

referenced by) the Offering Materials sufficient to state a claim under Sections 11 and 12(a)(2).

The alleged misstatements that are subject of Plaintiffs' Securities Act claims are all accurate

statements of historical fact that are not challenged as false.  It is well settled that accurate

statements of historical fact are not actionable under Sections 11 and 12(a)(2) of the Securities

Act.  *See, e.g.*, *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017) ("To put it

simply, a violation of federal securities law cannot be premised upon a company's disclosure of

accurate historical data.") (citation and internal quotation marks omitted), *aff'd*, 731 F. App'x 35

(2d Cir. 2018); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 594 (S.D.N.Y. 2007)

("[S]tatements [that] merely cite historical facts . . . are not actionable under the securities

laws."); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y.

2006) ("Defendants may not be held liable under the securities laws for accurate reports of past

successes, even if present circumstances are less rosy.").  In fact, "disclosure of accurate

historical data does not become misleading even if [the company might predict] less favorable

results . . . in the future." *In re Coty Inc. Sec. Litig.*, No. 14-cv-00919, 2016 WL 1271065, at *6

(S.D.N.Y. Mar. 29, 2016) (quoting *In re Duane Reade Inc. Sec. Litig.*, No. 02-cv-06478, 2003

WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003)); *Johnson v. Sequans Commc'ns S.A.*, No. 11-cv-

06341, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013) (same).

Plaintiffs seek to base claims on many factual statements of earnings and growth

incorporated by reference into the Offering Materials.  *See* C ¶ 390.  These same accurate

statements of historical fact are also the subject of Plaintiffs' Exchange Act claims.  *See id.* ¶¶

189, 192, 195, 197.  But the law for both sorts of claims is clear:  absent an allegation that a company's financial metrics are actually false, "a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data."  *Altayyar*, 242 F. Supp. 3d at 180 (quoting *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 39 (2d Cir. 2012).  Teva did not restate its financial results from the Class Period, and Plaintiffs do not allege that Teva's reported financial results were actually incorrect.  As the Teva Principal Brief explains, Plaintiffs also cannot base a claim on accurately reported financial results by alleging that those financial results were generated as a consequence of alleged wrongdoing.  *See* Teva Principal Brief at Part I.B.1.a.  Allegations based on these accurate reports are not actionable under the Securities Act.

### B.     Plaintiffs Fail To Identify An Actionable Omission In Contravention Of An Affirmative Legal Disclosure Obligation.

Because silence ordinarily is not misleading, "[t]o state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendant had a legal obligation to disclose the allegedly omitted information."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 434 (S.D.N.Y. 2003) (collecting cases).  Here, Plaintiffs' omission claims allege a failure to disclose Teva's alleged "Price-Hike Strategy," *i.e.*, its "strategy to systematically raise generic drug prices across a large swath of Teva's generic drug portfolio."  C ¶¶ 1, 387, 391-92.  Even assuming Plaintiffs could adequately plead the underlying "Price-Hike Strategy" – and they cannot, *see* Teva Principal Brief Part I.B.2.b.iii.d – Plaintiffs fail sufficiently to identify an "affirmative legal disclosure obligation" that required such disclosure.  *Morgan Stanley*, 592 F.3d at 360.

As detailed in the Teva Principal Brief, Plaintiffs incorrectly contend that Teva had a "statutory" obligation to disclose (1) that its success supposedly was driven by raising prices on

certain of its generic products, and (2) that pricing pressure beginning in 2016 was preventing it from increasing generic drug prices.  *See* C ¶ 393.  Teva Finance respectfully refers the Court to the Teva Principal Brief for its discussion of Plaintiffs' failure to allege a freestanding duty that required Defendants to disclose pricing trends or strategy.  *See* Teva Principal Brief at Part I.B.2.a.

Plaintiffs also allege that Defendants had a duty to disclose the receipt of two governmental subpoenas in the 2015 20-F and Q1 2016 6-K that were incorporated by reference into the Notes Offering Materials.  C ¶¶ 238-39, 395.  There is no general duty, however, to disclose a governmental investigation, and Plaintiffs fail to identify a statutory or regulatory duty that required disclosure of the subpoenas.  *See, e.g.*, *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose."); *see also* Teva Principal Brief at Part I.B.2.c.  Finally, as detailed in the Teva Principal Brief, there is no freestanding duty to disclose alleged wrongdoing where, as here, there has been no adjudication or admission of that same wrongdoing.  *See id.* This principle applies fully to Securities Act claims as well as Exchange Act claims.  *See City of Pontiac*, 752 F.3d at 184.  In *City of Pontiac*, the Second Circuit affirmed the dismissal of Section 11 and Section 12(a)(2) claims, emphasizing:  "As we have explained, '[d]isclosure is not a rite of confession,' and companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'"  *Id.* (citation omitted).  Therefore, Plaintiffs' claim that Defendants failed to disclose that it "conspired with other generic manufactures to fix prices, rig bids, and allocate the market for generic drugs" is also without legal merit and should be dismissed.  C ¶ 396.

In sum, Plaintiffs have failed sufficiently to allege an actionable "affirmative legal disclosure obligation" sufficient to maintain Plaintiffs' Securities Act claims, and thus they

should be dismissed.  *Morgan Stanley*, 592 F.3d at 360.

