# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY LTD., THE PHOENIX PENSION LTD., EXCELLENCE GEMEL & HISHTALMUT LTD., EXCELLENCE KESEM ETNS and EXCELLENCE MUTUAL FUNDS,<br><br>    Plaintiffs,<br><br>    v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., EREZ VIGODMAN, EYAL DESHEH, SIGURDUR OLAFSSON, YAACOV ALTMAN, ALLAN OBERMAN, YITZHAK PETERBURG, DIPANKAR BHATTACHARJEE, MICHAEL McCLELLAN, DEBORAH GRIFFIN and MAUREEN CAVANAUGH,<br><br>    Defendants. | **No. 2:18-cv-03305-PD**<br><br><br>**Hon. Paul S. Diamond** |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO TRANSFER

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND .............................................................................3

    A.     The *Ontario* Litigation .........................................3

    B.     The First Set Of Follow-On Lawsuits ........................6

    C.     The Present Actions ......................................8

ARGUMENT ..............................................................................11

I.     TRANSFER IS APPROPRIATE UNDER THE FIRST-FILED RULE. ...............................................................12

    A.     The *Ontario* Litigation Is The First-Filed Action. ..............13

    B.     The *Ontario* Litigation Encompases The Same Subject Matter As The Present Case. ....................................14

    C.     No Exceptional Circumstances Weigh Against Transfer. ..........17

II.    ALTERNATIVELY, TRANSFER IS APPROPRIATE UNDER SECTION 1404(a). ...................................................20

CONCLUSION ...........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Beck v. Arcadia Capital Grp., Inc.*,
  No. 09-CV-1360, 2009 WL 3152184 (E.D. Pa. Sept. 30, 2009)........................16

*Catanese v. Unilever*,
  774 F. Supp. 2d 284 (D.N.J. 2011)....................................................................18

*Chavez v. Dole Food Co.*,
  836 F.3d 205 (3d Cir. 2016) (en banc) .............................................................11

*Cont'l Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960).......................................................................................20, 23

*Crosley Corp. v. Hazeltine Corp.*,
  122 F.2d 925 (3d Cir. 1941) ..............................................................................12

*EEOC v. Univ. of Pa.*,
  850 F.2d 969 (3d Cir. 1988) .........................................................................17, 18

*Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*,
  Civ. No. 09-4855, 2013 WL 5635977 (E.D. Pa. Oct. 15, 2013).......................16

*Goggins v. All. Capital Mgmt., L.P.*,
  279 F. Supp. 2d 228 (S.D.N.Y. 2003) ...............................................................22

*Grodko v. Teva Pharm. Indus. Ltd.*,
  Civ. No. 17-3743, ECF No. 37 (E.D. Pa. Jun. 10, 2018) ...........................*passim*

*Huellemeier v. Teva Pharm. Indus. Ltd.*,
  No. 1:17-cv-485, 2017 WL 5523149 (S.D. Ohio Nov. 17, 2017)........2, 7, 17, 20

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) .....................................................................21, 22, 23

*Kershner v. Komatsu Ltd.*,
  305 F. Supp. 3d 605, 608 (E.D. Pa. 2018)....................................................20, 21

*Palagano v. NVIDIA Corp.*,
  No. 15-1248, 2015 WL 5025469 (E.D. Pa. Aug. 19, 2015)...............................12

*Panitch v. Quaker Oaks Co.*,
  Civ. No. 16-4586, 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017)..................*passim*

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)............................................................................20

*Villari Brandes & Kline, P.C. v. Plainfield Speciality Holdings II, Inc.*,
  Civ. No. 09-2552, 2009 WL 1845236 (E.D. Pa. June 26, 2009) ......................22

*Weber v. Basic Comfort, Inc.*,
  155 F. Supp. 2d 283 (E.D. Pa. 2001)........................................................20, 22

## STATUTES

70 P.S. § 1-402(c) ...............................................................................10, 16

70 P.S. § 1-501(c) ...............................................................................10, 16

15 U.S.C. § 77k...................................................................................7

15 U.S.C. § 78aa(a).............................................................................21

15 U.S.C. § 78u-4(a)(3)(B)....................................................................5

28 U.S.C. § 1391(c)(3).........................................................................21

28 U.S.C. § 1404(a) ............................................................................*passim*

Teva Pharmaceutical Industries Limited ("Teva"), Teva Pharmaceuticals USA, Inc. ("Teva USA"), Erez Vigodman, Eyal Desheh, Sigurdur Olafsson, Yaacov Altman, Allan Oberman, Yitzhak Peterburg, Dipankar Bhattacharjee, Michael McClellan, Deborah Griffin, and Maureen Cavanaugh (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of Defendants' Motion to Transfer.   Just as this Court recently concluded in materially indistinguishable circumstances in *Grodko v. Teva Pharm. Indus. Ltd.*, Civ. No. 17-3743, ECF No. 37 (E.D. Pa. Jun. 10, 2018) (Diamond, J.) ("*Grodko* Order") (attached as "Exhibit A"), well-settled legal principles justify transferring this case to the U.S. District Court for the District of Connecticut because that court is currently adjudicating a case that was filed first and contains the same parties, claims, and allegations.

