UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, Individually and as Lead Plaintiff on Behalf of All Others Similarly Situated; and<br><br>ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and as Named Plaintiff on Behalf of All Similarly-Situated Bond Purchasers,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD., EREZ VIGODMAN, EYAL DESHEH, SIGURDUR OLAFSSON, DEBORAH GRIFFIN, and TEVA PHARMACEUTICAL FINANCE NETHERLANDS III B.V.,<br><br>　　　　　Defendants. | Civil Action No. 3:17-cv-00558 (SRU)<br><br><br>CLASS ACTION |

**HMG GLOBAL INITIATIVE INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO INTERVENE TO OBTAIN AN ORDER
STRIKING THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  PROCEDURAL BACKGROUND...................................................................3

III.  ARGUMENT ........................................................................................................6

    A.  The SAC Is An Improper End-Run Around The PSLRA's Notice And Lead
         Plaintiff Selection Process .........................................................................6

    B.  Ontario Teachers Lacks Class Standing To Assert  And Cannot Adequately
         Represent The Transferred Action's Class .........................................11

    C.  The Court Should Strike The New Allegations In The Second Amended
         Complaint And Order Ontario Teachers To Proceed Solely On The Claims
         In The First Amended Complaint ...........................................................13

    D.  HMG Fulfills The Requirements To Intervene...................................14

IV.  CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................13

*In re Bank of Am. Corp. Sec., Derivative &*
  *Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)............................................................14

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ...................................................................................15

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017)..............................................................................................14

*Cent. States Southeast & Southwest Areas Health &*
  *Welfare Fund v. Merck–Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)......................................................................................13

*In re Cybertronics, Inc. Sec. Litig.*,
  468 F. Supp. 2d 936 (S.D. Tex. 2006) .......................................................................8

*Dube v. Signet Jewelers Ltd.*,
  2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)................................................... *passim*

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017).....................................................................3, 9

*Hachem v. Gen. Elec. Inc.*,
  2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018)............................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  947 F. Supp. 2d 366 (S.D.N.Y. 2013)........................................................................9

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  2005 WL 5327775 (N.D. Cal. July 5, 2005)..................................................... *passim*

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)......................................................................................11

*Raines v. Byrd*,
  521 U.S. 811 (1997)..................................................................................................12

*Ravens v. Iftikar*,
  174 F.R.D. 651 (N.D. Cal. 1997)......................................................................7

*Ret. Bd. of the Policemen's Annuity & Ben. Fund
  of the City of Chicago v. Bank of New York Mellon*,
  775 F.3d 154 (2d Cir. 2014).....................................................................2, 4, 12

*In re Select Comfort Corp. Sec. Litig.*,
  2000 WL 35529101 (D. Minn. Jan. 27, 2000)..........................................................8

*In re STEC Inc.*,
  2010 WL 11469019 (C.D. Cal. July 14, 2010)...........................................................9

*Teamsters Local 445 Freight Div.
  Pension Fund v. Bombardier, Inc.*,
  546 F.3d 196 (2d Cir. 2008)........................................................................13

*Teamsters Local 445 Freight Div.
  Pension Fund v. Bombardier, Inc.*,
  2005 WL 1322721 (S.D.N.Y. June 1, 2005) ......................................................8, 9

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  2013 WL 2247394 (C.D. Cal. May 9, 2013) ...........................................................9

**Federal Statutes**

15 U.S.C. § 78t-1 ..............................................................................*passim*

15 U.S.C. § 78u-4(a)(3)(A)........................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................7

**Other Authorities**

6 Moore's Federal Practice § 24.20 (3d ed.).......................................................16

Fed. R. Civ. P. 23(a) ..........................................................................13

Fed. R. Civ. P. 24 .............................................................................14

Fed. R. Civ. P. 24(a) ..........................................................................14

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................16

Fed. R. Civ. P. 24(b)(3).........................................................................16

Fed. R. Civ. P. 24(c) ..........................................................................15

Fed. R. Civ. P. 26(f)............................................................................6

H.R. Conf. Rep. No. 104-369 (1995)............................................................................................7

