

Jill M. O'Toole
Phone: (860) 251-5909
Mobile: (860) 597-5700
jotoole@goodwin.com

April 8, 2020

The Honorable Stefan R. Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard, Suite 411
Bridgeport, Connecticut 06604

      Re:   *Ontario Teachers' Pension Plan Board, et al. v. Teva Pharmaceutical Indus. Ltd., et al.*, No. 3:17-cv-00558 (SRU)

Dear Judge Underhill:

    On behalf of Defendants in the above-referenced matter, we respectfully submit this letter in response to Plaintiffs' letter filed today concerning discovery. Plaintiffs do not identify a specific discovery dispute requiring Court intervention. Instead, they take issue with how Defendants are reviewing documents and the pace of production.

    In their letter, Plaintiffs urge this Court to dictate the process Defendants must use to review the voluminous documents that were collected in response to Plaintiffs' 109 document requests. They seek to prioritize what Defendants should produce and when. Such a request is entirely inappropriate. "As courts have noted, the producing party is in the best position to 'evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'" *Winfield v. City of New York*, No. 15-CV-05236 (LTS)(KHP), 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017). In *Winfield*, the court explained that "[t]raditionally, courts have not micro-managed parties' internal review processes for a number of reasons." *Id.* Those reasons include, among others, the fact that attorneys, as officers of the court, are expected to comply with production obligations under Rules 26 and 34; "the producing party is better equipped than the court to identify and utilize the best process for producing their own ESI"; and "perfection in ESI discovery is not required; rather, a producing party must take reasonable steps to identify and produce relevant documents." *Id.*

    The following summary of Defendants' efforts supports rejecting Plaintiffs' attempt to dictate how Defendants should conduct their document review and production:

- Plaintiffs have propounded 109 document requests, beginning with their first document requests effectively served on October 11, 2019 (the date of the parties' first planning conference for the Rule 26(f) Report, *see* ECF 287 & Fed. R. Civ. P. 26(d)(1)).

The Hon. Stefan R. Underhill
April 8, 2020
Page 2

- The parties negotiated a complete set of search parameters and custodians for Defendants' large-scale e-mail collection and review over the course of many months, ultimately reaching agreement on Saturday, January 25, 2020 – just over 10 weeks ago.

- Even before this agreement, Defendants had begun collecting documents, preparing for the review, and reviewing documents. The review set of custodial documents exceeds three quarters of a million documents, and the full review set including non-custodial documents will likely exceed one million documents. The size of the review set does not reflect or indicate how many documents will be responsive to Plaintiffs' 109 requests.

- In the 10 weeks since the parties' January 25, 2020 agreement, Defendants have made seven rolling document productions. Defendants are on a pace of making a production approximately every two weeks. These productions consist of nearly 42 gigabytes of data, 30,209 documents, and 93,548 pages of documents.

- Based on a conservative estimate, the parties have had over 35 meet and confer communications by telephone, email, and letter – just since January 25, 2020.

- Even though Plaintiffs have no basis to demand a prioritization of the production of certain custodial files or documents, Defendants have nonetheless cooperated with Plaintiffs' multiple requests to prioritize the production of numerous categories of documents from a nearly seven-year period. This cooperation has only spawned further criticism and unreasonable demands from Plaintiffs. The expression no good deed goes unpunished is apt.

  For example, Plaintiffs demanded that Defendants prioritize the production of certain internal Company reports that were responsive to one of Plaintiffs' 109 document requests. Defendants agreed, as a courtesy, to prioritize the collection, review, and production of those categories of documents, and have produced many documents from those categories. Plaintiffs, however, now unreasonably demand to know when the production of each one of those categories of documents will be complete. For example, Defendants have explained that, as to one of the annual reporting tools Plaintiffs prioritized, Defendants have produced a copy of that document for each year of the agreed-upon time frame for discovery, but will not certify that the production of those documents is complete when the end of fact discovery is in February 2021, and additional related documents and communications will likely surface in the next 10 months during the ordinary course of Defendants' ongoing review and rolling productions. Defendants reasonably do not want to have to certify the completion of production on a category-by-category basis, or custodian-by-custodian basis, as Plaintiffs demand.

- Defendants have represented to Plaintiffs that Defendants expect their production to be complete in mid-September 2020, which leaves five months for depositions, even if Plaintiffs were to await the completion of this document production. This is entirely consistent with Plaintiffs' estimate for when depositions will occur. At the March 12, 2020 status conference, they represented that "we would expect depositions to begin late summer into the fall. . . ." (ECF No. 345, Tr. at 44:12-13.)

The Hon. Stefan R. Underhill
April 8, 2020
Page 3

In sum, Defendants' large document production is underway, and Defendants expect to complete that production sufficiently prior to the end of fact discovery to allow for the orderly taking of depositions. Defendants have tried to answer Plaintiffs' many questions about the review and production process and to accommodate Plaintiffs' particular requests where possible, even when the rules do not require such accommodation. As noted above, Defendants prioritized the review and production of certain categories of documents per Plaintiffs' requests. Likewise, Defendants have agreed to collect, process, and review upwards of a million documents pursuant to an agreement respecting search parameters that Plaintiffs negotiated and to which they agreed. That significant effort is well underway.

Nevertheless, Defendants have had to explain to Plaintiffs that:

- The more letters and emails Plaintiffs send, and lengthy calls Plaintiffs demand, the more time is diverted from the document review and production process.

- Defendants are not willing at this point to change their review protocol to now review or produce documents on a custodian-by-custodian basis. Defendants' review is being done across custodians, on a topical basis, as is industry standard in large-scale reviews. Even if Defendants were willing to change their approach to their review, such a change would only serve to delay the document production and create inconsistencies and inefficiencies. As has been explained to Plaintiffs on meet-and-confer calls and in writing, Defendants' issue-based review process maximizes the efficiency, speed, and consistency of the document review, which is a significant undertaking here given that Plaintiffs propounded 109 broad requests, many with numerous subparts. In contrast, a review conducted on a custodian-by-custodian basis would require a reviewer to jump around from topic to topic, request to request, losing valuable time evaluating responsiveness among the 109 requests and analyzing the applicability of objections to those requests. While Plaintiffs may prefer their method, it is inefficient and, as Defendants have explained, will impose an undue burden and cost on Defendants.

- Defendants have told Plaintiffs that as the time for depositions approaches, they will consider sharing information regarding the percentage of the production that is complete or the percentage of production that is complete from particular custodians.

- Defendants have been responsive to technical issues as they have arisen and sought to work cooperatively with Plaintiffs to address their concerns promptly. Plaintiffs are simply wrong when they state that Defendants are "unwilling" to correct the issues. In most instances, the issues have already been resolved or are in the process of being resolved. Any outstanding issues are a function of Plaintiffs refusing to accept the solutions offered by Defendants, even when multiple alternatives have been offered that are consistent with industry standards.

Defendants are willing to discuss these issues soon or at the next regularly-scheduled status conference. In the meantime, Defendants will continue trying to resolve discovery disputes (especially those involving technical issues) without the need for the Court's assistance.

The Hon. Stefan R. Underhill
April 8, 2020
Page 4

                                            Respectfully submitted,

                                            */s/ Jill M. O'Toole*

                                            Jill M. O'Toole

cc:    Joseph Fonti, Esq.
        Matthew Mustokoff, Esq.
        Christopher Rooney, Esq.
        Jordan Hershman, Esq.

8562736