

Joseph A. Fonti
212 789 1342 direct
212 205 3962 fax
jfonti@bfalaw.com

July 2, 2020

**VIA ELECTRONIC MAIL**

Hon. Stefan R. Underhill
United States Courthouse
915 Lafayette Boulevard, Suite 411
Bridgeport, Connecticut 06604

Re:     *In re Teva Securities Litigation*, No. 3:17-cv-00558-SRU

Dear Judge Underhill:

Plaintiffs[1] provide the following discovery status report pursuant to the Court's request during the June 23 conference. We discuss below the issues raised at the June 23 conference. In addition, as we noted during the conference, there are several additional discovery disputes as to which the parties have reached an impasse and the Court's guidance would be productive. We briefly summarize these issues in the attached Appendix.

### A.     Defendants' Motion Is Fully Resolved

Pursuant to the Court's instructions on June 23, Plaintiffs are producing "documents sufficient to show their investments in Teva" and sending a letter to Defendants identifying "former employees who are mentioned in the complaint." (June 23, 2020 Tr. at 21:22-25; 22:5-8.) Defendants have agreed that this production and letter resolve Defendants' motion to compel.

### B.     The Parties Are Continuing to Discuss Defendants' Production of Teva's Month-by-Month Data Pursuant to the Court's Guidance

Plaintiffs are working with Defendants to implement the Court's June 23 guidance that Defendants should produce month-by-month data sufficient to show the pricing, sales, revenues, and profits for Teva's full portfolio of generic drugs.

While the parties have made some progress, there are currently two main open issues, summarized below. The parties will try to resolve the remaining issues and reach a final agreement early next week, and intend to submit further status reports on Thursday, July 9.

---

[1] Capitalized terms not defined herein have the meanings specified in the Complaint (ECF 310).



Hon. Stefan R. Underhill
July 2, 2020
Page 2

## 1. The Data Should Be Produced on a Monthly Basis

After several meet and confer sessions, this afternoon, Defendants offered to produce data for pricing, revenues, sales, and profits for each of Teva's generic drugs—but only on a quarterly basis, suggesting that monthly data would be more difficult (though not impossible) to compile.[2]

Plaintiffs maintain that month-by-month data is highly relevant—including to show the timing of individual price increases and the related financial metrics—and should be produced. Monthly data best serves the ultimate goal of identifying the common set of facts about Teva's generic drug pricing, price increases, sales, revenues, and profits so that, in the Court's words, "there can't be a dispute about what happened." (June 23, 2020 Tr. at 12:10.) By contrast, quarterly data is overly generalized; for example, it will obscure the precise proximity of Teva's price increases to parallel price increases by other firms. Monthly data will ensure that the parties can reach common factual ground at an appropriate level of specificity, and ideally lead to a set of stipulated facts about Teva's monthly generic drug pricing, sales, revenues, and profits.

Plaintiffs have therefore proposed that Defendants produce data sufficient to show the net average sales price, sales, revenues, and profits, on a month-by-month basis, for each drug (*i.e.*, each NDC Code) in Teva's full portfolio of generic drugs. We believe this is entirely achievable and understand that Defendants' counsel are working with their clients (including an individual who was on vacation this week) to assess this proposal and expect to respond early next week.

We are hopeful that the data interval issue will be resolved promptly by agreement. In the event we cannot reach agreement, as Plaintiffs have already advised Defendants, it has become clear that production of Teva's full database as maintained in the usual course of business, with the existing tools and applications necessary to run management-level reports showing prices, sales, revenues, and profits, is the most efficacious solution. Further, this alternative would mitigate (if not completely eliminate) any future disputes over the scope or adequacy of data, and would ensure all parties have equal access to the facts embodied in Teva's business records.

---

[2] Before offering quarterly data, yesterday (July 1), Defendants instead proposed only to produce raw transaction-level data, similar to what they produced in January. Plaintiffs rejected this offer, which is inconsistent with the Court's guidance that Defendants should "turn over what was available to any executive who was … making a decision about whether to raise the price of a particular drug," including "what's the sales history, what's the pricing history, what's the profit history or loss history." (June 23, 2020 Tr. at 13:20-14:7.) To be clear, producing such raw transaction data will generate further disputes over interpretation, such as how rebates and discounts for individual customers affect the actual price, revenues, and profits that Teva received and reported. That is why Plaintiffs believe the optimal approach, consistent with the Court's guidance, is to produce a compilation of month-by-month data sufficient to show pricing, sales, revenues, and profits.



