**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION<br>_____<br><br>THIS DOCUMENT RELATES TO: | No. 3:17-cv-558 (SRU)<br><br><br>No. 3:19-cv-00192 (SRU)<br>No. 3:19-cv-00449 (SRU)<br>No. 3:19-cv-00513 (SRU)<br>No. 3:19-cv-00543 (SRU)<br>No. 3:19-cv-00655 (SRU)<br>No. 3:19-cv-00656 (SRU)<br>No. 3:19-cv-00923 (SRU)<br>No. 3:19-cv-01167 (SRU)<br>No. 3:19-cv-01173 (SRU)<br>No. 3:20-cv-00083 (SRU)<br><br>July 8, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS ISRAELI LAW CLAIMS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

      I.     THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
           JURISDICTION OVER THE ISRAELI LAW CLAIMS. ................................... 5

      II.    THE COURT SHOULD DISMISS THE ISRAELI LAW
           CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*. ........... 8

CONCLUSION ..................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Core Software Tech., Inc. v. ImageSat Int'l N.V.*,
   No. 08-cv-7017, 2010 WL 21173 (S.D.N.Y. Jan. 5, 2010) ......................................................9

*Diatronics, Inc. v. Elbit Computers, Ltd.*,
   649 F. Supp. 122 (S.D.N.Y. 1986) ......................................................................................10

*Empagran S.A. v. F. Hoffman-La Roche Ltd.*,
   453 F. Supp. 2d 1 (D.D.C. 2006) ..........................................................................................8

*ICC Indus., Inc. v. Israel Disc. Bank, Ltd.*,
   No. 04-cv-6945, 2005 WL 1844616 (S.D.N.Y. July 29, 2005)..............................................11

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
   825 F. Supp. 73 (D. Del. 1993)..........................................................................................6, 8

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)............................................................................................................4, 6

*Murray v. British Broad. Corp.*,
   81 F.3d 287 (2d Cir. 1996)....................................................................................................8

*In re Mylan N.V. Sec. Litig.*,
   No. 16-cv-7926, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018)....................................*passim*

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005)...............................................................................................8, 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)...............................................................................................................9

*PT United Can Co. v. Crown Cork & Seal Co., Inc.*,
   138 F.3d 65 (2d Cir. 1998)....................................................................................................8

*Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*,
   No. 12-cv-212, 2014 WL 3507300 (S.D.N.Y. July 14, 2014).................................................8

*Scottish Air Int'l Inc. v. British Caledonian Grp. PLC*,
   81 F.3d 1224 (2d Cir. 1996)..................................................................................................8

*Stern v. Verifone Holdings, Inc.*,
   No. 3973/10 (2015)................................................................................................................7

*In re Toyota Motor Corp. Sec. Litig.*,
   No. 10-cv-922, 2011 WL 2675395 (C.D. Cal. July 7, 2011)..................................................8

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ............................................................................................5

*In re Urethane Antitrust Litig.*,
   683 F. Supp. 2d 1214 (D. Kan. 2010) ..................................................................8

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
   421 F.3d 129 (2d Cir. 2005) ................................................................................10

*Wilson v. ImageSat Int'l N.V.*,
   No. 07-cv-6176, 2008 WL 2851511 (S.D.N.Y. July 22, 2008) ............................10

**Statutes**

28 U.S.C. § 1367 .......................................................................................................5, 6, 8

Defendants submit this memorandum of law in support of their motion to dismiss certain claims brought in the above-captioned actions under the Israeli Securities Law, 1968.[1]  Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over claims brought under Israeli law or, in the alternative, dismiss the Israeli law claims on *forum non conveniens* grounds.

