UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re TEVA SECURITIES LITIGATION | ) | No. 3:17-cv-00558-SRU |
| | ) | |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| No. 3:19-cv-00192-SRU | ) | |
| No. 3:19-cv-00449-SRU | ) | |
| No. 3:19-cv-00513-SRU | ) | |
| No. 3:19-cv-00543-SRU | ) | |
| No. 3:19-cv-00655-SRU | ) | |
| No. 3:19-cv-00656-SRU | ) | |
| No. 3:19-cv-00923-SRU | ) | |
| No. 3:19-cv-01167-SRU | ) | |
| No. 3:19-cv-01173-SRU | ) | |
| No. 3:20-cv-00083-SRU | ) | |
| | ) | |

DIRECT ACTION PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS ISRAELI LAW CLAIMS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND .............................................................................................5

      A.    Israel Instituted a Dual-Listing Regime that Permits Companies Like Teva
            to List Securities on Both the TASE and Foreign Exchanges ...............................5

      B.    Defendants Successfully Consolidated the U.S. Securities Actions in This
            Court and Obtained Stays of Similar Israeli Class Actions ...................................8

III.  ARGUMENT..................................................................................................11

      A.    Defendants Should Be Judicially Estopped from Taking Positions that Are
            Diametrically Opposed to Their Prior, Successful Arguments............................11

      B.    Regardless of Whether Judicial Estoppel Applies, Defendants' Request
            that the Court Decline Supplemental Jurisdiction over Plaintiffs' Israeli
            Law Claims Should Be Denied................................................................................15

            1.    The Court "Shall" Have Jurisdiction over the Israeli Law Claims
                  Under §1367(a) Because They "Form Part of the Same Case or
                  Controversy" as the U.S. Securities Claims................................................16

            2.    Supplemental Jurisdiction Should Not Be Declined Because No
                  Provision of §1367(c) Applies and Each of the *Gibbs* Values
                  Favors Jurisdiction .....................................................................................17

                  a.    There Are No Novel Questions of Israeli Law ..............................18

                  b.    There Are No Exceptional Circumstances.....................................20

                  c.    Even if Either §1367(c)(1) or (c)(4) Applies (Neither
                        Does), the *Gibbs* Values All Counsel in Favor of
                        Exercising Supplemental Jurisdiction............................................25

      C.    Defendants' Request that the Court Dismiss the Israeli Law Claims on the
            Basis of *Forum Non Conveniens* Should Be Denied .............................................30

            1.    Plaintiffs' Choice of the United States Is Afforded Great Weight
                  Because Some Plaintiffs Are U.S. Residents and All Plaintiffs
                  Have U.S. Securities Claims that Are Based on the Same
                  Misconduct Undergirding the Israeli Law Claims.....................................30

            2.    The Balance of Interests Strongly Favors U.S. Jurisdiction .....................33

4844-6142-6373.v1

**Page**

        a.      Private Interests Strongly Favor U.S. Jurisdiction Because the Vast Majority (if Not All) Evidence Is Located in the United States and Plaintiffs Will Continue Litigating Their U.S. Securities Claims Here............................................................33

        b.      Public Interests Also Strongly Favor U.S. Jurisdiction Because, as Defendants Have Argued, "[T]he Public Is Obviously Well-Served by Avoiding Duplicative Litigation".....................................................................................36

IV.    CONCLUSION.............................................................................................40

4844-6142-6373.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006) .................................................................16

*Catzin v. Thank You & Good Luck Corp.*,
    899 F.3d 77 (2d Cir. 2018) ........................................................... *passim*

*Costas v. Ormat Techs., Inc.*,
    No. 3:18-CV-00271-RCJ-CLB, 2019 WL 6700199
    (D. Nev. Dec. 6, 2019) ...............................................................17, 29

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ........................................................... *passim*

*EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*,
    No. 18 Civ. 1047 (PGG), 2020 WL 3488037
    (S.D.N.Y. June 26, 2020) ...................................................................28

*Empagran, S.A. v. F. Hoffman-La Roche Ltd.*,
    453 F. Supp. 2d 1 (D.D.C. 2006) ..........................................................24, 25

*Ervin v. OS Rest. Servs.*,
    632 F.3d 971 (7th Cir. 2011) ...............................................................27

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...................................................................30, 33

*ICC Indus., Inc. v. Isr. Disc. Bank, Ltd.*,
    No. 04 Civ. 6945(DC), 2005 WL 1844616
    (S.D.N.Y. July 29, 2005),
    *aff'd*, 170 F. App'x 766 (2d Cir. 2006) ...............................................39, 40

*In re Elec. Books Antitrust Litig.*,
    No. 11 MD 2293 (DLC), 2014 WL 1642813
    (S.D.N.Y. Apr. 24, 2014) ...................................................................14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    510 F. Supp. 2d 299 (S.D.N.Y. 2007) ....................................................16, 29

*In re Mylan N.V. Sec. Litig.*,
    No. 16-CV-7926 (JPO), 2018 WL 1595985
    (S.D.N.Y. Mar. 28, 2018) .............................................................. *passim*

*In re OSG Sec. Litig.*,
    12 F. Supp. 3d 622 (S.D.N.Y. 2014) ......................................................36

4844-6142-6373.v1

Page

*In re Petition of Transrol Navegacao S.A.*,
    782 F. Supp. 848 (S.D.N.Y. 1991)......................................................................13

*In re Toyota Motor Corp. Sec. Litig.*,
    No. CV 10-922 DSF, 2011 WL 2675395
    (C.D. Cal. July 7, 2011) ..................................................................................24

*In re Urethane Antitrust Litig.*,
    683 F. Supp. 2d 1214 (D. Kan. 2014) ...............................................................24

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001).................................................................31, 32, 33

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
    140 F.3d 442 (2d Cir. 1998).................................................................15, 25, 27

*Jones v. Ford Motor Credit Co.*,
    358 F.3d 205 (2d Cir. 2004)..............................................................................25

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947).................................................................................30, 36

*Mars, Inc. v. Nippon Coniux Kabushiki-Kaisha*,
    825 F. Supp. 73 (D. Del. 1993),
    *aff'd*, 24 F.3d 1368 (Fed. Cir. 1994) ................................................................25

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................................ *passim*

*Murray v. BBC*,
    81 F.3d 287 (2d Cir. 1996)..........................................................31, 35, 37, 38

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)........................................................................................11

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).........................................................................................11

*Perrigo Institutional Inv. Grp. v. Papa*,
    No. 19-8047, slip op. (3d Cir. Apr. 30, 2020) ...................................................17

*Piper Aircraft v. Reyno*,
    454 U.S. 235 (1981).........................................................................................37

- iv -

**Page**

*R. Maganlal & Co. v. M.G. Chem. Co.*,
    942 F.2d 164 (2d Cir. 1991).................................................................... *passim*

*Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*,
    No. 12cv0212 (DF), 2014 WL 3507300
    (S.D.N.Y. July 14, 2014) ..................................................................................24

*Roofer's Pension Fund v. Papa*,
    333 F.R.D. 66 (D.N.J. 2019).............................................................................17

*Roofer's Pension Fund v. Papa*,
    No. 16-2805, 2018 WL 3601229
    (D.N.J. July 27, 2018)..............................................................................17, 30

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011)........................................................15, 18, 27

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)............................................................................... *passim*

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005).............................................................................39

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    No. 15 Civ. 2106 (ER), 2017 WL 1169629
    (S.D.N.Y. Mar. 28, 2017) ......................................................................34, 37, 40

*Wilson v. Eckhaus*,
    349 F. App'x 649 (2d Cir. 2009) ....................................................................39

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)...............................................................................31

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77v..................................................................................................................16
    §78j(b) .............................................................................................................21
    §78t(a).......................................................................................................17, 30
    §78aa(a)...........................................................................................................16

4844-6142-6373.v1

**Page**

28 U.S.C.
    §1331 ...................................................................................................................16
    §1337 ...................................................................................................................16
    §1367 ...................................................................................................................15
    §1367(a) ........................................................................................................ *passim*
    §1367(c) ........................................................................................................ *passim*
    §1367(c)(1) ...............................................................................................18, 20, 25
    §1367(c)(2) ...........................................................................................................18
    §1367(c)(3) ...........................................................................................................18
    §1367(c)(4) ......................................................................................................20, 25

Pennsylvania Securities Act of 1972 ...........................................................................37

17 C.F.R.
    §240.10b-5 .......................................................................................................17, 30

Plaintiffs[1] respectfully submit this Opposition to Defendants' Motion to Dismiss Israeli Law Claims (ECF No. 450) ("Motion").

## I.      INTRODUCTION

Plaintiffs are investors who purchased Teva equity securities on both the United States' New York Stock Exchange ("NYSE") (and in other U.S. domestic transactions) and Israel's Tel Aviv Stock Exchange ("TASE"). As a result of Defendants' undisclosed participation in an industrywide, generic drug price-fixing conspiracy in the U.S. drug market and implementation of a strategy by which Defendants raised prices across a large swath of Teva's generic drug portfolio while denying they were doing so, Plaintiffs purchased Teva securities at artificially inflated prices on the NYSE and TASE. These prices plummeted upon disclosure of the truth, resulting in hundreds of millions of dollars in damages to Plaintiffs on both securities exchanges.

In order to be made whole, and consistent with the Supreme Court's observation that ""'the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time,'"" Plaintiffs have brought claims under U.S. and Israeli law, seeking redress for all losses they have suffered. *United Mine Workers v. Gibbs*, 383 U.S. 715, 723 (1966).[2] The Court has already determined that the U.S. securities claims are adequately alleged. ECF No. 283. Despite the near-total factual and legal overlap between those claims and the Israeli law claims, Defendants now insist that Plaintiffs' Israeli law claims should be dismissed, either on supplemental jurisdiction or *forum*

---

[1]      "Plaintiffs" refers collectively to the direct action plaintiffs in the above-captioned cases, including: (1) *Schwab Capital Trust, et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-00192 (D. Conn.); (2) *Phoenix Ins. Co., Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-00449 (D. Conn.); (3) *Mivtachim the Workers Soc. Ins. Fund Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-00513 (D. Conn.); (4) *Clal Ins. Co., Ltd. et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-00543 (D. Conn.); (5) *Migdal Ins. Co. Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-00655 (D. Conn.); (6) *Harel Pension and Provident Ltd, et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-00656 (D. Conn.); (7) *Migdal Mutual Funds v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-00923 (D. Conn.); (8) *Psagot Mutual Funds, Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-01167 (D. Conn.); (9) *Stichting PGGM Depositary, et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-01173 (D. Conn.); and (10) *Internationale Kapitalanlagegesellschaft mbH v. Teva Pharm. Indus. Ltd., et al.*, No. 3:20-cv-00083 (D. Conn.) ("*INKA*").

[2]      Unless otherwise noted, citations are omitted and emphasis is added.

- 1 -

*non conveniens* grounds, based on the assertion that they will inject complexity into the Consolidated Action beyond the Court's capabilities.

If these issues seem familiar, it's because they are.  However, the last time Defendants raised them in this and multiple other courts, they argued the exact opposite, saying Israeli law "mirrors" or is "substantially identical" to U.S. securities law and that U.S. courts are the "***most natural forum***" to adjudicate the Israeli law claims.  *Infra*, §III.A.  Based on Defendants' prior arguments, this Court dismissed the Class's complaint (which included Israeli law claims), the Eastern District of Pennsylvania transferred the *Phoenix* plaintiffs' case to this Court, and Israeli district courts stayed parallel Israeli class actions in deference to the U.S. litigation.  Having succeeded in these efforts, Defendants should be judicially estopped from now taking a diametrically opposed position.  *Id.*

Even if considered on the merits, Defendants' arguments are easily rejected.  The Court's supplemental jurisdiction over Plaintiffs' Israeli law claims is mandatory because they "form part of the same case or controversy" as the U.S. securities claims.  28 U.S.C. §1367(a).  Defendants do not – and cannot – argue otherwise.  Plaintiffs' U.S. and Israeli law claims are based on the same series of materially false and misleading statements and omissions on Teva conference calls and in filings with the U.S. Securities Exchange Commission ("SEC") touting, *inter alia*, Teva's U.S. generic drug business, including its financial performance, the source and sustainability of Teva's revenues, profits and growth, the rate of price erosion on Teva's generic drugs, and the competitiveness of the U.S. generic drug market, while omitting and affirmatively denying that Defendants were colluding with Teva's "competitors" in an anticompetitive scheme to manipulate the U.S. generic drug market and systematically hiking prices across several of its generic drugs, often in tandem with other drug manufacturers.  Defendants reaped billions of U.S. dollars in ill-gotten gains from these schemes, driving the prices of Teva securities on the NYSE and TASE to Relevant Period artificial highs of $72 per American Depositary Share ("ADS") and ILS 27,120 per ordinary share, respectively.  When the truth

4844-6142-6373.v1

was eventually revealed that Teva's financial performance was the result of illegitimate collusive activities and price hikes, the prices of Teva securities nosedived a staggering *84%* from those Relevant Period highs, from which they have not recovered.  Because all of Plaintiffs' claims arise from this common nucleus of operative facts, there can be no serious dispute that the Israeli law claims are part of the same case or controversy, and the Court "***shall***" have jurisdiction over them.  28 U.S.C. §1367(a); *infra*, §III.B.1.

