**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE TEVA SECURITIES LITIGATION | : | No. 3:17-cv-00558 (SRU) |
| | : | |
| THIS DOCUMENT RELATES TO: | : | No. 3:17-cv-00558 (SRU) |
| | : | |

**PLAINTIFFS' SUBMISSION FOR SEPTEMBER 16, 2020 DISCOVERY CONFERENCE**

**FILED UNDER SEAL**

**ORAL ARGUMENT REQUESTED**

**FILED UNDER SEAL**

**I.     INTRODUCTION**

Pursuant to the Court's August 24 order (ECF 533), Plaintiffs make this submission to report on the status of the parties' discovery and current disputes. While the parties have made progress in a number of respects, as summarized below, the parties are at an impasse on one issue that requires the Court's resolution: the production of text messages.[1]

- First, Ms. Cavanaugh and Defendants now deny possessing *any* of Ms. Cavanaugh's text messages pre-dating March 5, 2016, yet have refused to explain how these highly relevant documents were lost. And while Defendants admittedly have over 10,000 of Ms. Cavanaugh's post-March 5, 2016 text messages, they have only produced a handful in an unacceptable format. To put this issue to rest, Defendants should be ordered to: (i) produce all of Ms. Cavanaugh's text message communications with colleagues and competitors in a native format with all available metadata; (ii) turn over complete forensic images of Ms. Cavanaugh's physical devices and backup storage media for analysis and recovery of files; and (iii) provide an affidavit explaining what happened to Ms. Cavanaugh's missing text messages.

- Second, Defendants should be ordered to produce relevant phone data and text messages for custodians whose text messages Defendants possess, but only recently revealed.

Plaintiffs respectfully submit that the Court should enter the attached Proposed Order to ensure that relevant discovery is timely produced. Defendants should not be permitted to further delay fact discovery by withholding the production of highly relevant text messages.

---

[1] The term "text messages" is used herein to refer to relevant iMessages, MMS, SMS, WeChat, WhatsApp, Facebook Messenger, LinkedIn messages, or any other text, chat, or instant messaging that could be recoverable from a mobile device.

1

**FILED UNDER SEAL**

## II.  DISCOVERY STATUS UPDATE

Since our last discovery conference, the parties have made significant progress and reached resolution on issues related to data production, document production, and Defendants' privilege logs.  Plaintiffs have also engaged heavily with Defendants to obtain discovery on the most expeditious schedule possible and, having heard Defendants' concerns and limitations, agreed to a schedule for Defendants to complete each of these items.  The key deadlines are as follows:

- Tier 1 and Tier 2 Custodians:  While the original agreed-upon milestones provided for completion of both document productions and privilege logs by August 10, 2020 (ECF 375 ¶¶3-5), these productions and privilege logs for these custodians will not be completed until October 29, 2020 (including certain interim deadlines) (*see* ECF 521 at 5).

- Data:  Defendants must complete the production of all agreed-upon data by no later than October 16, 2020, with preceding interim deadlines for certain types of data.[2]

- Remaining Document Production:  Defendants must complete all document production by no later than November 17, 2020, with preceding interim deadlines for certain custodians and categories of materials.

- Privilege Logs:  Defendants must submit a final privilege log by no later than December 10, 2020, with preceding interim deadlines for privilege logs with respect to certain custodians and categories of materials.

## III.  DEFENDANTS MUST PROVIDE INFORMATION ABOUT MISSING PHONE DATA AND PRODUCE ALL RELEVANT TEXT MESSAGES THAT ARE RECOVERABLE

### A.  Defendants and Former Teva Executive Cavanaugh Must Provide Information About Cavanaugh's Phone Data, Which Has Apparently Been Lost or Destroyed

On August 11, the Court ordered that "if Cavanaugh or the Defendants have relevant text messages within their possession, custody, or control, those text messages must be produced" and that the parties "meet and confer regarding this topic."  (ECF 521 at 4.)  Since then, Plaintiffs have met and conferred with Defendants and Ms. Cavanaugh several times; but to date, although they

---

[2] With respect to data production, the parties submitted the operative deadlines to the Court in the form of a joint stipulation (ECF 536), which the Court approved on September 2, 2020 (ECF 537).

**FILED UNDER SEAL**

have recovered more than 10,000 of Ms. Cavanaugh's text messages, Defendants and Ms. Cavanaugh have produced a mere *seven* text messages, *seven* address book contacts, and *one* calendar entry to date.³ They have produced *none* of the relevant text messages or other phone data identified by the State AGs or Plaintiffs.

More troubling is that Teva and Ms. Cavanaugh recently revealed that they do not have *any* of her text messages for the period before March 5, 2016. When asked what happened to the pre-March 2016 text messages (such as the May 2014 texts detailed below), Defendants stated that they are under no obligation to give Plaintiffs this information. To the contrary, they must disclose what happened to this highly relevant information, including whether it was deleted or destroyed, when that happened, and what they have done to recover the data. *See, e.g.*, *Boudreau v. Smith*, No. 3:17-CV-589 (SRU), 2020 WL 532321, at *6 (D. Conn. Feb. 3, 2020) (where Defendants lost relevant text messages, ordering that "Defendants shall either provide [plaintiff] with electronic back-ups of [defendant]'s text messages . . . or file an affidavit explaining their efforts—and failure—to obtain those text messages"); *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 670-71 (S.D.N.Y. 2017) (noting that "courts may allow spoliation discovery specifically on the issue of intent," and ordering adverse inference against defendants for the failure to preserve text messages by a non-party).⁴

To be clear, there is no question that relevant text messages were sent and received before March 5, 2016. For instance, the State AGs allege that, between January 2011 and August 2017, Ms. Cavanaugh "exchanged at least 568 phone calls and text messages with her contacts at . . .

