1                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF CONNECTICUT
2
- - - - - - - - - - - - - - - - x
3
ONTARIO TEACHERS' PENSION PLAN  :  No. 3:17-cv-00558(SRU)
4  BOARD, ET AL,                   :  915 Lafayette Boulevard
                       Plaintiffs,  :  Bridgeport, Connecticut
5                                  :
                 v.               :
6                                  :  November 12, 2020
TEVA PHARMACEUTICAL INDUSTRIES  :
7  LTD., ET AL                     :
                       Defendants.  :
8
- - - - - - - - - - - - - - - - x
9

10

11
                        MOTIONS HEARING
12              (held via videoconference)

13

14  B E F O R E:

15      THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

16

17

18

19

20

21

22
                  Sharon L. Masse, RMR, CRR
23                 Official Court Reporter
                  915 Lafayette Boulevard
24            Bridgeport, Connecticut  06604
                sharon_masse@ctd.uscourts.gov
25

```
1   A P P E A R A N C E S:

2
        FOR THE PLAINTIFFS:
3

4           COHEN MILSTEIN SELLERS & TOLL, PLLC
                190 South LaSalle Street
5               Suite 1705
                Chicago, Illinois  60603
6           BY:  CAROL V. GILDEN, ESQ.

7
            ROBBINS GELLER RUDMAN & DOWD LLP
8               655 W. Broadway, Suite 1900
                San Diego, California  92101
9           BY:  LUKE BROOKS, ESQ.

10

11      FOR THE DEFENDANTS:

12          MORGAN LEWIS & BOCKIUS LLP
                One Federal Street
13              Boston, Massachusetts  02110
            BY:  JASON D. FRANK, ESQ.
14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceedings commenced at 11:31 a.m.)

2          THE COURT:  Good morning.  We're here,

3  obviously, in the Teva case.  I'm happy to take up the

4  partial motions to dismiss.  Who's going to --

5          MR. FRANK:  Good morning, Your Honor.

6          THE COURT:  Good morning.  Let's take up the

7  statute of repose issue first, if we could.

8          MR. FRANK:  Sure, Your Honor.  Jason Frank from

9  Morgan Lewis on behalf of the defendants.  It's good to

10  see you after many telephone conferences.

11          The Court will recall that when defendants moved

12  to consolidate these cases, we specifically addressed

13  motions to dismiss the direct action claims.  We deferred

14  motions to dismiss on all issues to a later date with two

15  exceptions, a statute of repose issue and a motion to

16  dismiss Israeli law claims.  As we explained at the time,

17  we believed the resolution of these issues could

18  potentially streamline resolution of securities litigation

19  in this court.  That is because, among other reasons, the

20  resolution of these issues will impact the parties' view

21  of the value of each case.

22          With respect in particular to the statute of

23  repose, Your Honor, this Court should dismiss all claims

24  based on alleged violations of the Securities Exchange Act

25  and the Pennsylvania Securities Act that were filed late,

1    that is, over five years after the alleged violation.

2    Plaintiffs must bring their claims under the applicable

3    statutes within five years of a, quote, violation, close

4    quote, of the securities statute.  Courts dismiss claims

5    based on violations outside that five-year time period,

6    even while allowing claims to proceed based on violations

7    within the time period.

8          Examples of this are in our brief, including the

9    *Sjunde v. G.E.* case from 2019, the *BP Securities*

10   *Litigation* case from 2018, the *Kuwait v. AIG* case in 2015,

11   the *Lawntop Financial Technologies Securities Litigation*

12   case from 2013.  Those are all cases that support this

13   proposition.

14         Plaintiffs argue that if there are multiple

15   violations of the securities laws, multiple allegedly

16   false statements or actionable omissions, those should all

17   be treated as one violation.  Plaintiffs' argument has no

18   support in the text of the statutes.  It is contrary to

19   the precedent, including *ANZ Securities*, *IndyMac*, and the

20   cases I referenced a moment ago that do exactly what we

21   request here.  Plaintiffs' argument is contrary to the

22   purpose of statutes of repose, which is to create a period

23   of repose, that is, peace.

24         I'll spare the Court from hearing the arguments

25   in our brief again in favor of simply quickly placing

1    those arguments in context.

2            In their opposition brief, plaintiffs

3    characterize our arguments as, quote, stunning, close

4    quote, and quote, unprecedented, close quote.  As *GE*, *BP*,

5    *AIG* and *Lawntop* demonstrate, that is not the case.  Our

6    arguments are neither stunning nor unprecedented.  They

7    are supported by a wealth of authority.

8            The actual issue presented by defendants' motion

9    is much simpler than plaintiffs' rhetoric suggests.  By

10   clear statutory command, Your Honor, a securities

11   plaintiff must bring a claim based within five years of

12   the alleged violation on which that claim is based.  In

13   applying this statute, courts routinely hold -- and I'm

14   quoting from *Kuwait*, the *Kuwait v. AIG* case, quote, that

15   the statute of repose runs from the date of each allegedly

16   fraudulent misstatement or omission, such that plaintiffs'

17   claims are untimely to the extent they are based on

18   particular statements or omissions made outside of the

19   statute of repose window, close quote.

20           In years past, Your Honor, there was some

21   disagreement as to whether this repose period could be

22   expanded under a continuing violations theory when a case

23   involved alleged misstatements and omissions that were

24   made part of a, quote, scheme, close quote.  Even then,

25   this theory, this continuing violations theory, was

1    controversial, with many courts rejecting it because it

2    grafted equitable tolling principles onto a statute of

3    repose when such principles are properly limited to

4    statutes of limitations.

5           Plaintiffs in their brief, Your Honor, have

6    brought to your attention one side of this split of

7    authority.  They didn't in their brief discuss the other

8    side of the split, the side that prevailed, the prevailing

9    view as set forth in cases after 2013.

10          What's more, plaintiffs have taken vestigial

11   language from *ANZ Securities* and attempted to use it to

12   revive that discredited, older view of the law.  They

13   seize on that dicta, arguing that because the Court in *ANZ*

14   stated that a repose period runs from, quote, the date of

15   the last culpable act or omission of the defendant, close

16   quote, violations occurring outside the Exchange Act's

17   five-year repose period can still be actionable.  But

18   that, Your Honor, ignores that that case involved a single

19   securities offering where the last act was the publication

20   of the statement.  They choose to interpret that language

21   as if to suggest that it doesn't mean the last act giving

22   rise to a violation of the securities laws, but, rather,

23   the last statement in a series of alleged misstatements.

24          Your Honor, that interpretation is illogical,

25   and it leads to absurd results.  It means that the Court

1    in that opinion, the *ANZ* opinion, that was underscoring

2    that statutes of repose are not subject to tolling, was

3    adopting a tolling principle, was completely undermining

4    its own holding by inserting into its opinion a continuing

5    violation theory.  That would mean that claims could be

6    brought based on violations, alleged misstatements,

7    alleged actionable omissions that are ten or 15 years old

8    or older.  It makes no sense.  And, unsurprisingly,

9    plaintiffs can't cite a case interpreting and applying *ANZ*

10   *Securities* in this way, so instead they cite the old,

11   discredited continuing violations cases.

12          Now, I want to note here that the cases don't

13   always use the expression "continuing violation."  This

14   doctrine has gone by a number of names -- the continuing

15   violations doctrine, the last misrepresentation made

16   theory, and similar names.  Plaintiffs now give it a new

17   name.  They would call it the last culpable act doctrine.

18   But that doesn't change what it is, Your Honor.  It's

19   equitable tolling, and statutes of repose are not subject

20   to equitable tolling.  That we know from *ANZ Securities*,

21   and that's been the law in the Second Circuit since at

22   least 2013 per the *IndyMac* case.

23          So, Your Honor, to sum up, the Court should

24   decline plaintiffs' invitation to make a grave error,

25   ignoring the holding of *ANZ Securities* and the weight of

1    authority.  Rather, it should dismiss claims based on

2    violation outside the five-year period.

3             Thank you, Your Honor.

4             THE COURT:  Let me inquire whether you can shed

5    some light on the legislative history of the statute of

6    repose, statute of limitations.

7             MR. FRANK:  Well --

8             THE COURT:  Let's look at Section 1658(b).

9             MR. FRANK:  Your Honor, my memory of the history

10   is simply that it is structured -- that there was more

11   time allowed originally, and that it has the traditional

12   two-part structure that sets forth both a statute of

13   limitations and a statute of repose, and the five-year bar

14   is the statute of repose, and that originally there was

15   more time allowed and a decision had been made to shorten

16   the time.  That's my memory of the legislative history.

