## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, et al.,<br><br>  Plaintiffs,<br>v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LTD., et al.,<br><br>  Defendants. | Civil Action No. 3:17-cv-00558-SRU<br><br>January 19, 2021 |

**MOTION TO INTERVENE BY THE STATE OF WISCONSIN INVESTMENT BOARD FOR THE LIMITED PURPOSE OF TOLLING THE STATUTE OF REPOSE**

## INTRODUCTION

The State of Wisconsin Investment Board ("SWIB") is a member of the Class asserted in this case. *See* ECF No. 419-1 at 2 (defining the asserted Class). SWIB hereby moves to intervene for the sole purpose of protecting certain of its individual claims, as alleged in the operative class action complaint, from expiration under the statute of repose.

In seeking intervention, SWIB is following guidance from the Supreme Court and Second Circuit that intervention is a proper method for a passive class member to provide defendants with notice of its individual claims and preserve the timeliness of those claims. SWIB's motion is also squarely within this Court's prior orders permitting other Class members to intervene for the same purpose and on the same terms. *See* ECF No. 284 (permitting intervention by the California State Teachers' Retirement System ("CalSTRS") for the limited purpose of tolling the statute of repose); ECF No. 636 (permitting intervention by certain TIAA-CREF Investment Management and Teachers Advisors LLC affiliated funds and accounts (collectively, "TIAA") for the same limited purpose). In seeking intervention, SWIB, like the aforementioned Class members-intervenors CalSTRS and TIAA, does ***not*** seek appointment as a representative plaintiff or to otherwise interpose itself into this action (the "Class Action"), but rather seeks to ***preserve*** its status as a Class member with all attendant rights and protections, including protections against discovery.[1]

## BACKGROUND

In their Second Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 310), which is incorporated by reference herein, Plaintiffs Ontario Teachers' Pension Plan Board and Anchorage Police & Fire Retirement System ("Plaintiffs") allege, among other things,

---

[1] SWIB does not believe that oral argument is necessary for this straightforward motion, and notes that the Court permitted both CalSTRS and TIAA to intervene on similar terms without oral argument. ECF Nos. 284, 636.

that Teva Pharmaceutical Industries, Ltd. ("Teva") and a number of Teva's current and/or former officers and directors (collectively, "Defendants") violated 15 U.S.C. §78aa (the "Exchange Act") by (1) systematically and deliberately implementing price increases on dozens of generic drugs, which Defendants then misrepresented, denied and concealed in their statements to investors; and by (2) engaging in an industrywide conspiracy with Teva's "competitors" to fix generic drug prices and allocate markets, which Defendants concealed and then consistently and vigorously denied in their statements to investors. The Complaint asserts that Defendants' wrongful conduct began on February 6, 2014 and continued for over five years, including Defendants' material misstatements on February 11, 2016.[2] ¶¶111-118, 216-222. SWIB bought a large amount of Teva ADSs during the Class Period, including nearly five million ADSs after February 11, 2016, and held Teva ADSs through the end of the Class Period.[3]

## ARGUMENT

A federal court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, as a member of the asserted Class, SWIB's claims necessarily share common questions of law and fact with those of the Class—indeed, SWIB's claims are identical to those of other Class members and arise out of the same underlying misrepresentations and omissions of material fact.

Under the applicable Exchange Act statute of repose, to be timely, a private right of action under Section 10(b) "may be brought not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation" or "5 years after such violation." 28 U.S.C. § 1658(b). In other

---

[2] All "¶" references in this motion and memorandum of law are to the Complaint. Capitalized terms not defined herein have the same meanings given to them in the Complaint.

