# Exhibit 2

**Park's and Macomb's Memorandum of Law in Support of Motion for Reconsideration of February 4, 2021 Decision and Order, *Pelletier v. Endo Int'l plc*, No. 2:17-cv-05114-MMB (E.D. Pa. Feb. 18, 2021) (ECF 291-1)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDRE PELLETIER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> - v. - <br><br> ENDO INTERNATIONAL PLC, RAJIV KANISHKA LIYANAARCHCHIE DE SILVA, SUKETU P. UPADHYAY, AND PAUL V. CAMPANELLI <br><br> Defendants. | Hon. Michael M. Baylson <br><br> No. 2:17-cv-05114-MMB <br><br> <u>CLASS ACTION</u> <br><br> ORAL ARGUMENT REQUESTED |

**PARK'S AND MACOMB'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF FEBRUARY 4, 2021 DECISION AND ORDER**

Park and Proposed Intervenors Macomb respectfully move for reconsideration, pursuant to Local Civil Rule 7.1(g), of the Court's February 4, 2021, decision and order (the "Decision and Order," ECF 272, 273).[1] Respectfully, the Decision and Order should be reconsidered and Park should be restored as sole Lead Plaintiff, with Bleichmar Fonti & Auld LLP ("BFA") as sole Lead Counsel, and Macomb should be permitted to intervene and named as an additional Class Representative.

Before turning to the merits of this Motion, BFA and Hangley Aronchick emphasize that they are fully cooperating with Mr. Stengel and other appointed counsel, and they will continue to do so, notwithstanding this Motion. That cooperation has included, by way of example, participating in multiple conference calls about case status and strategy, providing full access to

---

[1] Capitalized terms have the meanings stated in the Supplemental Memorandum in Further Support of Motion for Class Certification and Joint Motion for Macomb to Intervene ("Supplemental Memorandum"). (ECF 271.)

document productions, and transferring over seven gigabytes of work product and other case material. At Mr. Stengel's instruction, Park and BFA also filed a Response To Public Employees' Retirement System Of Mississippi's Application For Relief In The Form Of A Motion To Dismiss For Mootness stating that "Lead counsel Mr. Stengel and Lead Plaintiff the [Bucks County Employees'] Retirement Fund, on behalf of the *Pelletier* Class, do not oppose, and consent to, the Application. Therefore the Application is not opposed." BFA and Hangley Aronchick are committed to continuing their cooperation.

## ARGUMENT

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677–78 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Reconsideration is warranted where a party shows "at least one of the following grounds": (1) "an intervening change in the controlling law"; (2) "the availability of new evidence"; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677.

Here, reconsideration is warranted (1) to correct clear errors of law and fact and prevent manifest injustice, and (2) in light of newly available evidence.

First, the replacement of Lead Plaintiff Park and Lead Counsel BFA with four lead plaintiffs, former Judge Stengel as Lead Counsel, and three law firms as "co-Lead Counsel" and "assistant Lead Counsel," is without factual or legal basis and contrary to the PSLRA. On February 3, 2021, Park and Macomb filed a detailed 25-page Supplemental Memorandum (ECF 271), with five exhibits, that (i) responded to each of the Court's stated concerns about Park and BFA; (ii) explained why Bucks County Employees' Retirement Fund ("Bucks") and Pelletier,

2

Dole, and Wingard (together, the "Individuals") are ineligible for appointment under the PSLRA; and (iii) explained that any change in Lead Plaintiff or Lead Counsel would be highly prejudicial to the Class.

Respectfully, the Decision and Order contains clear legal and factual errors that were addressed and rebutted by the February 3 submission, as well as prior briefing. As demonstrated, Park exceeds the adequacy and typicality requirements of the PSLRA and Rule 23, Park and BFA have acted with integrity, and the Court's concerns about credibility and unique defenses are not supported by the record or controlling law. (*See, e.g.*, ECF 153 at 10-18 of 37; ECF 174; ECF 209; ECF 216; ECF 234; ECF 258 at 4-8, 11-12 of 16; ECF 271.) By way of example:

- The Court states that on July 20, 2020, it "clearly required Park to provide purchase timing documentation, even if in the hands of its custodians or brokers." (Decision at 5 n.2.) In fact, the Court did not direct Park to produce documents from third parties, something Defendants never asked for in their motion to compel or otherwise; rather, the Court directed that Park "[m]ust produce all documents *they have* showing their transactions." (ECF 271 at 4-7.)

