# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:19-cv-657 (SRU)<br>No. 3:19-cv-513 (SRU)<br>No. 3:19-cv-923 (SRU)<br>No. 3:19-cv-655 (SRU)<br>No. 3:19-cv-1167 (SRU)<br>No. 3:20-cv-83 (SRU)<br><br>March 5, 2021 |

## DEFENDANTS' OPPOSITION TO
## <u>PLAINTIFFS' JOINT MOTION FOR RECONSIDERATION</u>

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .................................................................................................. 4

I. THE COURT SHOULD DENY RECONSIDERATION. ...................................... 4

    A. Standard Of Review. ............................................................................ 4

    B. The Court Should Deny The Motion Because
    It Is Admittedly Untimely And Plaintiffs Did Not Attempt To
    Satisfy Any Of The Requirements For Excusing Late-Filed Motions. ................ 5

    C. The Court Should Deny The Motion Because It
    Advances An Argument That This Court Already Decided ................................. 6

    D. The Court Should Deny The Motion Because Plaintiffs Seek To
    Advance Arguments They Failed To Advance In Their Briefing. ...................... 7

    E. Plaintiffs Fail To Identify Any Valid Ground For Reconsideration ........................... 9

        1.    Plaintiffs Fail To Identify Any Intervening Change In The Law. ............ 9

        2.    Plaintiffs Fail To Identify Any New,
                Relevant Evidentiary Development. ...................................... 10

        3.    Plaintiffs Fail To Identify Any
                Clear Error Of Law Or Manifest Injustice .............................. 10

II. THE COURT SHOULD DENY THE
REQUEST FOR INTERLOCUTORY REVIEW ........................................... 14

    A. Standard Of Review. ............................................................................ 14

    B. None Of The Factors Supports Certification Here, And
    The Court Should Exercise Its Discretion And Deny Certification .................... 15

        1. The Controlling Question Of Law
        Factor Does Not Support Certification. ................................................. 15

        2. There Is Not Substantial Ground For Difference Of Opinion. ...................... 18

        3. Interlocutory Review Will Not Materially
        Advance The Ultimate Termination Of The Litigation. .......................... 21

    C. Interlocutory Review Is Not Frequently
    Granted To Resolve Timeliness Issues, And Is
    Typically Limited To Potentially Case-Terminating Questions ......................... 23

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Abu Dhabi Inv. Auth. v. Mylan N.V.*,
   No. 20-CV-1342 (JPO), 2021 WL 516310 (S.D.N.Y. Feb. 10, 2021) ...................................20

*Adams v. Nat'l Eng'g Serv. Corp*.,
   No. 07-CV-1035 (JCH), 2009 WL 10688624 (D. Conn. June 26, 2009).........................16, 19

*In re Aggrenox Antitrust Litig*.,
   No. 3:14-md-02516 (SRU), 2018 WL 834228 (D. Conn. Feb. 12, 2018).........................14, 18

*In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*,
   Nos. 02 MDL 1448(RWS), 02 Civ. 439(RWS), 02 Civ. 3143(RWS),
   2007 WL 4563485 (S.D.N.Y. Dec. 18, 2007) .............................................................4, 10, 14

*Alexander v. Gen. Ins. Co.*,
   No. 3:16-cv-59 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017)........................................7

*Alpert v. Starwood Hotels & Resorts Worldwide, Inc*.,
   No. 3:14-cv-1872 (SRU), 2019 WL 2341684 (D. Conn. June 3, 2019)...................................6

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*,
   855 F. Supp. 438 (D. Me. 1994) ..........................................................................................23

*In re Brookhaven Nat'l Lab. Trichloroethylene Cases*,
   No. 19CV4839GRBRML, 2021 WL 232560 (E.D.N.Y. Jan. 23, 2021).........................23, 24

*Buster v. City of Wallingford*,
   No. 3:07-cv-544 (JBA), 2008 WL 2782731 (D. Conn. July 7, 2008) ......................................6

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Secs., Inc*.,
   137 S. Ct. 2042 (2017).........................................................................................................19

*Cerrato v. Solomon & Solomon*,
   No. 3:11-cv-623 (JCH), 2013 WL 12286084 (D. Conn. Jan. 4, 2013)...................................20

*Colbert v. Rio Tinto PLC*,
   392 F. Supp. 3d 329 (S.D.N.Y. 2019)....................................................................................22

*Colbert v. Rio Tinto PLC*,
   824 F. App'x 5 (2d Cir. 2020) ..............................................................................................22

*Cont'l Bank, Nat. Ass'n v. Vill. of Ludlow*,
   777 F. Supp. 92 (D. Mass. 1991) .........................................................................................13

*Cooke v. Deschaine*,
    No. 3:16-CV-138 (SRU), 2017 WL 1628400 (D. Conn. Apr. 28, 2017) ..................................1

*Dingwell v. Cossette*,
    No. 3:17-CV-01531 (KAD), 2021 WL 413619 (D. Conn. Feb. 5, 2021)............................2, 4

*U.S. ex rel. Drake v. NSI, Inc.*,
    736 F. Supp. 2d 489 (D. Conn. 2010).....................................................................................18

*Ellis v. Gen. Revenue Corp.*,
    No. 3:09-CV-1089 CFD, 2011 WL 2669155 (D. Conn. July 6, 2011) ..................................24

*Equity Tr. Co. v. Kopacka*,
    No. 17-12275, 2018 WL 3708078 (E.D. Mich. Aug. 3, 2018)................................................13

*United States ex rel. Fabula v. Am. Med. Response, Inc.*,
    No. 3:12-cv-921 (MPS), 2019 WL 5726920 (D. Conn. Nov. 5, 2019) ..................................10

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
    No. 11CV6189 DLC, 2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014) .....................................24

*Fed. Hous. Fin. Agency v. Royal Bank of Scotland Grp. PLC*,
    124 F. Supp. 3d 92 (D. Conn. 2015)........................................................................................24

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012).........................................................................17, 22, 24

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    234 F. Supp. 2d 324 (S.D.N.Y. 2002)......................................................................................23

*Kaminski v. Semple*,
    No. 3:19-CV-143 (SRU), 2019 WL 2016778 (D. Conn. May 7, 2019) ...................................6

*Khoury v. Thota*,
    No. 4:19-CV-4806, 2020 WL 6494986 (S.D. Tex. Oct. 1, 2020) ..........................................20

*Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione
    Motonave Achille Lauro in Amministrazione Straordinaria*
    921 F.2d 21 (2d Cir. 1990)................................................................................................15, 18

*Known Litig. Holdings, LLC v. Navigators Ins. Co.*,
    No. 3:12-cv-269 (JBA), 2013 WL 12284920 (D. Conn. Dec. 5, 2013) ...........................19, 20

*Koehler v. Bank of Bermuda*,
    101 F.3d 863 (2d Cir. 1996).....................................................................................................14

*Kuwait Investment Office v. Am. Int'l Grp., Inc.*,
    128 F. Supp. 3d 792 (S.D.N.Y. 2015).....................................................................................20

*Lami v. Stahl*,
No. 3:05-cv-1416 (MRK), 2007 WL 3124834 (D. Conn. Oct. 25, 2007) ...............................8

*Leniart v. Murphy*,
No. 3:11-CV-1635 SRU, 2012 WL 5818321 (D. Conn. Nov. 13, 2012) .................................5

