UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-558 (SRU) |

# ORDER

During a status conference call on March 3, 2021, I denied the Defendants' request that I delay ruling on the Plaintiffs' pending motion for class certification, doc. no. 419, to allow the parties to engage in further written discovery and supplemental briefing regarding the Plaintiffs' securities trading activity. *See* Conf. Mem. and Order, Doc. No. 729, at 3–4. This Order supplements the statements that I made on the record explaining my decision.

On February 4, 2021, a court in the Eastern District of Pennsylvania removed Bleichmar, Fonti & Auld LLP ("BFA") as lead counsel for the lead plaintiff in that putative securities fraud class action. *See Pelletier v. Endo Int'l PLC*, 2021 WL 398495, at *1–2 (E.D. Pa. Feb. 4, 2021) ("*Endo*").[1] BFA is also lead counsel for the lead plaintiff (Ontario Teachers' Pension Plan Board ("Ontario Teachers'")) and named plaintiff (Anchorage Police & Fire Retirement System ("Anchorage")) (together, the "Plaintiffs") in this putative securities class action. *See* Ruling, Doc. No. 124, at 27–28.

Although the only clear connection between this action and the *Endo* action is the identity of the lead counsel, the Defendants claim that the recent *Endo* decision raises many questions in

---

[1] In disqualifying BFA as lead counsel, the *Endo* Court focused on what it perceived to be BFA's and the lead plaintiff's: (1) "representations to this Court, many of which [regarding the timing of certain securities purchases] . . . were incorrect or misleading"; (2) attempts to "mislead judges in different courthouses" in several ways; (3) "obfuscat[ing] the role of [a third-party investment manager] as the sole decisionmaker in [the lead plaintiff's] stock purchases"; and (4) potential conflicts with the class based on the timing of the lead plaintiff's securities purchases. *Endo*, 2021 WL 398495, at *11–12.

this matter.  In a February 12 letter to the Plaintiffs, the Defendants claimed that, "[a]s in *Endo*, BFA and Plaintiffs in this Action have gone to great lengths to avoid producing any documents substantiating their Teva transactions and the persons involved."  Letter, Ex. B to Defs.' Submission, Doc. No. 720-2, at 3.  Although the Plaintiffs denied those allegations, to try to resolve any potential issues, on February 18 the parties entered into a stipulation allowing for certain productions and disclosures regarding the Plaintiffs' securities trading activity.  *See* Stipulation, Ex. C to Defs.' Submission, Doc. No. 720-3.

The Defendants are not satisfied with the Plaintiffs' production pursuant to that stipulation.  In the Defendants' view, the Plaintiffs' "partial disclosures and productions . . . raise serious concerns about not only BFA's prior representations to the Court, but also Plaintiffs' ability to satisfy the requirements of Rule 23."  Defs.' Submission, Doc. No. 720, at 2.  According to the Defendants, the "new"—and still-missing—information regarding the Plaintiffs' trading activity might impact no less than all of the following "important issues": "materiality, loss causation, class predominance, lead counsel's appointment, and Plaintiffs' standing, knowledge, reliance, adequacy, and typicality."  *Id.*

The Defendants' concerns regard two main topics:  Plaintiffs' failures to (1) disclose all their trades in Teva securities, and (2) identify relevant third parties.  Regarding (1), the Defendants claim that Ontario Teachers' failed (until recently) to disclose that, after the Class Period, it transacted in Teva Notes—some of the same securities that are at issue in this case— and that, during the Class Period, it traded in several Teva securities that are not the subject of this action:  Teva corporate debentures, credit default swaps ("CDS") to hedge against its holdings in those corporate bonds, and Teva common stock, which traded in Israel.  *See* Defs.'

Submission, Doc. No. 719, at 9, 11; Letter, Ex. B to Defs.' Submission, Doc. No. 720-2, at 5; Pls.' Submission, Doc. No. 723, at 8.

Regarding (2), the Defendants claim that the Plaintiffs have not disclosed the existence of all third parties who might possess relevant information regarding the Plaintiffs' transactions in Teva securities. The Defendants' complaints on this score are wide-ranging. For instance, the Defendants report that the Plaintiffs have not identified by name all the ETFs or funds in which Ontario Teachers' invested that themselves held Teva securities. *See* Defs.' Submission, Doc. No. 720, at 4.[2] The Defendants are also concerned that the Plaintiffs did not (until recently) disclose the existence of outside investment managers. For example, all of Anchorage's trades in the Teva Notes were actually undertaken by the investment management firm Barrow Hanley. *See* Defs.' Submission, Doc. No. 720, at 6; Pls.' Submission, Doc. No. 723, at 9. The Defendants claim, then, that the Plaintiffs have been falsely representing that Anchorage itself "purchased" the relevant Teva Notes. *See* Defs.' Submission, Doc. No. 720, at 6. And, according to the Defendants, the existence of any such investment managers should have been disclosed as part of the Plaintiffs' initial disclosures under Rule 26(a)(1).

