# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:19-cv-513 (SRU)<br>No. 3:19-cv-655 (SRU)<br>No. 3:19-cv-657 (SRU)<br>No. 3:19-cv-923 (SRU)<br>No. 3:19-cv-1167 (SRU)<br>No. 3:20-cv-83 (SRU) |

## RULING AND ORDER

In this consolidated action,[1] numerous plaintiffs have sued Teva Pharmaceutical Industries, Ltd. ("Teva"), and several of Teva's current and former employees and officers (the "Defendants"). In the main, the plaintiffs allege that the Defendants violated federal securities laws by misrepresenting the reasons for Teva's financial success. More specifically, the plaintiffs allege that the Defendants publicly attributed Teva's success to good business decisions when, in fact, Teva was thriving because it was artificially and collusively inflating the prices of certain generic drugs that it manufactured.

This ruling addresses a motion for reconsideration or, in the alternative, for interlocutory appeal made by opt-out plaintiffs in six direct actions (the "Reconsideration Plaintiffs").[2]

---

[1] I have consolidated the over two-dozen cases pending before me related to the same subject matter. *See* Consolidation Ruling, Doc. No. 341 (also available at *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus., Ltd.*, 2020 WL 1181366 (D. Conn. Mar. 10, 2020)); Consolidation Order, Doc. No. 352. The consolidated case consists of four class actions that are consolidated for all purposes and twenty-one "direct" actions consolidated for all pre-trial purposes in which the plaintiffs have indicated that they will "opt out" of the class that I have now certified. *See In re Teva Sec. Litig.*, 2021 WL 872156 (D. Conn. Mar. 9, 2021).

[2] Those are: (1) *Mivtachim The Workers Social Ins. Fund, Ltd., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-513; (2) *Migdal Ins. Co., Ltd., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-655; (3) *Oregon v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-657; (4) *Migdal Mut. Funds, Ltd. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-923; (5) *Psagot Mut. Funds, Ltd., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-1167; and (6) *Internationale Kapitalanlagegesellschaft mbH v. Teva Pharm. Indus., Ltd., et al.* ("*INKA*"), No. 3:20-cv-83.

Recently, I granted the Defendants' partial motion to dismiss portions of the Reconsideration Plaintiffs' claims that were barred by relevant statutes of repose. *See In re Teva Sec. Litig.*, 2021 WL 231130, at *3–12 (D. Conn. Jan. 22, 2021) (the "Repose Ruling"). The Reconsideration Plaintiffs ask me to reconsider my Repose Ruling or, in the alternative, to certify it for interlocutory appeal.

For the following reasons, the Reconsideration Plaintiffs' motion is **denied**.

## I.      My Repose Ruling and Procedural Background

The Reconsideration Plaintiffs bring claims, in relevant part, pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and the analogous provisions of the Pennsylvania Securities Act of 1972 (the "PSA"). The Exchange Act contains a five-year statute of repose applicable to claims brought pursuant to Section 10(b) and Rule 10b-5. *See* 28 U.S.C. § 1658(b)(2) (explaining, in relevant part, that a Section 10(b) or Rule 10b-5 claim "may be brought not later than . . . 5 years after such violation"). The PSA contains an analogous time-bar. *See* 70 Pa. Stat. § 1-504(a).

On January 22, 2021, I granted the Defendants' partial motion to dismiss the Reconsideration Plaintiffs' Section 10(b), Rule 10b-5, and PSA claims to the extent that they were based on misstatements or omissions that occurred more than five years before the Reconsideration Plaintiffs filed their complaints. *See* Repose Ruling, 2021 WL 231130, at *12. I explained that the crucial question was whether the "Repose Clock" started "running from the

---

Curiously, the plaintiffs in three other direct actions that were affected by my Repose Ruling did not join the Reconsideration Plaintiffs in the instant motion. The Reconsideration Plaintiffs do not explain the omission. Those three actions are: (1) *Schwab Capital Tr., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-192; (2) *Stichting PGGM Depositary, et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:19-cv-1173; and (3) *Boeing Co. Emp. Ret. Plans Master Tr. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:20-cv-588.

date of *each* alleged misstatement or omission," or, rather, "only from the date of the *last* alleged

misstatement or omission that could give rise [to] liability under the Exchange Act." *Id.* at *4. (I

will refer to that issue as the "Repose Clock issue.") I held that the Repose Clock in Section

1658(b) begins running at the date of *each* alleged misstatement or omission because each such

allegation could establish a "violation" of Section 10(b). *See id.* at *8. In doing so, I

acknowledged that the Repose Clock issue was "a relatively open issue" that was "not cut-and-

dried." *Id.* at *5. Although both sides "cite[d] numerous district court cases supporting their

respective interpretations," I held that the "Defendants' citations are stronger" because "they are

more recent, and they include cases in which district courts within the Second Circuit have

granted the precise relief that the Repose Defendants seek here." *Id.* at *7 & nn.15–16.

In the interest of completeness, I then addressed an argument that the Reconsideration

Plaintiffs had not briefed. I explained:

> At the hearing on this pending motion to dismiss, the [Reconsideration] Plaintiffs
> seemed to gesture at a new theory for liability. The [Reconsideration] Plaintiffs
> mentioned that the [] Defendants were involved in a years-long fraudulent
> "scheme" and that Rule 10b-5 "allows [for] scheme liability."

*Id.* at *8 (citing Hr'g Tr., Doc. No. 647, at 23:3–25:12). I then explained why the Defendants

had not alleged a claim for scheme liability.

First, I noted distinctions between misstatement and omissions cases and scheme liability

cases. For instance, citing recent caselaw from the Southern District of New York and the

Central District of California, I noted that Rule 10b-5's three subsections[3] were distinct in

---

[3]   Rule 10b-5 has three subsections and reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality
of interstate commerce, or of the mails or of any national securities exchange,

(a)   To employ any device, scheme, or artifice to defraud,

important ways:  "Rule 10b-5(b) applies to misrepresentation or omission claims, and Rules 10b-5(a) and (c) apply to scheme liability claims."  *Id.* (quoting *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, 2020 WL 6939887, at *8 (C.D. Cal. Nov. 25, 2020)).  I remarked that "[w]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the plaintiff's attempt to bypass the elements necessary to impose misstatement liability under subsection (b) by labeling the alleged misconduct a scheme rather than a misstatement."  *Id.* at *9 (quoting *In re Mindbody, Inc. Sec. Litig.*, 2020 WL 5751173, at *19 (S.D.N.Y. Sept. 25, 2020)).

I held that the Reconsideration Plaintiffs had not alleged a "scheme liability" claim for "several reasons," both formal and substantive.  *Id.*  First, I remarked that "these cases are plainly misstatements and omissions cases."  *Id.*  Citing several of the Reconsideration Plaintiffs' amended complaints, I noted:  "Although, in a way, these cases concern Teva's anti-competitive *conduct*, the [Reconsideration] Plaintiffs allege that the [] Defendants violated the federal securities laws by *lying* about the sources of their revenue and the competitiveness of the generic drug manufacturing market."  *Id.*  Similarly, I pointed out that the Reconsideration Plaintiffs' "complaints repeatedly emphasize the [] Defendants' misstatements and omissions—and recount a litany of them at significant length."  *Id.*  In contrast, none of the Reconsideration Plaintiffs' complaints ever "mention[ed] Rule 10b-5(a) and (c) or 'scheme liability.'"  *Id.* at *9 & n.19.  I

---

       (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

       (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

noted that other courts "rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically," and that "such plaintiffs routinely proceed by alleging Rule 10b-5 claims in two separate counts—one based on misstatements and one based on scheme liability." *Id.* at \*9. "Put simply," I wrote, "the Repose Plaintiffs have not attempted to allege a scheme liability claim." *Id.* For those reasons, I rejected the Reconsideration Plaintiffs' "late and half-hearted attempt to re-fashion their Rule 10b-5 claim into a 'scheme liability' claim for purposes of the relevant statute of repose." *Id.*

On February 12, 2021, the Reconsideration Plaintiffs made a motion asking me to reconsider my Repose Ruling or, in the alternative, to certify my Repose Ruling for interlocutory review. *See* Reconsideration Pls.' Mot., Doc. No. 707. On February 16, the Defendants filed a short opposition, noting that the Reconsideration Plaintiffs' motion was untimely and raised arguments that they had waived. *See* Defs.' First Opp'n, Doc. No. 708. On February 17, I ordered the Defendants to submit an omnibus opposition, *see* Order, Doc. No. 709, which they filed on March 5, *see* Defs.' Second Opp'n, Doc. No. 731. On March 19, the Reconsideration Plaintiffs filed a reply. *See* Reconsideration Pls.' Reply, Doc. No. 742.

## II.   Motion for Reconsideration

Insofar as the Reconsideration Plaintiffs' motion seeks reconsideration of my Repose Ruling, I **deny** it for three independent reasons.

### A.   The Motion for Reconsideration Is Untimely.

Pursuant to Local Rule 7(c), "[i]n circumstances where [] motions [for reconsideration] are appropriate, they shall be filed and served within seven (7) days of the filing of the decision

or order from which such relief is sought . . . ."  D. Conn. L. Civ. R. 7(c)1.  Because I issued my

Repose Ruling on January 22, 2021, any motion for reconsideration was due by January 29.

But the Reconsideration Plaintiffs did not make their motion until February 12, which

was 14 days late.  The Reconsideration Plaintiffs have not offered any explanation for the

lateness.  Instead, in a footnote, the Reconsideration Plaintiffs write as follows:

> Plaintiffs recognize that under the Local Civil Rules of this Court, motions for
> reconsideration *should generally* "be filed within seven days of the filing of the
> decision or order from which relief is sought."   Plaintiffs respectfully request that
> the Court exercise its discretion to review the motion in view of the significance of
> the issues raised in the motion, which concern arguments and case law that had not
> been previously raised or briefed by the parties.

Reconsideration Pls.' Mem. of Law, Doc. 707-1, at 9 n.2 (emphasis added) (cleaned up).

The Reconsideration Plaintiffs' footnote is a concerning instance of selective quotation

and a blatant misstatement of the rule.  Local Rule 7(c) actually requires that motions for

reconsideration "*shall* be filed and served within seven (7) days of the filing of the decision or

order from which such relief is sought."  D. Conn. L. Civ. R. 7(c)1 (emphasis added).  Thus, the

Reconsideration Plaintiffs *must* have filed their motion for reconsideration by January 29.  To be

sure, I do not suggest that the time-bar in Local Rule 7(c) is jurisdictional; I acknowledge that

courts in this district sometimes excuse the lateness of untimely-filed motions for reconsideration

and proceed to consider those motions on the merits.  *See, e.g.*, *Torrez v. Mulligan*, 2017 WL

3880313, at * 1 (D. Conn. Sept. 5, 2017).  But the time-bar is mandatory—it is not merely a

suggestion about when parties "should generally" file a motion for reconsideration.[4]

---

[4]      The Reconsideration Plaintiffs are off the mark in claiming that there are "no case[s] in which a court has
denied an otherwise meritorious motion for reconsideration just because it was untimely."  Reconsideration Pls.'
Reply, Doc. No. 742, at 7.  Courts in this district sometimes deny motions for reconsideration based alone on their
lateness.  *See, e.g.*, *Leinart v. Murphy*, 2012 WL 5818321, at *1 (D. Conn. Nov. 13, 2012).  The Reconsideration
Plaintiffs' view of their motion's merit is irrelevant with respect to Rule 7(c)'s time-bar—surely all parties who file
motions for reconsideration believe their motions have merit.  In any event, as discussed below, I do not view the
Reconsideration Plaintiffs' motion as meritorious.

As I recently remarked, the time-bar in Local Rule 7(c) should be strictly enforced.  *See*

*Schlosser v. Droughn*, 2021 WL 327527, at *2 (D. Conn. Feb. 1, 2021) ("Courts have enforced

this deadline strictly, even where a litigant is *pro se*.").  That is especially true in this case.  The

Reconsideration Plaintiffs are sophisticated parties represented by *at least 12 lawyers.*[5]  And the

Reconsideration Plaintiffs did not barely miss the deadline.  They missed it by 14 days—or 200

percent of the time allowed.  Yet the Reconsideration Plaintiffs offer no explanation for their late

submission—not even that it was a negligent oversight.  They simply "recognize" that their filing

was 14 days late.  *See* Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 9 n.2.[6]

The Reconsideration Plaintiffs' views about the significance of the issues raised in their

motion provide no excuse.  In fact, their assertion is belied by their conduct:  If the issues were

so important, the Reconsideration Plaintiffs would have complied with the Local Rules in

promptly bringing them to my attention.  As discussed further below, the lateness of the

Reconsideration Plaintiffs' motion merely reflects its impropriety.  Rather than pointing out a

clear and obvious error, the Reconsideration Plaintiffs craft a new argument to take a "second

bite at the apple."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

2012) (cleaned up).  I deny the Reconsideration Plaintiffs' motion for reconsideration because

their motion is late.

B.  The Reconsideration Plaintiffs Waived Their Argument About Scheme Liability.

Even had I not denied the Reconsideration Plaintiffs' motion based on its untimeliness, I

would deny it because the Reconsideration Plaintiffs have waived their argument regarding

---

[5]       *See Oregon*, 19-cv-657 (three lawyers); *Mivtachim,* 19-cv-513, *Migdal Ins. Co.*, 19-cv-655, *Migdal Mut. Funds,* 19-cv-923, and *Psagot*, 19-cv-1167 (five lawyers); *INKA*, 20-cv-83 (four lawyers).
[6]       To compound the issue, the Reconsideration Plaintiffs could have—but did not—file a motion for extension of time pursuant to Local Rule 7(b).  I routinely grant such motions for good cause.  Indeed, the Reconsideration Plaintiffs know that, because I have granted motions for extensions of time in this case, including regarding the briefing schedule for the partial motions to dismiss that are the subject of this motion for reconsideration.  *See* Order, Doc. No. 434.

scheme liability.  As the Reconsideration Plaintiffs admit, the first time they made any argument

regarding scheme liability was at a hearing regarding the Defendants' partial motions to dismiss.

*See* Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 9 n.2.[7]  "A court need not entertain

an argument that was not briefed."  *Southridge Partners II Ltd. P'ship v. SND Auto Grp., Inc.*,

2019 WL 6936727, at *6 (D. Conn. Dec. 19, 2019) (quoting *Johannes Baumgartner Wirtschafts-*

*Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013))

(cleaned up); *cf. Salvagno v. Williams*, 2019 WL 2720758, at *12 (D. Conn. June 27, 2019)

("Arguments raised for the first time in plaintiffs' motion for reconsideration are not properly

presented to the district court.") (quoting *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir.

2015)) (cleaned up).  There is no dispute:  The Reconsideration Plaintiffs did not brief any

argument regarding scheme liability.

There is also no reason that the Reconsideration Plaintiffs could not have raised a scheme

liability argument earlier.  The Reconsideration Plaintiffs claim that they "had no prior occasion

to respond to or address" any scheme liability issue because that issue "had not been advanced or

briefed by Defendants."  Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 9.  That

argument does not make sense.  The Defendants made a motion to dismiss the Reconsideration

Plaintiffs' Section 10(b) and PSA claims to the extent that they were based on misstatements and

omissions that occurred more than five years before the relevant complaints were filed.  *See* Mot.

to Dismiss, Doc. No. 449.  In opposition, the Reconsideration Plaintiffs never mentioned scheme

liability.  *See* Pls.' Opp'n, Doc. No. 501.  If, in the Reconsideration Plaintiffs' view, the concept

---

[7]      To be frank, it is generous to characterize the Reconsideration Plaintiffs' brief mention of scheme liability as an "argument."  A fair reading of the hearing transcript reflects that the Reconsideration Plaintiffs mentioned scheme liability in response to *my questions and comments*.  *See* Hr'g Tr., Doc. No. 647, at 20:15–25:14.  Even then, the Reconsideration Plaintiffs mentioned the term "scheme liability" *only once* in remarking that a Rule 10b-5 claim "allows scheme liability."  *Id.* at 23:5–6.  As soon as our colloquy ended, Reconsideration Plaintiffs' counsel "pick[ed] up with the last culpable act and defendants' arguments," which were the issues the Reconsideration Plaintiffs had briefed.  *Id.* at 25:15–16.

of scheme liability rendered all the Reconsideration Plaintiffs' claims timely in their entirety, the

Reconsideration Plaintiffs certainly could and should have made that argument.  The fact that

they did not again reflects the impropriety of the instant motion:  It is not intended to correct a

clear error of law but, instead, to take a second bite at the apple.  I deny the Reconsideration

Plaintiffs' motion because it raises arguments that they have waived.

      C.  <u>The Motion for Reconsideration Fails on the Merits.</u>

      Even were I to consider the Reconsideration Plaintiffs' motion on the merits, it would

fail.  "The major grounds justifying reconsideration are an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)

(cleaned up).  The standard for granting a motion for reconsideration "is strict, and

reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked."  *Analytical Surveys,* 684 F.3d at 52 (quoting

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  A motion for reconsideration "is

not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a second bite at the apple."  *Id.* (quoting *Sequa Corp.*

*v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (cleaned up).  The strict limits governing

motions for reconsideration seek "to ensure the finality of decisions and to prevent the practice

of a losing party examining a decision and then plugging the gaps of a lost motion with

additional matters."  *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 378

(S.D.N.Y. 2019) (cleaned up).

      The Reconsideration Plaintiffs argue that I made a clear error in holding that they "could

not state a 'scheme liability' claim under subsections (a) and (c)" of Rule 10b-5.

Reconsideration Pls.' Mem. of Law, Doc. 707-1, at 7.  In the Reconsideration Plaintiffs' view, that holding ran afoul of *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019).  In *Lorenzo*, an investment banker sent emails to potential investors that he knew contained false information about a company's financial prospects.  *Id.* at 1099–1100.  However, the investment banker was not the "maker" of those false statements because his boss had ultimate authority over the statements and whether and how to communicate them.  *Id.* at 1100.  The Supreme Court held that, although the investment banker could not be primarily liable under Rule 10b-5(b) because he did not "make" the false statements in the emails, he *could* be primarily liable under Rules 10b-5(a) and (c) because "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b-5."  *Id.* at 1100–01.  In reaching that conclusion, the Supreme Court rejected the notion that each of the three subsections of Rule 10b-5 "should be read as governing different, mutually exclusive, spheres of conduct."  *Id.* at 1102.

The Reconsideration Plaintiffs read *Lorenzo* expansively and claim that it abrogated the rule that "scheme liability depends on conduct that is distinct from an alleged misstatement." Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 11 (cleaned up).  Some district courts in this circuit apparently agree with the Reconsideration Plaintiffs' proposed reading of *Lorenzo*. *See SEC v. SeeThruEquity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019).  But other district courts cabin *Lorenzo* and read it more restrictively.  *See SEC v. Rio Tinto PLC*, 2021 WL 818745, at *2–3 (S.D.N.Y. Mar. 3, 2021) ("The Court disagrees with the SEC's contention that *Lorenzo* holds that misstatements can form the basis for liability under Rule 10b-5(a) and (c) . . . . *Lorenzo* holds that those 'who disseminate false or misleading statements to potential investors with the intent to defraud' can be liable under these provisions, not that misstatements alone are sufficient to trigger scheme liability.") (quoting *Lorenzo*, 139 S. Ct. at 1099).

In my view, *Lorenzo* is distinguishable.  *Lorenzo* regarded whether an individual who was not subject to primary liability under Rule 10b-5(b) because he disseminated—but did not "make"—admittedly fraudulent statements could be held primarily liable under Rule 10b-5(a) and (c).  Although it contained some language regarding the interrelatedness of the three subsections of Rule 10b-5, *Lorenzo* did not address whether a Defendant could be held primarily liable under all three subsections of Rule 10b-5 for a series of misstatements and omissions that are, admittedly, partly actionable under Rule 10b-5(b).

In any event, even were I to accept the Reconsideration Plaintiffs' reading of *Lorenzo*, it would not affect my Repose Ruling for two reasons.  First, even if the plaintiffs *could have* pleaded a scheme liability claim, I held—based on a holistic analysis of their complaints and arguments—that they *did not do so*.  *See* Repose Ruling, 2021 WL 231130, at *9.  In my view, that holding was not clear error.  Indeed, the Reconsideration Plaintiffs do not claim that that holding has anything to do with *Lorenzo*.  Instead, the Reconsideration Plaintiffs cite several district court cases that, they claim, "conclude[] that schemes like the one here . . . are precisely the kind of scheme covered by Rules 10b-5(a) and (c)."  Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 12 & n.7; Reconsideration Pls.' Reply, Doc. No. 742, at 9 n.8.  The Defendants distinguish those cases.  *See* Defs.' Second Opp'n, Doc. No. 731, at 17 ("[E]ven a cursory review of the operative complaints in those cases, including a case filed after *Lorenzo*, shows express pleading of scheme liability that is drastically different than Plaintiffs' complaints . . . .").  Even the Reconsideration Plaintiffs themselves admit that some district court cases cut against their position.  *See* Reconsideration Plaintiffs' Reply, Doc. No. 742, at 9 n.11 (including both "*see*" and *"but see"* citations to district court cases regarding whether plaintiffs pleaded scheme liability in separate counts).  The stakes of the parties' disagreement—regarding whether

various district court decisions are analogous or not—proves the point: I made no clear error in holding as I did. Instead, the Reconsideration Plaintiffs simply try to take a second bite at the apple by making a new argument based on what they view as analogous district court cases.

Second, even if the Reconsideration Plaintiffs *had* pleaded a scheme liability claim, that would simply re-raise the same issue that I have already decided. To state a claim for scheme liability, a plaintiff must allege, *inter alia*, that the defendant committed a deceptive or manipulative act. *See SEC v. Paulsen*, 2020 WL 6263180, at *12 (S.D.N.Y. Oct. 23, 2020). By the Reconsideration Plaintiffs' own (belated) framing, the "scheme" at issue regards "interrelated fraudulent conduct that consists of these interrelated misstatements and omissions." Hr'g Tr., Doc. No. 647, at 23:13–14. The deceptive or manipulative acts constituting the scheme, then, would be the Defendants' alleged misstatements and omissions. And so the crucial question, again, would be whether the Reconsideration Plaintiffs' "Section 10(b) claims, to the extent that they are based on misstatements or omissions that occurred more than five years before [they] filed their complaints, should be dismissed." Repose Ruling, 2021 WL 231130, at *4. I have already answered that question: "Yes." Again, the Reconsideration Plaintiffs do not contend that *Lorenzo* has anything to say about that question. *See* Reconsideration Pls.' Reply, Doc. No. 742, at 8 ("*Lorenzo* is about what kinds of conduct count[] for alleging scheme-liability claims, not the timeliness of those claims."). Furthermore, the Reconsideration Plaintiffs do not cite any case—relying on *Lorenzo* or otherwise—suggesting that otherwise-untimely misstatements or omissions would be timely because they were part of a Defendant's scheme of many interrelated misstatements or omissions. Indeed, such a result would defy common sense because it would

enable plaintiffs to evade a statute of repose through a simple, semantic pleading trick.  For those reasons, the Reconsideration Plaintiffs' motion fails, even if I consider it on the merits.[8]

### III.  Motion for Interlocutory Appeal

"Litigants are generally required to wait for a final judgment to appeal." *Century Pacific, Inc. v. Hilton Hotels Corp*., 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008).  "Only exceptional circumstances will justify a departure from th[at] basic policy." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (cleaned up).  Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order for interlocutory appeal when the judge is "of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

The three criteria of section 1292(b) "are conjunctive, not disjunctive." *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)).  Thus, courts may deny interlocutory review if any one of the above three criteria is not satisfied.  *See, e.g.*, *id.* at 278 (denying motion for leave to appeal because there was "no substantial ground for a difference of opinion"); *see also In re*

---

[8]    The Reconsideration Plaintiffs point to a footnote from my Repose Ruling in which I wrote that, even if the Reconsideration Plaintiffs had pleaded a scheme liability claim, it was unclear whether that "would render all the alleged misstatement[s] and omissions timely."  Repose Ruling, 2021 WL 231130, at *9 n.20.  That was because, "[t]o prove a scheme liability claim, a plaintiff must show, *inter alia*, a deceptive act committed in furtherance of the alleged scheme to defraud."  *Id.* (cleaned up).  I wrote that "I—or a jury—would have to define 'the alleged scheme,'" and "[t]hat issue could be hotly contested."  *Id.*  The Reconsideration Plaintiffs believe that footnote indicates that it would be an issue of fact whether their scheme liability claim (if they had adequately pleaded one) would be subject to the applicable statute of repose, and so I should deny the Defendants' partial motion to dismiss.

My footnote regarded one—but not the *only*—potential issue with respect to the Reconsideration Plaintiffs' proposed scheme liability claim.  To prove a scheme liability claim, a plaintiff must also establish that the defendant committed a deceptive or manipulative act.  *See Paulsen*, 2020 WL 6263180, at *12.  In this case, the Reconsideration Plaintiffs admit that the alleged "scheme" "consists of [] interrelated misstatements and omissions."  Hr'g Tr., Doc. No. 647, at 23:13–14.  Thus, the question arises:  Are otherwise-untimely misstatements and omissions suddenly timely simply because the plaintiff alleges that they were actually deceptive acts made as part of a scheme of interrelated misstatements and omissions, some of which were timely?  As discussed above, as a matter of law, I answer that question:  "No."

*Liddle & Robinson, L.L.P.*, 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020) (denying motion for leave to appeal after considering only "the last of the § 1292(b) factors").

Indeed, "even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met," district courts have "unfettered discretion to deny certification." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007).  In other words, whether to certify a question of law for interlocutory review "is entirely a matter of discretion for the District Court." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 2019 WL 10984250, at *1 (D. Conn. Oct. 29, 2019) (quoting *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010)); *cf. Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (noting that certification is appropriate "[w]hen a ruling satisfies these criteria and involves a new legal question or is of special consequence") (cleaned up).  "The party that seeks certification under section 1292(b) bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *In re Aggrenox Antitrust Litig.*, 2018 WL 834228, at *1 (D. Conn. Feb. 12, 2018) (cleaned up).

I need not consider whether the Repose Clock issue represents a controlling question of law or whether an interlocutory appeal of my Repose Ruling might materially advance the ultimate termination of the litigation.  That is because, in my view, there is not substantial ground for a difference of opinion regarding the Repose Clock issue.

"A substantial ground for difference of opinion exists where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Whyte v. Wework Cos., Inc.*, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020) (cleaned up).  "[T]he possibility of a different outcome on appeal is not sufficient to show a substantial ground for difference of opinion, nor is the mere presence of a disputed issue that is

a question of first impression." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020) (cleaned up).  Indeed, "it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (cleaned up); *see also Williston*, 410 F. Supp. 2d at 277; *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 310 (S.D.N.Y. 2007). "Disagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion." *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003) (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001)).[9]

The Reconsideration Plaintiffs argue that there is "plainly" substantial ground for difference of opinion regarding the Repose Clock issue.  After all, they claim, I wrote in my Repose Ruling that the issue was "relatively open" and "not cut-and-dried."  I also noted that district courts within the Second Circuit "have reached diametrically opposite conclusions on the issue."  *See* Reconsideration Pls.' Mem. of Law, Doc. No. 707-1, at 16; Repose Ruling, 2021 WL 231130, at *5 (cleaned up).  In contrast, the Defendants argue that the Repose Clock issue has been effectively settled in the Second Circuit since 2013.  *See* Defs.' Second Opp'n, Doc. No. 731, at 25.  The Defendants also identify a recent case from the Southern District of New York—decided after my Repose Ruling but before the Reconsideration Plaintiffs filed the instant

---

[9]     *Accord Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 443 n.2 (W.D.N.Y. 2017); *Adkins v. Stanley*, 2013 WL 6585389, at *2 (S.D.N.Y. Dec. 13, 2013); *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 2013 WL 12284920, at *2 (D. Conn. Dec. 5, 2013); *Cerrato v. Solomon & Solomon*, 2013 WL 12286084, at *2 (D. Conn. Jan. 4, 2013); *Salim Oleochemicals, Inc. v. M/V Shropshire*, 177 F. Supp. 2d 159, 162 (S.D.N.Y. 2001); *cf. Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (holding that there was substantial ground for difference of opinion, "as the differing rulings within this Circuit demonstrate," and citing two cases from the Southern and Eastern Districts of New York issued just over one month apart that reached opposite conclusions regarding a particular issue).

motion—that reaches the same conclusion that I did regarding the Repose Clock issue. *See id.* at

26 (citing *Abu Dhabi Inv. Auth. v. Mylan N.V.*, 2021 WL 516310 (S.D.N.Y. Feb. 10, 2021)).

Finally, given the number of cases that have addressed this question, the Defendants dispute that

the Repose Clock issue is one of first impression. *See id.* at 27.

There is not substantial ground for a difference of opinion regarding the Repose Clock

issue. First, I do not view the Repose Clock issue as a particularly difficult issue. To be sure, I

remarked in my Repose Ruling that the question presented a "relatively open issue" and was "not

cut-and-dried." Repose Ruling, 2021 WL 231130, at *5 (cleaned up). But if I granted parties

leave to file an interlocutory appeal regarding every issue that was "relatively open" and was

"not cut-and-dried," there would be interlocutory appeals in a substantial number of my cases.

That outcome would not remotely comply with the Second Circuit's admonition that "[o]nly

exceptional circumstances will justify a departure from" the final judgment rule. *Klinghoffer*,

921 F.2d at 25 (cleaned up). Indeed, "[i]nterlocutory appeal was not intended as a vehicle to

provide early review of difficult rulings in hard cases." *Williston*, 410 F. Supp. 2d at 276

(cleaned up).

Second, there is no meaningful conflicting authority regarding the Repose Clock issue.

In determining whether a substantial ground for difference of opinion exists, a district court must

"analyze the strength of the arguments in opposition to the challenged ruling." *In re Flor*, 79

F.3d at 284 (cleaned up). I have already done that in my Repose Ruling. *See* Repose Ruling,

2021 WL 231130, at *7 & nn.15–16 (explaining why the Defendants' supporting precedents "are

stronger" and that "the law on this point leans in [the Defendants'] favor"). In all their briefing

regarding the Repose Clock issue, the Reconsideration Plaintiffs have not cited any district court

case in this circuit post-2013 that adopts their position.[10]  To be sure, the Reconsideration

Plaintiffs point to a couple of relatively recent out-of-circuit district court decisions that adopt

their position.[11]  But "[d]isagreement among courts outside the Second Circuit does not establish

a substantial ground for difference of opinion."  *Ryan, Beck & Co.*, 275 F. Supp. 2d at 398.  Even

if out-of-circuit district court decisions technically amounted to "conflicting authority," I would

still exercise my discretion not to certify the Repose Clock issue based on the relative weakness

of that conflicting authority and the recent uniformity among district courts within this circuit

with respect to the Repose Clock issue.

Finally, it is worth noting that since my Repose Ruling, the Reconsideration Plaintiffs'

position has become even weaker—and the Defendants' even stronger.  On February 10, a court

in the Southern District of New York resolved the Repose Clock issue in the same way that I did.

*See Abu Dhabi*, 2021 WL 516310, at *3.  In doing so, the *Abu Dhabi* Court remarked that the

plaintiffs' position there, which mirrored the Reconsideration Plaintiffs' position here, was weak

and outdated.  *See id.* ("All of the Circuit authority cited by Plaintiff predates two key Second

Circuit decisions" issued in 2013 and 2016).

For all the above reasons, no substantial ground for difference of opinion exists with

respect to the Repose Clock issue.  Thus, the section 1292(b) criteria are not met, and

interlocutory appeal is not warranted.

**IV.    Conclusion**

---

[10]      In my Repose Ruling, I wrote that "within the Second Circuit, district courts have reached diametrically opposite conclusions on the issue."  Repose Ruling, 2021 WL 231130, at *5 (quoting *Freihofer v. Vermont Country Foods, Inc.*, 2019 WL 2995949, at *3 (D. Vt. July 9, 2019)) (cleaned up).  In making that observation, I quoted the *Freihofer* Court, which itself was comparing two 2008 rulings from district courts in the Eastern District of New York.  My comment was intended to provide context for the subsequent discussion.  Of course, it does not change the fact that no district court in this circuit has adopted the Reconsideration Plaintiffs' position since 2013.
[11]      *See McCullough v. Advest, Inc.*, 2017 WL 3675787, at *3 (W.D. Pa. Aug. 25, 2017); *Equity Tr. Co. v. Kopacka*, 2018 WL 3708078, at *5 (E.D. Mich. Aug. 3, 2018).

For the foregoing reasons, the Reconsideration Plaintiffs' motion for reconsideration, or, in the alternative, to certify my Repose Ruling for interlocutory appeal, doc. no. 707, is **denied**.


So ordered.

Dated at Bridgeport, Connecticut, this 30th day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge