**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO: | : No. 3:17-cv-00558 (SRU)<br>:<br>: All Actions<br>: |

**CLASS REPRESENTATIVES' SUBMISSION FOR THE APRIL 16, 2021 STATUS CONFERENCE**

# I. INTRODUCTION

Class Representatives provide below a status report on certain items and then outline the pending disputes on the following topics: (i) Teva's failure to respond to written discovery regarding the missing text messages; (ii) Teva's refusal to produce any of the Department of Justice interview memoranda within its possession; (iii) Teva's refusal to produce [REDACTED] that was recently revealed by Defendant Vigodman; (iv) Teva's failure to provide timely discovery regarding its defenses; (v) Teva's failure to produce other relevant documents; and (vi) the parties' request to extend certain upcoming deadlines.

# II. STATUS OF PARTICULAR ITEMS

## A. Class Certification

Class Representatives have opposed Defendants' Rule 23(f) petition, which seeks permission from the Second Circuit to appeal this Court's decision certifying the Class. Defendants have sought permission to file a reply brief.

## B. Depositions

Four upcoming depositions will be completed by the April 23 fact discovery deadline:

- April 16: Kåre Schultz (President & CEO of Teva)
- April 19: Gerald Lieberman (Member of Teva's Audit Committee)
- April 20, 23: Rule 30(b)(6) Deposition of Teva
- April 21-22: Eyal Desheh (Defendant)[1]

Two depositions will be taken after April 23:

- April 26-27: Teva's auditor (Kesselman & Kesselman/PwC)
- May 5-6: Sharon Dror (former Controller of Teva)

Three depositions remain unscheduled:

- Tomer Amitai: The Court will recall Mr. Amitai is a former Teva employee who resides in Israel. Through defense counsel, Class Representatives have learned that Mr. Amitai will not authorize Kasowitz to accept service of Class

[1] Depositions of certain individuals are divided into two days because they are physically located in Israel.

Representatives' subpoena. Consequently, Class Representatives will have to pursue the necessary steps to secure his deposition.

- Rule 30(b)(6) depositions of Class Representatives: Defendants are apparently filing today a brief supporting their request to depose Class Representatives and additional witnesses regarding their decisions to invest in the Teva securities at issue in this case. Class Representatives maintain that this topic is irrelevant in light of the fraud-on-the-market presumption of reliance. The parties have agreed that Class Representatives will produce their Rule 30(b)(6) witnesses within three weeks of when the Court resolves the scope of the depositions.

## III. WRITTEN DISCOVERY REGARDING THE MISSING TEXT MESSAGES

The Court will recall that Defendants are required to produce, by April 15, a detailed affidavit setting forth Teva's preservation efforts with respect to the missing text messages from January 1, 2013 to the present. While Class Representatives will assess the affidavit when it is produced, there are two areas of outstanding written discovery related to the missing text messages:

First, on January 27, 2021, Class Representatives served Requests for Admission (RFA Nos. 43-119) seeking admissions that Defendants have not "identified" or "located" any of the missing text messages and chats. While the facts appear undisputed, last night Defendants provided a response merely stating that the text messages were not "produced." (Ex. M at 19-63.) Defendants' evasive responses do not comply with Rule 36(a), which requires Defendants to "admit," "specifically deny," or "state in detail why" they "cannot truthfully admit or deny" each Request. Plaintiffs are entitled to establish the text messages' absence by admissions.

Second, also on January 27, 2021, Class Representatives served Interrogatories seeking the "reasons" Teva has been unable to recover the missing text messages. Defendants have declined to provide a substantive response, claiming that the forthcoming affidavit will respond to the questions propounded. That may or may not prove to be correct.

## IV. DEFENDANTS' REFUSAL TO PRODUCE DOJ INTERVIEW MEMORANDA WITHIN TEVA'S POSSESSION

As Class Representatives advised the Court at the March 31 conference, recent public filings show that among the millions of records produced by DOJ to Teva in the criminal matter were "200 dense memoranda of individual interviews." (Ex. H (Teva March 26, 2021 filing).) Both DOJ and Teva object to the production of the memoranda to Class Representatives.

Now that Teva possesses these highly relevant documents, Class Representatives are entitled to them, as they are directly responsive to Request No. 1 of Plaintiffs' Fourth Set of Document Requests (Ex. I). Teva's refusal to produce these memoranda gives it a severely unfair tactical advantage. Teva and its counsel have detailed knowledge of the statements made by the interviewed witnesses, including witnesses whom Class Representatives have agreed to examine later in this case. Teva can thus fashion its current litigation strategy around what it has learned from these witness statements, whereas Class Representatives have no access to such knowledge. Further, because the interviewed witnesses likely include individuals who are alleged to have deleted and destroyed text messages with Teva's competitors, the interview memoranda may also shed light on the still-unanswered question of what happened to the missing text messages.

DOJ cannot assert any valid objection to producing the interview memoranda. DOJ has primarily claimed that the protective order in the criminal matter (Ex. J) prohibits such production. But that is not so. To the contrary, Paragraph 7 of that protective order explicitly contemplates that Teva might be required to produce confidential material in another action, and only requires that Teva give notice to the DOJ to afford an "opportunity to object to the disclosure." Because DOJ is already on notice, if Teva is "compelled by subpoena, court order, or other compulsory process to produce" the materials, "then production of such materials shall not be deemed a

violation of this Protective Order so long as prompt notification was provided." (Ex. J ¶7.) The protective order also does not prohibit the parties from consenting to production.

Moreover, now that DOJ produced the FD-302s to Teva, there is no law enforcement privilege. *See, e.g.*, *SEC v. Shanahan*, 2009 WL 1955747 (E.D. Mo. July 6, 2009); *Lykken v. Brady*, 2008 WL 2077937 (D.S.D. May 14, 2008). Nor are there any privacy concerns here. *See Pearlstein v. Blackberry Ltd.*, 2019 WL 6117145 (S.D.N.Y. Nov. 18, 2019).

Class Representatives voluntarily streamlined their request to propose that Teva produce interview memoranda of (a) current and former Teva employees and (b) individuals referencing interactions with Teva (such as competitors or distributors conspiring with Teva to fix prices or allocate markets). DOJ and Teva refused. Accordingly, although all of the interview memoranda have been produced to Teva and are relevant in this action, Class Representatives are willing to accept as a first step this subset of the interview memoranda.

## V. DEFENDANTS' FAILURE TO PRODUCE THE [REDACTED] BEARING ON DEFENDANTS' KNOWLEDGE OF PRICE INCREASES AND COLLUSION

On April 9, during the deposition of Defendant Erez Vigodman (former Teva CEO), Class Representatives learned for the first time that [REDACTED] to publicly state that he was "***not aware of any fact*** that would give rise to an exposure to Teva with respect to the [DOJ criminal] investigation" of price-fixing (Compl. ¶309). (*See* Ex. A at 415:3-417:17; 416:19-417:5 [REDACTED]

Class counsel attempted to ascertain details [redacted] from Defendants Vigodman and Michael McClellan (former Teva CFO), but was rebuffed based on assertions of privilege. (Ex. A at 419:13-420:7; Ex. B at 179:21-181:17.) Notably, Teva's voluminous privilege logs—produced over the course of numerous months and revised numerous times—make no mention of any materials or correspondence related to [redacted]. Class Representatives immediately requested production of these materials, but received no response until yesterday, when Defendants claimed that [redacted] materials "would not be in the agreed-upon universe of documents collected and searched, and therefore, would not appear on Defendants' privilege logs." (Ex. C.)

Teva should be required to produce its documents related to [redacted] [redacted]. To the extent any privilege or protection once applied, it has been waived, as "the attorney-client privilege cannot at once be used as a shield and a sword." *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).[2]

First, these non-privileged documents are highly relevant to Defendants' false and misleading statements. Once a defendant chooses to speak publicly about a topic, it must tell the whole truth and may not pick and choose certain pieces of a story to tell while leaving out other pieces. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239-40 (2d Cir. 2016); *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("once a company speaks on an issue or topic, there is a duty to tell the whole truth" about that topic). Nor may a defendant, having spoken publicly about a topic, hide the facts behind a claimed privilege. Here, in addition to Defendant

[2] To be sure, as agreed on the record, Class Representatives are not arguing that Mr. Vigodman's testimony constitutes a waiver. As discussed below, the waiver arises from [redacted] [redacted] and any disclosure to government agencies.

Vigodman's November 15, 2016 public denial, Defendants Schultz and McClellan repeatedly denied to investors and analysts that there is any evidence of any price-fixing or collusion:

- Defendant Schultz publicly insisted on November 7, 2019 that "[w]e have, of course, shared more than 1 million documents with [the DOJ]. We have ***not found any evidence*** that we were ***in any way*** part of any structured collusion or price fixing." (*Id.* ¶310.)

- Defendant McClellan publicly stated in 2019 that Teva did not face liability for price-fixing, and [redacted]

Having placed their own knowledge of the facts squarely at issue and publicly denied that there is any evidence of collusion, Defendants cannot withhold the ***sole*** basis for their vehement public denials: [redacted] In essence, Defendants' position is that they are permitted to tout the factual results of an investigation while concealing the purported basis for their public statements. That is not the law. *See, e.g.*, *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (party "may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.").

Second, Teva appears to have relied on [redacted]

[REDACTED] "PwC is a third party that vitiates the attorney-client privilege." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-2542 (VSB) (HBP), 2019 WL 6736132, at *10 (S.D.N.Y. July 22, 2019). Any disclosure [REDACTED] to government agencies, such the DOJ or SEC, would also constitute a waiver. *See, e.g.*, *Gruss v. Zwirn*, No. 09 Civ. 6441 (PGG), 2013 WL 3481350 (S.D.N.Y. July 10, 2013), *on motion for clarification*, 296 F.R.D. 224 (2013).

Finally, [REDACTED] are relevant for another, independent reason: they may shed light on the missing text messages from Cavanaugh and others.

In light of Defendants' public proclamations that they were unaware of any facts or evidence indicating price-fixing by Teva, and Teva's [REDACTED] must be produced.

## VI. DEFENDANTS' FAILURE TO PROVIDE TIMELY DISCOVERY REGARDING THEIR DEFENSES

Defendants' Answer pleads 35 purported "Specific Defenses" (ECF 327), and Class Representatives have appropriately sought discovery regarding these defenses. While the close of fact discovery is just nine days away, Defendants have refused to provide meaningful disclosure on this topic, causing serious prejudice.

### A. Defendants Must Identify the Specific Factual Grounds for Each Defense or Face Preclusion

Interrogatory No. 9, served in January, seeks the factual basis for each specific defense Defendants are asserting. Defendants objected, with no substantive response. (Ex. C to Plaintiffs' March 29, 2021 submission.) Class Representatives' Rule 30(b)(6) notice contains a similar topic,

seeking to examine a corporate witness on the factual basis for Teva's pleaded specific defenses. (Ex. E, Topic No. 21 ("Your January 27, 2020 Answer in this Action, including the claimed factual basis: (a) for each response other than an admission and (b) for each of the thirty-five (35) purported affirmative defenses therein.").) In meet and confer conferences regarding the Rule 30(b)(6) notice, defense counsel promised to provide a robust, substantive response to Interrogatory No. 9 and, based on this representation, Class Representatives conditionally withdrew this topic. (Ex. F at 2 (February 26, 2021 letter from Benjamin Burry to Cindy Kelly).)

At the March 31 conference, Class Representatives raised Defendants' potential reliance on an advice-of-counsel defense as a remaining area of uncertainty. In response, Defendants' counsel represented that this disclosure would be made in their forthcoming supplemental response to Interrogatory No. 9. (Tr. at 3:21-24 ("We've agreed to provide a supplemental response to the defense-related interrogatory by April 9, so I don't believe there's any dispute for the Court to resolve.").) The Court agreed that "the discovery regarding defenses is important and should be made timely but April 9th is not that far away." (*Id.* at 43:25-44:3.)

The Court's order was again very clear with respect to Defendants' obligations:

> [W]e discussed the Defendants' production of documents regarding their potential advice-of-counsel defense. The Defendants indicated that they would be providing a supplemental response to a relevant interrogatory by April 9 and that their response would clarify the situation. I indicated my view that discovery regarding the Defendants' defenses are important and should be made in a timely manner.

(ECF 751 at 5.) On April 9, however, Defendants provided evasive responses, including these:

> **Specific Defense No. 4**. Defendants are not liable because they did not make a false or misleading statement of material fact or omission of material fact, and complied with all applicable statutory and regulatory disclosure requirements.
>
> > **Defendants' Response as to Specific Defense No. 4**: Supporting facts will be provided by Defendants' expert(s) at the appropriate time for the exchange of expert discovery.

**Specific Defense No. 7**. Defendants are not liable because they, at all times, and with respect to all matters contained herein, acted in good faith, exercised reasonable care, and did not know, and in the exercise of reasonable care could not have known of the purported untruths, misstatements and/or omissions alleged in the Amended Complaint.

> **Defendants' Response to Specific Defense No. 7**: Defendants incorporate by reference their response concerning Specific Defense No. 6 ("Supporting facts will be provided by witness testimony, as well as in documents already produced to Plaintiffs, including TEVA_SL_00828342, TEVA_SL_00727803, TEVA_SL_00779649, TEVA_SL_00721595, and TEVA_SL_01028700. Defendants further state that supporting facts will be provided by Defendants' expert(s) at the appropriate time for the exchange of expert discovery.").

(Ex. G.)[3] Similarly, as to many other defenses, Defendants evasively state that "[s]upporting facts will be provided by Defendants' expert(s) at the appropriate time for the exchange of expert discovery" or "[s]upporting facts will be provided by witness testimony." *See* Response as to Specific Defenses 12, 15, 16, 24, 26, 28, 29, 30, and 33. The few responses with scant factual information also appear far from complete. *See, e.g.*, Response as to Specific Defenses 5 & 11.

Given these evasive and incomplete responses, any later effort to inject new facts would result in significant prejudice and warrant preclusion under Rule 37 and other authority. Disclosure as to asserted defenses is part of fact discovery; it cannot be withheld for expert discovery or revealed for the first time at trial. Moreover, in reliance on defense counsel's representations that they would provide a complete, substantive response to Interrogatory No. 9, Class Representatives conditionally withdrew a related Rule 30(b)(6) topic.

In a final attempt to mitigate the prejudice from Defendants' disclosure failures, Class Representatives have advised that they intend to examine Teva's representative on Topic No. 21

[3] Each of the referenced documents is [redacted] These documents, [redacted], actually evidence Defendants' fraud on investors, since they contain a litany of material information [redacted] that was not publicly disclosed.

at the upcoming Rule 30(b)(6) deposition on April 20 and 23. Absent complete, substantive testimony and disclosure of all facts supporting each defense, Class Representatives will request that the Court preclude Defendants from asserting those defenses.

**B. Defendants Must Disclose Any Alleged Legal Advice on Relevant Issues**

Finally, while Defendants' counsel indicated yesterday that "Defendants are not asserting" an advice-of-counsel defense, their answer continues to assert defenses of "good faith" and compliance "with all applicable statutory and regulatory disclosure requirements." (ECF 327.)

Defendants have yet to identify the specific factual grounds for these assertions, as noted above. However, the Individual Defendants' recent testimony indicates that [redacted] [redacted]

---

[4] *See* Exhibit A, Vigodman Tr. at [redacted]

[5] *Id.* at 251:15-255:1.

[6] *See* Exhibit B, McClellan Tr. at [redacted]

Whether or not counsel formally labels this reliance as "advice of counsel," the legal advice has been placed at issue and must be disclosed. As this Court has recognized:

> [A] client's reliance on an attorney's advice as an element of a claim or defense, such as the assertion of a good faith defense to fraud or negligent misrepresentation charges, places otherwise privileged attorney-client communications at issue and implicitly waives the privilege. Because a fact finder would be unable to evaluate the merits of the good faith defense without evidence of what legal advice the defendant relied on—a jury could not evaluate the defense without the protected information—the privilege must give way. When that individual asserts his good faith defense, he squarely places at issue otherwise protected legal advice, and affirmatively waives the attorney-client privilege.

*Morande Auto. Grp., Inc. v. Metro. Grp., Inc.*, 2009 WL 650444, at *3 (D. Conn. Mar. 12, 2009); *see also Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 615–16 (S.D.N.Y. 2014) (plaintiffs were "entitled to know if [the defendant] ignored counsel's advice," since "legal advice that [the defendant] received may well demonstrate the falsity of its claim of good faith belief") (internal citations and quotation marks omitted).

The same reasoning applies here: Defendants explicitly rely on legal advice on highly relevant issues, yet seek to deprive Class Representatives of access to the content of that advice. As a matter of fairness, Defendants cannot use privilege "as both a sword and a shield." *Id.*; *see also Bilzerian*, 926 F.2d at 1292 (affirming district court's ruling that "if [the criminal defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal," and related attorney-client privilege would be waived).

---

[redacted]

Defendants must disclose any legal advice regarding their disclosure obligations, generic drug pricing, and the factual basis for their public statements.

## VII. OTHER DEFICIENCIES IN TEVA'S DOCUMENT PRODUCTION

Teva has not produced any of the following highly relevant documents, as described below, and Class Representatives respectfully request that the Court order prompt production:

**Sandoz phone records/texts:** The Court will recall that at the March 26, 2021 hearing in Civil Action No. 3:20-01283 (SRU), Sandoz's counsel confirmed that "anything that Sandoz would have access to as a result of the MDL, Teva would have access to," and that the Sandoz phone records and text messages produced in the *Generics MDL* action should be produced by Teva as "the party in this case," not Sandoz. (Tr. 11:1-3, 12-16.)

However, Teva will not agree to produce these documents, citing the "protective orders in that case." This is not a legitimate reason for its refusal. As was settled last summer when Teva produced other documents from the *Generics MDL*, the protective orders in that action do not impede production here. Rather, *Generics MDL* PTO 53 at ⁋12 (Ex. K) requires only that Teva give notice of a request to the party who designated such materials confidential so that party has the opportunity to "oppose the request for production of such documents." PTO 53 is very clear that "***Other than the obligation to comply with these requirements, this Order is not intended to affect a Party's obligation to respond to such a subpoena or request.***" (*Id.*) Here, Sandoz received notice of Plaintiffs' request for the Sandoz phone records and texts, and actually suggested that Teva should produce them.[7] Accordingly, Teva cannot leverage the *Generics MDL* protective order to frustrate this discovery. Teva should be ordered to produce these documents.

[7] To the extent that Teva may argue that notice should also be given to other non-parties beyond Sandoz, Teva has failed to identify such non-parties, and in any event is fully capable of giving notice itself.

**Sarbanes-Oxley certifications, sub-certifications and [REDACTED] documents:** Teva's Chief Accounting Officer, Deborah Griffin, testified that [REDACTED] has not been produced.

Defendant Griffin also [REDACTED] These documents also have not been produced.

Documents and communications evidencing or concerning Teva's internal controls and disclosure controls, testing, SOX certifications and sub-certifications are highly relevant and directly responsive to Requests Nos. 55 and 56 of Plaintiff's First Requests for Documents (among others). For example, Class Representatives are entitled to understand whether Teva had any controls focused on Item 303 of SEC Regulation S-K and Item 5A.1 of Form 20-F, which explicitly required disclosures related to pricing and pricing trends. Defendants offered yesterday to "meet and confer" (and Class Representatives will do so), but they should simply produce the documents.

**Approvals of SEC filings:** Defendant Griffin also testified that [REDACTED] Any documents reflecting Defendants' review, comments and written approvals of the SEC filings at issue are highly relevant, given that Plaintiffs challenge those filings as materially false and misleading. They are directly responsive to Request Nos. 1-

11, 14-15, and 55-56 of Plaintiffs' First Requests for Documents. Defendants have no valid reason for refusing to produce these materials and have not responded to Class Representatives' request.

**Disclosure Committee Documents:** As reported at the March 31 conference, Teva continues to withhold purportedly privileged materials concerning the drafting and review by Teva's Disclosure Committee of the false and misleading SEC filings at issue. Class Representatives have long sought these highly relevant materials, and their absence has already affected several depositions. For example, Defendant McClellan testified that [REDACTED] These materials do not involve legal advice, and they must also be produced.

**Q3 2020 impairment memo:** In the third quarter of 2020, Teva took a $4.6 billion goodwill impairment that was concededly based in part on the DOJ indictment of Teva for price-fixing. This event is highly relevant to the financial implications of Defendants' concealed conduct, and Defendant Griffin testified that [REDACTED] Defendants have refused to produce this document, which is squarely responsive to Plaintiffs' First Requests Nos. 2-7 and 9.

## VIII. REQUEST FOR EXTENSION OF SCHEDULE

The parties have met and conferred regarding the remaining deadlines in the case and have agreed that extending the dates as follows is appropriate:

| Deadline | Prior Date | New Date |
|---|---|---|
| Designate Trial Experts and Serve Opening Reports | May 7, 2021 | May 28, 2021 |
| Damages Analyses | May 7, 2021 | May 28, 2021 |
| Trial Experts' Depositions | June 4, 2021 | June 25, 2021 |

| | | |
|---|---|---|
| Designate Rebuttal Experts and Serve Rebuttal Reports | July 2, 2021 | August 6, 2021 |
| Rebuttal Damages Analyses | July 2, 2021 | August 6, 2021 |
| Rebuttal Experts' Depositions | July 30, 2021 | August 27, 2021 |
| Serve Trial Experts' Reply Reports | Aug. 23, 2021 | Sept. 20, 2021 |
| Summary Judgment Motions | Sept. 13, 2021 | Oct. 11, 2021 |
| Summary Judgment Oppositions | Oct. 18, 2021 | Nov. 15, 2021 |
| Summary Judgment Replies | Nov. 22, 2021 | Dec. 22, 2021 |
| Joint Trial Memorandum | Jan. 21, 2022 (or 60 days after ruling on any summary judgment motion) | Feb. 15, 2022 (or 60 days after ruling on any summary judgment motion) |
| Trial Ready | March 22, 2022 (or 60 days after filing of joint trial memorandum) | April 18, 2022 (or 60 days after filing of joint trial memorandum) |

## IX. CONCLUSION

Class Representatives request relief as described above and request a further conference in two weeks to formally raise any further discovery disputes.

Date: April 14, 2021

Respectfully submitted,

PLAINTIFFS ONTARIO TEACHERS' PENSION PLAN BOARD, and ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM

/s/ *Joseph A. Fonti*
Joseph A. Fonti (admitted *pro hac vice*)
Evan A. Kubota (admitted *pro hac vice*)
Benjamin F. Burry (admitted *pro hac vice*)
Thayne Stoddard (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com

ekubota@bfalaw.com
bburry@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System, and Lead Counsel for the Class*

Marc J. Kurzman (ct01545)
Christopher J. Rooney (ct04027)
**CARMODY TORRANCE SANDAK & HENNESSEY LLP**
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608
mkurzman@carmodylaw.com
crooney@carmodylaw.com

*Local Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2021, a copy of the foregoing was filed electronically with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Joseph A. Fonti*
Joseph A. Fonti