**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-00558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:19-cv-449 (SRU) |
| | No. 3:19-cv-513 (SRU) |
| | No. 3:19-cv-543 (SRU) |
| | No. 3:19-cv-603 (SRU) |
| | No. 3:19-cv-655 (SRU) |
| | No. 3:19-cv-656 (SRU) |
| | No. 3:19-cv-923 (SRU) |
| | No. 3:19-cv-1167 (SRU) |
| | May 24, 2021 |
| | Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS STATE AND COMMON LAW CLAIMS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.     THE STATE LAW CLAIMS ARE PRECLUDED BY SLUSA ..................................... 3

II.    THE STATE LAW CLAIMS MUST BE DISMISSED FOR ADDITIONAL,
INDEPENDENT REASONS.......................................................................................... 7

     A.    The State Law Claims Fail To Plead Actual Reliance on Defendants'
Alleged Misrepresentations And Omissions............................................. 7

     B.    The PSA Claims Are Time-Barred ................................................ 12

CONCLUSION............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ..........................................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 ....................................................................................................................8

*Aubrey v. Sanders*,
  346 F. App'x 847 (3d Cir. 2009) .....................................................................................9

*Basile v. H&R Block*,
  No. 3246, 1997 WL 1433757 (Pa. Com. Pl. May 30, 1997) .............................................9

*In re Bear Stearns Secs., Deriv. & ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. 2014) ....................................................................3, 8, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................3, 10, 12

*Carpenter v. BMW of North Am.*,
  99-cv-214, 1999 WL 415390 (E.D. Pa. June 21, 1999) ...................................................9

*Chambers v. Time Warner*,
  282 F.3d 147 (2d Cir. 2002) .............................................................................................6

*Cohen v. S.A.C. Trading*,
  711 F.3d 353 (2d Cir. 2013) .............................................................................................3

*DoubleLine Cap. v. Odebrecht*,
  323 F. Supp. 3d 393, 462 (S.D.N.Y. 2018) ..............................................................10, 11

*ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase*,
  553 F.3d 187 (2d Cir. 2009) .............................................................................................3

*Ferry v. Mead Johnson & Co.*,
  __ F. Supp. 3d __, 2021 WL 243119 (D. Conn. 2021) ....................................................8

*Fulton Bank v. NatCity Investments*,
  09-cv-4855, 2017 WL 277670 (E.D. Pa. Jan. 19, 2017) .................................................13

*Fulton Fin. Adv. Nat'l Assoc. v. NatCity Investments*,
  09-cv-4855, 2013 WL 5635977 (E.D. Pa. Oct. 15, 2013) .................................................8

*In re Herley Secs. Litig.*,
    161 F.R.D. 288 (E.D. Pa. 1995)......................................................................9

*HSM Holdings v. Mantu I.M. Mobile*,
    20-cv-00967, 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021)......................................8

*Int'l Fund Mgmt. v. Citigroup*,
    822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011)..................................................10, 11

*Jasin v. Kozlowski*,
    1:04-cv-2188, 2010 WL 4536973 (M.D. Pa. Nov. 3, 2010)....................................12

*Kuwait Inv. Office v. Am. Int'l Grp.*,
    128 F. Supp. 3d 792 (S.D.N.Y. 2015)..............................................................7

*In re Livent Noteholders Secs. Litig.*,
    151 F. Supp. 371 (S.D.N.Y. 2001) ..................................................................5

*Lord Abbett Investment Trust v. Valeant Pharm. Int'l*,
    2018 WL 3637514 (D.N.J. July 31, 2018)..........................................................6

*Merryman v. J.P. Morgan Chase Bank*,
    15-cv-9188, 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016) .....................................5

*Northwestern Mut. Life Ins. v. Valeant Pharm. Int'l*,
    18-cv-15286, 2019 WL 4278929 (D.N.J. Sept. 20, 2019)......................................5

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*,
    432 F. Supp. 3d 131 (D. Conn. 2019)....................................................11, 12, 13

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
    No. 3:17-CV-558 (SRU), 2020 WL 1181366 (D. Conn. Mar. 10, 2020).....................2, 6, 7

*Pell v. Weinstein*,
    759 F. Supp. 1107 (M.D. Pa. 1991) ................................................................7

*Special Situations Fund III QP v. Deloitte Touche Tohmatsu CPA*,
    96 F. Supp. 3d 325 (S.D.N.Y. 2015)................................................................3

*In re Teva Secs. Litig.*,
    3:17-cv-558, 2021 WL 872156 (D. Conn. Mar. 9, 2021)......................................5, 6

*In re WorldCom Secs. Litig.*,
    308 F. Supp. 2d 236 (S.D.N.Y. 2004)...........................................................3, 4

**Statutes**

70 P.S. § 1-504(a) ...........................................................................12, 13

15 U.S.C. § 77r(b)(1)(B)................................................................................................................5

15 U.S.C. §78bb.....................................................................................................................4, 6

Defendants in the above-captioned matter respectfully submit this memorandum of law in support of their motion pursuant to Rules 9(b) and 12(b)(6) to dismiss, with prejudice and in their entirety, those claims based on state statutory and/or common law (the "State Law Claims") asserted in *Clal Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-543 ("*Clal*"), *Harel Pension and Provident, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-656 ("*Harel*"), *Highfields Capital I LP, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-603 ("*Highfields*"), *Migdal Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-655 ("*Migdal Ins.*"), *Migdal Mut. Funds, v. Teva Pharm. Indus., et al.*, No. 3:19-cv-923 ("*Migdal Mut.*"), *Mivtachim The Workers Social Ins. Fund, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-513 ("*Mivtachim*"), *Phoenix Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-449 ("*Phoenix*"), *Psagot Mut. Funds, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-1167 ("*Psagot*") (collectively, the "State Law Actions" or "State Law Complaints").[1]

## PRELIMINARY STATEMENT

Though largely duplicative of the pleadings in the other twelve Direct Actions, plaintiffs in the State Law Actions allege – in addition to the same panoply of federal and foreign law claims – that defendants' purported conduct also violated the Pennsylvania Securities Act ("PSA") and constituted fraud and negligent misrepresentation under Pennsylvania common law (the "State Law Claims"). These claims must be dismissed for numerous reasons, some common to all claims asserted in the Direct Actions generally (as detailed in the accompanying

---

[1] *OZ ELS Master Fund, Ltd., et al. v. Teva Pharm. Indus., et al.*, 3:17-cv-01314 (D. Conn.) is excluded from the motion to dismiss and this memorandum of law, in accordance with the Joint Motion to Stay Action which was filed in that docket on February 19, 2020 and granted on February 21, 2020. *Id.* at ECF 60-61.

memoranda of law),[2] but also for three separate reasons, each of which independently mandates dismissal.

First, the State Law Claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA").  SLUSA bars all state law claims, based on alleged misrepresentations or omissions of material fact in connection with the purchase or sale of "covered securities," that arise in the context of a "covered class action."  As detailed below, each of these requirements is easily and indisputably satisfied here.

Second, the State Law Complaints fail to plausibly plead reliance, an essential element of each of their State Law Claims.  Though plaintiffs invoke federal law reliance presumptions, the case law is clear that these presumptions are inapplicable to claims under state law; instead, plaintiffs must plausibly plead that they actually and reasonably relied on defendants' alleged fraudulent statements and omissions.  The State Law Complaints plead no such facts.

Finally, to the extent plaintiffs' PSA claims are based on misrepresentations and omissions concerning Teva's purported "price-hike strategy" and "collusion," those claims must be dismissed because they are time-barred.  Claims under the PSA must be brought within one year of the time plaintiffs knew or should have known of the facts constituting the alleged violation.  Here, the State Law Complaints allege – and the Court previously held in the context of the *Ontario* action (*see Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-CV-558 (SRU), 2020 WL 1181366, at *16 (D. Conn. Mar. 10, 2020), ECF 341), which provided the template for these Direct Actions – that the "concealed truth" about the purported pricing misconduct was revealed to the market by August 3, 2017.  Because plaintiffs in six of

---

[2] *See* Mem. L. in Supp. of Defs.' Mot. to Dismiss on Pleading and Other Grounds; Mem. L. in Supp. of Defs.' Mot. to Dismiss New Claims and Claims Against New Defendants.

the State Law Complaints first asserted their PSA claims more than one year later, those claims are untimely.

For these reasons, laid out more fully below, the State Law Claims must be dismissed in their entirety, with prejudice.

<u>**ARGUMENT**</u>

"To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase*, 553 F.3d 187, 196 (2d Cir. 2009) (internal quotation marks omitted). Though required to presume the truth of well-pled factual allegations, the court "is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Special Situations Fund III QP v. Deloitte Touche Tohmatsu CPA*, 96 F. Supp. 3d 325, 332 (S.D.N.Y. 2015) (cleaned up). "If the plaintiff has not 'nudged [its] claims across the line from conceivable to plausible, the complaint must be dismissed.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[c]laims that sound in fraud are subject to the heightened pleading standards of [Rule] 9(b), which requires that averments of fraud be 'stated with particularity.'" *Cohen v. S.A.C. Trading*, 711 F.3d 353, 359 (2d Cir. 2013). "General, conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient [under Rule 9(b)]." *In re Bear Stearns Secs., Deriv. & ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. 2014).

## I.   <u>THE STATE LAW CLAIMS ARE PRECLUDED BY SLUSA</u>

SLUSA was enacted in 1998 following the failure of Congress's prior legislative effort – the Private Securities Litigation Reform Act of 1995 ("PSLRA") – to effectively "prevent strike suits" by imposing heightened pleading requirements and other measures in actions alleging fraud in the sale of securities. *See In re WorldCom Secs. Litig.*, 308 F. Supp. 2d 236, 241

(S.D.N.Y. 2004).  To thwart widespread efforts by plaintiffs' counsel to end-run the PSLRA's strictures by bringing claims under state law, Congress enacted SLUSA "to close the loophole by mandating…that such class actions be governed exclusively by federal law."  *Id.* at 242.

SLUSA thus requires the dismissal of claims (1) "based upon the statutory or common law of any State," (2) "alleging…a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security," and (3) that arise in a "covered class action."  15 U.S.C. §78bb(f)(1); *see also In re WorldCom*, 308 F. Supp. 2d at 243 (same).  Each of these requirements is indisputably satisfied with respect to the State Law Claims.

First, each of the State Law Complaints brings one or more claims based on Pennsylvania state law.  The *Highfields* action asserts common law claims for fraud and negligent misrepresentation;[3] the *Harel* and *Phoenix* actions assert claims under the Pennsylvania Securities Act ("PSA");[4] and the *Clal*, *Migdal Ins.*, *Migdal Mut.*, *Mivtachim*, and *Psagot* actions (collectively, the "Pomerantz Actions") allege violations of the PSA as well as common law claims for fraud and negligent misrepresentation.[5]

Second, these State Law Claims are explicitly premised on allegations that "Defendants made material misrepresentations of material fact and/or omitted material facts" (*Highfields*

---

[3] *See Highfields* compl., Counts IV and V (¶¶ 439-55).

[4] *See Harel* compl., Count III (¶¶ 908-16); *Phoenix* compl., Count III (¶¶ 930-38).

[5] *See, e.g.*, *Clal* compl., Counts IV – VII (¶¶ 587-614).  Because the Pomerantz Actions complaints are verbatim copies, for the sake of brevity citations to these pleadings will simply refer to the *Clal* complaint.

compl., ¶ 440)[6] in connection with Plaintiffs' purported transactions in various "Teva securities,"[7] all of which are "covered securities" within the scope of SLUSA.

Teva's ADS are "covered securities" because they are traded on the New York Stock Exchange.[8] *See, e.g.*, *Merryman v. J.P. Morgan Chase Bank*, 15-cv-9188, 2016 WL 5477776, at *5 n.7 (S.D.N.Y. Sept. 29, 2016) ("[American Depository Receipts], which are traded on national exchanges, are covered securities").  Because the statutory definition also includes "a security of the same issuer that is equal in seniority or that is a senior security to" an exchange-listed security, 15 U.S.C. § 77r(b)(1)(B), Teva's Notes, Preferred Shares, and ordinary shares are all likewise "covered securities."  *See Northwestern Mut. Life Ins. v. Valeant Pharm. Int'l*, 18-cv-15286, 2019 WL 4278929, at *4 (D.N.J. Sept. 20, 2019) ("[S]enior securities of a company with nationally traded securities are also covered securities.") (internal quotation marks omitted); *In re Livent Noteholders Secs. Litig.*, 151 F. Supp. 371, 442 (S.D.N.Y. 2001) ("A covered security includes the *debt* of a company with securities listed on the National Market System of the NASDAQ stock market.") (emphasis added).[9]  Moreover, the ADS-dependent derivatives

---

[6] *See also, e.g.*, *Clal* compl., ¶ 588 ("[Defendants] directly and/or indirectly, for the purpose of inducing the purchase of Teva securities by others, participated in the circulation and/or dissemination of misrepresentations and omissions of material facts[.]"), ¶ 603 ("Defendants made, disseminated or approved…false and misleading statements…contain[ing] material misrepresentations and failed to disclose material facts[.]"), ¶ 610 (same); *Highfields* compl., ¶ 449 ("Defendants made misrepresentations that they knew, or should have known, were false in order to induce Plaintiffs to purchase Teva securities."); *Harel* compl., ¶ 910 ("defendants…directly and/or indirectly, for the purpose of inducing the purchase of Teva securities by others, participated in the circulation and/or dissemination of misrepresentations and omissions of material facts"); *Phoenix* compl., ¶ 932 (same).

[7] *See Clal* compl., p. vii (defining "Teva Securities" as "ADS, Preferred Shares, Notes, and Ordinary Shares, collectively"); *Harel* compl., ¶ 1 ("Plaintiffs purchased or otherwise acquired Teva American Depositary Shares ('ADSs'), ordinary shares, Preferred Shares, and Notes"); *Phoenix* compl., ¶ 1 (same); *Highfields* compl., ¶ 16 (alleging transactions in "Teva ADS," "call options, and…put options on Teva ADS," and "equity swaps with Teva as the reference entity").

[8] *See, e.g.*, *Harel* compl., ¶ 49 ("Teva's ADSs are listed and traded on the NYSE").

[9] *See In re Teva Secs. Litig.*, 3:17-cv-558, 2021 WL 872156, at *18 (D. Conn. Mar. 9, 2021) (Underhill, J.) ("Bonds are senior to equity…").  As described in the registration statement filed on November 30, 2015, the Preferred Shares are senior to Teva's ordinary shares, which are in parity with the ADS (both being "junior shares" for purposes of distribution upon liquidation, winding-up, or dissolution.  *See* Form F-3, filed Nov. 30, 2015, at p. 17, 19 (available at https://www.sec.gov/Archives/edgar/data/0000818686/000119312515389895/d65010df3asr.htm).

purportedly purchased and sold by the *Highfields* plaintiffs are also "covered securities" because
their value was directly dependent on – and thus directly affected by – Defendants' alleged fraud
with respect to the ADS.[10]  *See Lord Abbett Investment Trust v. Valeant Pharm. Int'l*, 2018 WL
3637514, at *10 (D.N.J. July 31, 2018) ("Plaintiffs' [state law] claims are inextricably linked to
an alleged fraud that caused the price of a 'covered security'…to artificially inflate, which
directly impacted the [securities at issue].  This is exactly the type of [situation] that SLUSA was
intended to preempt.").

Finally, for purposes of SLUSA, a "covered class action" includes "any group of lawsuits
…pending in the same court and involving common questions of law or fact, in which– (I)
damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined,
consolidated, or otherwise proceed as a single action for any purpose."  15 U.S.C.
§78bb(f)(5)(B)(ii).  It is undeniable that the eight actions asserting the State Law Claims meet
this definition.  By order dated May 10, 2020, this Court "consolidated for pre-trial purposes" all
of the Direct Actions (including *Harel*, *Highfields*, *Phoenix*, and the Pomerantz Actions) with the
*Ontario* Class Action based, *inter alia*, on an express finding that "the claims and issues in the
Direct Actions are substantially the same as the claims and issues in [*Ontario*]."  *Ontario
Teachers' Pension Plan Bd.*, 2020 WL 1181366, at *32, ECF 341.[11]  Under similar
circumstances, courts have readily found a group of lawsuits to constitute a "covered class

---

The Court may take judicial notice of the contents of the registration statement as it is expressly cited and relied on
in the State Law Complaints (*see, e.g.*, *Clal* compl., ¶ 125; *Highfields* compl., ¶ 232; *Harel* compl., ¶ 618; *Phoenix*
compl., ¶ 633).  *See Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, court may
properly consider document where the complaint "relies heavily upon its terms and effect, which renders the
document integral to the complaint") (internal quotation marks omitted).

[10] *See Highfields* compl., ¶ 375 ("When the price of Teva ADS dropped, the value of Teva equity swaps and call
options declined, and the value of Teva put options increased, causing Plaintiffs economic harm.").

[11] These consolidated actions, moreover, clearly seek damages on behalf of more than 50 persons:  the number of
plaintiffs behind the Direct Actions alone exceeds 70, and the *Ontario* class "will likely include thousands of
members."  *In re Teva*, 2021 WL 872156, at *11.

action" subject to preclusion under SLUSA.  *See, e.g.*, *Kuwait Inv. Office v. Am. Int'l Grp.*, 128 F. Supp. 3d 792, 812-13 (S.D.N.Y. 2015) ("covered class action" found where individual actions, though not formally consolidated, "rely on allegations that are virtually identical to those in the Class Action complaint" and "have received the benefits of coordinating discovery and other litigation activity with the Class Action").[12]

For the foregoing reasons, the State Law Claims are precluded by SLUSA and must therefore be dismissed with prejudice.

## II.   THE STATE LAW CLAIMS MUST BE DISMISSED FOR ADDITIONAL, INDEPENDENT REASONS

Although SLUSA provides a sufficient reason for dismissal, the State Law Claims must also be dismissed for two additional, independent reasons.  First, plaintiffs fail to plead facts establishing actual reliance, an essential element of each of the State Law Claims.  Second, the PSA claims asserted in *Harel* and in the Pomerantz Actions are time-barred insofar as they are based on purported misrepresentations and omissions concerning the revenues and profits Teva allegedly derived from its purported "price-hike strategy."

### A.   The State Law Claims Fail To Plead Actual Reliance on Defendants' Alleged Misrepresentations And Omissions

In their State Law Claims, plaintiffs accuse defendants of common law fraud, negligent misrepresentation, and violations of the PSA in connection with a laundry list of purported misrepresentations and omissions concerning myriad topics over a span of five years or more. Reliance is an element of each of the State Law Claims.  *See Pell v. Weinstein*, 759 F. Supp.

---

[12] Indeed, the State Law Claims plaintiffs opposed consolidation precisely because they recognized that, once consolidated, "they will become 'covered class actions' within the meaning of SLUSA, and [their] state law claims would be subject to dismissal."  *Ontario Teachers' Pension Plan Bd.*, 2020 WL 1181366, at *16, ECF 341. Yet as the Court correctly noted, the result would be the same whether the actions were consolidated or merely coordinated. *See id.*

1107, 1115 (M.D. Pa. 1991) (dismissing claims for common law fraud, negligent

misrepresentation, and violations of the PSA for failure to adequately plead reliance); *see also*

*Fulton Fin. Adv. Nat'l Assoc. v. NatCity Investments*, 09-cv-4855, 2013 WL 5635977, at *12

(E.D. Pa. Oct. 15, 2013) ("[Plaintiff] is required to plausibly plead reliance [to state claims under

PSA §§ 1-401, 1-402].… In Pennsylvania, reasonable reliance is also an element of a claim for

negligent misrepresentation and common law fraud.") (internal citations omitted).

Because the heightened pleading requirements of Rule 9(b) apply to each of their State

Law Claims,[13] to survive a motion to dismiss, plaintiffs "must allege with particularity that [they]

actually relied upon [defendants'] supposed misstatements." *In re Bear Sterns*, 995 F. Supp. 2d

at 312 (S.D.N.Y. 2014); *see also Fulton Fin.*, 2013 WL 5635977, at *13 ("The 'reasonable

reliance' element of the fraud-based claims requires the pleading of specific facts[.]").  Plaintiffs'

well-pled factual allegations fall far short of satisfying this (or even the more lenient Rule 8)

pleading standard.

The complaints in *Harel*, *Phoenix*, and the Pomerantz Actions do not even attempt to

plead actual reliance.  None of those actions contain even a single allegation that any plaintiff

reviewed or was even **aware** of any of defendants' allegedly false or misleading statements,

much less that they reasonably relied upon them in deciding to invest in Teva securities.  Beyond

cursory, formulaic recitations that they "reasonably and justifiably relied upon the statements

specified above"[14] (which are not to be credited on a motion to dismiss, *see Ashcroft v. Iqbal*,

---

[13] *See Fulton Fin.*, 2013 WL 5635977, at *12 ("As with statutory claims under the PSA, allegations of common law fraud are subject to Rule 9(b)'s requirement of pleading with particularity.…"); *HSM Holdings v. Mantu I.M. Mobile*, 20-cv-00967, 2021 WL 918556, at *19 (S.D.N.Y. Mar. 10, 2021) ("The majority of courts in the [Second] Circuit have applied the heightened pleading standard to all claims of negligent misrepresentation."); *Ferry v. Mead Johnson & Co.*, __ F. Supp. 3d __, 2021 WL 243119, at *18 (D. Conn. 2021) (Underhill, J.) ("[C]ourts agree that when negligent misrepresentation is couched in fraud-like terms of known falsity, the heightened fraud pleading standard applies") (internal quotation marks omitted).

[14] *Clal* compl., ¶¶ 605, 612; *see also id.* ¶¶ 593, 599 ("Plaintiffs suffered damages as a result of the Defendants' wrongful conduct in that they purchased or otherwise acquired Teva Securities at artificially inflated prices in

556 U.S. 662, 681), plaintiffs offer nothing concrete, and instead invoke the "fraud-on-the-market" theory pursuant to which reliance need not be pled or proven but is instead simply presumed.[15]  But this tactic is to no avail.  Numerous decisions from Pennsylvania state courts, as well as those from the Second and Third Circuits, have held that the *Basic* presumption (and the *Affiliated UTE* presumption, which plaintiffs also invoke)[16] are limited to claims brought under the federal securities laws, and have thus repeatedly declined to allow them in the state law context.  *See, e.g.*, *Aubrey v. Sanders*, 346 F. App'x 847, 850 (3d Cir. 2009) ("Pennsylvania has not recognized a fraud on the market theory of liability in common law fraud claims."); *In re Herley Secs. Litig.*, 161 F.R.D. 288, 292 (E.D. Pa. 1995) (because "Pennsylvania has never adopted the fraud-on-the-market theory for common law negligent misrepresentation claims," plaintiffs "must prove that they relied on false information supplied by Defendants").[17]

Mirroring the complaints in the *Harel*, *Phoenix*, and Pomerantz Actions, the *Highfields* complaint relies on the same rote, formulaic recitations (*see Highfields* compl., ¶¶ 443, 452) and federal law presumptions (*see id.*, ¶¶ 364-68).  The *Highfields* complaint differs, however, in that

---

[15] *See Clal* compl., ¶¶ 569 ("Plaintiffs are entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine."), 593 (alleging "reliance on Defendants' misrepresentations and omissions *and/or the integrity of the market*") (emphasis added), 599 (same); *Harel*, ¶¶ 880 ("There is a presumption of reliance established pursuant to the fraud-on-the-market doctrine…"), 915 (alleging "reliance on defendants' untrue or misleading statements or omissions of material fact *and/or the integrity of the market*") (emphasis added); *Phoenix* compl., ¶¶ 902, 937 (same as *Harel* ¶¶ 880, 915, respectively).

reliance on the Defendants' untrue or misleading statements or omissions of material fact[.]"); *Harel* compl., ¶ 915 (same); *Phoenix* compl., ¶ 937 (same).

[16] *See Clal* compl., ¶ 571 ("In addition, or in the alternative, Plaintiffs are entitled to a presumption of reliance pursuant to *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and its progeny, because the claims asserted herein are predicated in part upon omissions of material fact that the Defendants had a duty to disclose."); *Harel* compl., ¶ 883 (same); *Phoenix* compl., ¶ 905 (same).

[17] *See also Carpenter v. BMW of North Am.*, 99-cv-214, 1999 WL 415390, at *3 (E.D. Pa. June 21, 1999) ("Plaintiff [contends that because] the fraud claim in this case stems from misleading omissions…reliance [may] be presumed…. Here, the claims at issue involve state law fraud claims.  Under such circumstances, district courts have generally held that proof of reliance is required."); *Basile v. H&R Block*, No. 3246, 1997 WL 1433757, at *33 (Pa. Com. Pl. May 30, 1997) ("[T]his court is convinced that the [*Affiliated UTE*] presumption…does not reach beyond § 10(b)(5) claims.") (internal quotation marks omitted), *rev'd on other grounds*, 729 A.2d 574 (Pa. Super. 1999).

it includes two additional paragraphs alleging in conclusory fashion that "a Highfields investment analyst actually and justifiably read, reviewed, listed [sic] to and/or relied upon" a litany of public filings, press releases, news articles, and statements on calls and at conferences spanning a five-year period.  (*See id.*, ¶ 370.)  Yet even with these supplemental allegations, the *Highfields* plaintiffs have failed to adequately plead actual reliance.  Indeed, courts in this Circuit have repeatedly found substantively identical (and facially more plausible) reliance allegations insufficient to satisfy Rule 8, let alone the heightened pleading requirements of Rule 9(b).

        For example, in *Int'l Fund Mgmt. v. Citigroup*, in support of their claims for fraud under common law and the Securities Exchange Act, plaintiffs alleged that their "investment managers read and relied upon [defendant's 2006 and 2007 Form 10-Ks], including the false financial statements and other statements alleged herein to be false or misleading."  822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011).  The court dismissed these claims, holding that plaintiffs' allegations were "conclusory" and "incredibly broad, alleging reliance on entire 10-Ks for indefinite periods of time."  *Id.*  And because plaintiffs failed to plead "supporting factual matter indicating how [they] relied on the alleged misrepresentations," the court concluded that the complaint had failed to meet even Rule 8's "threshold requirement that a complaint 'set forth enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

        The Southern District reached the same conclusion in *DoubleLine Cap. v. Odebrecht Fin.*, where plaintiffs alleged that they "received, reviewed and relied upon each of the [defendant's] financial reports and Earnings releases" in deciding to purchase defendant's securities.  323 F. Supp. 3d 393, 462 (S.D.N.Y. 2018).  Defendants moved to dismiss plaintiffs' common law fraud and negligent misrepresentation claims on the grounds that plaintiffs' reliance allegations were "nothing more than conclusory."  *Id.*  The court agreed, holding that "[u]nder

either Rule 8 or Rule 9(b), such conclusory allegations do not suffice to plead reliance." *Id.* at 463.

Here, the *Highfields* plaintiffs' conclusory "actual reliance" allegations are substantively identical to those found to be fatally deficient in *Int'l Fund* and *DoubleLine*.  As in those cases, the *Highfields* complaint "does not link [plaintiffs' purported] review of any particular statements in [the referenced public filings and calls] to any actual purchases of [Teva] securities," nor does it "identify [any] particular transaction that [plaintiffs] allegedly made in reliance on [those statements]." *In re Bear Stearns*, 995 F. Supp. 2d at 309; *see also id.* at 312-13 (dismissing common law fraud claims).  This failure is all the more striking given the immense number of allegedly false and misleading statements at issue here.  If allegations that a plaintiff actually read and relied on statements contained in as few as two (*see Int'l Fund*, 822 F. Supp. 2d at 386) or even a single (*see In re Bear Stearns*, 995 F. Supp. 2d at 309) filing are too conclusory to plausibly allege reliance, they are all the more deficient here where the *Highfields* plaintiffs baldly assert that they actually read, heard, and relied on statements contained in **fifty-eight** sundry filings, press releases, calls, and conferences (*Highfields* compl., ¶ 370).[18]

For the foregoing reasons, the State Law Claims must be dismissed.  Whether judged by Rule 9(b) – as they should be[19] – or the more lenient Rule 8 standard, the State Law Complaints'

---

[18] Further heightening the sheer implausibility of the *Highfields* plaintiffs' reliance allegations is the fact that every single one of the fifty-eight filings, press releases, press articles, calls, and conferences is likewise challenged in the *Ontario* class action complaint in virtually verbatim terms.  (*Compare Highfields* compl., ¶¶ 187-286 *with Ontario* ACAC, ECF 226, ¶¶ 165-267)  The prospect that the *Highfields* plaintiffs' "investment manager" actually "read, reviewed, list[ened] to and/or relied on" (*Highfields* compl., ¶ 370) **exactly** the same statements challenged in the class action and **only** those statements strains credulity (to put it mildly).

[19] The *Highfields* plaintiffs' attempt to avoid the strictures of Rule 9(b) by "expressly disclaim[ing] any allegation of fraud or intentional misconduct" with respect to their negligent misrepresentation claim (*Highfields* compl., ¶ 446) is unavailing.  *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 432 F. Supp. 3d 131, 156 (D. Conn. 2019), ECF 283 (rejecting as ineffective plaintiffs' "attempted use of boilerplate language to remove [negligence-based] claims from Rule 9(b)'s heightened pleading standards").

conclusory allegations of reliance fail to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B.    The PSA Claims Are Time-Barred**

Claims under Section 1-501 of the PSA (which provides civil liability for violations of Sections 1-401 and 1-402) must be brought "within five years of the date of the act or within one year of the date the plaintiff knows or should have known of the facts constituting the violation, whichever happens first." *Jasin v. Kozlowski*, 1:04-cv-2188, 2010 WL 4536973, at *4 (M.D. Pa. Nov. 3, 2010); *see also* 70 P.S. § 1-504(a) (same).

Here, the *Harel* and Pomerantz Actions assert PSA claims based principally on the same four "types" of misrepresentations and omissions as were alleged in the amended consolidated class action complaint in *Ontario* (ECF 226, the "*Ontario* ACAC"), *viz.*: Item 5 non-disclosure; false statements regarding competition; false and misleading pricing statements; and concealed receipt of subpoenas.  (*Compare Ontario* ACAC, ¶ 155, *with Harel* compl., ¶ 577, *and Clal* compl., ¶ 231.)[20]  In opposition to defendants' motion to dismiss their federal securities law claims, the *Ontario* plaintiffs argued that "the sequence of events between early August 2016 and early August 2017 [*i.e.*, various alleged corrective disclosures and materialized risks] constructively disclosed the frauds (the price-hike strategy and the price-fixing collusion) that Teva had been concealing."  *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 432 F. Supp. 3d 131, 174 (D. Conn. 2019), ECF 283.  This Court agreed, ruling that

> [the State AG] lawsuit and bad press, in revealing that Teva conspired with its
> competitors, also necessarily revealed that Teva was increasing the prices of its

---

[20] To the extent these PSA claims are also based on additional types of misrepresentations and omissions, they are legally deficient for the reasons detailed in the accompanying Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss on Pleading and Other Grounds, and Defendant's Memorandum of Law in Support of Defendants' Motion to Dismiss New Claims and Claims Against New Defendants.

generic drugs.   **Investors** and analysts, then, **were on notice that Teva was internally raising its prices, in lockstep with its competitors**.

*Id.* (emphasis added).

Consistent with the Court's finding that investors had sufficient information by August 3, 2017 (the date of the final corrective disclosure/materialized risk alleged in the *Ontario* ACAC)[21] to assert viable federal law claims, it necessarily follows that the highly sophisticated plaintiffs in the *Harel* and Pomerantz Actions[22] likewise knew or should have known by that date of the facts constituting Defendants' purported PSA violations.[23]   Pursuant to Section 1-504(a), therefore, these plaintiffs' PSA claims had to have been brought by August 3, 2018 at the latest.   Instead, the initial complaint in *Harel* was not filed until April 30, 2019 (*see* 3:19-cv-00656 (D. Conn.), ECF 1), and the earliest of the Pomerantz Action complaints (*Clal*) was not filed until February 5, 2019.   (*See* 2:19-cv-00530 (E.D. Pa.), ECF 1.)

Accordingly, because these plaintiffs brought their PSA claims more than a year after they knew "or upon the exercise of reasonable diligence could have known of the facts constituting the violation," 70 P.S. § 1-504(a), these claims are time-barred and must be dismissed.[24]

---

[21] *See Ontario* ACAC, ¶¶ 334-37 (alleging that, following the release of Teva's August 3, 2017 6-K, the ratings agencies downgraded Teva and its ADS prices declined by 40%).

[22] Plaintiff in *Harel* is "an insurance and financial services conglomerate with over $49 billion in investments under management" as well as "the largest insurance company in Israel in terms of volume of premiums…."   (*Harel* compl., ¶ 46.)   Plaintiffs in the Pomerantz Actions include "[Israel's] largest pension fund manager," "one of the largest life insurance and pension managers in Israel," and several of the "leading mutual fund firms" and "leading investment houses in Israel."   (*See Clal* compl., ¶¶ 29-39.)

[23] *See Fulton Bank v. NatCity Investments*, 09-cv-4855, 2017 WL 277670, at *23 (E.D. Pa. Jan. 19, 2017) ("the PSA is to be construed in the same manner as similar provisions of federal securities law") (internal quotation marks omitted).

[24] Any notion that plaintiffs could not have discovered the facts supporting their claims through reasonable diligence by August 3, 2017 is belied by the fact that the initial complaint in *Phoenix*, which also asserted a PSA claim, was filed on August 3, 2018. (*See* 3:19-cv-00449 (E.D. Pa.), ECF 1.)   Indeed, the *Harel* plaintiffs in particular cannot in good faith make such an argument given that their complaint was a virtual carbon-copy of the *Phoenix* complaint and was filed by the same counsel (Robbins Geller Rudman & Dowd).

## CONCLUSION

For the foregoing reasons, the State Law Claims asserted in the State Law Complaints should be dismissed in their entirety, with prejudice.

Dated:   New York, New York
         May 24, 2021

                                    Respectfully submitted,

                                    DEFENDANTS TEVA PHARMACEUTICAL
                                    INDUSTRIES LTD.; TEVA
                                    PHARMACEUTICALS USA, INC.; EREZ
                                    VIGODMAN; EYAL DESHEH; SIGURDUR
                                    OLAFSSON; DEBORAH GRIFFIN; KÅRE
                                    SCHULTZ; MICHAEL MCCLELLAN;
                                    YITZHAK PETERBURG; YAACOV
                                    ALTMAN, DIPANKAR BHATTACHARJEE;
                                    and TEVA PHARMACEUTICAL FINANCE
                                    NETHERLANDS III B.V.

                                    */s/ Sheron Korpus*
                                    Sheron Korpus (admitted *pro hac vice*)
                                    Cindy Caranella Kelly (admitted *pro hac vice*)
                                    Sarah G. Leivick (admitted *pro hac vice*)
                                    Andrew Schwartz (admitted *pro hac vice*)
                                    **KASOWITZ BENSON TORRES LLP**
                                    1633 Broadway
                                    New York, New York 10019
                                    Tel.: (212) 506-1969
                                    Fax: (212) 500-3469
                                    skorpus@kasowitz.com
                                    ckelly@kasowitz.com
                                    sleivick@kasowitz.com
                                    aschwartz@kasowitz.com

                                    *Counsel for Defendants except with regards to*
                                    *Case No. 3:20-cv-588*

                                    Jordan D. Hershman (admitted *pro hac vice*)
                                    Jason D. Frank (admitted *pro hac vice*)
                                    Emily E. Renshaw (admitted *pro hac vice*)
                                    Andrew M. Buttaro (ct30882)

14

**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*

15