# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-CV-558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:18-cv-1681 (SRU) |
| | No. 3:18-cv-1721 (SRU) |
| | No. 3:18-cv-1956 (SRU) |
| | No. 3:19-cv-175 (SRU) |
| | No. 3:19-cv-192 (SRU) |
| | No. 3:19-cv-449 (SRU) |
| | No. 3:19-cv-513 (SRU) |
| | No. 3:19-cv-543 (SRU) |
| | No. 3:19-cv-603 (SRU) |
| | No. 3:19-cv-655 (SRU) |
| | No. 3:19-cv-656 (SRU) |
| | No. 3:19-cv-657 (SRU) |
| | No. 3:19-cv-923 (SRU) |
| | No. 3:19-cv-1167 (SRU) |
| | No. 3:19-cv-1173 (SRU) |
| | No. 3:20-cv-83 (SRU) |
| | No. 3:20-cv-588 (SRU) |
| | No. 3:20-cv-683 (SRU) |
| | No. 3:20-cv-1630 (SRU) |
| | No. 3:20-cv-1635 (SRU) |
| | |
| | July 23, 2021 |
| | ORAL ARGUMENT REQUESTED |
| | **<u>REDACTED</u>** |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON <u>PLEADING AND OTHER GROUNDS</u>

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.      PLAINTIFFS PROPERLY ALLEGE FACTS BASED ON THE *ONTARIO* PLEADINGS AND THE STATE AG ACTION.................................. 4

II.     PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR PURCHASES OF TEVA SECURITIES AFTER AUGUST 3, 2017.......................................................................................................................... 13

      A.     The Court's Decision Upholding the *Ontario* AC Did Not Address Whether Disclosures After August 3, 2017 Imparted New Material Information to the Market, Much Less Decide that Issue as a Matter of Law ................................15

      B.     No Plaintiff Has Conceded that the Market Was Fully Informed About Defendants' Misstatements and Omissions as of August 3, 2017 ................................................................16

      C.     The Complaints Adequately Allege that New Material Information About Defendants' Misstatements and Omissions Was Disclosed to the Market After August 3, 2017, and Defendants Continued to Deny Fraud.......................17

III.    PLAINTIFFS ADEQUATELY PLEAD MISREPRESENTATIONS AND OMISSIONS MADE BY DEFENDANTS PRIOR TO OCTOBER 29, 2015................................................ 21

IV.    THE *CLAL, FIR TREE, MIGDAL INS., MIGDAL MUT., MIVTACHIM,* AND *PSAGOT* PLAINTIFFS ADEQUATELY PLEAD STANDING AND CAUSATION ......................................... 23

V.    *MORRISON* DOES NOT BAR CERTAIN FOREIGN PLAINTIFFS' CLAIMS................................................................................. 26

VI.    THE *PACIFIC* AND *HIGHFIELDS* COMPLAINTS ARE ADEQUATELY PLED ......................................................................... 27

      A.     The *Pacific* Complaint Adequately Pleads Loss Causation.....................27

      B.     The *Highfields* Complaint States a Section 18 Claim................................28

VII.   THE *FIR TREE, HAREL,* AND *PHOENIX* COMPLAINTS PLEAD CLAIMS UNDER SECTION 12(A)(2) OF THE SECURITIES ACT .............................................................................. 30

CONCLUSION........................................................................................................................ 31

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*380544 Canada Inc. v. Aspen Tech., Inc.*,
 544 F. Supp. 2d 199 (S.D.N.Y. 2008)...........................................................................1, 6, 10

*Acito v. IMCERA Grp., Inc.*,
 47 F.3d 47 (2d Cir. 1995) .................................................................................................26

*Allegheny Cty. Emps' Ret. Sys. v. Energy Transfer LP*,
 ---F. Supp. 3d----, 2021 WL 1264027 (E.D. Pa. April 6, 2021) .............................................16

*In re Alstom SA*,
 406 F. Supp. 2d 433 (S.D.N.Y. 2005).............................................................................23, 28

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013)...................................................................................................2, 14, 17

*In re Applied Micro Circuits Corp. Sec. Litig.*,
 2002 WL 34716875 (S.D. Cal. Oct. 4, 2002) ...................................................... 12-13

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
 390 F. Supp. 3d 432 (S.D.N.Y. 2019).............................................................................24

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
 851 F. Supp. 2d 746 (S.D.N.Y. 2012)...............................................................................8

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
 995 F. Supp. 2d 291 (S.D.N.Y. 2014).............................................................................29

*In re Bristol Myers Squibb Co., Sec. Litig.*,
 586 F. Supp. 2d 148 (S.D.N.Y. 2008).............................................................................16

*Bye v. Conn.*,
 2011 WL 1271690 (D. Conn. Apr. 5, 2011)..............................................................4, 5, 31

*Cadle Co. v. Fletcher*,
 2013 WL 6092515 (D. Conn. Nov. 19, 2013) .......................................................................16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
 750 F.3d 227 (2d Cir. 2014)..............................................................................................18

*Choi v. Tower Rsch. Cap. LLC*,
 --- F.4th ----, 2021 WL 2546166 (2d Cir. June 22, 2021)................................................ 15-16

*City of N. Miami Beach Police Officers'*
   *& Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
   2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ............................................................7

*de la Fuente v. DCI Telecomms, Inc.*,
   259 F. Supp. 2d 250 (S.D.N.Y. 2003)...........................................................1, 7, 8

*Dep't of the Treasury of the State of N.J. v. Cliffs Nat. Res., Inc.*,
   2015 WL 6870110 (N.D. Ohio Nov. 6, 2015) .......................................................12

*Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*,
   2018 WL 406046 (D.N.J. Jan 12, 2018) ...............................................................29

*In re eSpeed, Inc. Sec. Litig.*,
   457 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................21

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   783 F.3d 395 (2d Cir. 2015)...................................................................................18

*Freeland v. Iridium World Comm'ns, Ltd.*,
   545 F. Supp. 2d 59 (D.D.C. 2008) ................................................................. 17-18

*Freidus v. Barclays Bank PLC*,
   734 F.3d 132 (2d Cir. 2013)...................................................................................30

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)...................................................................21

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000)................................................................... 2, 14, 20-21

*Gordon v. Sonar Cap. Mgmt. LLC*,
   2014 WL 3900560 (S.D.N.Y. Aug. 1, 2014).........................................................25

*Gould v. Winstar Commc'ns, Inc.*,
   692 F.3d 148 (2d Cir. 2012)...................................................................................28

*Gross v. Diversified Mortg. Invs.*,
   438 F. Supp. 190 (S.D.N.Y. 1977).........................................................................28

*Hatamian v. Advanced Micro Devices, Inc.*,
   2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ..........................................................12

*HSH Nordbank AG v. RBS Holdings USA Inc.*,
   2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015) .................................................... 8-9

*Homeward Residential, Inc. for Option One Mortg. Loan Tr. 2006-2*
   *v. Sand Canyon Corp.*,
   2014 WL 12791757 (S.D.N.Y. Mar. 31, 2014) ................................................6, 10

*Int'l Fund Mgmt. S.A. v. Citigroup, Inc.,*
   822 F. Supp. 2d 368 (S.D.N.Y. 2011)..................................................................29

*John v. Whole Foods Mkt. Grp., Inc.,*
   858 F.3d 732 (2d Cir. 2017)........................................................................ 25-26

*Labul v. XPO Logistics,*
   2021 WL 1056828 (D. Conn. Mar. 19, 2021) .......................................................27

*Lapin v. Goldman Sachs Grp., Inc.,*
   506 F. Supp. 2d 221 (S.D.N.Y. 2006)............................................................15, 21

*In re Lehman Bros. Sec. & ERISA Litig.,*
   2013 WL 3989066 (S.D.N.Y. July 31, 2013) ...................................................5, 11

*Levine v. Atricure, Inc.,*
   594 F. Supp. 2d 471 (S.D.N.Y. 2009)...................................................................25

*Long Miao v. Fanhua, Inc.,*
   442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................12

*Major Energy Elec. Servs., LLC v. Horowitz,*
   2020 WL 4432121 (S.D.N.Y. July 31, 2020) ................................................1, 7, 8

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.,*
   801 F. Supp. 2d 41 (E.D.N.Y. 2011) ...................................................................29

*In re MBIA, Inc., Sec. Litig.,*
   700 F. Supp. 2d 566 (S.D.N.Y. 2010)..................................................................21

*In re Merrill Lynch & Co., Inc. Rsch. Rpts. Sec. Litig.,*
   218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................5

*Microcapital Fund, LP v. Conn's Inc.*
   2019 WL 3451153 (S.D. Tex. July 26, 2019).........................................................6

*In re Millennial Media Sec. Litig.,*
   2015 WL 3443918 (S.D.N.Y. May 29, 2015) .......................................................12

*Morrison v. Nat'l Austl. Bank,*
   561 U.S. 247 (2010)............................................................................................26

*In re Mylan N.V. Sec. Litig.,*
   379 F. Supp. 3d 198 (S.D.N.Y. 2019)...............................................................7, 8

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................................10

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
    432 F. Supp. 3d 131 (D. Conn. 2019) ........................................................... *passim*

*In re OSG Sec. Litig.*,
    12 F. Supp. 3d 619 (S.D.N.Y. 2014)........................................................................8

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007).....................................................................14

*In re Petrobras Sec. Litig.*,
    152 F. Supp. 3d 186 (S.D.N.Y. 2016)........................................................... 28-29, 31

*In re Rayonier Inc. Sec. Litig.*,
    2016 WL 3022149 (M.D. Fla. May 20, 2016)........................................................12

*Roofers' Pension Fund v. Papa*,
    2018 WL 3601229 (D.N.J. 2018) .............................................................................8

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009)..................................................................5, 12

*Scheinman v. Glass & Braus*,
    2019 WL 4193420 (D. Conn. Sept. 4, 2019) ...........................................................5

*Schwab Cap. Tr. v. Celgene Corp.*,
    2021 WL 1085474 (D.N.J. Mar. 22, 2021)................................................ 1, 5-6, 11-12

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010).....................................................................8

*Southridge Partners II Ltd. P'ship v. SND Auto Grp. Inc.*,
    2019 WL 6936727 (D. Conn. Dec. 19, 2019)..........................................................5

*Speakes v. Taro Pharm. Indus., Ltd.*,
    2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018)........................................................19

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).....................................................................29

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015).....................................................................8

*In re Teva Sec. Litig.*,
    2021 WL 231130 (D. Conn. Jan. 22, 2021)....................................................... 26-27

*Transit Rail, LLC v. Marsala*,
    2007 WL 2089273 (W.D.N.Y. July 20, 2007)..........................................................................29

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
    2013 WL 1342529 (S.D.N.Y. Mar. 29, 2013) ........................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................................................................18

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)............................................................................................17, 23

*VNB Realty, Inc. v. Bank of Am. Corp.*,
    2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)....................................................................5, 12

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*,
    2014 WL 3569338 (E.D.N.Y. July 18, 2014) .......................................................................10

**Other Authorities**

Fed. R. Civ. P. 11 .......................................................................................................................4

## GLOSSARY OF TERMS

| | |
|---|---|
| "Class Action" or "*Ontario*" | *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd., et al.*, No. 3:17-cv-558 |
| "Complaints" | The operative Complaints filed in the Direct Actions (defined below) and subject to Defendants' (defined below) MTD (defined below) |
| "Defendants" | All Defendants in the Direct Actions |
| "Direct Actions" | The term "Direct Actions" refers to the twenty individual actions that were consolidated with the *Ontario* Action pursuant to this Court's Order Regarding Pre-Trial Consolidation of Related Actions, entered April 28, 2020 (ECF No. 352), and as further memorialized in this Court's Order, entered January 22, 2021 (ECF No. 689). These actions are: (1) *Nordea Inv. Mgmt. AB v. Teva Pharm. Indus. Ltd., et al.*, No. 3:18-cv-1681 ("*Nordea*"); (2) *State of Alaska Dep't of Revenue, Treasury Div., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:18-cv-1721 ("*Alaska*"); (3) *Pacific Funds Series Tr., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:18-cv-1956 ("*Pacific*"); (4) *Public School Teachers' Pension and Ret. Fund of Chi. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-175 ("*Chicago*"); (5) *Schwab Cap. Tr., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-192 ("*Schwab*"); (6) *Phoenix Ins. Co. Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-449 ("*Phoenix*"); (7) *Mivtachim The Workers Social Ins. Fund, et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-513 ("*Mivtachim*"); (8) *Clal Ins. Co. Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-543 ("*Clal*"); (9) *Highfields Capital I LP, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-603 ("*Highfields*"); (10) *Migdal Ins. Co. Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv- 655 ("*Migdal Ins.*"); (11) *Harel Pension and Provident Ltd., et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-656 ("*Harel*"); (12) *Oregon v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-657 ("*Oregon*"); (13) *Migdal Mut. Funds, Ltd. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-923 ("*Migdal Mut.*"); (14) *Psagot Mut. Funds, Ltd. et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv-1167 ("*Psagot*"); (15) *Stichting PGGM Depositary, et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:19-cv- 1173 ("*Stichting*"); (16) *Internationale Kapitalanlagegesellschaft mbH v. Teva Pharm. Indus. Ltd., et al.*, No. 3:20-cv-83 ("*INKA*"); (17) *Boeing Co. Emp. Ret. Plans Master Tr. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:20-cv-588 ("*Boeing*"); (18) *Fir Tree Value Master Fund, LP, et al. v. Teva Pharm. Indus. Ltd., et al.*, No. 3:20-cv-683 ("*Fir Tree*"); (19) *Franklin Mut. Series Funds, et al. v. Teva Pharm. Indus., et al.*, No. 3:20-cv-1630 ("*Franklin*"); and (20) *BH Invs. Funds, L.L.C., et al. v. Teva Pharm. Indus., Ltd., et al.*, No. 3:20-cv-1635 ("*BH*"). *OZ ELS Master Fund, Ltd., et al. v. Teva Pharmaceutical Industries Ltd., et al.*, No. 3:17-cv-01314 (D. Conn.) is excluded from the motion to dismiss and this memorandum of law. *Id.* at ECF No. 60-61. |

| "FE" | Former Employee |
|---|---|
| "MTD" | Memorandum of Law in Support of Defendants' Motion to Dismiss on Pleading and Other Grounds (ECF No. 784-1) |
| "MTD New Claims" | Memorandum of Law in Support of Defendants' Motion to Dismiss New Claims and Claims Against New Defendants (ECF No. 786-1) |
| "MTD State Law Claims" | Memorandum of Law in Support of Defendants' Motion to State and Common Law Claims (ECF No. 787-1) |
| "Mustokoff Decl." | The Declaration of Matthew L. Mustokoff submitted in support of Plaintiffs in the *Alaska*, *Nordea*, and *Franklin* Direct Actions |
| "*Ontario* AC" | Amended Consolidated Class Action Complaint filed in the Class Action, dated June 22, 2018 (ECF No. 226) |
| "*Ontario* SAC" | The Second Amended Consolidated Class Action Complaint filed in the Class Action, dated December 13, 2019 (ECF No. 310) |
| "Plaintiffs" | Plaintiffs in the Direct Actions |
| "PSLRA" | Private Securities Litigation Reform Act |
| "Rule" | Federal Rule of Civil Procedure |
| "SEC" | U.S. Securities and Exchange Commission |
| "State AGs" | The government entities that initiated the action captioned *State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-2407 (E.D. Pa.) |
| "State AG Complaint" | Complaint in *State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-2407 (E.D. Pa.), dated May 10, 2019 |
| "Teva" or the "Company" | Teva Pharmaceutical Industries Ltd. |

Plaintiffs in the above-referenced Direct Actions submit this memorandum of law in opposition to Defendants' Motion to Dismiss on Pleading and Other Grounds (ECF No. 784).

## PRELIMINARY STATEMENT

This Court previously upheld the *Ontario* AC in the Class Action upon which the twenty Direct Action Complaints are in part based. *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131 (D. Conn. 2019). Defendants' attempt to sow doubt over the reliability of previously sustained allegations should be rejected.

Defendants do not cite any authority, and Plaintiffs are not aware of any, that limits the ability of putative class members to evaluate a ***sustained*** class action complaint, investigate the claims, and exercise their right to opt out of the class and file direct claims based on the allegations made in those pleadings—a right that Defendants' position would undermine. In fact, courts routinely reject arguments attacking allegations in opt-out complaints premised on the accounts of former employees of the defendant company that were pled in an earlier class action complaint. *See, e.g.*, *Schwab Cap. Tr. v. Celgene Corp.*, 2021 WL 1085474, at *10 (D.N.J. Mar. 22, 2021); *380544 Canada Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 224-25 (S.D.N.Y. 2008).

Further, it is entirely proper for Plaintiffs to rely on facts discovered in government investigations and subsequently pled in publicly filed government actions. *See, e.g.*, *Major Energy Elec. Servs., LLC v. Horowitz*, 2020 WL 4432121, at *7 (S.D.N.Y. July 31, 2020) (rejecting argument that party "should not be able to use the allegations from the . . . Attorney General's complaint . . . because those allegations were unadjudicated"). To be sure, "it would have been irresponsible for [P]laintiff[s] to have ignored the [State AGs'] highly relevant allegations and findings." *de la Fuente v. DCI Telecomms., Inc*., 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003). Defendants also disregard the independent efforts of Plaintiffs' counsel to investigate the facts pled in the Complaints, including those alleged in the *Ontario* Action and State AGs pleadings. There

is no basis to strike any allegations in the Complaints.  *See* § I *infra*.

Defendants' challenges to Plaintiffs' claims based on purchases of Teva securities after August 3, 2017 are also groundless.  Relying on a flawed and premature "truth-on-the-market" defense, Defendants contend there was no new information imparted to the market after this date that further revealed the falsity of Teva's alleged misrepresentations.  But the law is clear that a truth-on-the-market defense is inappropriate at the pleading stage, *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000), as it is a fact-intensive question and thus a "matter for trial." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 (2013).  Defendants also argue that this Court's decision in *Ontario* forecloses claims based on purchases after August 3, 2017. But as Defendants know, the Court never addressed post-August 3, 2017 corrective disclosures in the Class Action—none were pled in the *Ontario* AC.  As shown below, the Direct Action Complaints adequately plead loss causation for each such disclosure.  *See* § II *infra*.

Defendants are also incorrect that no Plaintiff can plausibly plead claims based on Defendants' false statements or omissions prior to October 29, 2015, when, Defendants assert, Teva first "denied" employing a price-hike strategy.  But like the claims this Court sustained in *Ontario*, Plaintiffs' claims are not limited to statements in which Defendants simply denied that Teva was increasing prices.  Indeed, the Court has already ruled in this consolidated action that statements substantially similar to those pled by Plaintiffs are actionable because once Defendants put into play the issues of Teva's generic drug pricing and profit increases and decreases, they had "a duty to tell the whole truth," including that pricing was materially impacting these profit numbers.  *Ontario*, 432 F. Supp. 3d at 163.  *See* § III *infra*.

Defendants' remaining arguments directed at particular Plaintiffs' claims wholly disregard the Complaints' well-pled allegations, which must be accepted as true on a motion to dismiss.  *See*

§ IV-VII *infra*.  For the reasons set forth below, these arguments should also be rejected.

## FACTUAL AND PROCEDURAL BACKGROUND

The twenty Direct Action Complaints are premised on the same fraud alleged in *Ontario* and the State AG action.  On September 25, 2019, this Court ruled that the *Ontario* AC stated claims under the federal securities laws.  *Ontario*, 432 F. Supp. 3d 131.  This Court's detailed decision followed the filing on May 10, 2019 of an action by the State AGs of Connecticut and forty-three additional states and U.S. territories against Teva and four of its former employees. The State AG Complaint (which is over 500 pages in length) contains a litany of detailed information about how Teva employees colluded with their so-called "competitors" to divide up the market for various generic drugs, and then systematically increased the price on more than 100 drugs as Teva and other generic drug makers "embarked on one of the most egregious and damaging price-fixing conspiracies in the history of the United States."  State AG Complaint ¶¶ 2, 5.

On December 13, 2019, the *Ontario* plaintiffs filed the *Ontario* SAC, which conformed the allegations to the Court's order denying in large part Defendants' motions to dismiss the *Ontario* AC.  ECF No. 310.  Rather than opposing the *Ontario* SAC, on January 27, 2020, Defendants chose to answer the pleading.  ECF No. 327.  In so doing, Defendants elected to forgo challenging the sufficiency of many of the allegations that are the subject of their current motions to dismiss the Direct Actions.  These include allegations about the four additional corrective disclosures after August 3, 2017.  *See Ontario* SAC, ¶¶ 366-76.

Rather than remain as passive members of the Class in the *Ontario* Action, Plaintiffs— sophisticated investors who suffered significant losses as a result of Defendants' securities fraud— exercised their right to file their own actions against Defendants to recover those losses, including losses based on certain claims that had not been asserted by the *Ontario* plaintiffs.  On April 28,

2020, over Plaintiffs' objection, this Court entered an order consolidating the Direct Actions with the Class Action and directed that Plaintiffs "shall either designate their present complaint as operative or file an amended complaint" that "shall conform to the Court's ruling on the motions to dismiss in the *Ontario* Action."   ECF No. 352, ¶ 12.   The Complaints reflect Plaintiffs' adherence to that directive, and allege facts derived directly from the State AGs' investigation and Plaintiffs' counsels' independent investigatory efforts.

## **ARGUMENT**

## I.     **PLAINTIFFS PROPERLY ALLEGE FACTS BASED ON THE *ONTARIO* PLEADINGS AND THE STATE AG ACTION**

Defendants claim that the Complaints' allegations based on facts alleged in the *Ontario* pleadings and the State AG action should be stricken as immaterial because counsel did not fulfill their Rule 11 obligations.   Defendants' argument is wrong:   it misstates the law, ignores the text of the Complaints, and wholly disregards the independent efforts made by counsel to investigate the facts in the Complaints, including those alleged in the *Ontario* AC and the State AG Complaint.

As a threshold matter, Rule 11 imposes sanctions, requiring an attorney to be given notice and an opportunity to withdraw a pleading made in bad faith.   *See* Fed. R. Civ. P. 11.   Assuming the mandatory notice-and-cure has been provided, Defendants "had to file [a] Rule 11 motion separately from any other motion," which they did not.   *Bye v. Conn.*, 2011 WL 1271690, at *1 (D. Conn. Apr. 5, 2011) (Underhill, J.) (refusing to strike allegations under Rule 11 where party failed to file separate motion).[1]   Moreover, Defendants seek relief—the striking of allegations—for which Rule 11 does not provide.   *Id.* ("[T]he remedy for a Rule 11 violation is an award of sanctions").   Thus, Defendants' impermissible attempt to "strike" well-pled allegations under Rule 11 should be denied.   *Id.* (denying motion to strike where defendant "conflated the effects of Rules

---

[1] Unless otherwise stated, all internal quotations and citations are omitted and all emphasis is added.

11(b) and 12(f)").[2]

Even if Defendants had followed the proper procedure, Rule 11 does not apply.  Rule 11 relief is appropriate only in "extraordinary circumstances" where an alleged claim is "not supported by existing law, lack[s] evidentiary support, or [is] otherwise frivolous," *Scheinman v. Glass & Braus*, 2019 WL 4193420, at *3 (D. Conn. Sept. 4, 2019) (Underhill, J.), and requires that "the moving party . . . make a showing of objective unreasonableness on the part of the attorney or client signing the papers." *Bye*, 2011 WL 1271690, at *1.  Defendants cannot make this showing.

Defendants' assertion that Plaintiffs' claims lack evidentiary support is irreconcilable with the fact that the vast majority of the allegations Defendants seek to strike from the Complaints were already considered and sustained by this Court in *Ontario*, and that the Court specifically instructed Plaintiffs to "conform" their Complaints "to the Court's ruling on motions to dismiss in the *Ontario* Action." ECF No. 352, ¶ 12.  Indeed, Defendants do not identify a single case where the court struck allegations from an opt-out complaint under Rule 11 (or Rule 12(f), for that matter) that it had already sustained in the related consolidated class action.  They also make no effort to distinguish several authorities directly to the contrary in which courts have credited such allegations by direct action plaintiffs.  *See, e.g., Schwab*, 2021 WL 1085474, at *10 (rejecting arguments attacking former employee allegations in opt-out complaint derived from class complaint where "none of Defendants' cases involve the circumstances here, in which a court

---

[2] Defendants have also not filed a Rule 12(f) motion, and "[a] court need not entertain an argument that was not briefed." *Southridge Partners II Ltd. P'ship v. SND Auto Grp., Inc.*, 2019 WL 6936727, at *6 (D. Conn. Dec. 19, 2019).  In each of the primary cases that Defendants cite—which are inapposite for the reasons discussed below—the court ruled on properly filed motions to strike, either under Rule 11 or 12(f).  *See VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013); *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013); *In re Merrill Lynch & Co. Inc. Rsch. Rpts. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009).

already credited the information provided by confidential witness in the original Class Action");

*Microcapital Fund, LP v. Conn's Inc*., 2019 WL 3451153, at * 14 n.28 (S.D. Tex. July 26, 2019),

*adopting R&R*, 2019 WL 4673209 (S.D. Tex. Sept. 24, 2019) (plaintiffs opted out of securities

class action settlement and filed direct action; court rejected argument that former employee

allegations drawn from related complaint should be struck, finding that "Defendants' concerns are

mitigated because . . . the District Judge already upheld the same C[onfidential] W[itness]

allegations in the Class Action"); *380544 Canada*, 544 F. Supp. 2d at 224-25 (sustaining former

employee allegations made in reliance on earlier class complaint pled by excluded plaintiffs,

holding the "Court must accept Plaintiffs' allegations in the Complaint as true, regardless of

whether the allegations are taken from a complaint in another case.").

Defendants also ignore that "Rule 11 only requires that counsel certify that to the best of

the person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances . . . the factual contentions have evidentiary support or, ***if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery*.*" Homeward Residential, Inc. for Option One Mortg. Loan Tr. 2006-2 v. Sand Canyon

Corp.*, 2014 WL 12791757, at *7 (S.D.N.Y. Mar. 31, 2014), *vacated in part*, 2014 WL 4680849

(S.D.N.Y. Sept. 17, 2014) (alteration and emphasis in original).  Each Complaint satisfies these

requirements, identifying the sources that counsel investigated and consulted in preparing the

Complaint, including the *Ontario* and State AG pleadings, and attesting to a good faith belief that

discovery will provide evidentiary support for allegations pled on information and belief.[3]

Even if this Court had not already sustained the bulk of the allegations that Defendants

---

[3] *See, e.g., Franklin* compl. at preamble and ¶¶ 132-133.  Given that each Direct Action Complaint pleads
substantially similar (if not identical) allegations, Plaintiffs refer to an exemplary Complaint where possible.

seek to strike here, Plaintiffs' reliance on those allegations is proper under Second Circuit law.
*See City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *5-6 (S.D.N.Y. Jan. 21, 2021) (The "weight of authority holds that plaintiffs may base factual allegations on complaints from other proceedings because neither Circuit precedent nor logic supports . . . an absolute rule' against doing so.") (collecting cases); *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, 2013 WL 1342529, at *5 n.8 (S.D.N.Y. Mar. 29, 2013) ("Defendants argue that Plaintiffs may not rely on factual allegations from other complaints in support of their claims.  There is no such absolute rule.").  Specifically, Defendants' arguments fail for the following reasons.

     ***First***, it is entirely proper for private action plaintiffs to rely on facts adduced in government investigations and later pled in government actions.  *See, e.g.*, *City of N. Miami*, 2021 WL 212337, at *5 (holding that "outside complaints [in a multidistrict consumer litigation] were ***fair game*** for Plaintiffs to use in fashioning their complaint"); *Major Energy*, 2020 WL 4432121, at *7 (rejecting argument that party "should not be able to use the allegations from the Illinois Attorney General's complaint . . . because those allegations were unadjudicated"); *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 214-15 (S.D.N.Y. 2019) (affirming that "reliance on well-pleaded factual allegations in complaints in other actions is appropriate" and "treat[ing] allegations borrowed from the State AG complaint as a proper basis for the pleadings in this case"); *de la Fuente*, 259 F. Supp. 2d at 260 ("there is nothing improper about utilizing information from the SEC as evidence to support private claims.  Indeed . . . ***it would have been irresponsible for plaintiff to have ignored the SEC's highly relevant allegations and findings***.").

     This makes sense because allegations in a credible government complaint based on a comprehensive government investigation lend the "necessary evidentiary support" to include those

allegations in a private complaint. *SEC v. Lee*, 720 F. Supp. 2d 305, 340-41 (S.D.N.Y. 2010); *see also Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *11 (D.N.J. July 27, 2018) (holding that "reference to [the] recent civil complaint brought by the attorneys general of forty states . . . lend[s] greater significance to . . . evidence of conspiracy"); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (rejecting argument that plaintiffs could not rely on New York [AG] complaint where allegations borrowed from government pleading were "derived from a credible complaint based on facts obtained after an investigation"); *de la Fuente*, 259 F. Supp. 2d at 260 ("PSLRA does not require that a plaintiff re-invent the wheel before filing a complaint; and ***one could argue that a complaint predicated on the results of an SEC investigation has far more 'evidentiary support' than one based on rumor and innuendo gleaned from 'Heard on the Street.'"***).[4]

**Second**, although Defendants contend that eleven Complaints have improperly adopted the "inflated profit" analysis from the *Ontario* AC, MTD at 3, 9-10 & n.9, "[i]t makes little sense to say that information from such a study—which [a complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint." *Bear Stearns*, 851 F. Supp. 2d at 768 n.24 (rejecting request to strike allegations "that rely on allegations put forth in other litigants' complaints," including "a detailed study by Ambac Assurance Corp."); *Mylan*, 379 F. Supp. 3d at 214-15 (same); *HSH Nordbank AG v. RBS Holdings USA Inc.*, 2015 WL 1307189, at *3-4 (S.D.N.Y. Mar.

---

[4] "To the extent that [Defendants] cite cases suggesting that Second Circuit precedent requires a contrary result, other cases have cogently explained that those decisions misconstrue that precedent." *Major Energy*, 2020 WL 4432121, at *7 (citing *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620-21 (S.D.N.Y. 2014)). "Accordingly, [t]here is no absolute rule barring a private plaintiff from relying on government pleadings . . . in order to meet [pleading] thresholds, and the weight of authority holds that plaintiffs may base factual allegations on complaints from other proceedings." *Major Energy*, 2020 WL 4432121, at *7.

23, 2015) (denying defendants' motion to strike allegations from news reports and other complaints, including a "forensic review of loans"). Rather, these cases make clear that when there are studies probative of the underlying complaint, plaintiffs are permitted to incorporate those studies—even if they were originally included in separate pleadings—into their own complaints, particularly where the complaints, as here, are otherwise supported by well-pled facts.[5]

Unsurprisingly, Defendants cite no support for their argument that these allegations—which this Court sustained in *Ontario*—are somehow now rendered unreliable at the pleading stage in the Direct Actions simply because the *Ontario* plaintiffs do not intend to call at trial the expert who performed the analysis. MTD at 10. This is particularly the case where those allegations have been independently corroborated by an extensive, multi-year State AG investigation.[6]

Defendants' flawed argument regarding the "inflated profits" analysis in the *Ontario* AC is especially inapplicable to the *Alaska*, *Franklin*, *Nordea*, *Harel*, and *Phoenix* Plaintiffs. *See* MTD at 9 n.9 (conceding through their silence that the *Alaska*, *Franklin*, and *Nordea* Plaintiffs do not rely on or cite that analysis[7]). These Plaintiffs retained independent consultants to conduct an

---

[5] Defendants' authority holds the same. *See* MTD at 12 (citing *VNB Realty*, 2013 WL 5179197, at *4 (refusing to strike an allegation that "explicitly cites the forensic loan file review" performed by a plaintiff in a separate action, which was "largely copied verbatim from [that plaintiff's] complaint")).

[6] Indeed, the *Ontario* inflated-profits analysis was conducted before the filing of the State AG action, which publicly disclosed scores of new price increases designed to add almost one billion dollars of "net upside after credits" for **each quarter** that they were in effect. *See, e.g.*, *Highfields* compl. ¶¶ 6, 65. Defendants erroneously argue that it was improper for the *BH* Complaint to rely on the *Ontario* inflated profits analysis while also alleging the additional price hikes found by the State AGs. MTD at 9-10, n.10. This improperly misconstrues the *BH* complaint, which clearly alleges that because of the additional price increases alleged by the State AGs, the *Ontario* inflated profits analysis sets a *floor* for the extent to which Teva's profits were inflated. *See, e.g.*, *BH* compl. ¶ 68 ("Teva implemented another sixteen price increases in January 2015 . . . . By the end of the first quarter of 2015, the sixteen price increases . . . would generate **at least** $48 million in inflated profit[.]").

[7] For the *Harel* and *Phoenix*, Defendants incorrectly claim that Plaintiffs "simply repeat the same figures from *Ontario*," ignoring large swaths of expert analysis not included in *Ontario* (*Harel* compl. ¶¶ 315-469; *Phoenix* compl. ¶¶ 322-477) and their clear allegations that they "undertook an investigation and engaged econometric experts, working at counsel's direction." *Harel* compl. ¶ 886; *Phoenix* compl. ¶ 908.

analysis of the relevant price increases, and each Complaint details the methodology employed and the data considered by the consultants and summarizes the results.[8] Thus, Defendants' claim that no Direct Action was based on unique expert analysis is simply wrong.

*Third*, there is no merit to Defendants' attempts to undermine the Complaints' scienter allegations based on the statements of former employees in the *Ontario* Action. MTD at 2-3, 10-11. Confidential sources need only be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). And, as multiple courts in this Circuit have held, "[a]lthough the confidential informants are not personally known to Plaintiffs or Plaintiffs' counsel, the fact that the informants' accounts are derived from an earlier pleading in a different case simply does not render the instant pleading inadequate." *380544 Canada*, 544 F. Supp. 2d at 224-25; *see also Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*, 2014 WL 3569338, at *5 (E.D.N.Y. July 18, 2014) (declining to strike allegations from a confidential witness drawn from a separate pleading); *Homeward*, 2014 WL 12791757, at *6-7 (rejecting argument that "Rule [11] requires counsel to certify that he has spoken with the confidential witnesses and knows who they are").

This Court has already held that the *Ontario* plaintiffs adequately pled scienter against Defendants Desheh, Griffin, Olafsson, and Vigodman based on a host of well-pled scienter allegations, including Defendants' motive, the fact that each routinely spoke about the topics at issue publicly, the information these Defendants received or had access to during the relevant period(s), and all of the former employee allegations that Defendants now deem "immaterial." *See*

---

[8] *See* Mustokoff Decl. ¶ 4; *Franklin* compl. ¶¶ 125-129 & App'x A; *Alaska* compl. ¶¶ 76-80 & App'x A; *Nordea* compl. ¶¶ 89-93 & App'x A, *Harel* compl. ¶¶ 315-469; 886-91 & App'x C; *Phoenix* compl. ¶¶ 322-477, 908-13 & Appx C.

*Ontario*, 432 F. Supp. 3d at 170 (sustaining motive allegations); *id*. at 170-71 (holding plaintiffs adequately pled "strong circumstantial evidence of conscious misbehavior or recklessness by Vigodman, Desheh, Olafsson, and Griffin, all of whom made statements about the price-hike strategy and the price-fixing conspiracy"); *id*. at 160 ("The allegations about price increases were also corroborated by confidential witnesses."); *see generally id*. at 168-71 (identifying other salient scienter facts). The same or similar allegations are pled in each Direct Action Complaint and, when considered holistically, raise the same strong inference of scienter that this Court held was sufficiently pled in *Ontario*. Moreover, the State AG action corroborated and augmented the these allegations, including the confidential witness testimony, finding that the price-hike strategy "was ***well known, understood, and authorized by individuals at much higher levels at Teva***." State AG Complaint, ¶ 740.[9]

Defendants' cases all miss the mark. None address allegations in direct actions that are premised in part on ***sustained*** former employee allegations from the related, consolidated class action before the same Judge. MTD at 7-13. In *Lehman Brothers*, the court declined to merit confidential witness statements copied from an unrelated pleading that the court had not presided over and which had not yet been sustained. 2013 WL 3989066, at *4. As the *Schwab* court noted:

> In *Lehman Brothers*, the court was concerned that the uncorroborated witness statements pled in a different matter could be mischaracterized by attorneys. But there, the confidential witnesses were employees of a non-party entity and their statements were pulled from a complaint that involved entirely different parties. Here, ***Plaintiffs are members of the class action from which the allegations were pulled and are asserting virtually identical claims against four Defendants in the Class Action***. Simply stated, the *Lehman Brothers* court's concerns are not at issue here because

---

[9] Indeed, according to the State AG Complaint, "high-level executives at Teva were aware that [antitrust] laws were being violated systematically and egregiously, and never instructed Teva employees to stop or to rescind the agreements that Teva had reached with its competitors." State AG Complaint ¶ 1109. Furthermore, Teva's senior-most executives instructed their employees to avoid creating a paper trail documenting Teva's collusion with its "competitors." *See, e.g.*, *Highfields* compl. ¶¶ 292-95.

> Plaintiffs are using the information from the FEs for an ***identical purpose***
> ***as in the Class action***.

2021 WL 1085474, at *10 n.14 (distinguishing *Lehman Bros.*, 2013 WL 3989066, at *3-4).[10]

As a final, fallback argument, Defendants argue that Plaintiffs cannot rely on sustained allegations attributed to one former employee, ███████████, because he has purportedly "recanted" certain of his prior statements to Class counsel.  MTD at 12.[11]  At best, these alleged developments raise questions of fact and witness credibility and thus the Court need not consider ██████ declaration now.  *See, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175, at *1 (N.D. Cal. Feb. 6, 2015) (denying motion to strike former employee allegations and refusing to consider recanting declaration); *Dep't of the Treas. of the State of N.J. & its Div. of Inv. v. Cliffs Nat. Res., Inc.*, 2015 WL 6870110, at *4-5 (N.D. Ohio Nov. 6, 2015) (denying motion to strike former employee allegations; "the issues of fact and credibility raised by [d]efendants' witness declarations cannot be determined at the pleading stage"); *In re Rayonier Inc. Sec. Litig.*, 2016 WL 3022149, at *1-2 (M.D. Fla. May 20, 2016) (refusing to consider recanting declaration; "the [c]ourt is unpersuaded that considering the declaration . . . is the proper course of action at this time"); *In re Applied Micro Cirs. Corp. Sec. Litig.*, 2002 WL 34716875, at *3 (S.D. Cal. Oct. 4, 2002) (refusing to consider recanting declarations "[b]ecause the declarations are extrinsic

---

[10] Defendants' remaining cases also did not involve direct action claims premised on previously sustained allegations in a class action.  *See VNB Realty*, 2013 WL 5179197, at *7 (holding the complaint "contain[ed] precious little corroboration for VNB's scienter allegations"); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 802 (S.D.N.Y. 2020) (criticizing confidential witness allegations that counsel pled secondhand from a short-seller report deemed unreliable); *In re Millennial Media Sec. Litig.*, 2015 WL 3443918, at *11 (S.D.N.Y. May 29, 2015) (where plaintiffs moved to voluntarily dismiss complaint after eight of eleven confidential witnesses cited in complaint recanted allegations the court had not yet ruled on); *RSM Prod. Corp.*, 643 F. Supp. 2d at 403-404  (court struck allegations based on complaints dismissed for lack of subject-matter jurisdiction or by stipulation for discontinuance).

[11] ██████ declaration, based on conversations between him and Defendants' counsel in early January 2021, was signed on April 15, 2021 but was not disclosed to Plaintiffs during fact discovery—the first time Plaintiffs saw the declaration was in connection with Defendants' motion filed on May 24, 2021.

materials").

With respect to the *Alaska*, *Franklin*, and *Nordea* Complaints, Defendants have an even weaker argument.  As Defendants tacitly admit, the two former employees identified as FE-1 and FE-2 in those Complaints were independently contacted and interviewed as part of these Plaintiffs' counsel's pre-suit, independent investigation.  MTD at 11 n.12 ("Three complaints allege that counsel contacted two former Teva employees[.]"); *see also* Mustokoff Decl. ¶ 7.  Contrary to Defendants' insinuation (MTD at 12), ███████ is ***not*** FE-1 in these three Complaints (nor is he FE-2).  *Id*. ¶ 8.  These Complaints also explicitly note that "[b]efore relying on the information set forth in the *Ontario Teachers* Amended Complaint, counsel for Plaintiff[s] herein independently confirmed that information."  *Franklin* compl. ¶ 121 n. 6; *Alaska* compl. ¶ 72 n. 6; *Nordea* compl. ¶ 85 n. 6.  Specifically, during their pre-suit investigation, counsel contacted Class counsel, who verified that the information in the *Ontario* AC attributable to the former employees was in fact provided by these witnesses and accurately presented.  Mustokoff Decl. ¶ 5.  In addition, counsel attempted to independently contact the individuals it believed to be the former employees cited in the *Ontario* AC (including ███████) to further verify those allegations.  *Id*. ¶ 6.

## II.     PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR PURCHASES OF TEVA SECURITIES AFTER AUGUST 3, 2017

Relying on the so-called "truth-on-the-market" defense, Defendants ask this Court to dismiss all claims based on purchases of Teva securities made after August 3, 2017.  They argue that there was no new information imparted to the market after this date that further revealed the falsity of Teva's alleged misrepresentations or Defendants' misconduct.  MTD at 14-20.  Based on this assertion, Defendants make three legal arguments:  (1) "loss causation cannot be established based on a disclosure of facts already known to the market" (*id.* at 15); (2) the fraud-on-the-market presumption is inapplicable for statements after August 3, 2017 because the truth had already been

disclosed to the market (*id.* at 17-18); and (3) Plaintiffs lack standing with respect to purchases made after August 3, 2017, i.e., when the truth was purportedly revealed.  *Id.* at 19-20.  Whether viewed in terms of loss causation, materiality, or standing, Defendants' truth-on-the market argument fails because Defendants cannot establish on a motion to dismiss that, as a matter of law, no new information regarding the alleged fraud was conveyed to the market after August 3, 2017.

The law is clear that a truth-on-the-market defense is premature at the pleading stage, as this defense is "intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint."  *Ganino*, 228 F.3d at 167.  As the Supreme Court admonished in *Amgen*, whether or when "news of the truth credibly entered the market and dissipated the effects of prior misstatements . . . . is a ***matter for trial***."  568 U.S. at 482; *see also In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 253 (S.D.N.Y. 2007) (rejecting argument that "the contents of th[e] disclosure had already been revealed" because such determination "is one for the jury to make").  In any event, there is no credible dispute that the post-August 3, 2017 disclosures—each followed by a substantial stock price decline—revealed new information to investors regarding the extent of Defendants' fraud.

Rather than try to explain how the information disclosed after August 3, 2017 was not new, curative information, Defendants argue that (1) the Court previously decided, in upholding the *Ontario* action, that the full relevant truth about Teva's misrepresentations and omissions was known to the market by August 3, 2017 (MTD at 14-15), and (2) the Complaints effectively admit that the market learned all material information about Teva's alleged fraud by August 3, 2017.  *Id.* at 19-20.  These arguments are wrong and mischaracterize both this Court's *Ontario* decision and the Complaints.  The Court never addressed whether the post-August 3, 2017 corrective disclosures (which were not pled by the *Ontario* plaintiffs) were inactionable because the truth had

been fully disclosed, and none of the Complaints concede that investors were fully informed about the scope of Defendants' fraudulent statements as of August 3, 2017.

The post-August 3, 2017 disclosures themselves demonstrate that new information about Teva's misstatements and omissions was revealed to the market after that date.   Moreover, Defendants persisted in denying any wrongdoing both as to Teva's involvement in anticompetitive conduct and the impact of Teva's price increases on the Company's financial performance well after August 3, 2017.  Thus, even if the earlier-pled disclosures revealed information to the market relating to the fraud, Defendants' continuing denials negate their truth-on-the-market defense.  *See, e.g., Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 238 (S.D.N.Y. 2006) (holding that because defendants "counteracted" any disclosures of fraud through their "contemporaneous statements," "there are sufficient facts pled to question whether the alleged 'truth-on-the-market' was said with the degree of intensity and credibility sufficient to counter-balance any allegedly misleading statements made by Defendants").  In other words, Defendants diminished the curative impact of prior disclosures with their continued misrepresentations.

### A. The Court's Decision Upholding the *Ontario* AC Did Not Address Whether Disclosures After August 3, 2017 Imparted New Material Information to the Market, Much Less Decide that Issue as a Matter of Law

Defendants' truth-on-the-market defense is based on the false premise that this Court, in denying the motion to dismiss the *Ontario* AC, affirmatively decided that the full extent of the truth about Teva's misstatements and omissions was disclosed to the market by August 3, 2017. MTD at 14-15.  Defendants' argument is essentially an assertion that post-August 3, 2017 claims are barred based on the law of the case, although they do not explicitly invoke that doctrine.

"The law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings."  *Choi v. Tower Rsch. Cap. LLC*, --- F.4th ----, 2021 WL 2546166, at *7 (2d Cir. June 22, 2021).  In *Ontario*, this Court was addressing

a pleading that terminated the relevant period on August 3, 2017, and contained no allegations after that date.  *See Ontario*, 432 F. Supp. 3d at 144.  Thus, when the Court upheld the *Ontario* plaintiffs' loss causation allegations, it did not address—and could not have addressed (much less determined)—whether the corrective disclosures after August 3, 2017 were inactionable because the truth had been fully disclosed or whether events occurring after that date might also have provided new material information to the market about the alleged fraud.  Accordingly, as this Court has recognized, where an issue previously has not been explicitly decided, "the law of the case doctrine does not apply."  *Cadle Co. v. Fletcher*, 2013 WL 6092515, at *3 n.4 (D. Conn. Nov. 19, 2013) (Underhill, J.).

Further, the statement relied upon by Defendants—that investors were "on notice" of certain facts related to Teva's misstatements and omissions (MTD at 14 (citing *Ontario*, 432 F. Supp. 3d at 174))—is not inconsistent with the concept that the information had been partially, but not fully, disclosed, and material corrective information came into the market after August 3, 2017. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, ---F. Supp. 3d----, 2021 WL 1264027, at *29 (E.D. Pa. April 6, 2021) (for purposes of loss causation, "the truth may be revealed by a series of partial disclosures through which the truth gradually leaks out") (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)); *In re Bristol Myers Squibb Co., Sec. Litig.*, 586 F. Supp. 2d 148, 165 (S.D.N.Y. 2008) (disclosure of a fraud "need not take the form of a single announcement, but rather, can occur through a series of disclosing events").  This Court simply never reached that issue, and thus Defendants' argument that the Court found, as a matter of law, that the market was fully informed as of August 3, 2017, should be rejected.

**B.    No Plaintiff Has Conceded that the Market Was Fully Informed About Defendants' Misstatements and Omissions as of August 3, 2017**

Stripped of their mischaracterization of the Court's decision in *Ontario*, Defendants' truth-

on-the-market claim rests solely on their assertion that four of the Complaints (*Chicago*, *Harel*, *Clal*, and *INKA*) somehow concede that the truth was fully disclosed as of August 3, 2017. MTD at 20. The cited passages from the Complaints, however, do nothing beyond mention the disclosure of pricing pressure, the amount of a stock price decline, and the fact that Teva's debt was downgraded—they do not concede in any way that the full truth had been revealed. *See id.* In fact, all of the Complaints, including these four, explicitly allege the existence of corrective disclosures after August 3, 2017. These allegations belie any claim that Plaintiffs admit that the market knew the full truth about Defendants' fraud by August 3, 2017.[12]

### C. The Complaints Adequately Allege that New Material Information About Defendants' Misstatements and Omissions Was Disclosed to the Market After August 3, 2017, and Defendants Continued to Deny Fraud

"The burden to plead loss causation is not a heavy one, and when it is unclear whether the plaintiff's losses were caused by the fraud or some other intervening event, the chain of causation is . . . not to be decided on a Rule 12(b)(6) motion to dismiss." *Ontario*, 432 F. Supp. 3d at 173. Plaintiffs need only allege that "the subject" of the misstatements and omissions "was the cause of the actual loss suffered." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016). Plaintiffs may plead a loss causing event or "series of events" that (1) "constructively" disclose the relevant truth or (2) were a foreseeable "materialization of [the] risk" concealed by the fraud. *Id.* at 262.

Even if Defendants' truth-on-the-market argument were not premature—it is, *see Amgen*, 568 U.S. at 482[13]—the Complaints adequately plead that multiple disclosures after August 3, 2017

---

[12] Defendants' assertion that the *Chicago* Complaint somehow acknowledges that the truth was fully revealed to the market by August 3, 2017 because it asserts that a \$6.1 billion goodwill impairment "reveal[ed] the true value of [the] combined U.S. generic business" (MTD at 16 (first alteration in original)) is of no moment because it merely addresses the information known as of that date, and the *Chicago* Complaint itself continues to plead the existence of new material information about the fraud in succeeding paragraphs. *Id.* ¶¶ 343-53.

[13] As discussed above, a truth-on-the-market defense "is a matter for trial." *Id.* Like here, in *Freeland v. Iridium World Communications, Ltd.*, 545 F. Supp. 2d 59 (D.D.C. 2008), the defendant's "loss causation

provided new material information about the impact of Teva's unsustainable price-increase strategy on the Company's generic drug division and its participation in price collusion that were concealed by Defendants, as demonstrated by the significant decline in Teva's stock price that immediately followed each disclosure.[14]  A significant market reaction is a primary indicator that the market has received material new information.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 182 (S.D.N.Y. 2003) ("Defendants' claim that the market knew or should have known of Vivendi's liquidity crisis is belied by the precipitous [stock] drop" after each alleged corrective disclosure).

Tellingly, while Defendants argue that none of the information after August 3, 2017 was new to the market, they provide ***no alternative explanation*** for these significant stock drops.  And, even if they were to attempt to provide some alternative explanation, "Plaintiffs need not demonstrate on a motion to dismiss that the corrective disclosure was the only possible cause for decline in the stock price."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) (emphasis omitted).  Plaintiffs merely need to "allege sufficient facts to raise a reasonable inference that [defendants' misstatements or fraudulent conduct] caused an ascertainable portion of its loss."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 404 (2d Cir. 2015).

---

argument rest[ed] on establishing that the disclosures revealed information already known to the market, and thus could not have negatively affected the market."  *Id*. at 80.  The court rejected this argument as an attempt "to inject [a] truth on the market defense" into loss causation, and held that "this remains a factual determination to be decided by the jury . . . ."  *Id.*  This Court should reach the same conclusion here.

[14] All Complaints plead November 2, 2017, February 8, 2018, December 7-10, 2018, and May 10-13, 2019 as corrective disclosures.  On November 2, 2017, Teva's ADS price fell $2.79 per share, or nearly 20%, to $11.23; on February 8, 2018, Teva's ADS price fell $2.21 per share, or over 10.5%, to $18.64; on December 7-10, 2018, Teva's ADS price fell $0.97 per share, or approximately 5%, to $18.44); and on May 10-13, 2019, Teva's ADS price fell $2.13 per share, or approximately 15%, to $12.23).  *See, e.g.*, *Franklin* compl. ¶¶ 338, 341, 344, 346.  The *Clal*, *Migdal Ins.*, *Migdal Mut.*, *Mivtachim*, and *Psagot* Complaints allege a corrective disclosure on May 28-30, 2019 related to a settlement by Teva of certain opioid cases, which is addressed in the separately filed opposition to Defendants' MTD New Claims.

An examination of the corrective disclosures alleged by Plaintiffs demonstrate that they raise a reasonable inference that they relate to Defendants' misstatements and omissions. Two of the corrective disclosures relate to Teva's participation in price collusion:

- **December 9, 2018:** a *Washington Post* article quoted the Connecticut AG as stating that the investigation into anticompetitive activity in the generics industry had expanded to 300 drugs and exposed "the largest cartel" in U.S. history (*Franklin* compl. ¶¶ 172, 343).

- **May 10, 2019:** the State AGs filed the State AG Complaint, a 524-page antitrust complaint revealing previously undisclosed facts regarding Teva's participation in the conspiracy. The State AG Complaint detailed Teva's price-fixing with respect to at least 86 different generic drugs (as compared to 7 drugs in the previously-filed action). The State AG Complaint also revealed new facts relating to significant price increases Teva implemented for approximately 112 generic drugs and detailed Teva's role as a "consistent participant" and a central player in the conspiracy (*Franklin* compl. ¶¶ 173, 345).

Thus, even though prior events had revealed information relating to the risk that Teva was facing antitrust liability, these disclosures unveiled a much fuller account of Teva's wrongdoing that was not previously known. *See Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, at *11 (S.D.N.Y. Sept. 24, 2018) (rejecting argument that full risk of generic drug maker's liability was revealed through prior events because until the comprehensive State AG complaint, "the market was unaware of the extent of Taro's specific involvement"). Indeed, following the May 10, 2019 unveiling of the State AG Complaint against Teva, market analysts expressed their surprise, with Bernstein proclaiming that "the price-fixing lawsuit is *worse than we expected*," and J.P. Morgan reporting that "[w]e were open to the majority of price spikes being 'explainable' by way of shortages, limited competition (only two or three competitors), and price 'signaling,' . . . [s]o we were sorely disappointed by the nature of the direct quotes attributed to Teva employees in the expanded complaint." *Franklin* compl. ¶ 347.

The other corrective disclosures relate to the failure of Teva's price-increase strategy and its impact on the Company's generic drug business:

19

- **November 2, 2017:** Teva's announcement that it had experienced a 9% decline in U.S. generic quarterly revenues as compared to Q3 2016 (*Franklin* compl. ¶ 337).

- **February 8, 2018:** Teva's announcement of a $10.4 billion impairment related to its U.S. generics business (*Franklin* compl. ¶ 340).

This Court held that similar disclosures satisfied loss causation in ruling on the sufficiency of the *Ontario* AC, explaining that the revelation of Teva's "disappointing financial numbers" was one of the events that "constructively disclosed the concealed frauds," including Teva's concealment of its price-hike strategy which, along with the price-fixing conspiracy, were "both part of a 'network of interrelated lies . . . all collectively aimed at perpetuating a broader, material lie.'" *Ontario*, 432 F. Supp. 3d at 174 (quoting *Vivendi*, 838 F.3d at 250). The Court then sustained allegations that the risks of Teva's concealed price-hike strategy "began to materialize through a series of negative events and disclosures that revealed, *on a piecemeal basis*, the false and misleading nature" of Defendants' statements. *Ontario*, 432 F. Supp. 3d at 173.

Moreover, even if the full truth regarding Defendants' fraud was known to the market by August 3, 2017, Defendants' contemporaneous *denials* of Teva's involvement in price-fixing[15] and the impact of its failed price-increase strategy on the Company's financial performance[16] vitiate their truth-on-the-market defense. Given this continuing stream of denials, Defendants cannot establish that prior to the alleged corrective disclosures, "the corrective information [was] conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Ganino*, 228 F.3d

---

[15] *See, e.g., Franklin* compl. ¶ 249 (alleging that Defendants falsely "*denie[d] having engaged in any conduct* that would give rise to liability with respect to the [State AG and DOJ investigations and actions]" on 8/3/17); ¶ 253 (10/31/17; "Teva *denies* these allegations . . . ."); ¶ 255 (12/19/18; "Teva again *denied* the State AGs' allegations"); ¶ 343 (12/9/18; "the article cited Teva's *continued denial* of engaging in any anticompetitive conduct").

[16] *See, e.g., Franklin* compl. ¶ 337 (11/2/17: attributing pricing issues to FDA approvals and customer consolidation rather than the failure of Teva's price increase strategy); ¶ 340 (2/8/18: same).

at 167; *see, e.g., Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 562

(S.D.N.Y. 2017) (truth-on-the-market defense failed where defendants denied credibility of media

reports); *Lapin*, 506 F. Supp. 2d at 238 ("[E]ven if the news articles, the *Stefansky* complaint, and

the disclaimers in Goldman research reports raised some concern in the market about Goldman's

alleged conflicts, such information was ***counteracted by contemporaneous statements by

Goldman***, informing the market that its research was . . . independent[] and objective."); *In re

MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 582 (S.D.N.Y. 2010) ("even if . . . [MBIA's

disclosures] suggested that all MBIA CDOs contained RMBS, Lead Plaintiff adequately alleges

that such information was ***counteracted by MBIA's contemporaneous statements***"); *In re eSpeed,

Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 288 (S.D.N.Y. 2006) (negative publicity predating corrective

disclosures were "***counteracted by authoritative statements from defendants***").   Accordingly,

Defendants' truth-on-the-market argument fails.

## III.   PLAINTIFFS ADEQUATELY PLEAD MISREPRESENTATIONS AND OMISSIONS MADE BY DEFENDANTS PRIOR TO OCTOBER 29, 2015

Defendants next argue that Plaintiffs cannot plausibly allege any material

misrepresentations or omissions prior to October 29, 2015, when Defendants claim Teva first

"denied" the Company's reliance on a price-increase strategy.  MTD at 21-23.  Defendants assert

that prior to October 29, 2015, the market already knew Teva was increasing prices and, thus,

could not have been misled by the any of the alleged misrepresentations and omissions.  *Id*.

Defendants ignore that in *Ontario*, this Court sustained numerous statements dating back

to February 6, 2014 that are substantially similar (often identical) to those Defendants challenge

here.[17]  For example, the Court held that "[t]he misstatements and omissions attributing the profit

---

[17] *See Ontario* AC ¶¶ 173-75 (February 6 and 10, 2014), ¶¶ 177-78 (May 1, 2014), ¶¶ 179-80, (July 31, 2014), ¶¶ 181-84 (October 30, 2014), ¶¶ 185-86 (December 11, 2014), ¶¶ 187-90 (February 5, 2015), ¶¶ 191-92 (April 30, 2015), ¶ 193 (June 11, 2015), and ¶¶ 194-95 (July 30, 2015).

increases and decreases to things other than pricing were half-truths, ones that gave rise to a duty to disclose the whole truth." *Ontario*, 432 F. Supp. 3d at 165; *see also id*. at 146, 162 ("[D]efendants attributed positive financial results primarily to reasons other than the price-hike strategy," such as "higher sales' volume, reduced expenses, and exclusive launches of new generic drugs."). In so holding, the Court credited allegations "that the defendants omitted that, although those reasons may have had ***some*** influence, the real reason for the increase was the price-hike strategy." *Id.* at 146 (emphasis in original); *see id*. at 163 (Teva had "a duty to tell the whole truth, because it spoke on an issue or topic and . . . made omissions that [led] to a 'material misleading impression[.]'").

Like the claims the Court sustained in *Ontario*, Plaintiffs' respective claims are not limited to statements through which Defendants affirmatively "denied" that Teva was increasing generic drug prices, as Defendants incorrectly contend. *See* MTD at 21 (claiming that Plaintiffs allege all statements from mid-2013 to 2016 were false only because "Teva consistently denied that it was raising prices"). Indeed, the Complaints make abundantly clear that, in addition to the alleged false denials, Defendants made material misrepresentations and omissions when they: (1) attributed "changes in Teva's generic segment profit and U.S. generic revenues to sources other than Teva's price increases"; (2) disclosed "the reasons for the Company's success in the generic drug market (including improved revenues, growth, profitability, costs, and margins)"; and (3) stated that Teva was immune to pricing pressure and discussed the level of competition that Teva faced in the generic drug market. *See, e.g.*, *Nordea* compl. ¶ 141. It is telling that, despite seeking dismissal of ***all*** pre-October 29, 2015 alleged misrepresentations across the Complaints on materiality grounds, Defendants do not specifically address a single challenged statement, much less provide the detailed factual context that a materiality

determination requires.  *See Vivendi*, 838 F.3d at 250 ("The test for whether a statement is materially misleading under Section 10(b) is not whether the statement is misleading in and of itself, but whether the defendants' representations, ***taken together and in context***, would have misled a reasonable investor.") (emphasis in original).

Defendants' argument is also incompatible with the Complaints' well-pled allegations as to ***why*** the alleged misstatements or omissions were materially false or misleading prior to October 29, 2015.  Each had the effect of concealing that Teva's reported financial results and success in the generic drug market, including improved revenues, were driven primarily by its reliance on massive price increases (many of which were done in tandem with its purported competitors).  *See Ontario*, 432 F. Supp. 3d at 163-64 ("A duty to disclose arises whenever secret information renders prior public statements materially misleading[.]").  Unbeknownst to investors, Teva's price-hike strategy was inherently unsustainable in light of, among other things, industry, regulatory and governmental scrutiny surrounding the pricing of generic drugs, and increasing competition in the market.  Having put into play the issue of the source of Teva's revenue growth and subject of competition in the generic drug markets, Defendants had a duty to disclose the Company's price increase strategy and the true source of its revenues, which they never did during the Class Period. *Id*.  As a result, Defendants' "affirmatively creat[ed] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]."  *In re Alstom SA*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005) (alterations in original).

IV.    **THE *CLAL*, *FIR TREE*, *MIGDAL INS.*, *MIGDAL MUT.*, *MIVTACHIM*, AND *PSAGOT* PLAINTIFFS ADEQUATELY PLEAD STANDING AND CAUSATION**

Defendants assert that certain Plaintiffs in *Clal, Fir Tree, Migdal Ins., Migdal Mut., Mivtachim*, and *Psagot* fail to adequately allege standing and causation because those Plaintiffs do not "clearly allege that they bought securities at all."  MTD at 24.  Defendants are wrong.

Plaintiffs repeatedly and clearly allege that they purchased Teva securities at an inflated price caused by Defendants' fraud and were damaged.  Indeed, the very first paragraph of the Plaintiffs' Complaints state: "***These misrepresentations and omissions caused the market, including Plaintiffs, to purchase Teva's securities at artificially inflated prices***."  *Clal* compl. ¶1.[18]  The first paragraph under the heading "Loss Causation" states "the Defendants' fraudulent conduct directly and proximately caused Plaintiffs to suffer substantial losses ***as a result of purchasing Teva Securities at artificially inflated prices during the Relevant Period***."  *Clal* compl. ¶ 516.  Similar allegations appear under the individual counts in the Complaints (*see id*. ¶¶ 574-575, 584; *Fir Tree* compl., ¶¶ 415-417, 421, 431, 433, 439, 442, 447) as well as throughout the Complaints.  *See Clal* compl. ¶¶ 586, 593, 594, 597, 599, 600, 605, 606, 607, 612, 613, 614. Defendants do not dispute that allegations that a plaintiff "purchased Teva securities, albeit without providing details about those alleged trades" is sufficient to survive a motion to dismiss.  MTD at 24.  *See In re Barclays Liquidity Cross & High Frequency Trading Litig*., 390 F. Supp. 3d 432, 445 (S.D.N.Y. 2019) (upholding allegations that the plaintiffs were purchasers and were "victimized by distorted prices" and rejecting requirement that "Plaintiffs allege a specific trade at a specific price manipulated to their detriment").  That is precisely what these Plaintiffs allege.

Wholly ignoring these allegations, Defendants cherry-pick a few instances where the Complaints allege that Plaintiffs "purchased and/or sold" or "acquired, held, and/or sold certain" Teva securities during the Relevant Period (MTD at 24), arguing that the these Plaintiffs have failed to allege standing or loss causation because it is hypothetically possible that the Plaintiffs were "in-and-out traders" that sold their purchased shares prior to any corrective disclosure.  *Id*. at

---

[18] Defendants incorrectly cite to the original complaints filed in *Clal*, *Migdal Ins.*, *Migdal Mut.*, *Mivtachim*, and *Psagot*, rather than the operative consolidated complaint filed on May 28, 2020. ECF No. 391.

25. Defendants' musings are not a basis to dismiss these Plaintiffs' claims at this stage. Courts only dismiss claims on the basis of a plaintiff being an "in-and-out" trader where the plaintiff affirmatively alleges that they sold prior to any corrective event and, therefore, suffered no damages. *Levine v. Atricure, Inc.,* 594 F. Supp. 2d 471, 476-77 (S.D.N.Y. 2009) (upholding claims where defendant asserted that the plaintiff was an in-and-out trader but the complaint did not affirmatively allege that the plaintiff sold its securities prior to the first corrective disclosure).

Here, by contrast, even in the few sentences identified by Defendants, Plaintiffs clearly allege that they held their purchased shares through a corrective disclosure.[19] Defendants concede that Plaintiffs are not required to plead their individual purchases and sales. It necessarily follows that these Plaintiffs' claims cannot be dismissed because Defendants merely assert it is "possible" that Plaintiffs did not hold any of their purchased securities through a corrective disclosure. *See Gordon v. Sonar Cap. Mgmt. LLC*, 2014 WL 3900560, at *3 (S.D.N.Y. Aug. 1, 2014) (holding that the motion to dismiss stage was premature for evaluating whether a plaintiff was an in-and-out trader). Indeed, such a finding would contradict Plaintiffs' allegations that they suffered damages from these purchases "upon the revelation of the alleged corrective disclosures."

"When the defendant asserts a facial challenge to standing,… it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and are to presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *John v. Whole Foods Mkt. Grp., Inc*., 858 F.3d 732, 737 (2d Cir. 2017) (alterations in original). Thus, to satisfy Article III, a plaintiff "need only generally allege facts that, accepted as

---

[19] *See, e.g., Clal* compl. ¶ 29 ("Psagot purchased and/or sold Teva securities on the NYSE and TASE during the Relevant Period ***and was damaged upon the revelation of the alleged corrective disclosures***."); *Fir Tree* compl. ¶ 24 (alleging that Fir Tree acquired ADSs in the 2015 offering, purchased ADSs on the NYSE "and were damaged upon the revelation of the alleged corrective disclosures"); *see also Clal* compl. ¶¶ 30-38 (each plaintiff alleging there were "damaged upon the revelation of the alleged corrective disclosures.").

true, make his alleged injury plausible." *Id.*  Here, Plaintiffs have alleged they purchased Teva securities at artificially inflated prices and were damaged upon the revelation of the fraud.  Their alleged injury is certainly "plausible."

To the extent the Court determines that any of Plaintiffs' allegations in their respective Complaints are insufficient, those Plaintiffs request permission to amend to allege that each Plaintiff purchased Teva securities during the Relevant Period and held through at least one corrective disclosure, or provide any additional information that the Court determines is necessary at the pleading stage. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995).

## V.     *MORRISON* DOES NOT BAR CERTAIN FOREIGN PLAINTIFFS' CLAIMS

Defendants argue that insofar as the *Clal, Harel, INKA, Migdal Ins., Migdal Mut., Mivtachim, Phoenix,* and *Psagot* actions assert federal securities law claims based on transactions other than Teva's ADSs (i.e. Teva's Preferred Shares, Notes, or ordinary shares), those claims are barred by *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), because the Plaintiffs do not sufficiently allege details of their "domestic transactions."  MTD at 26-29.  But Defendants' concerns are purely theoretical, and they have not identified what relief the Court could provide. To the extent certain of Plaintiffs' transactions are subject to dispute under *Morrison*, those transactions are also covered by corollary violations of Israeli and/or state law.  So, even if the Court agreed with Defendants and dismissed the federal securities law claims under *Morrison*, the same legal analyses, factual issues, and losses would persist in the case.  For example, the Court has already exercised supplemental jurisdiction over the Israeli  law claims concerning the losses arising out of their purchases of Teva's Ordinary Shares traded on the TASE.[20]   *In re Teva Sec.*

---

[20] Teva's Notes and Preferred Shares were not traded on the TASE, but to the extent they were traded in Israel as opposed to the U.S., then they too are subject to the ISL, and this Court's supplemental jurisdiction of this Court.

*Litig.*, 2021 WL 231130, at * 27 (D. Conn. Jan. 22, 2021) (noting that Israeli law calls for application of federal securities laws in this instance).  Similarly, the Plaintiffs' transactions in Ordinary Shares, Notes and Preferred Shares are covered by the Plaintiffs' claims under the PSA and common law fraud, which Defendants acknowledge is substantively the same as federal securities laws.  ECF No. 787-1 at 13 n.23.  Therefore, there is no prejudice to Defendants in permitting these claims to move forward.

## VI.   THE *PACIFIC* AND *HIGHFIELDS* COMPLAINTS ARE ADEQUATELY PLED[21]

### A.   The *Pacific* Complaint Adequately Pleads Loss Causation

To plead loss causation, "[t]he complaint must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentations."  *Ontario*, 432 F. Supp. 3d at 172-73.  The *Pacific* complaint does just that.

Defendants are simply wrong that the *Pacific* complaint "fail[s] to allege any negative impact on the 2020 Notes."  MTD at 30.  The *Pacific* Plaintiffs allege that they purchased 2020 Notes at prices inflated by fraud (*e.g.*, *Pacific* compl., ECF No. 392, ¶¶ 37, 440) and that the price of those notes fell in response to revelations of the fraud.  *See, e.g., id.*, ¶ 363 ("the prices of Teva Securities declined") and ¶ 35 n.6 ("Teva Securities" includes 2020 Notes)); *see also id.* ¶¶ 126, 131, 132, 134, 363, 365, 367, 372, 375, 379, 381, 385.  Defendants may contend that the *Pacific* complaint must specify the exact price declines of the 2020 Notes, but they have neither articulated this position nor offered any support for it. Moreover, this Court has already held that "[a]llegations of loss causation are not subject to a heightened pleading standard."  *Labul v. XPO Logistics*, 2021 WL 1056828, at *14 (D. Conn. Mar. 19, 2021) (Underhill, J.).  If the Court wishes, however, the *Pacific* Plaintiffs are able to amend their complaint to list exact price drops for the 2020 Notes.

---

[21] Defendants' misplaced footnote suggests that supposed pleading flaws in the *Pacific* and *Highfields* complaints mandate dismissal of ISL claims in entirely separate complaints.  *See* MTD at 29 n.34.

B.      The *Highfields* Complaint States a Section 18 Claim

Defendants erroneously argue that the *Highfields* Plaintiffs have not pled actual reliance under Section 18.  For Section 18, Plaintiffs must allege "actual, or what has sometimes been referred to as 'eyeball,' reliance," meaning that they "actually read and relied on the filed document."  *In re Alstom*, 406 F. Supp. 2d at 479; *see Gross v. Diversified Mortg. Invs.*, 438 F. Supp. 190, 195 (S.D.N.Y. 1977) (defining "eyeball reliance" as "that [plaintiffs] actually read the filed document or documents").  In a section entitled "Plaintiffs' Actual Reliance," the *Highfields* Complaint does just that, specifically alleging that, prior to purchasing Teva common stock, analysts at the *Highfields* Plaintiffs' investment manager (Highfields) "actually and justifiably read, reviewed, listened to and/or relied upon (as applicable)," each of the SEC filings, press releases, earnings calls, conferences calls, or news articles alleged to contain material misrepresentations and/or omissions in the Complaint, including Defendants' statements concerning *inter alia*,

> pricing trends for generic drugs, the competitiveness of the U.S. generics market, the source of Teva's revenues and profits, Defendants' denials that Teva was deriving material financial benefits from price increases, Defendants' claims of limited price hikes, Defendants' denials of pricing pressure, Defendants' denials of participation in collusive conduct, and Defendants' statements regarding the Actavis acquisition,

which were all "material to Highfields' decision to purchase or acquire Teva securities on behalf of plaintiffs."  *Highfields* compl. ¶¶ 370-71.

Courts consistently hold that such allegations are sufficient to plead actual reliance under Section 18.  *See, e.g., Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012) (allowing Section 18 claim to survive ***summary judgment*** where the plaintiff's employee could not even recall whether she read the audit opinion at issue, but merely testified it was her "practice" to review such documents in deciding to recommend stocks for purchase); *In re Petrobras Sec.*

*Litig.*, 152 F. Supp. 3d 186, 196 (S.D.N.Y. 2016) (finding Section 18 claim sufficiently pled even where the complaint "[did] not tie specific misstatements to specific transactions" because "such specificity is not necessary for a [Section] 18 claim to survive a motion to dismiss").[22]

The cases Defendants cite are readily distinguishable.  MTD 30-31.[23]  In *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*., for example, the court concluded that a complaint asserting a claim against the Company's outside auditor failed to allege actual reliance when it stated "only . . . in the most general sense that reliance upon" audit opinions caused the plaintiffs to purchase certain securities and did not "identify time-frames during which Plaintiffs purportedly purchased [the at-issue] securities as a result of the audit opinions."  33 F. Supp. 3d 401, 444-45 (S.D.N.Y. 2014).  That is not the case here, where the *Highfields* Plaintiffs have alleged specific, actual reliance on Teva's disclosures and identified the period over which they purchased securities in reliance on those statements.  As such, the *Highfields* Plaintiffs have sufficiently alleged a claim under Section 18.

---

[22] *See, e.g.*, *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011) (concluding, "[w]ith regard to actual reliance, Maverick alleges that it read and/or listened to and relied upon the defendants' false and misleading statements before investing tens of millions of dollars in Comverse shares. . . . This alone is a sufficient allegation of actual reliance for purposes of surviving a motion to dismiss."); *Transit Rail, LLC v. Marsala*, 2007 WL 2089273, at *8 (W.D.N.Y. July 20, 2007) (denying motion to dismiss where complaint alleged that plaintiff "received, reviewed and relied" on misstatements); *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*, 2018 WL 406046, at *4 (D.N.J. Jan 12, 2018) (declining to require plaintiffs to "link every purchase to a specific misstatement to meet Section 18's pleading requirement" and holding actual reliance pled because plaintiffs "identified the statements on which they relied, in specific documents filed with the SEC, and plead actual 'eyeball' reliance on these documents and statements in purchasing the securities at issue").

[23] Plaintiffs distinguish both *In re Bear Stearns Cos., Inc. Securities, Derivative & ERISA Litigation*, 995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom., SRM Global Master Fund Ltd. Partnership v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016), and *International Fund Management S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011), in their opposition to the MTD State Law Claims.  Those arguments apply equally here and are incorporated by reference herein.

## VII.    THE *FIR TREE*, *HAREL*, AND *PHOENIX* COMPLAINTS PLEAD CLAIMS UNDER SECTION 12(A)(2) OF THE SECURITIES ACT

Defendants seek dismissal of the *Fir Tree*, *Harel*, and *Phoenix* Plaintiffs' claims under Section 12(a)(2) of the Securities Act, claiming that Plaintiffs "[failed to] establish that the securities were purchased directly from the defendants through the public offering at issue." MTD at 32-33. Specifically, Defendants argue that Plaintiffs merely (i) alleged that the Teva ADS and Notes were purchased "pursuant to, and/or traceable to" Teva's public offerings; and (ii) failed to allege sufficient details of their purported purchases or attach relevant trading data. *Id*. Defendants' argument fails because their quotations from these Plaintiffs' Complaints selectively omit other allegations that make explicitly clear that Plaintiffs were direct purchasers and pled sufficient facts to support their claims.[24]

*First*, Defendants' entire line of argument focuses myopically on the phrase "pursuant to, and/or traceable to [Teva's public offerings]" (MTD at 32), but, importantly, entirely ignores other allegations in each of the three Complaints that ***clarify that Plaintiffs were direct purchasers***. *See, e.g.*, *Fir Tree* compl. ¶ 438 ("When [Plaintiffs] acquired the securities **directly from** the Defendants named in this Count") (emphasis added); *Harel* compl. ¶¶ 814-7 ("Plaintiffs purchased Teva Notes in the Notes Offering. . . . Defendant Teva was the issuer of the Notes."); *Phoenix* compl. ¶¶ 805-8 ("Plaintiffs purchased Teva ADS (SEDOL: 2883878) . . . in the ADS Offering. . . . Teva was the issuer of the ADSs."). Tellingly, this Court has already denied relevant portions of Defendants' MTD for the *Ontario* AC, which used similar language in its Section 12(a)(2) claims. *See, e.g.*, *Ontario* AC at ¶¶ 409-11, 449, 454; *Ontario*, 432 F. Supp. 3d at 180–82.[25]

---

[24] Plaintiffs' arguments herein also apply to Defendants' contentions related to the *Harel* and *Phoenix* Plaintiffs' derivative ISL claims. *See* MTD at n.35.

[25] To the extent the Court is still troubled by any potential ambiguity as to whether Plaintiffs were direct purchasers of the relevant Teva securities, Plaintiffs can easily remedy this "inadequacy" as necessary. *See Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141–42 (2d Cir. 2013) (finding Plaintiffs' proposed

*Second*, Defendants' contention that the three Complaints fail to "allege specific details of their [purported] purchases" ignores that Plaintiffs have sufficiently pled facts that articulate the relevant offerings from which Teva ADS and Notes were purchased.  For example, the Complaints pled specific facts that differed amongst the three Plaintiffs, but generally included (1) the date, time, and other information specific to each relevant offering; (2) the identity of the issuer for the relevant offering; and (3) the particular prospectuses that contained false and misleading statement(s).[26]  Finally, while not required, to the extent the Court is inclined to require Plaintiffs at the pleading stage to produce transaction data concerning their Teva ADS and Notes, Plaintiffs are prepared to amend their Complaints accordingly.  *See Petrobras*, 152 F. Supp. 3d at 194 ("Several of the plaintiffs that had not submitted such data made representations that they could provide it. Accordingly, the October 19 Order granted them leave to amend their complaints[.]").

### CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss in its entirety.[27]

Respectfully submitted,

*/s/ William H. Clendenen, Jr.*
William H. Clendenen, Jr. (CT04261)
**CLENDENEN & SHEA, LLC**
400 Orange Street
New Haven, CT 06511
Telephone:  (203) 787-1183

---

amendments addressed the complaint's deficiency by simply removing "allegations that the securities at issue were 'traceable' to the defendants and included ones that the securities were purchased from the defendants directly").

[26] *See, e.g.*, *Fir Tree* compl. at vi-ix, ¶¶ 24, 111, 211, 216, 222, 225, 235-9, 243, 261, 278-280, 425, 432-40; *Harel* compl. at vii-ix, ¶¶ 3, 543-4, 560, 592, 637-9, 814-31, 841-9; *Phoenix* compl. at vii-ix, ¶¶ 528-9, 545-6, 577, 628-30, 805-8, 814-25, 836-45.

[27] Should the Court grant any portion of Defendants' MTD, the Plaintiffs subject to that dismissal respectfully request leave to amend their Complaints.  *See Bye*, 2011 WL 1271690, at *2 (Under Rule 15, "[t]he court should freely give leave when justice so requires[.]").

Facsimile:  (203) 787-2847
office@clenlaw.com

**Local Counsel for Plaintiffs in**
**Case Nos. 3:18-cv-01681 (Nordea),**
**3:18-cv-01721 (Alaska), and 3:20-cv-1630**
**(Franklin)**

_/s/ Matthew L. Mustokoff_ (with consent)
Matthew L. Mustokoff (_pro hac vice_)
Geoffrey C. Jarvis (_pro hac vice_)
Joshua A. Materese (_pro hac vice_)
Henry W. Longley (_pro hac vice_)
**KESSLER TOPAZ MELTZER**
     **& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
mmustokoff@ktmc.com
gjarvis@ktmc.com
jmaterese@ktmc.com
hlongley@ktmc.com

**Liaison Counsel for the Direct Actions and**
**Counsel for Plaintiffs in**
**Case Nos. 3:18-cv-01681 (Nordea),**
**3:18-cv-01721 (Alaska), and 3:20-cv-1630**
**(Franklin)**

Keith R. Dutill (_pro hac vice_ forthcoming)
Joseph T. Kelleher (_pro hac vice_ forthcoming)
Marissa Parker (_pro hac vice_ forthcoming)
**STRADLEY RONON STEVENS**
     **& YOUNG, LLP**
2005 Market Street
Suite 2600
Philadelphia, PA  19103
Tel.:  (215) 564-8000
Fax:  (215) 564-8120
kdutill@stradley.com
jkelleher@stradley.com
mparker@stradley.com

*Counsel for Plaintiffs in Case No. 3:20-cv-1630*
*(Franklin)*

*/s/ Carol V. Gilden* (with consent)
Carol V. Gilden *(pro hac vice)*
**COHEN MILSTEIN SELLERS**
   **& TOLL PLLC**
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll *(pro hac vice)*
Julie G. Reiser
Jan E. Messerschmidt *(pro hac vice)*
**COHEN MILSTEIN SELLERS**
   **& TOLL PLLC**
1100 New York Avenue, NW
Suite 500, East Tower
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

David A. Slossberg (CT13116)
Jeffrey P. Nichols (CT29547)
**HURWITZ, SAGARIN, SLOSSBERG**
   **& KNUFF LLC**
147 Broad St.
Milford, CT 06450
Telephone: (203) 877-8000
Facsimile: (203) 878-9800
dslossberg@hssklaw.com
jnichols@hssklaw.com

*Counsel for the Public School Teachers'*
*Pension and Retirement Fund of Chicago, No.*
*3:19-cv-175, and the State of Oregon by and*
*through The Oregon State Treasurer and the*
*Oregon Public Employee Retirement Board, on*
*Behalf of the Oregon Public Employee*
*Retirement Fund, No. 3:19-cv-00657*

*/s/ Lawrence M. Rolnick* (with consent)
Lawrence M. Rolnick *(pro hac vice)*
Michael Hampson *(pro hac vice)*
Matthew Peller *(pro hac vice)*
Jennifer A. Randolph *(pro hac vice)*
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 597-2800
 lrolnick@rksllp.com
 mhampson@rksllp.com
 mpeller@rksllp.com
 jrandoph@rksllp.com

David A. Ball (CT10154)
Ari J. Hoffman (CT22516)
**COHEN and WOLF, P.C.**
1115 Broad St. P.O. Box 1821
Bridgeport, CT 06604
Tel: (203) 368-0211
Fax: (203) 337-5534
dball@cohenandwolf.com
ahoffman@cohenandwolf.com

***Counsel for Plaintiffs Case Nos. 3:19-cv-00603
(Highfields) and 3:20-cv-01635 (Brahman)***

*/s/ Daniel L. Berger* (with consent)
**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
Daniel L. Berger (*pro hac vice*)
Jonathan D. Park (*pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
jeisenhofer@gelaw.com
dberger@gelaw.com
jpark@gelaw.com

**MOTT ZEZULA LLC**
Nathan Zezula (ct27936)
750 East Main Street, 6th Floor
Stamford, CT 06902
Tel. (203) 408-6500
nzezula@lmzlegal.com

***Counsel for Plaintiffs in Case Nos. 3:18-cv-1956
(Pacific), 3:19-cv-192 (Schwab), 3:19-cv-1173
(Stichting), and 3:20-cv-83 (INKA)***

*/s/ Corban S. Rhodes* (with consent)
Corban S. Rhodes (*pro hac vice*)
Michael P. Canty *(pro hac vice)*
Eric J. Belfi *(pro hac vice)*
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0447
crhodes@labaton.com
mcanty@labaton.com
ebelfi@labaton.com

**HURWITZ, SAGARIN, SLOSSBERG &
KNUFF, LLC**
David A. Slossberg (CT13116)
Jeffrey P. Nichols (CT29547)
147 Broad St.
Milford, CT 06450
Telephone: (203) 877-8000
Fax: (203) 878-9800
dslossberg@hssklaw.com
jnichols@hssklaw.com

***Counsel for Plaintiffs in Case Nos. 3:20-cv-
00588 (Boeing) and 3:20-cv-00683 (Fir Tree)***

*/s/ Jeremy A. Lieberman* (with consent)
Jeremy A. Lieberman (appearing *pro hac vice*)
Michael J. Wernke (appearing *pro hac vice*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Tel.:  (212) 661-1100
Fax:  (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

Patrick M. Dahlstrom (appearing *pro hac vice*)
**POMERANTZ LLP**
10 South LaSalle, Ste 3505

Chicago, IL 60603
Tel.: (312) 377-1181
Fax: (312) 229-8811
pdahlstrom@pomlaw.com

Erin Green Comite (ct24886)
Margaret B. Ferron (ct28469)
**SCOTT & SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com
mferron@scott-scott.com

*Counsel for Plaintiffs in Case Nos. 19-cv-00513,*
*19-cv-00543, 19-cv-00655, 19-cv-00923, and 19-*
*cv-01167*

 */s/ Luke O. Brooks* (with consent)
Luke O. Brooks (*pro hac vice*)
Ryan A. Llorens (*pro hac vice*)
Angel P. Lau (*pro hac vice*)
Jeffrey J. Stein (*pro hac vice*)
Erika Oliver (*pro hac vice*)
Ting H. Liu (*pro hac vice*)
**ROBBINS GELLER RUDMAN**
 **& DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
ryanl@rgrdlaw.com
alau@rgrdlaw.com
jstein@rgrdlaw.com
eoliver@rgrdlaw.com
tliu@rgrdlaw.com

Chad Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN**
 **& DOWD LLP**
125 Park Avenue, 25th Floor
New York, NY 10017

Telephone:  212/791-0567
chadj@rgrdlaw.com

William H. Narwold (CT 00133)
Matthew P. Jasinski (CT 27520)
**MOTLEY RICE LLC**
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/882-1676
860/882-1682 (fax)
bnarwold@motleyrice.com
mjasinski@motleyrice.com

*Attorneys for Plaintiffs Harel Pension and*
*Provident Ltd., et al. and Phoenix Insurance*
*Company Ltd., et al.*