**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:19-cv-449 (SRU)<br>No. 3:19-cv-513 (SRU)<br>No. 3:19-cv-543 (SRU)<br>No. 3:19-cv-603 (SRU)<br>No. 3:19-cv-655 (SRU)<br>No. 3:19-cv-656 (SRU)<br>No. 3:19-cv-923 (SRU)<br>No. 3:19-cv-1167 (SRU)<br><br>July 23, 2021<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS STATE AND COMMON LAW CLAIMS**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................ ii

GLOSSARY OF TERMS ................................................................................................ v

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     THE STATE LAW CLAIMS SUFFICIENTLY PLEAD ACTUAL RELIANCE ON DEFENDANTS' ALLEGED MISREPRESENTATIONS AND OMISSIONS ............... 2

II.    PLAINTIFFS PROPERLY ALLEGED RELIANCE UNDER THE PSA USING A THEORY OF FRAUD ON THE MARKET ................................................................ 5

III.   SLUSA DOES NOT PRECLUDE OPT-OUT PLAINTIFFS' STATE LAW CLAIMS. .. 6

IV.   THE PSA CLAIMS ASSERTED IN *CLAL, MIGDAL INS., MIGDAL MUT., MIVACHIM, PASGOT AND HAREL* ARE TIMELY ...................................... 12

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Amorosa v. Ernst & Young LLP*,
  682 F. Supp. 2d 351 (S.D.N.Y. 2010)....................................................................... 11

*ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc.*,
  2018 WL 1368908 (D. Conn. Mar. 16, 2018) ......................................................... 3

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................................................... 12

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004)...................................................................................... 9

*Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*,
  138 S. Ct. 1061 (2018) ......................................................................................... 7, 8

*DoubleLine Capital v. Odebrecht Financial*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018).................................................................... 4, 5

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017)...................................................................................... 12

*Ferry v. Mead Johnson & Co., LLC*,
  2021 WL 243119 (D. Conn. Jan. 25, 2021)............................................................ 3

*Fulton Fin. Advisors, Nat. Ass'n v. NatCity Investments, Inc.*,
  2013 WL 5635977 (E.D. Pa. Oct. 15, 2013)........................................................... 6

*Gordon Partners v. Blumenthal*,
  2007 WL 1438753 (S.D.N.Y. May 16, 2007) ........................................................ 11

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982)................................................................................................. 9

*Harris v. City of New York*,
  186 F.3d 243 (2d Cir. 1999).................................................................................... 12

*In re Am. Realty Capital Props., Inc. Litig.*,
  2019 WL 2082508 (S.D.N.Y. May 10, 2019) ........................................................ 11

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)..................................................................... 11

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014) ................................................................ 4, 5

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    758 F. Supp. 2d 264 (S.D.N.Y. 2010) ................................................................ 12

*Int'l Fund Mgmt. v. Citigroup*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011) .............................................................. 4, 5

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006) ............................................................................................. 8

*Kuwait Inv. Office v. Am Int'l Grp., Inc.*,
    128 F. Supp. 3d 792 (S.D.N.Y. 2015) ................................................................ 11

*Lander v. Hartford Life & Annuity Ins. Co.*,
    251 F.3d 101 (2d Cir. 2001) .......................................................................... 9, 10

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) .............................................................................. 13

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
    801 F. Supp. 2d 41 (E.D.N.Y. 2011) ............................................................... 3, 5

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ........................................................................................... 12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) .............................................................................. 8, 9, 10, 11

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
    432 F. Supp. 3d 131 (D. Conn. 2019) ............................................................... 13

*Pell v. Weinstein*,
    759 F. Supp. 1107 (M.D. Pa. 1991) .................................................................... 4

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................... 11

*Transit Rail, LLC v. Marsala*,
    2007 WL 2089273 (W.D.N.Y. July 20, 2007) ..................................................... 3

**OTHER AUTHORITIES**

H.R. Rep. No. 105-640 (1998) ................................................................................ 11

S. Rep. No. 105-182 (1998) ............................................................................. 10, 11

iii

**RULES AND STATUTES**

15 U.S.C. § 78bb ........................................................................................................................... 7, 8

Rule 9(b) ............................................................................................................................................ 2

## GLOSSARY OF TERMS

| | |
|---|---|
| "Class Action" or *Ontario* | *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Indus. Ltd., et al., No. 3:17-cv-558* |
| "Complaints" | The operative Complaints filed in the Direct Actions (defined below) and subject to Defendants' (defined below) MTD (defined below) |
| "DOJ" | Department of Justice |
| "Defendants" | All Defendants in the Direct Actions |
| "Direct Actions" | The term "Direct Actions" refers to the twenty individual actions that were consolidated with the *Ontario* Action pursuant to this Court's Order Regarding Pre-Trial Consolidation of Related Actions, entered April 28, 2020 (ECF No. 352), and as further memorialized in this Court's Order, entered January 22, 2021 (ECF No. 689). These actions are:  (1) *Nordea Investment Mgmt. v. Teva Pharm. Indus., et al.*, No. 3:18-cv-1681 ("*Nordea*"); (2) *Revenue, et al. v. Teva Pharm. Indus. et al.*, No. 3:18-cv-1721 ("*Alaska*"); (3) *Pacific Funds Series Tr., et al. v. Teva Pharm. Indus., et al.*, No. 3:18-cv-1956 ("*Pacific*"); (4) *Public School Teachers Pension and Ret. Sys. of Chicago v. Teva Pharm. Indus., et al.*, No. 3:19-cv-175 ("*Chicago*"); (5) *Schwab Capital Tr., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-192 ("*Schwab*"); (6) *Phoenix Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-449 ("*Phoenix*"); (7) *Mivtachim The Workers Social Ins. Fund, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-513 ("*Mivtachim*"); (8) *Clal Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-543 ("*Clal*"); (9) *Highfields Capital I LP, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-603 ("*Highfields*"); (10) *Migdal Ins. Co., et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv- 655 ("*Migdal Ins.*"); (12) *Harel Pension and Provident, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-656 ("*Harel*"); (12) *Oregon v. Teva Pharm. Indus., et al.*, No. 3:19-cv-657 ("*Oregon*"); (13) *Migdal Mut. Funds, v. Teva Pharm. Indus., et al.*, No. 3:19-cv-923 ("*Migdal Mut.*"); (14) *Psagot Mut. Funds, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv-1167 ("*Psagot*"); (15) *Stichting PGGM Depositary, et al. v. Teva Pharm. Indus., et al.*, No. 3:19-cv- 1173 ("*Stichting*"); (16) *Internationale Kapitalanlagegesellschaft mbH v. Teva Pharm. Indus., et al.*, No. 3:20-cv-83 ("*INKA*"); (17) *Boeing Co. Emp. Ret. Plans Master Tr. v. Teva Pharm. Indus., et al.*, No. 3:20-cv-588 ("*Boeing*"); (18) *Fir Tree Value Master Fund, et al. v. Teva Pharm. Indus., et al.*, No. 3:20-cv-683 ("*Fir Tree*"); (19) *Franklin Mut. Series Funds, et al. v. Teva Pharm. Indus., et al.*, No. 3:20-cv-1630 ("*Franklin*"); (20) *BH Invs. Funds, et al. v. Teva Pharm. Indus., et al.*, No. 3:20-cv-1635 ("*BH*"). *OZ ELS Master Fund, Ltd., et al. v. Teva Pharm. Indus., et al.*, 3:17-cv- |

| | |
|---|---|
| | 01314 (D. Conn.) is excluded from the motion to dismiss and this memorandum of law. *Id.* at ECF No. 60-61. |
| "MTD" | Memorandum of Law in Support of Defendants' Motion to Dismiss State and Common Law Claims (ECF No. 787-1) |
| "MTD New Claims" | Memorandum of Law in Support of Defendants' Motion to Dismiss New Claims and Claims Against New Defendants (ECF No. 786-1) |
| "*Ontario* AC" | Amended Consolidated Class Action Complaint filed in the Class Action, dated June 22, 2018 (ECF No. 226) |
| "*Ontario* SAC" | The Second Amended Class Action Complaint filed in the Class Action, dated December 13, 2019 (ECF No. 310) |
| "Plaintiffs" | Plaintiffs in the Direct Actions |
| "PSA" | Pennsylvania Securities Act |
| "PSLRA" | Private Securities Litigation Reform Act |
| "Rule" | Federal Rule of Civil Procedure |
| "SEC" | U.S. Securities and Exchange Commission |
| SLUSA | Securities Litigation Uniform Standards Act of 1998 |
| "State AGs" | The government entities that initiated the action captioned *State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-2407 (E.D. Pa.) |
| "State AG Complaint" | Complaint in *State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-2407 (E.D. Pa.), dated May 10, 2019. |
| "Teva" or the "Company" | Teva Pharmaceutical Industries Ltd. |

Plaintiffs in the above-referenced Direct Actions respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss State and Common Law Claims (the "State Law Claims") (ECF No. 787).

## PRELIMINARY STATEMENT

None of the bases cited by Defendants for dismissing Plaintiffs' State Law Claims is meritorious. *First*, the Complaints with common law fraud and negligent misrepresentation claims sufficiently plead actual reliance. Defendants' arguments to the contrary attempt to impose more stringent pleading requirements than required by any other federal court. The *Highfields* complaint, for example, sets forth its "actual reliance" allegations in a separate section detailing the individuals who read, reviewed, listened to and relied upon the various statements at issue. These allegations are unquestionably sufficient to plead actual reliance.

*Second*, as Defendants' own authority indicates, the PSA allows Plaintiffs to use a "fraud on the market" theory to plead reliance, which they have done.

*Third*, SLUSA has no application here because these are *opt-out actions*, not *class actions*. Precluding Plaintiffs' State Law Claims would be entirely inconsistent with SLUSA—the very law that serves as the basis for Defendants' motion to dismiss—which was enacted to prevent the filing of securities class actions in state court in order to sidestep the requirements of the PSLRA. Each of the above-referenced actions is an opt-out action filed in federal court and subject to federal pleading standards. These actions are not the attempted end-run around the federal pleading requirements that SLUSA was designed to prevent, and, as such, SLUSA does not preclude these plaintiffs from maintaining their State Law Claims.

*Fourth*, Plaintiffs' PSA claims (where brought) are timely. There is no basis to conclude that Plaintiffs "should have discovered" the non-public facts supporting their scienter allegations

more than one year before they filed their Complaints and, as such, the statute of limitations could not have started to run.

For the reasons set forth above and discussed in detail below, the Court should deny the Defendants' motion to dismiss.

## ARGUMENT[1]

## I.     THE STATE LAW CLAIMS SUFFICIENTLY PLEAD ACTUAL RELIANCE ON DEFENDANTS' ALLEGED MISREPRESENTATIONS AND OMISSIONS

Defendants' argument that Plaintiffs have failed to plead actual reliance for the purposes of their common law fraud and negligent misrepresentation[2] claims is unavailing. Each of the at-issue Complaints identifies the specific statements that were made, the source of those statements, and that their purchases were made in reliance on these false and misleading statements[3] — allegations sufficient to survive a motion to dismiss even under the heightened pleading requirements of Rule 9(b).[4] Indeed, federal courts have held that allegations of this sort are

---

[1] For the purposes of this Opposition, the Direct Action Plaintiffs incorporate by reference the "Standard of Review" articulated in the Memorandum of Law in Opposition to Defendants' MTD New Claims, filed July 23, 2021. As outlined in the MTD, not all arguments apply to all Complaints. As such, arguments made herein are made only by the Direct Action Plaintiffs to which they apply.

[2] Defendants summarily assert that Plaintiffs' common law claims are governed by Pennsylvania law. (MTD at 1.) However, Plaintiffs' investment managers did not make purchasing decisions in Pennsylvania, and many of the alleged misrepresentations were made outside of Pennsylvania. *See, e.g.*, *Highfields* compl. ¶ 223 (misstatement made at Goldman Sachs healthcare conference in California). Given that actual reliance is an element of common law fraud and common law negligent misrepresentation in all potentially applicable jurisdictions, the Court does not need to conduct a choice-of-law analysis on this motion. However, Plaintiffs expressly reserve their right to assert that a jurisdiction other than Pennsylvania governs their common law fraud and common law negligent misrepresentation claims.

[3] *See, e.g.*, *Highfields* compl. ¶ 370 (alleging that an investment analyst at the *Highfields* Plaintiffs' investment manager, "actually and justifiably read, reviewed, liste[ne]d to and/or relied upon," each of the alleged misstatements or omissions prior to purchasing Teva securities); *Clal* compl. ¶ 593 ("Plaintiffs . . . purchased or otherwise acquired Teva securities at artificially inflated prices in reliance on the Defendants' untrue or misleading statements or omissions of material fact . . . .").

[4] While "[c]ourts are deeply split within this District and elsewhere about whether Rule 9(b) applies to negligent misrepresentation claims," *ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc.*, 2018 WL 1368908,

sufficient to plead actual reliance with particularity.  *See, e.g.*, *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011) (finding that plaintiff adequately pled actual reliance under Rule 9(b) where the plaintiff "allege[d] that it read and/or listened to and relied upon the defendants' false and misleading statements before investing tens of millions of dollars"); *Transit Rail, LLC v. Marsala*, 2007 WL 2089273, at *8, *12 (W.D.N.Y. July 20, 2007) (applying Rule 9(b) and denying motion to dismiss where complaint alleged that plaintiff "received, reviewed and relied" on misstatements).

Defendants' arguments with respect to the *Highfields* Complaint are particularly puzzling. In a section entitled "Plaintiffs' Actual Reliance," the *Highfields* Complaint specifically alleges that, prior to purchasing Teva securities, analysts at the *Highfields* Plaintiffs' investment manager "actually and justifiably read, reviewed, liste[ne]d to and/or relied upon (as applicable)," each of the SEC filings, press releases, earnings calls, conferences calls, or news articles alleged to contain material misrepresentations and/or omissions in the Complaint, including Defendants' statements concerning *inter alia*,

> pricing trends for generic drugs, the competitiveness of the U.S. generics market, the source of Teva's revenues and profits, Defendants' denials that Teva was deriving material financial benefits from price increases, Defendants' claims of limited price hikes, Defendants' denials of pricing pressure, Defendants' denials of participation in collusive conduct, and Defendants' statements regarding the Actavis acquisition,

which were all "material to Highfields' decision to purchase or acquire Teva securities on behalf of Plaintiffs."  *Highfields* compl. ¶¶ 370-71.  Thus, the *Highfields* Complaint unquestionably alleges (with particularity) the "who" (the *Highfields* Plaintiffs' investment manager, Highfields);

---

at *6 (D. Conn. Mar. 16, 2018), they generally apply the heightened fraud pleading standard where a negligent misrepresentation claim "is couched in fraud-like terms of known falsity," *Ferry v. Mead Johnson & Co., LLC*, 2021 WL 243119, at *18 (D. Conn. Jan. 25, 2021).

the "when" (prior to purchasing Teva securities on behalf of the *Highfields* Plaintiffs); the "what" (the misstatements and/or omissions about, *inter alia*, Teva's pricing activity and its impact on Teva's financials); and the "how" (in deciding whether to buy Teva securities) of the *Highfields* Plaintiffs' actual reliance. These allegations are sufficient to plead actual reliance with respect to all of the *Highfields* Plaintiffs' claims.[5]

Defendants' characterizations of the above-described allegations as "conclusory" is demonstrably false and Defendants' reliance on *Pell v. Weinstein*, 759 F. Supp. 1107 (M.D. Pa. 1991), *International Fund Management v. Citigroup*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011), and *DoubleLine Capital v. Odebrecht Financial*, 323 F. Supp. 3d 393 (S.D.N.Y. 2018), is misplaced. (*See* MTD at 7-8, 10.) In *Pell*, the documents containing the alleged false or misleading statements **did not even exist** on the date the plaintiffs committed themselves to the at-issue merger transaction and, therefore, plaintiffs could not have relied on those documents. 759 F. Supp. at 1115. Here, each of the documents relied upon existed in advance of purchases of Teva securities made by the *Highfields* Plaintiffs. In *International Fund*, the plaintiffs' allegations of reliance, spanning two short, nearly single-sentence paragraphs, were "incredibly broad, alleging reliance on entire 10-Ks for indefinite periods of time," without any indication as to what specific statements were at issue. 822 F. Supp. 2d at 386.[6] They also "lacked supporting factual matter indicating how

---

[5] Defendants unfairly accuse the *Highfields* Plaintiffs of "attempt[ing] to avoid the strictures of Rule 9(b)" with respect to their negligent misrepresentation claims. (MTD at 11 n.19.) That accusation is both baseless and pointless. As described above, the well-pleaded allegations in the Complaint unquestionably meet Rule 9(b)'s heightened pleading requirements; as such, there is no need to "avoid" its requirements with respect to the *Hightfields* Plaintiffs' negligent misrepresentation claim.

[6] Defendants' reliance on the court's decision in *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 995 F. Supp. 2d 291 (S.D.N.Y. 2014), decision is also misplaced, particularly to the extent it purports to argue that plaintiffs are required to demonstrate a linkage between the alleged misstatements or omissions and specific purchases. (*See* MTD at 11.) In *Bear Stearns*, the plaintiff only identified one of the documents on which it relied, and with respect to that document it did "not allege that it actually purchased any particular Bear Stearns securities on any particular date in reliance on any particular alleged misstatements."

plaintiffs relied on the alleged misrepresentations." *Id.* Unlike the complaint in *International Fund*, the *Highfields* Complaint here pleads the involvement of an analyst employed by the *Highfields* plaintiffs' investment manager who read the false statements, and relied on those statements to purchase Teva securities. Similarly, in *DoubleLine Capital*, the plaintiffs had alleged reliance on alleged misstatements contained in offering memorandum for securities that they did not purchase, such that it was "entirely unclear how [p]laintiffs relied on the representations in the other offering memoranda in their purchases of the Notes at issue here." 323 F. Supp. 3d at 463. That is not the case here, where the *Highfields* Plaintiffs have alleged reliance on public disclosures related to Teva's business, not particular offering memorandum.[7]

Because Plaintiffs have adequately pled the reliance element of their common law fraud and negligent misrepresentation claims, Defendants' motion to dismiss on that basis should be denied.

## II. PLAINTIFFS PROPERLY ALLEGED RELIANCE UNDER THE PSA USING A THEORY OF FRAUD ON THE MARKET

Unlike the State Law Claims of common law fraud and negligent misrepresentation, claims of securities fraud under PSA §§1-402(c) and 1-501(c) do ***not*** require plaintiffs to plead actual reliance. Rather, for these causes of action, "reliance may be presumed" "where a plaintiff asserts

---

995 F. Supp. 2d at 313. Plaintiffs here have identified all of the statements that were relied upon and the documents in which those statements were made, and have alleged that their purchases were made in reliance on those statements. No other "linkage" is required, even under Rule 9(b), unless the absence of those details would render "it impossible for the courts to figure out what conduct was alleged to be fraudulent or whether" the alleged injury was causally related to the purchase or sale. *See Maverick Fund*, 801 F. Supp. 2d at 53.

[7] In a footnote, Defendants characterize the *Highfields* Plaintiffs' reliance allegations as "implausible" based on the sheer volume of the disclosures relied upon and the overlap of those disclosures with the statements challenged in the Class Action. (MTD at 11 n.18.) That characterization ignores reality. Indeed, it does not "strain[] credulity" that investors would read the same public disclosures in determining whether to purchase a company's securities, and, at this stage in the litigation, the *Highfields* Plaintiffs' allegations that they did so read and rely should be credited.

a 'fraud on the market' claim." *Fulton Fin. Advisors, Nat. Ass'n v. NatCity Investments, Inc.*, 2013 WL 5635977, at *13 (E.D. Pa. Oct. 15, 2013).   Here, the Plaintiffs asserting claims under the PSA have properly alleged fraud on the market, so they need not plead actual reliance. *See, e.g.*, *Harel* Compl. at ¶¶ 880-83; *Phoenix* Compl. ¶¶ 902-05.

Defendants attempt to evade this authority by bundling the PSA claims together with the common law fraud and negligent misrepresentation claims, and asserting that all three require the same element of actual reliance.   But the only authority they cite for the PSA claim is *Fulton*, which reached the exact opposite conclusion. *Fulton*, 2013 WL 5635977, at *13 ("Only where a plaintiff asserts a 'fraud on the market' claim may reliance be presumed.").[8]  There, the court found that the plaintiff needed to plead actual reliance only because it ***failed to plead*** fraud on market. *Id.* ("Fulton's allegations are ***the exact opposite*** of those required to state a fraud on the market claim since it asserts there was no efficient market." (emphasis added)).   Plaintiffs here do not suffer from this same deficiency, so the PSA claims remain viable.

## III.   SLUSA DOES NOT PRECLUDE OPT-OUT PLAINTIFFS' STATE LAW CLAIMS.

Defendants erroneously argue that Plaintiffs' State Law Claims should be dismissed under SLUSA.  (MTD at 3-7.)  SLUSA was enacted to close a loophole that was being exploited by filing securities *class actions* in state court under state law to avoid the requirements of the then-recently enacted PSLRA.  The PSLRA was designed to prevent the filing of frivolous securities fraud class

---

[8] Defendants' misreading of *Fulton* is not accidental.  Indeed, in their motion to transfer *Phoenix* from the Eastern District of Pennsylvania to this District, Defendants cited *Fulton* in support of the exact opposite position they take now.  *Phoenix*, No. 18-cv-03305 (E.D. Pa.), ECF No. 30-2 at 16 (arguing that trial courts "uniformly treat[] PSA claims as requiring the same elements of proof as required under Rule 10b-5 and [] therefore analyze[] them in identical fashion.").  This is not the first time Defendants have tried to argue from both sides of their mouth.  In their motion to dismiss the Israeli Law claims, they likewise attempted to highlight differences between Israeli Securities Law and 10b-5 after previously stressing their parallelism.  This Court recognized the tension, calling it "eyebrow-raising" and "too clever by half."  ECF No. 689 at 56.

actions by, among other things, creating heightened pleading requirements for federal securities fraud claims and imposing an automatic stay of discovery until the complaint has survived a motion to dismiss.  When class plaintiffs began filing their federal securities class actions under the guise of state law actions in state court in order to avoid the PSLRA, Congress passed SLUSA. But SLUSA was not designed as a weapon to preclude individual opt-out actions – which *by definition* are not class actions – that assert federal and state law claims in federal court.  The opt-out actions here have not attempted to evade federal law or the federal courts.  Instead, they have exercised their constitutional right to pursue their own claims instead of relying on the class action vehicle.  And because the opt-out actions are not class actions, they are not covered by SLUSA.

SLUSA does not prevent all plaintiffs from bringing any state law claims relating to securities.  Rather, the statute selectively prevents class plaintiffs from circumventing the pleading requirements of the PSLRA by filing class action lawsuits in state court under state law.  SLUSA operates through its "state-law class-action bar," *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1067 (2018), which is the provision that defines the specific circumstances in which a state law claim is precluded.  This state-law class-action bar provides that "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging [a securities claim] . . . in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).  As relevant here, a "covered class action" includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  *Id.* § 78bb(f)(5)(B)(ii).

Where a "covered class action" has been filed in or removed to federal court, SLUSA

mandates dismissal of all state law claims that allege a misrepresentation or omission in connection

with the purchase or sale of a "covered security."  15 U.S.C. § 77bb(f).  As the Supreme Court has

explained, "SLUSA does not actually pre-empt any state cause of action," but rather "simply

denies plaintiffs the right to use the *class-action device* to vindicate certain claims."  *Merrill Lynch,*

*Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006) (emphasis added); *see also Cyan*,

138 S. Ct. at 1067 ("[T]aken all in all, [SLUSA] completely disallows (in both state and federal

courts) *sizable class actions* that are founded on state law and allege dishonest practices respecting

a nationally traded security's purchase or sale." (emphasis added)); *Kircher v. Putnam Funds Tr.*,

547 U.S. 633, 636 n.1 (2006) (SLUSA "does not itself displace state law with federal law but

makes some state-law claims nonactionable through the *class-action device* in federal as well as

state court." (emphasis added)).  Moreover, the statute "does not deny any individual plaintiff, or

indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that

may exist."  *Dabit*, 547 U.S. at 87.

   Here, Defendants argue that "the eight actions asserting the State Law Claims meet th[e]

definition" of "covered class action" under SLUSA because this Court has "'consolidated for pre-

trial purposes' all of the Direct Actions . . . with the *Ontario* Class Action."  (MTD at 6.)  But it is

undisputed that none of these eight actions are class actions.  Rather, all are *individual* actions

brought in federal court by plaintiffs who have exercised their constitutional right to exclude

themselves from the *Ontario* Class Action and bring direct claims under both federal and state law,

all of which are governed by federal pleading standards.  Moreover, Plaintiffs in these actions

actively opposed consolidation with the *Ontario* Class Action.  (*See, e.g.*, *Highfields*, ECF No.

38.)[9]  To interpret SLUSA's "covered class action" definition to encompass these opt-out actions

_____

[9] For example, the *Phoenix* Plaintiffs originally filed their complaint (including the PSA claims) in the
Eastern District of Pennsylvania, where their individual action could remain separate from the Class Action

would contravene the statute's clear legislative history.  Where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, . . . those intentions must be controlling."  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982).

The PSLRA was enacted in 1995 and targeted "perceived abuses of the class-action vehicle in litigation involving nationally traded securities."  *Dabit*, 547 U.S. at 81.  "The PSLRA was intended to curtail 'strike suits'—*i.e.*, meritless class actions alleging fraud in the sale of securities."  *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 98 (2d Cir. 2004). "Because of the expense of defending such suits, issuers were often forced to settle, regardless of the merits of the action."  *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001).  Among other measures, the PSLRA "impose[d] heightened pleading requirements" for Section 10(b) claims, "limit[ed] recoverable damages and attorney's fees," "impose[d] new restrictions on the selection of (and compensation awarded to) lead plaintiffs," and "authorize[d] a stay of discovery pending resolution of any motion to dismiss."  *Dabit*, 547 U.S. at 81.

But the PSLRA had an "unintended consequence: It prompted at least some members of the plaintiffs' bar to avoid the federal forum altogether" by filing "*class actions* under state law, often in state court."  *Dabit*, 547 U.S. at 82 (emphasis added).  These state court securities class actions "assert[ed] many of the same causes of action" as federal securities class actions, "but avoid[ed] the heightened procedural requirements instituted in federal court" by the PSLRA. *Lander*, 251 F.3d at 108.  In order "to close this loophole in [the] PSLRA," Congress enacted

---

and free from scrutiny under SLUSA.  *Phoenix*, No. 18-cv-03305 (E.D. Pa.), ECF No. 1.  The *Phoenix* Plaintiffs recognized that consolidation with the Class Action could threaten its PSA claims, and resisted transfer and consolidation on that basis.  It was Defendants – not Plaintiffs – who championed the consolidation that they now complain makes Plaintiffs' claims improper, and it would be patently unfair to strike originally well-pleaded allegations based on Defendants' gamesmanship.  Likewise for the *Harel* Plaintiffs, who filed in this District – rather than their preferred venue of the Eastern District of Pennsylvania – after and because of the ruling in *Phoenix*.

SLUSA.  *Id.*  SLUSA made "federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and . . . mandat[ed] that such class actions be governed exclusively by federal law."  *Id*.  As the Supreme Court explained, SLUSA intended "to prevent certain State private securities *class action* lawsuits alleging fraud from being used to frustrate the objectives" of the PSLRA.  *Dabit*, 547 U.S. at 86 (2006) (emphasis added).

As the Second Circuit has recognized, "both the statutory findings and the accompanying conference report make it clear that SLUSA targeted *class action* litigation intended to be reached by [the] PSLRA, but which evaded the procedural requirements of [the] PSLRA by migrating to state court."  *Lander*, 251 F.3d at 110 (emphasis added).  Because Congress was concerned with class action lawsuits filed in state court as an end-run around the PSLRA, SLUSA included a preclusion provision to ensure that class actions involving covered securities would proceed under federal law, rather than the laws of various states.  But Congress understood that it would not be enough to include within that definition only class actions formally denominated as such.  To prevent counsel from creating *de facto* classes through simply bringing many separate individual actions in the same court, SLUSA included a definition of "covered class actions" that contained certain "limitations" on "mass actions" that attempted to evade the Act.  As the legislative history explains, the definition of "covered class action" was:

> intended to prevent evasion of the bill through the use of so-called "mass actions."  These kinds of actions are now brought in product liability, environmental tort and similar cases.  In practice, such suits may function very much like traditional class actions and, because they involve many plaintiffs, they may have a very high settlement value.  They accordingly may be abused by lawyers who seek to evade the provisions of this Act in order bring coercive strike suits.

S. Rep. No. 105-182, at 7 (1998).  SLUSA's drafters, however, were also careful to explain that the statute was not meant to prevent plaintiffs from "bringing bona fide individual actions simply

because more than fifty persons commence the actions in the same state court against a single defendant." *Id.*; *see also, e.g.*, *Dabit*, 547 U.S. at 87 (SLUSA only "denies plaintiffs the right to use the class-action device to vindicate certain claims"). Another goal of SLUSA was to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court." H.R. Rep. No. 105-640, at 8-9 (1998).[10]

Thus, precluding Plaintiffs' State Law Claims would be entirely inconsistent with SLUSA's purpose. These claims are *individual*, opt-out claims asserted under both federal and state law that were originally brought in federal court and are subject to federal pleading standards. Plaintiffs have not attempted to end-run the PSLRA's requirements here and the assertion of the State Law Claims in addition to federal securities claims does not transform this case into the type of action that SLUSA precludes.

The right to exclude oneself from a class action and pursue an individual remedy is founded in the Due Process Clause of the United States Constitution. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."). An application of SLUSA that effectively strips a party of its ability to opt-out of a class action and pursue its own state law claims, simply

---

[10] Plaintiffs acknowledge that courts within the Second Circuit have held SLUSA applicable to opt-out actions. *See, e.g.*, *In re Am. Realty Capital Props., Inc. Litig.*, 2019 WL 2082508, at *4 (S.D.N.Y. May 10, 2019); *Kuwait Inv. Office v. Am Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 811-13 (S.D.N.Y. 2015); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 372-77 (S.D.N.Y. 2010); *Gordon Partners v. Blumenthal*, 2007 WL 1438753, at *3 (S.D.N.Y. May 16, 2007), *aff'd on other grounds*, 293 F. App'x 815 (2d Cir. 2008); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 671-72 (S.D.N.Y. 2007). On that basis, as defendants note (MTD at 7 n.12), plaintiffs opposed consolidation of these actions, in an attempt to minimize the risk that Plaintiffs' constitutional opt-out rights would be abridged by the interpretation of SLUSA embraced in these decisions. Plaintiffs respectfully submit that that these decisions were wrongly decided to the extent they did not fully consider that SLUSA's legislative history makes clear that the statute was not intended to distinguish the claims of opt-out plaintiffs.

because a class action is pending in the same federal court, makes no sense and is unfair.  As such, Defendants' reliance on SLUSA as a basis to dismiss Plaintiffs' opt-out claims is misguided and should be rejected.

## IV.   THE PSA CLAIMS ASSERTED IN *CLAL, MIGDAL INS., MIGDAL MUT., MIVACHIM, PASGOT AND HAREL* ARE TIMELY

"Because failure to abide by the statute of limitations is an affirmative defense, dismissing claims on statute of limitations grounds at the motion to dismiss stage is appropriate only if the 'complaint clearly shows the claim is out of time.'"  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). Defendants acknowledge that "the PSA is to be construed in the same manner as similar provisions of federal securities law."  (MTD at 13 n.23 (citation omitted).)  Under federal securities law, "[a] securities-law violation is discovered when the plaintiff learns sufficient information about [the violation] to  . . . plead it in a complaint with enough detail and particularity to survive a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss . . . ."  *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc*., 873 F.3d 85, 119 (2d Cir. 2017) (citation omitted).  This includes scienter. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010).  "[I]t would be fundamentally unfair to run the statute of limitations from a time prior to when 'a complete and present cause of action' can accrue."  *In re Merrill Lynch Auction Rate Sec. Litig*., 758 F. Supp. 2d 264, 275 (S.D.N.Y. 2010) (quoting *Merck*, 559 U.S. at 644).

Defendants fail to carry their burden on their affirmative defense.  They do not even attempt to identify any allegation in Plaintiffs' Complaints that demonstrate any Plaintiff had sufficient facts to allege scienter more than a year prior to filing their complaint.

Indeed, Defendants' argument that sufficient public information existed as of August 2017 to allege a securities law violation is easily rejected because this Court held that the *Ontario*

plaintiffs' complaint filed on September 11, 2017 (ECF No. 141), which relied on the available public information, failed to adequately allege a securities law violation. (ECF No. 215.) It was only after the *Ontario* plaintiffs added additional **non-public** facts from former employees in their amended complaint (ECF No. 226, ¶¶ 240-263) that this Court held that they adequately alleged scienter. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd*., 432 F. Supp. 3d 131, 170-71 (D. Conn. 2019). There is no basis to conclude that the plaintiffs here "should have discovered" this non-public information more than a year before they filed their complaints.

Ignoring scienter completely, Defendants misconstrue the Court's finding that the *Ontario* plaintiffs adequately alleged loss causation to argue that plaintiffs should have known of Defendants' fraud as a result of the disclosures. (MTD at 12-13.) This is wrong. The Court merely held that the *Ontario* plaintiffs adequately alleged that the disclosures concerning the weakness in Teva's generic drug business were a "materialization of the risk" created by Defendants' misrepresentations. Even if these disclosures revealed the falsity of certain of Defendants' statements, it does not follow that they revealed sufficient information of scienter for the running of the statute of limitations. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 170 (2d Cir. 2005) (public disclosures of allegations of fraud insufficient for running of statute of limitations). Indeed, this Court previously held that the publication of the Bloomberg article on November 3, 2016, identifying Teva as being "investigated for possible criminal and civil penalties because of its pricing and collusion," was insufficient, even under a more defendant-friendly "inquiry notice" standard to start the running of the statute of limitations. *Ontario*, 432 F. Supp. 3d at 180.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss state and common law claims should be denied in its entirety.

Dated:  July 23, 2021

Respectfully submitted,

By*: /s/ Ari J. Hoffman_____*
David A. Ball (ct10154)
Ari J. Hoffman (ct22516)
COHEN and WOLF, P.C.
1115 Broad St. P.O. Box 1821
Bridgeport, CT 06604
Tel: (203) 368-0211
Fax: (203) 337-5534
dball@cohenandwolf.com
ahoffman@cohenandwolf.com

Lawrence M. Rolnick (*pro hac vice*)
Michael Hampson (*pro hac vice*)
Matthew Peller (*pro hac vice*)
Jennifer A. Randolph (*pro hac vice*)
ROLNICK KRAMER SADIGHI LLP
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 597-2800

*Counsel for Plaintiffs Case Nos. 3:19-cv-00603 (Highfields)* and *3:20-cv-01635 (Brahman)*

By: */s/ Jeremy A. Lieberman*
Jeremy A. Lieberman (appearing *pro hac vice*)
Michael J. Wernke (appearing *pro hac vice*)
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mjwernke@pomlaw.com

Patrick M. Dahlstrom (appearing *pro hac vice)*
POMERANTZ LLP
10 South LaSalle, Ste 3505
Chicago, IL 60603
Tel.: (312) 377-1181
Fax: (312) 229-8811
pdahlstrom@pomlaw.com

Erin Green Comite (ct24886)
Margaret B. Ferron (ct28469)
SCOTT & SCOTT
ATTORNEYS AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com
mferron@scott-scott.com

*Counsel for Plaintiffs in*
*Case Nos. 19-cv-00513 (Mivtachim), 19-cv-00543 (Clal), 19-cv-00655 (Migdal Ins.), 19-cv-00923 (Migdal Mut.),* and *19-cv-01167 (Psagot)*

By: */s/ Luke O. Brooks*
LUKE O. BROOKS (*pro hac vice*)
RYAN A. LLORENS (*pro hac vice*)
ANGEL P. LAU (*pro hac vice*)
JEFFREY J. STEIN (*pro hac vice*)
ERIKA OLIVER (*pro hac vice*)
TING H. LIU (*pro hac vice*)
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
ryanl@rgrdlaw.com
alau@rgrdlaw.com
jstein@rgrdlaw.com
eoliver@rgrdlaw.com
tliu@rgrdlaw.com

CHAD JOHNSON (*pro hac vice*)
ROBBINS GELLER RUDMAN
& DOWD LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: 212/791-0567
chadj@rgrdlaw.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD (ct 00133)
Matthew P. Jasinski (ct 27520)
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860/882-1676
860/882-1682 (fax)
bnarwold@motleyrice.com
mjasinski@motleyrice.com

*Counsel for Plaintiffs in*
*Case Nos. 19-cv-00449 (Phoenix)* and *19-cv-00656 (Harel)*

15

## **CERTIFICATION OF SERVICE**

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties

by operation of the Court's electronic filing system and by mail to any parties who are unable to

accept electronic filing.  Parties may access the foregoing filings and this Certification of Service

through the Court's system.


                              /s/ Ari J. Hoffman
                              Ari J. Hoffman, Esq.