```
 1                 UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
 2

 3     _____
                                     )
 4     ONTARIO TEACHERS' PENSION      )
       PLAN BOARD, ET AL.,            )  No. 3:17-cv-00558(SRU)
 5                                    )
                      Plaintiffs,     )  July 15, 2021
 6                                    )
       v.                             )  2:06 p.m.
 7                                    )
                                      )  915 Lafayette Boulevard
 8     TEVA PHARMACEUTICAL            )  Bridgeport, Connecticut
       INDUSTRIES LTD., ET AL.,       )
 9                                    )
                      Defendants.     )
10     _____)

11

12

13                 TELEPHONIC STATUS CONFERENCE

14

15

16     B E F O R E:

17          THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

18

19

20

21

22

23

24                 Official Court Reporter:
                   Melissa J. Cianciullo, RDR, CRR, CRC
25                 (203) 606-1794
```

```
 1    A P P E A R A N C E S:

 2    FOR THE PLAINTIFFS:

 3         BLEICHMAR FONTI & AULD LLP
                7 Times Square, 27th Floor
 4              New York, New York  10036
           BY:  JOSEPH A. FONTI, ESQ.
 5              BENJAMIN BURRY, ESQ.

 6         LAW OFFICES OF SUSAN R. PODOLSKY
                1800 Diagonal Road, Suite 600
 7              Alexandria, Virginia  22314
           BY:  SUSAN R. PODOLSKY, ESQ.
 8
           CARMODY TORRANCE SANDAK & HENNESSEY, LLP
 9              195 Church Street, 18th Floor
                P.O. Box 1950
10              New Haven, Connecticut  06510-1950
           BY:  J. CHRISTOPHER ROONEY, ESQ.
11
           KESSLER TOPAZ MELTZER & CHECK LLP
12              280 King of Prussia Road
                Radnor, Pennsylvania  19087
13         BY:  JOSHUA A. MATERESE, ESQ.

14         GRANT & EISENHOFER P.A.
                485 Lexington Avenue
15              New York, New York  10017
           BY:  JONATHAN PARK, ESQ.
16
           ROBBINS GELLER RUDMAN & DOWD LLP
17              655 West Broadway, Suite 1900
                San Diego, California  92101
18         BY:  LUKE ORION BROOKS, ESQ.

19         HURWITZ SAGARIN SLOSSBERG & KNUFF
                147 North Broad Street
20              P.O. Box 112
                Milford, Connecticut  06460
21         BY:  JEFFREY P. NICHOLS, ESQ.

22         POMERANTZ LLP
                600 Third Avenue, 20th Floor
23              New York, New York  10016
           BY:  MICHAEL WERNKE, ESQ.

24

25    (Continued)
```

```
 1    A P P E A R A N C E S   C O N T ' D:

 2        MOTLEY RICE LLC
                One Corporate Center, 17th Floor
 3              20 Church Street
                Hartford, Connecticut   06103
 4        BY:  WILLIAM NARWOLD, ESQ.

 5        LABATON SUCHAROW, LLP
                140 Broadway
 6              New York, New York  10005
          BY:  CORBAN S. RHODES, ESQ.
 7
          SAXENA WHITE P.A.
 8              12750 High Bluff Drive, Suite 475
                San Diego, CA 92130
 9        BY:  David Kaplan

10
      FOR THE DEFENDANTS:
11
          MORGAN LEWIS & BOCKIUS LLP
12              One Federal Street
                Boston, Massachusetts   02110
13        BY:  EMILY E. RENSHAW, ESQ.

14        SHIPMAN & GOODWIN LLP
                One Constitution Plaza
15              Hartford, Connecticut   06103
          BY:  JILL M. O'TOOLE, ESQ.
16
          KASOWITZ BENSON TORRES LLP
17              1633 Broadway
                New York, New York  10019
18        BY:  SHERON KORPUS, ESQ.
                CINDY CARANELLA KELLY, ESQ.
19              VICTOR J. BRIENZA, ESQ.
                ANDREW SCHWARTZ, ESQ.
20
21    FOR THE INTERVENOR, UNITED STATES OF AMERICA:

22        DOJ - Antitrust
                450 Fifth Street, N.W.
23              Washington, D.C.   20530
          BY:  VERONICA N. ONYEMA, ESQ.
24              CATHERINE MONTEZUMA, ESQ.

25
```

```
 1          THE COURT:  Good afternoon.  This is Stefan
 2   Underhill and we're on the record.
 3          I'm just going to ask that as you begin
 4   speaking, you identify yourself for the court
 5   reporter, please.
 6          We have a number of issues to take up.  I
 7   think that perhaps the principal one is the 302.  But
 8   before we get to that, were counsel able to resolve
 9   the -- for Teva and the plaintiffs' counsel, the
10   question of the text messages?
11          MR. FONTI:  Your Honor, in terms of the Sandoz
12   documents?
13          THE COURT:  Right.
14          MR. FONTI:  The context, we have not.  We have
15   been exchanging some proposals on search terms.
16   There is a threshold issue with respect to scope,
17   which I think we can get your guidance on here.  But
18   we have not reached resolution on -- I'm happy to get
19   into the scope issue if that's helpful.
20          MS. RENSHAW:  Your Honor, this is Emily
21   Renshaw on behalf of the defendants.
22          I just wanted to add to that, you know, Teva
23   made what it views as a reasonable and fair proposal
24   to plaintiffs, and the parties have engaged in
25   meet-and-confer discussions about the scope of the
```

```
 1    searches.  We don't view there as being a threshold
 2    issue that can't be resolved.  So we don't think the
 3    Court needs to intervene today but . . .
 4         MR. FONTI:  I think some guidance today, your
 5    Honor, would be helpful to cut through it.  But we
 6    have not reached agreement, and we don't have
 7    agreements to produce the -- what's at issue with
 8    Sandoz was the Sandoz custodian's text messages with
 9    anyone at Teva.  Teva is seeking to constrain the
10    scope of that to the eight folks from Sandoz
11    communicating with the six text messages custodians
12    that we've been dealing with for the past 18 months
13    and exclude anybody else at Teva.
14         And they also want to filter any searches, if
15    not by those six people, then having inclusion of the
16    word "Teva" in the text messages, which is unduly
17    restrictive and not really sensible given that folks
18    don't necessary text the word Teva in back-and-forth
19    chats, as we know.
20         So if we -- if it's an apples-to-apples
21    negotiation, what we're seeking from Sandoz we're
22    going to seek from Teva, that would be the eight
23    custodians at Sandoz, their communications with
24    anyone at Teva.  And then we're happy to negotiate
25    search terms, which is what we've been in the process
```

```
 1   of doing.
 2          MS. RENSHAW:  And, your Honor, just to respond
 3   briefly -- I'm sorry.
 4          THE COURT:  How much time do you think you
 5   need for your negotiations?
 6          MS. RENSHAW:  Your Honor, this is Emily
 7   Renshaw again.
 8          We have a counterproposal out to plaintiff
 9   that we said -- you know, we deemed reasonable.  But
10   we also, on a follow-up meet and confer and in
11   e-mails, offered to consider anything that plaintiffs
12   propose.  We're just awaiting response for that
13   proposal.  So we can get this done in short order, I
14   would expect.
15          THE COURT:  All right.  I'm willing to give
16   you guys two more weeks to try to work that out.  And
17   if you can't work it out, then we'll have a brief
18   call focused on that question.
19          MR. FONTI:  Very good, your Honor.
20          THE COURT:  With respect to Sandoz, I'm not
21   inclined to order Sandoz to go through the process of
22   searching these documents as a nonparty and in light
23   of the representations in the burden affidavit.  So
24   if anybody wants to be heard on that question, let's
25   take that up now too.
```

1          MR. FONTI:  Your Honor, we think it's

2     sensible to proceed with the negotiations with Teva

3     and interview.  As talks about prejudice as to

4     Sandoz, we're fine with that.  We don't need to

5     pursue it today unless there's an issue on the Teva

6     side of things.

7          THE COURT:  All right.  That's fine.  I'll

8     give you the two weeks, and we'll see where we are.

9          MR. FONTI:  Very good.

10          THE COURT:  Okay.  So let's get back to the

11     302 issue.  I can tell you which way I'm leaning, and

12     you can tell me who disagrees with any aspect of this

13     approach.

14          So, in sum, I don't believe that the

15     protective order in the criminal case bars the

16     production of the 302s.  I think that there is a

17     distinction in paragraph 2 and in paragraph 7 between

18     voluntary disclosure and court-ordered disclosure.  I

19     think that by the plain language of the agreement, if

20     the Court orders the disclosure, that protective

21     order is not -- does not intend to bar such an order.

22     I think that Teva has possession, custody and control

23     of the documents.  I don't think that 2E provides

24     a -- at least based upon the briefing I've seen so

25     far, doesn't provide a basis to preclude disclosure.

1    It's not apparent to me that disclosure is warranted

2    at this time.  I think that there -- we should see

3    how quickly the case can get tried.  The 302s are not

4    especially significant in my view.  They're wishful

5    impeachment documents when an FBI agent is testifying

6    but not necessarily when a third-party witness

7    interviewed by that agent is testifying.  They are

8    hearsay, and almost certainly they're duplicative of

9    information that's already obtained by plaintiff in

10   this case.  My concern is that defense counsel and/or

11   defense experts, either testifying experts or

12   consulting experts, have had access to 302s and that

13   that access may provide an advantage in the case.

14          So what I'm inclined to do is deny the motion

15   to compel without prejudice to refiling at a later

16   date and the criminal case has resolved, or if it

17   doesn't resolve, when we get closer to trial, and

18   require at this time Teva submit a list of lawyers

19   and experts who have had access to the 302s.  So

20   that's how I'm coming out.  I'm happy to hear anybody

21   who wants to shoot at any portion of that suggested

22   ruling.

23          MS. RENSHAW:  Your Honor -- go ahead, please.

24          MR. KORPUS:  I'm sorry.  Somebody was going

25   to speak.  This is Sheron Korpus from Kasowitz.  I

1    was just going to ask some clarifying questions, your

2    Honor.

3          First of all, I can tell you now, we've put it

4    in writing, no expert has had any access to the 302s.

5          In terms of listing counsel that have had

6    access to the 302s, I assume your Honor is only

7    interested in the list of counsel that have had

8    access to the 302s that are also working on this

9    case.

10         THE COURT:  That's correct.

11         MR. KORPUS:  And as we said in our papers,

12   your Honor, following much -- following the April

13   16th conference, nobody has had such access.  So we

14   will comply with the Court's order, of course.  But

15   any access would have been prior to April 16th.

16         THE COURT:  All right.  Thank you.

17         MS. ONYEMA:  Your Honor, if I may, this is

18   Veronica Onyema from the United States.

19         THE COURT:  Yes.

20         MS. ONYEMA:  Thank you.

21         I had a question and just sort of a comment in

22   regards to something you stated.  In terms of

23   denying -- you mentioned denying the motion without

24   prejudice to refile at a later date potentially.  And

25   I just wanted to confirm that we, the United States,

1   would be able to submit an opposition if that -- in

2   the future if there was a motion that was filed,

3   similar to how we have done in this instance.

4        THE COURT:  Of course.  I'm -- you're here

5   for the purpose of protecting the interest of the

6   United States, and I intend to have you be involved

7   in any matter that, you know, comes within that broad

8   charge.

9        MS. ONYEMA:  Thank you, your Honor.

10        MR. FONTI:  Your Honor, this is Mr. Fonti.

11        Two clarifying points from our count.  One is

12   that we think we're entitled to know whether any

13   in-house counsel at Teva also has had access and who

14   is involved in directing the activities in this case

15   because it's the same root issue that there's an

16   advantage that we -- and we're at the disadvantage.

17        THE COURT:  I think the qualifier was counsel

18   working on this case, which would include in-house

19   counsel.  So --

20        MR. FONTI:  Thank you, your Honor.

21        THE COURT:  -- if counsel has been involved

22   only on the criminal side, then that's fine.

23        MR. FONTI:  All right.  Because we've had

24   some back-and-forth and people can interpret words

25   differently, when we say "anyone working on the

1    case," we understand you're using those terms in the

2    broadest sense possible.  So anybody who has

3    appeared, obviously, anyone who has been assigned

4    work, anyone who is consulting, advising,

5    strategizing, billing time.  I don't see you

6    envisioning any artificial limitation like appearing

7    at a deposition.  We just want to make it clear that

8    your interpretation of that is as broad as possible.

9         THE COURT:  That was the intent.  If they're

10   involved in the litigation of the civil case, then

11   I'd like to see their name.  And it may be --

12   depending on what the list shows, it may be that some

13   or all of the 302s may be subject to in-camera

14   inspection.  I probably should advise everybody that

15   that's something that I'm considering, depending on

16   what we find out.

17        MR. FONTI:  Understood, your Honor.  Mr. Fonti

18   again.

19         Do you have a time frame in mind for how this

20   would proceed?

21        THE COURT:  Well, I assume the list can be

22   prepared and docketed in the next couple weeks.  It

23   may take some time to figure out -- I don't know how

24   many lawyers, but I can imagine there are a number of

25   lawyers who have been involved in the case.  So I'm

1   in no great rush.  It seems to me a couple weeks is

2   probably sufficient time.  If not, you can let me

3   know now.

4           MR. KORPUS:  I think we could do this in a

5   couple of weeks, your Honor.  Your Honor, I prefer

6   not to file this on the public docket.  Is it okay if

7   we just provide it to you outside the docket?

8           THE COURT:  What's the concern?

9           MR. KORPUS:  I'm just thinking all this out

10  loud.  But there is -- you know, it is our

11  confidential information as to who's been working on

12  the case.  There might not be a concern.  If you'd

13  prefer to have it on the docket, I guess that's fine.

14  I would just prefer not to.

15          THE COURT:  It seems to me to be a little

16  cleaner.

17          MR. KORPUS:  No problem.

18          THE COURT:  I think I'd like it on the

19  docket.

20          MR. KORPUS:  That's fine.  That's fine too.

21          THE COURT:  All right.  So that's what I'm

22  going to do then.  I'm going to deny the motion to

23  compel the 302s without prejudice to later filing

24  subject to what we've just discussed.

25          Similarly, I'm happy to hear folks on the

1    depositions of Cavanaugh and Oberman.  My inclination

2    at this point is similarly to postpone those

3    depositions until a later time.  Obviously, they can

4    be taken out of time if we get either close to trial

5    or the criminal proceeding concludes.  I think if the

6    criminal proceeding concludes, there may be a

7    resolution to the 302 and the deposition questions

8    because you'll have trial transcripts that are likely

9    to cover the areas of inquiry.

10            But let me hear if anybody wants to argue that

11   the Cavanaugh and Oberman depositions, or others of

12   these five, ought to go forward now.

13            MR. FONTI:  Your Honor, this is Mr. Fonti.

14            As you know, we are only seeking Cavanaugh,

15   Oberman, not the other five at this time.  We

16   understand the arguments that defense has made and

17   potential to confer, but we didn't make any progress

18   there.  And we see their arguments and their

19   submission on the constitutional grounds and being

20   put into the -- being put on the horns of a dilemma.

21            We think the Second Circuit is quite clear.

22   Your Honor has ruled on the issue some time ago in

23   the *Bolin* case.  In the Second Circuit, it was quite

24   clear in *Louis Vuitton* that being forced to either

25   take the fifth or to testify is not a constitutional

1    issue or challenge.

2         And neither of these folks are defendants here

3    or in, more importantly, the criminal case.  So we

4    think their testimony, whether it's by deposition or

5    at trial, is something that defendants are going to

6    want to put in.  In our case, we think it is an

7    opportune time to take that testimony from our end

8    and don't really see a reason for any delay.  The

9    case law they've cited to involves actual criminal

10   defendants who are seeking to stay their civil

11   testimony.  That's not the case here, and so we don't

12   really see the real prejudice or burden on the

13   defense.

14         Understanding where your Honor is at, we

15   obviously reserve the right to renew the motion.  And

16   as we've made clear to the DOJ, we are not intending

17   to wait for the criminal trial to conclude before

18   taking these depositions.  That was never the

19   agreement and that was never on the table.  This case

20   is moving forward.  It's moving forward at a strong

21   clip.  DOJ still doesn't even have a trial date, and

22   we just don't want that to be an impediment, see that

23   as an impediment.

24         But the last thing that I'd like to approach

25   is whether a limited scope deposition of either of

1    these two folks is something the Court would

2    entertain at this juncture given the spoliation

3    issues in particular and being able to -- and we

4    believe Cavanaugh and certainly perhaps Oberman were

5    pivotal players with respect to potential spoliation.

6    If that's not something that you are willing to

7    consider, you know, we'd tailor our request for

8    relief more narrowly.

9         MR. KORPUS:  Your Honor, would you like to

10   hear my response?  I'm happy to respond.

11        THE COURT:  Yes, I would.

12        MR. KORPUS:  Your Honor, it's not just a

13   constitutional issue, which we briefed in full in our

14   papers.  It's also the whole issue of showing Teva's

15   hand and having evidence out there that really should

16   be played out in the criminal trial.  Mr. Fonti is

17   going to have to prove a case within the case, but

18   he's seeking to prove it ahead of the main case.  And

19   that will cause a lot of harm to Teva, to the Teva

20   witnesses.  And I'm sure the DOJ will feel the same

21   way about its witnesses which Mr. Fonti has indicated

22   that he's not willing to wait for those witnesses

23   either, although he's only asking for Oberman and

24   Cavanaugh at this point.

25             There is also the fact that both those

depositions have already been stayed by Judge Rufe in
the MDL.  So this would be an end-run around that
order.  They would end up getting deposed here.  And
we have concerns because it is clear to us from the
communications that Mr. Fonti and the MDL plaintiffs
have been working hand in hand, and it just seems
like a way for the MDL plaintiffs to obtain here what
they couldn't obtain there.

So not only are we going to be running afoul
of Judge Surrick's court, we're going to be running
afoul of Judge Rufe's court as well where the conduct
is more directly related.

So we really do not see the point of doing it
at this point.  We think your Honor's instincts are
correct.  And even if your Honor were to allow the
depositions of Oberman and Cavanaugh at this point,
then what?  Mr. Fonti is going to come to the Court
in a month asking for the depositions that the
government objects to.  We're going to be in the same
place.  There seems to be no benefit to prejudicing
Teva's defense in the criminal case at this time.

As to the idea of a limited deposition on
spoliation issues, there isn't even a spoliation
motion before the Court.  All I've seen is an ongoing
discovery dispute where Mr. Fonti keeps moving the

1  puck asking for more and more information, but he

2  hasn't actually brought any motion.  There is no

3  spoliation.

4         You're going to hear -- you saw it in our

5  papers, you're going to hear from Ms. Renshaw that

6  Ms. Cavanaugh's phone was taken by the DOJ; and,

7  therefore, she could not physically spoliate any

8  messages.  So there really is nothing there.

9         But if Mr. Fonti wants to bring his motion,

10  he can bring his motion.  And we could see at that

11  point what, if any, discovery is required.  We

12  believe the motion will be denied for the reasons I

13  mentioned.

14         Thank you, your Honor.

15         MR. FONTI:  A couple of responses, your

16  Honor.

17         Just to be clear, the Department of Justice

18  does not object to Cavanaugh and Oberman.  So the

19  only argument here is by Teva; and they really have

20  not articulated -- other than their preference not to

21  have these people testify, really, they can't

22  articulate what prejudice or Teva does not have a

23  Fifth Amendment right.  It is the only defendant in

24  the criminal case.  These people are former

25  employees, former officer -- officials of the company

1   who have relevant information here apart from the

2   collusion piece.

3        Secondly, with respect to Judge Rufe, that is

4   an agreed-upon stay among all the parties in the MDL.

5   And it's on the 60-day clock.  It gets renewed and

6   revisited every 60 days.  So there is not some sort

7   of ruling by Judge Rufe to stay these depositions

8   based on some fundamental reasoning.  So --

9        MR. KORPUS:  That's actually not correct.

10  I'm also counsel for Teva in the MDL.  There was a

11  motion for protective order that was filed.  It was

12  opposed by the plaintiffs' in this case, and it was

13  granted by Judge Rufe.  Now, it is true that Judge

14  Rufe held that she will coterminate that order with

15  the general stay requested by the DOJ.  But it was

16  not a motion that was granted on consent; it was a

17  motion that was granted after we deposed the

18  plaintiffs.

19        And we had put in our papers the -- and I'm

20  just trying to be careful because we are in open

21  court, your Honor -- the reasons why having these

22  witness's depositions proceed now would be

23  prejudicial to Teva.  They are likely to be witnesses

24  for Teva in the criminal case, and we would prefer to

25  keep it for that main event.

```
 1            THE COURT:  All right.  But the limited
 2   examination regarding spoliation wouldn't affect the
 3   criminal case, your defense of the criminal case in
 4   any way, would it?
 5            MR. KORPUS:  Yeah, because the -- the DOJ is
 6   not raising spoliation because there wasn't any
 7   spoliation.  But before we subject a witness to that
 8   deposition, we believe that we should see what
 9   exactly the claim of spoliation is, because I haven't
10   seen it.  Mr. Fonti keeps talking about it, keeps
11   asking for discovery, but we haven't seen the motion.
12   I'm not sure what he's complaining about since the
13   phone was taken the same day as the subpoena was
14   issued in June 2016.
15            THE COURT:  Well, I think -- as I recall,
16   there was some back-and-forth on the preservation of
17   evidence order directives and whether there was an
18   obligation to maintain certain items of evidence,
19   potential evidence.
20            It seems to me that the more typical way to go
21   is for discovery to flesh out what problems there are
22   and then for counsel to decide whether, in light of
23   whatever they've been able to discover, they should
24   make a spoliation motion or not.  That's a fairly
25   high-stakes motion, and it shouldn't be made lightly.
```

1        I guess I'm inclined to allow the limited

2   deposition of Cavanaugh and Oberman and limit it to

3   an hour and a half, two hours, whatever, perhaps

4   less, to focus simply on the question of the

5   spoliation.

6        MR. KORPUS:  Two things about that, your

7   Honor.  First of all, on Cavanaugh, maybe we should

8   have the argument on the litigation hold that

9   Ms. Renshaw will address, because we really don't

10  think there is any basis for that, before your Honor

11  makes a decision on that.

12       On Oberman, there isn't even any suggestion

13  that he was involved in any spoliation.  He was gone

14  from the company long, long before the DOJ

15  investigation.  So I'm not sure -- I'm not sure that

16  Mr. Fonti is even seeking the deposition of Oberman

17  on those issues; and if he is, I'm not sure what he

18  would ask him on those issues because it's never,

19  ever been raised in any of the many briefings that

20  we've had on this issue.  Mr. Oberman's name was not

21  mentioned.

22       MR. FONTI:  Your Honor, we certainly would

23  depose Mr. Oberman on the spoliation issue.  The

24  defense has consistently tried to pigeonhole the

25  spoliation issue to a very narrow set of text

messages with a very narrow set of custodians.  We
spent the last almost over year and a half now
determining what exists, what doesn't exist.  We have
gone through various -- as you said, this is a very
high-stakes motion.  We've been extremely methodical
in gathering the facts.  We know that there were
investigations, and we now know that Teva did not
impose litigation holds for some central
investigations including the congressional inquiries,
DOJ inquiry in 2014, the Michigan Attorney General's
inquiry in 2014.  There was generic pricing
litigation ongoing throughout the class period all
the way through 2016, if not later, that folks were
subject to litigation holds.  And we have a lot of
missing documents.  There's a lot of missing
evidence.

         So to say that Oberman has nothing to do with
spoliation is a gross overstatement.

         We are entitled to make our record.

         The time limit you proposed, an hour and a
half, two hours is sensible.  We're going to have
seven hours total with these people.  We're going to
be judicious with our time management and be focused
with what we can assemble on the specific issue of
spoliation.  So I think duration is warranted given

 1   the record.

 2        THE COURT:  What specifically do you think

 3   Oberman had to do with any spoliation?  Are you just

 4   going to ask him whether he complied with litigation

 5   holds, or are you going to ask him something more

 6   specific?

 7        MR. FONTI:  Your Honor, I think, first off,

 8   litigation holds for sure.  There were holds in place

 9   that were -- at the time that he was at the company.

10   There were -- there are documents from Oberman that

11   were permanently destroyed when he left.  We don't

12   know precisely what he did to preserve, and we don't

13   know what he did to destroy.  But there was -- there

14   were price -- generic pricing obligations to

15   preserve.

16        There is also, we know from testimony from

17   other witnesses that he was a person who took copious

18   hard-copy notes and documents.  We've been seeking

19   those hard-copy documents.  They don't appear to

20   exist or they haven't been produced.  They're

21   handwritten notes and so forth in filing cabinets.

22   We've been pursuing that.

23        So whether or not he was subject to a hold is

24   obviously a topic of the deposition, and what he did

25   to preserve and what he did to destroy is relevant.

He was a pivotal player.  He was there at the

inception of the scheme and through the time where,

as we reflect in one of our exhibits, you know, was

central to the profits that were made here.  So . . .

MR. KORPUS:  Your Honor, Mr. Fonti is making

this up as he goes along, with all due respect.  In

the year and a half we've been talking about this

issue, Mr. Oberman's name never came up once.  It's

Mr. Fonti who identified the custodians and the text

messages that he wanted.  It was his -- he identified

the six custodians.  He never said anything about

Mr. Oberman.  And now he's trying to, just for

harassment purposes, ask for the deposition of

Mr. Oberman, and the issue has never been raised.

And for him and for Mr. Cavanaugh, we would

like the opportunity to brief whether or not the

deposition is required on spoliation.  We could do it

very quickly.  We can put in a brief in a week.  But

we think that there is -- the law is on our side on

this point, and we think the Court will -- we should

have the benefit of the law.

THE COURT:  Okay.  So let's go forward with

Cavanaugh for an hour and a half on spoliation, and

you can brief the question of whether Oberman should

be subject to a similar deposition.

1          MR. KORPUS:  Your Honor, maybe I wasn't clear

2    or maybe you just overruled me.  But I was asking to

3    brief on Cavanaugh as well.

4          THE COURT:  Well, I -- okay.  Go ahead.  I

5    think that you're going to have a tough road with

6    Cavanaugh, frankly.

7          MR. KORPUS:  I understand, your Honor.  But I

8    think the Court should have the benefit.  We will get

9    it in quickly.  Mr. Fonti wasn't asking for the

10   depositions until after July 30th anyway, so we're

11   not going to be holding anything up.

12         THE COURT:  Okay.  That's fine.  So you'll

13   get your brief in in a week.  And do you want to have

14   simultaneous briefs, does that work, or do you want

15   to respond?

16         MR. FONTI:  Your Honor, we can do

17   simultaneous briefs just to move this along, given

18   the time of year.

19         THE COURT:  Okay.  That's fine.  So

20   simultaneous briefs a week from today by 5 p.m.

21         MR. FONTI:  That sounds good.

22         THE COURT:  All right.  Okay.  I think we

23   have an issue also regarding redaction of litigation

24   holds; is that right?

25         MR. FONTI:  Your Honor, I think there are

1    three issues relating to litigation holds.

2    Redactions is one of them.

3            THE COURT:  Okay.

4            MR. FONTI:  So the defense did produce in

5    large measure the litigation holds that were

6    associated with the Exhibit B of our earlier

7    submission that reflected post communications.

8            The two other issues on hold relate to what

9    they haven't produced.  But on what they did produce,

10   they redacted substantially -- you could look at

11   Exhibits G and H of our submission, which were both

12   filed under seal, and see there's large chunks of the

13   holds that are redacted.  We can't fathom how the

14   hold is privileged or work product.  It's an

15   instruction.  The law is clear under *Bagley*.  I think

16   your Honor has expressed that yourself.  We don't

17   think any redaction is warranted.

18           What they also did is withhold the recipients,

19   all of the recipients.  They only disclosed certain

20   recipients.  And, again, if they're going to assert a

21   privilege, then the first step is who got it.  And

22   the relevance of who got it stands apart even from

23   the privilege, which is if this went out throughout

24   the company, that is relevant to us.  If it went to

25   just a handful of people, that's relevant to us too.

1   How well they executed their preservation efforts is

2   relevant to the ultimate spoliation motion.

3        MS. RENSHAW:  Your Honor, this is Emily

4   Renshaw.

5        As discussed at the last hearing, to have

6   properly redacted privilege legal advice and work

7   product from the hold, the Court in its order said

8   the defendant shall redact those litigation holds to

9   remove privileged information, and that's what we

10  did.  Our redactions are -- we produced many

11  documents pursuant to the Court's order, redacted

12  those minimally, narrowly tailored.  And certainly

13  the information redacted goes beyond your

14  instructions, which we had already produced.  The

15  redacted information reflects opinions, advice, legal

16  advice concerning, among other things, what

17  information is potentially relevant, what recipient's

18  legal obligations are, who the potentially relevant

19  custodians and witnesses are.

20        And, again, we always seem to get away from

21  what the original issue and dispute here is.  This

22  ties back to the limited universe of text messages

23  that plaintiffs say were sent or received by six Teva

24  custodians, and Teva has provided information to

25  plaintiffs as to each of these irrelevant holds from

1   the last three and a half -- or from a three and a
2   half year period dating back to four and five years
3   before their case was filed, a complete inventory of
4   which of the six custodians received each of the
5   holds.  And we've also given plaintiffs detailed
6   privilege logs.  So they have all of the information
7   to assess the privilege claims.  They have all of the
8   information to understand which of these six
9   custodians received which holds and the subject
10  matter of the holds.
11          And their -- plaintiff cites to *Bagley*, and
12  we've tried not to turn these prehearing submissions
13  into mini briefs because to the extent that the Court
14  is leaning toward resolving the issue, we would
15  request briefing on this so that we can fully brief
16  the issues, including the case law from this very
17  Court that postdates *Bagley* and distinguished *Bagley*
18  and is far more analogous to our case here that
19  explained that litigation holds can and do often
20  contain privileged information and work product
21  including parameters, the parameters that are
22  determined and conceived of by counsel, the factual
23  information counsel decides it needs for its
24  assessment and advice of legal regarding their
25  actions and a description of the legal obligations as

1    well as the recipients of the hold.

2         So to the extent that the Court is leaning

3    toward a determination on this issue in plaintiffs'

4    favor, we would ask that we get the opportunity to

5    brief it and put all of the relevant case law before

6    the Court.

7         THE COURT:  Yeah.  I think that's

8    appropriate.  I also would like to see in-camera

9    unredacted copies of the litigation hold at issue.

10        MS. RENSHAW:  Understood, your Honor.  I

11   assume plaintiffs' will be filing a motion.  And in

12   response in our opposition, we can certainly attach

13   to that, for in-camera review, the unredacted hold.

14        THE COURT:  That's fine.

15        MR. FONTI:  Your Honor, given where we are

16   just procedurally, I think they ought to move first,

17   then we can just respond and move forward.  There's

18   been a number of submissions.  If they want a

19   protective order on the redactions, that makes more

20   sense.  You know our arguments and our basis for

21   production.

22        MS. RENSHAW:  Your Honor, we disagree with

23   that.  If Mr. Fonti is taking issue with our

24   redactions that we provided a privilege log and we

25   have explained the basis for our redactions, if

1    Mr. Fonti wants to move to compel that information in

2    unredacted form, that's his obligation.

3          THE COURT:  Yeah.  Well, ordinarily it's the

4    party claiming the privilege that has the burden.  I

5    think I'm inclined to have defense file the first

6    brief.  That will give you a chance to also file a

7    reply.

8          When can you file that, Ms. Renshaw?

9          MS. RENSHAW:  Understood, your Honor.  So if

10   we could have just a bit more time then on the other

11   brief because I'm supposed to be traveling next week.

12   If we could file our brief in two weeks, either the

13   29th or 30th.

14         THE COURT:  I'll give you three weeks if

15   you're traveling next week.

16         MS. RENSHAW:  Thank you, your Honor.

17         THE COURT:  Sure.  And then we'll get an

18   objection when, Mr. Fonti?

19         MR. FONTI:  So if I'm counting right, their

20   papers would be due on the 5th.  If we could have,

21   given some scheduling issues on our end, the 26th,

22   would that work?

23         THE COURT:  That's fine.  And then any reply

24   would be 14 days later, although I'd urge you to put

25   a reply in as quickly as you can because we'll

1   probably pick it up once it's fully joined.

2           MS. RENSHAW:  Understood, your Honor.  Thank

3   you.

4           MR. KORPUS:  Sheron Korpus again.

5           Sorry.  Not to push my luck, but I wasn't

6   aware that Ms. Renshaw is going to be traveling next

7   week and she's been involved in this holding.  I was

8   wondering whether we could have two weeks on the

9   Cavanaugh and Oberman instead of one week, if that

10  doesn't offend the Court too much.  If you Court says

11  no to two weeks, we agreed to one week, that's fine

12  too.

13          THE COURT:  That's fine.  That's fine.

14          MR. KORPUS:  Thank you, your Honor.

15          MR. FONTI:  That works for us as well.

16          THE COURT:  Okay.  Good.  Mr. Fonti, you had

17  some other issues regarding the hold?

18          MR. FONTI:  Yes.  There's two issues.  One is

19  the June 21, 2016, hold that apparently was put in

20  place simultaneous with the DOJ raid on Teva on that

21  day.  It hasn't been produced.  We think this is a

22  fairly uncontroversial and remarkable dispute because

23  your order -- our discussion last time and your order

24  says the holds between January 1, 2013, and June 30,

25  2016, are to be produced.  That's what we understood

1  the agreement to be at the conference on May 25th.

2  That's what your order says.  This is a hold issued

3  on June 21, 2016.  We think that's full stop.  It's

4  been ordered to be produced already.

5      Ms. Renshaw has taken the tact of saying that

6  what she meant to say at the hearing last time was

7  that this one was not in play, only the holds before

8  June 21, 2016.  That's not something we would have

9  agreed to, didn't agree to, and that's not what the

10  Court ordered.  So we think this is a hold that they

11  say is -- sparks their obligation to preserve.  It is

12  going to be the focal point of their conduct after

13  June 21, 2016.

14      There is -- there are vast gaps in both the

15  text message side of things and in the e-mail side of

16  things postdating June 21, 2016, that are going to be

17  the subject of our discovery and our potential

18  spoliation motion.  And the bottom line is we don't

19  know -- if things were destroyed, we don't know when

20  they were destroyed, whether it was before or after

21  Jun 21, 2016.  Having that hold is imperative.  I

22  think you already ordered it.  Certainly we would not

23  have agreed to anything less, so we think that that

24  should be yet again compelled at this point.

25      MS. RENSHAW:  Your Honor, with all due

1   respect to Mr. Fonti, we cited to the transcript; and

2   it wasn't what I intended to say, it was exactly what

3   I did say and what we offered and what we have been

4   disputing this entire time.

5       So this issue ties back to the discrete

6   universe of text messages.  Plaintiffs had an

7   unfounded contention that there was some preservation

8   obligation for those text messages at issue prior to

9   the June 2016 hold and subsequent holds that issued

10  that covered these text messages.

11      And just to be clear, it remains Teva's

12  position that any duty owed to any other entity or

13  party in any other matter to preserve documents or

14  information does not run the plaintiffs here, and

15  there's no basis to shift that duty to run the

16  plaintiffs here.

17      And -- but nevertheless, we always try to

18  reach agreement and resolve disputes without the need

19  for further Court interference and without the need

20  for further briefing.  And we made the offer to

21  produce holds leading up to that and not holds after

22  because there are that hold and other holds that

23  relate to the text messages at issue.  And we --

24  plaintiffs' counsel agreed on the record, the Court

25  agreed it was fair, and we did just that.

 1          And even more significantly, as Mr. Korpus

 2     alluded to earlier, since that hearing, Teva has

 3     explained to plaintiffs that the filings to the Court

 4     were due, that this issue on the June 2016 hold and

 5     any subsequent litigation hold is moot because -- and

 6     I'm very being careful not to get into confidential

 7     information in open court.  But after retaining

 8     permission from the government to disclose additional

 9     information to plaintiffs, we confirmed to plaintiffs

10     that the mobile devices of the custodians who are

11     alleged to have been a party to every single one of

12     the allegedly missing text messages, every one

13     received by the government the very day that the

14     government served the subpoena at issue to Teva and

15     that the litigation hold at issue, among other

16     things, that covered these mobile devices was issued.

17     So it's wholly irrelevant to what that -- any

18     litigation hold that day or any other day contains

19     because the devices at issue were seized by the

20     government.

21          And since that -- we've had a meet-and-confer.

22     Plaintiffs had asked us for even more information

23     about the devices collected by the government.  We've

24     agreed to follow up and seek permission, and that's

25     what we're doing.

1      So it is our opinion if this issue is -- that

2    the issue is moot and there's nothing further for the

3    Court to do at this time.  However, if plaintiffs are

4    pursuing this argument as it relates to any

5    litigation hold or any preservation duty, it hasn't

6    been either produced or any preservation duty in

7    another mater.  We, again, respectfully request the

8    opportunity to brief that because there is plentiful

9    case law on this point that supports defendants'

10   position here.

11      THE COURT:  Okay.  My recollection -- and I

12   haven't gone back to look at the transcript.  But my

13   recollection is that we chose the June 30 date to

14   make sure that we included the June 21 date.  I

15   thought that we were intentionally including the June

16   21, 2016, litigation hold.  If it turns out to be

17   irrelevant, it's two or three pages of information,

18   and I think there is at least a potential for it to

19   be of some significance in this case.  So I think it

20   should be disclosed.  And then if you want to -- if

21   you redact any portion of that, you can include that

22   in your briefing about why that portion should not be

23   disclosed but --

24      MS. RENSHAW:  Your Honor, we -- just to make

25   one point clear that the earlier -- and Mr. Fonti

1  alluded to these earlier litigation holds that he

2  claims, you know, have relevant information, when

3  truly it's just based on rogue speculation because

4  the decisions regarding generics pricing had to do

5  with a case filed a decade and a half ago relating to

6  2001 to 2003 Medicaid and Medicare reimbursements.

7  And that's why, you know, I think that just -- you

8  know, that's just an example of why we are on a very

9  slippery slope here by allowing plaintiffs to dig

10  into these unrelated matters that, you know, that are

11  largely protected by privilege.  It's -- they're not

12  relevant.  They then give plaintiffs, you know, the

13  fodder to make these arguments that they're

14  irrelevant documents when they aren't -- they weren't

15  the parties to those cases, they don't know the facts

16  underlying those cases, and it's really

17  disadvantaging and -- Teva here and prejudicing us to

18  have to dig through archives of materials and to, you

19  know, respond to these questions regarding matters

20  that have nothing to do with the case at hand.

21       So we would ask that to the extent the Court

22  is going to ask us to -- is going to order us to

23  provide any additional hold, we would ask that we get

24  the opportunity to brief that issue.

25       And just as -- I'm sorry, your Honor.  One

```
 1   last point.  I think it's important to note that
 2   these issues that plaintiff here in their securities
 3   case, alleging securities claims, are raising are not
 4   issues that have been raised by the antitrust
 5   plaintiffs or by the government.  This truly is a
 6   classic fishing expedition.  And we keep responding
 7   and keep accepting the burden here to do these
 8   things.  But it really is -- it's a fishing
 9   expedition to extend fact discovery which concluded
10   months ago, and we ask that the Court put an end to
11   it and -- or we be allowed briefing on the matter.
12           THE COURT:  Okay.  I see a difference between
13   June 21, 2016, and 2005.  I think you should produce
14   June 21, 2016.  I'm happy to hear Mr. Fonti, but I
15   don't think you need to produce 2005.
16           MR. FONTI:  Your Honor, if you're done, I can
17   respond to that.
18           THE COURT:  Sure.
19           MR. FONTI:  So I think Ms. Renshaw conflated
20   quite a bit of information around quite a bit of
21   different holds and issues and arguments.  So we had
22   started with June 21, 2016, which is the litigation
23   hold issued as a result of the FBI raiding Teva's
24   offices and seizing people's devices and so forth.
25   So that's where we had started.  I think you have
```

 1   ordered yet again that that needs to be produced.

 2   Once they redact, they can make it the subject of

 3   their motion.  So we get full stop there.

 4        And I could then turn to what I think

 5   Ms. Renshaw was trying to move the conversation to is

 6   older litigation holds, if that's okay.

 7        THE COURT:  Yeah.

 8        MR. FONTI:  So the remaining issue on the

 9   holds, separate and apart from June 21, 2016, is

10   there are -- there was this generic drug pricing

11   litigation that did transpire over a number of years.

12   In May of 2016, there was a reminder sent to

13   custodians that are relevant to our case, and there

14   was -- and when we looked at the production, that

15   reminder is the very last entry on Exhibit B, the

16   logs, all of the relevant matters.  All that -- your

17   Honor ordered last time around that the holds that

18   related to the matters reflected in Exhibit B.  So it

19   wasn't just the holds at issue that were identified

20   there but holds related to those matters.  We asked,

21   okay, where are the holds related to this May 2016

22   drug pricing investigation, and they pointed us to

23   another reminder that was only about four weeks older

24   that had been issued in early May of 2016.

25        Now, we know that those litigations had been

1     transpiring for years.  Given that's a reminder, we

2     understand that there were other holds issued on

3     generic drug pricing and issued to our relevant

4     custodians.  But we don't have any of them and they

5     refuse to produce them, and they say that they're

6     irrelevant.  They're not irrelevant.  The courts have

7     already ordered that they are irrelevant -- they are

8     relevant and that they are the predicate for the

9     reminder that we do have.  If we want to cut it off

10    in terms of time limit, we could start, as you did in

11    your order, January 1, 2013, all of the holds that

12    pertain to this one reminder or two reminders that we

13    have in May of 2016.

14          They have already said on the record that

15    Teva maintains a repository that any employee in the

16    world can go into and identify the holds and see what

17    holds have been issued.  They actually have a system

18    for this that's accessible to everyone.  Burden is

19    not a credible argument and it's certainly relevant,

20    and your Honor has already deemed it relevant.

21          So as to the last issue on the holds, we

22    think we get the holds that predate these reminders,

23    predicate for this generic drug pricing investigation

24    and litigation.

25          MS. RENSHAW:  Your Honor --

1          THE COURT:  You have the reminders.  There's

2    only so much -- so far back we can go.  You know,

3    when you stand up in court and you offer some

4    evidence that somebody destroyed something in 2003,

5    2006, 2008, what --

6          MR. FONTI:  Your Honor, we're not interested

7    in that.  We're not interested in that.  We're not

8    going to do that.  We will start, as we have with

9    these other holds, 2013 forward.  And if these

10   custodians are subject to a hold from 2013 forward,

11   that's all we care about.  We don't -- you know,

12   2003, 2008 is just not relevant to us.  You're right.

13          The hold we have, just to be clear, is a 2016

14   hold.  So it's a -- there's two holds both from May

15   2016 on this matter.  They're both reminders.  We

16   have nothing that predates that on that matter, on

17   the generic drug pricing investigation litigation.

18          THE COURT:  But the reminder is a hold, isn't

19   it?

20          MR. FONTI:  Yes.  But we don't know --

21          THE COURT:  You have the hold from 2016 that

22   reminded them that back in 2005, we told you to hold,

23   put a litigation hold on your various documents.

24   I --

25          MR. FONTI:  It is not that -- sorry.

 1          THE COURT:  Go ahead.

 2          MR. FONTI:  These are both -- they're Exhibit

 3   G and H of our submission, and you'll see in both of

 4   those there is no temporal connection back.  It's not

 5   the -- we can't discern from the reminder when the

 6   original hold was put in place and whether there was

 7   -- it was put in place any time before May of 2016.

 8   In fact, when we met and conferred about it, they

 9   said, well, the reminder is back to May 5, 2016.

10   That is also labeled a reminder.  We think we are

11   entitled to know whether that hold was in place in

12   2013 forward.

13          MS. RENSHAW:  And, your Honor, just to

14   respond to a couple points that Mr. Fonti is making,

15   because he wasn't on those meet-and-confer calls.

16          We haven't refused to do anything, and we were

17   simply addressing a question plaintiffs had about the

18   later May hold and said it refers back to an earlier

19   reminder, what was this.  And we pointed them in our

20   production to the earlier reminder which does

21   reference an ongoing obligation to preserve all

22   documents.

23          And, your Honor, this is just -- this

24   demonstrates the separational nature of the argument.

25   We've run the searches that are reasonable to respond

1   to comply with the Court's order.  We've produced

2   these holds that show that there was a litigation

3   hold in place, and plaintiffs just keep asking for

4   more.

5           MR. FONTI:  Judge, if they want to stipulate

6   that all the custodians in our case were subject to

7   this hold as of January 1, 2013, and were aware of

8   it, that's all I need.  I don't need to belabor this.

9   We need to know that people were under an obligation

10  to preserve as of January 1, 2013.  That's what we're

11  trying to get to.  And if that's the case, fine, they

12  could just admit it and we can move forward.  If they

13  don't want to admit it, then I need the documents.  I

14  think we're entitled to that if we're going to have

15  to move for spoliation.

16          THE COURT:  Why won't you send them a request

17  to admit?

18          MR. FONTI:  We can do that, Judge.

19          THE COURT:  I mean, look, I can't -- I think

20  that's the better way to go.  If they won't admit it,

21  you know, in conversations, then send them a request.

22          MR. FONTI:  And we just would need relief

23  from your Honor to issue that request for admission.

24          THE COURT:  Well, this is a continuing

25  discovery dispute.  So yes, you're --

```
 1            MR. FONTI:  Thank you, your Honor.  We
 2    appreciate your patience with these matters.  We know
 3    they are -- they have been -- used a lot of time for
 4    them, and they're consuming in many ways.  So thank
 5    you.
 6            THE COURT:  It's my job.  What are other
 7    issues do we have?
 8            MR. FONTI:  I think we had one remaining
 9    issue which is thankfully defendants completed their
10    production, advised us this morning that they had
11    completed production of the internal control
12    documents.  We got them yesterday afternoon.  We
13    obviously haven't determined whether they are fully
14    compliant, but for today there's nothing for the
15    Court to do.  And that's it for us.
16            THE COURT:  All right.  Does the defense or
17    the government have any issues to raise?
18            MS. ONYEMA:  Your Honor, this is Veronica
19    Onyema from the Department of Justice.  I just had
20    two clarifying questions on the 302 issue to ask the
21    Court.
22            THE COURT:  Sure.
23            MS. ONYEMA:  Thank you.
24            The first just related to any future motions
25    practice on this issue of the interview memoranda.
```

1    You had noted that the way that you were leaning in

2    regards to the protective order and whether it bars

3    production and issues such as 2E.  And I just wanted

4    to confirm to follow up with my other question that

5    you still are giving authority for us to raise any of

6    those arguments should there be renewed motion

7    practice on this issue.

8            THE COURT:  Yeah.  There was a little

9    interference as you were asking your question.  I

10   think you asked whether you would be given a chance

11   to provide briefing on those issues.  The answer is

12   yes.  I haven't decided.  I'm just trying to explain

13   the way that I am leaning, and obviously I would be

14   interested in whatever brief, if and when.

15           MS. ONYEMA:  Thank you, your Honor.  That's

16   what I thought, but I just didn't want to make that

17   assumption and possibly waive any future arguments.

18           And then the other question I had was you had

19   mentioned the possibility of future in-camera review

20   of the interview memorandum, and we would just

21   request notice of that in-camera review given the

22   sensitivities with the documents belonging to other

23   federal agencies.  I would certainly need to brief my

24   leadership on that issue.

25           THE COURT:  Sure.  I'm not going to privately

1    ask submissions of these documents in-camera.  I will

2    docket something.  So you'll have notice of that and

3    an opportunity to weigh in, I suppose.

4         MS. ONYEMA:  Thank you, your Honor.  Those

5    were my two questions.  Thank you.

6         MR. KORPUS:  Your Honor, Sheron Korpus from

7    Kasowitz Benson for the defendants.

8         I just wanted to ask, given some of the

9    discussion today and some of the history that was on

10   the record, because we had to make certain statements

11   in order to defend ourself where they do concern the

12   DOJ's investigation, whether we could either seal the

13   entire transcript from today's conference or

14   otherwise allow us to redact portions of the

15   transcript.

16        THE COURT:  Well, sealing the transcript is

17   pretty serious stuff.  I don't recall anything that

18   was revealing of either confidence or -- I'm not --

19   frankly, I'm not picking up what you're concerned

20   about.

21        MR. KORPUS:  Sure.  Let me be a little more

22   specific.  I'm sorry, your Honor.

23        In the MDL there has been a lot of

24   back-and-forth about what details of the government's

25   investigation can come out and what can't.  Now, our

1  position is that -- you know, and discovery into the

2  government's investigation has been limited in many

3  ways in the MDL, much similar as your Honor has just

4  done here.

5      We, in order to deal with some of these

6  allegations, have had to reveal some of the

7  investigations.  I am fine with it because we believe

8  that we're entitled to do so.  That's not discovery.

9  That's our own information that we are revealing.

10 But I think just to be on the same page with some of

11 the MDL discovery, it may make sense to redact

12 certain portions.

13     THE COURT:  Well, I --

14     MR. FONTI:  Your Honor, may I be heard on

15 that.

16     THE COURT:  Sure.  Although I'm -- maybe I am

17 just not familiar with the other two cases to

18 understand what was said today that causes any

19 concern.  I haven't heard anything that strikes me as

20 being -- as disclosing anybody's investigation or

21 strategy or approach.  So you can file a quick motion

22 if you want.  You can file that under seal, that

23 motion under seal to seal a portion of the

24 transcript.  But I literally am not understanding the

25 need to do so.

```
 1            MR. KORPUS:  That's fine, your Honor.  We'll

 2    consider doing that.  We'll take that under

 3    advisement.

 4            THE COURT:  Okay.

 5            MR. KORPUS:  Thank you, your Honor.

 6            MR. FONTI:  I'm typically the one, your

 7    Honor, who asks or suggests that we set another

 8    conference.  And given the time of year, we have

 9    another couple of rounds of briefing on a couple

10    issues, I won't make that request today but we know

11    how to find you if we need you.  And I'm sure once

12    the briefing is done on the simultaneous submission

13    and on the privilege log issues, we can set a hearing

14    date that works for the Court.

15            THE COURT:  Sure.  Yeah.  We'll find a date

16    and set something up.  I think these conferences are

17    useful to keep the case moving forward.

18            MR. FONTI:  They absolutely are.  Thank you,

19    your Honor.

20            MR. MATERESE:  Your Honor, good afternoon.

21    This is Josh Materese with Kessler Topaz.  If I may,

22    I just have one housekeeping issue for the direct

23    action plaintiffs.

24            THE COURT:  Sure.

25            MR. MATERESE:  Thank you, your Honor.
```

```
 1          The direct action plaintiffs' oppositions to

 2    the three omnibus motions to dismiss defendants'

 3    files are due a week from Friday, July 23rd.  With

 4    the Court's permission, we would like to file, in

 5    turn, three omnibus opposition briefs totaling no

 6    more than 90 pages.  Defendants have consented to

 7    this relief.  If the Court would prefer a formal

 8    motion, we're happy to do so.  But I thought in the

 9    interest of efficiency, it made sense to raise it

10    here today.

11          THE COURT:  Yeah.  I have no problem with

12    that.  That's fine.

13          MR. MATERESE:  Great.  Thank you very much.

14          THE COURT:  Thank you.

15          MS. ONYEMA:  Your Honor, sorry to jump in.

16    This is Veronica Onyema from the Department of

17    Justice again.

18          I just wanted to note in response to what

19    Mr. Korpus noted about possible statements that may

20    have revealed aspects of the government's

21    investigation, there may have been a few things that

22    were said, a couple things that jump out are, for

23    example, the timing of the DOJ raid.  So it is

24    possible that there is some information that would

25    need to be redacted in our view as well.  So we
```

1    certainly can wait to see any motion to seal that

2    Mr. Korpus files, or if you would prefer, we can

3    work -- we can work with defense counsel on that

4    issue directly as well.

5            THE COURT:  Yeah.  Whatever your preference.

6            MR. KORPUS:  Veronica, why don't you and I

7    speak.  And I think it will be the more efficient way

8    to proceed.

9            MS. ONYEMA:  That's fine with me.

10           THE COURT:  I will say that the timing of the

11   raid does not strike me as something that needs to be

12   sealed.  If that's the issue, if you could try to

13   explain why that would be a matter of concern to the

14   government if it were revealed in 2021.

15           MS. ONYEMA:  Thank you, your Honor.  There

16   were a few things that were discussed, and so I would

17   want to discuss with my colleagues as well just to

18   make sure that we're not missing anything.  But we

19   can certainly provide additional information to the

20   Court to the extent that we still believe that there

21   is material that should be redacted.

22           THE COURT:  Very good.  All righty.

23           MR. FONTI:  And, your Honor, just so the

24   record is not void of our concern on any redactions,

25   this is open court.  You know, this is America, to

1    which we all read the transcripts.  Nothing was said

2    here that isn't years old or completely stale

3    information, and we will see what they put in and

4    react accordingly.  But we definitely oppose any

5    redactions.

6            THE COURT:  All right.  Well, we'll see what

7    comes in.

8            Until next time, everybody stay safe and be

9    well.

10           (Proceedings adjourned, 3:08 p.m.)

11

12               C E R T I F I C A T E

13

14    RE: ONTARIO TEACHERS' PENSION PLAN BOARD, ET AL.
        v. TEVA PHARMACEUTICAL INDUSTRIES LTD., ET AL.
15                No. 3:17-cv-00558(SRU)

16

17           I hereby certify that the within and

18    foregoing is a true and accurate transcript taken in

19    the aforementioned matter to the best of my skill and

20    ability.

21

22           /s/ Melissa J. Cianciullo_____

23          MELISSA J. CIANCIULLO, RDR, CRR, CRC
                  Official Court Reporter
24              United States District Court
                  915 Lafayette Boulevard
25               Bridgeport, CT 06604
                    (203) 606-1794