# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-00558 (SRU) |
| _____ | |
| THIS DOCUMENT RELATES TO: | No. 3:18-cv-1681 (SRU) |
| | No. 3:18-cv-1721 (SRU) |
| | No. 3:18-cv-1956 (SRU) |
| | No. 3:19-cv-175 (SRU) |
| | No. 3:19-cv-192 (SRU) |
| | No. 3:19-cv-449 (SRU) |
| | No. 3:19-cv-513 (SRU) |
| | No. 3:19-cv-543 (SRU) |
| | No. 3:19-cv-603 (SRU) |
| | No. 3:19-cv-655 (SRU) |
| | No. 3:19-cv-656 (SRU) |
| | No. 3:19-cv-657 (SRU) |
| | No. 3:19-cv-923 (SRU) |
| | No. 3:19-cv-1167 (SRU) |
| | No. 3:19-cv-1173 (SRU) |
| | No. 3:20-cv-83 (SRU) |
| | No. 3:20-cv-588 (SRU) |
| | No. 3:20-cv-683 (SRU) |
| | No. 3:20-cv-1630 (SRU) |
| | No. 3:20-cv-1635 (SRU) |
| | |
| | September 2, 2021 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS NEW CLAIMS AND CLAIMS AGAINST NEW DEFENDANTS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 3

I.      PLAINTIFFS FAIL TO PLEAD SCIENTER AGAINST ALTMAN *ET AL.* ................. 3

      A.      Plaintiffs Fail To Adequately Plead Motive As To Altman *et al.* ......................... 3

      B.      The Complaints Do Not Plead Strong Circumstantial Evidence Of  Conscious Misbehavior Or Recklessness On The Part Of Altman *et al.* .............................. 5

            1.      Plaintiffs' "Magnitude of the Fraud" Allegations  Do Not Support A Strong Inference Of Scienter ................................................................... 5

            2.      Plaintiffs Fail To Allege Strong  Circumstantial Evidence That Altman *et al.* Had Access  To Specific Information Contradicting Their Statements................. 6

            3.      Plaintiffs' Arguments Regarding Specific Statements Lack Merit................ 8

II.      PLAINTIFFS DO NOT PLEAD VIABLE CLAIMS WITH RESPECT TO THE OPIOID SCHEME, BRIBERY SCHEME, AND ACTAVIS ACQUISITION ................ 9

      A.      Plaintiffs Fail To State Plausible Claims Based On The Opioid Scheme.............. 9

            1.      No Actionable Misrepresentations Or Omissions Are Pled .......................... 9

            2.      Plaintiffs Fail To Plead Scienter Against Teva Or Schultz.......................... 10

            3.      The Complaints Do Not Adequately Allege Loss Causation ...................... 11

      B.      Plaintiffs' Claims Based On The Bribery Scheme Must Be Dismissed .............. 13

            1.      Teva Disclosed The Very Information Plaintiffs Allege Was Concealed .... 13

            2.      The Complaint Does Not Allege A Strong Inference Of Scienter............... 15

            3.      Plaintiffs' Claims Based On The Bribery Scheme Are Time-Barred.......... 15

      C.      Plaintiffs Do Not State Plausible Claims Based On The  Purported "Negative Impact" Of The Actavis Acquisition ................................................................. 17

            1.      No Material Misrepresentations Or Omissions Are Pled ............................ 17

            2.      Plaintiffs Fail To Plead Facts Creating A Strong Inference of Scienter ....... 18

            3.      Loss Causation Is Not Pled ........................................................................ 19

      D.      Plaintiffs' "Goodwill Impairment" Claims Are Not Adequately Pled ................ 19

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuhamdam v. Blyth,*
   9 F. Supp. 3d 175 (D. Conn. 2014)................................................................12, 19

*In re Aegean Marine Petroleum Network Secs. Litig.,*
   __ F. Supp. 3d __, 2021 WL 1178216 (S.D.N.Y. Mar. 29, 2021)........................4, 6

*American Pipe & Constr. v. Utah,*
   414 U.S. 538 (1974)..........................................................................................16

*AP-Fonden v. Goldman Sachs Grp.*
   18-cv-12084, 2021 WL 2659797 (S.D.N.Y. June 28, 2021) ...............................13

*Bayway Refining v. Oxygenated Marketing & Trading,*
   215 F.3d 219 (2d Cir. 2000).............................................................................6, 14

*Beckford v. City of New Haven,*
   3:11-cv-498, 2011 WL 6153182 (D. Conn. Dec. 12, 2011) ...............................4, 15

*Behrens v. JP Morgan Chase Bank,*
   16-cv-5508, 2019 WL 1437019 (S.D.N.Y. May 31, 2019) ..................................17

*In re Cannavest Corp. Sec. Litig.,*
   307 F. Supp. 3d 222 (S.D.N.Y. 2018)................................................................20

*Catton v. Defense Tech. Sys.,*
   05-cv-6954, 2006 WL 27470 (S.D.N.Y. Jan. 3, 2006) ........................................8

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG,*
   752 F.3d 173 (2d Cir. 2014)............................................................................10, 15

*In re Curaleaf Holdings Secs. Litig.,*
   __ F. Supp. __, 2021 WL 567239 (E.D.N.Y. Feb. 16, 2021) .............................9, 14

*Das v. Rio Tinto PLC,*
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)................................................................10

*Debora v. WPP Group,*
   91-cv-1775, 1994 WL 177291 (S.D.N.Y. May 5, 1994) ....................................14

*In re Direxion Shares ETF Trust,*
   279 F.R.D. 221 (S.D.N.Y. 2012) ......................................................................16

i

*Dobina v. Weatherford Int'l Ltd.*,
  909 F. Supp. 2d 228 (S.D.N.Y. 2012)....................................................................8

*Finger v. Pearson PLC*,
  No. 17 CIV. 1422 (RJS), 2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)..............20

*Gamm v. Sanderson Farms*,
  944 F.3d 455 (2d Cir. 2019).................................................................................10

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................................................................6

*Lee v. Canada Goose US, Inc.*,
  20-cv-9809, 2021 WL 2665955 (S.D.N.Y. June 9, 2021)........................................4

*Lehmann v. Ohr Pharm.*,
  830 F. App'x 349 (2d Cir. 2020) ...........................................................................5

*Maloney v. Ollie's Bargain Outlet Holdings*,
  19-cv-8647, 2021 WL 517934 (S.D.N.Y. Feb. 10, 2021) ...................................7, 18

*Matana v. Merkin*,
  957 F. Supp. 2d 473 (S.D.N.Y. 2013)...................................................................16

*Mauss v. Nuvasive*
  13-cv-2005, 2015 WL 10857519 (S.D. Cal. Aug. 28, 2015)..................................12

*McCoy v. Povero*,
  15-cv-6237, 2016 WL 1192697 (W.D.N.Y. Mar. 22, 2016) ..................................16

*McCray v. Patrolman N.A. Caparco*,
  761 F. App'x 27 (2d Cir. 2019) ..............................................................................2

*Mitchell v. Am. Arb. Assoc.*,
  17-cv-8566, 2018 WL 10419732 (S.D.N.Y. May 17, 2018)....................................2

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC
  Partners, Inc.*,
  15-cv-6034, 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ..................................20

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*,
  432 F. Spp. 3d 131 (D. Conn. 2019)......................................................................3

*Rahman v. Fischer*,
  08-cv-4368, 2010 WL 1063835 (S.D.N.Y. Mar. 22, 2010).....................................2

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012)...................................................................................20

*Rio Tinto v. Vale*,
　14-cv-3042, 2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015) ..................................................7

*Sable v. Southmark/Envicon Cap. Corp.*,
　819 F. Supp. 324 (S.D.N.Y. 1993) ...............................................................................10

*Salim v. Mobile Telesystems PJSC*,
　19-cv-1589, 2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) .......................................................8

*In re ShengdaTech Secs. Litig.*,
　11-cv-1918, 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ...............................................5, 6

*Sullivan v. Stein*,
　487 F. Supp. 2d 52 (D. Conn. 2007) .............................................................................2

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap.*,
　531 F.3d 190 (2d Cir. 2008) ..............................................................................5, 10, 18

*Total Equity Cap. v. Flurry*,
　15-cv-4168, 2016 WL 3093993 (S.D.N.Y. June 1, 2016) ....................................................6

*In re Vertrue Mktg. & Sales Pracs. Litig.*,
　712 F. Supp. 2d 703 (N.D. Ohio 2010) ..........................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
　3:15-md-02672, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ...................................................11

*Walsh v. City of Norwalk*,
　3:08-cv-1905, 2011 WL 4572063 (D. Conn. Sept. 30, 2011) ...............................................14

Defendants in the above-captioned matter respectfully submit this reply memorandum in further support of their motion to dismiss claims (1) asserted against Altman *et al.*, and/or (2) based on the so-called Opioid Scheme, Bribery Scheme, and Actavis Acquisition.

## PRELIMINARY STATEMENT

Defendants' motion is not, as Plaintiffs falsely charge in their opposition brief (ECF 844, "Opp. Br."), an "improper collateral attack" on the *Ontario* class pleadings, nor is it barred by the Court's order consolidating these Direct Actions with *Ontario*. (*Id.*, p. 2.) Though that order provides that Defendants "shall not move under [Rule 12] with respect to" the current *Ontario* complaint (*see* ECF 352, ¶ 9), it imposed no restrictions on their rights to move with respect to the Direct Action complaints. By contrast, the Court instructed Plaintiffs to designate or submit amended pleadings conforming to the Court's ruling on Defendants' motions to dismiss the prior class complaint. (*See id.*, ¶ 12.) Rather than doing so, Plaintiffs now assert new claims against new defendants as compared with the class complaint. The instant motion properly challenges the legal sufficiency of those new claims and the allegations against new defendants. As detailed in Defendants' moving brief (ECF 786-1, "Mov. Br."), these claims must be dismissed for numerous, independent reasons, and nothing in Plaintiffs' opposition papers proves otherwise.

First, Plaintiffs fail to plead facts supporting a strong inference of scienter as against Altman *et al.* Unable to show that these new defendants (who were not involved in Teva's generics business during the relevant period) had the same motive the Court found adequately pled in *Ontario* against other officers and directors who were present and involved with the putative misconduct, Plaintiffs concoct an entirely new motive – the desire to maintain the illusion that the company was thriving and that the Actavis acquisition was a success. But courts in this Circuit have consistently held that scienter cannot be based on such a generalized motive, common to all for-profit enterprises. Nor does Plaintiffs' hodge-podge of other arguments come

close to pleading strong circumstantial evidence of conscious misbehavior or recklessness.

Plaintiffs' efforts to resuscitate their new claims fare no better. Their claims based on the Opioid Scheme and the Bribery Scheme – which are totally unrelated to the alleged "Price-Hike Strategy" and collusion relating to Teva's U.S. generics prices – were improperly injected into this case in defiance of the Court's clear instruction that Plaintiffs designate operative pleadings conforming to the *Ontario* rulings, which served to <u>limit</u> the scope of these consolidated actions. These claims should be dismissed for this reason alone. *See, e.g.*, *Mitchell v. Am. Arb. Assoc.*, 17-cv-8566, 2018 WL 10419732, at *3 (S.D.N.Y. May 17, 2018) ("This Court is authorized to disregard claims that go beyond the scope of the amendment permitted in its [prior] Order.").[1] Moreover, these extraneous claims fail as a matter of law because the material information Teva allegedly concealed from the market was in fact repeatedly and fully disclosed in the very same public filings which Plaintiffs claim were misleading and incomplete.

Plaintiffs also fail to plead plausible claims based on the purported "negative impact" of the Actavis Acquisition on Teva's financial results and business prospects. Aside from rehashing their allegations that Defendants were motivated to fraudulently conceal the alleged pricing misconduct in order to use Teva's securities prices as currency to <u>fund</u> the acquisition, they fail to plead actionable misrepresentations or omissions concerning the impact of the acquisition (good or bad), much less the elements of scienter or loss causation.

For the reasons detailed in Defendants' moving brief and those stated more fully below, these claims should be dismissed, in their entirety, with prejudice.

---

[1] *See also McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019) (affirming district court's *sua sponte* dismissal of new claims that went beyond the scope of the permitted amendment); *Rahman v. Fischer*, 08-cv-4368, 2010 WL 1063835, at *2 n.5 (S.D.N.Y. Mar. 22, 2010) (same); *Sullivan v. Stein*, 487 F. Supp. 2d 52, 55 n.1 (D. Conn. 2007) (dismissing as "beyond the scope of this lawsuit" new claim which plaintiffs "did not seek permission to add … when they filed their most recent complaint"), *aff'd* 319 F. App'x 42 (2d Cir. 2009).

**ARGUMENT**

I.     **PLAINTIFFS FAIL TO PLEAD SCIENTER AGAINST ALTMAN *ET AL.***

    A.     **Plaintiffs Fail To Adequately Plead Motive As To Altman *et al.***

In *Ontario*, the Court found that the class complaint adequately alleged that four former Teva officers (Desheh, Griffin, Olafsson, and Vigodman) were motivated to commit fraud – namely, to misrepresent and conceal an alleged scheme to hike prices on Teva's U.S. generics products – in order to drive up Teva's securities prices for the purpose of financing the company's acquisition of Actavis.  *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 432 F. Spp. 3d 131, 170 (D. Conn. 2019).  In their opposition brief, Plaintiffs now argue that this same motive "applies equally" to Altman *et al.* because the allegations against them in the Direct Action Complaints are "indistinguishable" from those the Court found sufficient as against Desheh *et al.*  (Opp. Br., p. 7.)  Not so.

It is indisputable that the Direct Action complaints are devoid of allegations that Altman *et al.* held leadership positions with respect to Teva's U.S. generics division – much less that they had any direct involvement in pricing decisions – while Teva's stock prices were allegedly being inflated to fund the Actavis acquisition.  (*See* Mov. Br., pp. 7-8.)  Unable to argue otherwise, Plaintiffs attempt to muddy the waters by pointing to other positions these defendants held.  (*See* Opp. Br., pp. 5 ("Peterburg, Schultz, and McClellan rose to the highest levels of the Company … later in the Relevant Period"), 21 ("everyone but Schultz held a leadership role at Teva during some or all of the alleged price hikes").)  But it is self-evident that those positions have no connection to the alleged fraudulent scheme or the putative motive behind it.

For example, Plaintiffs argue that prior to the Actavis closing, "Bhattacharjee was President and CEO of Teva's Generics **Europe**, and McClellan was CFO of … Global **Specialty** Medicines" (Opp. Br., 8 (emphasis added)), yet they fail to explain what either of these posts had

to do with an alleged scheme relating to **generics** products **in the United States**.  And Plaintiffs' observation that Peterburg was Chairman of the Board (*see id.*) is likewise wide of the mark, since there are no allegations tying him in this (or any other) capacity to the alleged scheme.[2]

And in their effort to demonstrate "overlap" between Altman and the purported scheme, Plaintiffs are forced to reach entirely outside of their own pleadings.  As previously shown (*see* Mov. Br., p. 8), Altman's brief tenure as Acting CFO did not coincide with any of the alleged misconduct.  Plaintiffs' charge that Defendants "studiously omit" mentioning other positions Altman held before and afterwards (Opp. Br., p. 8) is misdirected, since none of those other roles are alleged in **any** of the Direct Action complaints naming Altman as a defendant (an inconvenient fact that Plaintiffs "studiously omit" mentioning).[3]  Plaintiffs' belated attempt to cure the deficiencies in their complaints by adding new allegations via their opposition brief is patently inappropriate and must be rejected.  *See Beckford v. City of New Haven*, 3:11-cv-498, 2011 WL 6153182, at *4 (D. Conn. Dec. 12, 2011) ("[I]t is well established that a memorandum of law in opposition to a motion to dismiss … cannot be used to cure a defective complaint.").[4]

As to Schultz, Plaintiffs do not even pretend that the motive the Court found sufficient in

---

[2] Plaintiffs' argument that motive can be inferred from the fact that Peterburg "signed the offering documents for the December 2015 and August 2016 securities offerings" (Opp. Br., p. 8 n.9) is wrong as a matter of law.  *See In re Aegean Marine Petroleum Network Secs. Litig.*, __ F. Supp. 3d __, 2021 WL 1178216, at *35 (S.D.N.Y. Mar. 29, 2021) ("Allegations regarding a defendant's title, Board membership, and/or signatures on documents – such as the Offering Documents – are plainly insufficient to allege scienter").  Further, Plaintiffs' assertion that Peterburg "participated in the July 27, 2015 investor call announcing the Actavis acquisition" (Opp. Br., p. 8 n.9) is not supported by any of the cited paragraphs.  (Another paragraph (*Phoenix* compl., ¶ 658) avers only that Peterburg "attended" the call, but does not allege that he spoke about the acquisition or anything else.)

[3] *See Alaska* compl., ¶ 34 (alleging only that Altman "was Teva's Acting CFO from October 31, 2013 through February 11, 2014"); *Clal* compl., ¶ 45 (same); *Nordea* compl., ¶ 47 (same); *Phoenix* compl., ¶ 54 (same).

[4] Likewise misguided is Plaintiffs' claim that Defendants "do not explain why Altman's motivations would change depending on what particular segment of Teva he led."  (Opp. Br., p. 8.)  The burden is on Plaintiffs to plead facts sufficient to establish a strong inference of scienter "separately … and individually … as to each defendant," *In re Aegean*, 2021 WL 1178216, at *35 (internal quotation marks omitted), not on Defendants to "explain" away motives that are not pled as to individuals in connection with positions they are not alleged to have held.  *See Lee v. Canada Goose US, Inc.*, 20-cv-9809, 2021 WL 2665955, at *6 n.5 (S.D.N.Y. June 9, 2021) ("At the pleading stage, it is Plaintiffs' burden to state a plausible claim for relief, not Defendants' burden to refute one.").

*Ontario* is remotely applicable; nor could they, since Schultz did not join Teva until November 1, 2017, well over a year after the Actavis acquisition was completed (*see Clal* compl., ¶¶ 12, 50).  Instead, they invent an entirely new "motive," one which they likewise seek to extend to Bhattacharjee, McClellan, and Peterburg: that these defendants were "motivated to maintain prior misstatements" in order to "continue and prolong the illusion" that Teva was healthy and the Actavis acquisition had been a success.  (Opp. Br., p. 8; *see also id.*, p. 39 ("Defendants had the motive to convince investors that [the acquisition] had been the right decision.").)  But even if this newly-minted theory had been pled in their complaints rather than improperly raised for the first time in Plaintiffs' opposition brief, it would still not pass muster.  The desire to "sustain the appearance of corporate profitability, or of the success of an investment," is precisely the type of generalized motive, "possessed by virtually all corporate insiders" that the Second Circuit has "consistently rejected as insufficient in securities fraud pleading." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap.*, 531 F.3d 190, 196 (2d Cir. 2008) (internal quotation marks omitted); *see also Lehmann v. Ohr Pharm.*, 830 F. App'x 349, 352 (2d Cir. 2020) (same).

**B.     The Complaints Do Not Plead Strong Circumstantial Evidence Of
Conscious Misbehavior Or Recklessness On The Part Of Altman *et al.***

Because they cannot establish motive against Altman *et al.*, in order to plead scienter by showing strong circumstantial evidence of conscious misbehavior or recklessness, "the strength of [Plaintiffs'] allegations must be correspondingly greater." *In re ShengdaTech Secs. Litig.*, 11-cv-1918, 2014 WL 3928606, at *6 (S.D.N.Y. Aug. 12, 2014) (internal quotation marks omitted).  As explained in Defendant's moving brief (pp. 9-17), the Direct Action complaints fall far short of clearing this hurdle.  Plaintiffs' attempts to rebut these arguments are all unavailing.

**1.     Plaintiffs' "Magnitude of the Fraud" Allegations
Do Not Support A Strong Inference Of Scienter**

For their lead argument, Plaintiffs assert that the "large magnitude" of Defendants'

5

alleged fraud supports a strong inference of scienter against Altman *et al.*  (Opp. Br., pp. 9-10.)

That is incorrect.  It is well-settled that such allegations "are not capable of serving as an

independent basis for scienter."  *Total Equity Cap. v. Flurry*, 15-cv-4168, 2016 WL 3093993, at

*5 (S.D.N.Y. June 1, 2016) (internal quotation marks omitted); *see also In re ShengdaTech*, 2014

WL 3928606, at *9 (same).  Indeed, "magnitude of the fraud" allegations can serve only to

"bolster[] the strength of the inference of scienter when plaintiffs have <u>already adequately</u>

<u>alleged</u> facts" constituting strong circumstantial evidence that defendants knew or recklessly

disregarded specific information contradicting their statements.  *Glaser v. The9, Ltd.*, 772 F.

Supp. 2d 573, 595 (S.D.N.Y. 2011) (emphasis added).  Having failed to do so, Plaintiffs' resort

to the "magnitude of the fraud" is unavailing.  *See In re Aegean*, 2021 WL 1178216, at *44

("Allegations regarding … the size of the fraud, and restated financials are not, on their own,

sufficient to allege scienter.  [Because] plaintiff has failed to allege scienter as to … Defendants

on any <u>other</u> ground, none of these allegations suffice either.") (emphasis added).[5]

> ## 2.    Plaintiffs Fail To Allege Strong Circumstantial Evidence That Altman *et al.* Had Access To <u>Specific Information Contradicting Their Statements</u>

Plaintiffs next argue that the same allegations the Court found sufficient to plead

recklessness in the *Ontario* class action are likewise sufficient as to Altman *et al.*  (*See* Opp. Br.,

pp. 12, 18-20.)  This argument can be quickly disposed of.

To state a fraud claim based on recklessness, not only must "the complaint …

---

[5] Plaintiffs' bizarre assertion that Defendants "waived" their right to challenge the sufficiency of Plaintiffs' "magnitude of the fraud" allegations (Opp. Br., p. 10 n.10) is without merit.  Since the size of an alleged fraud can only serve to bolster other well-pled facts that independently support a strong inference of scienter, Defendants had no cause to address the issue in their moving brief because the complaints do not plead such facts as to Altman *et al.* Because Plaintiffs have now raised the issue in their opposition papers, Defendants are of course entitled to respond. *See, e.g.*, *Bayway Refining v. Oxygenated Marketing & Trading*, 215 F.3d 219, 226 (2d Cir. 2000) ("reply papers may properly address new [arguments] raised in the opposition papers so as to avoid giving unfair advantage to the [opposing] party") (internal quotation marks omitted).

'specifically allege defendants' knowledge of facts or access to information contradicting their public statements,'" it must also "'specifically identify the reports or statements containing this information.'"  *Maloney v. Ollie's Bargain Outlet Holdings*, 19-cv-8647, 2021 WL 517934, at *4 (S.D.N.Y. Feb. 10, 2021) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308-09 (2d Cir. 2000).

In *Ontario*, the Court found that class plaintiffs adequately alleged that four individual defendants (Desheh, Griffin, Olafsson, and Vigodman) received, reviewed, and/or participated in the generation of specific documents concerning generic pricing and revenues (work plans, weekly scorecards, etc.) that directly contradicted their public statements on those topics.  But here, though Plaintiffs summarize allegations purportedly based on information obtained from former employees (*see* Opp. Br., pp. 11, 18-20),[6] they fail to point to any equivalent, well-pled allegations in their complaints concerning Altman *et al.*

Nevertheless, Plaintiffs insist that generalized allegations in their complaints that these documents and databases were available to "Israeli executives" are sufficient to plead scienter as to Altman *et al.*  (*See id.*)  Yet the only defendants actually identified as "Israeli executives" are Desheh and Vigodman.  (*See, e.g., Clal* compl., ¶ 446; *Nordea* compl., ¶¶ 88, 390; *Phoenix* compl., ¶ 799.)[7]  Significantly, it was the specific identification of Desheh *et al.*, by name, in the *Ontario* pleadings that supported the Court's finding that scienter was adequately pled against them.  (*See* ECF 784-1, pp. 10-11.)  In the absence of such specifics as to Altman *et al.*, the complaints here allege nothing more than "general claims about what [Altman *et al.*] must have

---

[6] For the reasons previously stated, these allegations – copied virtually verbatim from other pleadings in derogation of Plaintiffs' non-delegable Rule 11 obligation – should not be credited.  (*See* ECF 784-1, pp. 11-13.)

[7] Plaintiffs' belated attempt to repurpose these allegations for use against Altman *et al.* by asserting that "'Israeli executives' … includes the Additional Defendants" (Opp. Br., p. 19 n.12) is unavailing.  Plaintiffs fail to identify any well-pled facts supporting a reasonable inference that Bhattacharjee, McClellan, or any of the others are "Israeli executives," and in any event the law is clear that Plaintiffs cannot amend their pleadings by way of their opposition brief.  *See Rio Tinto v. Vale*, 14-cv-3042, 2015 WL 7769534, at *4 (S.D.N.Y. Nov. 20, 2015) ("The complaint cannot … be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted).

known based on their respective job titles," which allegations are "entitled to no weight." *Salim v. Mobile Telesystems PJSC*, 19-cv-1589, 2021 WL 796088, at *13 (E.D.N.Y. Mar. 1, 2021).

In short, Plaintiffs' *ad hoc* scienter allegations against Altman *et al.* belies the seriousness of the claims they are asserting. "Naming a party in a civil suit for fraud is a serious matter" and "can lead to serious injury to reputation for which our legal system effectively offers no redress." *Catton v. Defense Tech. Sys.*, 05-cv-6954, 2006 WL 27470, at *8 (S.D.N.Y. Jan. 3, 2006) (internal quotation marks omitted). That these accusations are raised in the broader context of alleged corporate pricing misconduct and collusion does not diminish the fact that Plaintiffs are impugning the integrity of five individual defendants based on nothing more than conclusory allegations, innuendo, and conjecture. Rule 9(b) and the PSLRA demand substantially more.

### 3.      Plaintiffs' Arguments Regarding Specific Statements Lack Merit

Plaintiffs' argument that recklessness can be inferred from the mere fact that Altman *et al.* made statements (or signed filings containing statements) "directly addressing generic drug pricing and competition" (Opp. Br., p. 12) is simply incorrect. Though they spend pages rehashing those statements (*see id.*, pp. 13-16), Plaintiffs fail to point to any allegations in their complaints identifying specific information that Altman *et al.* knew or had access to which contradicted their statements, because there are none (*see* Mov. Br., pp. 9-17).[8]

Similarly meritless is Plaintiffs' argument that Defendants have "waived" any challenge to the sufficiency of Plaintiffs' scienter allegations with respect to statements by Altman *et al.*

---

[8] The cases Plaintiffs cite (*see* Opp. Br., p. 12) are thus distinguishable on their facts. For example, in *Dobina v. Weatherford Int'l Ltd.*, plaintiffs alleged that the corporate defendant's public filings, signed by its CFO, contained false statements "relating to the quality of [the company's] internal controls." 909 F. Supp. 2d 228, 244 (S.D.N.Y. 2012). The court concluded that scienter could reasonably be inferred as to the CFO: (a) because he repeatedly certified that he was personally "responsible for establishing and maintaining those controls," "designed or caused such controls to be designed under his supervision," and "supervised each of the Company's quarterly evaluations of [those] controls"; and (b) because the complaint adequately pled that the CFO "was aware of at least some problems with internal controls" at the time of the filings at issue. *Id.* at 246 (internal quotation marks omitted).

regarding price erosion and denials of collusion.  (Opp. Br., pp. 16-18.)  Defendants' critique

was not limited to a specific subset of statements, and Plaintiffs' claim to the contrary is squarely

refuted by the fact that Defendants <u>expressly</u> addressed the deficiencies in the complaints'

scienter allegations on the very topics that Plaintiffs contend were not addressed.  (*See*, *e.g.*,

Mov. Br., p. 9 (price erosion), 15 (denial of collusion).)[9]

## II. PLAINTIFFS DO NOT PLEAD VIABLE CLAIMS WITH RESPECT TO THE <u>OPIOID SCHEME, BRIBERY SCHEME, AND ACTAVIS ACQUISITION</u>

### A. <u>Plaintiffs Fail To State Plausible Claims Based On The Opioid Scheme</u>

#### 1. <u>No Actionable Misrepresentations Or Omissions Are Pled</u>

As detailed in Defendants' moving brief (pp. 19-22), the five Direct Action complaints

which assert claims based on the so-called Opioid Scheme[10] fail to plead any misrepresentation

or omission of material fact.  Nothing in Plaintiffs' opposition papers shows otherwise.

Plaintiffs contend that Teva "misled investors as to … the risk associated with [those]

lawsuits" because, in the public filings disclosing such litigation, Teva reported (accurately) that

it planned to defend itself.  (Opp. Br., p. 23.)  But as previously shown (*see* Mov. Br., pp. 20,

24), far from minimizing its risk, Teva repeatedly disclosed in plain and unvarnished terms that,

if found liable, it faced potentially enormous monetary penalties that "could have a material and

adverse effect on [the company's] reputation [and] business."[11]  Courts in this Circuit have long

recognized that a fraud claim will not lie where, as here, it "is premised on the nondisclosure of

information that was actually disclosed."  *In re Curaleaf Holdings Secs. Litig.*, __ F. Supp. __,

---

[9] Likewise, Plaintiffs' assertion that Defendants "d[id] not address any of [several listed] statements" attributed to Peterburg, Schultz, and McClellan (Opp. Br., p. 17) is demonstrably false.  (*Compare id.* (Defendants signed Sarbanes-Oxley certifications to 2016 Form 20-F and Form 10-Ks for 2017 and 2018) *with* Mov. Br., pp. 10 (2016 Form 20-F), 12 n.10 (citing *Phoenix* compl., ¶ 589 (Form 10-Ks for 2017 and 2018)), 14 n.13 (same).)

[10] As noted above (*supra*, p. 2), Plaintiffs' assertion of Opioid Scheme claims violates the Court's consolidation order (*see* ECF 352, ¶ 12) and should be dismissed for this reason alone.

[11] Teva Form 10-Q, filed May 2, 2019, p. 33 (emphasis added).  (*See also* Mov. Br., p. 24 (providing hyperlink).)

2021 WL 567239, at *6 (E.D.N.Y. Feb. 16, 2021) (internal quotation marks omitted); *Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 333 (S.D.N.Y. 1993) (same).

Though Plaintiffs may believe that any disclosure short of an abject confession to the alleged "illegal marketing" would be actionable, that is not the law.

> [D]isclosure is not a rite of confession…. By disclosing its involvement in multiple legal proceedings and government investigations [that] could expose [the company] to substantial monetary damages … [defendant] complied with its disclosure obligations under our case law.

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal quotation marks omitted). Moreover, where – as here – a fraud claim is based on the nondisclosure of uncharged illegal conduct, not only must the complaint "state a plausible claim that the underlying conduct [has] occurred," *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 803 (S.D.N.Y. 2018) (internal quotation marks omitted), but "the facts of the underlying illegal acts must also be pleaded with particularity," *Gamm v. Sanderson Farms*, 944 F.3d 455, 465 (2d Cir. 2019). Here, it is readily apparent that the sparse, conclusory allegations in these complaints – which do not even identify the law or laws Teva allegedly violated – fall far short of stating a plausible underlying "illegal marketing" claim with the requisite particularity.

### 2.     Plaintiffs Fail To Plead Scienter Against Teva Or Schultz

To plead scienter against a corporation, the well-pled facts "must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters*, 531 F.3d at 195. Here, Plaintiffs contend that their complaints allege "a massive multi-year, multi-pronged company-wide scheme," the implementation of which would necessarily "require countless employees at every level of Teva to execute." (Opp. Br., p. 25.) As such, it should at least be possible (if not trivially easy) for Plaintiffs to identify at least one senior Teva officer or director, past or present, who acted with scienter, but they do not. Instead,

in a 200-page complaint with 624 paragraphs, Plaintiffs make only a single, glancing reference to the involvement of "Teva's management."  (*Clal* compl., ¶ 218.)  That is not good enough.[12]

Plaintiffs further contend that an inference of scienter is "particularly strong" as to Schultz (the only individual defendant identified in the Opioid Scheme allegations) in light of his statement on a May 2, 2019 earnings call that he did not believe Teva had broken any laws in connection with its marketing of opioids.  (*See* Opp. Br., p. 26.)  This argument, too, lacks merit.  As previously shown (*see* Mov. Br., p. 23), courts in this Circuit and elsewhere have repeatedly rejected the argument that an officer's denial of corporate wrongdoing under the circumstances alleged here would support a strong inference of scienter.  Plaintiffs' claim that Schultz recklessly "ignore[d] crucial information at [his] fingertips" in making his statement (Opp. Br., p. 26) is meritless as well, since Plaintiffs have failed to identify any specific information establishing Teva's liability.[13]

### 3.  The Complaints Do Not Adequately Allege Loss Causation

Unable to dispute that the market was already well aware of the many lawsuits accusing Teva of illegally marketing opioids when Teva announced on May 26, 2019 that it had settled

---

[12] Plaintiffs' reliance on cases opining that it might sometimes be possible to plead corporate scienter without identifying specific individuals with the requisite intent (*see* Opp. Br., pp. 25-26) is misplaced.  The situation alleged here – where Teva repeatedly disclosed it was the target of lawsuits accusing it of illegally marketing opioids and accurately represented its litigation posture – is far removed from the "hypothetical" circumstances posited in those decisions "'in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the [statements'] falsity.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 3:15-md-02672, 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017) (quoting *Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008) (emphasis in original)).

[13] Plaintiffs also argue that the inference of scienter is supported by Cephalon's guilty plea in 2008 to a criminal violation in connection with the off-label marketing of an opioid product between 2001 and 2006.  (*See* Opp. Br., pp. 26-27; *see also Clal* compl., ¶ 211.)  Yet Plaintiffs fail to explain how that plea, regarding conduct that occurred more than five years before Cephalon was acquired by Teva (in 2011) supports a strong inference that Schultz had access to specific information contradicting his public statements regarding his view (in 2019) of Teva's potential liability in a different lawsuit (that the company subsequently settled with no admission of liability).  Moreover, Teva continues to actively defend itself in two ongoing opioid-related trials.  *See California v. Purdue Pharma L.P.*, *et al.*, No. 30-2014-00725287-CU-BT-CXC (Cal. Super. Ct. Orange Cnty. May 21, 2014); *In re: Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct., Suffolk Cty., Jul. 31, 2017).

opioid-related litigation with the State of Oklahoma, Plaintiffs attempt to move the goal posts, arguing that Teva's disclosures "misled investors about the level of risk associated with those litigations."  (Opp. Br., p. 27 (emphasis in original).)  This argument cannot withstand scrutiny.

In its public filings, Teva not only disclosed that it is a defendant in approximately 1,500 opioid-related complaints, but that it faces very <u>substantial</u> risk if found liable.  Indeed, Teva warned that some of those actions were seeking damages equaling "the entirety of the costs associated with addressing the abuse of opioids" and that "an adverse resolution of <u>any</u> of these lawsuits or investigations … could have a material and adverse effect" on the company's business and reputation.[14]  Moreover, far from "assur[ing]" investors that the allegations were completely baseless and thus the risk was low," as Plaintiffs wrongly claim (Opp. Br., p. 27), Teva forthrightly disclosed that, although it was moving to dismiss the complaints, it "cannot predict the outcome" of those myriad lawsuits and investigations it is facing.[15]

In short, while Plaintiffs allege that the market reacted negatively to the announcement of Teva's settlement with Oklahoma, the risk that materialized (*i.e.*, substantial monetary liability from opioid litigation) had been fully and repeatedly disclosed.  The five complaints here thus "fail[] to plead loss causation because [they are] devoid of factual allegations showing that the drop in [Teva's] stock price was caused by … the materialization of a concealed (as opposed to known) risk."  *Abuhamdam v. Blyth*, 9 F. Supp. 3d 175, 180 (D. Conn. 2014).[16]

---

[14] Teva Form 10-Q, filed May 2, 2019, p. 33 (emphasis added).  (*See also* Mov. Br., p. 24 (providing hyperlink).)

[15] *Id.*

[16] Plaintiffs' legal authority (*see* Opp. Br., pp. 27-28) is not to the contrary.  In *Mauss v. Nuvasive*, the court actually <u>dismissed</u> plaintiff's fraud claim, finding that allegations that defendant's stock price declined following its disclosure of a subpoena in connection with unlawful kickbacks was <u>not</u> sufficient to plead loss causation.  13-cv-2005, 2015 WL 10857519 (S.D. Cal. Aug. 28, 2015).  In discussing a potential amendment, the court observed that defendant's public disclosures that it was "subject to healthcare fraud and abuse laws" did not reveal to the market the risk that defendant had actually broken those laws.  *Id.* at *14.  Here, by contrast, Teva's risk of incurring substantial liability in connection with its marketing of opioids was made amply clear to the market through repeated, detailed disclosures concerning the lawsuits and investigations focused on that very issue.  Plaintiffs' other

**B.**     **Plaintiffs' Claims Based On The Bribery Scheme Must Be Dismissed**

     **1.**     **Teva Disclosed The Very Information Plaintiffs Allege Was Concealed**

In their moving brief (pp. 25-27), Defendants showed that the *Harel* and *Phoenix*

complaints fail to plead with particularity that any of the challenged statements concerning the

Bribery Scheme[17] were false when made.  In an attempt to resuscitate their claims, Plaintiffs now

argue that these statements, which were made between February 2014 and February 2016,

contained material omissions because, "[w]hile Teva was <u>hiding the government's investigation</u>

<u>into illegal bribes to foreign officials</u>, it gave a false public façade of calm and <u>compliance with</u>

<u>the FCPA</u>."  (Opp. Br., p. 29 (emphasis added).)

The linchpin of this argument is Plaintiffs' contention that Teva did not disclose until

"**November 2016** … that it had received a DOJ subpoena in 2012 about the Company's FCPA

compliance."  (*Id.* p. 28 (emphasis added).)  But this assertion is a total fabrication.  Not only

does it lack any support in their pleadings (the paragraph Plaintiffs cite, *Phoenix* compl., ¶ 853,

makes no such allegation), but it is definitively refuted by the fact that Teva actually disclosed

the <u>precise information</u> in question in the very SEC filings that Plaintiffs claim were misleading.

Thus, in the company's 2013 Form 20-F, filed in **February 2014**, Teva disclosed:

> Beginning <u>in 2012, we received subpoenas and informal document requests</u>
> <u>from the SEC and the Department of Justice ("DOJ") to produce documents</u>
> <u>with respect to compliance with the FCPA in certain countries</u>….  We are
> also conducting a voluntary worldwide investigation into certain business
> practices that may have FCPA implications….  In the course of our
> investigation, … <u>we have identified issues in Russia, certain Eastern</u>
> <u>European countries, [and] certain Latin American countries … that could</u>

---

case, *AP-Fonden v. Goldman Sachs Grp.*, actually reinforces Defendants' argument, since the court there found that
the majority of the putative corrective disclosures failed to adequately plead loss causation because they constituted
"mere materialization[s] of known risk," 18-cv-12084, 2021 WL 2659797, at *17 (S.D.N.Y. June 28, 2021).

[17] Because the Bribery Scheme-related claims in the *Harel* and *Phoenix* amended complaints are unrelated to the
alleged U.S. generics pricing misconduct and collusion at issue in this consolidated action, these extraneous claims –
which were not only asserted without leave of the Court but are in direct contravention of its consolidation order
(*see* ECF 352, ¶ 12) – should be dismissed from this case.

<u>rise to the level of FCPA violations</u> and/or violations of local law….

Due to the ongoing nature of these investigations, at this time <u>we cannot predict any likely outcomes in these matters, and accordingly we cannot assure you that we will not be materially and adversely affected</u>.  The DOJ, SEC and other agencies and authorities have <u>a broad range of civil and criminal penalties</u> they may seek to impose….   <u>We may be required to pay material fines and/or penalties and/or disgorge any profits earned from improper conduct.  Our operations in the affected countries may be negatively impacted</u>, and we may be subject to … criminal or civil penalties or adverse impacts….  Any one or more of the foregoing <u>could have a material adverse effect</u> on our reputation and our business, financial condition or results of operations.[18]

Teva reiterated these warnings in filings in **February 2015** and **February 2016**, and further disclosed that its "affiliates in certain countries under investigation provided to local authorities inaccurate or altered information relating to marketing or promotional practices."[19]

It is therefore simply not the case, as Plaintiffs now argue in their opposition brief,[20] that Teva "hid" the existence of the DOJ investigation and subpoena and of FCPA violations in Russia, Eastern Europe, and Latin America until November 2016.  Because Plaintiffs' Bribery Scheme claims are "premised on the nondisclosure of information that was actually disclosed," they fail as a matter of law.  *In re Curaleaf*, 2021 WL 567239, at *6; *Debora v. WPP Group*, 91-cv-1775, 1994 WL 177291, at *6 (S.D.N.Y. May 5, 1994) (same).[21]

---

[18] Teva 2013 Form 20-F, p. 6 (emphasis added) (available at https://www.sec.gov/Archives/edgar/data/0000818686/000119312514041871/d649790d20f.htm).

[19] Teva 2014 Form 20-F, p. 6 (available at https://www.sec.gov/Archives/edgar/data/0000818686/000119312515039151/d831284d20f.htm); *see also* Teva 2015 Form 20-F, p. 8 (same) (available at https://www.sec.gov/Archives/edgar/data/0000818686/000119312516459785/d120587d20f.htm).  The Court may properly consider the Teva's Form 20-F filings because they are integral to and cited extensively in Plaintiffs' complaints.  (*See, e.g.*, *Phoenix* compl., ¶¶ 588-89, 759, 761.)

[20] *See Bayway*, 215 F.3d at 226 ("reply papers may properly address new [arguments] raised in the opposition papers") (internal quotation marks omitted); *Walsh v. City of Norwalk*, 3:08-cv-1905, 2011 WL 4572063, at *3 n.4 (D. Conn. Sept. 30, 2011) (same).

[21] Plaintiffs' other arguments are also without merit.  For example, their attempt (*see* Opp. Br., pp. 29-30) to predicate liability on corporate social responsibility reports in which Teva touted its "100 years of ethical and responsible business practice" and stated that it "carefully monitor[s] compliance with the [FCPA]" (*Phoenix*

### 2.     The Complaint Does Not Allege A Strong Inference Of Scienter

Plaintiffs argue that the "same motivation" the Court found sufficient to plead scienter in *Ontario – i.e.*, the desire to finance the Actavis acquisition through a purported scheme to hike prices on generic drugs in the U.S. – likewise "compelled Defendants to withhold negative information about the Bribery Scheme, disclosure of which would cause the price to fall before the Actavis acquisition closed." (Opp. Br., p. 32.)  Tellingly, Plaintiffs fail to cite any allegations in their 400+ page complaint that plead such a motive (or any other) as to the Bribery Scheme, nor can those missing allegations be properly supplied in their opposition brief. *See Beckford*, 2011 WL 6153182, at \*5 (opposition brief "cannot be used to cure a defective complaint"). More fundamentally, Plaintiffs' assertion that Defendants were motivated "to withhold negative information about the Bribery Scheme" founders on the irrefutable fact that Teva <u>did not</u> <u>withhold</u> that information, but explicitly disclosed it on numerous occasions during the entire time frame when the company was allegedly trying to inflate its stock prices. (*See supra* pp. 14-15.)  Plaintiffs' attempt to plead scienter based on allegations "that Defendants knew about or recklessly disregarded the DOJ investigation and Bribery Scheme" (Opp. Br., p. 32) fails for the same reason.  While recklessness may be inferred where a defendant has access to <u>concealed</u> information <u>contradicting</u> its statements, here there was neither concealment nor contradiction.

### 3.     Plaintiffs' Claims Based On The Bribery Scheme Are Time-Barred

As shown in Defendants' moving brief (p. 28), because Plaintiffs "first asserted claims based on the Bribery Scheme in their amended pleading[s]" after the expiration of the relevant limitations periods, their claims under the Exchange Act, Securities Act, and PSA are all time-

---

compl., ¶¶ 760, 765), is at odds with Second Circuit precedent. *See City of Pontiac*, 752 F.3d at 183 ("[P]laintiffs allege that UBS's involvement in the Tax Fraud rendered [its] [public] statements … about compliance, reputation, and integrity materially misleading.  It is well-established that [such] statements … are inactionable [because] they are too general to cause a reasonable investor to rely upon them.") (internal quotation marks omitted).

barred.  Specifically, though Plaintiffs allege that a corrective disclosure occurred on November

15, 2016 (*see Harel* compl., ¶ 831; *Phoenix* compl., ¶ 853), the amended complaints in *Harel*

and *Phoenix* were filed on May 28, 2020.[22]  Because they did not assert their Bribery Scheme

claims until more than 3.5 years later, those claims are untimely and must be dismissed.

Plaintiffs insist that their claims are nevertheless timely because they were tolled by the

filing of "the original *Huellemeier* complaint, filed July 17, 2017."  (Opp. Br., p. 34.)  They are

wrong.  The filing of a class action "only tolls the limitations period for claims of 'asserted' class

members."  *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (quoting

*American Pipe & Constr. v. Utah*, 414 U.S. 538, 554 (1974)).  But here, Plaintiffs – who are

Israeli insurance and financial services conglomerates and their subsidiaries (*see Harel* compl., ¶

46; *Phoenix* compl., ¶ 48) – were **not** members of the putative *Huellemeier* class, which was

comprised of "individuals who purchased or otherwise acquired Teva ADSs pursuant to the

Company's [Employee Stock Purchase Plan for U.S. Employees]" (*see* 3:17-cv-01938, ECF 1,

¶¶ 1, 102).  The law is clear that *American Pipe* tolling does not apply to the claims of parties

who were not and "never could have been part of the putative class."  *Behrens v. JP Morgan*

*Chase Bank*, 16-cv-5508, 2019 WL 1437019, at *8 (S.D.N.Y. May 31, 2019) (internal quotation

marks omitted); *see also Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013) (same).[23]

---

[22] In their moving brief (p. 28), Defendants clearly indicated that they were referring to the "amended pleadings" in which "plaintiffs first asserted claims based on the Bribery Scheme," yet inadvertently listed the filing dates for the underlined(original) complaints (which did not assert such claims). Defendants correct that typographical error here.  There is no impediment to the Court's consideration of this correction, *see, e.g., McCoy v. Povero*, 15-cv-6237, 2016 WL 1192697, at *1 n.2 (W.D.N.Y. Mar. 22, 2016) (accepting correction made in reply brief to typographical error in opening brief), nor do Plaintiffs have any cause for objection.  They cannot claim any prejudice (since they are well aware of the filings dates of their own pleadings), and in any case Plaintiffs have made a similar error with respect to dates in their opposition brief. (*Compare* Opp. Br., p. 28 ("In December 2017, the Company pled guilty to violating the FCPA…") *with Phoenix* compl., ¶ 70 n.2 ("Teva … entered into a plea agreement with the DOJ on December 22, 2016, pleading guilty to conspiracy to violate the FCPA…") (emphases added).)

[23] Plaintiffs' observation that "[t]he *Ontario* SAC … retains the Bribery Scheme allegations from *Huellemeier* and expressly incorporates the entire Plea Agreement, and related documents, by reference" (Opp. Br., p. 34) is both misleading and irrelevant.  As it is undisputed that the *Ontario* SAC does not purport to assert a claim based on any

**C.     Plaintiffs Do Not State Plausible Claims Based On The
         Purported "Negative Impact" Of The Actavis Acquisition**

**1.     No Material Misrepresentations Or Omissions Are Pled**

Defendants demonstrated in their moving brief (pp. 28-30) that Plaintiffs in seventeen

Direct Action Complaints fail to plead particularized facts supporting their claim that Defendants

misrepresented or concealed "the negative impact resulting from the acquisition and integration

of Actavis on Teva's financial results and business prospects" (*see, e.g., Boeing* compl., ¶ 169).

None of the arguments put forward in Plaintiffs' opposition brief proves otherwise.

Unable to identify any allegations in their complaints as to the acquisition's purported

negative impact on Teva (*see* Mov. Br., pp. 28-30),[24] Plaintiffs once again reach outside their

pleadings, citing commentary from various press sources on dates that are months or even years

removed from the alleged misrepresentations and corrective disclosures.  (*See* Opp. Br., pp. 37-

38.)[25]  And once again, Plaintiffs' attempt to plug holes in their complaint via their opposition

brief must be rejected.  Plaintiffs also try to muddy the waters by conflating their facially

deficient "negative impact of Actavis" allegations with the pricing misconduct and collusion

allegations which the Court found sufficient in *Ontario*.  Plaintiffs insist that the Actavis-specific

---

misrepresentations or omissions with respect to the Bribery Scheme (*see* ECF 310, ¶ 165), it did not toll – and thus cannot save – Plaintiffs' untimely claims here.  *See In re Vertrue Mktg. & Sales Pracs. Litig.*, 712 F. Supp. 2d 703, 718 (N.D. Ohio 2010) ("only the claims expressly alleged in a previous [class action] lawsuit are subject to tolling").

[24] As shown in Defendants' moving brief (p. 29), the complaints do not allege that the acquisition failed to produce many of its anticipated positive benefits (*e.g.*, broadening Teva's R&D capabilities, product portfolio, and geographic footprint and operational network).  Instead, Plaintiffs now argue, half-heartedly, that the deal did not produce other benefits.  For example, Plaintiffs assert that Defendants "continued to tell investors the deal would lead to billions in 'cost synergies' and 'tax savings'" (Opp. Br., p. 36 (purporting to quote *Chicago* compl., ¶ 257)), yet no such allegations appears in that paragraph or any other in the referenced complaint.  Plaintiffs also assert that in February 2017 Peterburg "told investors that the acquisition was already 'generating significant cash flow to rapidly pay down our existing debt'" (Opp. Br., p. 36 (selectively quoting *Chicago* compl., ¶ 261)), but they materially misrepresent his statement.  Peterburg did not represent that the acquisition had generated "significant cash flow," but instead stated that the "Company's priorities continue to be … generating significant cash flow…." (*Chicago* compl., ¶ 261 (emphasis added).)

[25] The *Haaretz* and *New York Times* articles were published in December 2017, whereas the *Motley Fool* and *SeekingAlpha* pieces were published in April and May of 2019.

statements are actionable, not because of what they did or did not say about the acquisition, but because they were "part and parcel with statements about … Teva's success generally." (Opp. Br., p 38.)  But this simply reinforces Defendants' point.  Plaintiffs allege that Defendants misrepresented and concealed that the alleged "Price-Hike Strategy" and collusion were driving generics profits and revenues, all in the service of inflating Teva's share prices to fund the Actavis acquisition.  But what Plaintiffs have not alleged is that any of these purported misrepresentations or the "truths" they supposedly concealed bore on the impact – positive or negative – of the Actavis acquisition itself.

### 2.      Plaintiffs Fail To Plead Facts Creating A Strong Inference of Scienter

These claims must also be dismissed for failure to adequately plead facts supporting a strong inference of scienter.  (*See* Mov. Br., pp. 31-32.)  In their opposition, Plaintiffs maintain that their allegations are sufficient to show both motive and recklessness.  They are not.

As to motive, Plaintiffs argue that, "[h]aving spent months working to close the biggest transaction in history [sic], Defendants had the motive to convince investors that it had been the right decision."  (Opp. Br., p. 39.)  Setting aside the fact that no such motive is alleged in any of the complaints (which Plaintiffs do not even bother to cite), the Second Circuit has repeatedly held that the desire to "sustain the appearance … of the success of an investment … is insufficient" to plead scienter.  *Teamsters*, 531 F.3d at 196.  Plaintiffs' argument that they have pled strong circumstantial evidence of recklessness fares no better.  Though they claim it would be "absurd to suggest that Defendants did not know about the deteriorating value of the asset" when discussing "the status of the transaction and the integration of Actavis into Teva's existing business" (Opp. Br., p. 40 (internal quotation marks omitted)), Plaintiffs fail to "'specifically identify the reports or statements containing this information,'" as is required to satisfy Rule 9(b) in this Circuit, *Maloney*, 2021 WL 517934, at *4 (quoting *Novak*, 216 F.3d at 309).

3.    **Loss Causation Is Not Pled**

Plaintiffs also fail to rehabilitate their loss causation allegations.  As previously shown (*see* Mov. Br., pp. 32-34), only two corrective disclosures alleged in the complaints even mention Actavis, yet neither revealed any previously-concealed truth about the acquisition itself, as opposed to the failure of the alleged "Price-Hike Strategy" that was used to finance the deal.

In response, Plaintiffs argue that these "two announcements of massive [$16.5 billion] goodwill impairments of the U.S. generics business … plainly disclose the negative impact of the [Actavis] acquisition" because they "informed investors that $16.5 billion of generic assets … had been wiped away."  (Opp. Br., pp. 40-41.)  But this circular argument is unavailing.  The Complaints allege that the "relevant truth" to which the market reacted following Teva's August 3, 2017 disclosure – which first announced that the original goodwill estimates for its U.S. generic business, including Actavis, were no longer accurate – was that Teva now "was facing significant and permanent pricing pressure" (*Harel* compl., ¶ 857) as a result of the company's "vulnerability to competition and pricing pressure in the generics market" (Opp. Br., p. 41).  As such, Teva's further downward revision of its goodwill on February 8, 2018 constituted, at most, the "the materialization of … a [previously] <u>disclosed</u> risk."  *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 209 (D. Conn. 2014) (emphasis in original).

D.    **Plaintiffs' "Goodwill Impairment" Claims Are Not Adequately Pled**

Plaintiffs' insistence that their "goodwill impairment" allegations independently state plausible fraud claims (*see* Opp. Br., pp. 42-44) is without merit.  "It is well-settled in the Second Circuit that goodwill estimates are opinion statements because they 'depend on management's determination of the fair value of the assets acquired and liabilities assumed, which are not matters of objective fact and will vary depending on the particular methodology and assumptions used.'"  *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*,

15-cv-6034, 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-11 (2d Cir. 2011)).  As such, those estimates are inactionable absent concrete facts necessary to support a strong inference "that defendants did not believe in their statements of opinion regarding [Teva's] goodwill at the time they made them."  *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.,* 679 F.3d 64, 68 (2d Cir. 2012).  Plaintiffs have alleged no such facts; rather, they merely speculate that Teva's DCF model effectively applied an aggressive, biased CAGR of 20%." (*See Phoenix* compl. ¶ 551 (cited in Opp. Br., p. 43.))  And Plaintiffs' assertion that "Defendants <u>concealed</u> Teva's use of an aggressive 20% growth rate" (*id.*, p. 43 (emphasis added)) is belied by Plaintiffs' own pleadings, which admit that in 2016 Teva publicly <u>disclosed</u> its use of that figure in its projections (*see Phoenix* compl., ¶ 636 ("[w]e'll grow the EBITDA, the cash flow for operation and free cash flow, by 20% CAGR during 2016 to 2018 time frame, including the effect of the acquisitions").  Finally, Plaintiffs' argument that Teva should have taken impairments earlier (*see* Opp. Br., pp. 43-44) is a brazen attempt to assert an impermissible "fraud-by-hindsight" claim.  *See Finger v. Pearson PLC*, No. 17 CIV. 1422 (RJS), 2019 WL 10632904, at *12 (S.D.N.Y. Sept. 16, 2019) (rejecting claim that an impairment charge should have been taken earlier as non-actionable "fraud by hindsight").[26]

## CONCLUSION

For the reasons set forth above and in their moving brief, Plaintiffs' claims that are (1) asserted against Altman *et al.*, and/or (2) based on the Opioid Scheme, the Bribery Scheme, and the Actavis Acquisition, should be dismissed, in their entirety, with prejudice.

---

[26] Without any concrete factual allegations, Plaintiffs' cases are easily distinguishable.  For example, in *Cannavest*, plaintiffs offered facts which showed that management knew "the value of the [underlying] transaction as originally announced was fraudulently set" including a statement by a confidential witness who said "he/she recognized immediately that a restatement of the Company's financial statements would be needed due to the way goodwill had been booked and as a result of unreliable valuation methods used for same."  *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 245 (S.D.N.Y. 2018).

Dated:   New York, New York
         September 2, 2021

Respectfully submitted,

DEFENDANTS TEVA PHARMACEUTICAL
INDUSTRIES LTD.; TEVA
PHARMACEUTICALS USA, INC.; EREZ
VIGODMAN; EYAL DESHEH; SIGURDUR
OLAFSSON; DEBORAH GRIFFIN; KÅRE
SCHULTZ; MICHAEL MCCLELLAN;
YITZHAK PETERBURG; YAACOV ALTMAN,
DIPANKAR BHATTACHARJEE; and TEVA
PHARMACEUTICAL FINANCE
NETHERLANDS III B.V.

*/s/ Sheron Korpus*
Sheron Korpus (admitted *pro hac vice*)
Cindy Caranella Kelly (admitted *pro hac vice*)
Sarah G. Leivick (admitted *pro hac vice*)
Andrew Schwartz (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
skorpus@kasowitz.com
ckelly@kasowitz.com
sleivick@kasowitz.com
aschwartz@kasowitz.com

*Counsel for Defendants except with regards to*
*Case No. 3:20-cv-588*

Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro (ct30882)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com

emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*