# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

IN RE TEVA SECURITIES LITIGATION

THIS DOCUMENT RELATES TO:

No. 3:17-cv-00558 (SRU)

No. 3:18-cv-1681 (SRU)
No. 3:18-cv-1721 (SRU)
No. 3:18-cv-1956 (SRU)
No. 3:19-cv-175 (SRU)
No. 3:19-cv-192 (SRU)
No. 3:19-cv-449 (SRU)
No. 3:19-cv-513 (SRU)
No. 3:19-cv-543 (SRU)
No. 3:19-cv-603 (SRU)
No. 3:19-cv-655 (SRU)
No. 3:19-cv-656 (SRU)
No. 3:19-cv-657 (SRU)
No. 3:19-cv-923 (SRU)
No. 3:19-cv-1167 (SRU)
No. 3:19-cv-1173 (SRU)
No. 3:20-cv-83 (SRU)
No. 3:20-cv-588 (SRU)
No. 3:20-cv-683 (SRU)
No. 3:20-cv-1630 (SRU)
No. 3:20-cv-1635 (SRU)

September 2, 2021

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS ON PLEADING AND OTHER GROUNDS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................ 2

I.   ALLEGATIONS PLAINTIFFS COPIED FROM THE *ONTARIO* AND  STATE AG ACTIONS ARE IMMATERIAL AS A MATTER OF LAW ...................................... 2

II.   CLAIMS FOR NON-DISCLOSURE OF SUBPOENAS MUST BE DISMISSED .......... 5

III.   ALL CLAIMS BASED ON TRANSACTIONS IN TEVA  SECURITIES AFTER AUGUST 3, 2017 MUST BE DISMISSED ................................................ 5

IV.   ALL CLAIMS BASED ON PRE-OCTOBER 29, 2015 MISREPRESENTATIONS AND OMISSIONS RELATING TO PRICE INCREASES MUST BE DISMISSED ........................... 9

V.   CLAIMS IN SIX DIRECT ACTION COMPLAINTS MUST BE DISMISSED  FOR FAILURE TO PLAUSIBLY ALLEGE STANDING AND LOSS CAUSATION ..................... 11

VI.   CLAIMS IN EIGHT COMPLAINTS ARE BARRED UNDER *MORRISON* ................ 13

VII.   CERTAIN OF PLAINTIFFS' REMAINING FEDERAL LAW  CLAIMS MUST BE DISMISSED IN WHOLE OR IN PART ....................................................... 14

    A.   The *Pacific* Complaint Fails To State Claims As To Teva's 2020 Notes ............ 14

    B.   The *Highfields* Complaint Fails To Adequately Plead Actual Reliance ............. 15

    C.   *Fir Tree*, *Harel*, and *Phoenix* Do Not State Plausible Section 12(a)(2) Claims ... 15

CONCLUSION ....................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AP-Fonden v. Goldman Sachs Grp.*
18-cv-12084, 2021 WL 2659797 (S.D.N.Y. June 6, 2021) ..............................................7, 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................13

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*
390 F. Supp. 3d 432 (S.D.N.Y. 2019) .....................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................13

*Cadle Co. v. Fletcher*,
3:11-cv-00794, 2013 WL 6092515 (D. Conn. Nov .19, 2013) ...............................................16

*In re Curaleaf Holdings Secs. Litig.*,
__ F. Supp. __, 2021 WL 567239 (E.D.N.Y. Feb. 16, 2021) .................................................11

*Debora v. WPP Group*,
91-cv-1775, 1994 WL 177291 (S.D.N.Y. May 5, 1994) .........................................................11

*Dura Pharm. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................................8, 14

*Eng v. Edison Int'l*,
No. 3:15-cv-01478, 2017 WL 1857243 (S.D. Cal. May 5, 2017) ..........................................14

*Grae v. Corrections Corp. of America*,
330 F.R.D. 481 (M.D. Tenn. 2019) ..........................................................................................9

*Greenfield v. U.S. Healthcare*,
146 F.R.D. 118 (E.D. Pa. 1993) ...............................................................................................4

*Inskeep v. City of Farmington*,
14-cv-262, 2014 WL 12789006 (D.N.M. Aug. 11, 2014) .....................................................14

*Island Intellectual Prop. v. Stonecastle Asset Mgmt.*,
463 F. Supp. 3d 490 (S.D.N.Y. 2020) .......................................................................................4

*Labul v. XPO Logistics*,
3:18-cv-2062, 2021 WL 1056828 (D. Conn. Mar. 19, 2021) .................................................15

*Lau v. Opera Ltd.*,
__ F. Supp. 3d __, 2021 WL 964642 (S.D.N.Y. 2021) ......................................................4, 6

*Lee v. Canada Goose US, Inc.*,
20-cv-9809, 2021 WL 2665955 (S.D.N.Y. June 9, 2021) ....................................................13

*In re Merrill Lynch Auction Rate Secs. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010).......................................................................................6

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010)................................................................................................................13

*Offor v. Mercy Med. Ctr.*,
676 F. App'x 51 (2d Cir. 2017) ...............................................................................................3

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*,
432 F. Supp. 3d 131 (D. Conn. Sept. 25, 2019)..............................................................5, 7, 10

*In re Petrobras Secs. Litig.*,
152 F. Supp. 3d 186 (S.D.N.Y. 2016).....................................................................................16

*Speakes v. Taro Pharm. Indus.*
16-cv-08318, 2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018) ..................................................7

*Special Situations Fund III v. Deloitte Touche Tohmatsu*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................................................15

*VNB Realty v. Bank of America*,
11-cv-6805, 2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013) ....................................................3

*White v. H&R Block*,
02-cv-8965, 2004 WL 1698628 (S.D.N.Y. July 28, 2004)......................................................6

Defendants submit this reply memorandum in further support of their motion to dismiss the Direct Action complaints on pleading and other grounds as set forth in their moving brief.

## PRELIMINARY STATEMENT

Plaintiffs spend one-third of their opposition brief arguing that the hundreds of paragraphs they paraphrased or copied from the *Ontario* and State AG complaints constitute well-pled allegations of fact rather than what they really are: allegations of allegations. Plaintiffs would have been better served complying with their non-delegable Rule 11 obligation to independently investigate allegations <u>before</u> filing their complaints than trying to justify their failure to do so after the fact. Their belated effort to demonstrate compliance by means of an attorney's declaration describing efforts undertaken in three of the Direct Actions only serves to highlight that no such efforts were made as to the remaining <u>seventeen</u> complaints.

But even if these allegations could be credited, the Direct Action complaints still fail to plead plausible claims for relief. For example, in their opposition papers (ECF 841, "Opp. Br."), Plaintiffs insist that they have pled viable causes of action with respect to trades in Teva securities before October 29, 2015 (the date of Defendants' first alleged denial of price increases) and after August 3, 2017 (when, per *Ontario*, the purported frauds were constructively disclosed to the market), but their arguments are based on a misapplication of the "law of the case" doctrine. As to the former, the Court in *Ontario* did not consider (or rule on) the efficacy of Defendants' repeated disclosures throughout 2013 and 2014 that Teva was systematically increasing prices each quarter. And Plaintiffs' post-August 3, 2017 claims fail, not because the Court previously ruled that the "full truth" was revealed on that date, but because Plaintiffs do not plead facts showing that any <u>new</u> material information was revealed <u>after</u> that date. As such, subsequent stock price declines were, at most, mere materializations of <u>known</u> risk.

Plaintiffs' various arguments with respect to their other claims are similarly deficient.

For instance, Plaintiffs do not deny that certain federal law claims in eight of the Direct Action complaints are barred under *Morrison* and its progeny, but argue instead that there is "no relief" the Court can provide because Plaintiffs allege other claims with respect to those transactions. Not so: the Court can – and indeed it must – dismiss those facially untenable federal law claims. Certain complaints also fail to adequately plead loss causation in connection with Teva's 2020 Notes, direct purchases of Teva securities as required to state a claim under Section 12(a)(2), or "actual reliance" with the specificity required to state a plausible Section 18 claim.

For these reasons, detailed more fully below and in their moving brief, Defendants' motion to dismiss the Direct Action complaints on pleading and other grounds should be granted.

## ARGUMENT

### I.   ALLEGATIONS PLAINTIFFS COPIED FROM THE *ONTARIO* AND STATE AG ACTIONS ARE IMMATERIAL AS A MATTER OF LAW

As demonstrated in Defendants' moving brief (ECF 784-1, "Mov. Br.," p. 8 nn.4-6), the overwhelming substance of the Direct Action complaints consists of recycled allegations drawn directly – and for the most part copied verbatim – from the pleadings in *Ontario* and the State AG actions.  Absent any indication that Plaintiffs or their counsel took any meaningful steps to independently investigate or corroborate them, these second-hand allegations are immaterial as a matter of law and should either be stricken or disregarded.  (*See id.*, pp. 7-9, 12-13.)  In their opposition papers, Plaintiffs fail to offer any compelling reasons why a different result is warranted.

Plaintiffs' first argument – that Defendants' criticisms are moot because they were not raised by separate motions to strike or to impose sanctions (*see* Opp. Br., pp. 4-5) – is based on a false premise.  That <u>one</u> remedy for non-compliance with Rule 11 is the imposition of sanctions (which Defendants have not sought) does not mean that it is the <u>only</u> remedy.  Rather, courts

2

within and without this Circuit have on numerous occasions held that counsel's failure to comply with the Rule's mandate renders allegations copied from other complaints immaterial and not entitled to a presumption of truth on a motion to dismiss.  (*See* Mov. Br., p. 7-9, 12.)[1]

Plaintiffs' second argument – that "it is entirely proper" for them to base vast tracts of their complaints on summaries of allegations from the State AG action (Opp. Br., p. 7) – fares no better, as it cannot be squared with the Court's rejection of this same pleading tactic in *Ontario*.[2] Whereas the class plaintiffs subsequently alleged additional facts based on their own independent investigation to corroborate the State AG's allegations, it is plain that the vast majority of Plaintiffs here have not done the same.  Instead, they argue that the allegations they copied from the State AG pleadings are corroborated by allegations they copied from the *Ontario* pleadings. (*See* Opp. Br., pp. 8-11.)  But this tactic merely compounds the problem.[3]  Plaintiffs simply fail to offer any cogent argument as to why litigants should be excused from their "'personal, non-delegable responsibility' under Rule 11" provided that they copy from more than one other complaint.  *VNB Realty v. Bank of America*, 11-cv-6805, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013) (quoting *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989)).

Finally, Plaintiffs attempt to demonstrate, post facto, their compliance with Rule 11 by

---

[1] Plaintiffs' contention that these immaterial allegations may only be stricken under Rule 12(f) upon motion by Defendants is similarly meritless, since the Rule provides on its face that a "court may act … on its own" to strike such material from a pleading.  Fed. R. Civ. P. 12(f) (emphasis added); *see also Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) ("district court's [*sua sponte*] decision to strike portions of [plaintiff's] complaint [was] within its authority [under Rule 12(f)]").

[2] *See* ECF 218, at Tr. 25:8-13 ("What is true is that the [State AGs] alleged it, but … just because somebody else alleged in their case and you allege that they alleged it, doesn't mean I assume it's true in this case.").

[3] As shown in Defendants' moving brief (pp. 10-11), Plaintiffs' unexamined reliance on statements attributed to unidentified former employees in the *Ontario* pleadings is particularly problematic given that one of those witnesses has submitted a sworn declaration objecting to the substantive mischaracterization of his statements (*see id.*, p. 12). Plaintiffs' protest that they were not alerted to this witness's objections earlier rings hollow.  Had Plaintiffs undertaken their own investigation (as required by Rule 11) rather than uncritically importing the allegations from *Ontario* into their pleadings, Defendants would have had no cause to procure the witness's declaration to begin with.

submitting a declaration summarizing the investigative efforts of counsel for plaintiffs in three

Direct Actions – *Alaska*, *Franklin*, and *Nordea* – before filing those complaints.  (*See* Opp. Br.,

pp. 10 n.8, 13 (citing ECF 841-1, "Mustokoff Decl.").)  Among other things, counsel claims to

have "contacted Joseph Fonti, counsel for plaintiffs in the *Ontario* action," who "verified that the

information in the *Ontario* [complaint] attributable to [confidential witnesses] was … accurately

presented."  (Mustokoff Decl., ¶ 5.)  This is plainly insufficient to satisfy Rule 11.  *See*, *e.g.*,

*Greenfield v. U.S. Healthcare*, 146 F.R.D. 118, 126-27 (E.D. Pa. 1993) (holding that counsel's

"reliance on the integrity of the pre-filing investigation of [class counsel]" does not satisfy "his

duty of reasonable inquiry" under Rule 11), *aff'd* 22 F.3d 1274, 1280 (3d Cir. 1994).  And

whereas the declaration describes counsel's purported efforts to contact former employees and to

analyze Teva's putative "inflated profits" before filing those three complaints (*see* Mustokoff

Decl., ¶¶ 4, 6), Plaintiffs implicitly concede that no such effort was undertaken by counsel in the

other seventeen Direct Actions before filing their cookie-cutter pleadings.  Thus, even if this

declaration were properly before the Court (and it is not[4]), it would only serve to highlight the

pleading deficiencies in the Direct Action complaints overall.[5]

---

[4] *See*, *e.g.*, *Island Intellectual Prop. v. Stonecastle Asset Mgmt.*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) ("The declaration … submitted by [plaintiff] as an attachment to its opposition brief[] does not cure this deficiency, because it is not properly before the Court on this motion to dismiss.").

[5] While the Mustokoff Declaration claims that plaintiffs in *Alaska*, *Franklin*, and *Nordea* retained an independent expert to examine Teva's generic profits (*see* Mustokoff Decl., ¶ 4), no such claim is made as to the other seventeen Direct Actions.  Plaintiffs' assertion that the *Harel* and *Phoenix* complaints contain "additional allegations" not present in the *Ontario* pleadings (*see* Opp. Br., p. 9 n.7) does not show that their "inflated profit" allegations are based on independent analysis.  Rather, the majority of the Direct Action complaints (including *Harel* and *Phoenix*) simply repeat, in virtually verbatim terms, the "inflated profit analysis" described in *Ontario*.  (*See* Mov. Br., p. 9 n.9.)  But even crediting the highly implausible premise that counsel in all of these actions commissioned independent analyses, the fact that they all yielded exactly the same "inflated profit" numbers using publicly-available data, only confirms that the allegedly concealed information about Teva's prices – and thus its impact on revenues and profits – was available to the market.  If so, then Plaintiffs' fraud claims, which are explicitly premised on a "fraud-on-the-market" theory, must all be dismissed.  *See*, *e.g.*, *Lau v. Opera Ltd.*, __ F. Supp. 3d __, 2021 WL 964642, at *7 (S.D.N.Y. 2021) (motion to dismiss granted; truth-on-the-market defense established because, "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain … a defendant may not be held liable for failing to disclose the information") (internal quotation marks omitted).

## II.   CLAIMS FOR NON-DISCLOSURE OF SUBPOENAS MUST BE DISMISSED

Plaintiffs do not deny that eleven Direct Action complaints assert claims premised on Teva's purported non-disclosure of subpoenas that are identical to those dismissed in *Ontario*, and have thus failed to comply with the Court's consolidation order.  (*See* Mov. Br., pp. 13-14.) Defendants' motion to dismiss these claims stands unopposed and should therefore be granted.

## III.   ALL CLAIMS BASED ON TRANSACTIONS IN TEVA   SECURITIES AFTER AUGUST 3, 2017 MUST BE DISMISSED

In *Ontario*, the Court found that loss causation was adequately alleged as to trades prior to August 3, 2017, when the series of purported corrective disclosures and events culminating with Teva's August 3, 2017 Form 6-K "constructively disclosed [Defendants'] fraud" by putting investors and analysts "on notice that Teva was internally raising its prices, in lockstep with its competitors."  *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 432 F. Supp. 3d 131, 174 (D. Conn. Sept. 25, 2019).  The parties here agree that this ruling applies with equal force, on this motion to dismiss, to Plaintiffs' claims with respect to their alleged purchases of Teva securities as of August 3, 2017.  But in order to adequately plead loss causation <u>after</u> that date, Plaintiffs must plausibly allege that <u>new</u> material information was revealed to the market. Because the Direct Action complaints plead no such facts, their claims based on purchases after that date must be dismissed on multiple grounds.  (*See* Mov. Br., pp. 14-20.)  Plaintiffs' various attempts to defend the sufficiency of their loss causation allegations are all unavailing.

Plaintiffs' first argument – that the *Ontario* ruling does not constitute "law of the case" because it "did not address [and thus did not determine] whether the corrective disclosures after August 3, 2017 were inactionable" (Opp. Br., p. 16) – misconstrues Defendants' position.  The Court's loss causation ruling was explicitly based on its determination that the "relevant truth" about the alleged fraud <u>was</u> revealed to the market as of August 3, 2017 (a conclusion which

Plaintiffs do not deny constitutes law of the case).  But that is where Plaintiffs' free ride ends.  In order to assert viable claims with respect to purchases after that date, they must plead facts showing that the market reacted negatively to the revelation of new material information as opposed to the materialization of an already-disclosed risk.  That the Court's *Ontario* ruling did not preclude the possibility that such facts could be pled obviously has no bearing on whether Plaintiffs have done so here – and they have not.  (*See* Mov. Br., pp. 15-16.)

Second, Plaintiffs argue that Defendants' invocation of the "truth-on-the-market defense is premature [because it] is intensely fact specific and [thus] rarely an appropriate basis for [dismissal at the pleading stage]."  (Opp. Br., p. 14 (internal quotation marks omitted).)  But courts in this Circuit have not hesitated to dismiss fraud claims where, as here, the pleadings themselves show that the allegedly concealed information was publicly known.  *See Lau*, 2021 WL 964642, at *7 (granting motion to dismiss based on truth-on-the-market defense); *In re Merrill Lynch Auction Rate Secs. Litig.*, 704 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (same); *White v. H&R Block*, 02-cv-8965, 2004 WL 1698628, at *13 (S.D.N.Y. July 28, 2004) (same).[6]

Next, Plaintiffs insist that four putative corrective disclosures after August 3, 2017 did "provide[] new material information [to the market] about … Teva's unsustainable price-increase strategy … and its participation in price collusion."  (Opp. Br., p. 18.)  They are wrong.

For instance, Plaintiffs contend that a December 9, 2018 Washington Post article

---

[6] Plaintiffs contend that Defendants' "truth-on-the-market claim rests solely on their assertion that four of the complaints (*Chicago*, *Harel*, *Clal*, and *INKA*) somehow concede that the truth was fully disclosed as of August 3, 2017." (Opp. Br., pp. 16-17.)  That is incorrect.  As Plaintiffs well know, substantively similar if not identical allegations are repeated throughout the other Direct Action pleadings.  (*Compare Chicago* compl., ¶ 337 (August 3, 2017 disclosure "reveal[ed] the true value of [Teva's] combined U.S. generics business") *with, e.g., Alaska* compl., ¶ 325 (same), *Oregon* compl., ¶ 337 (same); *and compare Harel* compl., ¶ 857 (August 3, 2017 disclosure "revealed that Teva[] was facing significant and permanent pricing pressure") *with, e.g., Franklin* compl., ¶ 332 (same), *Phoenix* compl., ¶ 879 (same).)  Moreover, whether Plaintiffs have adequately alleged loss causation as to transactions after August 3, 2017 does not turn on whether their complaints "concede" the full truth was known by then, but on whether they plead particularized facts showing that new information entered the market after that date.

regarding the expansion of the State AGs' investigation, and the filing of the State AGs' amended complaint on May 10, 2019, "unveiled a much fuller account" of Teva's alleged collusion with competitors.  (*Id.*, p. 19.)  But as previously shown (*see* Mov. Br., p. 16), the progression of the State AGs' lawsuit constituted, at most, the materialization of an already-disclosed risk.  Indeed, courts in the Second Circuit have dismissed fraud claims for failure to plead loss causation on analogous facts.  For example, in *AP-Fonden v. Goldman Sachs Grp.*, plaintiffs sought to plead loss causation based on various press reports revealing, *inter alia*: that the Federal Reserve and Singaporean prosecutors were "ramping up" and "expanding" their investigations into Goldman's involvement with a Malaysian sovereign wealth fund, and that Malaysia "intended to seek $7.5 billion in reparations from Goldman."  18-cv-12084, 2021 WL 2659797, at *17-18 (S.D.N.Y. June 6, 2021).  The court concluded that the disclosures were not actionable, however, in light of prior reports about the investigations and Malaysia's stated intention to maximize recovery from Goldman.  *Id.*  Likewise here, the purported "corrective disclosures" concerning developments in the State AGs' lawsuit merely "constitute[d] mere materialization of known risk."  *Id.* at *17.[7]

Plaintiffs further argue that the other two disclosures – announcements on November 11, 2017 and February 8, 2018 concerning declining revenues and a goodwill impairment – are actionable in light of the Court's ruling in *Ontario* that "similar disclosures [prior to August 3,

---

[7] The sole decision Plaintiffs cite (*see* Opp. Br., p. 19) does not help their cause.  In that case, *Speakes v. Taro Pharm. Indus.*, Taro argued that its alleged involvement in a price-fixing conspiracy was already known to the market based on reports that Congress, the DOJ, and the State of Connecticut were investigating generic drug price increases.  16-cv-08318, 2018 WL 4572987, at *2, 11 (S.D.N.Y. Sept. 24, 2018).  The court disagreed, finding that the complaint plausibly alleged that the market did not become aware of the extent of Taro's specific involvement in the alleged conspiracy until Taro's disclosure on September 9, 2016 that it had received subpoenas from the DOJ and the publication on November 3, 2016 of a Bloomberg article reporting the possible filing of criminal charges by year's end.  *See id.*, at *10-11.  Here, by contrast, the Court found in *Ontario* that the market became aware of Teva's alleged fraud by August 3, 2017 based on, *inter alia*, Teva's August 2, 2016 disclosure of the DOJ subpoenas, the November 3, 2016 Bloomberg article, the filing of the State AGs' initial complaint against Teva on December 15, 2016, and the release of Teva's Form 6-K on August 3, 2017.  *See Ontario*, 432 F. Supp. 3d at 174.

2017] satisfied loss causation." (Opp. Br., p. 20.)  This argument, too, is wide of the mark.  As

previously explained (*see* Mov. Br., pp. 15-16), it is this very similarity that undercuts Plaintiffs'

attempt to plead loss causation with respect to these later disclosures.  As of August 3, 2017, the

market knew that Teva's prior goodwill estimates were no longer reliable and that its revenues

and profits would be negatively impacted by "significant and permanent pricing pressure" going

forward (*Harel* compl., ¶ 857) – revelations which, Plaintiffs allege, caused Teva's stock prices

to plummet by up to 40% (*see Franklin* compl., ¶ 336) and prompted the ratings agencies to

downgrade its debt to "one step above junk" (*id.*, ¶ 332).  And as Plaintiffs themselves concede,

in *Ontario* it was "the revelation of [these] 'disappointing financial numbers' [among other

things] that 'constructively disclosed the concealed frauds.'" (Opp. Br., p. 20 (quoting *Ontario*,

532 F. Supp. 3d at 174).)  With the supposed fraud disclosed, Teva's "substantially similar"

subsequent disclosures about its disappointing revenue numbers and revised goodwill estimates

did not reveal new information to the market and thus "constitute[d] mere materialization of

known risk." *AP-Fonden*, 2021 WL 2659797, at *17.

Plaintiffs nevertheless urge the Court to infer that these four post-August 3, 2017

disclosures must have revealed new information based on the "significant decline in Teva's stock

price that immediately followed each disclosure." (Opp. Br., p. 18.)  But underlying this

argument is a false premise:  that prices only decline in reaction to the disclosure of new negative

information.  To the contrary, securities prices are subject to a "tangle of factors," which "may

reflect … the [alleged] misrepresentation," but may also reflect "changed investor expectations"

based on information already in the market. *Dura Pharm. v. Broudo*, 544 U.S. 336, 343 (2005).

Thus, prices can be expected to decline not only when the "relevant truth" about a concealed risk

is first disclosed, but also when that no-longer-concealed risk later materializes.  The former

price decline would support an inference of loss causation, but the latter would not.[8]

Finally, Plaintiffs contend that Defendants' "stream of denials" regarding the State AGs' action and DOJ investigation "vitiate[s] their truth-on-the-market defense" because each denial effectively counteracted all preceding corrective disclosures.  (Opp. Br., p. 20.)  This argument cannot bear even minimal scrutiny.  As previously noted, the Court found in *Ontario* that the disclosures and events leading up to, and culminating in, Teva's August 3, 2017 Form 6-K constructively disclosed Teva's alleged frauds.  Yet in that same Form 6-K, Teva "denie[d] having engaged in any conduct that would give rise to liability with respect to [the DOJ investigation and State AGs' action]."  (*Franklin* compl., ¶ 249.)  What is more, the December 9, 2018 news article that Plaintiffs now insist <u>was</u> an effective corrective disclosure <u>likewise</u> cited "Teva's continued denial of engaging in any anticompetitive conduct."  (*Id.*, ¶ 343.)  Plaintiffs cannot have it both ways, and none of the cases they cite (*see* Opp. Br., p. 21) supports their claim that the same disclosure can both reveal (for purposes of pleading loss causation) and conceal (for purposes of avoiding the truth-on-the-market defense) the same "relevant truth."

## IV.    ALL CLAIMS BASED ON PRE-OCTOBER 29, 2015 MISREPRESENTATIONS AND OMISSIONS RELATING TO PRICE INCREASES MUST BE DISMISSED

As previously shown (*see* Mov. Br., pp. 21-23), Plaintiffs fail to plead plausible claims based on the non-disclosure of price increases before October 29, 2015 because Defendants <u>did</u> disclose that Teva was systematically increasing its generic drug prices on <u>numerous</u> occasions prior to that date.  Plaintiffs' attempts to rehabilitate these claims are unavailing.

Plaintiffs first argue that these claims are adequately pled because, "in *Ontario*, the Court

---

[8] *Cf. Grae v. Corrections Corp. of America*, 330 F.R.D. 481, 496-97 (M.D. Tenn. 2019) ("[When] a previously concealed risk is disclosed[,] … the price adjustment attributable to the fraud … occur[s] when the risk is revealed…. The price of the stock might still go down, again, when the risk materializes, but … that price decrease would not be attributable to the fraud.").  *See also, e.g., AP-Fonden*, 2021 WL 2659797, at *17 (7.5% drop in stock price following putative corrective disclosure constituted the materialization of previously-disclosed risk).

sustained numerous statements dating back to February 6, 2014" on the basis that such statements, which concerned the factors influencing Teva's financial results, were misleading absent disclosure of the putative "price-hike strategy."  (Opp. Br., pp. 21-22 (internal quotation marks omitted).)  But this argument – essentially a back-door attempt to invoke the law of the case doctrine – is misguided.  Tellingly, Plaintiffs do not claim that the Court considered the effect of Teva's many pre-October 29, 2015 disclosures regarding its systematic strategy of raising generic drug prices every quarter.[9]  As Plaintiffs themselves correctly (if inaptly) observed elsewhere in their brief, "where an issue previously has not been explicitly decided, 'the law of the case doctrine does not apply.'"  (Opp. Br., p. 16 (quoting *Cadle Co. v. Fletcher*, 3:11-cv-00794, 2013 WL 6092515, at *3 n.4 (D. Conn. Nov. 19, 2013) (Underhill, J.)).)

Plaintiffs' next argument – that Defendants' numerous affirmative disclosures regarding price increases are irrelevant because Plaintiffs claims "are not limited to statements through which Defendants affirmatively 'denied' that Teva was increasing … prices" (Opp. Br., p. 22) – is also without merit.  Like the *Ontario* pleadings on which they are patterned, the Direct Action complaints allege multiple "types" or "categories" of actionable misrepresentations and omissions,[10] including those in which Defendants "flatly and falsely <u>denied that Teva had engaged in price increases</u> [and instead] falsely claimed that Teva <u>only</u> raised prices on a select few generic drugs <u>due to market shortages</u>."  (*Nordea* compl., ¶ 141 (emphasis added); *see also*, *e.g.*, *Chicago* compl., ¶ 132 (same); *INKA* compl., ¶ 141 (same); *Stichting* compl., ¶ 142 (same).)  Plaintiffs' assertion to the contrary notwithstanding, Defendants' motion does <u>not</u> "seek[]

---

[9] Unlike the *Ontario* pleading, which did not contain these earlier disclosures, certain of the Direct Action complaints quoted at least one such disclosure.  (*See Harel* compl., ¶ 754; *Phoenix* compl., ¶¶ 608, 776.)

[10] *See*, *e.g.*, *Ontario*, 432 F. Supp. 3d at 153 ("plaintiffs assert that the defendants 'made four types of false and misleading statements'").

dismissal of <u>all</u> [categories of] pre-October 29, 2015 alleged misrepresentations."  (Opp. Br., p. 22 (emphasis in original).)  Rather, Defendants deliberately tailored this branch of their motion to claims based on allegations that, prior to this date, they "denied, concealed, or otherwise misrepresented that Teva was increasing generic prices."  (Mov. Br., p. 23.)

Finally, Plaintiffs argue that "Defendants had a duty to disclose the Company's price increase strategy" because their pre-October 29, 2015 statements "put into play" the source of Teva's revenues and profits.  (Opp. Br., p. 23.)  Absent such disclosure, Plaintiffs continue, Defendants' affirmative statements "had the effect of concealing [that price increases were an important driver] of Teva's reported financial results."  (*Id.*)  But this argument only reinforces Defendants' point.  At bottom, Plaintiffs contend that all statements concerning revenues and profits were necessarily misleading because the market was not aware that Teva was actively seeking to increase prices on its generic drugs whenever possible.  But as previously shown (*see* Mov. Br., pp. 22-23), Teva <u>repeatedly</u> disclosed that strategy in public statements throughout 2013 and 2014.  Accordingly, to the extent Plaintiffs' fraud claims with respect to trades prior to October 29, 2015 are premised on the concealment of information which was indisputably disclosed, those claims fail as a matter of law.  *See*, *e.g.*, *In re Curaleaf Holdings Secs. Litig.*, __ F. Supp. __, 2021 WL 567239, at *6 (E.D.N.Y. Feb. 16, 2021) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.") (internal quotation marks omitted); *Debora v. WPP Group*, 91-cv-1775, 1994 WL 177291, at *5 (S.D.N.Y. May 5, 1994) (same).

## V.     CLAIMS IN SIX DIRECT ACTION COMPLAINTS MUST BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE STANDING AND LOSS CAUSATION

Because the complaints in six Direct Actions – *Clal*, *Fir Tree*, *Migdal Ins.*, *Migdal Mut.*, *Mivtachim*, and *Psagot* – do not allege that Plaintiffs actually purchased any Teva securities

during the relevant period, their claims must be dismissed for lack of standing and for failure to adequately plead loss causation.  (*See* Mov. Br., pp. 23-26.)  In their opposition, Plaintiffs accuse Defendants of "cherry-pick[ing] a few instances where the Complaints allege that Plaintiffs 'purchased and/or sold' or 'acquired, held, and/or sold'" securities, and maintain that notwithstanding these equivocal allegations, their pleadings are sufficient to plead viable claims. (Opp. Br., pp. 23-26.)  Plaintiffs are wrong on both counts.

First, it is Plaintiffs who are cherry-picking, not Defendants.  For example, they point to a paragraph under the "Loss Causation" heading alleging in general terms that Plaintiffs acquired securities at artificially inflated prices and were harmed thereby (*see* Opp. Br., p. 24), yet they fail to explain why boilerplate allegations such as this – copied virtually verbatim from the *Ontario* pleadings[11] – should take precedence over what these complaints allege <u>specifically</u> with respect to these <u>particular</u> Plaintiffs.  Obviously, they should not.  Unlike every other allegation in these highly derivative pleadings, the paragraphs describing Plaintiffs are the <u>only</u> allegations that cannot have been copied but were instead drafted deliberately.[12]

Plaintiffs also try to deflect attention away from their plaintiff-specific allegations with a string citation to "allegations appear[ing] under the individual Counts in the Complaints" (Opp. Br., p. 24),[13] but that effort too is unavailing.  Even under the lenient Rule 8 pleading standard,

---

[11] *Compare Clal* compl., ¶ 516 ("In addition to the allegations herein, the Defendants' fraudulent conduct directly and proximately caused Plaintiffs to suffer substantial losses as a result of purchasing Teva Securities at artificially inflated prices during the Relevant Period.") *with Ontario SAC* (ECF 310), ¶ 338 ("In addition to the allegations herein, the 34 Act Defendants' fraudulent conduct directly and proximately caused the Class to suffer substantial losses as a result of purchasing Teva Securities at artificially inflated prices during the Class Period.").

[12] This can be seen by comparing the *Fir Tree* and *Boeing* complaints, which were drafted by the same counsel. Though their substantive allegations are largely identical, the plaintiff-specific allegations differ in one material respect: whereas the *Boeing* complaint alleges that plaintiffs "purchased Teva securities during the Relevant Period" (*Boeing* compl., ¶ 25), the *Fir Tree* complaint alleges that plaintiffs "acquired, held, and/or sold certain Teva Securities during the Relevant Period" (*Fir Tree* compl., ¶ 24).

[13] *See, e.g., Clal* compl., ¶ 584 ("During the Relevant Period, in violation of Section 10(b) of the Exchange Act and Rule 10b-5, Defendants carried out a plan, scheme, and course of conduct using the instrumentalities of interstate commerce and the mails, which was intended to and, throughout the Relevant Period did: (a) artificially inflate and

allegations such as these that merely offer "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[14]

Plaintiffs' second argument – that their claims "cannot be dismissed because Defendants merely assert it is 'possible' that Plaintiffs did not hold any of their securities through a corrective disclosure" (Opp. Br., p. 25) – must likewise be rejected. "At the pleading stage, it is Plaintiff[s'] burden to state a plausible claim for relief, not Defendant[s'] burden to refute one," *Lee v. Canada Goose US, Inc.*, 20-cv-9809, 2021 WL 2665955, at *6 n.5 (S.D.N.Y. June 9, 2021), and here Plaintiffs' equivocal "purchased and/or sold" allegations are "merely consistent with [Defendants'] liability," and thus "stop[] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## VI.   CLAIMS IN EIGHT COMPLAINTS ARE BARRED UNDER *MORRISON*

In their opposition brief, Plaintiffs do not dispute – and therefore concede – that U.S. federal law claims asserted in the *Clal*, *Harel*, *INKA*, *Migdal Ins.*, *Migdal Mut.*, *Mivtachim*, *Phoenix*, and *Psagot* complaints with respect to purported transactions in Teva's Preferred Shares, Ordinary Shares, and Notes are all barred under *Morrison v. Nat'l Australia Bank*, 561 U.S. 247 (2010). (*See* Mov. Br., pp. 26-29.) Plaintiffs' assertion that Defendants have "not

---

maintain the market price of Teva common stock; (b) deceive the investing public, including Plaintiffs, as alleged herein; (c) cause Plaintiffs to purchase Teva common stock at inflated prices in reliance on Defendants' false and misleading statements made knowingly or with deliberate recklessness by Defendants; and (d) cause them losses when the truth was revealed."); *Fir Tree* compl., ¶ 431 ("Plaintiffs suffered damages in connection with the purchase or acquisition of the securities in, pursuant to, and traceable to the ADS/Preferred Offerings.").

[14] Plaintiffs contend that their equivocal allegations are sufficient because they are not required to plead details about their transactions (Opp. Br., p. 24), but the case they cite does not help them. That case, *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, involved an alleged market manipulation scheme by a group of securities exchanges that distorted prices "so pervasive[ly] and routine[ly] that anyone who traded in stocks listed on those exchanges almost certainly would have done so at a distorted price." 390 F. Supp. 3d 432, 444 (S.D.N.Y. 2019). The court reasoned that plaintiffs could not be expected to "allege a specific trade at a specific [distorted] price" because, given the nature of defendants' market manipulation, plaintiffs "could not be reasonably expected to know [those details] at the pleading stage." *Id.* at 445. That is a far different situation than the one presented here, since Plaintiffs are (or should be) well aware of when and at what prices they "purchased and/or sold" Teva securities.

identified what relief the Court could provide" as to these claims (Opp. Br., p. 26) is absurd. The Court can dismiss these claims – indeed, under *Morrison* and its progeny, it must do so.[15]

## VII. CERTAIN OF PLAINTIFFS' REMAINING FEDERAL LAW CLAIMS MUST BE DISMISSED IN WHOLE OR IN PART

### A.   The *Pacific* Complaint Fails To State Claims As To Teva's 2020 Notes

As shown in Defendants' moving brief (pp. 30-32), the *Pacific* complaint's failure to allege that the price of Teva's 2020 Notes fell following a corrective disclosures mandates dismissal of their Exchange Act claims with respect to those securities. Plaintiffs attempt to play off this omission as inconsequential, but without success. They point to paragraphs alleging that they purchased securities at "artificially inflated prices" and were "damaged thereby" (*see* Opp. Br., p. 27),[16] but such allegations are insufficient as a matter of law.[17] And Plaintiffs' contention that the complaint <u>does</u> allege that "the price of those notes fell in response to revelations of the fraud" (Opp. Br., p. 27) is easily refuted, since none of the paragraphs cited mentions the 2020 Notes. (*See, e.g., Pacific* compl., ¶ 363 (alleging that "the price of Teva's ADS[,] 2021 Notes, 2026 Notes, and 2046 Notes fell").)[18]

---

[15] Plaintiffs' contention that "there would be no prejudice to Defendants in permitting these claims to go forward" (Opp. Br., p. 27) is false, since <u>any</u> amount of time or money required to defend these claims (which Plaintiffs themselves concede are barred) would be patently prejudicial. *See Inskeep v. City of Farmington*, 14-cv-262, 2014 WL 12789006, at *7 (D.N.M. Aug. 11, 2014) ("considerable time and effort would have been saved on the part of defense counsel having to defend these meritless claims, had Plaintiff's counsel been more meticulous in drafting the complaint [and] possessed a better grasp of the legal theories before asserting these claims").

[16] *See, e.g., Pacific* compl., ¶¶ 37 ("These purchases were made at prices that were artificially inflated by … violations of the Exchange Act …, and Plaintiffs suffered damages thereby as a result of those violations"), 440 ("Plaintiffs have suffered damages in that … it [sic] paid artificially inflated prices for Teva securities").

[17] *See Dura*, 544 U.S. at 347 (allegations that "plaintiffs paid artificially inflated prices for Dura's securities and suffered damages [thereby]" do not adequately plead loss causation) (internal quotation marks omitted).

[18] Although Plaintiffs also cite other paragraphs alleging in general terms that "the price of Teva's securities fell" (*Pacific* compl., ¶ 126; *see also, e.g. id.* ¶ 131 ("the price of Teva's securities dropped")), they cite no authority suggesting that such vague and conclusory allegations satisfy even bare notice pleading under Rule 8. *See Eng v. Edison Int'l*, No. 3:15-cv-01478, 2017 WL 1857243, at *5 n.10 (S.D. Cal. May 5, 2017) (loss causation not adequately pled where complaint failed to "plausibly allege" a statistically significant drop in share price, rejecting plaintiffs' argument that "how much the stock price dropped because of a disclosure is irrelevant"). Plaintiffs cite authority for the proposition that loss causation is not subject to a heightened plead standard (*see* Opp. Br., p. 27), but in that case the Court found plaintiffs' comparatively detailed allegations <u>insufficient</u> to plead loss causation

B.     **The *Highfields* Complaint Fails To Adequately Plead Actual Reliance**

Courts in this Circuit have repeatedly held that allegations substantively identical to those

in the *Highfields* complaint fail to plead the "actual reliance" element of a Section 18 claim with

the specificity required by Rule 9(b).  (*See* Mov. Br., pp. 30-32 (collecting authority).)

Plaintiffs' attempt to distinguish this precedent is unavailing.  For example, they argue that the

actual reliance allegations in *Special Situations Fund III v. Deloitte Touche Tohmatsu*, 33 F.

Supp. 3d 401 (S.D.N.Y. 2014), were found deficient because they "did not identify time-frames

during which Plaintiffs purchased the at-issue securities," whereas the *Highfields* complaint

specifically "identified the period over which they purchased securities."  (Opp. Br., p. 29

(internal quotation marks omitted).)  This argument is based on an egregious mischaracterization

of the pleadings in both cases, and Plaintiffs know it (the same counsel, having drafted the

complaints in each case).  In reality, the allegations in *Highfields* are <u>far less</u> specific than those

in *Special Situations*,[19] which the court nevertheless found too conclusory to adequately plead

actual reliance.  *See Special Situations*, 33 F. Supp. 3d at 444 (plaintiffs' failure to tie specific

transactions to their alleged reliance is "fatal" to their Section 18 claim).[20]

C.     **_Fir Tree_, _Harel_, and _Phoenix_ Do Not State Plausible Section 12(a)(2) Claims**

As demonstrated in Defendants' moving brief (p. 32), the *Fir Tree*, *Harel*, and *Phoenix*

plaintiffs' vague allegations that they acquired Teva securities "pursuant and/or traceable to" a

---

despite the fact that they alleged and quantified drops in share price following corrective disclosures.  *See Labul v. XPO Logistics*, 3:18-cv-2062, 2021 WL 1056828, at *14 (D. Conn. Mar. 19, 2021) (Underhill, J.).

[19] *Compare* 2013 WL 1739496 (S.D.N.Y. Mar. 15, 2013) (*Special Situations* compl.), ¶ 240 ("in making purchases of Company stock <u>between March 30, 2010 and March 16, 2011</u>, … Plaintiffs actually read, and had direct eyeball reliance on, the following statements in [four SEC filings]") (emphasis added) *with Highfields* compl., ¶ 431 ("In purchasing Teva securities, Plaintiffs' investment team actually and justifiably read, and had direct eyeball reliance on [five years of annual SEC filings]").

[20] Plaintiffs argue that Defendants' other authority is distinguishable for the reasons set forth in their accompanying brief in opposition to Defendants' motion to dismiss Plaintiffs' State Law Claims.  (*See* Opp. Br., p. 29 n.23.)  Those arguments are meritless, as shown in Defendants' reply brief on that motion (*see* p. 8 n.7).

public offering fail as a matter of law to state a plausible claim for relief under Section 12(a)(2) of the Securities Act.  Unable to distinguish Defendants' authority, Plaintiffs instead assert that the Court "has already denied relevant portions of Defendants' MTD for the *Ontario* AC, which used similar language in its Section 12(a)(2) claims."  (Opp. Br., p. 30.)  Plaintiffs' indirect attempt to invoke the law of the case doctrine fails, since the Court "did not expressly [rule on]" the sufficiency of those allegations in the class complaint.  *Cadle*, 2013 WL 6092515, at *3 n.4.

Plaintiffs' other arguments are similarly lacking in merit.  They note that the complaints assert "the date, time, and other information specific to each relevant offering," including the "identity of the issuer" and the "particular prospectuses that contained the false and misleading statement(s)."  (Opp. Br., p. 31.)  This is true as far as it goes, but irrelevant to the issue at hand.  The question is not whether these three complaints have identified the issuers and prospectuses: <u>all</u> of the Direct Action complaints have done so, even those not asserting Section 12(a)(2) claims.[21]  The question, rather, is whether the *Fir Tree*, *Harel*, and *Phoenix* complaints have "alleged specific details of their … purchases [or] attached to their Complaint[s] transaction data sufficient to support a plausible inference that they purchased [securities] in an initial offering."  *In re Petrobras Secs. Litig.*, 152 F. Supp. 3d 186, 194 (S.D.N.Y. 2016).  Because they have not, their Section 12(a)(2) claims must be dismissed.[22]

## CONCLUSION

For the reasons set forth above and in their moving brief, Defendants respectfully submit that their Motion to Dismiss on Pleading and Other Grounds be granted.  (*See* Mov. Br., p. 33.)

---

[21] *Compare*, *e.g.*, *Fir Tree* compl., ¶¶ 235-39, 278-80 *with*, *e.g.*, *Boeing* compl., ¶¶ 216-20, 240-42.

[22] Plaintiffs' attempt to remedy these omissions by pointing to other conclusory allegations which purportedly clarify "that Plaintiffs were direct purchasers" (Opp. Br., p. 30) is to no avail.  *See In re Petrobras*, 152 F. Supp. 3d at 194 ("It is true that some of [plaintiffs'] complaints do include conclusory allegations that they purchased in initial offerings.  But such barebones allegations are insufficient to support [Section 12(a)(2)] claims.").

Dated:   New York, New York
         September 2, 2021

Respectfully submitted,

DEFENDANTS TEVA PHARMACEUTICAL
INDUSTRIES LTD.; TEVA
PHARMACEUTICALS USA, INC.; EREZ
VIGODMAN; EYAL DESHEH; SIGURDUR
OLAFSSON; DEBORAH GRIFFIN; KÅRE
SCHULTZ; MICHAEL MCCLELLAN;
YITZHAK PETERBURG; YAACOV ALTMAN,
DIPANKAR BHATTACHARJEE; and TEVA
PHARMACEUTICAL FINANCE
NETHERLANDS III B.V.

*/s/ Sheron Korpus*
Sheron Korpus (admitted *pro hac vice*)
Cindy Caranella Kelly (admitted *pro hac vice*)
Sarah G. Leivick (admitted *pro hac vice*)
Andrew Schwartz (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
skorpus@kasowitz.com
ckelly@kasowitz.com
sleivick@kasowitz.com
aschwartz@kasowitz.com

*Counsel for Defendants except with regards to
Case No. 3:20-cv-588*

Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro (ct30882)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com

17

emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*