# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-00558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:18-cv-1681 (SRU) |
| | No. 3:18-cv-1721 (SRU) |
| | No. 3:18-cv-1956 (SRU) |
| | No. 3:19-cv-175 (SRU) |
| | No. 3:19-cv-192 (SRU) |
| | No. 3:19-cv-449 (SRU) |
| | No. 3:19-cv-513 (SRU) |
| | No. 3:19-cv-543 (SRU) |
| | No. 3:19-cv-603 (SRU) |
| | No. 3:19-cv-655 (SRU) |
| | No. 3:19-cv-656 (SRU) |
| | No. 3:19-cv-657 (SRU) |
| | No. 3:19-cv-923 (SRU) |
| | No. 3:19-cv-1167 (SRU) |
| | No. 3:19-cv-1173 (SRU) |
| | No. 3:20-cv-83 (SRU) |
| | No. 3:20-cv-588 (SRU) |
| | No. 3:20-cv-683 (SRU) |
| | No. 3:20-cv-1630 (SRU) |
| | No. 3:20-cv-1635 (SRU) |
| | September 2, 2021 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS STATE AND COMMON LAW CLAIMS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.      PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY SLUSA ............................... 1

II.     PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLEAD ACTUAL
RELIANCE WITH THE SPECIFICITY REQUIRED BY RULE 9(B) .......................... 6

        A.     There Is No Reliance Presumption For Any Of Plaintiffs' State Law
Claims ....................................................................................................... 6

        B.     Plaintiffs Fail To Plead Actual Reliance With The Requisite Specificity ............. 7

III.    THE PSA CLAIMS ASSERTED IN THE *HAREL* AND POMERANTZ
ACTIONS ARE TIME-BARRED ........................................................................ 9

CONCLUSION .................................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorosa v. Ernst & Young*,
    672 F. Supp. 2d 493 (S.D.N.Y. 2009)........................................................4

*Anwar v. Fairfield Greenwich Ltd.*,
    118 F. Supp. 3d 591 (S.D.N.Y. 2015)........................................................5

*In re AOL Time Warner Secs. Litig.*,
    503 F. Supp. 2d 666 (S.D.N.Y. 2007)........................................................4

*Axar Master Fund v. Bedford*,
    806 F. App'x 35 (2d Cir. 2020) ...............................................................6

*Backus v. Conn. Comm. Bank*,
    789 F. Supp. 2d 292 (D. Conn. 2011)....................................................5, 6

*In re Bear Stearns Secs., Deriv. & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014)....................................................8, 9

*Cyan v. Beaver Cty. Emps.' Ret. Fund*,
    138 S. Ct. 1061 (2018).............................................................................4

*In re DVI Secs. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008)................................................................7

*Fulton Fin. Adv. Nat'l Ass'n v. NatCity Invs.*,
    09-cv-4855, 2013 WL 5635966 (E.D. Pa. Oct. 15, 2013) ........................7

*Griffin v. Oceanic Contractors*,
    458 U.S. 564 (1982).................................................................................4

*Int'l Fund Mgmt. v. Citigroup*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011)........................................................8

*Maverick Fund v. Comverse Tech.*,
    801 F. Supp. 2d 41 (E.D.N.Y. 2011) ........................................................8

*Merrill Lynch, Pierce, Fenner & Smith v. Dabit*,
    547 U.S. 1 (2006).....................................................................................3

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*,
    3:17-cv-558, 2020 WL 1181366 (D. Conn. Mar. 10, 2020)......................6

*Secs. Inv. Prot. Corp. v. BDO Seidman*,
    222 F.3d 63 (2d Cir. 2000)........................................................................................6

*Transit Rail v Marsala*,
    05-cv-0564, 2007 WL 2089273 (W.D.N.Y. July 20, 2007) ......................................8

*WM High Yield Fund v. O'Hanlon*,
    04-cv-3423, 2013 WL 3230667 (E.D. Pa. June 27, 2013)........................................6

**Statutes**

15 U.S.C. § 78bb...............................................................................................................2, 5

**Other Authorities**

S. Rep. No. 105-182 (1998) .................................................................................................5

Defendants in the above-captioned matter respectfully submit this reply memorandum in further support of their motion to dismiss the State Law Claims.

## PRELIMINARY STATEMENT

Plaintiffs do not – because they cannot – dispute that each of the statutory requirements for SLUSA preclusion is satisfied with regard to their State Law Claims, yet they insist that their claims should nevertheless be exempt because they were filed as "individual actions" rather than as "class actions," and because Congress never intended SLUSA to apply in situations like this one.  To the contrary, Plaintiffs' argument is irreconcilable with the statute's language and history, and has been consistently rejected by courts in this Circuit (which authority Plaintiffs fail to meaningfully address but, in a footnote, merely urge the Court to disregard).

Plaintiffs' other arguments are just as meritless.  Their "actual reliance" allegations are substantively indistinguishable from those which courts in this Circuit have repeatedly found deficient, and the fact that the *Phoenix* plaintiffs were able to timely assert their PSA claims refutes Plaintiffs' argument that the *Harel* and Pomerantz Actions (which contain materially identical allegations to those in *Phoenix*) could not have likewise done so.

Plaintiffs' State Law Claims must therefore be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY SLUSA

As detailed in Defendants' moving brief (ECF 787-1, "Mov. Br.," pp. 3-7), the State Law Claims clearly fall within SLUSA's scope and are therefore precluded.  Notably, in their opposition brief (ECF 843, "Opp. Br."), Defendants do not – because they cannot – dispute that the three statutory criteria for preclusion are satisfied here.  They do not deny that the State Law Complaints assert claims "based upon [state] statutory or common law," or that these claims are premised upon "a misrepresentation or omission of a material fact in connection with the

purchase … of a covered security."  15 U.S.C. § 78bb(f)(1)(A).  Nor do Plaintiffs deny that the State Law Complaints are part of a "group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  *Id.* at § 78bb(f)(5)(B)(ii).

Yet Plaintiffs argue that their State Law Claims are nevertheless exempt because, whereas SLUSA was only intended to preclude "class actions" brought in state court for the purpose of avoiding federal pleading standards, it should not apply here because Plaintiffs asserted their claims as "individual actions" in federal court.  (*See* Opp. Br., pp. 7 ("[Plaintiffs] have not attempted to evade federal law or the federal courts….  And because [the State Law Complaints] are not class actions, they are not covered by SLUSA.").  Plaintiffs further argue that it would be "unfair" to apply SLUSA in a manner that would "strip[] a party of its ability to opt-out of a class action and pursue its own state law claims, simply because a class action is pending in the same federal court."  (*Id.*, pp. 11-12.)  These arguments are wholly without merit.

First, SLUSA is manifestly <u>not</u> limited to suits commenced as "class actions."  By its plain terms, the statute applies to "<u>covered</u> class actions," which are defined not just in terms of single lawsuits styled as class actions, *see* 15 U.S.C. § 78bb(f)(5)(B)(i) (covering actions brought "on behalf of … prospective class members"), but to "any group of [individual] lawsuits" satisfying the statutory criteria, *id.* at § 78bb(f)(5)(B)(ii).  Moreover, SLUSA's preclusive effect is <u>not</u> restricted to actions commenced in state court; rather, the statute explicitly provides that "[n]o covered class action … may be maintained in any State <u>or Federal</u> court," *id.* at § 78bb(f)(1) (emphasis added), without distinction to where they were brought.

In a footnote, Plaintiffs "acknowledge" the copious Second Circuit authority applying SLUSA to state law claims brought by litigants, like Plaintiffs, who opted out of a federal class action, yet urge the Court to disregard these cases as being "wrongly decided to the extent … that SLUSA's legislative history makes clear that [it] was not intended to distinguish the claims of opt-out plaintiffs."  (Opp. Br., p. 11 n.10.)  They fail, however, to provide a shred of authority that would justify abandoning this precedent and recognizing an implied exemption for opt-outs.  In fact, the Supreme Court has strongly cautioned trial courts against doing just this.  *See Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. at 87-88 ("[T]he tailored [explicit] exceptions to SLUSA's pre-emptive command demonstrate that Congress did not by any means act 'cavalierly' [in drafting the statute]….  The existence of these [express] carve-outs … makes it inappropriate for courts to create additional, implied exceptions.").

Second, Plaintiffs' argument that the goals of SLUSA are not implicated here because, having filed them in federal court, the State Law Claims are already "subject to federal pleading standards" (Opp. Br., p. 11) is simply wrong.  Though these claims may be subject to Rule 9(b) of the Federal Rules of Civil Procedure (as Plaintiffs themselves concede (*see id.*, p. 2 n.4)), they are not subject to the PSLRA (nor does Plaintiffs' carefully-worded assertion suggest otherwise).  Moreover, in enacting SLUSA, Congress was not only concerned that plaintiffs were seeking to avoid federal pleading standards, but rather that they were end-running the protections instituted by the PSLRA which included – but were by no means limited to – pleading standards.[1]

Likewise without merit is Plaintiffs' assertion that their State Law Claims cannot be subject to SLUSA because, having opted out of the *Ontario* class, their suits "<u>by definition are</u>

---

[1] *See Dabit*, 547 U.S. 1, 81 (2006) (the PSLRA was designed to "limit recoverable damages and attorney's fees, provide a 'safe harbor' for forward-looking statements, … and authorize a stay of discovery pending … motion[s] to dismiss.  [It] also imposes heightened pleading requirements….").

not class actions" within the meaning of the statute.  (Opp. Br., p. 7 (emphasis in original); *see also id.*, p. 8 ("[N]one of these eight actions are class actions.  Rather, all are <u>individual actions</u>….") (emphasis in original).)  This same argument has been rejected repeatedly by Courts in this Circuit.  For example, in *In re AOL Time Warner Secs. Litig.*, opt-out plaintiffs attempted to avoid preclusion "by arguing that none of [their] individual actions bring state law claims … for more than 50 people."  503 F. Supp. 2d 666, 672 (S.D.N.Y. 2007) (internal quotation marks omitted).  The district court disagreed, finding that the opt-outs' argument "ignores the fact that [their] 'individual actions,' once aggregated per SLUSA's instructions, are a '<u>covered class action</u>' for purpose[s] of SLUSA and are properly subject to the Act's limitations on mass actions."  *Id.* (emphasis added); *see also Amorosa v. Ernst & Young*, 672 F. Supp. 2d 493, 516 (S.D.N.Y. 2009) (same), *aff'd* 409 F. App'x 412 (2d Cir. 2011).  Plaintiffs cite no authority that would justify applying the statute differently depending on whether the parties bringing "covered class actions" were opt-outs or were never part of a class to begin with.

Fourth, and more fundamentally, Plaintiffs' resort to SLUSA's legislative history is both unwarranted and unavailing.  When interpreting a statute, the courts' "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive."  *Griffin v. Oceanic Contractors*, 458 U.S. 564, 570 (1982).  Here, because the relevant provisions are clear and unambiguous (and Plaintiffs do not claim otherwise), the statute should be applied as written.  *See Cyan v. Beaver Cty. Emps.' Ret. Fund*, 138 S. Ct. 1061, 1069 (2018) ("[Petitioner's] various appeals to SLUSA's purposes and legislative history fail to overcome the clear statutory language.  The statute says what it says – or perhaps better put here, does not say what it does not say.").[2]

---

[2] While courts may deviate from the unambiguous statutory language if literal application would be "demonstrably at odds" with the clearly expressed intentions of its drafters," this is not one of those "rare cases."  *Griffin*, 458 U.S.

Fifth, Plaintiffs' contention that it would be "unfair" to construe SLUSA in a way that would "strip[] a party of its ability to opt-out of a class action and pursue its own state law claims" (Opp. Br., p. 11) cannot withstand scrutiny. Plaintiffs obviously have not been deprived of their ability to opt-out of *Ontario* – they could do so and did. The issue is whether, having opted out, their individual claims now constitute a "covered class action" in which claims "based upon the statutory or common law of any State" are asserted "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Because they plainly do, Plaintiffs' State Law Claims may no longer "be maintained in any State or Federal court." *Id.*

Similarly meritless is Plaintiffs' argument that they should be exempt from SLUSA because they "actively opposed consolidation" with the *Ontario* class action, and because a small handful[3] of Plaintiffs brought suit in different jurisdictions hoping to "remain separate from the Class Action and free from scrutiny under SLUSA." (Opp. Br., pp. 8, 9 n.9.) This Court has already considered this same argument and rejected it. In *Backus v. Connecticut Comm. Bank*, plaintiffs argued "that SLUSA should not apply because [their two cases] were consolidated without their consent," but the Court disagreed, holding that the statute's "express language does not limit the provision's applicability to lawsuits joined or consolidated without a plaintiff's objection, so this Court will not interpret the provision to contain any such limitation." 789 F.

---

at 571. Plaintiffs argue that SLUSA's legislative history shows that it was "not meant to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant" (Opp. Br., 10-11 (internal quotation marks omitted)), yet they fail to disclose that, in the very next sentence of the Senate Report from which they selectively quote, SLUSA's drafters expressly recognized that "the provisions of the bill would apply where the court orders that the suits be joined, consolidated, or otherwise proceed as a single action" (S. Rep. No. 105-182, at *8 (1998)). Contrary to Plaintiffs' characterization, the legislative history "acknowledge[s] that the law could affect individual actions that were involuntarily consolidated" and could thus "deprive individual investors of a state law remedy if they happened to file in the same court as other individual investors," yet "adopted [the bill] notwithstanding some objections indicating concern over this [very] issue." *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 609-10 (S.D.N.Y. 2015) (emphasis added).

[3] Notably, 17 out of the 21 Direct Actions (including four of the eight State Law Complaints) were brought in this District well aware (having liberally copied from the *Ontario* pleadings) that the class action was pending here.

Supp. 2d 292, 301 (D. Conn. 2011).  Moreover, the Court found that plaintiffs' tactic of separately filing "two nearly identical lawsuits … in order to circumvent … SLUSA preemption, is precisely what Congress sought to prevent in enacting its definition of 'covered class action.'" *Id.* at 302.  Moreover, this argument ignores that aggregation under SLUSA does not depend on formal consolidation.  Indeed, as this Court previously found, even if the Direct Actions were "simply coordinated" (as requested by Plaintiffs), "coordination would have the same effect as consolidation" for purposes of SLUSA.  *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus.*, 3:17-cv-558, 2020 WL 1181366, at *16 (D. Conn. Mar. 10, 2020).

## II.   PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLEAD ACTUAL RELIANCE WITH THE SPECIFICITY REQUIRED BY RULE 9(B)

### A.   There Is No Reliance Presumption For Any Of Plaintiffs' State Law Claims

Plaintiffs try to draw a distinction between their common law causes of action (to which, they concede, the federal reliance presumptions do not apply) and their claims under the PSA (to which, they contend, the presumptions <u>do</u> apply.  (*See* Opp. Br., pp. 5-6.)  Plaintiffs fail to cite any authority that would support that distinction.  While courts have noted similarities between the PSA and Section 10(b) of the Exchange Act, they have likewise observed that the elements of a fraud claim under Pennsylvania common law are "essentially the same as those of a private action for federal securities fraud."  *WM High Yield Fund v. O'Hanlon*, 04-cv-3423, 2013 WL 3230667, at *18 (E.D. Pa. June 27, 2013).  Nonetheless, despite finding the elements of common law fraud and Section 10(b) claims to be "nearly identical," *Axar Master Fund v. Bedford*, 806 F. App'x 35, 38 n.2 (2d Cir. 2020), courts in the Second Circuit "repeatedly have refused to apply the fraud on the market [reliance presumption] to state common law cases despite its wide acceptance in the federal securities fraud context," *Secs. Inv. Prot. Corp. v. BDO Seidman*, 222 F.3d 63, 73 (2d Cir. 2000).  (*See also* Mov. Br., p. 9.)

6

Plaintiffs cite a single decision for the proposition that "'reliance may be presumed' 'where a plaintiff asserts a "fraud on the market" claim' [under the PSA]" (Opp. Br., 5-6 (quoting *Fulton Fin. Adv. Nat'l Ass'n v. NatCity Invs.*, 09-cv-4855, 2013 WL 5635966, at *13 (E.D. Pa. Oct. 15, 2013))), but their reliance on that decision is unavailing for two reasons.  First, the passage they cite is mere dicta.  Since the plaintiffs in *Fulton* (who brought claims under both Section 10(b) and the PSA) did <u>not</u> allege a fraud on the market theory, the court did not even reach the issue, let alone decide it, as Plaintiffs misleadingly imply.  Second, whatever persuasive value this dicta might have is further undermined by the fact that the *Fulton* court itself cited no authority for importing the federal reliance presumption into a PSA claim; instead, the sole case it cited – *In re DVI Secs. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) – involved a motion to certify a class asserting a claim under the <u>federal</u> securities laws, not the PSA.  *See Fulton*, 2013 WL 5635966, at *13.[4]

### B.    <u>Plaintiffs Fail To Plead Actual Reliance With The Requisite Specificity</u>

Plaintiffs contend that each of the eight State Law Complaints pleads the actual reliance element of their State Law Claims with the specificity required "to survive a motion to dismiss … under the heightened pleading requirements of Rule 9(b)."  (Opp. Br., p. 2.)  Not so.

As detailed in Defendants' moving brief (pp. 8-9), seven of those complaints (*viz.*, *Harel*, *Phoenix*, and the five Pomerantz Actions) do not come close to satisfying even the lenient Rule 8 standard, since they do not allege that Plaintiffs were even <u>aware</u> of – much less that they actually reviewed or relied on – any of Defendants' purported statements or omissions.  In a half-hearted attempt to rebut this argument, Plaintiffs cite a single sentence in one of their complaints.

---

[4] As Defendants' authority makes clear, whether state and federal laws have similar (or even identical) elements has no bearing on whether federal courts are willing to extend pleading presumptions available for certain federal law claims to their state law analogs (and, as shown, they are not).  Plaintiffs' inflammatory charge that Defendants have "argue[d] from both sides of their mouth" with respect to *Fulton* (Opp. Br., p. 6 n.8) is thus unwarranted.

(*See* Opp. Br., p. 2 n. 3 (citing *Clal* compl., ¶ 593).)  But rather than helping their cause, this cursory, formulaic allegation only highlights the deficiency of their pleadings.  Far from pleading actual reliance with specificity, this sentence merely alleges in conclusory – and equivocal – terms that Plaintiffs "purchased or otherwise acquired Teva securities … in reliance on the Defendants' untrue or misleading statements or omissions of material fact **and/or on the integrity of the market**."  (*Clal* compl., ¶ 593 (emphasis added).)[5]  Unsurprisingly, neither of the cases Plaintiffs cite support their contention that "federal courts have [found] allegations of this sort … sufficient to plead actual reliance with particularity."  (Op. Br., pp. 2-3.)[6]

Plaintiffs' attempt to defend the adequacy of the allegations in the *Highfields* complaint (*see* Op. Br., pp. 3-4) fares no better.  As demonstrated in Defendants' moving brief (pp. 10-11), courts in this Circuit have repeatedly found "eyeball reliance" allegations substantively indistinguishable from those alleged in *Highfields* to be too conclusory to satisfy even Rule 8, let alone Rule 9(b).  Plaintiffs' efforts to distinguish this authority are unavailing.[7]

---

[5] That Plaintiffs omitted the emphasized language from their selective quotation of the *Clal* complaint speaks volumes.  It is also telling that Plaintiffs did not even bother to point to any actual reliance allegations in the *Harel* or *Phoenix* complaints, but in any event those pleadings contain the same conclusory allegation.  (*See Harel* compl., ¶ 915; *Phoenix* compl., ¶ 937.)

[6] For example, whereas the complaint in *Maverick Fund v. Comverse Tech.* pled that plaintiff actually "read and/or listened to and relied upon" defendants' alleged misrepresentations, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011), none of the complaints in *Harel*, *Phoenix*, or the Pomerantz Actions contain any comparable allegation.  The other case Plaintiffs cite, *Transit Rail v Marsala*, 05-cv-0564, 2007 WL 2089273 (W.D.N.Y. July 20, 2007), does not contain the quoted reliance allegations Plaintiffs ascribe to it, but in any case no such allegations appear in *Harel*, *Phoenix*, or the Pomerantz Actions complaints.

[7] For example, there is no meaningful distinction between the "two short, nearly single-sentence paragraphs" (Opp. Br., p. 4) held to be too conclusory in *Int'l Fund Mgmt. v. Citigroup*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011), and the corresponding two long, single-sentence paragraphs in the *Highfields* complaint.  The latter are longer because they list 58 filings and transcripts, whereas the former only concerned two filings.  *Compare Highfields* compl., ¶¶ 370 ("Prior to Highfields making the decision to purchase … Teva securities on behalf of Plaintiffs, a Highfields investment analyst actually and justifiably read, listed [sic] to and/or relied upon [the filings]"), 372 ("Highfields actually and justifiably relied upon information contained in [the filings] in making each purchase … of Teva securities….") *with* 2010 WL 9552827 (S.D.N.Y.), ¶¶ 499 ("In connection with Plaintiffs' purchases of Securities after February 23, 2007, Plaintiffs and/or their investment managers read and relied upon Citi's 2006 Form 10-K, including the false financial statements and other statements alleged herein to be false or misleading."), 500 (same as to 2007 Form 10-K).  And whereas the court in *In re Bear Stearns Secs., Deriv. & ERISA Litig.*, found plaintiff's reliance allegations insufficiently particularized because they failed to "link its review of any particular statement[]"

### III.   THE PSA CLAIMS ASSERTED IN THE *HAREL* AND POMERANTZ ACTIONS ARE TIME-BARRED

In an attempt to save their time-barred PSA claims, Plaintiffs in *Harel* and the Pomerantz Actions argue that they could not have adequately alleged Defendants' scienter prior to August 3, 2018.  (*See* Opp. Br., pp. 12-13.)  This argument is easily dispensed with.  As Plaintiffs themselves admit, the *Ontario* class plaintiffs were able to plead scienter to the Court's satisfaction as of June 22, 2018, the date of their amended and consolidated complaint.  (*See id.*, 13.)  Plaintiffs offer no explanation as to why the *Clal* complaint (the earliest Pomerantz Action) could not have been filed by August 3, 2018, given that it copies verbatim the scienter allegations from that *Ontario* pleading.  (*Compare* 2:19-cv-00530 (E.D.Pa. Feb. 5, 2019), ECF 1 (*Clal*), ¶¶ 327-71, *with* 3:17-cv-00558 (D. Conn. June 22, 2018), ECF 226 (*Ontario*), ¶¶ 240-84.)  Likewise, any claim by the *Harel* plaintiffs that they could not have adequately alleged scienter by August 3, 2018 is belied by the fact that the first *Phoenix* complaint (drafted by the same counsel and which the *Harel* complaint copies virtually verbatim) was filed on August 3, 2018, and supports its PSA claims with scienter allegations substantively identical to those in *Ontario*.  (*See* 3:19-cv-00449 (E.D.Pa. Aug. 3, 2018), ECF 1, ¶¶ 641-84.)

### CONCLUSION

For the reasons set forth above and in Defendants' moving brief, the State Law Claims should be dismissed in their entirety, with prejudice.

---

in a single filing to any "particular transaction that it allegedly made" over a one-year period "in reliance on [that] document," 995 F. Supp. 2d 291, (S.D.N.Y. 2014), the *Highfields* complaint is, if anything, even less particularized, as it fails to link Highfields' (supposed) review of any particular statement in many dozens of filings and transcripts to any particular purchase of Teva securities made over a five-year period.

Dated:   New York, New York
         September 2, 2021

Respectfully submitted,

DEFENDANTS TEVA PHARMACEUTICAL
INDUSTRIES LTD.; TEVA
PHARMACEUTICALS USA, INC.; EREZ
VIGODMAN; EYAL DESHEH; SIGURDUR
OLAFSSON; DEBORAH GRIFFIN; KÅRE
SCHULTZ; MICHAEL MCCLELLAN;
YITZHAK PETERBURG; YAACOV ALTMAN,
DIPANKAR BHATTACHARJEE; and TEVA
PHARMACEUTICAL FINANCE
NETHERLANDS III B.V.

*/s/ Sheron Korpus*
Sheron Korpus (admitted *pro hac vice*)
Cindy Caranella Kelly (admitted *pro hac vice*)
Sarah G. Leivick (admitted *pro hac vice*)
Andrew Schwartz (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
skorpus@kasowitz.com
ckelly@kasowitz.com
sleivick@kasowitz.com
aschwartz@kasowitz.com

*Counsel for Defendants except with regards to
Case No. 3:20-cv-588*

Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro (ct30882)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com

emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*