UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION : | No. 3:17-cv-00558 (SRU) |
| : | |
| THIS DOCUMENT RELATES TO: : | All Actions |
| : | |

**CLASS REPRESENTATIVES' SUBMISSION FOR THE**
**SEPTEMBER 15, 2021 STATUS CONFERENCE**

I.      INTRODUCTION

The Court held its last status conference two months ago, on July 15, 2021. At the conclusion of the conference, two disputes remained outstanding: (i) the deposition of Maureen Cavanaugh concerning ESI spoliation; and (ii) Teva's refusal to remove improper redactions on certain litigation holds.

With respect to the Cavanaugh spoliation deposition, the Court ordered simultaneous submissions, which were filed on July 29. (ECF 852, 854.) On August 4, 2021, Teva filed a brief in the criminal matter revealing for the first time that its involvement in the DOJ investigation of "price fixing in the generic drug industry . . . began in 2015, when Division attorneys contacted a Teva employee who forwarded the Division's inquiry to Teva's in-house counsel." (ECF 865-1 at 2 (Exhibit 1 to Class Representatives' August 26, 2021 Opposition Brief).) Further, Teva ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ Class Representatives have also learned that ████████████████████████████████████████████████████████████████████ ██████ for which the Court ordered production of related litigation holds (ECF 796 at 5), ████ ████████████████████████ On August 5, 2021, Defendants unilaterally filed a supplemental brief that made no mention of these facts. (ECF 857.) We address these newly revealed facts below, which further support the need for the Cavanaugh deposition.

The litigation hold briefing is complete (*see* ECF 860, 866, 881), and we understand Defendants have provided the unredacted holds to the Court for *in camera* review. The basic factual information that Defendants redacted (names and categories of documents) is not privileged and must be produced. Moreover, while Defendants' reply brief seeks to relitigate the

relevance of the holds, DOJ's 2015 contact defeats their argument that no duty to preserve arose until June 2016.

Finally, Class Representatives address Defendants' latest, and seemingly unending, attempt to obtain more irrelevant discovery from Ontario Teachers'. Specifically, Defendants have attempted to fabricate a dispute by asking Ontario Teachers' Rule 30(b)(6) witness questions far outside the permitted topics (ownership and losses), then complaining that he was not prepared. This distraction is nothing more than an effort to relitigate issues Defendants have waived and the Court has already decided.

## II.     STATUS OF PARTICULAR ITEMS

### A.     Sandoz Text Messages

Class Representatives reached agreement with Defendants on the scope of a production of text messages from the Generics MDL action involving certain Sandoz and Teva custodians. Last week, Defendants apparently finished their review of the MDL production, and have stated that no responsive texts exist. This concludes the long-running inquiry into alternative sources of the missing text messages, and confirms that they have been irretrievably destroyed or lost.

### B.     Internal Controls

Teva states that it has completed its production of documents related to the internal controls in place during the Class Period.

### C.     Class Notice

Class Representatives sent a draft of the Class Notice to Defendants and expect to present the Notice for the Court's approval.

## III.    NEWLY-DISCOVERED INFORMATION PERTINENT TO SPOLIATION

Since the July conference, Class Representatives discovered the following: (i) in spring 2015 the DOJ Antitrust Division contacted a Teva employee as part of its criminal investigation

into generic drug pricing; (ii) ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

For well over a year, Class Representatives—with the Court's guidance—have sought the facts surrounding the loss or destruction of over 1,000 highly relevant text messages and other documents.  The record is now clear that this material is irretrievably lost or destroyed.  Nonetheless, Defendants have refused to provide any explanation for what happened, and have vigorously opposed disclosure of any information pertinent to spoliation.

The new revelation about DOJ's 2015 contact comes on the heels of Teva's repeated denials that events prior to June 2016 had any relevance to the spoliation dispute, including the timing and scope of Teva's duty to preserve.  In April, the Court ordered Defendants "to produce a detailed affidavit setting forth Teva's preservation efforts with respect to the missing text messages from January 1, 2013 until the present."  (ECF 751.)

Defendants responded in ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Instead, Teva stated:

3



In fact, knowledge of DOJ's 2015 contact with Teva in its price-fixing investigation





These are the same entries that Defendants previously insisted were "wholly unrelated to this action." (ECF 780 at 4.) To the contrary, as the Court observed: "if Teva was subject to a litigation hold, or a Congressional hold, or any other hold, that's pertinent because it means that the messages should not have been deleted during that time period." (Mar. 31, 2021 Tr. 8:2-5.) ▌

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████.[1]

For over a month, Class Representatives have methodically sought answers to questions prompted by Teva's revelation in the criminal matter:

- With respect to the spring 2015 DOJ inquiry in particular and any other interactions between DOJ and Teva (including in-house and outside counsel) between January 1, 2015 and June 21, 2016:
  - Who was contacted by the Antitrust Division and when and where the contact occurred;

---

[1] In addition to the destruction of Cavanaugh's ESI, the State AGs allege that Teva personnel (Patel) destroyed text messages in "early 2015." Amended Complaint, ¶1129, *Connecticut v. Teva Pharm. USA, Inc.*, No. 2:19-cv-02407-CMR (D. Conn. Nov. 1, 2019), ECF 106.

- o The form of contact (*e.g.*, phone call, email, letter, physical visit);
- o What the Antitrust Division attorneys told the "Teva employee" and what that person said in response;
- o The factual information the "Teva employee" communicated to Teva's in-house counsel;

- Which documents were collected and preserved based on DOJ's 2015 contact? Were any text messages among them? If not, why not?

  - o Who performed Teva's collection and preservation?
  - o Which custodians and devices were collected and preserved?

- ████████████████████████████████████████

- Were Baeder, Coward, Galownia, Patel, or Rekenthaler made aware of DOJ's 2015 contact? If so, when?

- Did Teva produce any documents to DOJ prior to the June 21, 2016 subpoena? If so, when?

- Have all of the documents that were collected and preserved based on DOJ's 2015 contact been produced in this litigation?

Class Representatives are entitled to answers, but Teva has refused to provide any. Indeed, on August 31, 2021, defense counsel insisted that "further dialogue between the parties is not a productive use of the parties' time" and that the parties should address the issue "in the next round of submissions to the Court." On Friday evening, however, defense counsel suddenly reversed positions, suggesting that this issue is not ripe for resolution and that the parties should instead meet and confer after the due date for this submission. Class Representatives offered to meet and confer over this past weekend, but never heard back from Defendants.

These newly revealed facts and unanswered questions confirm the need for Cavanaugh's deposition on spoliation. It is beyond dispute that ████████████████████████████ ████████████████████████████, and she should finally testify under oath about what happened and how her ESI was lost or destroyed.

6

## IV. DEFENDANTS ONCE AGAIN DEMAND ADDITIONAL, IRRELEVANT DISCOVERY FROM ONTARIO TEACHERS'

At the May 25, 2021 conference, the Court limited the depositions of the Class Representatives to "ownership of the Teva securities at issue in this case" and "profits and losses as a result of that ownership." (ECF 796 at 4.)

On August 25, 2021, Defendants deposed Ontario Teachers' Rule 30(b)(6) representative, Jeff Davis, who began at Ontario Teachers' in 2004 and has been the Chief Legal and Corporate Affairs Officer since 2014. He testified fully, accurately, and repeatedly as to the two permitted topics, establishing conclusively that Ontario Teachers' owned the Teva securities at issue (Davis Tr. 35:3-20; 36:13-18; 42:2-5; 48:9-53:14; 103:8-104:6; 138:18-139:8 (attached as Ex. 1)), and that they "were purchased and sold by Ontario Teachers' Pension Plan Board, full stop." (Davis Tr. 104:6-10.) Mr. Davis also testified that Ontario Teachers' suffered losses of $47,246,830.46 on the Teva ADS and $141,512.50 on the Preferred Shares (Davis Tr. at 146:15-19). His testimony was based on his personal knowledge of Ontario Teachers' ownership of the Teva securities at issue, its legal structures, and systems. He further testified about the records he had reviewed and understood, and additional information he had gathered during the course of his preparation on the two permitted topics. (*See, e.g.*, Davis Tr. 68:6-69:14; 93:6-96:22;149:17-150:17; 151:12-152:11.)

Indeed, even Defendants do not dispute that Mr. Davis completely responded to all questions on ownership and loss. That should have ended the matter. But Defendants once again attempt to manufacture a dispute on an issue far beyond the permitted scope that Defendants have long since waived. Specifically, Defendants claim Mr. Davis "fail[ed] to provide information necessary to substantiate Ontario's standing in this litigation," claiming he could not definitively

7

recall the facts that made Ontario Teachers' purchase of the Preferred Shares in the Offering a "domestic" transaction.

In the nearly five years this litigation has been pending, Defendants had never once raised this issue. Not a single one of Defendants' document requests, interrogatories, request for admissions, Rule 30(b)(6) topics, motions to dismiss, class certification briefs, or numerous other submissions ever questioned that Ontario Teachers' purchased its Preferred Shares in the Offering in the United States. That is for good reason; the Preferred Offering was conducted by U.S.-based underwriters and broker-dealers, as Defendants (who engaged the underwriters and solicited investors to invest in the Offering) are well aware. Indeed, beyond the snippet of testimony that Defendants may cite, they did secure responses to questions about Ontario Teachers' domestic transactions in the Preferred Shares. (*See* Davis Tr. 108:14-109:7.)

Even more to the point, Defendants long ago agreed that they would "not advance at any stage of the case" the argument that Ontario Teachers' claims do not arise from the same course of events as other Class members (including domestic transactions) or that Ontario Teachers' does not make similar legal arguments as every other Class member—*i.e.*, typicality. (ECF 311 at 15; *see also* ECF 736 at 7.)[2] This explains why Defendants never sought this discovery until now.

The Court should not indulge yet another attempt to make an end-run around Defendants' own agreement and the Court's class certification ruling. The Court should deny any requests for further discovery of Class Representatives and their current and former employees.[3]

---

[2] Specifically, "Defendants have agreed that they will not advance at any stage of the case the arguments that Lead Plaintiff or Named Plaintiff Anchorage Police & Fire Retirement System do not have standing to advance the claims that are the subject of the amendments, or that Plaintiffs are not adequate or typical representatives for purposes of representing the class, and Defendants shall not use the fact of the amendment itself to challenge class certification." (ECF 311 at 15.)

[3] Defendants may complain about Class Representatives' few and limited work product objections to questions that improperly sought to identify documents reviewed by Ontario Teachers' in-house counsel.

8

## V.  REQUEST FOR EXTENSION OF CERTAIN DEADLINES

The parties have met and conferred regarding the remaining deadlines in the case and have agreed that extending the dates as follows is appropriate:

| Deadline | Prior Date | New Date |
|---|---|---|
| Serve Trial Experts' Reply Reports | Sept. 20, 2021 | Sept. 20, 2021 |
| Summary Judgment and Daubert Motions | Oct. 11, 2021 | Nov. 1, 2021 |
| Summary Judgment and Daubert Oppositions | Nov. 15, 2021 | Dec. 8, 2021 |
| Summary Judgment and Daubert Replies | Dec. 22, 2021 | Jan. 14, 2022 |
| Joint Trial Memorandum | Feb. 15, 2022 (or 60 days after ruling on any summary judgment motion) | Feb. 15, 2022 (or 60 days after ruling on any summary judgment motion) |
| Trial Ready | April 18, 2022 (or 60 days after filing of joint trial memorandum) | April 18, 2022 (or 60 days after filing of joint trial memorandum) |

## VI.  CONCLUSION

Class Representatives are entitled to the full facts regarding the 2015 DOJ inquiry, a deposition of Maureen Cavanaugh on spoliation, and unredacted versions of Defendants' litigation holds. Defendants' demand for more testimony should be denied.

Date:  September 13, 2021

Respectfully submitted,

/s/ Joseph A. Fonti
Joseph A. Fonti (admitted pro hac vice)
Evan A. Kubota (admitted pro hac vice)

---

In fact, Mr. Davis testified that in-house counsel reviewed the same transaction records that he did. (Davis Tr. 70:18-73:2.) This complaint is also puzzling given that Mr. Davis repeatedly answered other questions that were both outside the scope of the Court-ordered topics and potentially intruded on privilege (subject to Defendants' non-waiver agreement on the record).

Benjamin F. Burry (admitted *pro hac vice*)
Thayne Stoddard (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
ekubota@bfalaw.com
bburry@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System, and Lead Counsel for the Class*

Marc J. Kurzman (ct01545)
Christopher J. Rooney (ct04027)
James K. Robertson (ct05301)
**CARMODY TORRANCE SANDAK & HENNESSEY LLP**
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608
mkurzman@carmodylaw.com
crooney@carmodylaw.com
jrobertson@carmodylaw.com

*Local Counsel for Lead Plaintiff Ontario Teachers' Pension Plan Board, and for Named Plaintiff Anchorage Police & Fire Retirement System*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 13, 2021, a copy of the foregoing was filed electronically with the Clerk of Court via CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the court's CM/ECF system.

                                                                                   */s/ Joseph A. Fonti*
                                                                                    Joseph A. Fonti