**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE TEVA SECURITIES LITIGATION | No. 3:17-cv-00558 (SRU) |
| THIS DOCUMENT RELATES TO: | No. 3:17-cv-00558 (SRU) |
| | September 13, 2021 |

**DEFENDANTS' NOTICE REGARDING CASE MANAGEMENT STATUS**

Defendants Teva Pharmaceutical Industries Ltd., Erez Vigodman, Eyal Desheh, Sigurdur Olafsson, Deborah Griffin, Kåre Schultz, Michael McClellan, Yitzhak Peterburg, and Teva Pharmaceutical Finance Netherlands III B.V. (collectively, "Defendants") respectfully submit this notice concerning several discovery and case management issues in advance of the September 15, 2021 status conference.

**I.        Issues Regarding Ontario's Ownership And Standing**

As the Court may recall, Defendants were permitted to take Rule 30(b)(6) depositions of the Plaintiffs concerning their "ownership of the Teva securities at issue in this case" and "profits and losses as a result of that ownership." (ECF 751 at 4); (ECF 796 at 4.) At the recent Rule 30(b)(6) deposition of Plaintiff Ontario Teachers' Pension Plan Board ("Ontario"), Ontario's representative, Jeff Davis (the General Counsel), could not confirm whether certain of Ontario's transactions took place within the United States – a necessary predicate to invoke the U.S. securities laws for a foreign entity such as Ontario, particularly because Teva, also a foreign entity, did not list its preferred shares on a U.S. exchange. When this unanswered question was raised with Plaintiffs after the deposition (*see* September 2, 2021 Letter from Sheron Korpus to Joseph Fonti (Ex. A)), instead of simply confirming that the transactions were purchased "in

domestic transactions," as their Complaint claims (ECF 310 ¶ 22), Plaintiffs called the basic

inquiry "belated" and an attempt "to renege on the [class certification] stipulation" on typicality.

*See* September 9, 2021 Letter from Joseph Fonti to Sheron Korpus (Ex. B).

Putting aside that Plaintiffs have repeatedly resisted requests to produce the basic trading

records that underlie their claims, whether Ontario (or any foreign investor) purchased Teva

preferred shares (or notes) – securities that are not listed on a national exchange[1] – is an issue of

**subject matter jurisdiction** that cannot be waived and can be raised at any time.  Additionally,

under the parties' agreement, Defendants can still challenge Plaintiffs' standing (for claims not

subject to the amendments).  (*See* ECF 352 ¶7.)  As Plaintiffs are aware, the "reach of U.S.

securities law is [] limited to (1) 'transactions in securities **listed on domestic exchanges**,' and

(2) '**domestic transactions** in other securities.'"  *See In re Petrobras Secs. Litig.*, 862 F.3d 250,

262 (2d Cir. 2017) (quoting *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 267 (2010))

(emphasis added).  "[F]or 'securities that are not traded on a domestic exchange,' a transaction is

considered 'domestic'" under the second prong of *Morriso*n, if a plaintiff proves that "[1]

irrevocable liability [to take and pay for the securities was] incurred or [2] title passe[d] within

the United States.'"  *Petrobras*, 862 F.3d at 262 (citing *Absolute Activist Value Master Fund Ltd.*

*v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012)).[2]  Mr. Davis did neither at his deposition.  *See* Ex. C at

---

[1]     *See* Preferred Shares Final Prospectus Supplement, dated December 3, 2015, p. S-49 ("Preferred Shares are
not expected to be listed on any securities exchange.") (available at
https://www.sec.gov/Archives/edgar/data/818686/000119312515394483/d67636d424b5.htm); Notes Final
Prospectus Supplement, dated July 19, 2016, p. S-7 ("The notes will not be listed on any securities exchange or
included in any automated quotation system.") (available at
https://www.sec.gov/Archives/edgar/data/0000818686/000119312516651285/d207243d424b5.htm).

[2]     "The location or residency of the buyer, seller, or broker will not necessarily establish the situs of the
transaction.  Rather, plaintiffs demonstrate the location where irrevocable liability was incurred or legal title
transferred by *producing evidence 'including, but not limited to, facts concerning the formation of the contracts,
the placement of purchase orders, . . . or the exchange of money*.'"  *Petrobras*, 862 F.3d at 262 (citing *Ficeto*, 677
F.3d at 70) (emphasis added).

133:8-23.  And neither of the **two** documents of minimal relevancy produced in this litigation – a third party letter purporting to set forth Ontario's transactions and an Excel chart created for purposes of this litigation – provides this information.[3]

Mr. Davis's inability to testify as to how Ontario came to own the preferred shares at issue is unsurprising considering █████████████████████████████████████████



*See, e.g., id.* at 46:11-48:8, 63:15-64:9, 65:18-69:14, 73:3-17, 89:18-90:8.  When asked what these underlying preparation documents were, however, Plaintiffs' counsel improperly asserted that this was ████████████████████████████████████ *See id.* at 69:20-70:17.[4]  Ontario's failure to properly prepare Mr. Davis naturally led to several occasions throughout the deposition where he lacked the relevant knowledge to answer questions within the scope of the 30(b)(6) deposition, thus resorting to speculation.  *See, e.g.*, Ex. C at 111:10-

---

[3]  ██████████████████████████████████████████████████████████
██████████████████

[4]        "[I]n the 30(b)(6) context, a corporation cannot shield itself from the duties required under the rules of discovery merely by allowing its counsel to review all of the documents that its corporate representative uses to obtain a basis of knowledge in preparation of the 30(b)(6) deposition or to refresh his recollection, and then claim that those documents are protected from disclosure under the work product doctrine.  Rather, it is the responsibility of the corporation and the 30(b)(6) corporate representative to gather the information relevant to the areas of inquiry for the deposition.  Thus, without a greater showing that the documents reviewed by the 30(b)(6) deponent in preparation for his/her deposition are actually work product, the documents are not shielded them from disclosure." *Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, No. 09-23411-CIV, 2010 WL 5187680, at *3 (S.D. Fla. Dec. 10, 2010); *see also Adidas Am., Inc. v. TRB Acquisitions LLC*, 324 F.R.D. 389, 398 (D. Or. 2017) (by hiding preparation documents behind privilege, "[a] corporate designee could testify only as to information and communications that are advantageous.  Other information that would contradict the testimony or undermine the corporation's position and was contained in the documents could be ignored, and the opposing party would have no way of knowing how to test or challenge the corporate designee's testimony").

113:7 (█████████████████████████████████████████████████

████████████████████████████████████████████████).

Unlike Plaintiffs' never-ending post-fact discovery fishing expeditions and demands, these questions about Ontario's transactions pertain to threshold requirements that are currently unsupported by the record and could have serious implications if only first addressed at summary judgment.  Given Plaintiffs' refusal to provide additional testimony or clear up the issue in their letter,[5] Defendants seek the Court's assistance on the best path forward to determining the basic details of Plaintiffs' purchase and sales of the securities at issue in this litigation to establish subject matter jurisdiction and standing.

## II.      Plaintiffs' Manufactured Dispute Regarding Prior DOJ Contact

Feigning surprise about a matter that recently was referenced in a Teva filing in the pending criminal action, Plaintiffs appear to be manufacturing yet another discovery dispute to improperly extend fact discovery and seek Teva's privileged information.  The recent filing which Plaintiffs have cited referenced the DOJ's outreach to a Teva employee in 2015.  Plaintiffs have erroneously suggested, first in correspondence exchanged with Defendants, and then improperly and prematurely in a filing with this Court,[6] that this filing revealed "new" facts, and that Teva has withheld information concerning that DOJ outreach and Teva's subsequent actions

---

[5]      At the March 31, 2021 hearing, the Court instructed Defendants to depose an Ontario 30(b)(6) representative first and then determine whether the depositions of former and current Ontario employees were still necessary. (*See* ECF 752, Mar. 31, 2021 Conf. Tr. 26:1-6.) Ontario, however, rejected Defendants' offer to depose those individuals in order to resolve this issue.

[6]      Plaintiffs misleadingly inserted several paragraphs about this newly raised issue into their Opposition to Defendants' Motion to Maintain Redaction (ECF 865), despite that it is wholly unrelated to that dispute over the propriety of certain redactions in previously produced documents.  Defendants briefly addressed the impropriety and inaccuracy of Plaintiffs' submission in Defendants' Reply (ECF 882) as they had done in prior correspondence with Plaintiffs.  Among other things, Defendants addressed Plaintiffs' unsubstantiated assumption that ████████████████████████████████████████

████████████.

and investigation.  In fact, Plaintiffs have had information concerning this matter for more than a

year, and Teva has provided Plaintiffs with further non-privileged information since then.  And

contrary to what Plaintiffs have claimed to Defendants, and suggested to the Court, Teva's filing

did not reveal any "new" facts relevant to the pending dispute concerning a subset of previously

produced, redacted Teva legal holds.  Nor are the purported "new" facts inconsistent with, or do

they undermine in any way, Teva's representations in this action concerning its preservation

efforts and obligations relating to the allegedly missing text messages involving six Teva

custodians.

      **1.**   **Defendants Long Ago Provided Information To Plaintiffs Concerning The
DOJ Contact**

As an initial matter, Plaintiffs' claim that this information is "new" is belied by the

documents and information they have relied on in much of their recent correspondence to

Defendants, most of which was produced by Defendants long ago.  Over a year ago, in August

and September of 2020, Teva produced to Plaintiffs in this action privilege logs which included

log entries pertaining to the 2015 DOJ contact, and Plaintiffs have had every opportunity in fact

discovery to seek more information concerning those entries and that contact.  Indeed, Plaintiffs

have done so repeatedly, and Defendants have answered the questions Plaintiffs have posed to

the extent they called for non-privileged information.

For example, in a May 17, 2021 email, Plaintiffs attached excerpts from Defendants'

privilege logs which they claimed 

*See, e.g*, *id.* (citing Privilege Log Entries numbered

CTRL_000318471, CTRL_000336564, CTRL_000410040, CTRL_000413098); (*see also* ECF

778 at 4-5).  Plaintiffs then asked two questions pertaining to those entries – 1) whether legal

holds were issued, and 2) for details regarding preservation efforts relating to six custodians' text

messages – and Teva answered those questions.  Plaintiffs' sudden expressions of surprise over

the reference to the 2015 DOJ contact in the criminal action submission are plainly disingenuous.

### 2.   There Is No Basis For Further Discovery Concerning This Matter

Plaintiffs have provided no basis to yet again seek further discovery concerning the

DOJ's outreach or Teva's related privileged investigations, because there is no such basis.  This

represents at least the third attempt to do so.  Notwithstanding the antitrust MDL order

preventing Teva from disclosing details about the DOJ's activities and investigation (ECF 754-2,

at ¶ 7),[7] Plaintiffs first tried obtaining such discovery by unilaterally and erroneously claiming

that Defendants were relying on an advice of counsel defense (ECF 756).  When that failed (ECF

762), Plaintiffs argued that the discovery was necessary and relevant to their claims (ECF 778).

The Court appropriately found that such discovery was likely protected from disclosure, and

declined to order that Teva produce such materials.  *See, e.g*, May 25, 2021 Conf. Tr. 47:23-25

(stating with regard to Plaintiffs' demand for the production of Teva's communications with its

outside counsel and auditor, that "my sense is that this is likely either privileged or protected by

the work product  doctrine"); (ECF 796 at 5 (May 27, 2021 Conf. Memo and Order) ("[W]e

considered whether the Defendants should be compelled to produce documents pertaining to

internal and external investigations that apparently formed the basis for several of the

Defendants' public denials of liability . . . . I indicated that, in my view, the communications the

Plaintiffs seek likely are privileged.")).

---

[7]      "The parties shall not seek and shall not respond to discovery in this MDL about the criminal investigation that the Antitrust Division of the U.S. Department of Justice is conducting into the generic pharmaceuticals industry."

Plaintiffs have continued to respond unreasonably when faced with inconvenient facts in response to their manufactured inquiries.  Rather than seeking to narrow or resolve any dispute, they often ignore the information Defendants provide and *broaden* the scope of the dispute.  For example, Defendants responded to Plaintiffs' initial correspondence concerning this DOJ outreach by summarizing the extensive information already provided in the course of discovery and in response to Plaintiffs' relentless fishing expeditions over the past year, *and* by providing additional non-privileged information and clarifications.  Plaintiffs ignored these explanations and made the baseless claim that Defendants had ███████████████████████████████ ████████████████████████████████████████████████ When Defendants then responded to *those* further baseless claims by pointing out several factual assumptions Plaintiffs had made that were flat out incorrect, Plaintiffs again ignored these corrections and included some of those mistaken assumptions in their Opposition to Defendants' Motion to Maintain Redactions (despite that this new manufactured dispute has nothing at all to do with redacted legal holds that are the subject of that briefing).

Seemingly frustrated by the fact that the discovery they have conducted to date does not support their claims, Plaintiffs continue to ignore the facts Defendants provide simply because they are not useful to Plaintiffs.  They consistently fail to provide any basis for further needless and burdensome discovery, which confirms that they have no interest in discovering the true facts concerning any of the topics about which they claim to be inquiring.  Plaintiffs' repeated attempts to conduct fact discovery via letter after the close of discovery and into plainly privileged matters, do not reflect a good faith inquiry, but rather a textbook fishing expedition. *See e.g.*, *In re Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 5817262, at *6 (D.N.J. Oct. 4, 2016) ("If the Court permitted" additional discovery "to answer every

conceivable question litigants raise, and fill every 'gap' a party raises, discovery would never end").

The fact discovery deadline has passed long ago, expert discovery is about to close, and the case is now moving to summary judgment. The Court should put an end to this seemingly endless fishing expedition that has led to nothing but dead ends for Plaintiffs in their quest to improperly extend fact discovery, probe for privileged information, and manufacture a spoliation claim where none exists.

III.     **Summary Judgment**

The parties recently conferred regarding the schedule for summary judgment in this case given the unavailability of certain witnesses. Plaintiffs have stated that they intend to rely on the record as is, and have represented that they "will not request that the Court deny or defer summary judgment based on the absence of certain Witnesses' deposition testimony or the absence of the FBI 302s, whether under Rule 56(d) or any other basis." *See* September 9, 2021 Letter from Joseph Fonti to Sheron Korpus (Ex. E). Based on this representation, Defendants have agreed not to seek to defer the summary judgment schedule for such time as the witnesses remain unavailable.

Nonetheless, given the volume of the record, the substantial expert testimony, and some timing issues with expert depositions, the parties agreed on an approximately three week extension for summary judgment motions as set forth in the proposed schedule that Plaintiffs have indicated will be included in their submission.

Respectfully submitted,

DEFENDANTS TEVA
PHARMACEUTICAL INDUSTRIES LTD.;
EREZ VIGODMAN; EYAL DESHEH;
SIGURDUR OLAFSSON; DEBORAH
GRIFFIN; KÅRE SCHULTZ; MICHAEL
MCCLELLAN; YITZHAK PETERBURG;
and TEVA PHARMACEUTICAL FINANCE
NETHERLANDS III B.V.


*/s/ Sheron Korpus*
Sheron Korpus (admitted *pro hac vice*)
Cindy Caranella Kelly (admitted *pro hac vice*)
Sarah Gibbs Leivick (admitted *pro hac vice*)
Andrew Schwartz (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1969
Fax: (212) 500-3469
skorpus@kasowitz.com
ckelly@kasowitz.com
sleivick@kasowitz.com
aschwartz@kasowitz.com


Victor J. Brienza (admitted *pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1441 Brickell Avenue,
Suite 1420
Miami, Florida 33131
Tel.  (212) 542-4702
Fax. (646) 417-6905
vbrienza@kasowitz.com


Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro (ct30882)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700

9

Fax: (617) 341-7701
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
emily.renshaw@morganlewis.com
andrew.buttaro@morganlewis.com

*Counsel for Defendants*

– and –

Jill M. O'Toole (ct27116)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
jotoole@goodwin.com

*Counsel for Defendants except Kåre Schultz*