**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE TEVA SECURITIES LITIGATION | : | No. 3:17-cv-00558 (SRU) |
| THIS DOCUMENT RELATES TO: | : | All Class Actions |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

SUMMARY OF THE LITIGATION .......... 4

A. The Amended Complaints and Denial of Defendants' Motions to Dismiss .......... 5

B. Consolidation .......... 6

C. The Parties Complete Fact and Expert Discovery .......... 7

D. Class Certification and Defendants' Rule 23(f) Petition .......... 9

E. Preparation for Summary Judgment and *Daubert* Motions .......... 10

F. Settlement Negotiations .......... 10

I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .......... 11

A. The Standard for Preliminary Approval .......... 11

B. The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i) .......... 13

1. The "Procedural" Aspects of the Proposed Settlement Satisfy Rule 23(e)(2)(A)-(B) .......... 13

2. The Proposed Settlement Provides "Adequate" Relief and "Treats Class Members Equitably," Satisfying Rule 23(e)(2)(C)-(D) .......... 16

a. The Proposed Settlement Provides Adequate Relief .......... 16

(1) The Costs, Risks, and Delay of Trial and Appeal .......... 16

(2) The Proposed Method for Distributing Relief Is Effective .......... 21

(3) The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable .......... 23

(4) Class Representatives Have Identified All Agreements Made in Connection with the Proposed Settlement .......... 24

b. The Plan of Allocation Treats Class Members Equitably .......... 25

C. The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii) .......... 26

II. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS .......... 27

III. PROPOSED SCHEDULE OF SETTLEMENT EVENTS .......... 29

CONCLUSION .......... 31

# TABLE OF AUTHORITIES

## CASES

*Christine Asia Co., Ltd., et al., v. Jack Yun Ma, et al.*,
No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......... 13, 15, 24

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......... 15

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......... 17

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) .......... 24

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .......... 12

*In re Priceline.com, Inc. Sec. Litig.*,
No. 3:00-cv-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) .......... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-cv-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......... *passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .......... 15

*Kennedy v. Whitley*,
No. 3:16-cv-02010, 2021 WL 4533198 (D. Conn. Apr. 26, 2021) .......... 11

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) .......... 17

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
432 F. Supp. 3d 131 (D. Conn. 2019) .......... 6

*Simerlein v. Toyota Motor Corp.*,
No. 3:17-cv-01091, 2019 WL 1435055 (D. Conn. Jan. 14, 2019) .......... 11, 12, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 11, 14

## STATUTES

15 U.S.C. § 78k .......... 26

15 U.S.C. § 78u .......... 24, 25, 27, 28

28 U.S.C. § 1715 ........................................ 29

**RULES**

Fed. R. Civ. P. 23 ........................................ *passim*

**OTHER AUTHORITIES**

4 NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017) ........................................ 12

Class Representatives Ontario Teachers' Pension Plan Board and Anchorage Police & Fire Retirement System (together, "Class Representatives" or "Plaintiffs"), on behalf of themselves and each member of the Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Class Notice, submitted herewith (the "Preliminary Approval Order").[1]

**PRELIMINARY STATEMENT**

The parties have agreed to a proposed settlement that would resolve this securities class action in exchange for a cash payment of $420,000,000. Class Representatives seek the Court's preliminary approval of the proposed settlement under Rule 23(e)(1) so that notice can be disseminated and a hearing for final approval (the "Settlement Hearing") can be scheduled.

The proposed settlement, if approved, would be the second-largest securities class action settlement in this District; larger than all but one in 2021; and among the top 10 settlements since the inception of the PSLRA not involving a restatement or the 2008-2009 financial crisis.[2] The settlement appropriately reflects the import of Class Representatives' allegations in this matter of significant public importance, which centers on Teva's alleged large price increases on over 300 generic drugs.

The cash recovery of $420 million is a particularly compelling result given the risks and delay of continued litigation, Defendants' financial constraints, and other material, imminent exposures facing Teva. Class Representatives and Class Counsel Bleichmar Fonti & Auld LLP

[1] Capitalized terms not defined herein shall have the meanings specified in the Stipulation of Settlement, dated January 18, 2022, filed simultaneously herewith.

[2] Defendants consent to the relief sought, but do not adopt Class Representatives' statements herein.

have carefully considered and navigated these risks in agreeing to the proposed settlement for the Settlement Class's benefit.

Notably, as the result of Class Counsel's efficient prosecution of this action, persistence in completing discovery, and insistence on a rigorous schedule, the parties have reached the proposed settlement before ***any*** recovery in the criminal and civil antitrust cases concerning Teva's generic drug price increases. By providing a prompt, certain, and substantial cash recovery for the Settlement Class—as opposed to prolonged litigation that could yield no recovery, or, at best, a far-off judgment that Teva could be unable to satisfy—the proposed settlement now confers significant benefits on the Settlement Class.

Under Rule 23(e)(1)(B), a court should grant preliminary approval upon finding that it "will likely be able" to (i) grant final approval of the settlement under Rule 23(e)(2), and (ii) certify the proposed settlement class. The proposed settlement readily satisfies this standard.

First, the Court will likely be able to grant final approval because the proposed settlement is procedurally fair and provides adequate relief, satisfying Rule 23(e)(2)'s requirements.

The proposed settlement is the direct result of Class Representatives' and Class Counsel's diligent effort and enormous expenditure since 2017 of time, effort, and resources for the benefit of the Settlement Class. For their part, Defendants—represented by two large law firms—have spared no quarter. The parties' hard-fought litigation has included two rounds of motions to dismiss, amended pleadings, consolidation, class certification (including a *Daubert* motion and a Rule 23(f) petition to the Second Circuit), and the completion of voluminous fact and expert discovery over a two-year period of intense effort. Nearly every aspect of discovery was sharply contested, resulting in multiple motions to compel and twenty-two conferences with the Court.

To develop the merits, Class Counsel secured over 8.2 million pages of documents, took or defended 40 depositions, thoroughly analyzed the voluminous record, and exchanged 23 expert reports with Defendants on highly technical issues.  After expert discovery was completed in September 2021, the parties proceeded to develop extensive summary judgment filings on issues of liability and damages and *Daubert* motions to exclude each side's experts, which were ready to be filed but for this settlement.

With fact and expert discovery complete, the merits were exhaustively developed. Thoroughly apprised of the strengths and weaknesses of the case, the parties reached the proposed settlement after protracted and arm's-length mediation under the auspices of former District Judge Layn R. Phillips, a preeminent mediator of securities class actions.  The parties' mediation efforts involved extensive written submissions and presentations, three full-day mediation sessions over more than a year, and numerous subsequent teleconferences with Judge Phillips.  Ultimately, after prolonged negotiations that lasted months after the final formal mediation session, Judge Phillips issued a mediator's recommendation that the parties settle the action for $420 million.  The litigation was hard-fought until the end; just hours before summary judgment motions were due on December 2, 2021, the parties agreed to Judge Phillips' recommendation.

The $420 million settlement is fair, reasonable, and adequate.  Had litigation continued, Defendants would have argued that the Class's claims should be rejected at summary judgment, potentially vastly reducing or even eliminating any recovery.  For example, Defendants would have argued that the evidence does not support scienter—an argument that, if accepted, would eliminate the Exchange Act claims and the majority of the Class's overall damages.  Defendants would further have argued that there is no evidence of any material misstatement or omission, threatening to eliminate any recovery at all.  In addition to the risks on the merits, Teva's financial

condition and other litigation exposures heightened the risk that Teva could not satisfy any judgment Class Representatives might eventually obtain. Finally, the risk of delay further favored a prompt resolution, rather than leaving the Settlement Class with no recovery through years of further litigation and appeal. The proposed settlement reflects a meaningful proportion of reasonably recoverable damages and is well within the range of reasonableness, as Class Representatives will further demonstrate at final approval.

Second, the Court will be able to certify the proposed Settlement Class because it is identical to the Class that the Court previously certified (ECF 736), with limited exceptions regarding the Direct Action Plaintiffs and others discussed below, and the proposed notice program will ensure that Settlement Class Members are promptly apprised of the proposed settlement so they can participate, exclude themselves, or object before the Settlement Hearing.

As a result, both requirements for preliminary approval are satisfied. Class Representatives thus respectfully request that the Court grant this unopposed motion and enter the proposed Preliminary Approval Order, which will, among other things: (i) provide for preliminary approval of the settlement; (ii) approve the form and manner of giving notice of the settlement to the Settlement Class; and (iii) schedule the Settlement Hearing and related matters.

## SUMMARY OF THE LITIGATION

As the Court is aware, Teva is the world's largest generic drug manufacturer, and the Individual Defendants are current and former Teva executives. Class Representatives allege that Defendants are liable for alleged violations of the Securities Exchange Act of 1934 and the Securities Act of 1933 resulting from materially false and misleading statements and omissions of material facts required to be disclosed under SEC regulations.

Class Representatives allege that Defendants implemented a number of large price increases on generic drugs that materially contributed to Teva's financial results. Defendants'

public statements, however, allegedly falsely attributed Teva's strong financial results to fundamental business strategies rather than Teva's increases in generic drug prices; claimed Teva faced "intense competition" while Teva was engaged in price-fixing and other non-competitive activity; and omitted SEC-required disclosures of the impact of Teva's generics price increases and pricing trends. Class Representatives further allege that as the truth about this conduct was revealed in piecemeal fashion—including by a November 3, 2016 *Bloomberg* article reporting on a criminal investigation of pricing conduct, and by Teva's 2017 announcements of $16.5 billion in impairment charges in its U.S. Generic business—artificial inflation was removed from the prices of Teva Securities, damaging the Class.

In addition, Class Representatives allege that in 2015 and 2016, Teva offered Teva ADS, Preferred Shares and Notes at inflated prices pursuant to registration statements that incorporated material misstatements and omissions, in violation of the Securities Act of 1933. Defendants deny all of these allegations and do not admit to any liability.

### A.    The Amended Complaints and Denial of Defendants' Motions to Dismiss

The initial securities class action complaint was filed on November 6, 2016, and later transferred to this Court. (ECF 1.)

On July 11, 2017, the Court appointed Ontario Teachers' Pension Plan Board ("OTPP") as Lead Plaintiff and Bleichmar Fonti & Auld LLP as Lead Counsel. (ECF 124.) Following an investigation of the claims, OTPP (through Lead Counsel and Carmody Torrance Sandak & Hennessey LLP) filed a detailed amended complaint on August 2, 2017 (ECF 129), and, with Anchorage Police & Fire Retirement System ("Anchorage") as a named plaintiff, filed a further amended complaint on September 5, 2017 (ECF 138).

On September 11, 2017, Plaintiffs filed their Consolidated Class Action Complaint alleging violations of the federal securities laws (the "Consolidated Complaint") (ECF 141).

On December 1, 2017 and January 10, 2018, Defendants (and former defendants named in the Consolidated Complaint) filed a total of five motions to dismiss, arguing that the Consolidated Complaint did not adequately allege, among other things, actionable misstatements or omissions, scienter, loss causation, or standing.  (ECF 187-190, 198.)

Following oral argument on April 3, 2018, the Court granted Defendants' motions to dismiss without prejudice and with leave to replead.  (ECF 215, 218.)

On June 22, 2018, Plaintiffs filed their 145-page Amended Consolidated Complaint (ECF 226), asserting the claims substantially as summarized above.

On September 14, 2018, Defendants and former defendants filed three Rule 12(b)(6) motions to dismiss.  (ECF 238-240.)  Following oral argument on March 12, 2019 (ECF 272), on September 25, 2019, the Court denied the motions in substantial part. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131 (D. Conn. 2019).

**B.     Consolidation**

On December 13, 2019, with Defendants' agreement, Plaintiffs filed their final pleading, the Second Amended Consolidated Class Action Complaint (the "SAC") (ECF 310).  The 165-page SAC added three individual defendants—Kåre Schultz, Michael McClellan, and Yitzhak Peterburg—and extended the Class Period to February 6, 2014 through May 10, 2019, encompassing a number of relevant events and disclosures that occurred after August 2017, when the previously alleged class period ended.

In tandem with filing the SAC, Plaintiffs and Defendants jointly moved to consolidate this action with nineteen other related actions.  (ECF 311.)   The joint consolidation motion was

opposed by the purported plaintiffs in related class actions and by individual investors who filed non-class (direct) actions.[3]

On March 10, 2020, the Court granted the motion to consolidate, consolidating the class actions for all purposes and the direct actions for all pre-trial purposes. (ECF 341 at 2.) On April 28, 2020, the Court entered a consolidation order that, among other things, established Lead Counsel's responsibility to: "conduct all pre-trial and discovery proceedings on behalf of all Plaintiffs in the Ontario Action and the Later-Filed Class Actions"; "schedule and conduct all depositions"; "employ and consult with experts"; "brief and argue" discovery motions; and "speak on behalf of the Plaintiffs in the Related Actions" at pretrial conferences. (ECF 352 ¶¶1, 16, 26, 27, 28, 30.)

### C. The Parties Complete Fact and Expert Discovery

Immediately upon the denial of Defendants' second round of motions to dismiss in September 2019, Class Representatives meticulously pursued discovery to develop the full factual and expert record and maximize the value of the Class's claims. To do so, Class Counsel:

- Secured necessary document discovery from Defendants, Teva's auditor (PwC Israel), the underwriters of Teva's securities offerings, several former Teva executives involved in generics pricing, and more than a dozen generic drug competitors and distributors. These efforts yielded more than 8.2 million pages of documents.
- Propounded tailored written discovery on Defendants in the form of two sets of interrogatories and requests for admission.
- Took or defended 40 depositions, including all seven Individual Defendants, Rule 30(b)(6) witnesses for Teva and PwC Israel, the Head of Teva's Audit Committee, and the lead underwriter for Teva's securities offerings.

[3] *See* ECF 320; *Harel Pension and Provident Ltd. v. Teva Pharm. Indus. Ltd.*, No. 3:19-cv-00656 (D. Conn.), ECF 55, 59-1; *Huellemeier v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-01938 (D. Conn.), ECF 47.

Much of this discovery was sharply disputed, often requiring the Court's involvement. Class Counsel filed three motions to compel (ECF 411, 554-57, 770-71) and made written submissions and oral argument in connection with no less than twenty-two case management, status, and discovery conferences (ECF 298-300, 354, 369, 370, 432, 472, 475, 484, 509, 521, 525, 534, 549, 552, 563, 569, 653, 666, 690, 729, 737, 751, 752, 762, 764, 796, 813, 838, 848, 892, 895), leading to substantial additional discovery.

In addition, Plaintiffs were left with no option but to commence a separate action to compel a key third party's compliance with a document subpoena. *In the Matter of Rule 45 Subpoena Issued to Sandoz Inc. in In re Teva Sec. Litig.*, No. 1:20-mc-00213 (S.D.N.Y.), ECF 1-4. This Court ultimately ordered Sandoz to produce documents and ordered that "Sandoz shall bear the costs of compliance." *Ontario Teachers' Pension Plan Board et al v. Teva Pharma. Indus. Ltd.*, No. 3:20-CV-01283 (D. Conn.), ECF 36. As a result of the Court's order and numerous additional status reports and hearings, Sandoz produced over 1.8 million pages of documents.

Extensive expert discovery was also necessary to develop Plaintiffs' proof. Class Counsel retained four testifying experts to opine on merits issues requiring specific technical knowledge and expertise, including the background of the generic pharmaceutical industry; the extent of Teva's price increases, whether they were explained by legitimate market forces, and the additional profits they generated; the alleged material impact of those profits on Teva's financial results; SEC disclosure requirements; and securities loss causation, materiality, and damages. For their part, Defendants responded with extensive reports from four experts in opposition to Plaintiffs' experts.

In total, the parties exchanged 17 merits expert reports and conducted 10 merits expert depositions, significantly developing the issues for summary judgment and trial.

### D.       Class Certification and Defendants' Rule 23(f) Petition

While fact discovery was ongoing, Plaintiffs sought and obtained class certification.  On June 19, 2020, Plaintiffs moved for class certification, supporting their motion with a detailed expert report from David I. Tabak, Ph.D. regarding market efficiency and the availability of a class-wide damages methodology.  (ECF 419, 419-5.)

On August 7, 2020, Defendants filed their opposition, which included three expert opinions challenging market efficiency and contesting whether damages could be determined on a class-wide basis.  (ECF 503-508.)  In addition, on December 30, 2020, Defendants filed a *Daubert* motion to exclude Dr. Tabak's opinions in connection with class certification.  (ECF 678.)  In total, the parties exchanged 6 expert reports and conducted 5 expert depositions related to class certification.

On January 29, 2021, after full briefing, the Court held oral argument (lasting over three hours) on the class certification and *Daubert* motions (ECF 698), with counsel participating both in-person and remotely.  On March 9, 2021, in an 88-page decision, the Court granted Plaintiffs' motion for class certification and appointed Bleichmar Fonti & Auld LLP as Class Counsel and Carmody Torrance Sandak & Hennessey LLP as Class Liaison Counsel.  (ECF 736.)  The Court also denied Defendants' *Daubert* motion.  (*Id.* at 82.)

On March 23, 2021, Defendants filed a petition pursuant to Rule 23(f) of the Federal Rules of Civil Procedure for leave to appeal the Court's class certification decision to the Second Circuit.  On April 2, 2021, Class Representatives opposed the Rule 23(f) petition, and on April 9, 2021, Defendants moved for leave to file a reply.  On June 22, 2021, the Second Circuit denied Defendants' Rule 23(f) petition.  (Case No. 21-661 (2d Cir.), ECF 36 (mandate).)

### E.     Preparation for Summary Judgment and *Daubert* Motions

In September 2021, the parties completed expert discovery and turned to summary judgment and *Daubert* motions, marshalling the most significant fact and expert evidence amassed over the prior two years of intense discovery.  On the day the parties agreed to the proposed settlement, Class Representatives and Defendants had completed and were fully prepared to file extensive motions for summary judgment on issues of liability and damages, as well as *Daubert* motions to exclude the testimony of the opposing parties' merits experts.  The parties were just hours away from commencing these filings when they agreed to the proposed settlement.

### F.     Settlement Negotiations

In parallel with Class Representatives' thorough prosecution of this action, the parties engaged in private mediation before Judge Phillips.  An initial full-day mediation session occurred in July 2020.  While the parties exchanged detailed mediation statements and outlined their positions during the July 2020 session, they were unable to reach agreement.

The mediation continued with two full-day sessions in September 2021, after fact and expert discovery had largely concluded.  These sessions involved extensive submissions and presentations on the merits and financial issues.  With the additional perspective and awareness of the strengths and weaknesses of the merits gleaned from the more complete record, the parties began to narrow their differences, but again were unable to reach agreement.

With Judge Phillips' assistance, the parties continued to negotiate after the September 2021 sessions.  Throughout the formal mediation sessions and these subsequent discussions, each side's counsel engaged in hard-fought negotiations on behalf of their clients.  While the parties' differences further narrowed through October and November 2021, they remained unable to reach agreement.  Accordingly, Judge Phillips issued a mediator's recommendation that the action be

settled for $420,000,000 in cash.   After extensive consideration, the parties accepted Judge Phillips' recommendation and reached an agreement in principle in December 2021.

The parties then negotiated and finalized the settlement terms, and on January 18, 2022, executed the Stipulation submitted herewith setting forth the final settlement terms.   As set forth in the Stipulation and supporting documents, following preliminary approval of the settlement, $420,000,000 in cash (the "Settlement Amount") will be paid into interest-bearing escrow accounts.   (*See* Stipulation ¶¶2.2, 2.6.)   The Settlement Amount will be paid by Teva's insurance carriers with a contribution by Teva.   The Net Settlement Fund (*i.e.*, the Settlement Amount, plus accrued interest, minus any attorneys' fees, expenses, and awards to Class Representatives awarded by the Court, Notice and Administration Expenses, Taxes and Tax Expenses, and any other Court-approved deductions) will be distributed to Settlement Class Members who submit valid Proof of Claim and Release forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed below).

## I.       THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.       The Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that the Court should approve a class action settlement if the Court finds it "fair, reasonable, and adequate."   Fed. R. Civ. P. 23(e)(2).   The Second Circuit has recognized the "strong judicial policy in favor of settlements, particularly in the class action context."   *Kennedy v. Whitley*, No. 3:16-cv-02010, 2021 WL 4533198, at *3 (D. Conn. Apr. 26, 2021) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)).

Judicial approval of a class action settlement is a two-step process.   First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.   *See* Fed. R. Civ. P. 23(e)(1); *see also Simerlein*

*v. Toyota Motor Corp.*, No. 3:17-cv-01091, 2019 WL 1435055, at *10 (D. Conn. Jan. 14, 2019) ("Preliminary approval is thus the first stage of the settlement process, and the court's primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.") (quoting 4 NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017)). Second, after notice is provided and a hearing is held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e)(1)(B), a court should grant preliminary approval to authorize sending notice of a proposed settlement upon a finding that it "will likely be able" to (i) grant final approval of the settlement under Rule 23(e)(2), and (ii) certify the proposed settlement class.[4] Preliminary approval is warranted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *see also Toyota*, 2019 WL 1435055 at *10 ("[T]he general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval.") (quoting 4 NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017)).

In considering *final* approval of the settlement, Rule 23(e)(2) provides that the Court should consider whether "it is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

---

[4] This standard for preliminary approval, established by amendments to Rule 23(e) that became effective on December 1, 2018, is substantively similar to the standard articulated in earlier case law.

> class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

As discussed below, the proposed settlement readily satisfies both of Rule 23(e)(1)(B)'s requirements, such that the Preliminary Approval Order should be entered and notice of the proposed settlement should be sent to the Settlement Class in advance of the final Settlement Hearing.

### B. The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i)

#### 1. The "Procedural" Aspects of the Proposed Settlement Satisfy Rule 23(e)(2)(A)-(B)

As noted above, at final approval Rule 23(e)(2) requires that "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length," which "constitute the 'procedural' analysis of the fairness inquiry" at final approval. *Christine Asia Co., Ltd., et al., v. Jack Yun Ma, et al.*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019). These factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendment.

Both adequate representation and arm's-length negotiation are present here, satisfying the procedural inquiry and confirming that the Court "will likely be able" to grant final approval. Fed. R. Civ. P. 23(e)(1)(B)(i).

**Adequate Representation:** Rule 23(e)(2)(A) is satisfied because Class Representatives and their counsel have adequately represented the Class by vigorously prosecuting this action through the completion of fact and expert discovery, and up to the eve of significant summary judgment and *Daubert* motions.

Since July 2017, Class Representatives have conducted a thorough investigation of the Class's claims, prepared detailed pleadings and defeated Defendants' second round of motions to dismiss, and completed exhaustive fact and expert discovery.  Among other things, Class Counsel secured over 8.2 million pages of documents from Defendants and numerous third parties; took or defended 40 depositions; and exchanged 23 expert reports.  And, as the Court knows, Class Representatives engaged in extensive and exhaustive efforts to obtain contested discovery, briefing and arguing several motions to compel and submitting numerous status reports seeking relief on contested discovery issues.  Class Representatives also fully briefed class certification and a related *Daubert* motion, resulting in the Court's 88-page decision certifying the Class, and successfully opposed Defendants' Rule 23(f) petition for leave to appeal that decision to the Second Circuit. Finally, at the time the parties agreed to the settlement, Class Representatives had completed and were just hours away from filing a motion for partial summary judgment and multiple *Daubert* motions against Defendants' merits experts.

These extensive efforts ensured that Class Representatives "and their counsel were well informed about the strengths and weaknesses of the case before reaching the agreement to settle." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020); *see also Wal-Mart*, 396 F.3d at 116 ("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

**Arm's-Length Negotiation:**  The proposed settlement is the result of exhaustive arm's-length negotiation with Defendants in a lengthy mediation before Judge Phillips.  The parties' mediation efforts were protracted, involving extensive submissions and presentations, three full-day sessions over more than a year (from July 2020 to September 2021), and numerous subsequent

teleconferences between the parties and mediator.  Ultimately, months after the last formal mediation session, Judge Phillips issued a mediator's recommendation, which the parties accepted after careful consideration.

Class Representatives—both sophisticated institutional investors—closely supervised all aspects of this litigation, participated fully in the mediation process (including by attending all three full-day sessions and numerous follow-up videoconferences), and recommend that the settlement be approved.  Under the PSLRA, a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . .'"  *Signet*, 2020 WL 4196468 at *3 (quoting *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007)).

Ultimately, Class Representatives' oversight, the extensive mediation before Judge Phillips, and the fact that the proposed settlement reflects Judge Phillips's recommendation all demonstrate that the proposed settlement was reached at arm's length and is not the product of collusion between the parties.  *See Signet*, 2020 WL 4196468 at *3 (settlement "was reached only after months of arm's-length negotiations between experienced counsel, which included three full-day mediation sessions under the guidance of Judge Phillips," and was "the product of a mediator's recommendation by Judge Phillips"); *Christine Asia Co.*, 2019 WL 5257534 at *10 (settlement entitled to presumption of fairness where it was "product of thorough, arm's-length negotiation, facilitated by [Judge Phillips,] a neutral and well-respected mediator"); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In sum, the proposed settlement is procedurally fair, and Rule 23(e)(2)(A) and (B) are satisfied.

**2. The Proposed Settlement Provides "Adequate" Relief and "Treats Class Members Equitably," Satisfying Rule 23(e)(2)(C)-(D)**

In addition to the procedural requirements addressed above, Rule 23(e)(2)(C)-(D) direct the Court to evaluate at final approval whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Confirming that the Court "will likely be able" to grant final approval, Fed. R. Civ. P. 23(e)(1)(B), both requirements are satisfied, as the proposed settlement provides a significant, prompt cash recovery for the Settlement Class, and all Settlement Class Members will be treated equitably by receiving *pro rata* distributions based on their recognized losses under the proposed Plan of Allocation.

**a. The Proposed Settlement Provides Adequate Relief**

Rule 23(e)(2)(C) provides that the adequacy of relief should be assessed "taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

Here, the proposed settlement provides for a cash recovery of $420 million—among the top 43 securities class action settlements out of thousands nationwide since the passage of the PSLRA. As set forth herein, this is an outstanding result for the Settlement Class given the risks and delay of continued litigation and Defendants' financial constraints and limited ability to withstand a larger judgment, and all of the Rule 23(e)(2)(C) factors are satisfied.

(1) **The Costs, Risks, and Delay of Trial and Appeal**

At final approval, the Court must determine whether the proposed settlement falls within a "range of reasonableness"—a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Toyota*, 2019 WL 1435055 at *14 (granting preliminary approval and noting "significant litigation risks involved in proceeding with this action"); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-cv-1884 (AVC), 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) ("*Priceline*") ("risks of establishing liability" and "proving damages" favored approval).

In assessing the proposed settlement, the Court should balance the benefits afforded to the Settlement Class—including an immediate, certain cash recovery—against the risk of trial. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Here, the risks on the merits—along with Teva's financial constraints and the prospect of protracted further litigation and appeal—confirm that the proposed settlement is well within the range of reasonableness.

**Merits Risks:** This action carries significant risk at summary judgment and trial because it involves complex and uncertain legal and factual issues, including the pricing of hundreds of Teva's generic drugs over a multi-year period, the existence and scope of a non-competitive scheme to raise generic drug prices and allocate customers and markets, whether Defendants violated their disclosure obligations under Item 303 of SEC Regulation S-K and Item 5 of SEC Form 20-F, whether any misstatements or omissions were material to investors, whether any Defendants acted with scienter, whether any material misstatements or omissions caused losses recoverable under the securities laws, and the appropriate methodology for determining damages.

Thus, although Class Representatives and Class Counsel believe that the claims asserted are meritorious, Class Representatives and the broader Class faced numerous risks in proving Defendants' liability. *See, e.g.*, *Priceline*, 2007 WL 2115592 at *3 (noting "risks of establishing liability" through "complex and fact-intensive analysis of accounting and fraud issues"); *Signet*,

2020 WL 4196468 at *7 (noting "several significant risks" that "created serious doubt as to whether the Class would ultimately succeed at trial").

For example, Defendants have strenuously maintained that the evidence uncovered in discovery proves that they did not make any false or misleading statements or omissions, and that any misstatements or omissions were immaterial.  Most notably, Defendants would assert a "truth on the market" defense arguing that Teva's generics price increases and related profits were disclosed and publicly known, and therefore could not have resulted in any misstatements, omissions, or losses to the Class.  Defendants would also continue to argue that Teva's independent auditor approved its SEC filings, and that Teva (unlike other companies accused of securities law violations) never restated its financial statements filed with the SEC or faced an SEC enforcement action alleging disclosure violations.  While Class Representatives have strong responses to such arguments, if Defendants prevailed at summary judgment or trial on the absence of any material misstatement or omission, the entire case would be lost, eliminating any recovery.

Defendants have further argued that there is no evidence of scienter because Teva's price increases on certain generic drugs were understood to be an ordinary business activity that merely offset declining prices on other drugs, and because any alleged non-competitive activity was not known to the senior Teva personnel who made or approved the challenged statements.  Similarly, the Individual Defendants have denied acting with fraudulent intent in their deposition testimony.  While Class Representatives again have strong responses, if Defendants were to persuade the Court or a jury that scienter was absent, it would eliminate any recovery under the Exchange Act and foreclose the majority of the Class's overall damages.

In addition, although Class Representatives stood prepared to support their claims with persuasive expert testimony at trial, including on issues of the governing SEC disclosure

requirements, the materiality of Teva's generics price increases and pricing trends, and the non-competitive nature of many of Teva's price increases, Defendants likely would have moved to exclude each of Class Representatives' experts, as the parties were on the verge of filing *Daubert* motions when the proposed settlement was reached.  And even if the Class defeated such motions, Defendants have engaged four competing experts who would attempt to persuade the jury that Teva's pricing conduct was reasonable and competitive, and that Defendants' public statements were appropriate and complied with the applicable requirements, likely resulting in a "battle of the experts" whose outcome is inherently unpredictable.

Further, even if Class Representatives overcame these arguments and proved that Defendants made material misstatements or omissions with scienter, Defendants have contended that Class Representatives have not set forth a viable theory of loss causation or damages, and that a substantial amount (or all) of the alleged damages cannot be recovered absent both (a) proof of collusion by Teva and (b) a specific demonstration of how such alleged collusion contributed to Teva's publicly reported financial performance.  Defendants have further argued that none of the alleged corrective events can support loss causation or damages under the Exchange Act because they did not reveal the falsity of any earlier misstatements or omissions and because any price declines were attributable in whole or in part to so-called confounding information.  Defendants have also invoked a negative causation defense to reduce or eliminate damages under the Securities Act.  Defendants served hundreds of pages of expert reports devoted to these arguments.  As with contested liability issues, issues relating to causation and damages would have likely come down to hotly disputed and unpredictable expert issues, and, at minimum, Defendants' loss causation and damages arguments could significantly reduce any damages that could be recovered.

Accordingly, absent the proposed settlement, there was a very real risk that the Settlement Class would have recovered significantly less than the total Settlement Amount—or nothing at all.

**Risk of Financial Condition:** Even if Class Representatives prevailed on every contested issue of liability and damages, Teva's financial position greatly diminishes the prospect of any cash recovery in excess of the proposed settlement. For example, Teva has over $22 billion in outstanding debt and exposure to numerous other litigations around the country, one of which recently resulted in a jury verdict against Teva.[5] In the last three months, Teva's ADS traded within a range of $7.90-$10.14, well below Teva's share price of $12.23 after the corrective disclosure at the end of the Class Period nearly three years ago.

Further, in August 2020, Teva's U.S. subsidiary was indicted by the U.S. Department of Justice for price-fixing—a development that Teva has disclosed could have a "material adverse effect" on its ability to do business in the United States, Teva's largest market. As Teva's 2020 10-K explained (at 42):

> We are subject to a DOJ civil investigation and a criminal indictment charging Teva USA with criminal felony Sherman Act violations, that, if resulting in a conviction or guilty plea, could have a material adverse effect on our business, including monetary penalties, debarment from federally funded health care programs and reputational harm.

Continuing to litigate this securities action would leave the Class exposed to the risk that anything short of an acquittal in the criminal case would have a "material adverse effect" on Teva. In turn, such a development could further diminish Teva's ability to satisfy a judgment in this

[5] *See In re Opioid Litigation*, No. 400000/2017 (N.Y. Sup. Ct., Suffolk Cty.); *County of Suffolk v. Purdue Pharma LP et al.*, No. 400001/2017 (N.Y. Sup. Ct., Suffolk Cty.); *County of Nassau v. Purdue Pharma LP et al.*, No. 400008/2017 (N.Y. Sup. Ct., Suffolk Cty.); *State of New York v. Purdue Pharma LP et al.*, No. 400016/2018 (N.Y. Sup. Ct., Suffolk Cty.); *see also Attorney General James Victorious in New York's Opioid Trial*, NY ATTORNEY GENERAL (Dec. 30, 2021), https://ag.ny.gov/press-release/2021/attorney-general-james-victorious-new-yorks-opioid-trial.

action, potentially rendering any trial "win" a pyrrhic victory for the Class. *Cf. Signet*, 2020 WL 4196468 at *12 (even if lead plaintiff had obtained judgment for maximum recoverable damages, "there is no assurance that the Company could have satisfied it, and it might have been forced into bankruptcy").

**Risk of Delay:** Finally, the inherent delay in obtaining and collecting any judgment is also relevant. If the litigation had continued, Class Representatives would have had to prevail at summary judgment, at trial, and at appeals that would likely follow before any funds would be distributed to the Class. These developments could deprive the Class of any recovery for years, magnifying the risk that Teva's financial condition could further decline over the intervening period. By contrast, the proposed settlement provides certainty and a substantial, prompt cash payment to the Settlement Class.

Thus, the costs, risks, and delay of further litigation, including trial and appeals, weigh heavily in favor of preliminary approval of the proposed settlement.

(2) **The Proposed Method for Distributing Relief Is Effective**

As demonstrated below and in the supporting Declaration of Michael McGuinness, the proposed method of distributing relief to the Settlement Class—comprised of the notice and claims administration process—is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

The notice process includes direct mail notice to all those who can be identified with reasonable effort, including through nominees. The Notice (Ex. A-1 to the Stipulation) is a folded document with eight 10.5" x 6" panels (commonly referred to as a "self-mailer") that contains all of the information required under the PSLRA and satisfies Rule 23 (*see infra* at 27-29). (McGuinness Decl. ¶6.) Because recent experience in large securities settlements indicates that

about 80% of claims are filed electronically,[6] the self-mailer does not include a paper Proof of Claim and Release form (Ex. A-2 to the Stipulation), but directs potential Settlement Class members (in bold on the first page) to a case-specific website where they can submit claims electronically or request a paper copy of the Proof of Claim and Release.[7]  (McGuinness Decl. ¶6.) The self-mailer also provides toll-free and international phone numbers to contact the Claims Administrator and request a paper copy of the Proof of Claim and Release.  (*Id.*)  The website also provides a Long-Form Notice (Ex. A-4 to the Stipulation) with additional detailed information, including in question-and-answer format, as well as copies of the Stipulation and other relevant documents.  (*Id.* ¶16.)  The Long-Form Notice, Proof of Claim and Release, and website itself will be available in both English and Hebrew.  (*Id.*)  Finally, in addition to direct mailing and the website, the notice program will include publication of the Summary Notice (Ex. A-3 to the Stipulation) in *The Wall Street Journal* and other print publications (including in Israel).  (*Id.* ¶14.)

The current estimate calls for direct mailing of the Notice to up to 2.5 million potential Settlement Class members.  Accordingly, this combination of direct mailing of the Notice and electronic dissemination of the Long-Form Notice and Proof of Claim and Release (with paper copies available through the website or by phone) significantly reduces printing and postage costs

---

[6] *See, e.g.*, *In re Petrobras Sec. Litig.*, 14-cv-9662 (S.D.N.Y.), ECF 970 ¶16.

[7] Providing the long-form notice and claim form online (with direct mail notice provided by postcard) has been approved under the PSLRA and Rule 23 in other securities class settlements. *See, e.g.*, *Klein v. Altria Group, Inc.*, No. 3:20-cv-75 (E.D. Va. Dec. 16, 2021), ECF 303 ¶¶7-8 (approving notice through "mailing of the Postcard Notice," with the "Notice and the Claim Form . . . to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded"), *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (GHW) (S.D.N.Y. July 24, 2019), ECF 197 ¶9 (approving notice through "mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form on the Settlement Website, and the publication of the Summary Notice").  Here, the self-mailer Notice provides more extensive information than the postcard notices approved in other securities settlements.

and waste, thereby preserving more assets for distribution to Settlement Class members. (McGuinness Decl. ¶13.)

The claims administration process will follow established procedures in securities class actions. Settlement Class Members will be required to complete the Proof of Claim and Release form to provide the transaction information and documentation necessary to calculate their Recognized Loss Amounts and Recognized Claims pursuant to the Plan of Allocation (set forth in full in the Long-Form Notice).

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to Authorized Claimants. If any monies remain in the Net Settlement Fund after the initial distributions, the Claims Administrator will conduct re-distributions until it is no longer cost-effective to do so. At such time, consistent with Local Rule 23's provisions regarding the disposition of residual funds, any remaining balance will be contributed to the Connecticut Food Bank, a not-for-profit, 501(c)(3) organization serving the community within this District, or another 501(c)(3) organization subject to the Court's approval.

(3) **The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable**

The proposed settlement does not contemplate any specific fee and expense award to Class Representatives' Counsel, but rather recognizes that Class Counsel will make a separate application for fees and expenses to be paid from the Settlement Fund in an amount to be approved by the Court. Class Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion in accordance with the Preliminary Approval Order.

As stated in the proposed Notice, Class Counsel will seek total fees of no more than 23.75% of the Settlement Fund. This amount is below the percentages that courts in the Second Circuit

have regularly approved in other large and complex securities class actions. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866 (LTS), ECF 727 at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *Signet*, 2020 WL 4196468 at *15-16, *24 (awarding 25% of $240 million settlement; 25% fee was "within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries"); *Christine Asia Co.*, 2019 WL 5257534 at *17 (awarding 25% of $250 million settlement). Class Counsel will also seek an award of litigation expenses in an amount not to exceed $11,000,000, including awards to Class Representatives pursuant to 15 U.S.C. § 78u-4(a)(4) of no more than $100,000 in the aggregate.

By granting preliminary approval of the proposed settlement, the Court does not in any way pass upon the reasonableness of any fee or expense application, which will be decided at the Settlement Hearing and paid only after Court approval.

(4) **Class Representatives Have Identified All Agreements Made in Connection with the Proposed Settlement**

In addition to the Stipulation, the Settling Parties have entered into a confidential Supplemental Agreement providing specified options to terminate the settlement if Settlement Class Members reach certain thresholds based on the Recognized Loss Amounts on Teva Securities subject to the settlement. (Stipulation ¶7.4.) As is standard in securities class action settlements, such agreements are not made public in order to avoid incentivizing individual class members to leverage the opt-out threshold to seek disproportionate individual settlements at the expense of the broader class. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties

from soliciting class members to opt out.”). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court for *in camera* review.

**b. The Plan of Allocation Treats Class Members Equitably**

Finally, Rule 23(e)(2)(D) directs the Court to evaluate whether the Proposed Settlement “treats class members equitably relative to each other.” The Plan of Allocation satisfies this requirement because it does not grant preferential treatment to Class Representatives or any segment of the proposed Settlement Class.

Rather, satisfying Rule 23(e)(2)(D), the Plan of Allocation treats Class members “equitably relative to each other” by allocating each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Teva Securities during the Class Period. Those recognized losses are calculated under the Plan of Allocation using estimates of artificial inflation at the time of purchase and sale for the Exchange Act claims, and for the Securities Act claims in a manner that generally reflects the statutory damages formula.

Specifically, the Plan of Allocation (developed by Class Counsel with Dr. Tabak’s expert assistance) calculates a “Recognized Loss Amount” for each purchase or acquisition of Teva Securities during the Class Period listed on the Proof of Claim and Release for which the claimant provides adequate documentation. Transactions in Teva ADS may result in Recognized Loss Amounts under the Exchange Act, with the calculation depending on when the claimant purchased and/or sold the ADS and whether the claimant held the ADS through the statutory 90-day look-back period after the end of the Class Period, *see* 15 U.S.C. § 78u-4(e).

Transactions in Teva Preferred Shares and Notes (and ADS purchased in the ADS Offering) may result in Securities Act Recognized Loss Amounts. Because Securities Act damages are larger than (and therefore subsume) any damages under the Exchange Act, Securities Act Recognized Loss Amounts on these Teva Securities are fully compensatory. The calculation

of Securities Act Recognized Loss Amounts depends on the amount paid for these Teva Securities (not to exceed their offering price) and their price or value at the time of suit or the time of sale. *See* 15 U.S.C. § 78k(e). A claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on their Recognized Claims in proportion to all Recognized Claims.

The Plan of Allocation is comparable to plans of allocation that courts have approved in numerous other securities class actions, including in this District and Circuit. *See, e.g.*, Ex. A to Notice of Pendency of Class Action and Proposed Settlement, *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-cv-01884 (AVC) (D. Conn. May 11, 2007), at 9 (plan of allocation based on "share price at the date of purchase minus the inflation in share price at the date of sale") (approved at ECF 447) *available at* http://www.strategicclaims.net/wp-content/uploads/2016/07/priceline_noticeclaimform.pdf; *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Jan. 27, 2020), ECF 510 at 30-50 of 93 (approving plan of allocation based on timing of transactions in equity and debt securities) (special master's order adopted at ECF 515).

### C. The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii)

The Court will be able to certify the proposed Settlement Class, which is identical to the previously certified Class (*see* ECF 736 at 87-88) with the exception of excluding (1) those who have been promised or received a payment from or on behalf of Defendants related to or arising from litigation, or otherwise released their claims, related to their Class Period transactions in Teva Securities other than a payment of attorneys' fees or costs incurred by such person or entity; (2) any Settlement Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court in the Notice; and (3) all plaintiffs in the individual direct (non-

class) U.S. securities actions pending against one or more Defendants ("Direct Action Plaintiffs") that have not dismissed their claims and timely submitted a completed Proof of Claim and Release.

The first exclusion ensures that any investors who have already received compensation or released their claims, if any, do not participate in the settlement, while the second exclusion ensures Settlement Class Members' ability to opt out under Rule 23(c)(2)(B). The third exclusion recognizes that the Direct Action Plaintiffs have filed separate individual actions, and thus presumptively do not wish to participate in any class-wide resolution, while allowing them to promptly seek to participate in the settlement in lieu of continuing their individual actions.

## II.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Finally, the form and content of the Notice should be approved because they meet the requirements of due process, the Federal Rules of Civil Procedure, and the PSLRA. Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. In addition, Rule 23(c)(2)(B) requires the Court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the Notice and Long-Form Notice (Exs. A-1 and A-4 to the Stipulation) are written in plain language and apprise Settlement Class members of the nature of the litigation, including the claims and issues involved; the definition of the Settlement Class; the terms of the proposed settlement; that the Court will exclude any Settlement Class member who requests exclusion; the procedures and deadlines for exclusion requests and objections; and the binding effect of a class judgment on Settlement Class members under Rule 23(c)(3)(B), among other disclosures.

The Notice and Long-Form Notice also satisfy the disclosure requirements for securities class settlements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). Specifically, they disclose:

(1) the amount of the settlement on an aggregate and per-security basis (Notice at 1; Long-Form Notice at 4-5 ("Overview of the Recovery")), satisfying 15 U.S.C. § 78u-4(a)(7)(A); (2) the issues about which the parties disagree (Notice at 5; Long-Form Notice at 5), satisfying 15 U.S.C. § 78u-4(a)(7)(B)(ii); (3) the maximum amount of attorneys' fees and litigation expenses that Class Counsel will seek (including on a per-share basis) (Notice at 5-6; Long-Form Notice at 5-6 and Question 17), satisfying 15 U.S.C. § 78u-4(a)(7)(C); (4) the name, mailing address, and telephone number of Class Counsel, who will be reasonably available to answer questions from Settlement Class members (Notice at 6; Long-Form Notice at 6 ("Further Information")), satisfying 15 U.S.C. § 78u-4(a)(7)(D); and (5) a brief statement explaining the reasons why the parties are proposing the settlement (Notice at 5; Long-Form Notice at 4 and Question 4), satisfying 15 U.S.C. § 78u-4(a)(7)(E).

Class Counsel proposes that Epiq Class Action and Claims Solutions, Inc. ("Epiq"), a leading independent settlement and claims administrator, administer the notice and claims process. If the Court preliminarily approves the settlement, Epiq will disseminate the Notice to all identified potential Settlement Class Members. To do so, Epiq will utilize a list from Defendants' securities transfer agent of all persons who purchased or otherwise acquired Teva Securities during the Class Period, as well as Epiq's proprietary list of U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners. In addition, Epiq will also publish the Summary Notice in *The Wall Street Journal*, *Investor's Business Daily*, and in Hebrew in the *Globes* business newspaper in Israel, transmit the Summary Notice over *PR Newswire*, and post the Notice, Long-Form Notice, Proof of Claim and Release and other materials on the case-specific website for the settlement. The parties have also agreed that, no later than five days following the

filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq*.

The proposed combination of mail, publication, and electronic notice satisfies Rule 23(c)(2)(B)'s provision that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." This Court has approved class notice plans, like that proposed here, that utilize direct mail, press releases, and posting of notice information on a dedicated website. *See* Order, *Sanborn v. Viridian Energy, Inc.*, No. 3:14-cv-01731 (SRU) (D. Conn. Feb. 16, 2018), ECF 163 (approving plan for mailing and internet posting of class notice); Order, *In re Ethylene Propylene Diene Monomer (EPDM) Litig.*, No. 3:03-mdl-1542 (SRU) (D. Conn. May 27, 2009), ECF 527 (approving plan for mailing and publication of class notices). Similar notices and notice plans involving U.S. and Israeli publication have also recently been approved in other securities class actions against generic pharmaceutical manufacturers. *See* Order Establishing Program and Schedule for Class Notice, *In re Mylan N.V. Sec. Litig.*, No. 1:16-cv-07926 (JPO) (S.D.N.Y. Mar. 25, 2021), ECF 220; Stipulation and Order Approving Notice of Pendency of Class Action, *Roofer's Pension Fund v. Papa*, No. 16-cv-2805-MCA-LDW (D.N.J. July 10, 2020), ECF 292.

## III. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In the event the Court grants preliminary approval of the proposed settlement, Class Representatives respectfully propose the schedule below for settlement-related events. The timing of each event is determined by the date the Preliminary Approval Order is entered and the date of the Settlement Hearing; thus, upon entry of the Preliminary Approval Order, the Court need only schedule a date for the Settlement Hearing.

| EVENT | DEADLINE |
|---|---|
| Deadline for Claims Administrator to commence mailing of the Notice to Settlement Class members (the "Notice Date") | 20 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶8) |
| Deadline for Claims Administrator to publish copies of the Notice in *The Wall Street Journal*, *Investor's Business Daily*, *Globes* newspaper (in Hebrew), and over *PR Newswire*, and to post copies of the Notice, Proof of Claim and Release, Summary Notice, Long-Form Notice, Stipulation, and relevant Court documents to a website for the Litigation (www.TevaSecuritiesLitigation.com) | 28 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶10) |
| Deadline for Direct Action Plaintiffs who wish to participate in settlement to dismiss their action and submit Proof of Claim and Release | 75 calendar days from Notice Date (Proposed Order at ¶14) |
| Deadline to submit written requests for exclusion | 75 calendar days from Notice Date (Proposed Order at ¶13) |
| Deadline to submit Proof of Claim and Release (this deadline does not apply to Direct Action Plaintiffs). | 90 calendar days from Notice Date (Proposed Order at ¶15). |
| Deadline for motions for final approval of the settlement, Plan of Allocation, and for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing (Proposed Order at ¶19) |
| Deadline for Objections and Notices of Appearance | 21 calendar days prior to Settlement Hearing (Proposed Order at ¶17) |
| Deadline for replies to any Objections | 14 calendar days prior to the Settlement Hearing (Proposed Order at ¶19) |
| Deadline for Class Counsel to file with the Court proof of mailing and publication of the Notice, Proof of Claim and Release, Summary Notice, Long-Form Notice, Stipulation, and relevant Court documents | No later than 14 calendar days prior to the Settlement Hearing (Proposed Order at ¶11) |
| Settlement Hearing | At least 125 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶5) |

## CONCLUSION

Class Representatives respectfully request that the Court grant this unopposed motion and enter the agreed-upon proposed Preliminary Approval Order, which will provide for: (i) preliminary approval of the settlement; (ii) approval of the form and manner of giving notice of the settlement to the Settlement Class; and (iii) a hearing date and time to consider final approval of the settlement and related matters.

Dated: New York, New York
January 18, 2022

Respectfully submitted,

/s/ *Joseph A. Fonti*

Joseph A. Fonti (admitted *pro hac vice*)
Javier Bleichmar (admitted *pro hac vice*)
Evan A. Kubota (admitted *pro hac vice*)
Benjamin F. Burry (admitted *pro hac vice*)
Thayne Stoddard (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
jbleichmar@bfalaw.com
ekubota@bfalaw.com
bburry@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Class Representatives Ontario Teachers' Pension Plan Board and Anchorage Police & Fire Retirement System, and Lead Counsel for the Class*

Marc J. Kurzman (ct01545)
Christopher J. Rooney (ct04027)
James K. Robertson, Jr. (ct05301)
**CARMODY TORRANCE SANDAK & HENNESSEY LLP**
707 Summer Street, Suite 300
Stamford, CT 06901
Telephone: (203) 252-2680
Facsimile: (203) 325-8608

mkurzman@carmodylaw.com
crooney@carmodylaw.com
jrobertson@carmodylaw.com

*Local Counsel for Class Representatives Ontario Teachers' Pension Plan Board and Anchorage Police & Fire Retirement System, and Class Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, a copy of the foregoing was filed electronically with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Joseph A. Fonti*
Joseph A. Fonti