C.   **Plaintiffs Fail Sufficiently To Allege
An Omission Of Information That Is Necessary
To Prevent Existing Disclosures From Being Misleading.**

Having failed to identify an affirmative duty to disclose the allegedly omitted information, Plaintiffs' omission claims can survive only if Plaintiffs allege that the Offering Materials contained "an omission of information that is necessary to prevent existing disclosures from being misleading."  *Morgan Stanley*, 592 F.3d at 360.  Plaintiffs fail to do so.

To support their Securities Act claims, Plaintiffs generally assert two categories of statements that were rendered misleadingly incomplete as a result of Teva's alleged failure to disclose its Price-Hike Strategy:  (1) statements about Teva's pricing strategy and exposure to pricing pressure; and (2) statements about competition in the generics market.  *See* C ¶¶ 391-92, 394.  These same statements are alleged to be misleadingly incomplete in Plaintiffs' Exchange Act claims.  *See* Teva Principal Brief at Part I.B.2.b.  Moreover, Plaintiffs challenge these statements based on the same alleged fraud asserted in the Exchange Act Claims.  *Id.*  As a result, Plaintiffs' Securities Act claims asserting that Defendants had a duty to disclose the alleged Price-Hike Strategy are wholly encompassed within Plaintiffs' Exchange Act claims and are subject to dismissal for the reasons identified in the Teva Principal Brief.

Courts in the Second Circuit apply the same analysis to allegations of misleadingly incomplete disclosures under the Securities Act as under the Exchange Act.  *See Morgan Stanley*, 592 F.3d at 366 (dismissing claims under §§ 11 and 12(a)(2) of the Securities Act for, *inter alia*, failing to identify misleadingly incomplete disclosures and citing *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992), on which the Teva Principal Brief relies for this point).  Just as with Section 10(b) claims under the Exchange Act based on misleadingly incomplete statements, "[w]hen analyzing offering materials for compliance with the securities laws, we

review the documents holistically and in their entirety." *Morgan Stanley*, 592 F.3d at 365-66 (citation omitted); *see also* Teva Principal Brief at Part I.B.2.b.  First, Plaintiffs' arguments based on Teva's supposedly undisclosed pricing strategy fail because Teva's statements were not misleading as they were not inconsistent with the alleged omission.  The alleged pricing statements discussed trends in the "overall" market and business, which simultaneously recognized there were exceptions to these overall trends.  More importantly, it was expressly disclosed that Teva would raise prices when possible.  Second, taken together and in context, the risk factor warnings that Teva provided to investors regarding competition generally in the generic drug market were true and not actionable.  For the same reasons identified in the Teva Principal Brief, Plaintiffs fail sufficiently to allege a duty to disclose based on an omission of information necessary to prevent existing disclosures from being misleading.  *See* Teva Principal Brief at Part I.B.2.b; *see also Morgan Stanley*, 592 F.3d at 360.  These pleading deficiencies, alone, are fatal to Plaintiffs' Securities Act claims.

### D.    Plaintiffs Fail Adequately To Plead A Strategy Of Systematic Price Increases Or Underlying Antitrust Violation.

Even if Plaintiffs' claims were not legally defective for the foregoing reasons alone – and they are – they also fail for an additional reason.  Like Plaintiffs' Exchange Act claims, Plaintiffs' Securities Act claims are premised on the conclusory allegation that Teva engaged in the alleged "Price-Hike Strategy," or, in the alternative, participated in a price-fixing conspiracy. *See* C ¶¶ 390-93, 396.  For the reasons stated in the Teva Principal Brief, Plaintiffs have failed to plead with specificity that Teva had a strategy of systemic price increases, or that any unlawful anticompetitive conduct actually occurred.  *See* Teva Principal Brief at Parts I.B.2.a and I.C.3.a. Accordingly, their Securities Act claims fail as well.  *See Axis*, 456 F. Supp. 2d at 597 (dismissing claims under §§ 11 and 12(a)(2) for failing sufficiently to allege "either an

underlying anticompetitive scheme to drive other insurers from the market, or the existence of

material misstatements or omissions relating to such an alleged scheme").

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Complaint should be dismissed, with prejudice.[12]

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Jordan D. Hershman*

Jordan D. Hershman (*pro hac vice*)
Jason D. Frank (*pro hac vice*)
Emily E. Renshaw (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Tel (617) 951-8455
Fax (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com

Michael D. Blanchard (ct25891)
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT  06103
Tel: 860.240.2945
Fax: 860.240.2800
michael.blanchard@morganlewis.com

– and –

Jill M. O'Toole (ct27116)
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
Email: jotoole@goodwin.com

*Counsel for Defendants Teva
Pharmaceutical Finance Netherlands III
B.V.*

</div>

---

[12] *See Malin v. XL Capital, Ltd.*, 312 F. App'x. 400, 402-03 (2d Cir. 2009) (affirming denial of leave to replead putative securities class action).

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 14th day of September, 2018, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                    */s/ Jordan D. Hershman*

                    Jordan D. Hershman (*pro hac vice*)
                    **MORGAN, LEWIS & BOCKIUS LLP**
                    One Federal Street
                    Boston, MA 02110-1726
                    Tel (617) 951-8455
                    Fax (617) 951-8736
                    jordan.hershman@morganlewis.com