## PRELIMINARY STATEMENT

This case is the seventh in a series of duplicative stock-drop lawsuits alleging that Teva and its corporate executives misled investors about Teva's financial condition in violation of federal securities law.   This seventh case was filed over twenty months after the first and adds nothing significant to the allegations being litigated in that first-filed case.   In fact, much in the present complaint ("Complaint") was copied from the allegations in the original lawsuit.   That original litigation, which has been proceeding for almost two years now, has been consolidated in the

1

U.S. District Court for the District of Connecticut (the *Ontario* litigation).[1]  Because that case began much earlier, a great deal has already occurred in the *Ontario* litigation:  plaintiffs filed multiple complaints; the district court granted the defendants' motion to dismiss the initial consolidated complaint without prejudice on April 3, 2018, the plaintiffs filed an amended complaint on June 22, 2018 in an attempt to cure the earlier consolidated complaint's deficiencies, and the defendants are now moving to dismiss that amended complaint.  Meanwhile, other plaintiffs have been filing copycat actions in Ohio and in this District.  Judges in both venues, including this Court, have uniformly concluded that those cases should be—and were—transferred to the District of Connecticut to be heard by the same judge who already has extensive familiarity with the dispute underlying these securities fraud claims through the *Ontario* proceedings.  *See Grodko* Order; *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 1:17-cv-485, 2017 WL 5523149 (S.D. Ohio Nov. 17, 2017).  The same principles support transfer of this case as well.

As the Court recently explained in the *Grodko* action, in which the Court transferred a pair of related and similarly overlapping cases to the District of Connecticut, there are two independent grounds for transfer.  Under the first-filed

---

[1] *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 17-cv-00558 (D. Conn.), *originally captioned Galmi v. Teva Pharm. Indus. Ltd.*, No. 16-cv-08259 (C.D. Cal.) (filed Nov. 6, 2016); *see also Leone v. Teva Pharm. Indus. Ltd.*, Case No. 16-cv-09545 (C.D. Cal.) (filed Dec. 27, 2016).

rule, where two cases relate to the same subject matter, the court in which the later-filed case has been filed should ordinarily transfer that case to the court in which the first-filed case has been proceeding. *See Grodko* Order at 4-5. And under 28 U.S.C. § 1404(a), courts should transfer cases to promote the parties' convenience and interests of justice. *See id.* at 5-6. Here, both grounds support transfer; there is no reason for this duplicative litigation to go forward in this Court. The outcome of *Ontario* will largely determine the outcome here, for *Ontario* includes the same parties, claims, and allegations as this lawsuit. The issues in this case will be adjudicated in the *Ontario* litigation. Indeed, the plaintiffs here are, in fact, members of the putative class in *Ontario*.

Allowing this case to go forward in this Court—in parallel with (but behind) the *Ontario* litigation—would simply waste judicial resources and the parties' resources, and would create the risk of inconsistent rulings. Defendants therefore respectfully request that this Court order the case transferred to the District of Connecticut, just as it previously did in *Grodko*.

## BACKGROUND

### A. The *Ontario* Litigation

Nearly two years ago, on November 6, 2016, Amram Galmi filed a class action complaint in the U.S. District Court for the Central District of California against Teva, Erez Vigodman, and Eyal Desheh, alleging violations of Sections

3

10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). *Galmi v. Teva Pharm. Indus. Ltd.*, No. 16-cv-08259 (C.D. Cal.), ECF No. 1. Galmi alleged that statements in Teva's 2014 and 2015 Form 20-F filings misrepresented or misleadingly failed to disclose facts relating to Teva's generic drug business. *Id.* ¶¶ 15-21. On December 27, 2016, plaintiff Anthony Leone filed a very similar class action complaint in the same court. *Leone v. Teva Pharm. Indus. Ltd.*, No. 16-cv-09545 (C.D. Cal.), ECF No. 1.

Teva requested that the California district court transfer the *Galmi* and *Leone* actions to the Eastern District of Pennsylvania, where Teva USA, Teva's U.S. subsidiary, is located. *Galmi*, ECF No. 37. The district court noted that the two actions were based on the same facts and alleged the same claims, and concluded that they should be consolidated. Order, *Galmi*, ECF No. 74 (attached as "Exhibit B"). The district court also agreed to transfer the cases, but it declined to transfer to this District, stating that "the defendant's choice of forum is given little weight," and instead chose the District of Connecticut, where related antitrust litigation was underway and where a non-party witness was located. *Id.* The cases were transferred on April 3, 2017. *Id.*

In Connecticut, the consolidated cases were assigned to Judge Stefan R. Underhill, who agreed that consolidation was proper. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 17-cv-00558 (D. Conn.), ECF No. 120.

The cases then proceeded through the Private Securities Litigation Reform Act ("PSLRA") process of appointing lead plaintiff and lead class counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B). On July 11, 2017, after a hearing, Judge Underhill resolved three competing motions for appointment as lead plaintiff in a detailed, 28-page opinion selecting the Ontario Teachers' Pension Plan Board as Lead Plaintiff. *Ontario*, ECF No. 124. Judge Underhill issued a scheduling order directing the Lead Plaintiff to file a consolidated class action complaint by September 11, 2017. *Ontario*, ECF Nos. 125, 126. The case was recaptioned to reflect the identity of the new Lead Plaintiff. *Ontario*, ECF No. 137.

The Lead Plaintiff then filed a consolidated class action complaint that spanned over 300 pages and included 1,087 paragraphs of allegations. *Ontario*, ECF No. 141 ("*Ontario* Consolidated Complaint") (attached as "Exhibit C"). The main theme of the allegations was that the defendants misled investors by failing to disclose that Teva's revenues from the sales of its generic drug products were allegedly attributable to unsustainable collusive price-fixing in violation of the antitrust laws. *See id.* ¶ 4. The defendants moved to dismiss the complaint. After a full round of briefing on the defendants' motion, Judge Underhill heard oral argument on April 3, 2018. At the conclusion of argument, Judge Underhill granted the defendants' motion to dismiss from the bench, although he gave the Lead Plaintiff leave to re-plead.

On June 22, 2018, the *Ontario* Lead Plaintiff filed a 422-paragraph Amended Consolidated Class Action Complaint. *Ontario*, ECF No. 226 ("*Ontario* Amended Complaint") (attached as "Exhibit D"). Although many of the allegations were the same as before, the Amended Complaint included fewer allegations of collusive price-fixing and principally accused the defendants of misleading investors by failing to disclose that Teva's generic drug revenues were allegedly attributable to an unsustainable "Price-Hike Strategy." *See id.* ¶ 1. The defendants filed motions to dismiss the *Ontario* Amended Complaint on September 14, 2018. *Ontario*, ECF Nos. 238, 239, 240.

As explained below, the *Ontario* litigation includes the same parties, claims, and allegations as the present action.

## B.    The First Set Of Follow-On Lawsuits

After *Ontario*'s lead-plaintiff ruling, four additional securities fraud lawsuits against Teva and Teva executives followed. Although they were filed in different forums, they now are all pending in the District of Connecticut before the same judge as *Ontario*.

*First*, on July 17, 2017, Robert W. Huellemeier filed a lawsuit purporting to allege derivative claims or, alternatively, asserting claims on behalf of a class of those who purchased Teva stock through its employee stock purchase plan. *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 17-cv-00485 (S.D. Ohio), ECF No. 1

6

("*Huellemeier* Complaint"). This complaint's principal allegation was that Teva and its officers made misrepresentations and omissions in violation of Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k. *Huellemeier* Compl. ¶¶ 109-15. The defendants moved to transfer the *Huellemeier* action to the District of Connecticut under the first-filed (or "first-to-file") rule and 28 U.S.C. § 1404(a) because its allegations duplicated those made in *Ontario*. On November 17, 2017, Judge Susan J. Dlott granted the motion to transfer under the first-filed rule. Applying that rule, Judge Dlott held that the case's parties, claims, and allegations were "similar enough to those in the *Ontario Teachers* case to make transfer appropriate." *Huellemeier*, 2017 WL 5523149, at *4-5.

*Second*, on August 3, 2017, OZ ELS Master Fund, Ltd. and several related entities filed a complaint alleging violations of Sections 10(b), 18(a), and 20(a) of the Exchange Act as well as Sections 11, 12(a)(2), and 15 of the Securities Act. *OZ ELS Master Fund, Ltd. v. Teva Pharmaceutical Indus. Ltd.*, No. 17-cv-01314 (D. Conn.), ECF No. 1. That complaint was filed in the District of Connecticut and assigned to Judge Underhill because he was presiding over the *Ontario* litigation. *OZ*, ECF No. 8. After a status conference, the parties agreed to stay the case pending resolution of an anticipated motion to dismiss in *Ontario*. *OZ*, ECF No. 19.

*Third*, on August 21, 2017, Elliot Grodko filed a class action complaint in this District, alleging violations of Sections 10(b) and 20(a) of the Exchange Act as well

as a violation of the securities laws of the State of Israel. *Grodko*, ECF No. 1 ("*Grodko* Complaint"). Then, *fourth*, on August 30, 2017, Barry Baker filed a class action complaint that was substantively identical to the *Grodko* Complaint—except that it omitted the Israeli law claim. *Baker v. Teva Pharm. Indus. Ltd.*, Civ. No. 17-3902, ECF No. 1 (E.D. Pa.). Those cases were consolidated because of their similarity, *Grodko*, ECF No. 16, and the defendants moved to transfer both to the District of Connecticut. On April 10, 2018, this Court granted transfer in a thorough 16-page opinion explaining that Third Circuit precedents independently justified transfer under *both* the first-filed rule and Section 1404(a). *Grodko* Order at 1, 7-15.

### C.     <u>The Present Action</u>

After the transfer of *Grodko* and the filing of the *Ontario* Amended Complaint, Plaintiffs filed their Complaint in this action on August 3, 2018. ECF No. 1 ("*Phoenix* Complaint"). After the case was randomly assigned to the Honorable Robert F. Kelly, Defendants moved to have the case reassigned to this Court based on the relatedness of this action to the *Grodko*/*Baker* actions. ECF No. 23. After conferring with Your Honor, Judge Kelly agreed that this case is related to *Grodko*/*Baker* and the case was reassigned to this Court. ECF No. 24.

Unsurprisingly, in addition to being related to *Grodko* and *Baker*, the *Phoenix* Complaint duplicates and is encompassed by the long-running *Ontario* litigation.

Like *Ontario*, *Phoenix* is a securities-fraud action brought by Teva investors based on alleged misrepresentations and omissions by the company and various officers and employees. *Ontario* is a putative securities-fraud class action, with a class that includes those who purchased Teva securities between February 6, 2014 and August 2, 2017. *Ontario* Am. Compl. ¶ 355. The *Phoenix* Plaintiffs claim to have purchased Teva securities between October 30, 2013 and February 8, 2018. *Phoenix* Compl. ¶ 1. In particular, they claim to have purchased Teva American Depositary Shares through a December 3, 2015 stock offering. *Id.* ¶ 805. That stock offering is also at issue in the *Ontario* case. *See Ontario* Am. Compl. ¶¶ 378-82. It thus appears that the *Phoenix* Plaintiffs would be within the proposed *Ontario* class. And nearly all of the defendants overlap as well. Defendants Teva, Vigodman, Desheh, Olafsson, Oberman, Griffin, and Cavanaugh are named in both the *Phoenix* Complaint and the *Ontario* Amended Complaint, and Defendants Altman, Peterburg, Bhattacharjee additionally were named in the *Ontario* Consolidated Complaint before being dismissed from that case. *Compare Phoenix* Compl. ¶¶ 44-55, *with Ontario* Am. Compl. ¶¶ 24-31, *and Ontario* Consolidated Compl. ¶¶ 72, 75-76.

The claims asserted in *Phoenix* are also duplicative. The *Phoenix* Complaint asserts claims for alleged violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. *Phoenix*

Compl. ¶¶ 771-86, 826-52.  The *Ontario* Amended Complaint includes all these claims.  *Ontario* Am. Compl. ¶¶ 341-47, 397-422.[2]

Finally, even the specific allegations and legal theories in the *Phoenix* Complaint duplicate those in the *Ontario* litigation.  Plaintiffs here accuse Defendants of misleading investors about Teva's U.S. generic drugs business—in particular, by not disclosing an alleged "Price-Hike Strategy" and anticompetitive collusion that supposedly led to unsustainable revenues and "Inflated Profits."  *See Phoenix* Compl. ¶¶ 4-38.  The *Ontario* Lead Plaintiff has charged the same.  The original Consolidated Complaint rested upon allegations of anticompetitive collusion that led to "illicit profits".  *See, e.g.*, *Ontario* Consolidated Compl. ¶¶ 4-23.  The now-pending Amended Complaint focuses on allegedly systematic price increases (whether collusive or not), and even uses the "Price-Hike Strategy" and "Inflated Profits" labels that have been copied and pasted into the *Phoenix* Complaint.  *See Ontario* Am. Compl. ¶¶ 1-16.

---

[2] The *Phoenix* Complaint also asserts claims for alleged violations of Sections 1-402(c) and 1-501(c) of the Pennsylvania Securities Act and alleged violations of the Israeli securities laws.  *Phoenix* Compl. ¶¶ 787-804.  The *Ontario* Lead Plaintiff similarly included an Israeli law claim in the Consolidated Complaint but dropped it from the Amended Complaint.  *See Ontario* Consolidated Compl. ¶¶ 1076-85.  And the *Grodko* case transferred to Connecticut includes an Israeli law claim, too.  *See Grodko* Compl. ¶¶ 60-63; *Grodko* Order 10.  Regardless, these formally non-federal claims add nothing significant to the federal law claims because, as discussed below, in substance they mirror the federal securities claims at the heart of all the complaints.

Given this high degree of similarity, it is not surprising that the *Phoenix* Complaint and *Ontario* Amended Complaint are based upon the same statements made in Teva's SEC filings and on calls with analysts and investors. *Compare, e.g.*, *Phoenix* Compl. ¶¶ 483-84 (annual Form 20-F Filings), *and id.* ¶¶ 488-90 (conference calls on July 27, 2015, Oct. 29, 2015, Nov. 19, 2015), *with Ontario* Am. Compl. ¶¶ 166-69, 171 (same).  At times, in fact, the *Phoenix* Complaint simply lifts whole paragraphs, sections, and charts from the amended and original *Ontario* complaints, copying large amounts of the *Ontario* pleadings with only modest editing.  *Compare, e.g.*, *Phoenix* Compl. ¶ 99, App'x A, *with Ontario* Am. Compl. ¶ 40, App'x A; *and Phoenix* Compl. ¶¶ 58-65, 127-55, 296-349, *with Ontario* Consolidated Compl. ¶¶ 37-45, 80-109, 139-240.

## ARGUMENT

Just as this Court recently held in *Grodko*, two independent doctrines justify transfer in these circumstances.  *Grodko* Order 4-6.  The long-settled "first-filed" rule "is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority."  *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc).  Separately, 28 U.S.C. § 1404(a) authorizes courts to transfer any action for the convenience of parties and witnesses and the interest of justice.  Both doctrines afford district courts wide discretion to transfer cases where doing so would serve

efficiency and equity. *See, e.g.*, *Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *2-3 (E.D. Pa. Aug. 19, 2015). And both doctrines apply here.

As shown below, courts regularly exercise their discretion to transfer actions under each of these rationales where, as here, a duplicative action is filed after a class action is underway. Transfer in such circumstances is appropriate because it avoids (1) the waste of judicial resources (as well as the resources of parties and witnesses) and (2) the risk of inconsistent rulings. *Grodko* Order 10, 14-15. For these reasons, just as in *Grodko*, this Court should transfer this case to the District of Connecticut, the court that has been adjudicating the *Ontario* litigation for over a year and has issued several major rulings during that time.

## I. TRANSFER IS APPROPRIATE UNDER THE FIRST-FILED RULE.

The first-filed rule exists because "[t]he economic waste involved in duplicating litigation is obvious"—as is "its adverse effect upon the prompt and efficient administration of justice." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). Accordingly, "[c]ourts already heavily burdened with litigation . . . should . . . not be called upon to duplicate each other's work." *Id.* Instead, they possess wide discretion to transfer a duplicative second-filed action to the forum where the first-filed action is pending, and flexibility to do so even when the actions are not "mirror image cases where the parties and the issues perfectly align." *Panitch v. Quaker Oaks Co.*, Civ. No. 16-4586, 2017 WL 1333285, at *4 (E.D. Pa. Apr. 5,

2017) (Diamond, J.) (citations omitted) (ordering transfer of duplicative class-action under first-filed rule and § 1404(a)); *Grodko* Order 4-5.

The present lawsuit overlaps to an enormous extent with that in the *Ontario* litigation, which the parties have been vigorously litigating for more than a year in front of a judge who has become deeply familiar with the case's subject matter. Requiring the parties to litigate the same issues in this Court would require an enormous duplication of effort, precisely the problem that the first-filed rule seeks to avoid. *Grodko* Order 10. Much like the transferred *Grodko* cases, this case calls for a textbook application of the first-filed rule, and none of the rare exceptions to the rule applies.

### A. The *Ontario* Litigation Is The First-Filed Action.

The *Ontario* litigation is a result of the consolidation of the *Galmi* and *Leone* actions, which were respectively commenced on November 6 and December 27, 2016—the first securities lawsuits against Teva and its officers. The Complaint in this case was filed almost a year and three-quarters later, on August 3, 2018. As discussed above, the *Galmi* and *Leone* cases were consolidated, underwent the PSLRA lead-plaintiff appointment process, and have had a full round of motion to dismiss briefing and argument which led to dismissal and to the filing of the *Ontario* Amended Complaint on June 22, 2018 (nearly a month and a half before Plaintiffs

here filed their Complaint).  There can be no question that *Ontario* is the first-filed action for purposes of the first-filed rule.  *See Grodko* Order 7-8.

### B.   The *Ontario* Litigation Encompasses The Same Subject Matter As The Present Case.

The first-filed *Ontario* litigation also encompasses the "subject matter" of this lawsuit.  *See Grodko* Order 8-10.  Both actions attempt to impose liability on Teva and its officers and employees for alleged violations of the federal securities laws. The core legal theory in both cases is that it was misleading for the defendants not to disclose the extent to which Teva's revenues from its generic drug business over the past half-decade supposedly depended on an undisclosed "Price-Hike Strategy." In the original *Ontario* Consolidated Complaint, the Lead Plaintiff contended that Teva engaged in collusive price-fixing with competitors to raise prices in violation of antitrust law.  *See, e.g.*, *Ontario* Consolidated Compl. ¶¶ 4-23.  After Judge Underhill held that these allegations were insufficient to support claims for alleged violations of the securities laws, the Lead Plaintiff has attempted to reinvent its legal theory around an allegedly undisclosed "Price-Hike Strategy" that generated supposed "Inflated Profits." *See, e.g.*, *Ontario* Am. Compl. ¶¶ 1-16.  In this case, Plaintiffs likewise allege misstatements and omissions based on an undisclosed "Price-Hike Strategy." *Phoenix* Compl. ¶¶ 1-38.

But the similarities do not end with the two actions' overarching legal theories.  They also extend to very specific aspects of the complaints.  *See Grodko*

Order 9.  The *parties* overlap almost entirely:  *Ontario* is a putative class action with a class defined to include investors who purchased Teva securities between February 6, 2014 and August 2, 2017.  *Ontario* Am. Compl. ¶ 355.  The *Phoenix* Plaintiffs would fall into that definition.  *See Phoenix* Compl. ¶¶ 1, 805.

Likewise, most of the defendants are the same.  Between the original and amended *Ontario* complaints, nearly all the Defendants in this case—specifically, Teva, Vigodman, Desheh, Olafsson, Altman, Oberman, Peterburg, Bhattacharjee, Griffin, and Cavanaugh—have also been named in *Ontario*.  *Compare Phoenix* Compl. ¶¶ 44-55, *with Ontario* Am. Compl. ¶¶ 24-31, *and Ontario* Consolidated Compl. ¶¶ 72, 75-76.

The *claims* in the two lawsuits also have virtually complete overlap.  *See Grodko* Order 9-10.  Both cases currently involve claims for alleged violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.  *Phoenix* Compl. ¶¶ 771-86, 826-52; *Ontario* Am. Compl. ¶¶ 341-47, 397-422.  In addition, the *Phoenix* Complaint's claim for alleged violations of the Israel Securities Law of 1968 mirrors a claim that was in the original *Ontario* Consolidated Complaint but later dropped after the first dismissal.  *Compare Phoenix* Compl. ¶¶ 796-804, *with Ontario* Consolidated Compl. ¶¶ 1076-85.  (An Israeli law claim also appears in the transferred *Grodko* case.  *See Grodko* Compl. ¶¶ 60-63; *Grodko* Order 10.)  Both sides agree, however, that the Israeli law claim

simply mirrors the federal securities law claims. *Phoenix* Compl. ¶¶ 802-03. So too does the state law claim that *Phoenix* adds under Sections 1-402(c) and 1-501(c) of the Pennsylvania Securities Act ("PSA"). *See Phoenix* Compl. ¶¶ 787-04. Indeed, "the cases hold that the PSA is to be construed in the same manner as similar provisions of federal securities law." *Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*, Civ. No. 09-4855, 2013 WL 5635977, at *8 (E.D. Pa. Oct. 15, 2013); *see also Beck v. Arcadia Capital Grp.*, Inc., No. 09-CV-1360, 2009 WL 3152184, at *9 (E.D. Pa. Sept. 30, 2009) ("[T]he federal courts and the Pennsylvania trial courts that have considered the issue have uniformly treated PSA claims as requiring the same elements of proof as required under Rule 10b-5 and have therefore analyzed them in identical fashion."). The presence of these additional non-federal claims therefore does not meaningfully change the subject matter of the *Phoenix* case or the overlap with the *Ontario* case. Even if it did, that would not warrant a departure from the first-filed rule. *See, e.g.*, *Panitch*, 2017 WL 1333285, at *4 ("The additional claims in this action do not render the first-filed rule inapplicable.").

Finally, the particular *allegations* in the two actions also overlap considerably. *See Grodko* Order 10. Both cases focus on allegedly misleading statements in Teva's SEC filings and calls with analysts and investors. *Compare, e.g.*, *Phoenix* Compl. ¶¶ 483-84 (annual Form 20-F Filings), *and id.* ¶¶ 488-90 (conference calls on July 27, 2015, Oct. 29, 2015, Nov. 19, 2015), *with Ontario* Am. Compl. ¶¶ 166-

69, 171 (same).  Tellingly, in more than a few places, the *Phoenix* Complaint copies, *verbatim*, large amounts of language from the amended and original *Ontario* complaints.  *Compare, e.g.*, *Phoenix* Compl. ¶ 99, App'x A, *with Ontario* Am. Compl. ¶ 40, App'x A; *and Phoenix* Compl. ¶¶ 58-65, 127-55, 296-349; *Ontario* Consolidated Compl. ¶¶ 37-45, 80-109, 139-240.

In short, the legal and factual issues in these cases are "substantially identical" to legal and factual issues in the Connecticut litigation, and "the judicial efficiency rationale undergirding the first-filed rule" would be best served through transfer. *Panitch*, 2017 WL 1333285, at *4 (citation omitted).  Just as this Court concluded in *Grodko* and as the district court concluded in *Huellemeier*, this duplicative litigation against Teva and its officers should be transferred to the District of Connecticut under the first-filed rule.  *Grodko* Order 10 ("[G]iven the substantial overlap in subject-matter, transfer under the first-filed rule would prevent inconsistent rulings and duplication of judicial effort."); *Huellemeier*, 2017 WL 5523149, at *5 ("The parties and claims in this case are similar enough to those in the *Ontario Teachers* case to make transfer appropriate.").

## C.  No Exceptional Circumstances Weigh Against Transfer.

While there are certain exceptions to the first-filed rule, they are "rare" and do not apply in this case.  *Grodko* Order 11; *EEOC v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988).  "[I]nvocation of the rule will usually be the norm," and only

"exceptional circumstances" justify departing from the rule. *EEOC*, 850 F.2d at 979. Such exceptional circumstances would arise in cases of "[b]ad faith" or "forum shopping," "when the second-filed action ha[s] developed further than the initial suit," or "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* at 976; *see also Grodko* Order 11-12.

Nothing like that is present here, and this is not the exceptional case where refusal to transfer would be justified. *Grodko Order* 11. "Normally, a plaintiff must establish that the defendant in the second action filed the first action to avoid the second forum." *Panitch*, 2017 WL 1333285, at *5 (quoting *Catanese v. Unilever*, 774 F. Supp. 2d 284, 690-91 (D.N.J. 2011)) (ellipses omitted). But here, as in *Panitch*, Teva "filed none of the prior actions" and simply "desire[s] to litigate in one forum all the identical class actions filed against it [which] is entirely understandable." *Id.*

Significantly, Teva did not choose the District of Connecticut as a forum. When Teva was faced with securities litigation in California, it sought transfer to *this District*, not the Connecticut District Court. As explained above, despite Teva's initial request to litigate here in the Eastern District of Pennsylvania, the California district court transferred the *Galmi/Leone* cases to the District of Connecticut on the ground that "the defendant's choice of forum is given little weight." *Galmi*, ECF

No. 74 at 4.  In making this motion, then, Defendants are not engaged in the type of forum-shopping that would support a rare exception to the first-filed doctrine. *Grodko* Order 11.

Nor is there any argument that this action has developed further than *Ontario*. *Id.*  On the contrary, Judge Underhill has already heard oral argument and issued a decision dismissing the first iteration of the *Ontario* Lead Plaintiff's complaint, *Ontario*, ECF No. 218, the Lead Plaintiff filed an Amended Complaint, *Ontario*, ECF No. 226, which the defendants have moved to dismiss, *Ontario* ECF Nos. 238, 239, 240.  Before that, moreover, Judge Underhill heard argument on competing motions to appoint Lead Plaintiff back on April 26, 2017, *Ontario*, ECF No. 119, and issued a 28-page opinion appointing Lead Plaintiff on July 11, 2017, *Ontario*, ECF No. 124.[3]  In total, the *Ontario* case has been proceeding steadily for almost two years—in Connecticut before Judge Underhill for most of that time—and there have been 240 filings.  That is more than enough progress to support transfer, especially given how much less has happened here.  *Grodko* Order 11.

---

[3] The *Ontario* Lead Plaintiff was chosen through a competitive process mandated by the PSLRA as the "most adequate" among three competitors for the position, in part because it was an institutional investor with experience leading class action litigation and had the largest financial interest in the case.  *Ontario*, ECF No. 124 at 25-27. The *Ontario* Lead Plaintiff claims to have purchased $58 million of Teva stock and to have lost $23 million.  *Id.* at 25.

Because *Ontario* was the first-filed case involving the present subject matter and no exception to the first-filed rule applies, this case should be transferred to the District of Connecticut like *Grodko* and *Huellemeier* before it.

## II. ALTERNATIVELY, TRANSFER IS APPROPRIATE UNDER SECTION 1404(a).

Even if transfer were not warranted under the first-filed doctrine—and it is—it would be warranted under 28 U.S.C. § 1404(a). *Grodko* Order 12. That statute states, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Though "each case must turn on its particular facts" and requires courts to balance multiple factors, the statute's overarching purpose is "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Panitch*, 2017 WL 1333285, at *3 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). Permitting these actions to remain in this Court would run counter to Section 1404(a) and its purposes.

"The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district." *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605, 608 (E.D. Pa. 2018) (quoting *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001)). Under the federal securities laws and

the venue provision for defendants not resident in the United States, there is no question that these cases could have been brought either here or in the District of Connecticut.  *See* 15 U.S.C. § 78aa(a); 28 U.S.C. § 1391(c)(3).  The only question under Section 1404(a) is whether transfer is appropriate in light of public and private interests identified by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Under *Jumara*, relevant "[p]ublic interests include:  the 'enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and, familiarity of the trial judge with the applicable state law in diversity cases.'" *Kershner*, 305 F. Supp. 3d at 611 (citation omitted).  In addition, "[p]rivate interests include:  'plaintiff's choice of venue; defendant's preference; where the claim arose; convenience of the witnesses to the extent they might be unavailable for trial in one of the fora; and, the extent to which records or other documentary evidence would be available for production.'" *Id.* (citation omitted).  *Grodko* Order 12-15.

The *Jumara* factors readily point toward transfer.  *Grodko* Order 15.  In fact, "the presence of a related action in the transferee forum"—here, the *Ontario* litigation—"is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would

suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Speciality Holdings II, Inc.*, Civ. No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009); *see also Goggins v. All. Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) ("Concerns over judicial efficiency outweigh all other factors in this case, and are dispositive of the issue."); *Grodko* Order 12.

Here, however, the other *Jumara* factors do *not* weigh against, but rather favor transfer.  Although the plaintiff's choice of forum is often due significant weight, "where Plaintiff chooses a forum other than her state of residence, her choice is given less weight." *Weber*, 155 F. Supp. 2d at 285.  That is the situation here, since "Plaintiffs are subsidiaries of the Phoenix Insurance Company Ltd . . . , an insurance and financial services conglomerate headquartered in Israel." *Phoenix* Compl. ¶ 43. "Therefore, Plaintiff's only contact within this jurisdiction appears to be through her attorney's office and as the convenience of the litigating attorneys should not be considered in evaluating transfer of venue, this fact does not weigh in favor of preserving her choice of venue." *Weber*, 155 F. Supp. 2d at 285.  But Defendants certainly have a strong preference for litigating these issues in the District of Connecticut. *Grodko* Order 12.  It would be extremely expensive for Teva to litigate the same claims in two separate districts, which could "lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall

almost entirely on the company" and the individual Defendants.  *Panitch*, 2017 WL 1333285, at *7; *Grodko* Order 13-14.

Apart from the parties' preferences and convenience, the remaining *Jumara* factors also favor transfer on balance.  "The public is obviously well-served by avoiding duplicative litigation," and, indeed, "'a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'"  *Panitch*, 2017 WL 1333285, at *7 (quoting *Cont'l Grain*, 364 U.S. at 26); *see also Grodko* Order 13-15.  Considerations of court congestion cannot possibly favor requiring *two* courts to oversee the progress of these large cases, nor does this federal securities case involving numerous Israeli residents qualify as a "local controversy" that should be decided in Pennsylvania.  *Panitch*, 2017 WL 1333285, at *8.  Further, while this case includes a Pennsylvania law claim, as already explained that claim mirrors the federal law claims; so this Court's comparative familiarity with Pennsylvania law, which ordinarily receives "little weight" to begin with, is inconsequential here.  *See id.* (citation omitted).  In sum, much as this Court concluded in *Grodko*, the balance of "private and public *Jumara* factors weigh in favor of transfer under § 1404(a)."  *Grodko* Order 15.

## CONCLUSION

For all these reasons, the Court should grant Teva's motion to transfer this action to the District of Connecticut.


DATED:  October 9, 2018                    Respectfully submitted,


                                           */s/  Marc J. Sonnenfeld*
                                           Marc J. Sonnenfeld, No. 17210
                                           **MORGAN, LEWIS & BOCKIUS LLP**
                                           1701 Market Street
                                           Philadelphia, PA  19103
                                           Tel:   215.963.5000
                                           Fax:  215.963.5001
                                           marc.sonnenfeld@morganlewis.com

                                           Jordan D. Hershman (*pro hac vice* pending)
                                           Jason D. Frank (*pro hac vice* pending)
                                           Emily E. Renshaw (*pro hac vice* pending)
                                           **MORGAN, LEWIS & BOCKIUS LLP**
                                           One Federal Street
                                           Boston, MA  02110
                                           Tel:   617.951.8000
                                           Fax:   617.951.8736
                                           jordan.hershman@morganlewis.com
                                           jason.frank@morganlewis.com
                                           emily.renshaw@morganlewis.com

                                           *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of October, 2018, a true and correct copy of the foregoing Defendants' Motion to Transfer and supporting memorandum of law was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/  Marc J. Sonnenfeld*
Marc J. Sonnenfeld