## I.      INTRODUCTION

The Court should allow HMG Global Initiative Inc. ("HMG") to intervene to obtain an order striking the new claims and allegations in the Second Amended Complaint ("SAC") as an improper pleading under the Private Securities Litigation Reform Act ("PSLRA").[1]  Without providing notice to class members, Lead Plaintiff Ontario Teachers' Pension Plan Board ("Ontario Teachers") has filed an amended pleading that "substantially alters the claims and class members."[2]  In a calculated gambit to swallow the Transferred Action, the SAC has "dramatically alter[ed] the contours of this lawsuit" by: (1) extending this action's class period ***again*** by nearly two years (ECF No. 310 at ¶ 1); (2) alleging the completely different false statements (*id*. at ¶¶ 250-55) and corrective disclosures alleged in the Transferred Action (*id*. at ¶¶ 372-76); and (3) naming the completely different individual defendants (*id*. at 31-32).[3]

Yet, the record establishes that Ontario Teachers is by no means a proper representative of the newly alleged class, as the PSLRA so intends.  Preliminarily, unlike other cases where the lead plaintiff actively sought to incorporate new class members' claims, Ontario Teachers stridently opposed prosecution of the Transferred Action's claims.  Specifically, in an unsolicited

---

[1] Separately, by January 3, 2020, HMG will file an opposition to the parties' joint motion to consolidate *Emps.' Ret. Sys. of the City of St. Petersburg, Florida v. Teva Pharm. Indus. Ltd*., No. 3:19-cv-01768-SRU (D. Conn.) with the instant action for all purposes, but will not oppose coordination or limited consolidation with this case to facilitate and streamline discovery.  At the same time, HMG will suggest modifications to the proposed order of consolidation submitted by the parties to conform to the requirements of the PSLRA and standing.

[2] *Dube v. Signet Jewelers Ltd*., No. 1:16-cv-06728-JMF, 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017) (courts require PSLRA notice where amended complaint "substantially alters the claims or class members.") (citing cases).

[3] *In re Leapfrog Enter., Inc. Sec. Litig*., No. 5:03-cv-05421-RMW, 2005 WL 5327775, at *3-4 (N.D. Cal. July 5, 2005) (lead plaintiff overstepped its authority by filing amended complaint "that dramatically alters the contours of the lawsuit.").

submission opposing the transfer of the case to this Court, Ontario Teacher disclaimed interest, arguing this case and the Transferred Action should proceed independently given their "separate and distinct" claims.  ECF No. 33 at 2.

In any case, Ontario Teachers lacks class standing to pursue the Transferred Action's claims.  Ontario Teachers has no financial stake in proving the Transferred Action's claims, as it made **no** purchases relating to the new false statements.  Moreover, as Ontario Teachers has admitted, Ontario Teachers' claims and those of the Transferred Action's class "are not sufficiently related," as they involve "entirely different alleged false statements and a different theory of falsity," and "there is no overlap between the individual defendants."  ECF No. 33 at 2. Thus, according to Ontario Teachers, "discovery and proof" in the two actions will be "separate and distinct."  *Id*.  As a result, Ontario Teachers' claims do not implicate the "same set of concerns" as those of the Transferred Action's class, thereby prohibiting Ontario Teachers from asserting them.[4]

What's more, Ontario Teachers' unprecedented collaboration with Defendants in filing the SAC raises serious concerns regarding its adequacy and typicality.  In addition to consenting to the filing of the SAC, Defendants moved jointly with Ontario Teachers to consolidate the Transferred Action for all purposes.  Moreover, Defendants gifted Ontario Teachers an unprecedented waiver of rights and defenses – including agreements not to challenge Ontario Teachers' standing, adequacy, and typicality, as well as forgo any motion to dismiss the SAC

---

[4] *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (named plaintiff lacked class standing since its claims "[did] not implicate the 'same set of concerns' as those of absent class members;" named plaintiff did not purchase the same investments and the absent class members' claims involved "significant differences in the proof.").

(ECF No. 311); all of which suggests collusion between counsel for the Lead Plaintiff and counsel for the Class's adversaries.

In short, with the SAC and motion to consolidate, Ontario Teachers' and Defendants' motives are clear: to evade the PSLRA's requirements and thereby wrest control of the Transferred Action—while at the same time placing the valuable "distinct and separate" claims asserted in the Transferred Action in the hands of a lead plaintiff that lacks standing to assert and has expressed a disinterest in prosecuting them. The Court should not permit such an improper end-run around the PSLRA. Based on HMG's significant purchases during the Expanded Class Period and its substantial losses sustained on its Teva ADS investments, HMG is entitled to intervene in the pending action to seek an order striking the new allegations and claims in the SAC.

## II.    PROCEDURAL BACKGROUND

Ontario Teachers' Pension Plan Board ("Ontario Teachers") originally sought and was appointed to serve as lead plaintiff on behalf of a class of persons who purchased or acquired Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company") American Depository Shares ("ADSs") between February 10, 2014, and November 3, 2016 (the "Original Class"). ECF No. 25; *see also Galmi v. Teva Pharm. Indus. Ltd*., 302 F. Supp. 3d 485, 491 (D. Conn. 2017). Through various amended complaints, Ontario Teachers has litigated this securities class action over the past two years on behalf of a broader class of investors who purchased Teva securities between February 6, 2014 and August 3, 2017. ECF Nos. 141, 226. The most recent and operative complaint, until now, was filed on June 6, 2018, well after the end-date for the Class that Ontario Teachers selected. ECF No. 226.

On June 21, 2019, a new securities class action was filed against Teva and different senior executives in the Eastern District of Pennsylvania, *Employees' Retirement System of The City of St. Petersburg, Florida v. Teva Pharmaceutical Industries Ltd., et al.*, No. 2:19-cv-02711-CMR, which was subsequently transferred to this Court (the "Transferred Action" or "TA"), TA ECF No. 1, 50.  Although Teva is a defendant in both actions, the claims in the two cases have critical differences implicating a different "set of concerns."[5]  The Transferred Action involves a different class period, different individual defendants, different alleged false statements that concern different subject matters, a different theory of liability, and different corrective disclosures.  Specifically, while this action focuses on misstatements made by the Company and its then executive officers from February 6, 2014 to August 3, 2017, related to pricing trends, competition and prospective revenues, the Transferred Action alleges misstatements made by *different Teva executives* for a *later period* of August 4, 2017 through May 10, 2019 regarding *different subject matter*; *i.e.*, Defendants' false denials of antitrust liability.  In fact, as Ontario Teachers admits, discovery and proof in the two cases will be "*separate and distinct*."  *See* Transferred Action, ECF No. 33 at 2 (emphasis added).[6]

The PSLRA-mandated press release for the Transferred Action was published on June 24, 2019, notifying Teva investors of the pendency of the action, its allegations, and the deadline

---

[5] *See Policemen's Annuity*, 775 F.3d at 162 (named plaintiff in a putative class action does not have class standing to assert absent members' claims that implicate a different set of concerns).

[6] HMG was the first to seek transfer to this Court, as related, recognizing some, but not complete, overlap in witnesses, documents, and anticompetitive conduct.  TA ECF No. 14-1 at 12-14; TA ECF No. 26 at 27.  Though not a party to the Transferred Action, Ontario Teachers was so opposed to the transfer that it filed a gratuitous submission claiming the "motion to transfer should be denied because the [Transferred] action is not sufficiently related to warrant transfer."  TA ECF No. 33 at 1.

for investors to move for lead plaintiff appointment.  *See* Transferred Action, ECF No. 14-5.  On

August 23, 2019, HMG timely filed its lead plaintiff motion.  *See* Transferred Action, ECF No.

14.  Three other movants also sought appointment.  *See* Transferred Action, ECF Nos. 11-13.

HMG's $1.9 million loss was the largest of all competing movants,[7] and HMG's leadership was

supported by several competing moving class members.  *See* Transferred Action, ECF Nos. 20,

22.

　　Ontario Teachers knew about the lead plaintiff briefing in the Transferred Action.  *See*

Transferred Action, ECF No. 33.  Yet, Ontario Teachers did not challenge the PSLRA notice,

attempt to intervene, or seek lead plaintiff appointment.  To the contrary, Ontario Teachers

***disclaimed*** any interest in the case.  Specifically, after lead plaintiff briefing was completed,

Ontario Teachers filed an unsolicited submission in the Pennsylvania court ***opposing*** transfer of

the Transferred Action to this Court, arguing the actions lacked sufficient common legal or

factual issues.  *See* Transferred Action, ECF No. 33.  According to Ontario Teachers, the two

cases involved "***entirely different alleged false statements and a different theory of falsity***," and

were subject to "***separate and distinct***" "discovery and proof."  *Id*. at 2.  Ontario Teachers also

highlighted the ***lack*** of overlap between the individual defendants.  *Id*.  Thus, Ontario Teachers

asserted the two actions should proceed separately.  *Id*.

　　On December 13, 2019, nearly ***six months*** after the Transferred Action was filed and

nearly ***four months*** after the deadline to seek lead plaintiff appointment in the Transferred

Action, Ontario Teachers filed a Second Amended Complaint in this action with Defendants'

consent.  ECF No. 310.  Though the parties had represented future amendments would address

---

[7] *Cf*. Transferred Action ECF Nos. 14-4; 13-5; 11-5; and 12-6.

unidentified "perceived defects in the pleadings" (Rule 26(f) Report of Parties' Planning Meeting, ECF No. 287 at 10), the proposed SAC fails to do so.  Instead, the SAC: (1) extends this action's class period *again* by nearly two years (ECF No. 310 at ¶ 1); (2) alleges the completely different false statements (*id.* at ¶¶ 250-55) and corrective disclosures alleged in the Transferred Action (*id.* at ¶¶ 372-76); and (3) names new individual defendants (*id.* at 31-32).

At the same time, Ontario Teachers and Named Plaintiff Anchorage Police & Fire Retirement System ("Anchorage") have filed certifications of trades during the expanded class period confirming that neither one has standing to assert—let alone the incentive to prove—any of these new claims.  ECF No. 310, Certifications.  To the contrary, Ontario Teachers' Certification reflects that it made *no* purchases relating to the new false statements, but rather profited from the fraud alleged in the Transferred Action by selling all of its remaining shares – plus some pre-class period acquired shares – of Teva ADS at a time when the Transferred Action alleges the ADS share price was artificially inflated.[8]

### III.   ARGUMENT

#### A.   The SAC Is An Improper End-Run Around The PSLRA's Notice And Lead Plaintiff Selection Process

The Securities Exchange Act of 1934, as amended in 1995 by the PSLRA, established rigorous requirements for notifying a purported plaintiff class and selecting a lead plaintiff in securities class actions.

---

[8] *See* ECF No. 310 at Ontario Teachers Certification.  An analysis of Ontario Teachers' certification reveals it sold more than 200,000 shares more than it bought in the entire extended Class Period.  For the Transferred Action Class Period it has no purchases and 940,000 sales for proceeds of $13,258,209.60.  *Id.*

First, within twenty days after a complaint is filed, the plaintiff must publish notice to members of the purported class (i) "of the pendency of the action, the claims asserted therein, and the purported class period"; and (ii) "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A) (emphasis added).

Second, the Court shall consider any motion by a class member for appointment as lead plaintiff within 90 days after publication of the notice.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The requirements are no mere formality.  As explained in the Conference Committee Report, these provisions "are intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class" and ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection of actions of plaintiff's counsel . . . ."  *Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (quoting the Statement of Managers in H.R. Conf. Rep. No. 104-369 at 32 (1995)).

As here, when a complaint is expanded to extend a class period and allege new corrective disclosures and new theories after the appointment of a lead plaintiff, courts generally require the publication of a new PSLRA notice.  *Signet Jewelers Ltd.*, 2017 WL 1379385, at *1-2 (ordering lead plaintiff to republish notice pursuant to the PSLRA to reflect new class period and theories alleged in the second amended complaint).  The rationale is straightforward and consistent with the PSLRA's objectives: to ensure the most capable representation by a plaintiff with interests aligned with the proposed class.  As such, courts routinely prohibit a lead plaintiff from filing an amended complaint encompassing a new class period and liability theory without first providing

notice of the new claims to others who may wish to serve as a lead plaintiff. *See, e.g., In re Cybertronics, Inc. Sec. Litig*., 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006) (requiring republication where amended complaint "substantially expand[ed] the potential class of plaintiffs by adding new claims and significantly expanding the class period"); *In re LeapFrog Enter., Inc. Sec. Litig*., 2005 WL 5327775, at *3 (requiring republication where consolidated complaint included new allegations and expanded class period by nine months); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc*., No. 1:05-cv-01898, 2005 WL 1322721, at *3 (S.D.N.Y. June 1, 2005); *In re Select Comfort Corp. Sec. Litig*., No. 0:99-cv-00884-DSD, 2000 WL 35529101, at *7-*8 (D. Minn. Jan. 27, 2000) (requiring new notice where "entirely new factual and legal allegations . . . affect[ed] a new class of plaintiffs").

In *Teamsters Local 445*, the court summed up the applicable equitable considerations for when a Lead Plaintiff attempts to "substantially expand" by the filing of an amended complaint that adds new claims without properly notifying the class:

> Allowing plaintiffs in this case to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process. Although appointment is certainly easier – and thus more efficient – when there is only one movant, it is contrary to the spirit of the PSLRA to achieve that efficiency by failing to notify potential movants of their rights. ***Where membership of a class is substantially expanded by the filing of an amended complaint that adds new claims, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights***.

*Teamsters Local 445*, 2005 WL 1322721, at *3 (emphasis added).

*Leapfrog* is also instructive. There, the original complaint covered a six-month class period. WL 5327775, at *4. Additional facts emerged shortly thereafter and a second plaintiff filed a complaint for a seven-month period that followed the original period. *Id*. at *5. The lead

plaintiff in the original case filed an amended complaint combining both class periods from the two actions. *Id*. The second plaintiff objected, arguing new notice was required. *Id*. at *4. The court agreed, finding the original complaint's six-month class period compared to the amended complaint's fifteen-month class period "dramatically alters the contours of the lawsuit." *Id.* at *10.

Here, by any reasonable measure, the SAC qualifies as a "substantial" amendment that implicates the PSLRA's notice and lead plaintiff selection procedures. *See Signet Jewelers Ltd*., 2017 WL 1379385, at *2; *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013). First, the SAC adds two and half more years (November 6, 2016, to May 10, 2019, inclusive) to the original class period for which Ontario Teachers was appointed lead plaintiff,[9] and nearly two years to the class period Ontario Teachers alleged in its previous complaints.[10] This expansion is a much larger class period increase than many courts have held warranted republication. *See Kaplan*, 947 F. Supp. 2d at 367 (24 months); *Vanleeuwen v. Keyuan Petrochemicals, Inc*., No. 2:11-cv-09495-PSG-JCG, 2013 WL 2247394, at *6 (C.D. Cal. May 9, 2013) (4 months); *In re STEC Inc*., No. 2:09-cv-08536-JVS-MLGX, 2010 WL 11469019, at *4 (C.D. Cal. July 14, 2010) (4 months); *In re Leapfrog Enter., Inc. Sec. Litig*., 2005 WL 5327775, at *3 (9 months); *Teamsters Local 445*, 2005 WL 1322721, at *2 (6 months).

Second, by enveloping the Transferred Action, the SAC alters dramatically the gravamen of the claims alleged against the Defendants. *See, e.g., Hachem v. Gen. Elec. Inc*., No. 1:17-cv-08457-JMF, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) (expansion of class period and allegations of additional stock drops altered "dramatically the gravamen of the claims alleged

---

[9] *See* ECF Nos. 1, 26-4; *see also Galmi*, 302 F. Supp. 3d at 491.

[10] *See* ECF Nos. 141, 226.

against Defendants.").  In previous iterations of the complaint, this action's claims were limited
to Teva's earlier misstatements concerning pricing trends, competition, and the catalyst of Teva's
financial performance.  *See* ECF Nos. 141, 226.  In the SAC, by contrast, Ontario Teachers
asserts a categorically different theory of securities fraud poached from the Transferred Action:
Teva's denials of antitrust liability in statements made between August 4, 2017 and May 10,
2019, in connection with subpoenas from the U.S. Department of Justice and specific lawsuits
brought by certain state Attorneys General and private plaintiffs.  ECF No. 310 at ¶¶ 250-55.[11]
None of these statements was made during the Class Period for which Ontario sought to be
named Lead Plaintiff.  As Ontario Teachers has admitted, this is "a different theory of falsity,"
which will entail "separate and distinct" "discovery and proof."[12]  ECF No. 33 at 2.  Thus,
similar to *Leapfrog*, the claims asserted in the Transferred Action and now included in the SAC
are properly subject to a separate PSLRA early notice, as they concern new misconduct

---

[11] Altogether, the SAC alleges six categories of false statements.  ECF No. 310 at ¶¶ 165-267.  Except as to Category 5 – the false denials of Teva's participation in collusive conduct stitched in from the Transferred Action – there are no identified false statements alleged to have occurred after May of 2017.  Most categories end much earlier. Category 1 – omissions regarding the failure to disclose trends in the Price-Hike Strategy - effectively ends shortly after June, 2016.  *Id*. at ¶ 171. Category 2 – false statements regarding "intense" or "fierce" competition – ends in 2015.  *Id.* at ¶¶ 176-81.  Category 3 –false statements relating to pricing – ends on February 13, 2017.  *Id.* at ¶ 246.  Category 4 –false statements relating to concealment of the DOJ and AG Subpoenas – relate solely to Notes Offering Materials distributed in July 2016.  *Id.* at ¶¶ 133, 248.  Finally, Category 6 – false statements relating to the Actavis acquisition – ends on May 11, 2017.  *Id*. at ¶ 266.

[12] Significantly, the new Category 5 begins with Defendants' statements in Teva's August 3, 2017 SEC filings, which Ontario Teachers' June 22, 2018 operative complaint alleged as corrective disclosures fully revealing Defendants' fraud.  *See* ECF No. 226 at ¶¶ 334-337.  Ontario Teachers June 22, 2018 complaint, filed almost a year after the corrective disclosure and the subject of this Court's September 25, 2019 order upholding certain claims makes no allegation that Defendants' August 3, 2017 disclosure was false.

regarding Teva's antitrust liability and an expanded class period that would alter the more narrowly drawn contours of this action.  *Id*. at *3.

**B.    Ontario Teachers Lacks Class Standing To Assert
And Cannot Adequately Represent The Transferred Action's Class**

Based on the criteria set forth in the PSLRA, Ontario Teachers is by no means a properly suited investor to represent the interests of the Transferred Action's class members and prosecute these admittedly "separate and distinct" claims.  *See Signet Jewelers Ltd*., 2017 WL 1379385, at *2 (republication further warranted due to "very real possibility that—based on the criteria set forth in the PSLRA—Lead Plaintiffs are not the best suited to represent the interests of the class under the Second Amended Complaint.").

First, Ontario Teachers lacks class standing to represent the Transferred Action's Class. Ontario Teachers' most recent purchase of Teva ADS was on September 26, 2016, nearly a year before the start of the Transferred Action's alleged class period (August 4, 2017).  *See* ECF No. 310 at Ontario Teachers' Certification.  In addition, Ontario Teachers sold prolifically throughout Transferred Action's class period, a period when the Transferred Action alleges Teva ADS was artificially inflated.  *Id*.  Accordingly, Ontario Teachers has no stake in prosecuting the new claims stitched in from the Transferred Action.

More fundamentally, in contrast to *NECA*,[13] as well as this Court's Order denying in substantial part and granting in part Defendants' motion to dismiss (ECF No. 283 at 68-70), where the defendants' alleged Securities Act violations inhered in making the ***same*** misstatements to investors, the nature of Ontario Teachers' claims are markedly different than

---

[13] *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145 (2d Cir. 2012).

those of the class in the Transferred Action, which "generates significant differences in the proof that will be offered [in each case.]" *Policemen's Annuity*, 775 F.3d at 163. Specifically, Ontario Teachers' claims rest on showing Defendants made false and misleading statements with scienter when reporting Teva's financials and characterizing competition in the market. This will require Ontario Teachers proving Teva's illegal anticompetitive conduct drove its superior financial performance. In contrast, Defendants' alleged misconduct in the Transferred Action – Teva's false denials of antitrust liability – need not be proved through Teva's underlying antitrust violations. Rather, the evidence will focus on Defendants' knowledge of facts revealed in the State AGs Complaint and the liability risk to Teva arising therefrom. "As a result, [Ontario Teachers'] claims do not implicate the 'same set of concerns' as those of [of the Transferred Action's Class." *Policemen's Annuity*, 775 F.3d at 163.

Second, the record demonstrates Ontario Teachers is an inadequate and atypical representative of the Transferred Action's class. Indeed, Ontario Teachers has previously expressed in unsolicited court filings an opposition to prosecuting the Transferred Action's claims, stating that the claims "are not sufficiently related," focus on "entirely different alleged false statements and a different theory of falsity" made in a completely different time period by different individual defendants, and will have "separate and distinct" "discovery and proof." TA ECF No. 33 at 1-2. The fact that Ontario Teachers – or better yet its counsel – is now willing to prosecute these claims is inconsequential. "The fact that it would be possible for a plaintiff to litigate a given claim plainly does not imply that she should be the one to litigate it." *Policemen's Annuity*, 775 F.3d at 163 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Finally, that Defendants have agreed not to challenge Ontario Teachers' standing, typicality or adequacy (*see* ECF No. 350 at 15) should not assure the Court. To the contrary, it is

a red flag on whether Ontario Teachers is an adequate representative for any claims as it appears to have forsaken its adversarial relationship with defendants.  Putting aside the question of whether such an agreement is enforceable and the fact than an absent class member can raise these challenges at any time, a class representative's standing, typicality and adequacy are all issues the Court must independently determine.  *See Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (district court must independently determine whether a plaintiff has standing before determining if the plaintiff may be a class representative); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (to certify a putative class, the Court must first determine whether the asserted claims meet the four threshold requirements of Rule 23(a)); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) (same).

## C.   The Court Should Strike The New Allegations In The Second Amended Complaint And Order Ontario Teachers To Proceed Solely On The Claims In The First Amended Complaint

Though the SAC's new allegations and claims undoubtedly implicate the PSLRA's early notice provisions, an order for republication of a PSLRA early notice is unnecessary and would frustrate the interests of both Teva investors and judicial efficiency.  Preliminarily, investors impacted by the claims and allegations asserted in the Transferred Action have already received a proper PSLRA early notice and have been given a fair opportunity to move for lead plaintiff to steward these claims.  Transferred Action, ECF No. 14-5.  Indeed, several qualified candidates moved to be appointed lead plaintiff, including HMG, which possessed the largest financial interest in the relief sought by the class.  Transferred Action, ECF Nos. 11-14.

More fundamentally, the revisiting of the lead plaintiff and lead counsel selection that would invariably follow republication would lead to delay and potentially prejudice Teva

investors.  Re-opening of the lead plaintiff process would necessitate a stay in this case, where

the Court has sustained certain of Ontario Teachers' claims on which the parties have already

begun to proceed with discovery.  ECF No. 296.  In addition, appointment of a new Lead

Plaintiff would necessitate the filing a new consolidated amended complaint, thereby

jeopardizing the timeliness of claims on certain of Defendants' earlier statements in this case

under their applicable statutes of repose.  *See, e.g., California Pub. Employees' Ret. Sys. v. ANZ

Sec., Inc*., 137 S. Ct. 2042, 2052 (2017) (*American Pipe* tolling rule does not apply to the 3-year

bar mandated in § 13 of the Securities Act).

Instead, the more prudent action would be for the Court to strike the new claims and

allegations in the SAC embracing the Transferred Action and order Ontario Teachers to revert to

the claims and allegations in its First Amended Complaint.  Such an approach would be similar

to the offer Judge Jesse M. Furman posed to the lead plaintiff in *Signet Jewelers Ltd*., 2017 WL

1379385, at *2, after the lead plaintiff filed a Second Amended Complaint alleging entirely new

alleged misconduct during an entirely new time period.  This remedy would insure Teva

investors' interests are both properly represented and protected, while causing Defendants no

prejudice.  The properly appointed Lead Plaintiff should be the master of any amendment.  *In re

Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig*., MDL No. 2058,

2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010).

**D.     HMG Fulfills The Requirements To Intervene**

The Court should grant HMG's motion to intervene in this case because HMG has met its

burden with respect to all elements of intervention as-of-right as well as of permissive

intervention under Rule 24 of the Federal Rules of Civil Procedure.

Rule 24(a) states that intervention of right is to be permitted upon timely application

"when the applicant claims an interest relating to the property or transaction which is the subject

of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Here, HMG's motion is timely, as Lead Plaintiff filed its Second Amended Complaint on December 13, 2019.  Moreover, based on the SAC's expanded class period, HMG undoubtedly has a significant interest in this litigation.  HMG is a member of the new class and has in fact sustained a loss based on its investment in Teva securities in excess of $1.9 million.  Transferred Action, ECF Nos. 14-3, 14-4.  HMG is the largest movant for Lead Plaintiff in the Transferred Action, and ostensibly the sole remaining movant.[14]  An adjudication of the claims in the Expanded Class Period could have an adverse impact on HMG and all class members, and may well have a *res judicata* effect as to any claim based on Defendants' misconduct.  Further, as a class member and lead plaintiff movant, HMG has a clear interest in seeing that the strictures of the PSLRA's notice and lead plaintiff application and selection requirements are complied with.

Finally, neither Ontario Teachers nor Anchorage can adequately protect the interests HMG and other members of class under the Expanded Class Period.  The certifications submitted with the Second Amended Complaint all reflect purchases of Teva securities prior to August 4, 2017.  Thus, these plaintiffs have no interest whatsoever in prosecuting the newly alleged claims arising during the Expanded Class Period.[15]

---

[14] The Huang & Geraldino Group and the Magana & Erani Group support HMG's appointment.  Transferred Action, ECF Nos. 20, 22.  The remaining movant, Employees' Retirement System of the City of St. Petersburg has filed a notice of non-opposition to consolidation of the Transferred Action with the instant case.  Transferred Action, ECF No. 70 at 1-2.

[15] No independent pleading pursuant to Federal Rule of Civil Procedure 24(c) is being filed by HMG at this time.  Where, as here, the limited grounds for intervention is clear, no pleading is required.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts,

Moreover, HMG satisfies the requirements for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1). HMG has a "claim . . . that shares with the [consolidated Ontario Teachers' action] a common question of law or fact," *see* Fed. R. Civ. P. 24(b)(1)(B). In addition, the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Allowing HMG to intervene to seek the limited relief discussed herein will not unduly delay or prejudice other parties, and there is no basis to find that HMG's motion is untimely.

### IV.   CONCLUSION

Based on the foregoing, HMG respectfully requests that the Court enter an Order: (1) granting HMG's request to intervene in the pending action; and (2) striking the new claims and allegations in the Second Amended Complaint.

DATED:  December 20, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP

By   */s/ Reed R. Kathrein*
Reed R. Kathrein (Admitted *Pro Hac Vice*)

Lucas E. Gilmore (Admitted *Pro Hac Vice*)
Danielle Smith
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com

---

including this one, have approved intervention motions without a pleading where the court was otherwise apprised for the grounds of the motion."); 6 Moore's Federal Practice § 24.20 (3d ed.) ("court may approve an intervention motion that is not accompanied by a pleading if the court is otherwise apprised of the grounds for the motion.").

lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for HMG Global Initiative Inc.*


Robert A. Izard (CT No. 01601)
Craig Raabe (CT No. 04116)
Christopher M. Barrett (CT No. 30151)
IZARD, KINDALL & RAABE LLP
29 S. Main Street., Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

*Local Counsel for HMG Global Initiative Inc.*


Shanon J. Carson
Jeff Osterwise
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
scarson@bm.net
josterwise@bm.net

*Additional Counsel for HMG Global Initiative Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List,

and I hereby certify that I have mailed a paper copy of the foregoing document via the United

States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List

generated by the CM/ECF system.


*/s/ Reed R. Kathrein*
REED R. KATHREIN