Hon. Stefan R. Underhill
July 2, 2020
Page 3

## 2. The Data Should Be Produced Through December 31, 2018

Defendants have agreed to produce data for the period from January 1, 2013 to December 31, 2016, but the parties have not resolved the end date for the production. As explained in Plaintiffs' motion, it is important that the data cover the period after 2016 because Teva experienced significant price erosion—that is, declining prices on many of its generic drugs—well into 2017 and 2018 as the price increase scheme fell apart. This price erosion led directly to Teva's January 6, 2017 announcement of a $1.2 billion "EBITDA gap," its August 3, 2017 announcement of a $6.1 billion generics impairment charge, and another $10.4 billion generics impairment on February 8, 2018. (*See* ¶¶129-30, 152, 160, 362, 369, 405.) In short, generic drug pricing, sales, revenues, and profits in the 2017-2018 period are squarely at issue.

Plaintiffs therefore request that any production cover the period from January 1, 2013 to December 31, 2018. This represents a compromise proposal, in an effort to resolve this issue, from Plaintiffs' original request for data through May 31, 2019. As the Court correctly noted, if Teva is able to produce month-by-month data, the "period of time adds very little to the burden and . . . gives us a full database that we can then argue about when we get toward trial and summary judgment." (June 23, 2020 Tr. at 9:12-16.) We understand that Defendants are currently considering Plaintiffs' proposal.

We appreciate the Court's attention to these issues.

Very truly yours,

*[signature]*

Joseph A. Fonti, Esq.


cc:     Jordan Hershman, Esq.
        Jill O'Toole, Esq.
        Christopher Rooney, Esq.
        Matthew Mustokoff, Esq.

# APPENDIX

## Status of Ongoing Discovery Disputes

Plaintiffs also seek the Court's guidance on the following issues, which remain unresolved after several months of extensive discussion with Defendants. Plaintiffs stand ready to supplement this submission with more detail or to submit formal briefing if useful.

### I. Defendants' Failure to Comply with the Stipulated Production Schedule

In several respects, Defendants have not complied with the stipulated, Court-approved discovery milestones (ECF 375-76). These violations undermine the objective of the schedule, which is to ensure that particular custodians and categories are closed out in a timely manner so Plaintiffs can prepare to commence depositions.

#### A. Defendants' Failure to Complete the June 4 Custodians

The Stipulation provides that "[b]y June 4, 2020, Defendants shall produce all non-privileged, relevant, responsive documents" from Kevin Galownia, Christine Baeder, Maureen Cavanaugh, Nisha Patel, and David Rekenthaler. (ECF 375 ¶3.) Defendants have failed to comply with this deadline in at least two respects:

Newfound Documents: On May 29, Defendants revealed that they were continuing to review additional documents they had recently located, which were in the process of being de-duplicated against the existing set of documents and may result in additional documents for the June 4 custodians. On June 11, Defendants produced nearly 11,000 new documents from the five June 4 custodians. On June 12, Defendants indicated that they expected to complete their processing of the recently located documents by June 19 and would promptly provide an update.

Not only have Defendants failed to produce on time, they have not certified when they expect to complete production. Despite our repeated outreach, Defendants have never resolved this issue, meaning that nearly a month after the June 4 deadline, there is no closure on whether any additional documents for these five custodians remain to be produced. Defendants have thus failed to "notify Plaintiffs in writing as to whether they have been able to complete the production," or "a date by which they expect to complete the respective production" for each custodian, as the Stipulation requires. (*Id.* ¶10.) Defendants must answer with certainty.

Telephone Records: Telephone conversations and text messages were a preferred means by which Teva colluded with competitors to increase drug prices, and Defendants have agreed to produce the telephone records for Teva employees showing such communications. However, Defendants refuse to do so until August 7, claiming that the Stipulation does not expressly provide an earlier deadline. That position undercuts the milestones, as such records are directly relevant to the custodians, particularly the June 4 custodians, who were on the front lines of Teva's collusive interactions. It is therefore important to produce telephone records at or near the time of each individual's emails and other documents so Plaintiffs can understand the full range of documents and communications for each individual and prepare for orderly depositions. Defendants should be producing telephone records for custodians according to the milestones.

### B. Defendants' Failure to Produce a Complete Privilege Log by June 15

The Stipulation also requires Defendants to "produce a privilege log on or before June 15, 2020 for documents produced on or before May 8, 2020." (ECF 375 ¶11.)

Defendants did not do so. Instead, on June 19 (after the deadline), Defendants produced a log identifying just *seven* documents, which Defendants had previously produced with redactions, and claiming that the redacted material is purportedly work product. Plaintiffs have enclosed a redacted copy of the deficient privilege log.[1]

It is troubling that Defendants have logged only seven redacted documents. By May 8, Defendants had produced 51,845 documents, and Defendants have effectively admitted that they withheld many other documents from that production on privilege or work product grounds. The seven documents on the log cannot be the totality of this withholding.

In correspondence, Defendants have claimed that the log only includes seven documents because counsel had not yet made a "final" privilege determination for the other documents. But that is contrary to the Stipulation, which set the June 15 privilege log deadline specifically to ensure that final determinations were made as to documents reviewed prior to May 8. If Defendants finally determine that no privilege or protection applies, the documents should be produced immediately. And if documents are finally withheld, Plaintiffs should be advised promptly, with an adequate privilege log, so any remaining privilege and work product claims can be tested in advance of depositions. Defendants must provide a complete log of documents withheld prior to the May 8 production.

Even as to the seven documents, the log is grossly deficient in that it fails to identify even the basic information required by Local Rule 26(e), such as "[e]ach recipient," and "author." In fact, it does not list *any* recipients for any of the documents, and for four of the seven, the purported authors are only identified in Hebrew (item 7) or with incomprehensible terms (items 4-6). Moreover, the log's vague, boilerplate descriptions are insufficient, and Defendants never identify any attorney whose legal advice is purportedly contained in these documents. Defendants have refused to correct these defects in the log.

### C. Former Teva Executive Maureen Cavanaugh Refused to Produce Documents by June 24

Maureen Cavanaugh (former SVP and Chief Operating Officer, North America Generics, of Teva USA) has failed to produce *any* documents in response to a subpoena served on January 27, 2020, over five months ago. Ms. Cavanaugh is represented by the same counsel as Defendants and stipulated to a June 24 production deadline (ECF 375 ¶¶3-4). It is undisputed that she possesses responsive documents. Her violation of the subpoena needs to be resolved. Three issues are illustrative:

---

[1] Because Defendants have designated the log "ATTORNEYS' EYES ONLY" under the operative protective order, Plaintiffs have redacted its entries, although in reality the log does not qualify for any confidential treatment.

First, Plaintiffs focused on Ms. Cavanaugh's mobile devices because collusive interactions often occurred by phone and text message, and Teva has not produced any phone records or text messages from its corporate files. Thus, on March 20—over three months ago—Plaintiffs specifically asked "[w]hether Teva has complete records" for "any personal or mobile devices" that Ms. Cavanaugh used "for business purposes during her employment at Teva," and "[w]hether and when Teva will produce all such records."

After months of evading these questions and insisting that Ms. Cavanaugh "no longer" had access to any mobile devices from her employment at Teva, on June 25, Defendants revealed—for the first time—that Teva actually has imaged at least one mobile phone used by Ms. Cavanaugh for business activity. All relevant, responsive documents from this mobile phone should have been produced by the June 24 deadline in the Stipulation. But none were. Moreover, counsel have refused to answer basic questions about the contents of the device, when the materials will be produced, or whether Ms. Cavanaugh also used other devices for business. Teva must produce the relevant content of Ms. Cavanaugh's phone.

Second, Ms. Cavanaugh's counsel admits that she possesses a "dynamic personal document in which she maintains certain personal and business-related contact information," which is directly relevant to her collusive interactions with executives at other generic drug manufacturers. However, she has refused to produce the business-related portions of this document. Instead, Teva has merely offered to produce her office Outlook contacts. That is no substitute for a "dynamic personal document" used to carry out the collusion. It must be produced.

Third, Ms. Cavanaugh has produced no actual communications with Teva's purported competitors, even though her counsel does not dispute that many such communications occurred (including by call and text message). Counsel have claimed that no such communications exist, a position that raises serious concerns about preservation and the adequacy of any search performed. Nonetheless, counsel has refused to explain what search (if any) they have conducted for these highly relevant documents. Ms. Cavanaugh must provide answers to these questions.

### D. Defendants' Improper "Relevance" Redactions to Board Materials Produced on June 24

Defendants also failed to meet the June 24 deadline by which they "shall produce all non-privileged, relevant, responsive materials from Teva's Board of Directors." (ECF 375 ¶4.)

Instead, on June 24, Defendants provided only a partial set of Board materials with extensive, improper "relevance" redactions, affecting at least 98 of the 768 Board documents produced. Such redactions are contrary to the parties' stipulated ESI protocol and impermissible as a matter of law. *See, e.g.*, *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (collecting cases establishing "the general rule that relevance redactions are improper"). Defendants have refused to remove these improper redactions and have failed to explain why their confidentiality concerns are not adequately addressed by the protective order entered in this case (ECF 77).

### E. Defendants Are Withholding Additional Non-Privileged, Relevant Documents Responsive to the Second RFPs

The parties also have an outstanding dispute concerning Plaintiffs' Second RFPs, served on February 28, 2020. Contrary to the Stipulation and Defendants' representations to this Court that, other than work product or privilege, ***all*** of Defendants' objections to the RFPs had been resolved (May 13, 2020 Tr. at 11:23-25; *see also id.* at 11:13-14; 12:1-13:5), Defendants continue to withhold plainly relevant, responsive documents on objections other than work product or attorney-client privilege. For example, Defendants are withholding documents showing the Individual Defendants' trading in Teva Securities after they left their positions at Teva, even though these responsive documents are within the overall agreed-upon date range for discovery (January 1, 2013 to May 31, 2019). The Court should order Defendants to abide by the Stipulation and produce "all non-privileged, relevant, responsive documents" not subject to claims of work product or attorney-client privilege and deem all their other objections waived. (*See* ECF 375 ¶¶5-6 (covering the Individual Defendants).)

## II. Defendants' Refusal to Accept Additional, Relevant Custodians and Search Terms

As is common in complex litigation, Defendants' recent document productions and written discovery responses have confirmed the need for Defendants to search for and produce documents from additional relevant custodians (beyond the 19 currently agreed custodians), and apply a limited set of additional search terms to ESI. Although many additional issues have been revealed, Plaintiffs have been mindful and targeted, and to date have identified nine additional custodians, for a total of 28 custodians (out of Teva's over 40,000 employees) and nine additional targeted search terms that Defendants should apply.

Additional Custodians: Relevance as to six of the nine individuals is not in dispute because they were ***expressly referenced*** in Defendants' recent Rule 26(a) initial disclosures or interrogatory responses. Specifically, Sean Silver, Brandon Boyd, Mayra Avrila, and Jan Gustavsen were identified by Defendants in their June 12, 2020 supplemental initial disclosures as "likely to have discoverable information that Defendants may use to support their claims or defenses." On May 27, 2020, Gilad Shadur and Eti Mitrany were named by Defendants in sworn interrogatory responses as individuals who were "primarily involved" in the creation, review, and dissemination of Teva's financial reporting for its generic drug business.

Nonetheless, Defendants have rejected Gustavsen and Mitrany based on purported concerns about burden, even though Defendants apparently have not even tested Plaintiffs' search term proposal for these individuals.

Moreover, while Defendants have accepted four of these six custodians (Silver, Boyd, Avrila and Shadur), they are seeking to improperly narrow the search terms for these custodians. All custodians should be subject to the same search terms as the 19 agreed custodians (and the additional search terms Plaintiffs have requested). Defendants do not, and cannot, make any burden argument.

The remaining three additional custodians (Todd Branning, Brendan O'Grady, and Andrew Boyer) are also indisputably relevant. They were at the epicenter of the core financial component

of this case. Branning was Senior Vice President and CFO, Global Generics Medicines and reported directly to Defendant CFO Desheh; O'Grady and Boyer successively served as President and CEO, North America Generics, with direct oversight of the price increase activity at issue.

Plaintiffs have extensively demonstrated these individuals' relevance based on Defendants' limited production to date. Defendants cannot substantiate any claim that producing discovery from them is disproportionate in this securities litigation focused on the financial performance of Teva's U.S. generics segment. Defendants should produce relevant documents for all nine custodians using the existing search terms and additional terms discussed below.

Additional Search Terms: Defendants' recent discovery responses and productions also confirm that nine additional searches targeted to Teva's financial forecasting and price increases are necessary.[2]

For example, the existing search terms (agreed to on January 25, 2020) include terms related to the "Work Plans" referenced in the Complaint. On March 27, however, Defendants served interrogatory responses stating that Teva "[m]ore commonly called" the Work Plan the "Annual Operating Plan ('AOP') during the Relevant Period." Defendants have nonetheless refused to apply "AOP" (and variations on this term) as a search term.

Defendants have also produced documents showing that Teva retained Boston Consulting Group ("BCG") to consult on Teva's process for identifying and implementing price increases, which Teva called "Life Cycle Management" and "Life Cycle Extension." Defendants should have identified BCG in their disclosures and disclosed this terminology in their interrogatory responses months ago, and agreed to run search terms like "Boston Consulting," "@bcg.com," "Life Cycle Management," and "Life Cycle Extension" to locate these critical documents.

While Defendants have rejected all nine proposed searches on burden grounds, claiming they capture more than 172,000 documents, Defendants have not clarified the actual number of additional, unique documents (*i.e.*, documents not already captured by the agreed-upon search terms) that would need to be reviewed. Nor have Defendants accepted the vast majority of the terms that appear to capture much smaller volumes of documents.

Finally, Defendants' burden claims are a red herring because if Defendants had timely disclosed all relevant individuals and terminology related to Teva's financial reporting, the parties would have included these custodians and search terms at the outset. In any event, Defendants have no basis to refuse them now. Defendants should apply the nine searches to all of the collected documents and produce relevant documents by August 7.

---

[2] They are: QBU; QBR; "Long Term Plan" OR LRP; "Operating Plan" OR AOP; Q*V*; "Life Cycle Management" OR LCM; "Life Cycle Extension" OR LCE; "pric*" w/3 comm*; "Boston Consulting" OR BCG OR @bcg.com.