## PRELIMINARY STATEMENT

In the wake of government investigations into drug pricing, some Teva shareholders sued Defendants, claiming that they violated securities laws when reporting financial results.  For the most part, these claims are based on federal securities law.  Some plaintiffs, however, claim that Defendants violated not just the securities laws of the United States, but also the securities laws of Israel.  While the federal law claims concern American Depositary Shares traded on the New York Stock Exchange, the Israeli law claims focus on Teva common stock traded on the Tel Aviv Stock Exchange in Israel.  Initially, the lead *Ontario Teachers'* complaint contained such a claim.  (*See Ontario Teachers' Pension Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-00558-SRU, (D. Conn.) ("*Ontario Teachers'*") Compl. (ECF 141) ¶¶ 28, 1076-85.)  But the *Ontario Teachers'* plaintiffs later dropped their Israeli law claim.  (*See id.* Am. Compl. (ECF 226) (omitting claim); *id.* Second

---

[1]     "Defendants" refers collectively to the defendants in all above-captioned cases, including: (1) *Schwab Capital Trust, et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-192 (D. Conn.); (2) *Phoenix Ins. Co., Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-449 (D. Conn.); (3) *Mivtachim the Workers Soc. Ins. Fund Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-513 (D. Conn.); (4) *Clal Ins. Co., Ltd., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-543 (D. Conn.); (5) *Migdal Ins. Co. Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-655 (D. Conn.); (6) *Harel Pension and Provident Ltd et. al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-656 (D. Conn.); (7) *Migdal Mutual Funds v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-923 (D. Conn.); (8) *Psagot Mutual Funds, Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-1167 (D. Conn.); (9) *Stichting PGGM Depositary v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-1173 (D. Conn.); and (10) *Internationale Kapitalanlagegesellschaft mbH v. Teva Pharm. Indus. Ltd., et al.*, No. 3:20-cv-83 (D. Conn.) ("INKA").

Am. Compl. (ECF 310) (omitting claim in operative complaint).)

That decision was sound.  As Judge Oetken held in *In re Mylan N.V. Securities Litigation*, No. 16-cv-7926, 2018 WL 1595985, at *1 (S.D.N.Y. Mar. 28, 2018) – a case this Court cited as persuasive authority in its ruling on Defendants' prior motions to dismiss (ECF 283) – a U.S. court should not decide whether an Israeli company violated Israeli law in connection with shares traded on an Israeli exchange.

Defendants fully acknowledge that in their December 1, 2017 motion to dismiss the *Ontario Teachers'* class action complaint they "agree[d with Plaintiffs] that Israeli law mirrors U.S. law" in arguing that Plaintiffs' Israeli law claims should be dismissed along with their U.S. securities law claims.  (ECF 189-1 at 54 n.49.)  Defendants stand by that statement.  But it does not conflict with – or even bear on – the present motion.  Just as *Mylan* concluded, "even if Israel has chosen, as a matter of *Israeli law*, to apply U.S. securities law," there are still conclusive reasons for U.S. courts not to exercise supplemental jurisdiction over Israeli claims.  *Mylan*, 2018 WL 1595985, at *19.  In particular, "international comity" weighs strongly against "imping[ing] on Israeli courts' ability to adjudicate the claims of their own citizens under their own securities laws."  *Id.*  More broadly, "Israeli courts are better equipped than this Court to offer Israeli plaintiffs an appropriate forum to litigate their claims under Israeli law."  *Id.*

Moreover, circumstances have changed since Defendants addressed the Israeli law claims in *Ontario Teachers'*.  Notably, after the *Mylan* decision was issued and cited as persuasive authority by this Court, the lead *Ontario Teachers'* plaintiffs dropped their Israeli law claims. (*Compare Ontario Teachers'* Compl. (ECF 141) ¶¶ 28, 1076-85 *with id.* Second Am. Compl. (ECF 310).).  In consolidating the cases before this Court, Defendants and the *Ontario Teachers'* plaintiffs agreed that not litigating the Israeli law claims here would be consistent with *Mylan* and,

as Defendants argued, "***would streamline the resolution of Teva-related securities litigation in this Court***." (*Id.* Joint Mot. to Consolidate Related Actions (ECF 311) at 15 (emphasis added).) Thus, regardless of Defendants' observations on the applicable law and the content of Israeli law earlier in this litigation, dismissal of the Israeli law claims promotes the most streamlined approach toward resolving this matter. (*See also id.* Order (ECF 341) at 2 (granting joint motion to consolidate).)[2]

For all these reasons, the Israeli law claims should be dismissed, and the Court should reject Plaintiffs' efforts to shoehorn Israeli law claims into U.S. litigation for two main reasons. First, it should decline to exercise supplemental jurisdiction over the Israeli law claims because they present issues of foreign law that U.S. courts typically, and quite properly, decline to consider. This is all the more true when the plaintiffs asserting the Israeli law claims are themselves Israeli residents, and when cases are pending in Israel asserting similar Israeli law-based claims. Second, even apart from supplemental jurisdiction, the Court should dismiss these claims on *forum non conveniens* grounds. None of the factors relevant to the *forum non conveniens* analysis supports maintaining these claims in the United States. The sophisticated Israeli judicial system presents a more-than-adequate forum to consider, and if necessary, adjudicate these claims, and the private and public interests behind the claims are best considered and addressed by Israeli courts.

That is just what the *Mylan* court concluded in evaluating "similar allegations." (*Id.* Order (ECF 283) at 33 (citing *Mylan*).) Mindful of the Supreme Court's cautionary guidance that the

---

[2]     For the same reasons, Defendants' observation in motion to transfer briefing that the Israeli law and state law claims "add nothing significant to the federal law claims because . . . in substance they mirror the federal securities claims at the heart of all the complaints" is consistent with this motion to dismiss. (Mem. of Law in Support of Defs.' Mot. to Transfer (ECF 30-2), *Phoenix Ins. Co., v. Teva Pharm. Indus. Ltd.,*, No. 2:18-cv-03305-PD, at 10 n.2, 15 (E.D. Pa. Oct. 9, 2018).) Even if those claims are grounded in similar facts, that does not mean that supplemental jurisdiction is appropriate.

United States should not be the "Shangri-La of class-action litigation for lawyers representing those allegedly cheated in foreign securities markets," *Mylan* dismissed Israeli law claims and left them to be considered, and resolved, in Israel.  2018 WL 1595985, at *20 (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 270 (2010)).  This Court should do the same and dismiss Plaintiffs' claims.[3]

## BACKGROUND

In September 2017, the *Ontario Teachers'* plaintiffs filed their consolidated class action complaint, seeking to hold Teva and other defendants liable for securities laws violations in the wake of government investigations.  (*Ontario Teachers'*, Compl. (ECF 141).).  Around the same time, and since then, nineteen plaintiffs or plaintiff groups have opted out of the *Ontario Teachers'* putative class action to assert claims against Defendants directly.  Those cases have been consolidated before this Court for pre-trial purposes.  (*Id.* Order (ECF 341).)[4]  Some of these cases involve Israeli law claims in addition to federal law claims.

Before those opt-out cases bringing Israeli law claims were filed in the United States, some other plaintiffs brought putative securities class actions in Israel.  *See* DC (TA) 17017-11-16 *Gat v. Teva Pharm. Indus. Ltd.* (2016) (Isr.); DC (TA) 5407-09-17 *Lightcom, Ltd. v. Teva Pharm. Indus. Ltd.* (2017) (Isr.).

All the U.S. plaintiffs asserting Israeli law claims make essentially the same contentions.[5]

---

[3]     Defendants reserve all of their rights and arguments regarding the question of the applicable law and the proper procedure to litigate the Israeli law based claims in Israel.

[4]     In its follow-up order, the Court provided that "Defendants may move to dismiss any complaint in whole or in part with respect to . . . Israeli law claims."  (*Ontario Teachers'*, Order (ECF 352) ¶ 13.)

[5]     (*See Phoenix*, Compl. (ECF 397) ¶¶ 939-47; *Schwab*, Compl. (ECF 393) ¶¶ 418-26; *Mivtachim*, *Clal*, *Migdal Ins.*, *Migdal Mutual Funds*, and *Psagot*, Consolidated Compl. (ECF 391) ¶¶ 579-86; *Harel*, Compl. (ECF 399) ¶¶ 917-25; *Stichting*, Compl. (ECF 394) ¶¶ 418-26; *INKA*, Compl. (ECF 1) 417-25.)

They allege that during the relevant period, Teva securities were dually listed on both the New York Stock Exchange ("NYSE") and the Tel Aviv Stock Exchange ("TASE"). They claim that this makes Teva a "foreign corporation" under Israeli Law and that Israel would apply United States laws and regulations to securities disclosure obligations.

## ARGUMENT

### I.     THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE ISRAELI LAW CLAIMS.

All Plaintiffs in these actions seek to have this Court exercise supplemental jurisdiction over their Israeli law claims under 28 U.S.C. § 1367.  (*See Phoenix*, Compl. (ECF 397) ¶ 45; *Schwab*, Compl. (ECF 393) ¶ 31; *Mivtachim*, *Clal*, *Migdal Ins.*, *Migdal Mutual Funds*, and *Psagot*, Consolidated Compl. (ECF 391) ¶ 26; *Harel*, Compl. (ECF 399) ¶ 43; *Stichting*, Compl. (ECF 394) ¶ 31; *INKA*, Compl. (ECF 1) ¶ 31.)  It has long been settled, however, that supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  A court "may decline to exercise supplemental jurisdiction" on a number of grounds, including:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[6]  The *Mylan* court concluded that it was "compel[led]" to decline to exercise

---

[6]     The first factor, speaking of "State law," includes foreign law as well because "the principles embodied in [28 U.S.C. § 1367(c)(1)] are implicated by complex issues of foreign as well as state law."  *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 76 (D. Del. 1993); *see Mylan*, 2018 WL 1595985, at *19 n.14.

supplemental jurisdiction because of the first and fourth of these factors.  2018 WL 1595985, at *19.  This Court should decline to exercise supplemental jurisdiction for the same reasons.

First, the *Mylan* court concluded that adjudicating the Israeli law claims would require resolving "whether Israeli courts would apply U.S. securities law or Israeli securities law to a 'dual listed' company" like Teva.  *Id.*  On this ground, *Mylan* thought "it better to decline to exercise supplemental jurisdiction," and Plaintiffs in the above-captioned cases cannot present any justified reason why the conclusion should be different in their case.  *Id.*

Second, and no less important, this case presents precisely the kind of "exceptional circumstances" offering "compelling reasons for declining jurisdiction" under § 1367(c)(4).  Here, as in *Mylan*, "[t]wo separate class actions are currently pending in Israeli courts."  *Id.* at *19; s*ee also* DC (TA) 17017-11-16 *Gat v. Teva Pharm. Indus. Ltd.*  (2016) (Isr.); DC (TA) 5407-09-17 *Lightcom, Ltd. v. Teva Pharm. Indus. Ltd.* (2017) (Isr.).  In fact, those putative securities class actions in Israel predate the opt-out cases raising Israeli law claims in the United States.  For *Mylan*, the pendency of putative class actions in Israel meant that "Israeli courts are better equipped than this Court to offer Israeli plaintiffs an appropriate forum . . . ."  2018 WL 1595985, at *19.  The same conclusion should be drawn here.  *Cf. Morrison*, 561 U.S. at 269 (noting that "foreign countries regulate their domestic securities exchanges and securities transactions," and that regulation can differ from the United States in important ways, including "what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters").

Importantly, in weighing this "exceptional circumstances" factor, *Mylan* considered it irrelevant that Israeli law might mirror U.S. law.  "In the interests of international comity, this

6

Court hesitates to impinge on Israeli courts' ability to adjudicate the claims of their own citizens under their own securities laws – even if Israel has chosen, as a matter of *Israeli law*, to apply U.S. securities law." 2018 WL 1595985, at *19 (emphasis in original). This hesitation is all the more pronounced when, as here, "[o]n the other side of the ledger, the United States has only a minimal interest, if any, in providing a forum to litigate the claims of foreign stockholders under foreign securities laws." *Id*. at *20 (citing *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 388 (S.D.N.Y. 2000)).

Finally, if the Israeli law claims are maintained in the United States, Defendants could have to engage in additional litigation in Israel to ensure that the Israeli courts recognize a judgment from a U.S. court on the Israeli law claims. Even if Defendants prevailed on or agreed to settle Israeli law claims in this Court, plaintiffs in the previously filed Israeli cases might endeavor to re-litigate the same claims in Israel. The leading case on the issue from the Israeli Supreme Court propounds a multi-factor test to determine the enforceability of a U.S. securities law judgment. *See Stern v. Verifone Holdings, Inc*., No. 3973/10 (2015) (Isr.). For such reasons, *Mylan* stressed that declining jurisdiction avoids any conceivable "risk of exposing Defendants to inconsistent or double liability." 2018 WL 1595985, at *20.[7]

Mindful of the complexities and potential pitfalls that come with exercising supplemental jurisdiction over claims like this, courts appropriately reject attempts to have foreign law claims "piggybacked into" an "American securities fraud case." *In re Toyota Motor Corp. Sec. Litig.*,

---

[7]     Teva is firmly of the view that the resolution of the claims in this case should have *res judicata* or claim preclusive effect in Israel. Nonetheless, Teva acknowledges that the risk that the *Mylan* court recognized, however remote, militates in favor of dismissing the Israeli law claims here, for the same reasons that the *Mylan* court identified.

No. 10-cv-922, 2011 WL 2675395, at *7 (C.D. Cal. July 7, 2011).[8]  This Court, like the *Mylan* court before it, should do the same.

## II.  THE COURT SHOULD DISMISS THE ISRAELI LAW CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

Alternatively, this Court can and should dismiss the Israeli law claims on *forum non conveniens* grounds.  That doctrine "permits a court to resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (internal quotation marks and citation omitted).  Courts enjoy broad discretion to determine "where litigation will be most convenient" and where it "will serve the ends of justice."  *PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998).  "*Forum non conveniens* is a doctrine that necessarily requires great flexibility," and thus "a district court may dismiss part of a lawsuit while deciding the merits of other issues."  *Scottish Air Int'l Inc. v. British Caledonian Grp. PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).

The Second Circuit has "outlined a three-step process to guide the exercise of that discretion."  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)).  At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the

---

[8]      *See, e.g.*, *Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*, No. 12-cv-212, 2014 WL 3507300, at *11 (S.D.N.Y. July 14, 2014) (refusing to exercise supplemental jurisdiction where the court would "need to apply Mexican law to determine the validity of an agreement allegedly formed in Mexico between two Mexican parties"); *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1221 (D. Kan. 2010) (declining to exercise supplemental jurisdiction because of novel and complex issues of European law); *Empagran S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 9-13 (D.D.C. 2006) (declining to exercise supplemental jurisdiction under § 1367(c) because of novel, complex, and developing European antitrust law); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 76 (D. Del. 1993) (declining to exercise supplemental jurisdiction over claim that party infringed Japanese patent).

parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.  *Id*. (citations omitted).  All three factors support dismissal here.

First, Plaintiffs' forum choice on this claim should be accorded little deference.  As for the non-class actions, nearly all of the plaintiffs in these cases are non-United States residents, and "a foreign plaintiff's choice deserves less deference" in the *forum non conveniens* analysis.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).  Most of these plaintiffs are Israeli residents. (*See Phoenix*, Compl. (ECF 397)  ¶ 48; *Mivtachim*, *Clal*, *Migdal Ins.*, *Migdal Mutual Funds*, and *Psagot*, Consolidated Compl. (ECF 391) ¶¶ 29-39; *Harel*, Compl. (ECF 399) ¶ 46.)  One case involves a Netherlands-based entity.  (*Stichting*, Compl. (ECF 394) ¶¶ 34-35.)  And one case involves a German fund-management company.  (*INKA*, Compl. (ECF 1) ¶¶ 34-35.)[9]  These Israeli law claims relating to purchases on an Israeli stock exchange have little connection to the United States.  Given the nature of the complaints, the Israeli law claims are tacked on to the main issue: alleged violations of U.S. securities laws.  Thus, Plaintiffs' litigating of these Israeli law claims here is less of a considered choice than it is an unavoidable acknowledgment of the secondary status of the Israeli law claims.

Second, Israel has a sophisticated legal system and is far better disposed to consider and, if necessary, adjudicate Israeli law claims, so it is an adequate alternative forum.  *See Core Software Tech., Inc. v. ImageSat Int'l N.V.*, No. 08-cv-7017, 2010 WL 21173, at *3 (S.D.N.Y. Jan. 5, 2010) (holding, in *forum non conveniens* analysis, that "Israel is an available and adequate forum"); *Wilson v. ImageSat Int'l N.V.*, No. 07-cv-6176, 2008 WL 2851511, at *6 (S.D.N.Y. July 22, 2008) ("Israel provides an adequate forum for this litigation."), *aff'd sub nom. Wilson v.*

---

[9]     Of the cases in which plaintiffs have amended or designated a complaint consistent with the Court's order, only *Schwab* involves United States-based plaintiffs: a Massachusetts business trust and a Delaware statutory trust.  (*See Schwab*, Compl. (ECF 393) ¶¶ 34-36.)

*Eckhaus*, 349 F. App'x 649 (2d Cir. 2009); *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 127 (S.D.N.Y. 1986) (rejecting plaintiff's argument "that Israeli law is less favorable to it than United States law is," making it an inadequate forum), *aff'd*, 812 F.2d 712 (2d Cir. 1987).

Third, there is an obvious public interest in having Israeli law claims, concerning stock on an Israeli exchange, considered and decided by an Israeli court. *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (holding that this factor alone supports dismissal due to *forum non conveniens*, because "irrespective" of the other factors, "the nature of the dispute and the apparent applicability of" foreign law "plainly favors" a foreign forum).

Private interests also bolster that conclusion because, as noted above, Defendants might have to engage in further litigation to ensure the recognition of a judgment from this Court based on an interpretation of Israeli law; as in *Mylan*, declining to exercise supplemental jurisdiction avoids any possibility of double exposure. (*See supra* at 8.) And again, it can hardly be an undue inconvenience for plaintiffs who purchased stock on a Israeli exchange to litigate securities claims based on those purchases in Israel – particularly when, as in many of the cases here, the plaintiffs are themselves residents of Israel.

Here too, *Mylan*'s treatment of this issue is instructive. As discussed, *Mylan* declined to exercise supplemental jurisdiction over the Israeli claims. But in doing so, the court suggested that it would have dismissed the Israeli law claims on *forums non conveniens* grounds had it not dismissed the claims on supplemental jurisdiction grounds. *See Mylan*, 2018 WL 1595985, at *18 n.13 ("[T]he Court notes that although it does not reach Defendants' motion to dismiss under the doctrine of *forum non conveniens*, several of the factors compelling the Court to decline supplemental jurisdiction would also weigh in favor of a dismissal on those alternative grounds").

And once again, *Mylan*'s determination was well supported by Second Circuit precedent.

*See, e.g.*, *Eckhaus*, 349 F. App'x at 652 (affirming dismissal on *forum non conveniens* grounds, which was based largely on "district court's conclusion that Israel has a far stronger interest in this litigation than does plaintiffs' chosen forum"); *ICC Indus., Inc. v. Israel Disc. Bank, Ltd.*, No. 04-cv-6945, 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005) (dismissing case on *forum non conveniens* grounds), *aff'd*, 170 F. App'x 766 (2d Cir. 2006).  In *ICC Industries*, the district court held that the plaintiff's forum choice deserved "little deference" because plaintiff invested in an Israeli company, it was "clear" that the Tel Aviv district court provided an adequate alternative forum, and the private and public interest factors strongly favored an Israeli forum.  2005 WL 1844616 at *5-7.  Thus, the district court dismissed the case because it was "really an Israeli controversy."  *Id.* at *7.  The same is true here and the Court should reach the same conclusion.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Israeli law claims in the above-captioned cases.

Respectfully submitted,

By: /s/ *Jordan D. Hershman*
Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Elizabeth G. Hays (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 951-8455
Fax: (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com
liza.hays@morganlewis.com

*Counsel for Defendants*

– and –

11

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants (except Kåre Schultz)*