While conceding this point, Defendants contend the Court should nonetheless decline supplemental jurisdiction under 28 U.S.C. §1367(c) because: (1) jurisdiction would require the Court to resolve the "novel" question of which country's substantive law governs liability under Israeli securities law in the context of a dual-listed company like Teva; and (2) "exceptional circumstances" exist, specifically, that Israeli courts should be afforded an opportunity to adjudicate Israeli law claims.  Motion at 5-8.  But their arguments are predicated almost entirely on the out-of-date district court decision in *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018), in which that court cautiously declined jurisdiction based on a purported "open question" of whether Israeli securities law is in fact governed by foreign substantive law.  *Id.* at *19.  But in noting an "open question" existed, the district court mistakenly characterized analyses from an interim decision of an Israeli district court as a statement made by the Israeli Supreme Court.  *Id.*

In any event, both of Defendants' arguments are meritless.  Even if an open question once existed, the Israeli Supreme Court definitively answered it six months after *Mylan*, finding that U.S. substantive law indeed applies to Israeli law claims against a company that dual lists on a U.S. stock exchange.  *Infra*, §III.B.2.a.  This opinion is sound and consistent with the purpose of Israel's dual-listing regime.  To ensure the TASE's competitiveness vis-à-vis foreign stock exchanges and to protect the Israeli capital market more generally, the Israeli legislature (the Knesset), in conjunction with the Israel Securities Authority ("ISA"), carefully designed a regime under which companies like Teva can list their

securities both on a foreign stock exchange (such as the United States' NYSE) and Israel's TASE while being subject to only the former country's listing and disclosure regulations. As the Knesset and ISA intended, and the Israeli courts have uniformly held, under this regime, Israeli securities law claims brought against a dual-listed company are governed by the substantive law of the foreign exchange's country and are heard in the foreign country's courts. *See* Declaration of Prof. Amir N. Licht ("Licht Decl."), filed concurrently herewith; *infra*, §III.B.2.a.-b. Here, as a direct result of Teva's choice to avail itself of the many benefits of dual listing its securities on the NYSE and TASE, the United States is the country whose substantive law applies and whose courts are the primary arbiter of Plaintiffs' claims. Indeed, in conformity with this regime, and at ***Teva's*** behest, Israeli district courts declined the opportunity to adjudicate the Israeli law claims when they stayed parallel securities actions in Israel pending resolution of the U.S. cases. As a result, there are no "novel" issues or "exceptional" circumstances, and Defendants' request that the Court dismiss Plaintiffs' Israeli law claims on supplemental jurisdiction grounds must be denied. *Infra*, §III.B.2.

For similar reasons, Defendants' request that Plaintiffs' Israeli law claims should be dismissed for *forum non conveniens* should be denied as well. The documentary evidence and witnesses (party and nonparty alike) with direct knowledge that will prove up Plaintiffs' claims are overwhelmingly located in the United States, and any evidence or witnesses located in Israel are relevant to the U.S. claims (of the Class ***and*** Plaintiffs), which will continue to be litigated in this Court regardless of the outcome of Defendants' Motion. Defendants have offered nothing – argument or otherwise – to establish how critical nonparties located in the United States would be subject to compulsory process in Israel, or how any efficiencies would be gained by forcing Plaintiffs to congest two separate courts by litigating their Israeli law claims from square one in a forum that is unfamiliar with both the facts and the governing law nearly four years after the Consolidated Action's inception – all while Plaintiffs simultaneously litigate their U.S. claims here. Because the burden rests squarely with Defendants to strongly prove the vexation

of defending against Plaintiffs' Israeli law claims in the United States, Plaintiffs' valid choice of this forum should not be dislodged.  *Infra*, §III.C.

At bottom, Defendants ask the Court to ignore the intent of the Israeli legislature and securities authority, the uniform holdings of multiple Israeli district courts, the findings of the Israeli Supreme Court, and Defendants' own arguments made to multiple district courts in the United States and Israel to dismiss Plaintiffs' Israeli law claims.  Following Defendants' argument to its (il)logical conclusion would require the Court to disregard Israel's thoughtfully implemented dual-listing regime, set aside its intimate familiarity with the facts of this action that has been cultivated over the past four years, and impose upon Plaintiffs, Defendants and the courts the additional burdens of simultaneously litigating what amounts to the exact same claims in two countries, claims that will be governed by the same substantive law and proved by the same evidence.  In short, Defendants do not request that the Court "actually promote" economy, fairness, convenience and comity as required by the Second Circuit, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018); they ask that the Court undermine them.  *Infra*, §III.B.2.c.

For these reasons and those detailed more fully below, Plaintiffs respectfully request that the Court deny Defendants' Motion.

## II.    BACKGROUND

### A.    Israel Instituted a Dual-Listing Regime that Permits Companies Like Teva to List Securities on Both the TASE and Foreign Exchanges

During the late 1990s, the TASE was a small- to medium-sized national stock exchange with a market capitalization a fraction of the largest stock exchanges in the world, like the NYSE and NASDAQ, both in the United States.  *See* Licht Decl., ¶18.  By listing on these large exchanges outside of Israel, Israeli companies could gain several advantages, including liquidity, visibility, connections in the financial and business environment, and better cost of capital.  *Id.*, ¶19.  However, Israeli companies that dual listed on the TASE and a foreign exchange had to comply with two separate legal regimes with

- 5 -

all the concomitant costs. *Id.*, ¶22. Coupled with a lack of public confidence in the TASE in the mid-1990s due to the burst of a bubble that had developed in prior years, Israeli firms in all industries, but especially start-up high-tech firms, listed on foreign securities exchanges and eschewed their home exchange (the TASE) altogether. *Id.*, ¶¶19-21, 27.

By the late 1990s, there was mounting pressure to reform Israeli securities laws. *Id.*, ¶26. In 1998, the ISA appointed an expert committee to examine whether exemptions should be granted to dual listing of securities listed abroad. *Id.*, ¶30. The committee based its recommendations on the observation that:

> "There is no doubt that the legal provisions applying also to the Israeli companies listed on U.S. stock exchanges, the federal laws and the rules of the central stock exchanges there (NYSE, AMEX, NASDAQ), constitute an appropriate basis for providing adequate protection also to the public investors in Israel while realizing the goals shared by the Israeli securities laws. Moreover, said American laws have been serving for years as a basis for developing the Israeli legal provisions in the area of securities trading."

*Id.*

Following this committee's work, and in conjunction with the Knesset, the ISA and Ministry of Justice designed a legislative amendment to implement a dual-listing regime. *See id.*, ¶32. In doing so, they sought to avoid or minimize any interaction between dual-listed issuers and the Israeli legal system as a whole and to rely as much as possible on the relevant foreign legal systems and exchanges, in particular those of the United States. *Id.*, ¶32. This policy continues today. *See id.*, ¶33. For instance, the ISA stated in its 2016 Annual Report that "'the dual-listing arrangement almost completely exempts [companies that dual list] from the requirements of Israel's Securities Law,'" and that the ISA's intent was for dual-listed companies to be "'subject to as similar an ecosystem in Israel as they are in the United States or the UK.'" *Id.* The ISA made clear that "'[d]ually listed corporations report according to the foreign laws applicable to them,'" and "'[i]n reviewing these reports, the ISA takes account the fact that these companies are already under the supervision of the American SEC or the British FSA supervising authorities, the levels of whose supervision are amongst the highest in the world.'" *Id.*, ¶42.

- 6 -

The dual-listing regime was added as a chapter to Israeli Securities Law and the regulations thereunder. *See id.*, ¶31. The law enables eligible issuers to list their securities on the TASE based solely on disclosures they make abroad. *Id.* Accordingly, eligible issuers under the dual-listing regime are exempted from ISA filing requirements. *See id.*, ¶35. Eligible issuers include, *inter alia*, Israeli companies listed on the major U.S. and U.K. exchanges. *Id.*, ¶36 & n.18.

The central pillar of the dual-listing regime is the provision that applies the foreign law with respect to reporting duties (§35EE). *Id.*, ¶43. An issuer dual listed under this regime may discharge its reporting duties by disclosing the information required under the "'foreign law'" and information that it disclosed voluntarily. *Id.*, ¶44. "'Foreign law'" is defined as "'the law applying to a foreign corporation because its securities are listed for trade on a foreign stock exchange, including the rules of that foreign stock exchange' (§1)." *Id.* In addition, the primary forum for enforcing disclosure requirements are the courts of the foreign country. *See id.*, ¶56. Under the regime, the Israeli legal system is intended to ""serve as a 'second fiddle'"" to the foreign legal system, ""primarily the American system."" *Id.*

Teva is an Israeli corporation that has availed itself of Israel's dual-listing regime. *See* Licht Decl., Ex. 2 ("Teva Mtn. to Stay"), ¶14. Teva's ADSs are listed and traded on the United States' NYSE under the ticker symbol "TEVA." *See id.* Teva's ordinary shares trade on the TASE under the same symbol. In Teva's words, "*[t]he majority of Teva's securities are traded on a stock exchange in the United States*." *Id.*, ¶15 (emphasis in original). As of December 31, 2016, "*approximately 81% of all shares in Teva*" were Teva's U.S.-traded ADSs. *Id.* (emphasis in original).

In 2000, Teva made the decision to report according to the U.S. reporting system. *See id.*, ¶¶16-17. "Teva's reporting duties are therefore determined in accordance with *the foreign law* that applies to it in the United States, and that law is what defines which reports Teva is required to file and what the content and scope of the reporting duties that apply to it are." *Id.*, ¶17 (emphasis in original). Accordingly, starting in 2000, "Teva files its reports in the United States in accordance with American

- 7 -

securities laws, and copies of those reports are also filed by it with the [ISA] and the stock exchange in Israel." *Id.*

### B.    Defendants Successfully Consolidated the U.S. Securities Actions in This Court and Obtained Stays of Similar Israeli Class Actions

Complaints alleging violations of the securities laws by Defendants began to be filed in November 2016.  The first-filed complaint was filed in the Central District of California by Amram Galmi.  ECF No. 1.  On January 17, 2017, Defendants moved to transfer the *Galmi* complaint to the Eastern District of Pennsylvania.  ECF No. 37.  Judge Hatter granted that motion on April 3, 2017, but transferred the *Galmi* complaint to this Court based on the location of nonparty witnesses and the existence of a government investigation led by the Connecticut Attorney General.  *See* ECF No. 74.  In this Court, lead plaintiffs were appointed, and a consolidated class complaint was filed on September 11, 2017.  ECF Nos. 124, 141.  This complaint included, for the first time, claims based on Israeli law.  *See* ECF No. 141, ¶¶1076-1085.

Multiple motions to dismiss were filed.  ECF Nos. 187-190, 198.  Defendants argued at length the reasons why the Class's U.S. securities claims should be dismissed.  *See generally* ECF No. 189.  Defendants contended the Class's Israeli law claims should be dismissed for the same reasons because "Israeli law mirrors U.S. law here." *Id.* at 54 n.49.  A hearing was held on the motions on April 3, 2018.  *See* ECF No. 214.  The Court granted the motions to dismiss the Class's complaint without prejudice.  *Id.*

On June 22, 2018, the Class filed an amended complaint, which did not include Israeli law claims.  ECF No. 226.  Defendants again moved to dismiss the complaint.  ECF Nos. 238, 240.  On September 25, 2019, the Court issued a comprehensive 74-page opinion that substantially denied Defendants' motions to dismiss.  ECF No. 283.  The Class complaint was subsequently amended by agreement of the Class and Defendants to consolidate other class complaints.  *See* ECF Nos. 310-311.  That complaint does not include Israeli law claims.  *See* ECF No. 310.

Additional complaints were filed in other jurisdictions, including the *Phoenix* plaintiffs'

complaint in the Eastern District of Pennsylvania. *E.g.*, *Phoenix Ins. Co. v. Teva Pharm. Indus. Ltd.*, No. 2:18-cv-03305 (E.D. Pa. Aug. 3, 2018) ("*Phoenix* E.D. Pa. Dkt."), ECF No. 1.  The *Phoenix* plaintiffs' complaint alleged violations of U.S. securities law and Pennsylvania state law, as well as Israeli law claims. *Id.*

On October 9, 2018, Defendants moved to transfer the *Phoenix* plaintiffs' case to this Court. *Id.*, ECF No. 30.  In requesting a transfer, Defendants argued that the Pennsylvania and Israeli law claims did not prohibit transfer because "these formally non-federal claims add nothing significant to the federal law claims because, as discussed below, in substance they mirror the federal securities claims at the heart of all the complaints." *Id.*, ECF No. 30-2 at 10 n.2.  Defendants "agree[d] . . . that the Israeli law claim simply mirrors the federal securities law claims," and that "[t]he presence of these additional non-federal claims therefore does not meaningfully change the subject matter of the *Phoenix* case or the overlap with the *Ontario* case." *Id.* at 15-16.

In opposing the motion to transfer, the *Phoenix* plaintiffs highlighted the importance of their Pennsylvania state claims, arguing that they provide "an opportunity to recover significant losses they suffered from foreign transactions, which are not available under federal securities laws." *Id.*, ECF No. 36 at 6.  In response, Defendants assured Judge Diamond that transfer would not prohibit the *Phoenix* plaintiffs from recovering damages for their losses on the TASE because "Plaintiffs' Israeli law claims alleviate any such concerns." *Id.*, ECF No. 37 at 12.  On February 22, 2019, Judge Diamond granted Defendants' motion to transfer. *Id.*, ECF No. 38.

Two class actions were also instituted in Israel, alleging violations of Israeli securities law based on the same schemes at issue here. *See* DC (TA) 17017-11-16 *Gat v. Teva Pharm. Indus. Ltd.* (2016) (Isr.); DC (TA) 5407-09-17 *Lightcom (Israel) Ltd. v. Teva Pharm. Indus. Ltd.* (2017) (Isr.).  Teva made two requests to dismiss and/or stay the Israeli actions. *See* Licht Decl., ¶12 & n.6.  In its January 1, 2018 Motion to Dismiss *in limine*, and, in the Alternative, to Stay the Proceedings filed in *Lightcom*, Teva

- 9 -

argued strenuously that U.S. law applies to those claims, that courts in the United States are the proper forum for deciding Teva's liability, and that it would be cumbersome and burdensome for Teva to defend actions in the United States and Israel.  *See generally* Teva Mtn. to Stay.

In particular, Teva argued "American law is the law that determines the reporting duties according to which Teva is required to act; and it is also the law that determines the rules of liability that will apply in the event of a breach of the reporting duties."  *Id.*, ¶19; *see also id.*, ¶¶4, 17-21.  Teva also asserted that "courts in the United States are, in any event, *the most natural forum* for hearing the claims on which the Petition for Certification is based."  *Id.*, ¶37 (emphasis in original); *see also id.*, ¶¶8-9, 38-46.  To support this argument, Teva relied on multiple sources, *including Plaintiffs' expert here, Professor Licht*, whose published article Teva quoted at length for the proposition that under Israel's dual-listing regime, "'the Israeli legal system will play "second fiddle" to the foreign, and especially the American, legal system.'"  *Id.*, ¶44 (quoting Amir Licht, *"Dual Listing of Securities"* [Hebrew], *Mishpatim* XXXII (3) 561, 617 (2001)).  Defendants further argued that "[t]here is no justification for simultaneously conducting overlapping and duplicate legal proceedings (in the United States and in Israel)."  *Id.*, ¶34; *see also id.*, ¶¶7, 35-36, 48-56.

On July 8, 2018, the Israeli district court granted Teva's request to stay the Israeli proceedings, agreeing with Teva that U.S. law is the applicable law.  Licht Decl., ¶92; Licht Decl., Ex. 3 ("*Lightcom*"). Both class actions remain stayed to this date, evidenced by the lack of activity in either action since the stay was granted in *Lightcom*.  *See* Licht Decl., ¶92 & n.59.

Numerous investors, including Plaintiffs here, purchased Teva securities on both the NYSE and TASE.  After Teva successfully moved for the Israeli litigation to be stayed in favor of the U.S. litigation, each Plaintiff filed a direct-action complaint in a U.S. court alleging claims under, *inter alia*, U.S. and

Israeli securities laws to recover damages for all losses caused by Defendants' misconduct.[3]  In their

Motion, Defendants have moved to dismiss only Plaintiffs' Israeli law claims.  ECF No. 450.

## III.    ARGUMENT

### A.    Defendants Should Be Judicially Estopped from Taking Positions that Are Diametrically Opposed to Their Prior, Successful Arguments

Defendants request that the Court decline supplemental jurisdiction in large part because of

purported "complexities" involved with adjudicating Plaintiffs' Israeli law claims, such as the Court's

need to "resolv[e] 'whether Israeli courts would apply U.S. securities law or Israeli securities law to a

"dual listed' company' like Teva."  Motion at 6-7.  They also assert that Israeli courts should hear the

Israeli law claims in the first instance.  *Id.*  Given that Defendants repeatedly, and successfully, took the

diametrically opposed position that Israeli law "mirrors" and is "substantially identical" to U.S. law, and

that U.S. courts are the "most natural forum" to adjudicate the Israeli law claims, they should be

judicially estopped from arguing otherwise now.

The doctrine of judicial estoppel "'generally prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another phase.'"  *New

Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8

(2000)).  The doctrine is appropriately invoked to estop a party from taking an inconsistent position

when: (1) a party's later position is "'clearly inconsistent' with its earlier position"; (2) "the party has

succeeded in persuading a court to accept that party's earlier position"; and (3) "the party seeking to

assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the

opposing party if not estopped."  *Id.* at 750-51.  This test is readily satisfied here.

***First***, Defendants' current arguments are directly at odds with positions Defendants have taken

previously.  In moving to dismiss the Class's formerly asserted Israeli law claims, "Defendants agree[d]

---

[3]    Plaintiffs' operative complaints targeted by Defendants' Motion are located at ECF Nos. 391, 393, 394, 397, and 399 on this docket, as well as ECF No. 1 on the *INKA* docket (No. 3:20-cv-00083).

that Israeli law mirrors U.S. law here." ECF No. 189 at 54 n.49. They correctly argued, in the case of dual-listed companies, that "Israel simply adopts the securities law requirements of the foreign jurisdiction – in this case, the United States – instead of enforcing 'requirements that apply to Israeli companies listed solely on the TASE.'" *Id.*

Likewise, in moving to transfer the *Phoenix* plaintiffs' complaint to this Court, Defendants argued that the *Phoenix* plaintiffs' Israeli law claim does ***not*** create any additional complexity. They argued that claim "add[ed] nothing significant to the federal law claims" because "the Israeli law claim ***simply mirrors*** the federal securities law claims." *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 10 n.2, 15-16. And in response to the *Phoenix* plaintiffs' concerns that loss of their Pennsylvania state law claims would undermine their ability to recover TASE losses, Defendants assured that the "***Israeli law claims alleviate any such concerns***." *Id.*, ECF No. 37 at 12.

Teva argued similarly in moving (twice) to stay securities litigation in Israel. Teva asserted that U.S. law governs both Teva's reporting obligations ***and*** "Teva's overall liability vis-à-vis its investors as a group." Teva Mtn. to Stay, ¶4; *see also id.*, ¶¶17-21, 37. Teva also repeatedly contended that "courts in the United States are . . . ***the most natural forum***" for deciding its liability for alleged securities law violations. *Id.*, ¶¶8, 37, 57. As Teva explained at length:

> The majority of Teva's securities are traded on the New York Stock Exchange; and the majority of the members of the [Israeli] class are holders of ***foreign*** securities. Teva's reporting duties are determined according to ***the foreign law*** that applies to it in the United States, and that law is what defines which reports Teva is required to file, what the content and scope of the reporting duties that apply to it are, and what rules of liability apply to Teva in the case of a breach of the reporting duties. The foreign law is that which defines and delimits Teva's liability vis-à-vis its investors as a group, and the protection that is conferred upon the Company's shareholders in the event of a violation of American law is also subject to the provisions of American law and to the arrangements set forth therein (this, of course, is based on the Israeli legislature's aim of giving priority to the foreign legal system, and based on the aim of ensuring the ***identical*** nature of the rights and protections that are conferred upon different shareholders who purchased their shares in the different countries). In this state of affairs, ***it is appropriate for the courts in the United States – which, with all the respect, are conversant in the relevant law – to be the ones that will hear the question of whether Teva breached the reporting duties that are incumbent upon it, and to what remedy the shareholders are entitled, if it is determined that any breach of the foreign securities laws was committed***.

- 12 -

*Id.*, ¶37 (emphasis in original).

**Second**, Defendants prevailed on these motions.  The Court dismissed the Class's complaint without prejudice, and in subsequent amendments, the Class did not re-plead the Israeli law claims.  ECF No. 214; *see, e.g.*, ECF No. 226.  Similarly, Judge Diamond transferred the *Phoenix* plaintiffs' complaint to this Court.  *Phoenix* E.D. Pa. Dkt., ECF No. 38.  And in Israel, the Tel Aviv district court stayed the securities litigation in favor of the U.S. proceedings.  *Lightcom*, ¶¶26-41.  Defendants now seek to disclaim their earlier positions by re-characterizing them as mere "observations."  Motion at 3 & n.2.  Whatever gloss they would like to apply now, Defendants repeatedly sought, and successfully obtained, judicial relief based on their positions that the Israeli law claims rely on U.S. securities law principles and that U.S. courts are the appropriate forum.  *Cf. In re Petition of Transrol Navegacao S.A.*, 782 F. Supp. 848, 853 (S.D.N.Y. 1991) (equitably estopping party from challenging arbitration award because "Transrol avoided liability in the French courts by arguing that arbitration *is* the appropriate method to resolve this dispute, and now it seeks to avoid liability in this court by arguing that arbitration *is not* the appropriate method to resolve this dispute") (emphasis in original).

Defendants claim that intervening circumstances permit them to now take diametrically opposed positions.  Motion at 2-3.  But the circumstance to which they point is their ***own*** argument on the motion to consolidate that they "believe that this structure [of having Israeli law claims litigated in Israel] would streamline the resolution of Teva-related securities litigation in this Court."  ECF No. 311 at 15.  That Defendants are happy to flip flop on the issues of what impact the Israeli law claims will have on the progression of these actions and which court should hear those claims is not a logical basis to upset Israel's dual-listing regime and Plaintiffs' valid choice of forum.[4]

---

[4]    Further, in light of their concession that Israeli law "mirrors" U.S. securities law, Defendants' purported "belief" that removal of the Israeli law claims will streamline this litigation is unsupported and illogical.  Plaintiffs here are the only plaintiffs in the Consolidated Action alleging Israeli law claims, and each also purchased Teva shares on the NYSE or Teva debt securities in domestic U.S. transactions (and thus has claims under U.S. securities laws as well).  Because each Plaintiff will be participating in the

4844-6142-6373.v1

*Finally*, Defendants would be unfairly advantaged if allowed to take the opposite position now. It is clear that their end game is not to promote efficiency or comity, but rather to deprive Plaintiffs of any forum to hear their Israeli law claims. Teva successfully obtained a stay of Israeli securities litigation, *Lightcom*, ¶41, and as a result, Plaintiffs filed their direct claims in the United States. Defendants now want to force Plaintiffs to join those Israeli proceedings that are being held in abeyance at *Teva's request*. In a similar vein, it would be patently unfair for Defendants to assure Judge Diamond that transfer will not prejudice the *Phoenix* plaintiffs' ability to recover their significant TASE losses because of the Israeli law claims, and then turn around and argue to this Court that those very same claims should be dismissed on convenience grounds. Defendants' opportunistic about-face should not be entertained.

Although Defendants "do[] not grapple with the practical effect were [their] motion [to dismiss] granted, the burden on the plaintiffs of suddenly having to participate in multiple trials is not hard to foresee." *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1642813, at *14 (S.D.N.Y. Apr. 24, 2014) (estopping defendant from moving for separate trials). If Defendants' Motion is granted and Plaintiffs' Israeli law claims dismissed, each Plaintiff will be required to pursue a separate lawsuit in Israel while simultaneously litigating its U.S. claims in the Consolidated Action with all its attendant, duplicative costs. Plaintiffs will have to hire Israeli counsel who, according to Teva, "are not conversant in the relevant law." Teva Mtn. to Stay, ¶9. Plaintiffs will pursue the same discovery that will be developed in the Consolidated Action, and hire U.S. counsel to opine on the governing substantive law as well as experts. As Defendants put it when they moved to transfer the *Phoenix* plaintiffs' case to this Court, "needless duplication of judicial and parties' effort 'leads to . . . wastefulness of time, energy and money.'" *Phoenix* E.D. Pa. Dkt., ECF No. 37 at 8. Having

---

Consolidated Action irrespective of the status of its Israeli law claims, and because those claims will be governed by the same substantive law and proved through the same evidence, Defendants' "belief" that the Consolidated Action is somehow streamlined in their absence makes no sense.

successfully obtained dismissal of the Class's complaint, transfer of the *Phoenix* plaintiffs' case, and

stays of the Israeli proceedings, and having assured Judge Diamond that Israeli law claims are available

to provide relief for losses Plaintiffs incurred on the TASE, Defendants should be estopped from arguing

those claims cannot proceed here.

### B. Regardless of Whether Judicial Estoppel Applies, Defendants' Request that the Court Decline Supplemental Jurisdiction over Plaintiffs' Israeli Law Claims Should Be Denied

It is black letter law that the Court "***shall*** have supplemental jurisdiction over all other claims"

that "form part of the same case or controversy" as the claims over which the Court has original

jurisdiction. 28 U.S.C. §1367(a); *Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234,

245 (2d Cir. 2011). As the Second Circuit has made clear, §1367 "***requires*** that 'once it is determined

that a supplemental claim is related to the claim within the court's original jurisdiction such that they

form the same case or controversy, ***supplemental jurisdiction over the related claim is mandatory***.'"

*Catzin*, 899 F.3d at 85.

"'[W]here section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is

available ***only if*** founded upon an enumerated category of subsection 1367(c).'" *Id.* (emphasis in

original); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). And

even if a category of §1367(c) applies, declining jurisdiction "'is permissive rather than mandatory.'"

*Catzin*, 899 F.3d at 85. In assessing whether this discretion should be exercised to decline supplemental

jurisdiction, the Second Circuit has cautioned that:

> "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in [*United Mine Workers of America v.] Gibbs*, [383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)]: economy, convenience, fairness, and comity."

*Salim Shahriar*, 659 F.3d at 245. These values must be "meaningfully balance[d]," and "[t]he declining

of supplemental jurisdiction must actually promote those values as 'the fact that one or more of the

grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does ***not***

- 15 -

mean that dismissal is mandated.'" *Catzin*, 899 F.3d at 85-86.

> 1.   **The Court "Shall" Have Jurisdiction over the Israeli Law Claims Under §1367(a) Because They "Form Part of the Same Case or Controversy" as the U.S. Securities Claims**

The Court obviously has original jurisdiction over Plaintiffs' U.S. securities claims.  15 U.S.C. §78aa(a); 15 U.S.C. §77v; 28 U.S.C. §§1331, 1337.  Defendants make no argument that the Israeli law claims are not "so related" to the U.S. securities claims that they are not part of the same case or controversy.  28 U.S.C. §1367(a).  Indeed, they have argued the opposite: in Defendants' words, "the Israeli law claim simply mirrors the federal securities law claims," and its inclusion "does not meaningfully change the subject matter" of this litigation.  *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 15-16; *supra*, §III.A.

Claims "form part of the same case or controversy" where they share a "common nucleus of operative fact" such that Plaintiffs "would ordinarily be expected to try them all in one judicial proceeding."  *Gibbs*, 383 U.S. at 725.  This test is easily satisfied here because "'"the facts underlying the . . . claims substantially overlap[].""'"  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 322 (S.D.N.Y. 2007) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)).  All of Plaintiffs' claims are based on the same series of material misstatements and omissions concerning: (1) Teva's U.S. generic drug business, including its financial performance and projections, its participation in an anticompetitive collusive scheme to manipulate the market for generic drugs, the source and sustainability of Teva's revenues, profits and growth, the rate of price erosion on Teva's generic drugs, and Teva's acquisition of Actavis Generics; (2) Teva's overstatement of its goodwill valuation for its generics business and inflation of its balance sheet and operating results by billions of dollars; and (3) Teva's engagement in an international bribery scheme centered around its key drug Copaxone that ultimately led to a $519 million fine, the imposition of a deferred prosecution agreement, and significant loss of revenues from the "Rest of World" markets.  These material

- 16 -

misstatements and omissions misled the markets and caused the prices of Teva securities to be artificially inflated – including those listed on the NYSE and TASE.  These facts form the basis of all of Plaintiffs' claims, including the Israeli law claims.  *E.g.*, *Harel* Complaint (ECF No. 399), ¶¶1-4, 925.  As a result, Plaintiffs' Israeli law claims are part of the same case or controversy as the U.S. securities claims, and supplemental jurisdiction is mandatory.  28 U.S.C. §1367(a); *Catzin*, 899 F.3d at 85.

This conclusion is consistent with the exercise of jurisdiction in *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ("*Perrigo*"), another case that concerns U.S. and Israeli law claims based in part on public statements alleged to be false and misleading due to the defendants' undisclosed participation in the same U.S. generic drug price-fixing conspiracy implicated in these cases.  *Id.* at *24 n.24 ("[T]he Court will not refuse to exercise supplemental jurisdiction over the Israeli law claim articulated in Count Four given the remaining federal claims.").[5]  It is also consistent with *Costas v. Ormat Techs., Inc.*, No. 3:18-CV-00271-RCJ-CLB, 2019 WL 6700199 (D. Nev. Dec. 6, 2019).  As here, the parties in *Costas* "agree[d] that Israeli law applies United States securities law to determine liability in securities litigation regarding dual-listed corporations (that is, corporations which are listed and traded on both the American and Israeli stock markets)."  *Id.* at *9.  Based on that agreement and the court's review of Israeli cases (including the Israeli Supreme Court decision discussed *infra*, §III.B.2.a.), the court concluded "the claims under Israeli law may proceed as their resolution is dependent upon the resolution of the Rule 10b-5 and 20(a) claims."  *Id.*

### 2.  Supplemental Jurisdiction Should Not Be Declined Because No Provision of §1367(c) Applies and Each of the *Gibbs* Values Favors Jurisdiction

Implicitly acknowledging that Plaintiffs' Israeli law claims are part of the same case or

---

[5]    Indeed, the class in *Perrigo* was certified as to all claims, including a class of "investors who purchased Perrigo stock during the Class Period on the Tel Aviv Stock Exchange ('TASE')."  *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 71 (D.N.J. 2019).  The defendants requested an interlocutory appeal of that decision, which the Third Circuit denied.  *Perrigo Institutional Inv. Grp. v. Papa*, No. 19-8047, slip op. (3d Cir. Apr. 30, 2020), ECF No. 26.

4844-6142-6373.v1

controversy as the U.S. claims, Defendants hang their hat on the theory that two provisions of §1367(c) apply, arguing that the Israeli law claims present "novel" questions of Israeli law and "exceptional" circumstances exist.  Motion at 6-8.  Defendants are wrong on both counts.[6]

### a.    There Are No Novel Questions of Israeli Law

Defendants first argue, in two sentences, that jurisdiction over the Israeli law claims should be declined under §1367(c)(1) because presiding over those claims will require the Court to resolve "novel" or "complex" issues of Israeli law.  Motion at 6.  The supposedly novel issue they identify is "'whether Israeli courts would apply U.S. securities law or Israeli securities law to a "dual listed" company' like Teva."  *Id.*  For this point, they rely entirely on the district court decision in *Mylan*, 2018 WL 1595985.

Defendants' dated argument should be rejected.  First, as set forth above, Defendants have already conceded the point and are estopped from arguing otherwise.  *Supra*, §III.A.  Second, central to the court's determination in *Mylan* that §1367(c)(1) supported declining jurisdiction was the mistaken impression that exercising jurisdiction would require the court to decide, in the first instance, "whether Israeli courts would apply U.S. securities law or Israeli securities law to a 'dual listed' company." *Mylan*, 2018 WL 1595985, at \*19.  This conclusion was based on the court's misunderstanding that the question of whether Israeli courts should apply U.S. substantive law was "an open question."  *Id.*  To support this position, the court attributed to the Israeli Supreme Court the statement that:

> "The question of what the applicable law is in a claim such . . . which relates to a 'dual' company that is listed on both the stock exchange in Israel and on a stock exchange in the United States, is indeed a question that has not yet been finally answered in the settled law in Israel.  It is not a simple question, and the discussion of it must take into

---

[6]    A district court may also decline supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §1367(c)(2), (3).  Defendants concede, as they must, that neither of these provisions permits declining supplemental jurisdiction.  The Israeli law claims do not predominate over the U.S. claims because, as Defendants have asserted, the former "mirrors" or is "substantially identical" to the latter.  *See Salim Shahriar*, 659 F.3d at 246 (finding state claims did not predominate over federal claims because the state and federal laws "use a similar standard" and "each set of claims arise from the same set of operative facts").  And as to the third category, the Court has found the U.S. securities claims are adequately alleged.  ECF No. 283. Accordingly, "section 1367(c)(3) is not applicable here because the District Court did not dismiss any claims over which it had original jurisdiction."  *Salim Shahriar*, 659 F.3d at 247.

account a variety of considerations."

*Id.*  But the quoted language did ***not*** come from the Israeli Supreme Court; rather, it was from an interim decision of the Israeli district court in *Damti v. Mannkind Corp.* concerning the appointment of a representative plaintiff.  Licht Decl., ¶97; *see* Licht Decl., Ex. 9.

At any rate, even if there once was a question of which country's substantive law applies to Israeli securities claims brought against a company that is dual listed on a U.S. exchange, the Israeli Supreme Court soundly closed that "open question" six months after *Mylan*, expressly approving the Israeli district courts' application of U.S. substantive law to Israeli securities claims against companies that dual listed in the United States and Israel in *Damti v. Mannkind Corp.*, Class Action 28811-02-16 (12 Oct. 2017), and *Cohen v. Tower Semiconductor Ltd.*, Class Action 44775-02-16 (7 Nov. 2017) ("*Tower*").  After its order appointing a representative plaintiff, the appointed plaintiff in *Damti* moved to certify the class.  *See* Licht Decl., ¶69.  And on that motion, the Israeli district court held that "'it is necessary to prefer the rule of choice of law, pursuant to which the foreign [*e.g.*, U.S.] law will prevail over the liability of Dual-Listed Companies and anyone acting on their behalf with respect to a breach of the duty of reporting.'"  *Id.*, ¶70; Licht Decl., Ex. 5, ¶75.  The district court in *Tower* concluded similarly, finding Israeli securities law provides "'an express instruction with respect to the non-application of the Israeli law in the matter of the liability,'" and that "'the provisions of the foreign [*e.g.*, U.S.] law are the provisions that apply with respect to the Rules of Liability.'"  Licht Decl., ¶72; Licht Decl., Ex. 6, ¶61.

The claimants in *Damti* and *Tower* filed a joint appeal and leave for appeal to the Israeli Supreme Court.  Licht Decl., ¶83.  At the first hearing of this appeal on October 4, 2018, the Israeli Supreme Court opined that the *Damti* and *Tower* district courts correctly decided that U.S. substantive law governs Israeli securities claims, and that the appellant and movant's appeal would be denied, but provided the

- 19 -

claimants an opportunity to withdraw the appeal. *Id.*; Licht Decl., Ex. 7 at 3.[7]  Heeding the Israeli

Supreme Court's words, the claimants withdrew their application.  Licht Decl., ¶84.  Following that

withdrawal, the Israeli Supreme Court issued a short decision, clearly and succinctly resolving the issue:

> "[U]pon the conclusion of the hearing held on October 4, 2018, we said, orally, and we repeated the main essence of the matters in our decision in writing, that, in our opinion, the District Courts were right in the judgments that are the subject of the above-captioned Motion for Leave to Appeal and the above-captioned Appeal, when they ruled with respect to the application of the foreign law."

*Id.*; Licht Decl., Ex. 8, ¶1.

Citing *Damti/Tower*, subsequent Israeli district courts have concluded that U.S. substantive law

governs Israeli securities claims.  *See* Licht Decl., ¶85.  For instance, in *Ra'becca Techs. Ltd. v. Israel

Chemicals Ltd.*, Class Action 51914-12-18 (1 Aug. 2019), the defendant argued that U.S. substantive law

did not apply to Israeli securities claims brought against a dual-listed company that first listed its

securities on the TASE (like Teva here).  *Id.*  In keeping with *Damti/Tower*, the district court rejected that

argument, finding U.S. substantive law applies irrespective of which exchange an Israeli company lists

its securities on first.  *Id.*

Accordingly, the perceived "open question" that supported the *Mylan* district court's

discretionary decision to decline jurisdiction under §1367(c)(1) was subsequently and decidedly closed

by the Israeli Supreme Court in favor of finding that foreign (here, U.S.) substantive law applies to Israeli

law claims against a dual-listed company, like Plaintiffs' claims in this case.  Because the Court is more

than capable of adjudicating U.S. securities claims, there are no novel or complex issues of Israeli law

that permit declining jurisdiction here.

### b.    There Are No Exceptional Circumstances

For similar reasons, Defendants' argument that the circumstances present here are "exceptional"

and "compelling" under §1367(c)(4) should be rejected as well.  *See* Motion at 6.  Defendants base this

---

[7]    This is likely because the claimants would have been required to pay costs in the wake of a ruling as a matter of judgment against them.  Licht Decl., ¶84.

assertion on the grounds that "'[t]wo separate class actions are currently pending in Israeli courts.'" *Id.* But they fail to alert the Court that those actions were stayed – *on Teva's motion* – pending resolution of the U.S. litigation. *See* Licht Decl., ¶12 & n.6. In seeking that stay, Teva argued that "Teva chose to report according to the *American* reporting system, and, as a direct result, it is subject to the rules of disclosure that apply in *the United States*." Teva Mtn. to Stay, ¶4 (emphasis in original). According to Teva, because U.S. substantive law applies to both its "reporting duties" and "liability," the U.S. courts are "*the most natural forum*" to adjudicate Israeli law claims. *Id.*, ¶¶4, 8, 37, 57. The Israeli district court agreed, granting Teva's request for stay on July 8, 2018. *Lightcom*, ¶41. Despite the U.S. Class's dismissal of its Israeli law claims well over two years ago, the Israeli class actions remain stayed. *See* Licht Decl., ¶92 n.59.

Defendants point to *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), and *Mylan* as support for the conclusion that the existence of (stayed) Israeli class actions against Teva counsels against supplemental jurisdiction. Motion at 6-7. Neither is helpful here. The question before the Court in *Morrison* concerned the jurisdictional reach of U.S. securities laws, not the propriety of supplemental jurisdiction over foreign securities claims. *See Morrison*, 561 U.S. at 250-51 (framing the issue as one concerning "§10(b) of the Securities Exchange Act of 1934").

Even if the Supreme Court had purported to speak on the question that is actually before the Court here (it did not), the concerns that drove the Supreme Court's conclusion – that §10(b) does not provide a cause of action to foreign investors for securities traded on foreign markets – are not present in Israel's case. In *Morrison*, the Court explained "[t]he probability of incompatibility with the applicable laws of other countries is so obvious that if Congress intended such foreign application 'it would have addressed the subject of conflicts with foreign laws and procedures.'" *Id.* at 269. The Court went on to note that:

> Like the United States, foreign countries regulate their domestic securities exchanges and
> securities transactions occurring within their territorial jurisdiction. And the regulation

- 21 -

of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters.

*Id.* The court in *Mylan* relied on this language from *Morrison* to decline supplemental jurisdiction based on the pendency of an Israeli class action. 2018 WL 1595985, at *19. Defendants here also rely on this language to argue for the same outcome. Motion at 6.

Defendants' argument should be rejected because there is **no** possibility, let alone an "obvious . . . probability," of incompatibility in the manner in which the United States and Israel regulate their securities exchanges as to dual-listed companies. The Supreme Court's observation of a "probability of incompatibility" was appropriately based on *amici* briefs filed by certain foreign governments. *See Morrison*, 561 U.S. at 269 (citing *amici* briefs from the Commonwealth of Australia, the United Kingdom of Great Britain and Northern Ireland, and the Republic of France). But none of those governments purported to speak on behalf of a country like Israel that has decided to regulate its domestic securities exchange by deferring to both the substantive law **and** jurisdiction of the United States where a company dual lists its securities on a U.S. exchange.

As detailed above, Israeli securities law is governed by the substantive law of the foreign country on whose exchange the company's securities are dual listed (here, the United States). *Supra*, §III.B.2.a. In addition, the Israeli Knesset has provided that the primary forum to adjudicate such claims is the foreign country, *i.e.*, the United States in this case. *See* Licht Decl., ¶55. The Israeli district courts have confirmed this legislative intent, with the seminal Israeli district court decision Class Action 3912-01-08 *Verifone Holdings, Inc. v. Stern* (11 Sep. 2008), concluding that the Knesset's intent was for Israeli courts to play """second fiddle""" to the U.S. legal system – a conclusion that relied on and heavily quoted a published article written by Plaintiffs' expert here, Professor Licht. *See* Licht Decl., ¶55; Licht Decl., Ex. 4, ¶6(l). Teva itself relied on this very language, citing the same article published by Professor Licht, to successfully persuade the Israeli district court to stay the Israeli proceedings. *See* Teva Mtn. to

- 22 -

Stay, ¶44 (quoting at length from Professor Licht's article, "Dual Listing of Securities"). The ISA also agrees with this conclusion, stating that "the approach adopted by the court in Verifone that such claims must be heard before US courts, is both practical and legally coherent." Licht Decl., Ex. 10 ("ISA Comment Letter") at 5.

Indeed, the ISA and Israeli courts alike have opined that the concerns raised in *Morrison* do not apply to the Israeli dual-listed regime. In a comment letter to the SEC, the ISA provided its "position in relation to extraterritorial private rights of actions following the Supreme Court's decision in *Morrison*," in which it unequivocally opined that the concerns undergirding *Morrison* simply play no role with respect to Israel. ISA Comment Letter at 1. The ISA went on to state that the views expressed by the *amici* foreign governments in *Morrison* do "not apply to dual listed securities . . . ***but in fact they are exactly reversed when considered in the context of dual listed securities*.*" Id.* at 3; *see also* Licht Decl., ¶¶64-67. The ISA also opined that the Supreme Court's reasoning "did not consider the case of a country [like Israel] in which disclosure requirements are actually imported from the US." ISA Comment Letter at 4. Israeli courts agree. *See* Licht Decl., ¶59 (Israeli district court in *Verifone II* stating, "'*Morrison* did not deal with dual listing'"); *see also id.*, ¶71 (in finding *Morrison* does not affect Israeli choice of law, Israeli district court in *Damti* stating: "The Israeli choice-of law-rule cannot . . . be affected by the modifications that will take place, over the years, in the U.S. law, and in the manner in which U.S. courts interpret the law. A new ruling that is established in the U.S. laws thus should not consequently modify the Israeli choice-of-law rules."); ¶¶83-84 (Israeli Supreme Court stating the district court in *Damti* was "correct" and "right" in its ruling "with respect to the application of the foreign law").

Defendants argue that in *Mylan*, it was "irrelevant" to the court that Israeli courts apply U.S. substantive law as a matter of Israeli law. Motion at 6. But those are Defendants' words, not the court's. Instead, the *Mylan* court was guided by concerns of international comity, "hesitat[ing] to impinge on Israeli courts' ability to adjudicate the claims of their own citizens under their own securities laws."

- 23 -

2018 WL 1595985, at *19.  This hesitation, however, was unnecessary.  As the ISA puts it, "[a]s clearly shown by the way dual listing is legally structured, ***international comity is not a concern in the Israeli case***."  ISA Comment Letter at 3; *infra*, §III.B.2.c.

None of Defendants' cited authorities undermines this conclusion.  Only one of them – *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2011 WL 2675395 (C.D. Cal. July 7, 2011) – even involves a foreign securities claim.  And the concerns driving that court's determination to decline jurisdiction are not present in this case.  The court in *Toyota* found that the Japanese securities claim would substantially predominate over the U.S. securities claims because "[t]he vast majority of the members of the currently pleaded class are common stock holders who purchased their stock on foreign exchanges and, therefore, have only a Japanese law claim." *Id.* at *6.  The court also noted that allowing the Japanese claim to proceed could "impos[e] American procedures, requirements, and interpretations ***likely never contemplated by the drafters of the foreign law***." *Id.* at *7.

In comparison, here, Plaintiffs are the only ten investor groups pursuing Israeli law claims in the Consolidated Action comprised of likely tens of thousands of absent Class members.  Further, the Court's jurisdiction over those claims ***is precisely*** what the drafters of the Israeli dual-listing regime contemplated and intended.  Because the same substantive law applies (unlike in *Toyota*), the Israeli law claims will be proved through the same documents, witness testimony and expert discovery.  As a result, they will have little (if any) impact on the Consolidated Action's progress and thus will not predominate over the U.S. securities claims.  *See supra* n.6.[8]

---

[8]    Defendants' other cases are so factually inapposite they hardly warrant discussion.  In *Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*, No. 12cv0212 (DF), 2014 WL 3507300 (S.D.N.Y. July 14, 2014), the court found the foreign claims were ***not*** part of the same case or controversy as the U.S. claims, and in dicta noted adjudicating the Mexican contract claim could interfere with "ongoing proceedings in Mexico." *Id.* at *11.  *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214 (D. Kan. 2014), involved the law of up to ***27 different nations*** that had underdeveloped European antitrust law. *Id.* at 1222.  In *Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1 (D.D.C. 2006), the plaintiffs lacked standing because they were not members of the class they purported to represent, the court did ***not*** have original jurisdiction over any claim and thus had no basis for exercising supplemental jurisdiction over the foreign claims, and like *Urethane*, the case involved underdeveloped antitrust law.

- 24 -

In short, given the particular "caution" that should be exercised with respect to §1367(c)(4), Defendants have not "identif[ied] truly compelling circumstances that militate against exercising jurisdiction." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d Cir. 2004); *see Itar-Tass*, 140 F.3d at 446-47 (dismissal under §1367(c)(4) only "should be employed when circumstances are '*quite unusual*'"); *id.* at 448 ("In other words, declining jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule."). Section 1367(c)(4) does not apply, and supplemental jurisdiction cannot be declined under it.

### c. Even if Either §1367(c)(1) or (c)(4) Applies (Neither Does), the *Gibbs* Values All Counsel in Favor of Exercising Supplemental Jurisdiction

As amply demonstrated, the Israeli law claims comprise the same case or controversy as Plaintiffs' U.S. securities claims, and no provision of §1367(c) applies. *Supra*, §III.B.1.-2.b. Supplemental jurisdiction is therefore mandatory, and the Court need not go further. *See Catzin*, 899 F.3d at 85; *supra*, §III.B. Even if the Court were to find that novel or complex issues of Israeli law or exceptional circumstances exist, declining jurisdiction would not "actually promote" any of the four values enunciated by the Supreme Court in *Gibbs*: economy, convenience, fairness and comity. *Catzin*, 899 F.3d at 85. In fact, the opposite of the *Gibbs* values would be wrought, forcing Plaintiffs to start anew four years into litigating this Consolidated Action before a court that is a stranger to both the facts of Plaintiffs' claims and to the substantive law that will govern them – all while simultaneously continuing to litigate their U.S. claims here.

Defendants do not even feign to address economy, convenience and fairness. The closest they come is by arguing that Defendants might have to "engage in additional litigation in Israel to ensure that

---

*Id.* at 9, 11-13. In *Mars, Inc. v. Nippon Coniux Kabushiki-Kaisha*, 825 F. Supp. 73 (D. Del. 1993), *aff'd*, 24 F.3d 1368 (Fed. Cir. 1994), the court anticipated "disagreements among the parties as to the substance of Japanese patent law," *id.* at 76, which is clearly not the case here given Defendants' agreement with Plaintiffs that Israeli securities law "mirrors" U.S. law. *Supra*, §III.A. The court also noted the Japanese claim likely predominated over the U.S. claims, which is not at issue here. *See supra*, n.6.

- 25 -

the Israeli courts recognize a judgment from a U.S. court on the Israeli law claims," and that supplemental jurisdiction could "'expos[e] Defendants to inconsistent or double liability.'" Motion at 7. But these concerns are speculative on their face. *Id.* ("if the Israeli law claims are maintained in the United States, Defendants *could* have to engage in additional litigation in Israel"); *id.* ("Even if Defendants prevailed on or agreed to settle Israeli law claims in this Court, plaintiffs in the previously filed Israeli cases *might* endeavor to re-litigate the same claims in Israel."); *id.* (declining jurisdiction will "avoid[] *any conceivable 'risk'*" of inconsistent or double liability). They are also inconsistent with their prior position that transferring the *Phoenix* plaintiffs' complaint to this Court would "avoid[] . . . the risk of inconsistent rulings." *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 12.

Defendants' concerns are also entirely illusory. Plaintiffs are each pursuing their claims on an individualized basis. No Plaintiff seeks to represent any other U.S. or Israeli investor, much less a class of investors. Recognizing a judgment any Plaintiff obtains is a straightforward matter in Israel. *See* Licht Decl., ¶¶13, 102-108. This stands in contrast to *Mylan*, in which the district court declined jurisdiction over a class's Israeli law claims because similar class actions were proceeding at the time in Israel. 2018 WL 1595985, at *19. For the same reason, the situation in *Stern v. Verifone* is also uninstructive, as it involved recognizing a U.S. class settlement in Israel (and *did*, in fact, recognize that settlement, thus paving the way for recognition of U.S. class settlements). Licht Decl., ¶108. Defendants' current position is also at odds with Teva's position on the motion to stay the Israeli proceedings, in which Teva argued that "'case law handed down by the Supreme Court indicates that the court deduced from this section that *a judgment by a foreign court can be recognized as one that is enforceable in Israel*.'" Teva Mtn. to Stay, ¶46 (emphasis in original). Defendants do not, and cannot, articulate how a judgment of this Court on Plaintiffs' individual Israeli law claims would lead to litigation in Israel regarding the recognition of that judgment.

In stark contrast to Defendants' hypothetical concerns in the event the Court exercises

- 26 -

supplemental jurisdiction, the additional significant burdens Plaintiffs would be subjected to if the Court

declined jurisdiction are concrete.  Nearly four years after the Consolidated Action's inception, each

Plaintiff would be forced to hire separate Israeli counsel, institute a separate lawsuit seeking redress for

their significant losses numbering in the hundreds of millions of dollars suffered on the TASE – lawsuits

that would be based on the same alleged undisclosed misconduct (which by and large occurred in the

United States), the same materially false and misleading misstatements and omissions (which were made

on conference calls and in SEC filings pursuant to U.S. disclosure regulations), and the same corrective

disclosures (also contained in SEC filings and articles aimed at a U.S. audience).  These Israeli lawsuits

would proceed in tandem with the current U.S. lawsuits, as each Plaintiff will continue to litigate its U.S.

claims before this Court.  Simply stated, as "'[i]n the majority of cases, it would undermine the efficiency

rationale of supplemental jurisdiction if two separate forums were required to adjudicate precisely the

same issues.'" *Salim Shahriar*, 659 F.3d at 246 (quoting *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 981 (7th

Cir. 2011)); *see also Itar-Tass*, 140 F.3d at 448 n.2 (noting judicial economy favored supplemental

jurisdiction because "[i]n declining to exercise supplemental jurisdiction over these claims, Appellants

will be required to initiate lawsuits in two different states").[9]

Further, any Israeli lawsuit would be governed by U.S. substantive law.  *Supra*, §III.B.2.a.

Plaintiffs would thus be required to have their claims litigated by counsel and heard by a court with little

---

[9]      This would be uneconomical for both Plaintiffs *and* Defendants.  As the ISA noted, "[f]or issuers, the
inefficiencies center upon the need following *Morrison* to defend the same action in two different forums
with all the duplication of legal costs and legal risk."  ISA Comment Letter at 8.  Defendants apparently
are now willing to absorb some increased costs if they can create additional barriers and impose
significant costs on Plaintiffs here.  That wasteful approach to litigation should not be endorsed,
particularly when Teva successfully argued to the Israeli district court that "[t]here is no justification for
simultaneously conducting overlapping and duplicate legal proceedings (in the United States and in
Israel)" (Teva Mtn. to Stay, ¶6), and when Defendants argued to Judge Diamond that the need to transfer
the *Phoenix* plaintiffs' complaint to this Court was that "[i]t would be extremely expensive for Teva to
litigate the same claims in two separate districts, which could 'lead to duplication of voluminous
discovery and documentary evidence, the burden of which would fall almost entirely on the company'
and the individual Defendants" (*Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 22).  Judge Diamond agreed
with Defendants: "Avoiding duplicative litigation furthers judicial and lawyer efficiency, as well as
consistency of results."  *Id.*, ECF No. 38 at 13.

or no experience or familiarity with the law that governs liability.  According to Teva, "it would *make no sense* for the [Israeli law claims], which call for consulting the foreign law, to be heard [in Israel], when the parties . . . are represented by Israeli attorneys who are *not* conversant in the relevant law."  Teva Mtn. to Stay, ¶9.  Teva's prior position (and Plaintiffs' position here) is supported by the ISA, which has stated that "[i]nvestors who purchase in Tel Aviv will need to argue points of US law before an Israeli court.  This at the very least will result in substantially higher legal fees as US counsel will be needed in addition to the Israeli counsel running the claim."  ISA Comment Letter at 8; *cf.* Teva Mtn. to Stay, ¶37 (Teva arguing "courts in the United States" are the courts that "are conversant in the relevant law").  The present case is nothing short of the quintessential "situation[] in which the [foreign] claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."  *Gibbs*, 383 U.S. at 727.[10]

Equally important, "[t]his case has a long and tortured history that will only be unreasonably prolonged by a refusal to exercise supplemental jurisdiction."  *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18 Civ. 1047 (PGG), 2020 WL 3488037, at *3 (S.D.N.Y. June 26, 2020).  The first complaint in the Consolidated Action was filed nearly four years ago on November 6, 2016.  ECF No. 1.  Over the course of the intervening years, the Court has developed intimate familiarity with the facts undergirding Plaintiffs' Israeli law claims.  Those same facts serve as the basis for the U.S. securities claims, the sufficiency of which the Court assessed over the course of two rounds of motions to dismiss.  This required consideration of over 4,500 pages of complaints, briefs, appendices and applicable law, and ultimately resulted in the issuance of an extensive 74-page order largely denying Defendants' motions to dismiss.  ECF No. 283.  In light of this history, forcing Plaintiffs to litigate the Israeli law claims in a forum that is unfamiliar with the lawsuit and applicable substantive law does not

---

[10]   Indeed, Plaintiffs would be further prejudiced if their actions in Israel, following a dismissal of their Israel law claims here, were subject to a stay similar to those Teva obtained in the Israeli class actions, as they would be deprived of any forum in which to adjudicate claims seeking damages for their significant losses on the TASE.

promote economy, convenience or fairness.  It thwarts these principles and promotes wastefulness instead.  *See Catzin*, 899 F.3d at 86 ("Nor does the record lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly ***two years*** and causing them to expend who knows how much time, legal fees, and distraction starting over in state court.").

Defendants assert in passing that international comity counsels against supplemental jurisdiction. Motion at 6-7.  But as with economy, convenience and fairness, comity also favors exercising supplemental jurisdiction.  The ISA explained, in great detail, that "international comity ***is not a concern*** in the Israeli case."  ISA Comment Letter at 3.  Teva has "chosen to reap the benefits of dual listing," and Plaintiffs "have relied, at least indirectly, on US regulatory standards."  *Id.*  Thus, "any argument that hearing a claim in the US constitutes unreasonable interference with foreign sovereignty ignores both the essence and the practical consequences of the dual listing arrangement."  *Id.*  This is particularly clear here, where Defendants want to deprive Plaintiffs of a U.S. forum while simultaneously attempting to deprive Plaintiffs of an Israeli forum by (successfully) staying litigation there in deference to the U.S. litigation, which Teva obtained by arguing in part that "[t]he stay of the proceedings in the present case is also necessitated by the principles of international comity and reciprocal respect between courts."  Teva Mtn. to Stay, ¶57.  This is "gamesmanship in its purest form."  *Methyl Tertiary*, 510 F. Supp. 2d at 330 (exercising supplemental jurisdiction where defendants removed case to federal court and opposed plaintiffs' motion to remand, and later "ask[ed] the Court to reconsider whether the very claims they removed to federal court should remain here").

In short, "[t]he record yields no clarity as to how judicial economy, convenience, fairness, or comity might be served by requiring the parties to expend additional years as well as dollars re-litigating in [Israel]."  *Catzin*, 899 F.3d at 86.  Therefore, supplemental jurisdiction should be exercised over Plaintiffs' Israeli law claims.  *See Costas*, 2019 WL 6700199, at *9 ("[T]he claims under Israeli law may

- 29 -

proceed as their resolution is dependent upon the resolution of the Rule 10b-5 and 20(a) claims.");
*Perrigo*, 2018 WL 3601229, at \*24 n.24 ("[T]he Court will not refuse to exercise supplemental
jurisdiction over the Israeli law claim articulated in Count Four given the remaining federal claims.").

C.  **Defendants' Request that the Court Dismiss the Israeli Law Claims on
    the Basis of *Forum Non Conveniens* Should Be Denied**

Defendants alternatively argue that the Court should dismiss Plaintiffs' Israeli law claims on
*forum non conveniens* grounds, mechanically asserting that dismissal is appropriate because most
Plaintiffs are foreign investors, Israel is an adequate forum, and public and private interests favor
dismissal.  Motion at 8-11.  The thinness of Defendants' argument betrays its lack of substance.

"The central purpose of a forum non conveniens inquiry is to determine where trial will be most
convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167
(2d Cir. 1991).  To prevail on this motion, Defendants "must demonstrate that an adequate alternative
forum exists and that, considering the relevant private and public interest factors set forth in [*Gulf Oil Co.
v.*] *Gilbert*, 330 U.S. [501, 508-09 (1947)], the balance of convenience tilts **strongly** in favor of trial in
the foreign forum." *Id.*  ""'[D]ismissal for forum non conveniens is the exception rather than the rule,'""
*id.* at 168, and is appropriate only where Defendants have clearly shown "'oppressiveness and
vexation . . . out of all proportion to plaintiff[s'] convenience.'"  *DiRienzo v. Philip Servs. Corp.*, 294
F.3d 21, 33 (2d Cir. 2002) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524
(1947)).

Defendants have made no showing, much less a "**strong**" showing, that the relevant factors
overcome Plaintiffs' valid choice of the United States to hear their Israeli law claims.

1.  **Plaintiffs' Choice of the United States Is Afforded Great Weight
    Because Some Plaintiffs Are U.S. Residents and All Plaintiffs
    Have U.S. Securities Claims that Are Based on the Same
    Misconduct Undergirding the Israeli Law Claims**

Defendants first ask the Court to accord Plaintiffs' choice of forum "little deference" solely
because most – **but not all** – Plaintiffs are foreign residents.  Motion at 9.  Defendants concede that the

- 30 -

*Schwab* plaintiffs are U.S. residents. *Id.* at 9 n.9. Yet, they offer no reason why the *Schwab* plaintiffs'

choice of the United States is not entitled to great weight. *See Wiwa v. Royal Dutch Petroleum Co.*, 226

F.3d 88, 106 (2d Cir. 2000) (ruling that the district court applied an incorrect standard of law in its *forum*

*non conveniens* analysis by "failing to count in favor of retention that two of the plaintiffs were residents

of the United States").

Regardless of their citizenship, all Plaintiffs' choice of forum should be afforded great weight

because this litigation has a "bona fide connection to the United States." *Iragorri v. United Techs. Corp.*,

274 F.3d 65, 72 (2d Cir. 2001); *Murray v. BBC*, 81 F.3d 287, 290 (2d Cir. 1996) ("some weight **must**

still be given to a foreign plaintiff's choice of forum"). "The central purpose of a forum non conveniens

inquiry is to determine where trial will be most convenient and will serve the ends of justice."

*R. Maganlal*, 942 F.2d at 167. Thus, "the more it appears that a domestic or foreign plaintiff's choice of

forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be

given to the plaintiff's forum choice," and "the more difficult it will be for the defendant to gain

dismissal for *forum non conveniens*." *Iragorri*, 274 F.3d at 71-72.

Defendants try to diminish Plaintiffs' choice of a U.S. forum "as an unavoidable

acknowledgement of the secondary status of the Israeli law claims" – whatever that means. Motion at 9.

At any rate, Defendants' attempted slight is wrong. "Although less than all of the . . . [P]laintiffs . . .

reside in the [United States], no evidence suggests they had an improper motive in bringing suit there."

*DiRienzo*, 294 F.3d at 28. Rather, "[P]laintiffs offer[] a quite valid reason for litigating in federal court:

this country's interest in having United States courts enforce United States securities laws." *Id.* It bears

repeating that Plaintiffs purchased Teva securities on the NYSE **and** TASE and, as a result of

Defendants' singular course of misconduct occurring in the U.S. generic drug market, Plaintiffs suffered

significant losses on **both** exchanges. Accordingly, the Israeli law claims, which seek damages for

Plaintiffs' TASE losses, are directly connected to the United States and inextricably linked to their U.S.

securities claims.  Simply put, "considering that defendants sought out business opportunities in this country by registering stock on American exchanges, filing statements with the SEC and conducting [a significant portion] of its business in the United States, . . . a legitimate interest exists in trying this securities fraud litigation here."  *Id.*

The validity of Plaintiffs' choice of the United States is further supported by the spirit of Israel's dual-listing regime.  The regime was instituted to ensure that companies like Teva that list their securities on the TASE and on a foreign country's exchange are subjected to only one set of rules.  Licht Decl., ¶31.  In exchange, dual-listed companies understand that the foreign country's substantive law will govern, and that the foreign country's courts will be the primary arbiter of any claims relating to the company's disclosures. *See id.*, ¶¶43, 55.  Accordingly, Plaintiffs are not "motivated by forum-shopping reasons."  *Iragorri*, 274 F.3d at 72.  They are simply pursuing their claims in a manner consistent with the regime created by Israel – a regime that applies to Plaintiffs' claims by virtue of ***Defendants' choice*** to dual list on the NYSE.  Teva Mtn. to Stay, ¶4 ("As a dual listed company, Teva chose to report according to the ***American*** reporting system, and, as a direct result, it is subject to the rules of disclosure that apply in ***the United States***.") (emphasis in original).

Also relevant is that the United States is the forum where Defendants are "amenable to suit." *Iragorri*, 274 F.3d at 72.  When confronted with Israeli securities class actions based on the same misconduct at issue here, Defendants successfully moved to stay those actions in deference to the U.S. litigation, arguing that a stay was required because U.S. law applies to the claims, that courts in the U.S. are the proper forum for deciding Teva's liability, and that it would be burdensome for Teva to defend actions in the United States and Israel.  Licht Decl., ¶¶12, 92; *see generally* Teva Mtn. to Stay.  Indeed, as Teva emphatically emphasized:

> There is no justification for simultaneously conducting overlapping and duplicate legal proceedings (in the United States and in Israel), which pertain to the same issue; which were filed against the background of a similar factual foundation; which draw on a similar (alleged) evidentiary foundation; when the set of facts that allegedly gives rise to

- 32 -

the cause of action is identical in the two proceedings; when the legal arguments are
similar; and when the matter of the members of the class in the Petition for Certification
is, in any event, being heard in the American Actions.

Teva Mtn. to Stay, ¶¶6, 34.  They cannot now credibly claim that litigating Plaintiffs' Israeli law claims

in the United States is inconvenient.  *See DiRienzo*, 294 F.3d at 29 ("In fact, plaintiffs' decision to pursue

consolidated litigation in the Southern District of New York seems to stem from the granting of

***defendants'*** motion by the Judicial Panel to transfer the separate cases to this particular district.  *Iragorri*

teaches that we should focus on this circumstance.") (emphasis in original).  Indeed, Defendants'

hypocritical and diametrically opposed posturing suggests that what they are actually seeking to do here

is not find a convenient forum, but to ensure ***no*** forum is available to hear Plaintiffs' Israeli law claims.

Given their success in staying the Israeli actions in deference to the U.S. litigation, "[D]efendants'

current claims of inconvenience raise questions as to their underlying motives." *Id.*  Plaintiffs' choice of

forum should be afforded significant weight.

### 2.      The Balance of Interests Strongly Favors U.S. Jurisdiction

The last step "in assessing convenience is to balance the public and private interest factors

articulated in *Gilbert*." *DiRienzo*, 294 F.3d at 29.  "The burden of demonstrating that the plaintiff's

chosen forum is not convenient is on the defendant seeking dismissal." *Id.*  Defendants have woefully

failed to carry their burden here.

####         a.      Private Interests Strongly Favor U.S. Jurisdiction Because the Vast Majority (if Not All) Evidence Is Located in the United States and Plaintiffs Will Continue Litigating Their U.S. Securities Claims Here

"The private interest factors enumerated in *Gilbert* include: (1) ease of access to evidence; (2) the

availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing

witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that

might make the trial quicker or less expensive." *DiRienzo*, 294 F.3d at 29-30; *R. Maganlal*, 942 F.2d at

168 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "[A]ccess to proof and witnesses" are

"essential factors in the forum non conveniens analysis." *R. Maganlal*, 942 F.2d at 168.

All of these factors weigh in favor of the Court's jurisdiction. Plaintiffs' Israeli law claims arise from the same course of misconduct that occurred in the United States and are governed by the same substantive law as Plaintiffs' U.S. securities claims. The central issues concern Defendants' participation in collusive activities in the U.S. generic drug market, the impact of those activities on Teva's financial results, and whether those undisclosed illicit activities rendered Defendants' public statements and omissions materially false and misleading under U.S. securities law. The Israeli law claims will be proved through the same discovery, which is well underway in the Consolidated Action, with over one million pages of discovery produced by Defendants thus far. *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2017 WL 1169629, at *6, *9 (S.D.N.Y. Mar. 28, 2017) (denying motion to dismiss for *forum non conveniens* in part because the company had already conducted an investigation and "as a result, more than 3.5 million documents have been collected in the U.S.").

The quickest and least-expensive path forward is to allow each Plaintiff to cultivate the proof it needs to prove up all of its claims in a single lawsuit. *Cf. Gibbs*, 383 U.S. at 723 ("'the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time'"). Plaintiffs will continue to actively pursue their U.S. securities claims in this Court even if the Court required Plaintiffs to simultaneously litigate their Israeli law claims in Israel. Defendants' position would impose significant and duplicative costs on Plaintiffs, Defendants and the judiciary. As Defendants argued in moving to transfer the *Phoenix* plaintiffs' complaint to this Court, "[i]t would be extremely expensive for Teva to litigate the same claims in two separate districts, which could 'lead to duplication of voluminous discovery and documentary evidence.'" *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 22-23. Plaintiffs agree.

Further, pursuing Plaintiffs' Israeli law claims abroad would ***reduce*** the parties' "access to proof and witnesses." Witnesses with direct knowledge are mostly – if not all – located in the United States.

- 34 -

For instance, all of the sales, marketing and finance executives with responsibility for U.S. generics pricing were based in the United States. *E.g.*, *Harel* Complaint (ECF No. 399), ¶48.  The conference calls and SEC filings that contain the allegedly false and misleading public statements and omissions were drafted, prepared and/or controlled by individuals located in the United States in conjunction with individuals at Teva's headquarters in Israel. *Id.*, ¶48, §III.K; *R. Maganlal*, 942 F.2d at 168 (finding the district court abused its discretion in dismissing a foreign plaintiff's breach of contract claim because "all of Maganlal's documentary evidence and witnesses" on the central issue "are located in the United States"); *cf. Murray*, 81 F.3d at 293 (finding no abuse of discretion in dismissing for *forum non conveniens* because "the forum in which actual infringement of Murray's putative copyright has occurred is not the United States but England").

It is obvious that the "locus of the [U.S. generic drug industry], and hence evidence regarding general industry standards for [generic drug pricing], is in the United States," *R. Maganlal*, 942 F.2d at 168, as well as evidence of the impact of the alleged collusive activities on and damages to U.S. consumers.  Indeed, critical third parties in this case include Teva's "competitors" in the U.S. generic drug market, such as Apotex Corp., Breckenridge, Glenmark Pharmaceuticals Inc., Greenstone, Lupin Pharmaceuticals, Inc., Mylan N.V., Novartis AG, Qualitest Pharmaceuticals Co., Rising, Taro Pharmaceuticals USA, Inc., Upsher-Smith Laboratories, Versapharm and Zydus Pharmaceuticals USA Inc.  Most of these companies are either based in the United States or maintained subsidiaries in the United States that participated in the collusive activities.  Thus, the employees at those companies who have direct knowledge of each company's U.S. generic drug pricing, sales and marketing are located in the United States.  Defendants offer no argument or evidence of how those third parties are available by compulsory process in Israel.  The law placing the burden squarely on Defendants' shoulders to **demonstrate** that the balance of interests tips strongly in their favor on this argument is decades old.  *See DiRienzo*, 294 F.3d at 29.  They have utterly failed to do so in their Motion, and cannot do so on reply.

- 35 -

4844-6142-6373.v1

*See In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 634 (S.D.N.Y. 2014).

The only private interest Defendants muster is speculation that they "might" have to engage in additional litigation in Israel to recognize a judgment of this Court. Motion at 10. As discussed above, this speculative concern is unfounded (especially because Plaintiffs are asserting *individual* claims) and is vastly outweighed by the burdens that Plaintiffs, Defendants and the courts will certainly face if the Israeli law claims are not litigated in the United States. *Supra*, §III.B.2.c. Moreover, there is simply no valid concern that an Israeli court would not recognize a U.S. judgment, and Teva itself previously argued "*a judgment by a foreign court can be recognized as one that is enforceable in Israel*." Teva Mtn. to Stay, ¶46 (emphasis in original); *see* Licht Decl., ¶¶102-108. Defendants' faux concerns are simply "not sufficiently weighty to dislodge [Plaintiffs] from [their] chosen forum." *R. Maganlal*, 942 F.2d at 169.

In sum, Plaintiffs should not be "deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo*, 294 F.3d at 30 (citing *Koster*, 330 U.S. at 524). *DiRienzo* is particularly instructive on this point. There, the Second Circuit found no error in the district court's finding that "the bulk" of document discovery and witnesses with direct knowledge of the fraud resided in Canada (and thus weighed in favor of dismissing on *forum non conveniens* grounds). *Id.* But even though "the balance of the private interest factors [was] close," the private interests did not favor upsetting the plaintiffs' choice of forum. *Id.* at 30-31. Given that the bulk of evidence in this case *is* located in the United States, Plaintiffs' valid choice of a U.S. forum should not be disrupted based on Defendants' weak showing of theoretical inconvenience at some point in the future, if ever.

**b.      Public Interests Also Strongly Favor U.S. Jurisdiction Because, as Defendants Have Argued, "[T]he Public Is Obviously Well-Served by Avoiding Duplicative Litigation"**

As with the private interests, public interests also strongly favor U.S. jurisdiction. The public

- 36 -

factors courts consider include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having controversies decided at home"; (3) "the interest in having the trial in a forum that is familiar with the law governing the action"; (4) "the avoidance of unnecessary problems in conflict of laws or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Murray*, 81 F.3d at 293 (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Dismissing Plaintiffs' Israeli law claims will do nothing to lessen the Court's congestion or Connecticut residents' need to sit for jury duty. Plaintiffs, along with the other direct action plaintiffs and the Class (whose membership likely numbers in the tens of thousands) will continue to litigate their U.S. securities claims and claims concerning Plaintiffs' purchases of Teva securities on the TASE[11] in the Consolidated Action, irrespective of the disposition of Defendants' Motion. Rather, dismissal of the Israeli law claims will only work to further congest the Israeli courts by proliferating the proceedings relating to Defendants' securities law violations. As Defendants stated in successfully moving to transfer the *Phoenix* plaintiffs' complaint to this Court, "[c]onsiderations of court congestion cannot possibly favor requiring *two* courts to oversee the progress of these large cases." *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 23 (emphasis in original).

In addition, the United States has a significant interest in ensuring that companies that list their securities on U.S. exchanges comply with U.S. disclosure regulations and in providing a forum for investors, like Plaintiffs here, who purchase on U.S. exchanges. *See DiRienzo*, 294 F.3d at 32. Similarly, "there is no question that jurors have an interest in ensuring that financial institutions that are traded on American stock exchanges do not mislead investors." *Villella*, 2017 WL 1169629, at *9. These concerns are not diminished in Teva's case given that the vast majority of its securities – *81%* as

---

[11]   Defendants have not sought to dismiss Plaintiffs' claims brought under the Pennsylvania Securities Act of 1972, fraud and negligent misrepresentation, which are based on Plaintiffs' purchases of Teva securities on the NYSE as well as the TASE.

of December 31, 2016 – are traded on U.S. exchanges.  Teva Mtn. to Stay, ¶15.  Indeed, as Teva has

stated, "[a] decision on the subjects related to securities law in the United States *by the courts in the*

*United States* promotes legal certainty and stability and ensures that the American laws will be

interpreted in a manner that is consistent with the policy and purpose that underlie those laws." *Id.*, ¶57

(emphasis in original).

      To be sure, Israel "has an analogous interest with respect to [Israeli investors] who bought their

[Teva] stock in [Tel Aviv]."  *DiRienzo*, 294 F.3d at 33.  But Israel's interest in providing a forum for

disclosure violations by a dual-listed company like Teva is *furthered*, not stymied, by proceeding in the

United States.  *See* ISA Comment Letter at 3 ("[W]hilst choice of law principles and the doctrine of

*forum non conveniens* were used in support of *Morrison* by foreign governments in the amicus briefs

filed with the Supreme Court, we would suggest that *not only do these arguments not apply to dual*

*listed securities as defined above but in fact they are exactly reversed when considered in the context*

*of dual listed securities*.");  *supra*, §III.B.2.c.  In addition, Plaintiffs "are a small minority" of investors

proceeding in the Consolidated Action, as they are only ten investor groups out of the tens of thousands

of investors that are absent members of the Class, which is not pursuing Israeli law claims.  *DiRienzo*,

294 F.3d at 33.  Accordingly, Israel's "interest is correspondingly less."  *Id.*

      Trial in this Court also ensures that Plaintiffs' Israeli law claims are heard "in a forum that is

familiar with the law governing the action," and that "conflict of laws" and "application of foreign law"

are avoided.  *Murray*, 81 F.3d at 293.  As Defendants explained:

> Israeli law mirrors U.S. law here.  The Israeli dual-listing regime was purposefully
> created in 2000 to make the Tel Aviv Stock Exchange more attractive to Israeli
> companies (like Teva) who otherwise might list their securities only on exchanges
> outside of Israel.  Because issuers find it unattractive to be subject to multiple and
> diverging regulatory regimes, Israel simply adopts the securities law requirements of the
> foreign jurisdiction – in this case, the United States – instead of enforcing "requirements
> that apply to Israeli companies listed solely on the TASE."

ECF No. 189 at 54 n.49.  The alternative will force Plaintiffs "to argue points of US law before an Israeli

court."  ISA Comment Letter at 8.  This risks "[l]egal inconsistencies . . . between the potentially

- 38 -

conflicting outcomes of what are essentially the same claims in different jurisdictions." *Id.*

Defendants' argument that "an obvious public interest" exists in having these claims "concerning stock on an Israeli exchange[] considered and decided by an Israeli court" (Motion at 10) ignores the realities of the dual-listing regime, and their authorities are uninstructive. The dispute in *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129 (2d Cir. 2005), involved a conspiracy of one Indian corporation to "incapacitate" its Indian rival in the manufacture and selling of metal products in India. *Id.* at 132-33. In contrast, here, the central issues surround Defendants' participation in a price-fixing conspiracy in the U.S. generic drug market and whether Defendants' public statements and omissions made on U.S. conference calls and in SEC filings were rendered false and misleading by the undisclosed misconduct. To focus on the peripheral facts that most (not all) Plaintiffs are foreign investors that bought securities on the TASE (as well as the NYSE) would be error. *R. Maganlal*, 942 F.2d at 168 (finding the district court erred by unduly focusing on an issue of "secondary importance").

Defendants' other cited authorities actually support ***Plaintiffs***. In *Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir. 2009), the Second Circuit agreed "Israel has a far stronger interest in this litigation than does plaintiffs' chosen forum" in part because Israel's Ministry of Defense submitted a letter "explain[ing] that the complaint raises claims related to Israel's national security and other governmental interests." *Id.* at 652. Just as the Ministry of Defense made its position on choice-of-law clear, the ISA here has made clear its position that Israeli law claims against a company dual listed in the United States are governed by U.S. law and should be heard by a U.S. court. *See* ISA Comment Letter at 4-6; *supra*, §III.B.2.a.-b. In *ICC Indus., Inc. v. Isr. Disc. Bank, Ltd.*, No. 04 Civ. 6945(DC), 2005 WL 1844616 (S.D.N.Y. July 29, 2005), *aff'd*, 170 F. App'x 766 (2d Cir. 2006), the dispute centered on a guarantee, which provided in its terms that it would be governed by Israeli law and heard in an Israeli court. *See id.* at *1-*2, *6. Like *ICC*, the relevant law here provides for the governing substantive law and forum: it provides that Plaintiffs' Israeli claims will be governed by ***U.S.*** substantive law and will be heard by a

*U.S.* court.[12]  Notably, neither decision involved securities violations by a dual-listed company.[13]

In sum, all relevant public interests favor maintaining Plaintiffs' Israeli law claims here.  When considered with relevant private interests and the deference to which Plaintiffs' choice of the United States is entitled, Defendants' request that the Israeli law claims be dismissed for *forum non conveniens* must be denied.  *See Villella*, 2017 WL 1169629, at *5-*9 (denying motion to dismiss for *forum non conveniens*, even though "the illegal financing of electoral campaigns and politicians" that were the "'core operative facts'" occurred in Chile and plaintiff may have been "motivated by tactical reasons," because the foreign plaintiff's "choice of forum is entitled to some deference, and the private and public factors do not tilt heavily in favor of Defendant").

## IV.    CONCLUSION

As Defendants themselves have argued, "'[t]he public is obviously well-served by avoiding duplicative litigation.'"  *Phoenix* E.D. Pa. Dkt., ECF No. 30-2 at 23.  Plaintiffs agree.  There are no efficiencies to be gained by requiring Plaintiffs to pursue "two cases involving precisely the same issues . . . simultaneously . . . in different District Courts."  *Id.*  But this is exactly what Defendants ask the Court to order.  For all the reasons stated herein, Defendants' Motion should be denied in full.

DATED:  August 7, 2020                          Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP


                                                        s/ Luke O. Brooks
                                                _____
                                                   LUKE O. BROOKS

---

[12]    That "the most significant contacts to the parties' transactions and the instant dispute are in Israel, and the connections to New York are minimal" further supported dismissal on *forum non conveniens* grounds.  *Id.* at *6.  This is in sharp contrast to the instant case, where the core operative facts arise from misconduct that occurred in the United States.

[13]    In addition, Defendants cite to *Mylan*, but the reasons that decision's actual holdings should not be followed here apply equally to its dicta.  *Supra*, §III.B.2.a.-b.

4844-6142-6373.v1

SPENCER A. BURKHOLZ
LUKE O. BROOKS (*pro hac vice*)
RYAN A. LLORENS (*pro hac vice*)
ERIC I. NIEHAUS (*pro hac vice*)
ANGEL P. LAU (*pro hac vice*)
JEFFREY J. STEIN (*pro hac vice*)
SARA B. POLYCHRON (*pro hac vice*)
ERIKA OLIVER (*pro hac vice*)
TING H. LIU (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
lukeb@rgrdlaw.com
ryanl@rgrdlaw.com
eniehaus@rgrdlaw.com
alau@rgrdlaw.com
spolychron@rgrdlaw.com
jstein@rgrdlaw.com
eoliver@rgrdlaw.com
tliu@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHAD JOHNSON (*pro hac vice*)
125 Park Avenue, 25th Floor
New York, NY  10017
Telephone:  212/791-0567
chadj@rgrdlaw.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD (ct 00133)
MATTHEW P. JASINSKI (ct 27520)
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/882-1676
860/882-1682 (fax)
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Attorneys for Plaintiffs Harel Pension and
Provident Ltd., et al. and Phoenix Insurance
Company Ltd., et al.

MOTT ZEZULA LLC
NATHAN ZEZULA (ct27936)
750 East Main Street
6th Floor
Stamford, CT  06902
Telephone:  203/408-6500
nzezula@lmzlegal.com

GRANT & EISENHOFER P.A.
JAY W. EISENHOFER
DANIEL L. BERGER (*pro hac vice*)
DEBORAH A. ELMAN (*pro hac vice*)*
JONATHAN D. PARK (*pro hac vice*)
485 Lexington Avenue
New York, NY  10017
Telephone:  646/722-8500
dberger@gelaw.com
delman@gelaw.com
jpark@gelaw.com

Attorneys for Plaintiffs Schwab Capital Trust,
Schwab Strategic Trust, Stichting PGGM
Depositary, Stichting Pensioenfonds Zorg en
Welzijn, and Internationale
Kapitalanlagegesellschaft mbH

*Ms. Elman is not counsel to Internationale
Kapitalanlagegesellschaft mbH

SCOTT & SCOTT
ATTORNEYS AT LAW LLP
ERIN GREEN COMITE (ct24886)
MARGARET B. FERRON (ct28469)
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:  860/537-5537
ecomite@scott-scott.com
mferron@scott-scott.com

POMERANTZ LLP
JEREMY A. LIEBERMAN (*pro hac vice*)
MICHAEL J. WERNKE (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone:  212/661-1100
jalieberman@pomlaw.com
mjwernke@pomlaw.com

- 42 -

POMERANTZ LLP
PATRICK M. DAHLSTROM (*pro hac vice*)
10 South LaSalle, Suite 3505
Chicago, IL  60603
Telephone:  312/377-1181
pdahlstrom@pomlaw.com

Attorneys for Plaintiffs Mivtachim The Workers
Social Insurance Fund Ltd., et al., Clal Insurance
Company Ltd., et al., Migdal Insurance Company
Ltd., et al., Migdal Mutual Funds Ltd., Psagot
Mutual Funds, Ltd. and Psagot Provident Funds
& Pension Ltd.

4844-6142-6373.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 7, 2020, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  lukeb@rgrdlaw.com

4844-6142-6373.v1

**Mailing Information for a Case 3:17-cv-00558-SRU Ontario Teachers' Pension Plan Board, et al v. Teva Pharmaceutical Industries Ltd. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David A. Ball**
  dball@cohenandwolf.com

- **Eric J. Belfi**
  ebelfi@labaton.com

- **Daniel L. Berger**
  dberger@gelaw.com,5722178420@filings.docketbird.com,tsaviano@gelaw.com

- **James H. Bicks**
  jbicks@wiggin.com,tsuhar@wiggin.com,apetrone@wiggin.com

- **Michael D. Blanchard**
  michael.blanchard@morganlewis.com,victoria.curry@morganlewis.com,jason.frank@morganlewis.com,jordan.hershman@morganlewis.com,matthew.mcdonough@m

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **Luke Orion Brooks**
  lbrooks@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **David Thomas Bules**
  dbules@calfee.com

- **Liam S. Burke**
  lburke@carmodylaw.com

- **California State Teachers' Retirement System**
  rorder@uks.com

- **William H. Clendenen , Jr**
  office@clenlaw.com,whcj@clenlaw.com

- **Erin Green Comite**
  ecomite@scott-scott.com,kjager@scott-scott.com

- **Patrick M. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Christopher Davies**
  christopher.davies@wilmerhale.com

- **Gregory Michael Egleston**
  egleston@gme-law.com,tjmlaw2001@yahoo.com

- **Deborah Elman**
  delman@gelaw.com,jpark@gelaw.com,2665358420@filings.docketbird.com

- **Joel Thomas Faxon**
  jfaxon@faxonlawgroup.com,jdelorm@faxonlawgroup.com,sbraun@faxonlawgroup.com

- **Margaret B. Ferron**
  mferron@scott-scott.com,kjager@scott-scott.com,efile@scott-scott.com

- **Scott Foglietta**
  scott.foglietta@blbglaw.com,Khristine.DeLeon@blbglaw.com,ManagingClerk@blbglaw.com,Matthew.Mahady@blbglaw.com

- **Joseph A. Fonti**
  jfonti@bfalaw.com,spodolsky@podolskylaw.com,ecfnotifications@bfalaw.com

- **Jason D. Frank**
  jason.frank@morganlewis.com

- **Koji F. Fukumura**
  kfukumura@cooley.com

- **Carol V. Gilden**
  cgilden@cohenmilstein.com,lhoeksema@cohenmilstein.com,efilings@cohenmilstein.com

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com

- **Adam S. Hakki**
  adam.hakki@shearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,manattyoffice@shearman.com

- **Serena P. Hallowell**
  shallowell@labaton.com,lpina@labaton.com,SManzolillo@labaton.com,smundo@labaton.com,ElectonicCaseFiling@labaton.com

- **Michael Hampson**
  mhampson@lowenstein.com

- **Elizabeth Hays**
  liza.hays@morganlewis.com

- **Jordan D. Hershman**
  jordan.hershman@morganlewis.com,victoria.curry@morganlewis.com,emily.renshaw@morganlewis.com,brenda.kelly@morganlewis.com

- **Ari J. Hoffman**
  ahoffman@cohenandwolf.com

- **Adam Hollander**
  adam.hollander@blbglaw.com,JonathanU@blbglaw.com,kayem@blbglaw.com,Scott.Foglietta@blbglaw.com,Michaelb@blbglaw.com,AdamW@blbglaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Robert A. Izard , Jr**
  rizard@ikrlaw.com,ecf@ikrlaw.com

- **Mathew P. Jasinski**
  mjasinski@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Christopher Chad Johnson**
  chadj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marc Kasowitz**
  mkasowitz@kasowitz.com

- **Reed R Kathrein**
  reed@hbsslaw.com,lisal@hbsslaw.com,sf_filings@hbsslaw.com

- **Sheron Korpus**
  skorpus@kasowitz.com,courtnotices@kasowitz.com,autodocket@kasowitz.com

- **Evan A. Kubota**
  ekubota@bfalaw.com

- **Nancy A. Kulesa**
  nancy@nkulesa.com

- **Marc J. Kurzman**
  mkurzman@carmodylaw.com

- **Angel P. Lau**
  alau@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Seth R. Lesser**
  Slesser@klafterolsen.com

- **Daniel Craig Lewis**
  daniel.lewis@shearman.com,managing-attorney-5081@ecf.pacerpro.com,courtalert@shearman.com,manattyoffice@shearman.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com

- **Ting Liu**
  tliu@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ryan Llorens**
  ryanl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joshua A. Materese**
  jmaterese@ktmc.com

- **Margaret E. Mazzeo**
  mmazzeo@ktmc.com

- **Richard D. McCune**
  rdm@mccunewright.com

- **Thomas J. McKenna**
  tjmckenna@gme-law.com,tjmlaw2001@yahoo.com,gmelawny@gmail.com

- **Jeffrey Mueller**
  jmueller@daypitney.com,sflint@daypitney.com,kpbrooks@daypitney.com

- **Matthew L. Mustokoff**
  mmustokoff@ktmc.com,mmazzeo@ktmc.com,5558085420@filings.docketbird.com,mswift@ktmc.com,mfranek@ktmc.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,3045517420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,mjasinski@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Gretchen M. Nelson**
  gnelson@nflawfirm.com

- **Jeffrey P. Nichols**
  jnichols@hssklaw.com,gvillella@hssklaw.com

- **Eric Ian Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jill M. O'Toole**
  jotoole@goodwin.com,nmccarthy@goodwin.com,swestby@goodwin.com,lwaller@goodwin.com,lgineo@goodwin.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard S. Order**
  rorder@uks.com,lvoorvaart@uks.com,pmcdonald@uks.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com

- **Jonathan Park**
  jpark@gelaw.com,tsaviano@gelaw.com

- **Ronald Richard Parry**
  rrparry@straustroy.com

- **Sara Polychron**
  spolychron@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lesley F Portnoy**
  lfportnoy@pomlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com

- **Craig A. Raabe**
  craabe@ikrlaw.com,ecf@ikrlaw.com

- **Jennifer Randolph**
  jrandolph@lowenstein.com,claferriere@lowenstein.com

- **Emily E. Renshaw**
  emily.renshaw@morganlewis.com,victoria.curry@morganlewis.com,nathaniel.bruhn@morganlewis.com,matthew.mcdonough@morganlewis.com,liza.hays@morganle

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lawrence M. Rolnick**
  lrolnick@lowenstein.com

- **J. Christopher Rooney**
  crooney@carmodylaw.com,ksposi@carmodylaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **David R. Roth**
  droth@wiggin.com,cmartone@wiggin.com

- **Andrew Schwartz**
  aschwartz@kasowitz.com

- **David J Schwartz**
  dschwartz@labaton.com,lpina@labaton.com,electroniccasefiling@labaton.com

- **Irwin B Schwartz**
  ischwartz@blaschwartz.com,dmacwilliam@blaschwartz.com,khutton@blaschwartz.com

- **Gerald H. Silk**
  jerry@blbglaw.com

- **David A. Slossberg**
  dslossberg@hssklaw.com,GVillella@hssklaw.com,tmontalto@hssklaw.com

- **Robert K. Smith**
  robert.smith@wilmerhale.com

- **Jeffrey Stein**
  jstein@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thayne Stoddard**
  tstoddard@bfalaw.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com

- **Paul F. Thomas**
  paul@DuffyLawCT.com,stacey@duffylawct.com

- **Steven J. Toll**
  stoll@cohenmilstein.com

- **Jonathan D. Uslaner**
  jonathanu@blbglaw.com,managingclerk@blbglaw.com

- **Austin P. Van**
  avan@pomlaw.com

- **Christina Volpe**
  cvolpe@dmoc.com

- **Thomas Watson**
  twatson@labaton.com

- **Lesley E. Weaver**
  lweaver@bfalaw.com

- **Michael J. Wernke**
  mjwernke@pomlaw.com,abarbosa@pomlaw.com

- **Jonathan P. Whitcomb**
  jwhitcomb@dmoc.com,docket@dmoc.com

- **Nathan Craig Zezula**
  nzezula@lmzlegal.com

- **Blake M. Zollar**
  bzollar@cooley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)