---

³ Defendants will make a second and final production of Ms. Cavanaugh's text messages on September 15, 2020, but Plaintiffs have been told to not expect many more documents.

⁴ Moreover, Defendants have never explained why they waited until June 25, 2020 to disclose that they had a full image of Ms. Cavanaugh's device, or why they waited until just last week to reveal that they also have text messages (and perhaps full images as well) from other custodians like Nisha Patel.

Actavis, Amneal, Zydus, Sandoz, Glenmark, and Greenstone," and detail specific instances where Ms. Cavanaugh exchanged text messages with competitors to implement parallel price increases and secure market allocation agreements. (State AG Compl. ¶¶419, 477-78, 590, 1065.) The phone records that Defendants produced on the eve of the last Court conference confirm the existence of these text messages, and show thousands of communications by phone or text.

Similarly, Teva's phone records confirm the existence of text messages exchanged with Taro and Zydus to allocate share for Zydus's entry into the Etodolac ER market in May 2014 and maintain the parallel price increases Teva and Taro had implemented in August 2013. (State AG Compl. ¶¶477-78.) ███████████████

███████████████████████████████████

███████████████████████████████████ However, none of these messages have been produced.

In addition, the few texts and other phone data Defendants have produced are scrambled and key portions missing. For example, address book data is truncated with missing fields; text messages fail to list the recipient(s) of the texts, where or from whom they were collected, whether the texts were delivered, read, or deleted, and Defendants have destroyed the integrity of text message threads in violation of Rule 34 by excerpting them individually without context.[5] Critically, Teva used a common tool called "Cellebrite," which automatically generates a full

---

[5] *See, e.g.*, Exhibit 1 (text message); Exhibit 2 (address book contact). ███████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████

4

report of all data extracted from each device.⁶ However, in further breach of Rule 34, Defendants only produced portions of the data in unusable PDFs. And, as courts have held, even a full Cellebrite extraction falls short of a true forensic analysis.⁷

Accordingly, the Court should order Defendants and Ms. Cavanaugh to do the following by September 23: (i) produce all of Ms. Cavanaugh's text message communications with colleagues and competitors in a native format with all available metadata; (ii) turn over complete forensic images of Ms. Cavanaugh's physical devices and backup storage media for analysis and recovery of files; and (iii) provide an affidavit explaining what happened to Ms. Cavanaugh's missing text messages.

### B. Defendants Must Produce the Relevant Text Messages Recoverable from Their Additional, Newly-Revealed Collections

To Plaintiffs' surprise, Defendants recently confirmed that they actually possess forensic collections of text messages from other Teva custodians, which should include other missing text messages between Teva and its competitors identified in the State AG complaint. Despite what they told Plaintiffs earlier in the litigation, it is now clear that Defendants have text messages from devices for David Rekenthaler, Nisha Patel, Christine Baeder, Theresa Coward, and Kevin Galownia, and perhaps others too.

But Defendants are only willing to produce the relevant text messages from the devices belonging to Rekenthaler and Patel on condition that Plaintiffs forever abandon discovery from

---

⁶ Defendants' use of the Cellebrite tool is obvious by ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*See, e.g.*, Exhibit 3.)

⁷ *See, e.g.*, *U.S. v. Martinez*, No. 13CR3560-WQH, 2014 WL 3671271, at *4 n.5 (S.D. Cal. July 22, 2014) ("[t]he Cellebrite process is limited technology and does not entail [a] comprehensive forensic evaluation"); *U.S. v. Sullivan*, No. CR 17-00104 JMS-KJM, 2020 WL 5351030, at *3 (D. Haw. Sept. 4, 2020) (recounting explanation from IRS-CIS Special Agent "that a Cellebrite extraction is not an exact image or replica of all the contents on a phone, and 'it is possible that [the extraction does] not contain everything ... that is on the physical phone'").

5

other devices, including those belonging to Coward (Senior Director, Sales), Baeder (Senior Director, Commercial Operations), Galownia (Senior Director, Marketing Operations), and others. They are also unwilling to share basic information, such as whose devices, if any, contain the highly relevant text messages identified by the State AGs or the volume of phone data for each custodian's collection. Plaintiffs are thus left in the dark.

The Court should not countenance such tactics. Teva's phone communications, and in particular text messages, are indispensable evidence of Teva's Price Hike Strategy and fully discoverable under the Federal Rules. This Court should order Defendants to produce all relevant phone data and text messages with Teva personnel or Teva's competitors (including without limitation text messages with Teva's competitors referenced in the State AGs' complaint).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order submitted herewith.

Date:  September 14, 2020

    Respectfully submitted,

    PLAINTIFFS ONTARIO TEACHERS'
    PENSION PLAN BOARD, and
    ANCHORAGE POLICE & FIRE
    RETIREMENT SYSTEM

    /s/ *Joseph A. Fonti*
    Joseph A. Fonti (admitted *pro hac vice*)
    Evan A. Kubota (admitted *pro hac vice*)
    Benjamin F. Burry (admitted *pro hac vice*)
    Thayne Stoddard (admitted *pro hac vice*)
    **BLEICHMAR FONTI & AULD LLP**
    7 Times Square, 27th Floor
    New York, NY 10036
    Telephone: (212) 789-1340
    Facsimile: (212) 205-3960
    jfonti@bfalaw.com

**FILED UNDER SEAL**

ekubota@bfalaw.com
bburry@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System, and Lead Counsel for the Class*

Marc J. Kurzman (ct01545)
Christopher J. Rooney (ct04027)
**CARMODY TORRANCE SANDAK & HENNESSEY LLP**
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608
mkurzman@carmodylaw.com
crooney@carmodylaw.com

*Local Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System*