17   I'm not sure if there was something more Your Honor had in

18   mind.

19            THE COURT:  Well, I'm just looking for

20   congressional intent in connection with this issue.

21   Obviously, courts are split.  They have been split.

22   You're making the point that the more recent decisions go

23   your way, but I was just wondering, I don't think either

24   side really briefed the legislative history in a way that

25   might shed some light on congressional intent.

1          MR. FRANK:  I think that's fair, Your Honor.  I

2     don't think we briefed it.  I think that typically -- I

3     mean, I think that if you look at, for example, the case

4     law, we've seen the legislative history discussed with

5     more detail on the Section 13 for the Section 11 claims.

6     But in the end, I think that what matters with respect to

7     legislative history is simply whether or not what was

8     intended was a statute of repose, and I believe under

9     *Lampf* and other cases it's firmly decided that the five-

10    year bar is a statute of repose.  And once you have a

11    statute of repose, once you've determined that the intent

12    of the legislature was to create a statute of repose -- I

13    don't believe there's any question about that here, and

14    there's no dispute among the parties on that issue -- once

15    you have a statute of repose, the purpose of it is for it

16    to be a hard deadline that gives peace to defendants.  And

17    when you have that hard deadline, equitable tolling

18    doesn't apply.

19          And one of the interesting things about this,

20    Your Honor, is that in the *American Pipe*, for example, the

21    case that established that equitable tolling could apply

22    to the statute of limitations, in that case what's

23    interesting is that it didn't actually use the expression

24    "equitable tolling."  It was only later that the Court,

25    and in particular Justice Kennedy, looked at what had been

1    done in that case and said what we're really talking about

2    here is equitable tolling.

3         And so it doesn't matter what label you use.  If

4    what you're trying to do is to impose equitable

5    considerations, for example, a continuing violations

6    doctrine, wouldn't it be fair to do this or that, it

7    doesn't work with the statute of repose.

8         THE COURT:  All right.  So let me just press you

9    a little bit.  Equitable tolling is a little different, in

10   my mind, than continuing course of conduct.  A continuing

11   course of conduct, if the last act is within I'll just say

12   the statute of limitations, allows the entire scheme to be

13   considered as timely.  Equitable tolling I think is a

14   little bit different, where, for whatever equitable

15   reason, you don't start the clock quite as quickly as you

16   might have.

17        Does that distinction make any sense to you;

18   and, if so, why isn't this violation a continuing

19   violation that really continues into the period of the

20   statute of repose?

21        MR. FRANK:  I think -- Your Honor, the only

22   reason why that doesn't make sense to me is because the --

23   it has to do with your interpretation of the term

24   "violation" and your answer to the following question:

25   Whether or not plaintiff would have a claim based on the

1    first alleged misrepresentation.  Was that a violation of

2    the securities laws?  And if that's a violation of the

3    securities laws, defendants are entitled to peace under

4    the statute of repose.  So to call a continuing course of

5    conduct one violation completely subverts not just the

6    text that calls for a violation, and I think plaintiffs if

7    they only had one violation would still say that that was

8    actionable, but it subverts the very purpose of the

9    statute of repose, which is designed to result in peace.

10            And this interpretation of violation, that is,

11   it could be a continuing course of conduct and that's one

12   violation, would create an exception to the statute of

13   repose that would essentially swallow the rule.  You would

14   have claims that would routinely go beyond the five years

15   because plaintiffs would simply say this misrepresentation

16   was part of a larger series of misrepresentations, and the

17   five years would not be a hard five-year bar.  Corporate

18   actors wouldn't have peace under the statute.  Instead,

19   they would have uncertainty.  And that's precisely what

20   the statute is designed to prevent.

21            THE COURT:  All right.  Thank you.

22            MR. FRANK:  Thank you.

23            THE COURT:  Who is going to speak for the

24   plaintiff?

25            MS. GILDEN:  Good morning, Your Honor.  Carol

1   Gilden from Cohen Milstein.  May it please the Court.

2             I will be speaking on behalf of the nine cases

3   at issue in defendants' partial motion to dismiss, and to

4   facilitate the discussion and argument, Your Honor, I have

5   prepared a Powerpoint that, with Your Honor's permission,

6   I think would be helpful in walking through our argument

7   today.

8             THE COURT:  Sure.

9             MS. GILDEN:  And I will be addressing what

10  constitutes a violation for purposes of the Exchange Act,

11  statute of repose, what's at issue in this case, and some

12  very specific facts that certainly come into play.

13            But so, first, as sort of a high-level matter,

14  let me just begin by saying the Court should deny

15  defendants' partial motion to dismiss.

16            Number one, all of the plaintiffs' claims are

17  timely because all of the complaints were filed either a

18  few months before or less than a year after Teva's fraud

19  ended.  And in this regard, Supreme Court and Circuit

20  Court precedent holds, notwithstanding what my colleague

21  would submit, that the statute of repose is measured from

22  the defendants' last culpable act or omission.  And in

23  this regard, application of these cases really is rather

24  straightforward here, and defendants' cries of equitable

25  tolling, whether they call it continuing violation or

1  other things, really are a red herring for purposes of

2  addressing this motion.

3         Taking a step back, and we were talking and

4  defense counsel was talking about the purpose of the

5  statute of repose, as defendants have interpreted, their

6  rule, if you will, would effectively immunize defendants

7  for a multi-year fraudulent scheme.  Applying their

8  interpretation would, in effect, impose a five-year cap on

9  liability for securities fraud, limiting relief for

10  victims of long-running securities frauds for no other

11  reason than, as here, the defendant was successful at

12  defrauding investors for longer than five years.

13         At most, if you will, dismissal at this stage is

14  premature; and as a practical matter, at this stage

15  denying the motion would not prejudice defendants.  Even

16  if the Court were to grant all of the relief that

17  defendants asked for, as a practical matter, Your Honor,

18  none of plaintiffs' claims or complaints would be

19  dismissed in their entirety.  Given that every single

20  claim will survive, there's no reason to prematurely bar

21  parts of the claims before discovery has even begun,

22  particularly in what is still an unsettled and developing

23  area of the law.

24         THE COURT:  Well, on that point, the unsettled

25  point, what is the most recent decision that you can cite

1    in support of the theory that the entire violation can be

2    considered or heard if any part of the violation continued

3    into the five-year period?

4              MS. GILDEN:  Sure, sure.  And there are

5    actually, contrary to what defendants have claimed, there

6    have been cases after, you know, after *ANC* came out, and

7    if you bear with me a moment, I will turn to that case.  I

8    do have it contained in my Powerpoint.  I just have to get

9    to that point.

10             Okay.  So, for example, one of the cases I think

11   that recently came out that shows that there is

12   uncertainty here is the *McCullough v. Advest* case, which

13   was out of the Western District of Pennsylvania, and it

14   noted that in part -- and what it does is it does reflect

15   the fact that you have this divergence of views on what is

16   a violation and what the defendants' conduct turns on.

17             There also are some other cases, the *Benzemann*

18   *v. Houslanger* case, which notes that -- 924 F.3d 73 at

19   page 82 -- which talks as well about the fact that the

20   defendant's conduct does not involve equitable tolling,

21   and that the fraud, you have to look at the period from

22   when the fraud ends, that that's part of a consideration

23   when one is looking at, in effect, what is a violation for

24   purposes of the statute of repose.

25             THE COURT:  On that point, the concept of the

1   statute of repose running from the last alleged

2   misrepresentation makes sense to me in the context of no

3   case will be timely if the last alleged misrepresentation

4   was more than five years before the case was brought.   In

5   that case, in that event, there is nothing that can be

6   heard by the Court because the statute of repose obviously

7   bars the case.

8            What we have here is some misrepresentations

9   made before and some made after the statute of repose, and

10  so I think it's been held recently by a number of courts

11  that in those situations, although misrepresentations made

12  prior to the statute of repose may be admissible for

13  various purposes, that liability is limited and damages

14  are limited to the period of five years from the

15  complaint.

16            Do you want to comment on that?

17            MS. GILDEN:  Sure, Your Honor.  I think one has

18  to look at, in effect, the purpose of the statute of

19  repose and the concept of giving defendants total peace.

20  The statute of repose was enacted really so that after a

21  certain number of years defendants would know they didn't

22  have to worry about being held liable for conduct.  That's

23  a very different situation than what you have here where

24  you have this ongoing conduct; you have these repeated, if

25  you will, and continuing series of interrelated

1    misstatements and omissions, which were here designed to

2    conceal and further Teva's unlawful price-fixing scheme.

3    And so to in some way give defendants a pass and reward

4    them for, if you will, continuing that scheme, concealing

5    that scheme, really runs contrary to the purpose

6    underlying the statute of repose because they do face

7    liability.  It's not as if they're going to walk away and

8    they know they have peace.  They don't, because they do

9    have liability for the conduct.

10           So, I mean, I think, you know, here, and what's

11   also critical is there are several Supreme Court cases

12   where, in discussing the statute of repose, each and every

13   time the Court uses the phrase "the last culpable act,"

14   that that is the triggering event.  And we saw this, for

15   example, in the *ANC* case -- *ANZ*, excuse me, *ANZ* case, also

16   in the *CTS* case, and there even is another case where the

17   Supreme Court also used that term in *China Agritech v.*

18   *Resh*, and that's 138 Supreme Court 1800, at page 1804 in

19   Note 1.  And that, by the way, Your Honor, is a 2018 case.

20   And, once again, the Court used the term "last culpable

21   act."  And I don't think you can just say that the Supreme

22   Court uses these terms and throws them about in dicta.

23   The Supreme Court is, of course, the supreme court of the

24   land and chooses its words very, very carefully.

25           So what we see is we see consistently, when the

1  Supreme Court has spoken about what constitutes the

2  triggering event for purposes of the statute of repose,

3  each and every time in *ANZ,* in *CTS* and, as I just

4  mentioned today also more recently in *China Agritech,* the

5  Supreme Court uses the phrase "last culpable act".  And

6  that makes sense, if you will, if you think about the

7  purpose of the statute of repose.

8             THE COURT:  Right.  In those cases remind me

9  whether the last culpable act was more than five years

10  before suit was brought.  In other words, was it a

11  situation like the current case where there were

12  potentially illegal statements made before and after the

13  five-year period, or was the last culpable act prior to

14  the five-year bar?

15             MS. GILDEN:  Sure.  And so in the *ANZ* case, Your

16  Honor, that was a Section 13 -- excuse me, Section 11 case

17  with Section 13 statute of limitations, statute of repose

18  provision, and so that case was necessarily different than

19  the case at hand, which involves the Exchange Act.  So

20  there you had an offering document, and so the Court --

21  you know, looking at the last culpable act, I would

22  submit, respectfully, is very much dependent on the nature

23  of the case.  So what might constitute the last culpable

24  act in one context would be different than in another.

25             So in *ANZ,* for example, the last culpable act

1    had to do with an initial public offering, and so the

2    Court there looked at the facts from that context.

3          Let's see.  In the *CTS* case, that was a very

4    different type of case.  Nonetheless, the language again

5    focused on what that particular conduct was.  So it is

6    very much contingent on the conduct at issue.

7          I don't believe any of those cases focused

8    exactly on the same type of fact pattern, Your Honor, that

9    we have here, but I would submit that the analysis, the

10   analysis still holds and supports the interpretation that

11   we are submitting here.

12          THE COURT:  Okay.  Thank you.

13          MS. GILDEN:  So I think just for a minute to go

14   back, perhaps, to -- you know, back to our chart, which is

15   on Slide 2, again, I think this is for purposes of just

16   demonstration, this is in our papers, but sometimes

17   looking at things sort of as a picture is very helpful.

18          So one can see the actions listed, the date that

19   the initial complaints were filed, the relevant period

20   covered, as well as the last alleged misstatements, which

21   vary a little bit between the complaints, and then the

22   statements that defendants are seeking to, if you will,

23   strike -- and strike for all purposes, mind you -- as well

24   as to limit really claims and damages that plaintiffs have

25   here.  And so that's the purpose, you know, of this.  And

1    as I mentioned, what they're seeking to do is to dismiss

2    the misrepresentations and omissions made at the very

3    beginning of the fraudulent scheme.

4         And I would submit that really there is no basis

5    in the law for dismissing the portion of the statements

6    which form part of the series over five years of

7    interrelated fraudulent statements to investors.

8         I think turning to, and it's always helpful to

9    go back to the actual text in the statute, so 10(b),

10   Section 10(b), Rule 10(b)(5) claims are governed under 28

11   U.S.C. Section 1658, subparagraph b, subparagraph 2.

12   They're governed by a two-year statute of limitations and

13   a five-year statute of repose.  And the language provides

14   that for purposes of the statute of limitations, it's two

15   years after discovery of the facts constituting the

16   violation, or five years after the violation.

17        And while both of these limit the duration of

18   liability, this goes to my point earlier, that each

19   provision has a distinct purpose and is targeted at a

20   different actor, and that was a point that the Supreme

21   Court made very, very clear in the *CTS* case, which *ANZ*

22   also cites quite heavily.

23        And just to sort of drill down on this and do

24   the contrast between the purposes of the statute of

25   limitations and the statute of repose, in the *ANZ* case the

1    Supreme Court said that a statute of limitations is
2    designed to encourage plaintiffs to pursue diligent
3    prosecution of known claims, and thus begins to run when
4    the cause of action accrues.  That's when the plaintiff
5    can first file suit and obtain relief.
6            However, a statute of repose is enacted, as we
7    know, to give more explicit and certain protection to
8    defendants, and thus -- and this is what *ANZ* quotes --
9    thus begins to run from the date of the last culpable act
10   or omission of the defendant.
11           It didn't say the first; it didn't say some; it
12   said last.  And, again, as I mentioned, this is a phrase
13   that has been repeated by the Supreme Court in the *CTS*
14   case and even more recently in the *China Agriculture* --
15           THE COURT:  Doesn't the existence in the statute
16   of the five-year statute of repose undercut your argument
17   a little bit?  In other words, it's two years after
18   discovery, so the statute, Congress through the statute is
19   acknowledging, you know, there may be circumstances where
20   because people are concealing what's going on, or
21   whatever, that it could be brought more than two years
22   after the event or the misrepresentation, so that would be
23   two years after discovery, but with a five-year hard
24   limit.
25           In other words, if you discover that you've been

1  defrauded six years after the fraud occurred, can you

2  bring a cause of action?

3            MS. GILDEN:  If the last culpable act occurs

4  more than five years, then I would submit the answer is

5  no.  The phrase is the last culpable act.  So in that

6  situation plaintiff might have equitable tolling for

7  purposes of the discovery rule for the first prong of the

8  statute of limitations, but with respect to the statute of

9  repose which looks at the last culpable act, in a

10  situation where the last culpable act ended in your

11  example, Your Honor, six years earlier, then in that

12  scenario and under that set of facts I would agree that

13  there would not be a timely claim.

14            THE COURT:  All right.  And so when you have

15  misrepresentations made both within five years and beyond

16  five years, the misrepresentations made within five years

17  give rise to liability, correct?  In other words, if the

18  statute of repose splits what otherwise would be a

19  continuing claim into pre and post five years, the post

20  five years can still be pursued.

21            MS. GILDEN:  So to Your Honor's point, I think I

22  understand this.  If you have misrepresentations and if

23  you say pre five years, post five years, if it's part of

24  the same interrelated scheme and you have the same

25  fraudulent statements being made, then, again, I look at

1    it from the standpoint of the last -- again, I look at the

2    last culpable act, the last misrepresentations, the last

3    omissions, the last statements that form either a

4    misleading statement, a false statement, a completely

5    omitted statement, then that, if you will, allows you to

6    bring the claim and to cover the whole period.

7         THE COURT:  But if that's the case -- so the

8    last act -- let's say there's only one misrepresentation

9    made within five years.  That gives rise to an independent

10   cause of action.  We would all agree that if there's a

11   statute of repose that bars the earlier

12   misrepresentations, nonetheless, that last act can be --

13   is not barred by the statute of repose.  It can give rise

14   to liability, right?

15        MS. GILDEN:  So if I were to agree with the

16   premise, Your Honor, respectfully, in terms of the timing,

17   that the statement that occurred during that five-year

18   period, that would give rise to liability, yes.

19        THE COURT:  Okay.  So if that's the only one of

20   a continuing course of conduct of fraudulent

21   misrepresentations, aren't you really trying to import a

22   continuing course of conduct theory or doctrine into the

23   statute of repose where it's not clear that it should

24   apply?

25        MS. GILDEN:  Well, Your Honor, I don't think

1   we're necessarily trying to import that doctrine.  I think

2   the continuing wrong doctrine has been analyzed more in

3   the context of a statute of limitations.  I understand

4   Your Honor's point, but I think where you have it -- if

5   you look at what a 10(b)(5) claim is, it allows scheme

6   liability, it involves a misrepresentation, omission, a

7   fraudulent scheme.  You know, it's part of -- it's part of

8   the same conduct, if you will.  So that's, I mean, that's

9   how -- that's how I view it and I think how we view it.

10  It's not so much the continuing, you know, the continuing

11  violation doctrine, which I think is looked at more in the

12  context of the statute of limitations; it's, you know,

13  part of this interrelated fraudulent conduct that consists

14  of these interrelated misrepresentations and omissions

15  that are taking place over a period of time.  And so --

16          THE COURT:  Yes.  So your point about scheme

17  liability is an interesting one, but if your view prevails

18  with respect to the statute of repose, isn't a jury going

19  to have to parse out whether this was one or two or thirty

20  different schemes?  Aren't we going to get into, well,

21  there were different actors here, so it wasn't really a

22  continuation of that old scheme.  That old scheme, that

23  was the 1995 scheme.  They had dropped that and it was

24  modified slightly, so now is that a new scheme or is that

25  a continuation of the scheme?

1           I think we're going to get into a lot of very

2   difficult issues, whereas the purpose of the statute of

3   repose is, isn't it, just to cut it off and say sometimes

4   it will be inequitable, but we're going to cut it off.

5           MS. GILDEN:  Well, to your first point, Your

6   Honor, I think looking at the conduct here, I don't think

7   the fact that you have a number of statements occurring

8   over a certain period of time breaks down into umpteen

9   schemes.  I think it's part and parcel.  It fits together

10  really one scheme that consists of a series of, you know,

11  look, the company is saying we are very profitable; we've

12  got these great business practices; no, no, no, we're not

13  doing price-fixing; when the cause of how great the

14  company is doing is -- and I'm simplifying this sort of

15  from a top level -- has to do with it's engaged in

16  price-fixing.

17          That's not that complex.  You have different

18  statements, and you have the 10(k)s and other statements

19  along the way that all fit into that sort of, you know,

20  fit into that rubric.

21          So I don't think that that necessarily makes

22  it -- would make it difficult for a jury to parse out.  I

23  mean, I can envision how -- I can envision how we would

24  present it and show that really, instead of -- when you

25  reduce it to its basic elements, it's really not that

1    complex.

2              THE COURT:  Well, I'm just mindful of the law in

3    the criminal context, law of conspiracy where it's a very

4    frequent defense:  "Oh, well, this was a different

5    conspiracy than" --

6              MS. GILDEN:  Sure.

7              THE COURT:  -- "the one charged" --

8              MS. GILDEN:  Sure.

9              THE COURT:  -- "and there were actually several

10   conspiracies, they only charged one, so we're innocent."

11   I mean, it's going to be the same problem here, I think,

12   but interesting point.

13             All right, I didn't mean to interrupt.  Go

14   ahead.

15             MS. GILDEN:  So to pick up with the last

16   culpable act and defendants' argument, so they're arguing

17   that measuring -- and Your Honor asked a little bit about

18   this -- measuring the repose period is really a leftover

19   relic of statutory language from an earlier case, and they

20   said this in their reply brief.  You know, as I mentioned,

21   in part the Supreme Court has said repeatedly how you

22   measure and what you look at in terms of a statute of

23   repose.  And so I talked about *ANZ*.

24             There also is the *Dekalb County Pension Fund*

25   case where the Second Circuit said, quote:  Like all

1   statutes of repose, the statute of repose applicable to

2   securities fraud actions begins to run on the date of the

3   defendants' last culpable act or omission.

4          In a more recent case -- and this is the case I

5   was trying to think of when Your Honor asked me about this

6   earlier -- the *Pasternack v. Shrader* case, and that's 863

7   F.3d 162 at 175, and that's a 2017 case, the Second

8   Circuit said the time limit for a statute of limitations

9   is measured from the time the plaintiff discovers or

10  should have discovered the injury -- again, contrasting on

11  the one hand the statute of limitations with the statute

12  of repose -- and the Second Circuit went on to say:

13  Whereas the time limit for a claim subject to a statute of

14  repose is measured from the last culpable act of the

15  defendant, meaning that the plaintiffs' discovery of the

16  injury is irrelevant for a statute of repose.

17         And I think -- and this is very important --

18  again, it's the same analytical framework focusing on the

19  last culpable act of the defendant.  And in this regard I

20  will also add that the Second Circuit -- and this is a

21  2013 case -- but the Second Circuit and elsewhere has

22  held, other courts have held that a Section 10(b) claim is

23  deemed to have occurred on the date on which the last

24  alleged misrepresentation or omission was made.  So I just

25  wanted to add that other case notwithstanding the time

1    period.

2              I think sort of turning next to the concept, and

3    Your Honor asked a little bit about the legislative

4    history, and that's something certainly the parties could

5    provide Your Honor additional materials on, but if you --

6    one of the things that the defendants have said is that

7    Section 1658, paragraph (b)(2), speaks in terms of a

8    violation, and they've argued that the statute of repose

9    runs from the date of each alleged misrepresentation.  And

10   I think what I would say in this regard is although

11   Congress did not define the term "violation," when

12   Congress lengthened the repose period from three years to

13   five years with the passage of the Sarbanes-Oxley Act of

14   2002, Congress did explain that the statute of repose

15   barred actions that were brought five years, and it used

16   the phrase, "after the date of the fraud."  And that's in

17   the Senate Report Number 107, at pages 107 to -- Volume

18   107 to 146 at page 17, and that was in 2002.

19             The other thing I would just mention is that, in

20   this regard, at the time that the statute was first

21   enacted, even while acknowledging the inapplicability of

22   equitable tolling, courts had no trouble at that time

23   holding that the repose period ran from the most recent

24   violation -- and this is a quote -- from the most recent

25   violation of Section 10(b) of which the plaintiff

1     complains.

2              And that quote is from a case that was ruled on

3     in 1991, and that is *Borden v. Spoor Behrins Campbell &*

4     *Young,* at 778 F.Supp. 695 at page 699, and it's a Southern

5     District of New York case.

6              Turning, if you will, to defendants' argument

7     about equitable tolling, it really is a red herring when

8     you look at it and when you sort of drill down on this.

9     And they've said, Look, you know, in light of your cases

10    and the holdings of *ANZ* and *IndyMac,* the statute of repose

11    is not subject to equitable tolling.

12             Well, we're not saying it's subject to equitable

13    tolling, and it's been very clear for decades that a

14    statute of repose is inconsistent with tolling.  This was

15    something the Supreme Court said in the *Lampf* case in

16    1991.

17             The Supreme Court explained again in the *ANZ*

18    case where the Court said, quote, that it repeatedly has

19    stated in broad terms that statutes of repose are not

20    subject to equitable tolling.  And that quote is from the

21    *ANZ* case, 137 Supreme Court Reporter at 2051.  And I would

22    just add in this regard that the *ANZ* case did not alter

23    the course of the law, with courts continuing to hold that

24    the weight of authority on this issue is that the statute

25    of repose begins to run on the date of the last alleged

1    misrepresentation.

2          And this can be found, and this is a different

3    case, just another example to Your Honor's point, in

4    *McCullough v. Advest* case, and that's 2017 Westlaw 3675787

5    at 3, and that was a Western District of Pennsylvania case

6    that was issued on August 25, 2017.   It's, if you will,

7    just another example of a more recent, somewhat recent

8    example.

9          And this goes back to also the *Benzemann* case

10   which I mentioned earlier where, again, measuring the

11   repose period from the date the fraud ended turns on the

12   defendants' conduct and does not implicate equitable

13   tolling, which is a doctrine that concerns the plaintiffs'

14   diligence in pursuing their rights.

15         Again, equitable tolling arises in the context

16   of the statute of limitations, which is not at issue here.

17   Defendants have not moved to dismiss on the statute of

18   limitations.

19         And so turning now and just drilling down a

20   little bit on defendants' charge that our arguments are a

21   continuing violations theory, as a practical matter

22   defendants really don't explain why this doctrine, which

23   is a doctrine that, again, arises in the context of

24   statutes of limitation and governing the accrual, they

25   don't explain why this is not a tolling doctrine or why it

1      has relevance to the statute of repose, which runs from

2      the defendants' last culpable act, not from the accrual of

3      the claim.

4           THE COURT:  Well, if the claims here are based

5      upon a series of misrepresentations and arguably

6      omissions, don't you have a series of violations, some of

7      which would be barred by the statute of repose but for

8      your argument that it's a continuing violation and/or a

9      scheme that ties all of them together?

10          MS. GILDEN:  So, you know, is it -- is it a

11     continuing violation?  I think a continuing violation

12     would be, in my view, perhaps a statement that is made

13     once and not corrected, is still out there.  And here you

14     have statements, part of a scheme, part of this

15     overarching fraud that are being repeatedly made and made

16     in different forms, and concealment of the truth in

17     connection with those statements.  So while it may sound

18     similar, in sort of our view of the last culpable act it's

19     viewed -- it's viewed differently.  We're not viewing it

20     from the standpoint of a continuing violation for purposes

21     of tolling the discovery rule.

22          And so just to try to move quickly through

23     defendants' cases, which I think can be distinguished,

24     there's a *Sjunde Fonden v. General Electric* case which

25     held really only that an earlier filed motion to intervene

1     did not render timely otherwise time-barred claims, and it

2     didn't even mention the continuing violations doctrine or

3     equitable tolling.

4                 In the *Longtop* case, that held that newly added

5     claims based on an audit opinion were barred by the

6     statute of repose because they didn't relate back to the

7     earlier complaint.  Again, the Court didn't discuss the

8     continuing violations doctrine or equitable tolling.

9                 In *BP Securities*, there the Court held that the

10    statute of repose applied to the plaintiffs' Exchange Act

11    claims, and then basically directed the parties to confer

12    and stipulate as to which claims would be dismissed, again

13    without mentioning the continuing violations doctrine or

14    equitable tolling.

15                And then there is the *Kuwait* case, and, you

16    know, we go into these cases in a little more detail in

17    the brief, but there, from sort of a top-down view, that

18    asserted that the continuing violations doctrine has been

19    recognized by courts as an equitable tolling doctrine, but

20    neither of the two cases the *Kuwait* case relied on

21    supported that assertion.

22                So turning, I think, to again looking at what

23    defendants' rule would do, and I think that's important

24    because the statute of repose does take into account

25    certain policies, as the defendants interpret it, it would

1    effectively immunize multi-year fraudulent schemes and

2    reward defendants for continuing the schemes longer than

3    five years by imposing a five-year cap on liability for

4    securities fraud.

5            And so far really from providing or promoting

6    the purpose of the statute of repose to provide a fresh

7    start, what defendants' rule essentially boils down to is

8    imposing a cap on liability and immunizes them for

9    prolonging the scheme for longer than five years by

10   cutting off part of the scheme.  And it really -- it

11   doesn't serve the purpose of the statute of repose to

12   grant immunity to defendants, and this is something that

13   was said in the *Teamsters Local 445 Freight Divisions*

14   *Pension Fund v. Bombardier* case, where the Court said:  It

15   does not serve the purpose of a statute of repose to grant

16   immunity to these defendants, who continued their wrongful

17   conduct beyond the statute specified by the repose period.

18           And that's what defendants are trying to do now.

19           Another court, and this was a Second Circuit

20   court decision, the *P. Stolz Family Partnership v. Daum*,

21   D-a-u-m, 355 F.2d -- 3d 92 at 107, 2004, where the Second

22   Circuit said, quote:  Giving repose to a defendant who has

23   ceased to do wrong may well be worthwhile even if it's

24   unfair to a plaintiff whose cause of action has not yet

25   accrued.  But it is a very different thing altogether --

1      and this really applies here -- to give repose to a

2      defendant who continued his wrongful conduct, perhaps even

3      beyond the time specified by the repose period.

4              I'm just turning a little bit to some

5      legislative history.  This was some testimony by Arthur

6      Levitt, who's a former chair of the SEC, when he said:

7      Congress would not have intended this result, particularly

8      in light of Congress's decision in 2002 to lengthen the

9      repose period from three to five years, which was found to

10     be warranted because many securities frauds are inherently

11     complex, and the law should not reward the perpetrator of

12     a fraud who successfully conceals its existence for more

13     than three years.

14             Now, that was in the context of extending the

15     statute of limitations and the repose period.  But I think

16     Chairman Levitt's comments really hold true here and sort

17     of reflect the underlying thinking involved in looking at

18     this from a policy standpoint.

19             And I think just to sort of conclude, really,

20     dismissal at this stage is premature, at a minimum, and as

21     we see it, denying the motion would cause the defendants

22     no prejudice.  Even if the defendants' interpretation of

23     what constitutes a violation was plausible, which we don't

24     think it is, not in the circumstances of this case, not

25     juxtaposed against the Supreme Court's last culpable act

1   language, dismissal on these grounds we think would be

2   premature here.  At most, at most, the timeliness of

3   claims involving a series of misrepresentations and

4   omissions that straddle the repose period, as Your Honor

5   talked about in terms of the timing, it is somewhat

6   unresolved.  There have been courts reaching diametrically

7   opposite conclusions about what triggers the repose

8   period, what triggers it, when is it repose or when is the

9   repose period triggered and what triggers it.  And here,

10  if defendants' motion was granted in its entirety, as a

11  practical matter all the plaintiffs' claims would still

12  survive based on the timely claim, timely put allegations

13  alone.  And plaintiffs, as a practical matter, still

14  should not and would not be precluded, we believe, from

15  using the time-barred misstatements or omissions as

16  evidentiary support for timely claims.  You know,

17  certainly this could go, earlier statements could go to

18  defendants' state of mind, for example, or falsity, or the

19  misleading nature.  And this was a point that the Court in

20  the *Kuwait* case, which defendants heavily rely on, even

21  noted.

22          I think the other thing I would add is in cases

23  where there is uncertainty in the law -- and there is some

24  uncertainty in the law, notwithstanding that we think the

25  law is pretty clear on the last culpable standard, but if

1   arguably there is uncertainty -- courts have sort of

2   declined to resolve these issues at the motion to dismiss

3   stage.  This was something that the Court did in a

4   somewhat recent case, the *SEC v. Fiore*, which was a 2019

5   case out of the Southern District of New York where -- and

6   this was in the context of the statute of limitations --

7   the Court found that it was prudent to defer consideration

8   of the statute until the factual record was more

9   developed.

10          So we would submit we think the law is clear.

11  We think the law supports denying defendants' partial

12  motion to dismiss in its entirety.  But even if this Court

13  were to find some plausibility, we think any uncertainty

14  sort of weighs in favor of deferment.  It certainly weighs

15  in favor of deferment where these allegations are still

16  going to be in play, where certainly the statements --

17  discovery is going to still proceed.  It's going to

18  proceed in the case in chief and the class case.  It's

19  going to proceed certainly in any number of the direct

20  actions that defendants have not moved to dismiss on

21  partial -- on a partial motion to dismiss as to.  So

22  there's no prejudice.

23          And, in any event, these earlier statements, at

24  a minimum, at a minimum, may go to issues of scienter,

25  issues of falsity, and other elements of the claims

1    against the defendants.

2              THE COURT:  All right.  Thank you.

3              MR. FRANK:  Your Honor?

4              THE COURT:  Yes.

5              MR. FRANK:  May I respond briefly?

6              THE COURT:  Briefly.  I'd like to get on to the

7    second issue.

8              MR. FRANK:  I'll be quick.

9              I just wanted to note that the *McCullough v.*

10   *Advest* case that was discussed, that's a case that counsel

11   didn't cite in their brief, but a brief look at it reveals

12   that it really isn't helpful for the plaintiffs.  It

13   doesn't *cite ANZ*.  It came out shortly after *ANZ*.  It does

14   cite a *North Sound v. Merck* case to support the

15   propositions for which it was just cited, and that *North*

16   *Sound* case was reversed by the Third Circuit, and so the

17   case has a nice big red flag on it, Your Honor.  And so

18   from our perspective, that case really doesn't offer any

19   support for the plaintiffs; rather, it cuts the other way.

20             We cite the *North Sound* case in our brief

21   because that case acknowledges that the district court

22   below in 2017 didn't have the benefit of *ANZ Securities*,

23   and once *ANZ Securities* came out, counsel on both sides

24   acknowledged that equitable tolling didn't apply to the

25   statute of repose.

1          The *Benzemann* case that you heard referenced, it

2    doesn't support the proposition for which it's cited.

3    That's a case about equitable tolling for statute of

4    limitations.

5          You know, Your Honor, in the end, this last

6    culpable act argument that's being made, it's completely

7    divorced from the reasoning of the cases.  The fact is

8    that when you look at its origin, *CTS Corp. v. Waldburger*

9    really does simply cite a North Carolina statute.  And one

10   of the things that's interesting about how this language

11   has developed is that the statute essentially says --

12   applies a time bar to the last culpable act giving rise to

13   the violation.  And that piece gets dropped off sometimes

14   in court decisions and in plaintiffs' briefing.  But the

15   fact is that when you understand the last culpable act

16   language in that context, it makes sense.  And in a

17   securities case -- these cases that are being cited aren't

18   always securities cases -- but in a securities case, the

19   last culpable act that gives rise to a violation really is

20   the speech of the defendant.  And so the last culpable act

21   for each violation is the statement that's being made.

22          Your Honor --

23          THE COURT:  All right.  But that begs the

24   question whether the entire scheme under a 10(b)(5)

25   liability gets brought in to the statute of repose or

1    whether the scheme gets split at the statute of repose

2    date.

3            MR. FRANK:  Your Honor, because of that precise

4    point, it doesn't answer the question.  You see,

5    plaintiffs are saying --

6            THE COURT:  You're breaking up.  You're breaking

7    up just a little bit.  I don't know if you have a speaker

8    or --

9            MR. FRANK:  Sorry.  I'll try to speak closer to

10   the microphone.

11           THE COURT:  Okay.

12           MR. FRANK:  The last culpable act language, Your

13   Honor, it doesn't answer the question.  The plaintiffs

14   want to interpret it as if the last culpable act language

15   means the last misrepresentation in a series of

16   misrepresentations.  The point I'm making is the original

17   North Carolina statute doesn't say that, and you can read

18   that language either way.  The last culpable act could be

19   the statement that gives rise to the violation, or, you

20   know, plaintiffs choose to read it another way.  But it

21   doesn't answer the question.

22           What answers the question, Your Honor, is *ANZ*

23   and its progeny.  What answers the question are the cases

24   that consistently hold that statutes of repose are hard

25   deadlines, they give peace to defendants, they cut off

1   liability at five years, it's a legislative determination,

2   and it's not subject to judicial adjustment under any sort

3   of equitable tolling notion.

4           Thank you, Your Honor.

5           THE COURT:  All right, thanks.  Let's turn to

6   the Israeli law question.

7           MR. FRANK:  Your Honor, with respect to the

8   Israeli law issue, the question before this Court is

9   simply whether it should decline to exercise supplemental

10  jurisdiction over plaintiffs' law claims, which it has the

11  discretion to do, or, alternatively, to dismiss those

12  claims on forum non conveniens grounds.

13          The Court in *Mylan* addressed this exact issue.

14  Like this case, there the plaintiffs alleged securities

15  fraud based upon, among other things... (audio drop).

16          THE COURT:  You're breaking up again.

17          THE REPORTER:  Based upon, among other things?

18          MR. FRANK:  Among other things, antitrust

19  allegations.  There, like here, there were two pending

20  class actions.  The Court exercised its discretion and

21  declined to exercise... (audio drop).

22          THE REPORTER:  Declined to exercise?

23          MR. FRANK:  Jurisdiction.

24          My apologies.  I don't know why it's not --

25          THE COURT:  Do you have a set of headphones that

1    you might -- that have a speaker that you could plug in?

2          MR. FRANK:  I don't, Your Honor, but I do

3    promise to be brief --

4          THE COURT:  Okay.

5          MR. FRANK:  -- if that helps.

6          THE COURT:  All right.

7          MR. FRANK:  The Court alternatively observed

8    that it would have dismissed those claims on forum non

9    conveniens grounds.  Plaintiffs try to distinguish *Mylan*,

10   but *Mylan* itself has answers for plaintiffs.  Plaintiffs

11   argue that the case in *Mylan* was decided before the

12   Supreme Court in Israel issued a decision in *Verifone*, but

13   *Mylan* already considered the possibility that Israel

14   chose, as a matter of Israeli law, to apply U.S.

15   securities law; but, nevertheless, the *Mylan* Court

16   concluded that it should decline jurisdiction.

17         Plaintiffs also argue that the two Israel cases

18   in *Mylan* were not stayed.  Again, *Mylan* has the answer.

19   In footnote 15 of that decision, the last footnote in the

20   case, the Court noted that even if the Israeli court

21   stayed those cases, the factors still favored declining to

22   exercise supplemental jurisdiction.

23         Plaintiffs are left to argue that *Mylan* just got

24   it wrong, and they submit a massive declaration from an

25   Israeli law professor, spanning 40 pages, essentially the

1    same length of their brief, and over a hundred paragraphs

2    with multiple exhibits.  The submission of a 40-page

3    Israeli law professor's opinion hardly helps to show that

4    all Israeli issues that may arise are open and shut and

5    already resolved.

6         In the end, this Court needs to make a decision

7    about comity in this unusual situation, where these same

8    claims are pending in Israel, awaiting this Court's

9    decision on the U.S. securities claims.

10        It makes sense, Your Honor, for American courts

11   to render judgments as to what American law requires; and

12   if Israeli courts want to follow suit as a matter of

13   Israeli law, they can do that.  But particularly where, as

14   here, there are pending class actions in Israel, why

15   should U.S. courts also decide what Israeli law requires

16   before those Israeli courts rule, and particularly when

17   they are poised to do so as they are here.

18        Alternatively, Your Honor, this Court should --

19        THE COURT:  Well, let me ask you, what issues of

20   Israeli law do you foresee are going to have to be decided

21   by me if I keep the Israeli law claims?

22        MR. FRANK:  Your Honor, we will be arguing that

23   there is no daylight between Israeli law and U.S. law.

24   But despite the fact that that is what we expect to occur,

25   we can't anticipate every issue that will arise.  And we

1    can't anticipate every issue that may arise with respect

2    to the application of any judgment in Israel and, in

3    particular, whether or not any plaintiffs will be taking

4    positions that will -- that could create any risk of

5    double recoveries.  And while the plaintiffs here give

6    that issue the back of their hand, these cases -- those

7    are risks that the defendants take seriously and wish to

8    take off the table.

9              THE COURT:  I don't understand how there's the

10   possibility of a double recovery.  So if I keep the

11   claims, then losses attributable to the fraud, if proven,

12   that relate to the Israeli trades will be awarded.  When

13   the case goes back to Israel, they'll decide whether to

14   follow what I did, either by way of res judicata or comity

15   or whatever.  And how is it that -- there may be an

16   underrecovery here, but how can there be a double

17   recovery, even if I get the law wrong?

18             MR. FRANK:  The plaintiffs here are members of

19   the class in Israel.  The plaintiffs...(audio drop).

20             THE REPORTER:  You're breaking up again.  I'm

21   sorry.

22             MR. FRANK:  I'm so sorry.

23             The plaintiffs here are members of the... (audio

24   drop).

25             THE COURT:  Mr. Frank, do you have papers

```
 1    covering your -- no?

 2              MR. FRANK:  I don't.

 3              THE COURT:  Okay.  I'm not sure what's

 4    happening.  You're fading out.

 5              MR. FRANK:  I usually don't have any problem,

 6    Your Honor.  I'm sorry.

 7              THE COURT:  That's all right.  Go ahead.

 8              MR. FRANK:  The plaintiffs here are members of

 9    the putative class in Israel.  The plaintiffs' lawyers in

10    Israel will presumably, in either settlement negotiations

11    or in their applications to the Court, be seeking to

12    obtain the largest recovery that they can recover.  And in

13    that way there's overlap with these individual plaintiffs

14    here.

15              THE COURT:  So what you're suggesting is there's

16    going to be a class award in Israel -- I mean

17    hypothetically -- and that the Israeli court will not take

18    into consideration that the individual plaintiffs here

19    obtained a judgment, theoretically?

20              In other words, when it comes to proving damages

21    of a particular class member, isn't there going to be a

22    credit for whatever the plaintiffs, individual plaintiffs

23    here receive?

24              MR. FRANK:  We believe there should, Your Honor,

25    and we believe -- and we believe it would be a gross
```

1    injustice.  But there are risks associated with having

2    people advancing overlapping claims.  It affects how they

3    value their cases right now, and there are risks regarding

4    what the courts do in the future.

5              I agree with you; no Court should ever allow a

6    double recovery in those circumstances.  As you know --

7              THE COURT:  Okay.

8              MR. FRANK:  -- we, of course, don't concede in

9    any way that this is likely to proceed to a judgment; but

10   if it were, there should be no risk of double recovery.

11             THE COURT:  All right.  Two district courts,

12   *Perrigo* and *Costas*, exercised supplemental jurisdiction

13   over Israeli securities laws claims.  Was there any

14   problem in either of those cases?

15             MR. FRANK:  I don't believe they advanced to the

16   state where it's played out, Your Honor, but also those

17   cases exercised supplemental jurisdiction without

18   reasoning, as I recall.  The only case that --

19             THE COURT:  Well, okay.  I'm going to exercise

20   some reasoning; but I just want to figure out, have the

21   practical problems that you're worried about actually

22   arisen?

23             MR. FRANK:  I'm not aware of that one way or the

24   other, Your Honor.

25             THE COURT:  Okay.  All right.

1          All right, that was my question for you.  I

2    don't know if you had anything further or we should hear

3    from the other side.

4          MR. FRANK:  Yes, Your Honor.

5          Alternatively, it's our view that this Court

6    should dismiss these claims on forum non conveniens

7    grounds.  There's essentially a three-part test for forum

8    non conveniens.  Here, with respect to the first part,

9    eight of the nine plaintiffs are Israeli citizens, though

10   their choice of forum is afforded little weight.

11         With respect to the second factor, adequacy of

12   the forum, Israel is indeed an adequate forum, and

13   plaintiffs don't argue otherwise.  That's two of the three

14   factors.

15         And with respect to the public and private

16   factors, Your Honor, we believe those favor dismissal too.

17   U.S. courts do not have an interest in adjudicating

18   Israeli securities claims advanced by Israeli citizens

19   with respect to purchases of Israeli securities on an

20   Israeli stock exchange, particularly where, as here, there

21   are pending class actions in Israel.

22         Israel, on the other hand, does have an interest

23   in such actions, and notably the Israeli court did not

24   dismiss the two class actions against Teva brought by

25   purchasers of Israeli securities, but rather stayed them

1    to await developments in this court.

2              In sum, we ask this Court to resolve issues of

3    U.S. law that relate to claims based on the purchase of

4    U.S. securities and to leave to the Israeli courts issues

5    of Israeli law that relate to the purchase of Israeli

6    securities.  This is already going to happen, Your Honor,

7    due to the pending cases in both jurisdictions, and

8    declining to exercise supplemental jurisdiction, or by

9    dismissing on forum non conveniens grounds, this Court

10   will avoid unnecessarily wading into Israeli waters when

11   the Israeli court is already poised to do so.

12             Thank you, Your Honor.

13             THE COURT:  All right.  Thank you.

14             Let me just ask you one question in follow-up.

15   In terms of choice of forum, we have Israeli citizens who

16   have both U.S. and Israeli-based claims.  Isn't their

17   choice of forum to be given some weight when they can have

18   a matter resolved in a single forum rather than having to

19   prosecute multiple litigations in multiple forums?

20             MR. FRANK:  Well, Your Honor, I mean Israeli law

21   claims and the U.S. securities laws claims are already

22   proceeding in multiple forums.  By allowing them to pursue

23   both sets of claims here, you essentially create a third

24   front for the defendants and the risks we discussed

25   moments ago.

 1          THE COURT:  They're in two forums, technically,

 2   because the cases haven't been dismissed, but they're not

 3   proceeding.  The plaintiffs here are not incurring

 4   expenses in prosecuting the cases in Israel, are they?

 5          MR. FRANK:  I don't believe so, Your Honor.  I

 6   assume not.

 7          THE COURT:  Okay.  All right.

 8          All right, thank you.  Let me hear from the

 9   plaintiffs.

10          MR. BROOKS:  Apologies.  I was on mute.  Luke

11   Brooks, Your Honor, from Robbins Geller Rudman & Dowd.  We

12   represent the plaintiffs in the Harel and Phoenix actions,

13   and I'll be speaking on behalf of the plaintiffs today who

14   are subject to this motion.

15          The Court's last question hit on the point that

16   I wanted to start with, which is the defendants have

17   consistently argued that all interests are obviously well

18   served by avoiding duplicative litigation.  They argued it

19   in their motion to transfer the Phoenix case from

20   Pennsylvania to Connecticut.  They've argued it in seeking

21   to consolidate all of the actions in front of Your Honor.

22   And they've argued it in front of the Israeli court.  And

23   so they've made all these arguments, they've gotten the

24   case positioned where they wanted it, and now they're

25   changing certain of their -- certain of their positions.

1          But I think it's important to focus on the

2   actual statutes, Your Honor.  And 1367, there's no dispute

3   that the Court has supplemental jurisdiction over these

4   claims.  They arise out of the same exact conduct, the

5   same exact facts.  *Perrigo*, as you noted, and *Costas* both

6   exercised supplemental jurisdiction.  We represent

7   plaintiffs in the *Perrigo* action, Your Honor.  The class

8   was certified there as to the Israeli claims as far as the

9   class action goes.  It has not presented any impediment

10  whatsoever to the efficient litigation of that case, which

11  involves a number of opt-out plaintiffs as well as class

12  plaintiffs, like this case does.

13         The issues are illusory because, as the

14  defendants have said before and I think they're saying

15  now, there is no novel issue of Israeli law to be

16  determined.  And, Your Honor, they said that in the motion

17  to dismiss in this court in the class action.  They said

18  it in the motion to transfer the Phoenix case, Israeli law

19  claim simply mirrors the federal securities law claim, and

20  they said it in front of the Israeli court, U.S. law

21  defines and delimits Teva's liability.  Courts in the

22  United States, they told the Israeli court, the courts in

23  the United States are the most natural forum for deciding

24  liability on these issues.  It would make no sense, they

25  argued, for a court in Israel to hear questions of what

1      the provisions of foreign law determine and whether or not

2      Teva complied with them when those very questions are

3      being heard at the same time by courts in the United

4      States.

5           They're picking their arguments depending on

6      where they are and their position of the moment, Your

7      Honor.  They continued:  It's appropriate for the courts

8      in the United States to be the ones that will hear the

9      question of whether Teva breached the reporting duties

10     that are incumbent upon it.

11          And counsel for defendants has argued that we

12     should wait for the Israeli courts to settle this.  As

13     we've pointed out in the briefing, the courts have settled

14     it.  The Supreme Court has spoken on the issue.  There is

15     no dispute over this question of Israeli law.  And in the

16     Teva cases, the cases that are putative class actions

17     there in Israel, the Court held the law that applies to

18     dual companies is the foreign law, and in the present case

19     American law.  That's in Exhibit 3 to Professor Licht's

20     declaration, the *Lightcom* case, at page 17.

21          So there's nothing even to wait for, if that

22     would make sense, for the Israeli courts to say.  They've

23     said it as a general matter, and they've said it

24     specifically in the Teva cases, and, as a result, they've

25     stayed those cases, which are noncertified class actions

 1    that none of the individual action plaintiffs here that

 2    are pursuing the Israeli claims, together with their U.S.

 3    securities law claims, are involved in.

 4         These -- you know, this is a proceeding

 5    that's stayed pending judgment in this case, as we

 6    understand it.  There's some overlap but not complete

 7    overlap with the claims that the individual action

 8    plaintiffs have brought.  And the Court has ruled that the

 9    U.S. court is the one who should decide these issues.

10         So the defendants are then left to argue *Mylan*,

11    but the Court in *Mylan* misunderstood a preliminary sort of

12    lead plaintiff appointment decision in a district court in

13    Israel to be a pronouncement of the Supreme Court that

14    this question of whether Israeli law mirrors U.S. law is

15    unsettled.  And that confusion animates the entire

16    opinion, Your Honor.

17         Under 1361 -- sorry -- 67(c)(1), the novel

18    question of law is, are we going to apply Israeli law in

19    the U.S. court.  And the Court in *Mylan* understood that

20    the Supreme Court in Israel had held that that was an open

21    question and didn't want to rule on that first.  It's not.

22    And the Supreme Court made that very clear after the *Mylan*

23    decision came down, and the Court in the Teva cases has

24    made that clear with respect to the litigation pending

25    against Teva that's stayed in Israel.

1          We're also not a class action.  We're an

2    individual action, or a series of individual actions, and

3    we've, as the Court recognizes, brought claims under U.S.

4    law for purchases made on U.S. exchanges and claims for

5    Israeli law, and it makes sense to bring those together

6    from a practical perspective.  There's no good reason to

7    split those apart.  None of the interests that would be

8    served by any of the statutes that the defendants are

9    relying on favor splitting up this litigation where the

10   case is going to continue along the exact same path, with

11   the exact same discovery, the exact same arguments going

12   forward I suppose at summary judgment, the exact same jury

13   instructions at trial, Your Honor.  They've conceded that

14   U.S. law applies.

15         So there's nothing in (c)(1) that creates a

16   novel issue.  And so now they're arguing that 1367(c)(4),

17   that there are some exceptional circumstance here that

18   creates an additional compelling reason for declining

19   jurisdiction.  I don't quite understand what they're

20   pointing to.  I guess what they're saying is that the mere

21   existence of a case that we're not involved in, over

22   potentially similar securities violations, is an

23   exceptional circumstance that compels the Court to decline

24   jurisdiction.  We don't think it rises to that level.

25   And, again, you know, one of those circumstances can be

1   comity concerns, and it's not clear in the *Mylan* decision

2   what the Court was looking at vis-a-vis 1367(c)(4), but

3   the only possibility really is the comity question.  And,

4   again, that sort of flows from the idea that the question

5   as to whether and how Israeli law applies to U.S. law is

6   unsettled.  And as we've demonstrated, it's not.

7           Additionally, on the comity question, Your

8   Honor, Israel's security authority has stated expressly

9   that comity is not an issue here.  The reason that there's

10  a declaration from Professor Licht is to explain the

11  statutory regime where we end up applying U.S. law under

12  Israeli law.  And it's a reasoned regime that Israel has

13  determined is in the country's best interests, in the TASE

14  exchange's best interest to attract investors or to

15  attract companies to list on the TASE, to increase

16  liquidity in their system.  And they've written opinions

17  that say comity concerns actually militate and demand the

18  application of U.S. law.  They've expressly said we want

19  these cases to be heard in the U.S. court.

20          Now, defendants have presented nothing, nothing

21  to the contrary here.  So the comity concern, it's

22  possible, Your Honor, that if there was an unsettled

23  question of Israeli law, we would be in a different

24  position, but there's not.  There is no unsettled question

25  of Israeli law.  The ISA has spoken.  The comity

1    considerations, they say, are in fact exactly reversed

2    when considered in the context of dual-listed securities.

3    The dual listing, the ISA wrote, is intended to bring

4    together all legal proceedings in a single place under a

5    single law.

6              That's what we've done here, Your Honor.  All of

7    these individual action plaintiffs have brought their

8    legal proceeding in a single place, applying the same

9    statutory or legal framework, which is the U.S. securities

10   laws.  So comity considerations militate for adjudicating

11   the dispute.

12             And defendants, they haven't really -- they

13   haven't really commented on that.  But even if -- even if

14   somehow the -- something under 1367(c) suggested or they

15   met one of those elements, the Gibbs factors, again, they

16   all play in favor of exercising supplemental jurisdiction:

17   economy, convenience, fairness and comity.

18             We just talked about comity.  Economy,

19   convenience and fairness are obvious.  The defendants are

20   litigating here no matter what.  These individual opt-out

21   plaintiffs are litigating here no matter what.  It's only

22   fair, it's only economical, it's only convenient to do

23   this all together as we've done in our complaints and as

24   we've been doing in this case without incident, without

25   problem, with no disruption for the entire time that this

1    case has been pending.

2           As far as forum non conveniens goes, Your Honor,

3    the Second Circuit has cautioned that courts should be

4    mindful that just as plaintiffs sometimes choose a forum

5    for forum-shopping reasons, defendants also may move for

6    dismissal under the doctrine of forum non conveniens not

7    because of genuine concerns with the convenience but

8    because of forum-shopping reasons.  And there is no

9    genuine concern of convenience here.  They've positioned

10   the Israeli case where they want it.  They've transferred

11   our cases into this court and consolidated them, and now

12   they're reversing on everything that they said before,

13   that it's the most natural forum, that convenience and

14   fairness are the most paramount priorities, etc., to try

15   to get rid of these claims.

16          The Second Circuit on forum non conveniens is

17   also clear:  Plaintiffs shouldn't be deprived of their

18   choice of forum except upon defendants' clear showing that

19   a trial in the U.S. will be so oppressive and vexatious to

20   them as to be out of all proportion to plaintiffs'

21   convenience.

22          And they haven't even -- they've sort of side-

23   stepped that just by making arguments about the residency

24   of the plaintiffs or the location of some of the

25   plaintiffs.  One of them is a major fund in the United

1    States.  Another is a European fund.  The remainder are

2    Israeli funds, yes.  But the question is, for forum non

3    conveniens, have plaintiffs filed their cases here, have

4    we brought our Israeli law claims here for illegitimate

5    reasons?  And the answer to that is emphatically no, Your

6    Honor.  We've brought them here because we have U.S. law

7    claims, and we're bringing them together.

8              So, again, Your Honor, when they argue to the

9    Israeli court that the most natural forum for this action

10   is the United States courts, they can't then turn around

11   and say the U.S. courts are too inconvenient.  It's

12   conflicting.  And it's clear why the U.S. courts are

13   convenient.  It's clear that the case in Israel is stayed.

14             And, again, just to quote the defendants, Your

15   Honor, in front of the Court in Israel:  There is no

16   justification for simultaneously conducting overlapping

17   and duplicate legal proceedings in the United States and

18   Israel, which pertain to the same issue, which were filed

19   against the background of a similar factual foundation,

20   which draw on similar evidentiary foundation.

21             They've agreed that U.S. law applies here.

22   They've agreed that convenience, fairness, judicial

23   economy, all of the factors that are considered under

24   either of these statutes or doctrines militate in favor of

25   hearing the case here.  And the only argument they've made

1    is that they may speculatively be subject to a double

2    judgment or a double recovery.  As the Court observed,

3    that's not a valid speculation.  And, again, as Professor

4    Licht points out, that's not a risk in us proceeding.  The

5    class case isn't certified, Your Honor.  We're not part of

6    that class action.  We're proceeding to remedy our losses

7    or to get a remedy for our losses in this court in

8    Connecticut, and we've been clear about that from day one,

9    and the defendants were fine with it for awhile, and now

10   they've changed directions.  But that doesn't mean that

11   all of a sudden everything they've said in the past and

12   everything that sort of logic and practical good sense

13   tells us goes out the window.

14        So, Your Honor, we respectfully request that the

15   Court deny the motions under both grounds and exercise

16   supplemental jurisdiction so that we can proceed with this

17   case in a single, unitary action and get to a resolution

18   here.

19        THE COURT:  All right.

20        MR. FRANK:  Your Honor, if I could be heard very

21   briefly?

22        THE COURT:  Very briefly, sure.

23        MR. FRANK:  Your Honor, courts for decades have

24   declined supplemental jurisdiction or dismissed on forum

25   non conveniens grounds out of concerns for recognition of

1    judgments and the risk of double recovery.  We can all

2    agree that those problems should not arise, but that

3    doesn't mean that they won't.

4              With respect to the theme that defendants are

5    somehow picking and choosing what they say to whom and

6    when, the record is clear that Teva asked the Israeli

7    court to dismiss those cases in favor of this forum.

8    Alternatively, it asked for a stay.  Unfortunately, it

9    didn't get the dismissal; it got the stay.  So there are

10   not cases proceeding simultaneously, but there is going to

11   be ultimately litigation in Israel based on what happens

12   here.

13             Now, having had those circumstances changed, the

14   defendants are not changing their position.  They're not

15   saying contradictory things by asking for the Israeli law

16   issues to be adjudicated where Israeli law issues are now

17   going to be adjudicated.

18             In addition, with respect to the mistakes

19   supposedly made by the *Mylan* Court, any *Mylan* mistake is

20   irrelevant.  It assumed, that Court assumed that the issue

21   of the applicability of U.S. law was, quote, definitively,

22   close quote, settled.

23             With respect to forum shopping, Your Honor, to

24   go back to the point I was making earlier, we wanted these

25   disputes to all play out here.  Ultimately that's not what

1    the Israeli Court decided, and there's a stay in place.

2    And so the Israeli law issues, to the extent that there

3    are distinct issues that need to be addressed and it

4    doesn't simply adopt whatever goes on here, are going to

5    play out there.

6          You know, to conclude, Your Honor, under

7    1367(c)(4), the United States has little interest in

8    becoming -- this is the language from the *Morrison* case --

9    in becoming the Shangri-La of class action securities

10   litigation.  And it may be that the securities authority

11   in Israel wants to outsource all the securities

12   jurisprudence to America and/or the U.K., but the U.S.

13   doesn't have an interest in that.

14         There are two class actions pending in Israel

15   right now for the express purpose of preserving Israeli

16   law claims.  *Mylan* explains the comity concerns that were

17   given the back of the hand by counsel.  They express the

18   worry -- or that it was wary of impinging upon an

19   Israeli's court's ability to adjudicate the claims of its

20   own citizens.  And we ask the Court to be wary of

21   impinging upon those rights as well.

22         Thank you, Your Honor.

23         THE COURT:  Thank you all.  I think I've

24   understood the arguments, and I'll have to render some

25   decisions, and I'll get those to you as quickly as I can.

```
 1   But I appreciate the briefing and argument of two very

 2   interesting issues.

 3              Thank you all.  We'll stand in recess.

 4              MR. BROOKS:  Thank you.

 5              MR. FRANK:  Thank you.

 6                 (Adjournment:  1:08 p.m.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

C E R T I F I C A T E

No. 3:17-cv-00558(SRU)

Ontario Teachers' Pension Plan Board, et al v. Teva
Pharmaceutical Industries Ltd., et al


        I, Sharon L. Masse, RMR, CRR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.



                November 29, 2020


                /S/ Sharon L. Masse
              Sharon L. Masse, RMR, CRR
               Official Court Reporter
               915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
             sharon_masse@ctd.uscourts.gov