[3] SWIB is willing to provide Defendants with copies of SWIB's relevant transaction history in Teva securities and to submit it for *in camera* review upon request.

words, there is a two-year statute of limitations, and a five-year statute of repose.  As the Supreme Court recently clarified, the commencement of a securities class action suspends the running of the statute of limitations governing prospective class members' individual securities claims under the *American Pipe* "tolling" rule, however, the *American Pipe* tolling rule does not apply to the statute of repose.  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Securities, Inc.*, __U.S.__, 137 S. Ct. 2042, 2052 (2017) (citing *American Pipe Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

To address this incongruity in the application of the *American Pipe* tolling rule, the Supreme Court and Second Circuit have each stated that an unnamed class member may file a timely motion to intervene in a class action to protect its individual claims from the expiration of a statute of repose, *i.e.*, in lieu of commencing a separate and duplicative individual action.  *See ANZ Securities*, 137 S. Ct. at 2054 (recommending a "simple motion to intervene" to satisfy the statute of repose); *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) ("The proposed intervenors, through minimal diligence, could have avoided the operation of the … statute of repose simply by making timely motions to intervene in the action …."); *see also Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 392 (S.D.N.Y. 2019) ("In sum, the statute of repose bars Plaintiffs' claims based on statements, omissions, or misrepresentations … which were not timely raised in an earlier complaint or motion to intervene.").  Indeed, in *ANZ Securities*, the Supreme Court opined that the intervention process should not be "onerous" for unnamed class members and that district courts have the means to permit such "additional filings" to "proceed in an orderly fashion." *ANZ Securities*, 137 S. Ct. at 2054.

Consistent with this controlling Supreme Court and Second Circuit precedent, this Court previously granted both CalSTRS's and TIAA's respective motions to intervene in this action for the limited purpose of tolling their claims under then-impending statutes of repose.  ECF Nos. 281,

284, 636. SWIB's motion to intervene is essentially identical to the motions filed by CalSTRS and TIAA that the Court granted—including in an order issued less than two months ago.

In particular, SWIB is seeking to intervene to preserve the timeliness of its individual securities fraud claims based on statements that Defendants made on and after February 11, 2016. The first Exchange Act violations alleged in the Complaint that are within the five-year statute of repose as of the date of this motion—*i.e.*, that remain timely if SWIB were to file an individual action at this time—occurred on February 11, 2016. On that date, Defendants issued multiple materially false and misleading statements and omissions.

*First*, Defendants filed with the SEC a press release reporting Teva's fourth quarter and full year 2015 financial results (the "Q4 2015 Press Release"). The Q4 2015 Press Release disclosed a year-over-year increase in generic profit of $7 million, or 1%, attributed "primarily" to a reduction in expenses and "offset" in part by lower sales of a certain drug. ¶217. As alleged in the Complaint, Defendants' explanation that Teva's profits were offset by reduced sales was false and misleading because it omitted that the Company's reduced ability to institute price increases was the true cause of the lower profits. *Id.* Indeed, Teva's profits from the Price-Hike Strategy declined by 24% from Q4 2014 to Q4 2015 as governmental scrutiny of generic drug pricing increased, which Defendants knew but concealed from investors. *Id.*

*Second*, Defendants filed with the SEC the Company's annual report on Form 20-F for the year ended December 31, 2015 (the "2015 20-F"). The 2015 20-F disclosed a year-over-year increase in Teva's generics profit of $500 million, or 24%, and misleadingly attributed the increase "primarily" to lower expenses and new product launches in the United States during 2015. ¶218. In truth, the profits were driven in large part by Teva's Price-Hike Strategy, including price

increases that generated as much as $848 million in inflated profit in 2015, a year-over-year increase of $155 million that amounted to 31% of the year-over-year increase in generic profit. ¶¶218-219.

*Third*, also on February 11, 2016, Defendants hosted a conference call with analysts and investors (the "February 2016 Earnings Call"). During the February 2016 Earnings Call, Defendant Olafsson, the then-President and CEO of Teva's Global Generic Medicines Group, touted that "2015 was a very good year for Teva Generics" while explicitly denying that pricing had played any role in the supposed success. Defendant Olafsson highlighted the Company's "$1 billion improvement in operating profit over 24 months," stating "So how did we do this? Not by pricing but by portfolio mix, new products, and efficiency measures." ¶220. Olafsson also minimized the impact of pricing on Teva's business, including by (i) denying media reports of price inflation in the generics industry (¶221); (ii) asserting that Teva actually "saw a mid-single-digit price decline" for 2015 in its overall generics business and "4% price erosion" in the U.S. market (¶¶221-22); and (iii) assuring investors that "[w]e expect to see the same in 2016," "[n]othing today points to a significant change in the generic pricing environment," and "we didn't see anything change in fourth quarter." ¶222. Additionally, Olafsson presented slides stating that Teva did "not see the sharp drop in prices other competitors have seen recently." *Id.* As alleged in the Complaint, these statements were materially false and misleading because Teva made as much as $1.5 billion in inflated profit from the Price-Hike Strategy – substantially more than even the $1 billion profit that Olafsson denied was driven by price increases – underscoring that the Price-Hike Strategy was essential to Teva's financial success. ¶¶220-221. And while Olafsson claimed that Teva did not see changes in the pricing environment, Teva was increasingly unable to implement further price increases, resulting in declining profits. ¶222.

5

SWIB purchased or acquired nearly 5 million Teva ADSs during the period from February 11, 2016 through the end of the Class Period (May 10, 2019) at fraud-inflated prices—including 175,000 ADSs purchased during the two-month period immediately following the February 11, 2016 violations—and suffered substantial damages on its ADS investments.  As noted, SWIB's claims against Defendants share common questions of law and fact with the Plaintiffs' claims in the Complaint and, therefore, intervention is appropriate. Fed. R. Civ. P. 24.  Allowing SWIB to intervene for the extremely limited purpose of satisfying an approaching statute of repose will not prejudice any of the parties and will not cause any delay as SWIB is already a passive Class member.  There will be no additional discovery because SWIB is not seeking to become a lead plaintiff or other representative party, is not seeking to disrupt or interfere with the Class Action in any way, and expressly seeks to retain the protections against discovery that apply to passive class members.  *See In re Publ'n Paper Antitrust Litig.*, 2005 WL 1629633, at *1 (D. Conn. July 5, 2005) (denying discovery of class member).  Indeed, SWIB merely seeks to preserve its right to act independently, while seeking to cause no disruption to the Class Action and no imposition of additional burdens on the Court or the parties.

The motion is also timely, as this motion is being filed before the five-year statute of repose runs for the February 11, 2016 violations, as well as numerous additional Exchange Act violations later in the Class Period that shortly preceded SWIB's purchases of Teva securities and remain timely under the statute of repose as of the date of this motion.  Indeed, because ***all*** of the purchases underlying SWIB's damages from Defendants' fraud were not made until years into the Class Period, this motion, if granted, will preserve ***all*** of these individual claims for damages from the statute of repose.

In sum, the sole purpose for this motion is to allow SWIB, a large institutional investor responsible for managing the invested assets of the Wisconsin Retirement System, Wisconsin State Investment Fund, and other Wisconsin State trust funds, to avoid the risk of a time-bar against its individual claims and to preserve a meaningful opt-out right.

## CONCLUSION

Accordingly, SWIB respectfully requests that the Court grant this motion to allow it to intervene for the limited purpose of preserving its claims against the expiration of an approaching statute of repose, and also confirm that SWIB will nevertheless remain a passive member of the Class with all the associated rights and protections.

Dated: January 19, 2021

Respectfully Submitted,

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*

David R. Kaplan (*admitted pro hac vice*)
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

Maya Saxena (*admitted pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com

Jonathan P. Whitcomb
DISERIO MARTIN O'CONNOR
& CASTIGLIONI LLP
One Atlantic Street
Stamford, CT 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321
jwhitcomb@dmoc.com

*Counsel for Proposed Intervenor-Plaintiff
The State of Wisconsin Investment Board*

8

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on January 19, 2021, a copy of the foregoing was electronically filed. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. A copy has also been sent by U.S. mail first class, postage prepaid, to all counsel and pro se parties that do not have access to the Court's electronic filing system.

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*
David R. Kaplan