- The Court accuses Park and BFA of failing to disclose the Court's order when it moved to quash subpoenas "in front of four other federal district judges throughout the country" and "even trying to cover up the explicit ruling of the Court" (Decision at 8, 19). In fact, Park had good faith arguments to quash Defendants' subpoenas and specifically sought Defendants' consent to filing those motions in this District but Defendants refused. (ECF 271 at 7-9; ECF 271-4.) Further, that the Advisory Committee on Evidence and Civil Rules did not accept a proposed amendment to Rule 45 to require notice to the court where the principal case is pending is no basis to criticize Park. (*See* Decision at 8 n.4.)

- The Court accuses Park of "misleading the Court" and "misdirection" regarding the timing of its November 3, 2016 purchase. (Decision at 2, 12; *see also id.* at 19.) In fact, Park *never disputed* that its November 3, 2016 purchase of Endo stock was completed after the *Bloomberg* article was published that afternoon. The crux of the Court's criticism focuses on Park's statement, made on September 18, 2020, that its purchases on November 3, 2016 began before the article was published and occurred throughout the day. (Decision at 7 (quoting ECF 152 at 17).) In fact, that statement about when the purchase *started* was supported by Mr. Polit's deposition testimony, which Park cited as support and attached to its submission.

3

(ECF 152-4.)[2]  Again, Park *never disputed* that its November 3, 2016 purchase of Endo stock was completed after the article was published. (ECF 271 at 9-14.)

- The Court accuses Park of "obscuring Lombardia's role as sole decision maker for Park's stock purchases" (Decision at 12). In fact, Park transparently disclosed Lombardia to Defendants at the outset of discovery, stating on April 1, 2020: "Lombardia Capital Partners served as Plaintiff's investment manager, and *had full discretion with regard to Plaintiff's investment in Endo Securities*." Defendants filed that disclosure with the Court on June 12, 2020. (ECF 111-5 at 7 of 19.) Defendants also pursued full discovery of Lombardia and have never contended that Lombardia's role was kept secret. Nor have Defendants ever disputed that Park was the actual purchaser of the Endo shares, despite the role Lombardia played. (ECF 271 at 21 n.9 of 30.)

- The Court appears to state its desire to have a lead plaintiff who was personally involved in investment decisions. (Decision at 25 (stating that the Court "is selecting three additional individuals . . . because, based on their disclosures to this Court, they were actively involved personally, or through their personal relationships with investment advisors and stock brokers, and making decisions for the purchase or sale of Endo stock"); Jan. 21 Tr. 39:5-19 (indicating that the "ideal" is "somebody who invests based on their personal research and review, and who

---

[2] Inexplicably, the decision states:

> Park/BLA replied emphatically that Park's purchase occurred before the article's publication:
>
>> Defendants also grossly misstate the facts by asserting that Chicago Park's November 3, 2016 "purchases appear to have occurred after the article was published at 2:10:27 p.m." Chicago Park's purchases on November 3, 2016 began before the article was published and occurred throughout the day . . . . [Endo's] claim that "uncertainty" calls for "further discovery" is frivolous.

(Decision at 7 (quoting ECF 153 at 17 (emphasis added by Court)).)

The Court's selective quotation and use of ellipsis airbrushes the basis for Park's statement, which the Court so harshly labels:

> Defendants also grossly misstate the facts by asserting that Chicago Park's November 3, 2016 "purchases appear to have occurred after the article was published at 2:10:27 p.m." (Opp. at 13.) Chicago Park's purchases on November 3, 2016 began before the article was published and occurred throughout the day, **resulting in an average price, as Mr. Polit testified. (Ex. 3 (Polit Tr.) at 188:14-189:13; 255:8-14.) Defendants cannot overcome this evidence**; their footnoted claim that "uncertainty" calls for "further discovery" is frivolous.

(ECF 153 at 11.) Further, Park's argument that Defendants' request for further discovery was frivolous was grounded in its citation to six cases. (ECF 153 at 12.)

4

then calls a broker and discusses it.").) Yet, that is contrary to Supreme Court and Third Circuit law holding that securities plaintiffs are not required to show direct "eyeball" reliance on misstatements. (ECF 271 at 14-17.) Park's use of an investment advisor—like the vast majority of institutional investors preferred to lead PSLRA actions—is not a basis to replace Park. (*Id.*)

- The Decision and Order denied Macomb's intervention without explanation or analysis and mis-describes Macomb's motion as being for co-lead plaintiff, when in fact, Macomb sought to serve only as a class representative. (Decision at 10.) Further, the Court's expressed concerns regarding the duration of Park's ownership of Endo shares (Decision at 3, 16-17) are contrary to the law that a lead plaintiff need not hold shares over the entire Class Period (March 2, 2015 to February 27, 2017, inclusive) and, if there is any basis for such concern, allowing Macomb to intervene and serve as an additional Class representative was a complete solution. (ECF 271 at 18-19.)[3]

- The Court criticizes Park's intervention in the *MissPERS* action and states that "Park/BLA told this Court something completely contrary to the state Court's holding as to the scope of the MissPERS settlement's release." (Decision at 20-21.) In fact, Park intervened and appealed in the *MissPERS* action because of its fiduciary obligations to the Class, properly seeking, based on Third Circuit law, to preserve their claims from being released. (ECF 271 at 19-20.) Further, Park's opening brief seeking class certification fully disclosed that the state court "approved the settlement over Lead Plaintiff's objection, and the matter is currently on appeal," though Park "maintain[ed] that the purported release in *MPERS* is wholly inapplicable to the Class" and would "submit further argument to the Court if needed." (ECF 116-1 at 16 n.5 of 30.)

- The Court's statement that certifying a class that included shares purchased in the Offering "might have violated the *Rooker-Feldman* doctrine and the sovereignty of the state court system" is contradicted by law declining to apply overly broad state-court releases to federal classes. *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 592 (9th Cir. 2010); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasizing "narrow ground occupied by *Rooker-Feldman*" and holding that doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Nonetheless, after the Court expressed concerns about complexity, Park proposed a revised class definition to avoid any overlap with *MissPERS*, and on January 26, offered to dismiss the *MissPERS* appeal before a class certification ruling from this Court if Defendants stipulated to the Class definition. (ECF 271 at 20 & ECF 271-5.) The Decision, however, is

---

[3] Further, the Court incorrectly stated that Park "sold all its shares by February 17, 2017, ten days before the end of the proposed class period." (Decision at 17.) In fact, Park's trading records filed with the Court confirm that its final purchases of Endo stock occurred on January 18 and February 22, 2017, and Park did not sell this Endo stock until **April** 17, 2017, seven weeks after the end of the Class Period. (ECF 251-3.)

5

incomplete in stating that Park refused to dismiss its appeal with no mention of Park's January 26 offer (which remained unanswered).

The February 3 Supplemental Memorandum further explained that Bucks and the Individuals cannot be appointed as lead plaintiffs as a matter of law:

- The PSLRA and *Cendant* bar relative "beauty contests" to compare lead plaintiff candidates, particularly where Park has vigorously advanced the Class's claims and neither Bucks nor the Individuals took issue with Park's and BFA's leadership (ECF 271 at 22). The Decision errs as a matter of law in disregarding this authority and failing to consider and apply the burden-shifting framework and proof requirement mandated by the PSLRA for lead plaintiff appointments. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

- Bucks is statutorily ineligible because its motion for lead plaintiff status is untimely, filed nearly **three years** after the PSLRA's 60-day deadline, 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); (ECF 271 at 22-23). The Decision errs as a matter of law in violating this 60-day time bar by appointing Bucks as lead plaintiff.

- The PSLRA's statutory criteria for lead plaintiffs are exhaustive, and to replace Park in favor of investors who were "actively involved personally, or through their personal relationships with investment advisors and stock brokers, and making decisions for the purchase or sale of Endo stock" (Decision at 25) is contrary to the PSLRA and Supreme Court and Third Circuit precedent (ECF 271 at 22-24). The Decision errs as a matter of law in disregarding this authority, including by appointing the Individuals because they were "actively involved personally" in transactions.

- The Individuals are ineligible as a lawyer-created group with a number of individual issues that do not exist for Park, including Dole's multiple purchases on November 3, Wingard's in-and-out trading, and Wingard's admission that his "decision to invest in Endo stock was initially prompted by conversations in early 2016 with his accountant," whose wife "worked for Endo as a director in the Company's sales and marketing department" at the time. (ECF 271 at 23-24.) The Decision errs as a matter of law by nonetheless appointing the Individuals as co-lead Plaintiffs.

- Any change in lead plaintiff or lead counsel would be prejudicial to the Class. The Decision and Order erred as a matter of law by replacing Park and BFA, and installing new Lead Counsel who has no familiarity with the case.

Reconsideration is therefore warranted to correct these and other clear errors of law and fact, and to prevent the manifest injustice of Park and BFA being replaced and Macomb not being allowed to intervene, all on grounds that are inconsistent with controlling law and the factual

6

record. *See Max's Seafood Café*, 176 F.3d at 678 (factual issue "was so fundamental" that court abused its discretion "to have declined even to consider it").

Second, the Decision itself revealed new evidence demonstrating that the Court erred as a matter of law in granting the relief it entered.

Without any prior notice to Park and apparently acting *sua sponte*, the Court appointed Mr. Stengel as Lead Counsel. Significantly, Bucks' submissions to the Court did not propose Mr. Stengel as lead counsel but rather identified him only as local counsel. (ECF 247-1 at 5-7 of 11.) His appointment violates the PSLRA, which provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 271-73 (3d Cir. 2001) (court's role "confined to deciding whether to 'approve' [the lead plaintiff's] choice" of lead counsel). Further, the Decision discloses two *ex parte* telephone conversations with Mr. Stengel. (Decision at 25.)[4] This is an error as a matter of law. *See, e.g.*, Code of Conduct for United States Judges, Canon 3(A)(4); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 310 (3d Cir. 2004). Finally, acting *sua sponte*, the Decision reports "[t]he Court will designate another firm, located in Philadelphia, to work with the others," also in violation of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), and *Cendant*.

---

[4] The undersigned are aware of one additional *ex parte* communication between the Court's chambers and counsel for Defendants. We understand that through an *ex parte* communication, the Court *sua sponte* granted an extension to Defendants for their time to file an opposition to Macomb's motion for intervention, an extension that Defendants never sought.

7

Accordingly, reconsideration should be granted as set forth above.

DATED: February 18, 2021

Respectfully submitted,

| | |
|---|---|
| **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER** | **BLEICHMAR FONTI & AULD LLP** |
| /s/ *John S. Summers* | /s/ *Joseph A. Fonti* |
| John S. Summers | Joseph A. Fonti (admitted *pro hac vice*) |
| Jonathan L. Cochran | Javier Bleichmar (admitted *pro hac vice*) |
| One Logan Square, 27th Floor | 7 Times Square, 27th Floor |
| Philadelphia, Pennsylvania 19103 | New York, NY 10036 |
| Telephone: (215) 568-6200 | Telephone: (212) 789-1340 |
| Facsimile: (215) 568-0300 | Facsimile: (212) 205-3960 |
| | jfonti@bfalaw.com |
| | jbleichmar@bfalaw.com |
| *Co-Counsel for the Park Employees' and Retirement Board Employees' Annuity and Benefit Fund of Chicago and Proposed Intervenors Macomb County Employees' Retirement System and the 2015 Macomb County Intermediate Retirees Medical Benefits Trust* | *Co-Counsel for the Park Employees' and Retirement Board Employees' Annuity and Benefit Fund of Chicago and Proposed Intervenors Macomb County Employees' Retirement System and the 2015 Macomb County Intermediate Retirees Medical Benefits Trust* |
| | **KEHOE LAW FIRM, P.C.** |
| | John A. Kehoe |
| | Two Penn Center Plaza |
| | 1500 JFK Boulevard, Suite 1020 |
| | Philadelphia, PA 19012 |
| | Telephone: (215) 792-6676 |
| | jkehoe@kehoelawfirm.com |
| | *Additional Counsel for the Park Employees' and Retirement Board Employees' Annuity and Benefit Fund of Chicago* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 18, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

                                     /s/ *Joseph A. Fonti*
                                        Joseph A. Fonti