*Litzler v. CC Investments, L.D.C.*,
No. 02-civ-6313, 2003 U.S. Dist. LEXIS 11009 (S.D.N.Y. Mar. 6, 2003)...........................24

*Local 1336, Amalgamated Transit Union, AFL-CIO v. First Student, Inc.*,
No. 3:11-cv-1463 (MPS), 2013 WL 646265 (D. Conn. Feb. 21, 2013)..................................8

*Lorentz v. Westinghouse Elec. Corp.*,
472 F. Supp. 954 (W.D. Pa. 1979) ......................................................................................17

*Lorenzo v. S.E.C.*,
139 S. Ct. 1094 (2019).............................................................................................. *passim*

*Martin v. Dupont Flooring Sys., Inc.*,
No. 3:01-CV-2189 (SRU), 2004 WL 1171208 (D. Conn. May 25, 2004) ..................... *passim*

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
174 F. Supp. 2d 4 (S.D.N.Y. 2001) .....................................................................................20

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
938 F. Supp. 232 (S.D.N.Y. 1996) ......................................................................................20

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
No. 13CV6705 DLC, 2014 WL 5017822 (S.D.N.Y. Sept. 30, 2014) ...................................24

*Nicaj v. City of New York*,
282 F. Supp. 3d 708 (S.D.N.Y. 2017)....................................................................................1

*Packer v. SN Servicing Corp.*,
250 F.R.D. 108 (D. Conn. 2008)............................................................................................7

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
No. 14-CV-10116 (VSB), 2020 WL 4699043 (S.D.N.Y. Aug. 12, 2020) ..............................7

*Plumbers' & Pipefitters' Local No. 562*
*Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*,
No. 08 CV 1713 ERK WDW, 2011 WL 6182090 (E.D.N.Y. Dec. 13, 2011) .................24, 25

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013).......................................................................................17, 19, 22

*Quaak v. Dexia S.A.*,
357 F. Supp. 2d 330 (D. Mass. 2005) ..................................................................................12

*Ricci v. DeStefano*,
   No. 3:04-cv-1109 (JBA), 2011 WL 13227942 (D. Conn. May 5, 2011)................................22

*Schlosser v. Droughn*,
   No. 3:19-cv-1445 (SRU), 2021 WL 327527 (D. Conn. Feb. 1, 2021) .......................................5

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
   No. 3:17-cv-579 (SRU), 2019 WL 10984250 (D. Conn. Oct. 29, 2019) .............15, 18, 21, 23

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010).....................................................................................................15

*Veltex Corp. v. Matin*,
   No. CV 10-1746 ABC PJWX, 2010 WL 3834045 (C.D. Cal. Sept. 27, 2010) .......................12

*W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   299 F. Supp. 3d 1055 (D. Minn. 2018)....................................................................................13

*W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   57 F. Supp. 3d 950 (D. Minn. 2014) ........................................................................................13

*Walsh v. Law Offices of Howard Lee Schiff, P.C.*,
   No. 3:11-CV-1111 (SRU), 2013 WL 74967 (D. Conn. Jan. 7, 2013) .......................................5

*White v. Nix*,
   43 F.3d 374 (8th Cir. 1994) ......................................................................................................15

*U.S. ex rel. Wood v. Allergan, Inc.*,
   No. 10-CV-5645, 2017 WL 1843288 (S.D.N.Y. May 4, 2017) ...............................................24

Pursuant to Local Rule 7(c) and the Court's February 17, 2021 order (ECF 709), Defendants submit this opposition to the motion for reconsideration (ECF 707 & 707-1) (the "Motion") submitted by the plaintiffs in the six above-captioned actions (collectively, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

Plaintiffs' Motion seeks reconsideration or, in the alternative, interlocutory review of this Court's January 22, 2021 order (ECF 689) (the "Order").  Plaintiffs have not shown entitlement to either type of exceptional relief, and both requests should be denied.

Parties may not "use a motion for reconsideration to re-argue prior issues that have already been decided, present 'new theories' or arguments that could have been raised earlier, seek a new hearing on the merits, or otherwise take 'a second bite at the apple.'"  *Cooke v. Deschaine*, No. 3:16-CV-138 (SRU), 2017 WL 1628400, at *2 (D. Conn. Apr. 28, 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  Plaintiffs' Motion violates this fundamental precept, and Plaintiffs impermissibly treat "the court's initial decision as the opening of a dialogue," rather than the resolution of disputed issues.  *Nicaj v. City of New York*, 282 F. Supp. 3d 708, 714 (S.D.N.Y. 2017) (quoting *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 402, 403-04 (S.D.N.Y. 2014)).  Having failed to advance any proper grounds for reconsideration, Plaintiffs' Motion should be denied.

As Plaintiffs admit, Plaintiffs' Motion was not timely filed.  *See infra*, § I(B).  Further, it attempts to relitigate an issue this Court already decided.  *See infra*, § I(C).  In addition, it advances arguments that Plaintiffs did not timely brief.  *See infra*, § I(D).  The Court can and should deny

---

[1] The Order dismissed claims in nine of the direct actions.  Only six of those direct-action plaintiffs seek reconsideration (although seven case numbers are listed in the Motion's caption because *Midgal Mutual Funds*, No. 3:19-cv-00923, is listed twice).  *See* Mot. at 1 n.1.  The plaintiffs in *Schwab*, *Stichting*, and *Boeing* do not seek reconsideration.

reconsideration for these threshold reasons.

To obtain reconsideration, Plaintiffs are required to identify an intervening change in the law, newly discovered evidentiary material, or a clear error of law or manifest injustice. *Martin v. Dupont Flooring Sys., Inc.*, No. 3:01-CV-2189 (SRU), 2004 WL 1171208, at *1 (D. Conn. May 25, 2004). Plaintiffs do not even attempt to identify a jurisprudential change or new evidence. Plaintiffs also have not shown that this Court made a clear error of law or perpetrated a manifest injustice. Plaintiffs rely on the Supreme Court's scheme-liability decision in *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019). But *Lorenzo* is irrelevant. First, plaintiffs failed to even plead scheme liability, as this Court concluded in its Order. Second, Plaintiffs' argument that *Lorenzo* expanded the scope of scheme liability is irrelevant to the repose issue decided by the Court. Mot. at 1. Indeed, Plaintiffs are asking this Court to be the first court in the country to apply *Lorenzo* to render timely alleged violations of the securities laws that would otherwise be deemed untimely.

Notably, in seeking reconsideration, Plaintiffs do not point to any recent authority within the Second Circuit adopting their view of scheme liability in warding off dismissal on repose grounds under Section 1658(b)(2). In fact, to support their request for reconsideration, Plaintiffs do not point to any case at all that adopts their view on this issue. *See* Mot. at 3-7. So even assuming *arguendo* that Plaintiffs' interpretation of *Lorenzo* is correct, Plaintiffs have not shown anything to suggest this alters the Order's repose ruling, let alone suggest that the Court has made an error that is clear or "direct, obvious, and observable." *Dingwell v. Cossette*, No. 3:17-CV-01531 (KAD), 2021 WL 413619, at *1 (D. Conn. Feb. 5, 2021) (citation and quotation omitted)

For all these reasons, the Court should deny reconsideration.

The Court should also deny Plaintiffs' alternative request for interlocutory review. Plaintiffs fail to satisfy any of the statutory criteria that justify such an extraordinary relief. *See* 28

U.S.C. § 1292(b).  First, the Order does not involve a controlling question of law.  *See infra*, § II(B)(1).  Plaintiffs claim that interlocutory review would clarify the scope of discovery, but reversal of the Order would have little effect, if any, on discovery.  The Court's consolidation order makes this obvious: The *Ontario* plaintiffs are taking discovery on the full universe of alleged violations, and the direct-action plaintiffs play a secondary role in that discovery process.  So regardless of whether the Order is affirmed or reversed, discovery will be essentially the same. Plaintiffs also overstate the impact that an appellate ruling would have on other cases.  Indeed, the argument that interlocutory review would "resolve this important issue" (Mot. at 10) ignores that this issue has been effectively resolved within the Second Circuit since 2013.

Second, there is no substantial ground for difference of opinion.  *See infra*, § II(B)(2).  As the Court acknowledged, over the past several decades, courts in this Circuit have reached different conclusions on the repose issue decided in the Order—but crucially, there has been unanimity on this issue since 2013.  So there is no *recent* conflicting authority on the repose issue.  Likewise, this issue is not particularly difficult and is clearly not one of first impression within the Second Circuit.  The long line of cases dismissing securities claims as untimely under Section 1658(b)(2)'s statute of repose show as much.  *See* Mot. to Dismiss (ECF 464) at 4-5 (collecting cases); *see also* Order at 14 (discussing "cases in which district courts within the Second Circuit have granted the precise relief that the Repose Defendants" sought in their motion to dismiss).

Third, interlocutory review will not materially advance the ultimate termination of the litigation.  *See infra*, § II(B)(3).  In fact, immediate review would achieve precisely the opposite result and only prolong proceedings.  Plaintiffs' argument presumes that the Second Circuit would reach a different conclusion on the repose issue addressed in the Order, but reversal is unlikely. Indeed, the recent authority on this point is much more settled than Plaintiffs' briefing has

suggested.  Given the weight of authority within this Circuit since 2013, the most likely outcome is that the Second Circuit—were it to hear this appeal—would affirm the Order.  Thus, interlocutory review would cause delay without altering the substance of this litigation.

For all these reasons, the Court should exercise its discretion and deny interlocutory review.

## ARGUMENT

## I.      The Court Should Deny Reconsideration.

### A.      Standard Of Review.

"Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions."  D. Conn. L. Civ. R. 7(c)(1).  "Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."  *Id*.  As this Court has recognized, Rule 7(c) "requires the moving party to meet 'stringent standards.'"  *Dupont Flooring*, 2004 WL 1171208, at *1 (citation omitted).

To prevent wasting parties' and courts' time and resources, courts grant motions for reconsideration "only in a narrow range of circumstances."  *Id.* (citation and quotation marks omitted).  "The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice."  *Id*. (citation and quotation marks omitted).  "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable."  *Dingwell*, 2021 WL 413619, at *1 (quoting *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013)); *see In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, Nos. 02 MDL 1448(RWS), 02 Civ. 439(RWS), 02 Civ. 3143(RWS), 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007) (noting that "[a]t least one court has held [] that reconsideration is not warranted unless the prior decision is 'dead wrong.'") (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec.,*

*Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Further, motions for reconsideration must be filed promptly.  Specifically, Local Rule 7(c) requires that motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought."  D. Conn. L. Civ. R. 7(c)(1).

> **B.    The Court Should Deny The Motion Because
> It Is Admittedly Untimely And Plaintiffs Did Not Attempt To
> Satisfy Any Of The Requirements For Excusing Late-Filed Motions.**

The Motion should be denied for a straightforward reason:  It is untimely, as Plaintiffs themselves admit.  *See* Mot. at 3 n.2 (acknowledging that Plaintiffs failed to comply with the local rule governing motions for reconsideration).  To discourage wasteful motions for reconsideration and expedite the resolution of issues, the Local Rules require such motions be filed within seven days of the disputed order.  *See* D. Conn. L. Civ. R. 7(c)(1).  Plaintiffs filed the Motion on February 12, 2021 (ECF 707), twenty-one days after the Order and fourteen days late under Rule 7.  This Court has denied motions for reconsideration that were similarly untimely.  *See, e.g.*, *Schlosser v. Droughn*, No. 3:19-cv-1445 (SRU), 2021 WL 327527, at \*3 (D. Conn. Feb. 1, 2021) (denying motion filed seven days late as untimely); *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:11-CV-1111 (SRU), 2013 WL 74967, at \*2 (D. Conn. Jan. 7, 2013) (denying motion filed twenty-nine days late as untimely); *Leniart v. Murphy*, No. 3:11-CV-1635 SRU, 2012 WL 5818321, at \*1 (D. Conn. Nov. 13, 2012) (denying motion as untimely).

Plaintiffs did not satisfy—or even attempt to satisfy—the procedural requirements for excusing untimely submissions.  Under the rules, "[a]ll motions for extensions of time must be decided by a Judge and will not be granted *except for good cause*."  D. Conn. L. Civ. R. 7(b)(1) (emphasis added).  The rules are also clear as to what is required for such motions: "All motions for extensions of time shall include a statement of the movant that (1) the movant has inquired of all non-moving parties and there is agreement or objection to the motion, or that (2) despite diligent

effort, including making the inquiry in sufficient time to afford non-movant a reasonable opportunity to respond, the movant cannot ascertain the position(s) of the non-movant(s)."  D. Conn. L. Civ. R. 7(b)(2); *see also* D. Conn. L. Civ. R. 7(b)(3) (requiring motions for extension of time to be filed at least three days before the deadline sought to be extended, and imposing additional requirements on motions that fail to comply with this requirement).

Plaintiffs, however, never inquired as to Defendants' position on the Motion, and do not claim to have attempted such an inquiry.  In fact, Plaintiffs do not identify any good cause for the late submission whatsoever.  *See Buster v. City of Wallingford*, No. 3:07-cv-544 (JBA), 2008 WL 2782731, at *1 (D. Conn. July 7, 2008) (denying late-filed motion, where plaintiff failed to ascertain opposing counsel's position or satisfy the good cause requirement).  The closest Plaintiffs come is in asking "the Court exercise its discretion to review the motion in view of the significance of the issues raised in the motion."  Mot. at 3 n.2.  The purported significance of an issue does not constitute good cause for filing motions late, and accepting it as such would forgive nearly every untimely motion.  In light of Plaintiffs' disregard for the Local Rules governing the extraordinary relief Plaintiffs seek, the Court should deny the Motion.

### C.     The Court Should Deny The Motion Because It Advances An Argument That This Court Already Decided.

Motions for reconsideration are not permitted to relitigate settled issues.  Courts routinely deny motions for reconsideration where Plaintiffs merely seek to revisit issues that the Court already decided.  *Alpert v. Starwood Hotels & Resorts Worldwide, Inc*., No. 3:14-cv-1872 (SRU), 2019 WL 2341684, at *1 (D. Conn. June 3, 2019) (denying motion for reconsideration, noting they "will not be granted where the party merely seeks to relitigate an issue that has already been decided") (citation omitted); *Kaminski v. Semple*, No. 3:19-CV-143 (SRU), 2019 WL 2016778, at *1 (D. Conn. May 7, 2019) (denying motion for reconsideration, reminding that "a motion for

6

reconsideration should be denied when the movant 'seeks solely to relitigate an issue already decided'") (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Alexander v. Gen. Ins. Co.*, No. 3:16-cv-59 (SRU), 2017 WL 188134, at *2 (D. Conn. Jan. 17, 2017) (holding that movants "failed to meet the high bar that would justify reconsideration of my prior ruling," and denying motion to reconsider that "merely attempts to relitigate arguments that were considered and rejected" in deciding the motion to dismiss).

Here, Plaintiffs first raised their scheme-liability argument at oral argument, and the Court considered it and rejected it.  Indeed, it devoted sixteen pages to this issue, reviewing and applying case law.  *See* Order at 7-23.  Where, as here, a court has decided an issue, it is not proper for a plaintiff to move to reconsider it, absent a change of controlling law, new evidence, or a clear error of law or manifest injustice.  *Dupont Flooring*, 2004 WL 1171208, at *1.  Plaintiffs here do not point to any change in controlling law or new evidence.  *See* Mot., *passim*.  Thus, they can argue only that there was a clear error of law or manifest injustice.  As discussed below, they have failed to make either showing.  *Infra*, § I(E)(3).

### D. The Court Should Deny The Motion Because Plaintiffs Seek To Advance Arguments They Failed To Advance In Their Briefing.

Motions for reconsideration are also not properly filed to advance arguments that a party failed to advance at the appropriate time.  *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 (VSB), 2020 WL 4699043, at *4 (S.D.N.Y. Aug. 12, 2020) (denying reconsideration and noting the moving parties' "new legal theories and factual propositions are . . . improper on a motion for reconsideration"); *Packer v. SN Servicing Corp.*, 250 F.R.D. 108, 112 (D. Conn. 2008) ("This argument comes too late and is inappropriate for a motion for reconsideration. . . . Motions for reconsideration are not designed to allow parties to make arguments that they could have and should have made before the court ruled.").  Plaintiffs first invoked scheme liability at oral

argument, so any argument based on it was forfeited or waived.  In fact, Plaintiffs admit as much in seeking reconsideration.  *See* Mot. at 3 n.2 ("Plaintiffs respectfully request that the Court exercise its discretion to review the motion in view of the significance of the issues raised in the motion, *which concern arguments and case law that had not been previously raised or briefed by the parties*.") (emphasis added).[2]

The Court also recognized the belated nature of Plaintiffs' argument.  Order at 18 ("[B]efore the hearing on the pending motion to dismiss, the Repose Plaintiffs had never advanced a 'scheme liability' argument under Rule 10b-5(a) and (c).").  It is foundational that an argument not raised in briefing is waived or forfeited.  *Lami v. Stahl*, No. 3:05-cv-1416 (MRK), 2007 WL 3124834, at *1 (D. Conn. Oct. 25, 2007) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned."); *see Local 1336, Amalgamated Transit Union, AFL-CIO v. First Student, Inc.*, No. 3:11-cv-1463 (MPS), 2013 WL 646265, at *2 (D. Conn. Feb. 21, 2013) (holding plaintiff abandoned a claim by not briefing it on summary judgment).

Thus, Plaintiffs' argument that the Court "overlooked" the Supreme Court's *Lorenzo* decision goes too far, as they never briefed any scheme liability argument based on *Lorenzo*.  Mot. at 3.  Likewise, Plaintiffs' argument that they did not previously have an opportunity to brief the cases cited by the Court because Defendants did not brief the issue is misleading.  *Id*.  The fact is that Plaintiffs did not raise the issue of scheme liability as a defense to Defendants' statute of repose arguments until oral argument, and accordingly Defendants had no reason to brief the issue. Plaintiffs cannot fairly point the finger at this Court or Defendants for their own failure, which also

---

[2] Elsewhere, Plaintiffs protest that the "court's ruling turned on legal analysis and case law that had not been advanced or briefed by Defendants and thus that Plaintiffs had no prior occasion to respond to or address."  Mot. at 3.  This is obviously incorrect, as the record shows.  At oral argument, Plaintiffs invoked scheme liability as an argument against Defendants' motion to dismiss on repose grounds.  Having raised this argument at the hearing, it is plain that Plaintiffs had prior occasion to address scheme liability arguments and case law in their opposition briefing.

cannot be used to justify reconsideration.

### E. Plaintiffs Fail To Identify Any Valid Ground For Reconsideration.

Even were the Court to overlook the foregoing fatal procedural defects, however, Plaintiffs fail to identify any valid ground to justify reconsideration. Plaintiffs have not shown "(1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Dupont Flooring*, 2004 WL 1171208, at *1 (citation and quotation omitted).

### 1. Plaintiffs Fail To Identify Any Intervening Change In The Law.

Plaintiffs do not identify (or purport to identify) "an *intervening* change in the law." *Id.* (emphasis added). Instead, they simply claim that the Order "is contrary to the Supreme Court's recent decision in *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019)." Mot. at 1. But that March 2019 decision long predated the briefing on the repose issue, so it cannot possibly qualify as an intervening change in the law. Had Plaintiffs believed that *Lorenzo* was controlling law on the issue before this Court and had they wished to bring it to this Court's attention, they could have done so—indeed, they were required to do so—in their briefing. Regardless, that 2019 decision cannot justify reconsideration of this Court's Order issued in 2021.

Even if *Lorenzo* had been decided after this Court's Order, it still would not justify reconsideration, as it is simply not controlling on the issue before the Court. *Lorenzo* does not involve the application of a statute of repose, and it is not instructive regarding how a court should apply a statute of repose to a claim of scheme liability. Thus, putting aside the fact that Plaintiffs have not pleaded scheme liability, *Lorenzo* is simply not "controlling authority" that this Court "overlooked." D. Conn. L. Civ. R. 7(c)(1).

### 2.    Plaintiffs Fail To Identify Any New, Relevant Evidentiary Development.

Similarly, Plaintiffs do not claim there is new evidence that was not previously available as a basis for reconsideration.  *Dupont Flooring*, 2004 WL 1171208, at *1.  To the contrary, Plaintiffs affirmatively assert the absence of any evidentiary issues in the Motion, describing the repose ruling as presenting "a pure and controlling question of law."  Mot. at 2.

### 3.    Plaintiffs Fail To Identify Any Clear Error Of Law Or Manifest Injustice.

This Court did not commit any error (let alone clear error of law) or cause Plaintiffs to suffer a manifest injustice.  It is simply not the case that this Court's Order was "dead wrong." *Belle Harbor*, 2007 WL 4563485, at *1 n.1 (citation and quotation marks omitted).  Rather, this Court correctly applied the law as it has consistently been applied within this Circuit for almost a decade.

Notably, Plaintiffs' Motion seeks reconsideration solely on the basis of a liability theory— scheme liability—that Plaintiffs never pleaded or briefed.  *See* Mot. 1.  Indeed, the Court carefully reviewed the pleadings and concluded that "the Repose Plaintiffs' complaints do not specifically mention Rule 10b-5(a) and (c) or 'scheme liability.'"  Order at 18.  The Court observed that Plaintiffs' complaints "repeatedly emphasize" a different theory of liability, and fail to follow the usual path—at least, for plaintiffs who actually plead scheme liability—of alleging claims "based on misstatements" and claims "based on scheme liability" in "two separate counts."  *Id*. at 18-19. Because Plaintiffs had "not attempted" to allege scheme liability claims, this Court "reject[ed] the Repose Plaintiffs' late and half-hearted attempt to re-fashion their Rule 10b-5 claim into a 'scheme liability' claim for purposes of the relevant statue of repose."  *Id*.  Plaintiffs cannot seek reconsideration on the basis of a theory that was never pleaded.  *See United States ex rel. Fabula v. Am. Med. Response, Inc.*, No. 3:12-cv-921 (MPS), 2019 WL 5726920, at *2 (D. Conn. Nov. 5,

2019) (denying motion for reconsideration that relied in part "on a theory that was not pled").

In arguing that they pleaded scheme liability, Plaintiffs liken their allegations to those in a host of other cases. Mot. at 6 & n.7 (collecting cases). But even a cursory review of the operative complaints in those cases, including a case filed after *Lorenzo*, shows express pleading of scheme liability that is drastically different than Plaintiffs' complaints, which "do not specifically mention Rule 10b-5(a) and (c) or 'scheme liability.'" Order at 18. *See, e.g.*, *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-6509 (D.N.J.), Second Am. Compl. (ECF 83) ¶ 338 (pleading that defendants "engaged in a plan, scheme and course of conduct" and alleging a bribery scheme throughout the complaint); *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, No. 20-cv-576 (S.D. Tex.), Am. Compl. (ECF 55) ¶¶ 172-79 (expressly pleading scheme liability in a complaint replete with allegations of defendants' supposed fraudulent scheme); *S.E.C. v. Kameli*, No. 17-cv-4686 (N.D. Ill.), Second Am. Compl. (ECF 192) ¶¶ 16, 366 (expressly pleading scheme liability); *Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293 (D.N.J.), Second Am. Compl. (ECF 188) ¶¶ 482-87 (expressly pleading scheme liability under Rule 10b-5(a) and (c) as a separate count); *S.E.C. v. Fiore*, No. 7:18-cv-05474-KMK (S.D.N.Y.), Compl. (ECF 2) ¶¶ 1, 106 (alleging, in first numbered paragraph, that the defendant "orchestrated a fraudulent scheme to promote and otherwise manipulate the market" and expressly pleading scheme liability); *S.E.C. v. SeeThruEquity, LLC*, No. 1:18-cv-10374-LLS (S.D.N.Y.), Compl. (ECF 4) ¶ 133 (expressly pleading scheme liability).

But even had Plaintiffs alleged scheme liability under Rule 10b-5(a) or (c), Plaintiffs face yet another issue fatal to their motion for reconsideration: Plaintiffs' argument that *Lorenzo* "expanded the scope of scheme liability" is irrelevant to the statutory repose issue decided by the Court. Mot. at 1 (quoting *S.E.C. v. Sugarman*, No. 19-cv-5998, 2020 WL 5819848, at *7

(S.D.N.Y. Sept. 30, 2020)).  More specifically, Plaintiffs' argument does not alter the Court's analysis of the application of the statute of repose.

Indeed, at least one case that addressed this issue squarely rejected Plaintiffs' argument.  In *Matin*, the court dismissed a claim as time-barred despite plaintiff's assertions of scheme liability. *Veltex Corp. v. Matin*, No. CV 10-1746 ABC PJWX, 2010 WL 3834045, at *6 & n.9 (C.D. Cal. Sept. 27, 2010).  In so holding, the court explained that "[e]ach false statement constitutes a separate violation, so the five-year period runs separately for each violation when it occurs."  *Id.*

By contrast, Plaintiffs fail to identify any case within the Second Circuit that adopts their view of scheme liability in warding off dismissal under Section 1658(b)(2).  In fact, Plaintiffs do not cite a single case—not one—where a court held that the time bar set forth in a statute of repose is impacted by allegations of scheme liability.  *See* Mot. at 3-7.  One would expect that, if the *Lorenzo* decision had the impact that Plaintiffs contend it does, there would be at least some authority applying it in the way Plaintiffs suggest.  But Plaintiffs point to no case, post-*Lorenzo*, where a court revisited a prior order in light of *Lorenzo*.  Plaintiffs point to no case, post-*Lorenzo*, where a court held that otherwise untimely statements are somehow actionable based on the reasoning in *Lorenzo*.  Plaintiffs' failure to identify any such authority is telling.

At most, Plaintiffs suggest, in requesting interlocutory review, that courts evaluate the repose issue differently in the scheme liability context.  *See* Mot. at 10 n.11.  But this handful of cases—all of which are from other jurisdictions and many of which are significantly dated—do not support their position.  These out-of-circuit decisions employ the discredited last-misrepresentation-made theory that the Court evaluated and rejected.  Order at 13-14 & n.16; *see also, e.g.*, *Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 338 (D. Mass. 2005), *cited in* Mot. 10 n.11. Indeed, some of these cases do not even involve scheme liability at all, diminishing any relevance

they could have to Plaintiffs' argument on reconsideration.  *See, e.g.*, *Equity Tr. Co. v. Kopacka*, No. 17-12275, 2018 WL 3708078, at \*3 (E.D. Mich. Aug. 3, 2018) (appearing to involve claims under Rule 10b-5(b), and not mentioning Rule 10b-5(a) or (c), or "scheme liability," in decision); *see also Kopacka*, First Am. Compl. (ECF 9), ¶ 200 (alleging securities claim based on "material misrepresentations and omissions," not scheme liability); *Cont'l Bank, Nat. Ass'n v. Vill. of Ludlow*, 777 F. Supp. 92, 101 (D. Mass. 1991) (making no reference to Rule 10b-5(a) or (c), or "scheme liability," in decision and dismissing claims as untimely).

In fact, in one case cited by Plaintiffs, the court concluded in a later ruling that allegations of scheme liability will not salvage untimely violations.  *Compare W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 57 F. Supp. 3d 950, 978 (D. Minn. 2014), *cited in* Mot. 10 n.11, *with W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 299 F. Supp. 3d 1055, 1059 (D. Minn. 2018).  In the 2018 ruling, the court rejected an argument similar to the one Plaintiffs advance here.  The *Medtronic* plaintiffs argued that they could hold defendants "accountable for the entire course of conduct—even for acts that occurred [outside the repose period]—under a continuing fraudulent scheme theory."  299 F. Supp. 3d at 1063.  The *Medtronic* plaintiffs argued that if any individual defendant "committed *any* act in furtherance of the scheme after [the repose cutoff], Plaintiffs may maintain a scheme-liability claim against that Individual Defendant for the *entire* course of conduct."  *Id*. (emphasis in original).

The *Medtronic* court rejected this theory, noting it conflicted with guidance from "a majority of courts" and recent Supreme Court precedent, including *ANZ Securities*.  *See id*. (citing, *inter alia*, *Cal. Pub. Emps.' Ret. Sys. v. ANZ Secs., Inc*., 137 S. Ct. 2042, 2051 (2017)).  Thus, even Plaintiffs' most analogous case for their scheme liability argument undermines their position, as that court properly changed course in light of guidance from the Supreme Court and other courts

on the repose question.

While Plaintiffs have cited no law or reason to suggest that this Court ruled incorrectly, they have certainly offered nothing to suggest a "clear" error or that this Court was "dead wrong." *Belle Harbor*, 2007 WL 4563485, at *1 n.1.  Indeed, as the Court itself observed, it is also "not clear" that adopting Plaintiffs' last-minute "scheme liability" theory would alter the analysis of the timeliness issue.  Order at 19 n.20.  Plaintiffs misquote the Court on this point (*see* Mot. at 7), which depended on the observations that no alleged scheme has yet been defined by a factfinder, and that issue could be hotly contested.  But the Court's observation, of course, does not alter the fact that Plaintiffs have not only failed to plead scheme liability, but have also failed to cite any persuasive authority suggesting that allegations of scheme liability somehow toll the statute of repose.

The Court should deny reconsideration.

## II.   The Court Should Deny The Request For Interlocutory Review.

Plaintiffs alternatively ask for the Court to certify its Order for interlocutory review.  Mot. at 7 (citing 28 U.S.C. § 1292).  In making this request, Plaintiffs do not limit their arguments to their belatedly-advanced scheme liability argument, but rather focus on their last-misrepresentation-made theory.  The Court should deny this request.

### A.   Standard Of Review.

The courts of appeals have jurisdiction over appeals from all "final decisions of the district courts," 28 U.S.C. § 1291, so "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits."  *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (SRU), 2018 WL 834228, at *1 (D. Conn. Feb. 12, 2018) (quoting *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429-30 (1985)).  Section 1292(b) creates a "rare exception to the final judgment rule."  *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996).  That statute

allows a district judge to certify the interlocutory appeal of an order when the judge is "of the opinion" that: (1) the "order involves a controlling question of law," (2) the question presents "substantial ground for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Second Circuit has cautioned that Section 1292(b) should not be "literally construed," and that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24-25 (2d Cir. 1990). The party seeking certification under Section 1292(b) "bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).

Whether to certify an order for interlocutory appeal "is entirely a matter of discretion for the District Court." *In re City of New York*, 607 F.3d 923, 933 (2d Cir. 2010). This means that district courts have "unfettered discretion to deny certification . . . even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, No. 3:17-cv-579 (SRU), 2019 WL 10984250, at *1 (D. Conn. Oct. 29, 2019) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007)).

### B.   None Of The Factors Supports Certification Here, And The Court Should Exercise Its Discretion And Deny Certification.

#### 1.   The Controlling Question Of Law Factor Does Not Support Certification.

"In determining whether a controlling question of law exists, a district court should consider whether: (1) reversal of the district court's opinion could result in dismissal of the action; (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or (3) the certified issue has precedential value for a

large number of cases." *Adams v. Nat'l Eng'g Serv. Corp.*, No. 07-CV-1035 (JCH), 2009 WL 10688624, at *2 (D. Conn. June 26, 2009). Plaintiffs' arguments on this point serve only to undermine the notion that the Order presents a controlling question of law that supports certification. Plaintiffs argue that interlocutory review "would clarify the scope of discovery and proof that the parties could present at trial" and "have significant precedential value for a large number of cases." Mot. at 9. Those arguments reveal that this factor does not compel certification, as they concede the limited impact of the Order on the course of proceedings. And Plaintiffs are wrong on both counts.

First, a contrary ruling would have little effect, if any, on discovery. The earliest time-barred statement that the Court dismissed was the alleged February 6, 2014 statement. *See* Order at 7, App'x A. That date marks the start of the *Ontario* Plaintiffs' putative class period. Second Am. Compl. (ECF 310) ¶ 50 ("The Class Period begins on February 6, 2014, the date Teva announced its fourth quarter 2013 and full year 2013 financial results in a press release."). The *Ontario* Plaintiffs also allege that this statement was false and misleading. *Id*. ¶ 183. Under the terms of the consolidation order, counsel for the *Ontario* Plaintiffs "conduct[s] all pretrial and discovery proceedings on behalf of all plaintiffs in the Direct Actions, including briefing and arguing all motions and conducting all fact and expert discovery." Joint Mot. (ECF 311) at 18; *see* Order (ECF 341) (granting joint motion to consolidate). In fact, under the Court's consolidation order, the direct-action plaintiffs (of which the Plaintiffs are a subset) play a secondary role in the discovery process. *See, e.g.*, Joint Mot. (ECF 311) at 18 ("Plaintiffs' counsel in the Direct Actions may not separately serve discovery without leave of Court. . . ."). Simply put, discovery will almost certainly be essentially the same regardless of the impact of the Order

in the above-captioned actions.[3]

Second, Plaintiffs overstate the impact that a ruling would have on other cases.  *See* Mot. at 9-10.  Indeed, the argument that interlocutory review would "resolve this important issue" (*id.* at 10) ignores that this issue has been effectively resolved within the Second Circuit since 2013. *See Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (holding statute of repose not subject to equitable tolling).  As Defendants previously observed, "Plaintiffs do not and cannot cite a single case since 2013 that supports their argument."  Defs.' Reply (ECF 538) at 1.  The Court noted this fact approvingly, concluding it "lends credence to the Repose Defendants' assertion that the law on this point leans in their favor."  Order at 14.  And in any event, "[c]ertification provides a means of achieving *case-specific* accommodation of the antagonistic pressures that surround final-judgment doctrine that should not depend on general importance," so the "opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement."  16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3930 (3d ed.) (emphasis added). For this reason, even accepting *arguendo* that another repose ruling from the Second Circuit could clarify this issue for other cases, that alone will not justify interlocutory review if Plaintiffs have not shown entitlement to such review in these six cases.  *See Lorentz v. Westinghouse Elec. Corp.*, 472 F. Supp. 954, 956-57 (W.D. Pa. 1979) (acknowledging that the court's ruling could have broad

---

[3] For these reasons, Plaintiffs' reliance on *UBS Americas* is misplaced.  Mot. at 9 (citing *Fed. Hous. Fin. Agency v. UBS Ams., Inc*., 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012)).  In that case, there was an open question as to whether the interlocutory review of the timeliness ruling could "terminate the litigation" because certain actions would be barred wholesale.  *Id.*  Here, however, neither the Court's partial dismissal nor any putative reversal of the Order would terminate any of the cases.  Order at 23.  And unlike in *UBS Americas*, an interlocutory ruling will not "importantly affect the conduct of [the] action."  858 F. Supp. 2d at 337 (quoting *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978)).  As explained above, such a ruling would not "narrow the scope of discovery" as Plaintiffs wrongly suggest.  *Id.* at 338.

implications for other cases, but declining to certify it for interlocutory appeal since appeal would not materially advance ultimate termination of present case.).

The wide gap between the type of case in which a court finds the controlling-question-of-law factor readily satisfied and this case underscores Plaintiffs' failure to satisfy this requirement. If "a reversal of the district court's order would terminate the action," then courts conclude the "matter is controlling." *U.S. ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010) (quoting *Klinghoffer*, 921 F.2d at 24). To be sure, this factor is not satisfied only when interlocutory review could terminate an entire action, but that is the paradigmatic scenario that would satisfy this factor. *Klinghoffer*, 921 F.2d at 24 ("[I]it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."); *Aggrenox*, 2018 WL 834228, at *5 (noting that "[q]uestions of personal or subject matter jurisdiction are most commonly appealed under section 1292(b) because resolution of those issues could potentially dispose of the case without need to delve into the merits") (citing *In re Complete Retreats*, No. 3:07-mc-152 (SRU), 2008 WL 220752, at *2 n.3 (D. Conn. Jan. 23, 2008)). Plaintiffs cannot argue that a reversal would terminate these actions; rather, they (wrongly) contend that it would "clarify the scope" of evidentiary issues in the case. Mot. at 9. The modest effect of Plaintiffs' requested relief underscores the extent to which Plaintiffs fail to show a controlling question of law exists and warrants interlocutory review.

### 2. There Is Not Substantial Ground For Difference Of Opinion.

The second prong "requires more than a claim that the court's ruling was wrong." *Drake*, 736 F. Supp. at 503. "This element may be met by showing that (1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." *Tarpon Bay*, 2019 WL 10984250, at *2 (citing *Drake*, 736 F. Supp. 2d at 503). Once again, neither ground is met here.

18

First, there is no *recent* conflicting authority on the repose issue.  Mot. at 10 n.11.  To the contrary, Plaintiffs have offered no answer to Defendants' contention that the law on this question has been settled in the Second Circuit at least since the 2013 *IndyMac* decision.  *See* Defs.' Reply (ECF 538) at 5; Order at 14 (agreeing with Defendants that "the law on this point leans in their favor").  And the law on this point has only become more settled since the Supreme Court underscored *IndyMac*'s holding that statutes of repose are not subject to equitable tolling.  *ANZ Sec.,* 137 S. Ct. at 2045.  While the Court acknowledged historical conflicting authority on this point, it—like Plaintiffs—did not discuss any recent cases holding that statutes of repose were subject to equitable tolling.  Indeed, it was for this very reason that the Court concluded that Defendants' repose authorities were "stronger."  Order at 14.  Simply put, to the extent there was a conflict on this question within this Second Circuit, that conflict ended in 2013.

Without any recent authority to support their conflicting-authority argument, Plaintiffs divert attention to cases dealing with ancillary issues.  *See* Mot. at 11 (citing *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009) & *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014)).  But these cases involve a different issue altogether; they evaluate the application of Section 1658(b) in connection with the date of the purchase or sale of securities.  That transaction-based approach is not at issue here.  Plaintiffs cannot show entitlement to interlocutory review based on an issue not briefed by the parties and not addressed in the Order.

Plaintiffs also point to post-2013 decisions from other jurisdictions (*see* Mot. at 10 & n.11), but "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion" for the purposes of Section 1292(b).  *Adams*, 2009 WL 10688624, at *2 (quoting *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003)); *see Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 3:12-cv-269 (JBA), 2013 WL

12284920, at *2 (D. Conn. Dec. 5, 2013); *Cerrato v. Solomon & Solomon*, No. 3:11-cv-623 (JCH),

2013 WL 12286084, at *2 (D. Conn. Jan. 4, 2013); *In re Methyl Tertiary Butyl Ether Prods. Liab.*

*Litig.*, 174 F. Supp. 2d 4, 8 (S.D.N.Y. 2001) (rejecting "disagreement outside this Circuit" in

analyzing whether a substantial ground for difference of opinion exists); *In re NASDAQ Mkt.*

*Makers Antitrust Litig.*, 938 F. Supp. 232, 235 (S.D.N.Y. 1996) ("[O]pinions [in other districts] do

not control in this Circuit and do not in themselves create 'substantial grounds' for a difference of

opinion.").

      In fact, to the extent there has been additional recent authority on the repose question, that

authority favors Defendants.  For instance, Plaintiffs acknowledge a very recent decision from the

Southern District that adopted the same approach as the Order and granted the same relief.  *See*

Mot. at 11 n.12 (citing *Abu Dhabi Inv. Auth. v. Mylan N.V.*, No. 20-CV-1342 (JPO), 2021 WL

516310, at *3 (S.D.N.Y. Feb. 10, 2021)).  *Abu Dhabi* is instructive.  Like this Court, it determined

that recent Supreme Court authority supported dismissal.  2021 WL 516310 at *3 (citing *ANZ*

*Secs.*, 137 S. Ct. 2042 & *CTS Corp. v. Waldburger*, 573 U.S. 1 (2014)).  And like this Court, it

adopted the violation-specific understanding of Section 1658(b)(2) advanced in cases like *Kuwait*

*Investment Office v. American International Group, Inc.*, 128 F. Supp. 3d 792, 807 (S.D.N.Y.

2015).[4]  This illustrates that the case law has continued to coalesce on this issue in light of recent

Supreme Court precedents.  *Accord Khoury v. Thota*, No. 4:19-CV-4806, 2020 WL 6494986, at

*4 (S.D. Tex. Oct. 1, 2020) ("Federal law bars the plaintiff's securities fraud claims, to the extent

that they are based on misrepresentations made more than five years before the plaintiff filed this

---

[4] In laboring to distinguish *Abu Dhabi*, Plaintiffs make some puzzling arguments and misread the
Order.  They claim that *Abu Dhabi* likened the plaintiff's argument to equitable tolling, but claim
that this Court "eschewed" that "flawed . . . analogy" in its Order.  Mot. at 11 n.12.  In support,
Plaintiffs point not to the Order, but to the hearing transcript.  *See id.*  In the Order, the Court
recognized Plaintiffs' argument for precisely what it is—a variant of equitable tolling.  Order at
19 (rejecting "[e]quitable arguments"); *id.* at 20 (same).

lawsuit. . . .  This statute of repose begins to run from the date of the misrepresentation or omission that forms the basis of the securities law violation.").

As for the second point, this case is not "particularly difficult *and* of first impression within this Circuit." *Tarpon Bay*, 2019 WL 10984250, at *2 (emphasis added).  The long line of cases dismissing securities claims as untimely under Section 1658(b)(2)'s statute of repose demonstrate as much.  *See* Mot. to Dismiss (ECF 464) at 4-5 (collecting cases); *see also* Order at 14 (discussing "cases in which district courts within the Second Circuit have granted the precise relief that the Repose Defendants" sought in their motion to dismiss).

In sum, there is no recent conflict on this question in the Second Circuit; rather, it appears to have been settled for almost a decade.  This lengthy trend of unanimity does not support interlocutory review.

### 3.    Interlocutory Review Will Not Materially Advance The Ultimate Termination Of The Litigation.

"The third prong is met where an intermediate appeal would advance the ultimate termination of a litigation or if the appeal would advance the time to trial or shorten the trial." *Tarpon Bay*, 2019 WL 10984250, at *2 (citation and quotation marks omitted).  Here, Plaintiffs contend that interlocutory review would avoid piecemeal resolution of the claims, foster settlement, and avoid protracted litigation.  Mot. at 12-13.  Again, these factors do not favor interlocutory review.

Plaintiffs' proposed interlocutory review would only lengthen proceedings, so "enabl[ing] the Second Circuit to immediately address the question of what triggers the repose period" will not advance the ultimate termination of this litigation.  Mot. at 12.  For starters, Plaintiffs presume that the Second Circuit would reach a different conclusion on this point (*see id.*), but reversal is unlikely.  The recent authority on this point is much more settled than Plaintiffs let on.  *See supra*,

§ II(B)(1), (2); Order at 14.  And the Second Circuit has affirmed decisions closely tracking the reasoning of the Order.  For instance, the district court in *Colbert* followed Defendants' authorities in dismissing time-barred misstatements, recounting that, "[c]ourts in this district have . . . consistently stated that the five-year period begins to run from the time that the allegedly fraudulent representations were made."  *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 336 (S.D.N.Y. 2019) (citing *Boudinot v. Shrader*, No. 09 Civ. 10163, 2012 WL 489215, at *4 (S.D.N.Y. Feb. 15, 2012) & *Kuwait Inv. Office*, 128 F. Supp. 3d at 807)).  The Second Circuit affirmed without revisiting the repose ruling.  *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 12 (2d Cir. 2020).  Given the weight of authority within the Circuit since *IndyMac*, the most likely outcome is that the Second Circuit would affirm the Order.  Thus, interlocutory review would cause delay without altering the substance of this litigation.

Plaintiffs' related argument that "[i]nterlocutory appeal would conserve scarce judicial resources by avoiding the potential for piecemeal resolution of Plaintiffs' claims" is peculiar.  Mot. at 12.  Plaintiffs' proposal *guarantees* piecemeal resolution of the claims (by interjecting an interlocutory appeal) ostensibly to mitigate the *possibility* of piecemeal resolution of the claims (in the unlikely event that the Second Circuit reverses the repose ruling).  This is a non-sequitur.[5]  *See Ricci v. DeStefano*, No. 3:04-cv-1109 (JBA), 2011 WL 13227942, at *3 (D. Conn. May 5, 2011) (denying interlocutory appeal because it would require "[p]roceeding in a piecemeal fashion, for which the Second Circuit has expressed a clear distaste," and "likely necessitate a delay in trial").

---

[5] Plaintiffs spin off a variant of this argument, contending that the "complex nature of this consolidated action" would streamline the cases and avoid "protracted litigation."  Mot. at 13 (quotation and citation omitted).  Of course, the Order has just that streamlining effect.  And again, Plaintiffs' argument that an interlocutory appeal here avoids protracted litigation makes little sense.  Plaintiffs' authority in support underscores that point, as there (unlike here), interlocutory review had the potential to resolve the entire litigation.  *See UBS Ams.*, 858 F. Supp. 2d at 338, 340-41 (certifying question in part because appellate review could potentially resolve all of plaintiff's claims, so "an immediate appeal may expedite the conclusion of this litigation").

Plaintiffs' argument that interlocutory review would "hasten the termination of this litigation through settlement" is also misplaced.  Mot. at 12-13 (citation and quotation marks omitted).  Plaintiffs fail to explain in what way this argument is different than an argument that could be advanced in all cases with respect to an order like the one this Court issued.  *See Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 855 F. Supp. 438, 440 & n.3 (D. Me. 1994) (rejecting argument that "the increased likelihood of settlement in this case justifies certification," noting that "[r]esolution of nearly any disputed issue of law will to a greater or lesser extent, make settlement more probable").

For all these reasons, the Court should deny Plaintiffs' request for interlocutory review.  Even if the Court were to find some or all of the Section 1292(b) factors met, it should still exercise its discretion to deny interlocutory review for the reasons discussed above.  *See, e.g.*, *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002) (exercising discretion and denying request for interlocutory appeal even when some of Section 1292(b)'s requirements were met; *cf. Tarpon Bay*, 2019 WL 10984250, at *1 (recognizing that "[d]istrict courts have 'unfettered discretion to deny certification . . . even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met.'") (quoting *World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d at 144).

### C.    Interlocutory Review Is Not Frequently Granted To Resolve Timeliness Issues, And Is Typically Limited To Potentially Case-Terminating Questions.

That none of the three relevant factors support interlocutory review should come as no surprise given the nature of the Court's Order.  While Plaintiffs suggest that interlocutory review is commonly granted when a district court holds "a particular claim is time-barred," the case law reveals no such tendency.  Mot. at 8.  To the contrary, courts routinely deny interlocutory review of timeliness questions involving statutes of repose or limitations.  *See, e.g.*, *In re Brookhaven*

*Nat'l Lab. Trichloroethylene Cases*, No. 19CV4839GRBRML, 2021 WL 232560, at *2 (E.D.N.Y. Jan. 23, 2021) (denying certification of interlocutory appeal of limitations issue); *Fed. Hous. Fin. Agency v. Royal Bank of Scotland Grp. PLC*, 124 F. Supp. 3d 92, 103 (D. Conn. 2015) (denying certification of interlocutory appeal of limitations and repose issues); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13CV6705 DLC, 2014 WL 5017822, at *2-3 (S.D.N.Y. Sept. 30, 2014) (denying certification of interlocutory appeal of repose issue); *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, No. 11CV6189 DLC, 2014 WL 4276420, at *7 (S.D.N.Y. Aug. 28, 2014) (denying certification of interlocutory appeal of limitations and repose issues), *aff'd sub nom. Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017); *Ellis v. Gen. Revenue Corp.*, No. 3:09-CV-1089 CFD, 2011 WL 2669155, at *1 (D. Conn. July 6, 2011) (denying certification of interlocutory appeal of limitations issue).

In suggesting that interlocutory review of timeliness rulings are commonplace, Plaintiffs cite several distinguishable cases. *See* Mot. at 8 & n.9. In those cases—unlike here—appellate review had a potentially dispositive, case-terminating impact. *See, e.g.*, *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, No. 09-cv-8755 (S.D.N.Y. Mar. 15, 2012), ECF 56 (certifying request for interlocutory review after denying motion to dismiss plaintiffs' claims as time-barred, as reversal could terminate the case); *U.S. ex rel. Wood v. Allergan, Inc.*, No. 10-CV-5645, 2017 WL 1843288, at *1 (S.D.N.Y. May 4, 2017) (noting that the appellate issue "could result in [the action's] termination"); *UBS Ams.,* 858 F. Supp. 2d at 338 (determining that interlocutory review of the timeliness ruling could "terminate the litigation" because certain actions would be barred wholesale); *Litzler v. CC Investments, L.D.C.*, No. 02-civ-6313, 2003 U.S. Dist. LEXIS 11009, at *4 (S.D.N.Y. Mar. 6, 2003) (noting repeatedly that if the order to be appealed "were to be reversed, the plaintiff's action would be untimely, and would terminate"); *see also Plumbers' & Pipefitters'*

*Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*, No. 08 CV 1713 ERK

WDW, 2011 WL 6182090, at *5 (E.D.N.Y. Dec. 13, 2011) (stating the court "would be willing to

entertain a motion" to certify an order for interlocutory review "[b]ecause an order granting a

motion to intervene is not appealable," so otherwise, party would be unable to attain review).  By

contrast, Plaintiffs here do not argue—nor could they argue—that reversal of the Court's Order

would terminate these actions.  *See* Mot. at 9; Order at 2, App'x A.  Thus, Plaintiffs' cases hardly

suggest interlocutory review is needed for the much more limited repose ruling at issue here.

<u>**CONCLUSION**</u>

For these reasons, Defendants respectfully request that this Court deny the Motion and all

relief requested within it, together with such other and further relief this Court deems proper.

Respectfully submitted,

/s/ *Jason D. Frank*
Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro (ct30882)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 951-8455
Fax: (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

Sheron Korpus (admitted *pro hac vice*)
Andrew Schwartz (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
skorpus@kasowitz.com
aschwartz@kasowitz.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*