The Defendants also point to several purported "one-on-one" meetings in 2013 and 2015 between both Anchorage's investment manager and Ontario Teachers' investment managers and Teva management.[3] The Defendants also claim that several investment managers involved with

---

[2] Ontario Teachers' has represented that it had "indirect and passive" investments in such funds, but that it never held legal title to the securities bought and sold by those funds. *See* Letter, Ex. E to Defs.' Submission, Doc. No. 719-2, at 5. Still, the Defendants claim that information about those third-party funds could be relevant to determining Ontario Teachers' typicality. In support, the Defendants cite *In re Groupo Televisa Sec. Litig.*, 2020 WL 3050550 (S.D.N.Y. June 8, 2020). In that case, the court denied class certification: The lead plaintiff was atypical because "the price drop which injured the other class members enriched" the lead plaintiff, which owned 75 percent of a fund that shorted the relevant securities. *See id.* at *7–8. Any analogy between that case and this case is speculative.

[3] For instance, the Defendants point to evidence of a 2013 "one-on-one" meeting between Barrow Hanley and Teva management. *See* Email and Memo, Ex. H to Defs.' Submission, Doc. No. 719-5. Similarly, the Defendants claim that Ontario Teachers' has "four separate third-party investment managers who also appear to

3

Ontario Teachers' "traded for an Ontario subsidiary," but no further details are known. *See* Defs.' Submission, Doc. No. 719, at 10.  Further, according to the Defendants, Ontario Teachers' failed to disclose the fact that its subsidiary—Glass, Lewis & Co., LLC—was "uniquely situated and intimately involved with Teva and its shareholders."  Defs.' Submission, Doc. No. 720, at 11–13.

The Defendants claim that this "new" information is vital.  Had they known the full extent of the Plaintiffs' trading activity and the roles of relevant third parties, the Defendants claim they "would not have agreed to forgo challenging Plaintiffs' adequacy and typicality."  *Id.* at 10.  According to the Defendants, the "new" information also raises potential issues regarding predominance because of the "Plaintiffs' unique access to Teva's management."  *Id.* at 7.

As I have already indicated on the record, I disagree with the Defendants.  I view their complaints as belated, specious, and, in several cases, irrelevant.  The "new" information the Defendants' identify does not warrant re-opening discovery and delaying my ruling on the Plaintiffs' motion for class certification.  Regarding the Plaintiffs' trading in Teva securities, there is no dispute that the Plaintiffs long ago fully and accurately disclosed all their transactions during the Class Period in Teva securities that are at issue in this case.  *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv) (requiring representative plaintiff to submit certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint"); App. D to Second Am. Compl., Doc. No. 310, at 180–88 (certifications).  In my view, the fact that Ontario Teachers' apparently transacted in Teva Notes after the Class Period in this matter is essentially irrelevant.[4]  It is also irrelevant that, during the

---

have met one-on-one with management" at a 2015 health care conference.  Defs.' Submission, Doc. No. 719, at 6; Teva Internal Document, Ex. I to Defs.' Submission, Doc. No. 719-6.
[4]     The Defendants point out that "a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class

Class Period, Ontario Teachers' transacted in several Teva securities that are not the subject of this action—Teva corporate debentures, credit default swaps to hedge their holdings in those corporate bonds, and Teva common stock, which traded in Israel.  *See* Defs.' Submission, Doc. No. 719, at 9, 11; Letter, Ex. B to Defs.' Submission, Doc. No. 720-2, at 5; Pls.' Submission, Doc. No. 723, at 8.

The Defendants also make a mountain out of a molehill with respect to the role of third-party investment managers.  In my view, the Plaintiffs were not required in this case to disclose the existence of third-party investment managers as part of their initial disclosures under Rule 26(a)(1).  That rule requires a party to provide information that it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A).  That disclosure obligation "cover[s] only information that the disclosing party may use to support its position." Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment; *see also Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *5 (S.D.N.Y. Dec. 11, 2020) ("[T]here is no requirement to disclose anything that the disclosing party will not use, which may include much that is harmful to its case.") (quoting 8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2053 (3d ed. 2020)).  The Plaintiffs have not thus far relied on any information regarding third-party investment managers to support their case, and they represent that they will not.  The Defendants do not claim otherwise.

The "one-on-one" meetings that Teva claims occurred between the Plaintiffs' investment managers and Teva management in 2013 and 2015, *see supra* note 3, also do not suggest any

---

representative." *In re Hebron Tech. Co., Ltd., Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) (quoting *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000)).  That may be true when the acquisition occurs after the alleged corrective disclosure but before the end of the class period.  But the Defendants offer no citation or logical reason to reach the same conclusion where, as here, the relevant acquisition occurred nearly two years *after* the end of the class period.  In my view, such an acquisition is irrelevant.

impropriety.  First, the information leading to the "discovery" of these meetings is not "new."  Although the meetings' connection to this case might not have always been clear, the Defendants have known about the meetings since they happened—after all, Teva's management was present.  *See* Email and Memo, Ex. H to Defs.' Submission, Doc. No. 719-5; Teva Internal Document, Ex. I to Defs.' Submission, Doc. No. 719-6.[5]  Thus, the Defendants knew of these meetings in December 2019, when they stipulated "that they will not advance at any stage of the case the arguments that [the Plaintiffs] . . . do not have standing to advance the claims that are the subject of the amendments [in the Second Amended Complaint], or that Plaintiffs are not adequate or typical representatives for purposes of representing the class."  Joint Mot. to Consolidate, Doc. No. 311, at 15; Consolidation Order, Doc. No. 352, at ¶ 7.

Second, the existence of these "one-on-one" meetings does not raise any red flags.  The fact that the Plaintiffs used investment managers to help manage their money is not suspect and does not suggest that the Plaintiffs fail to satisfy Rule 23(a)'s typicality and adequacy requirements.  *See, e.g.*, *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012) ("[W]hile [lead plaintiff] delegated responsibility over investment decisions to outside investment managers, this Court and others have held that neither typicality nor adequacy are defeated when institutional investors give investment managers discretionary authority to make investment decisions.").  Further, in my understanding, meetings between company management and investment managers are routine and ubiquitous (akin, for instance, to analyst conference calls).  Thus, the fact that meetings occurred between the Plaintiffs' investment managers and Teva management does not suggest that the Plaintiffs are atypical class

---

[5] Similarly, the information that the Defendants cite with respect to Glass Lewis comes entirely from long-available public sources, such as Teva's SEC filings, Glass Lewis's website, and a *Wall Street Journal* article.  *See* Defs.' Submission, Doc. No. 720, at 12–13 & nn. 22, 24–25.

6

representatives.  Certainly, there is no suggestion that material, non-public information was divulged at any meeting between Teva management and one of the Plaintiffs' investment managers.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315–316 (S.D.N.Y. 2014).  The Defendants apparently claim that the mere existence of these meetings warrants re-opening discovery to get to the bottom of what may or may not have been discussed, but I disagree.

The Defendants also indicated that Ontario Teachers' standing is now in question because Ontario Teachers' may not have actually owned the Teva securities that it claims it did.  Again, there is no reason the Defendants could not have raised this issue long ago, including in their class certification briefing.[6]  No evidence suggests that Ontario Teachers' did not hold legal title to the Teva securities that it certifies it owned.  The Plaintiffs have also alleged that they (1) suffered an injury-in-fact, (2) caused by the Defendants' purported fraud, that (3) is redressable.  *See* Second Am. Compl., Doc. No. 310, at ¶¶ 22, 24 (alleging that the Plaintiffs purchased the relevant Teva Securities and "suffered damages as a result of the violations of the federal securities laws alleged herein"), 180–88 (certifications).  If the Defendants choose at some point to make a further argument regarding the Plaintiffs' standing, I will evaluate that challenge.  But I will not delay deciding the Plaintiffs' pending motion for class certification for that purpose.

The Defendants freely admit that the *Endo* decision was the catalyst for their recent blitz regarding the Plaintiffs' trading activities.  In my view, the *Endo* decision is virtually irrelevant.  So far as I can tell, BFA's written and oral representations to me in this case have been truthful and candid:  I do not share the *Endo* Court's concerns regarding BFA.

---

[6]  As already discussed, the Defendants had documents within their possession, custody, and control suggesting the relationship between the various investment managers and Teva management.  Further, the Defendants pointed out during our March 3 status conference that, in their view, they have not waived their ability to challenge the Plaintiffs' standing, so long as that challenge concerns issues *other than* those added to the Second Amended Complaint.  *See* Joint Mot. to Consolidate, Doc. No. 311, at 15 (agreeing that Defendants will not "advance at any stage of the case the arguments that [the Plaintiffs] . . . do not have standing to advance the claims that are the subject of the amendments" in the Second Amended Complaint).

Over one year ago, the Defendants conceded that the Plaintiffs were typical and adequate class representatives. Based on a decision in a different case involving BFA, the Defendants in recent weeks experienced buyer's remorse and sought information from the Plaintiffs regarding their trading activities. That information has confirmed that the Plaintiffs accurately represented the entirety of their transactions during the Class Period in Teva securities at issue in this case. And none of the information gives me pause or warrants halting this case's progress to delve into tangentially related topics (at best) that the Defendants either long ago conceded or abandoned.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge